QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
     *rachelkassabian@quinnemanuel.com*
OLGA SLOBODYANYUK (Bar No. 311194)
     *olgaslobodyanyuk@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801 5000
Facsimile: (650) 801 5100

ANDREW H. SCHAPIRO (admitted *pro hac vice*)
     *andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705 7400
Facsimile: (312) 705 7401

DANIEL C. POSNER (Bar No. 232009)
     *danposner@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ and NICKY LAATZ CREATIONS UK LTD, | Case No. 5:22-cv-04844-BLF |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** |
| vs. | Date:       March 2, 2022 |
| ZAZZLE INC. and MOHAMED ALKHATIB, | Time:       9:00 am PT<br>Courtroom:   3<br>Judge:       Hon. J. Freeman |
| Defendants. | Trial Date:   None Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 2, 2022 at 9 a.m., or as soon thereafter as counsel may be heard, before the Honorable Beth Labson Freeman in Courtroom 3 located at 280 South 1st Street, San Jose, CA 95113, Defendants Zazzle Inc. and Mohamed Alkhatib will, and hereby do, move this Court, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), to dismiss the Complaint of Plaintiffs Nicky Laatz and Nicky Laatz Creations UK Ltd., and all seven causes of action therein: (1) fraudulent misrepresentation, Cal. Civ. Code § 1572; (2) fraudulent concealment, Cal. Civ. Code § 1572; (3) promissory fraud, Cal. Civ. Code § 1572 (these three claims collectively the "fraud-based" claims); (4) intentional interference with contractual relations ; (5) federal copyright infringement, 17 U.S.C. §§ 101 *et seq.*; (6) federal trademark infringement, 15 U.S.C. §§ 1114 *et seq.*; and (7) breach of contract. The gravamen of Plaintiffs' claims is that Defendant Zazzle Inc.'s employee Mr. Alkhatib purchased a license for Plaintiffs' fonts and uploaded them to Zazzle's website, and that Zazzle's use allegedly exceeded the scope of its rights. The Complaint is irreparably deficient and should be dismissed with prejudice.

Defendants' motion is based on this notice of motion and supporting memorandum of points and authorities, the request for judicial notice filed herewith and declaration in support thereof, the materials on file in this action, and such other written or oral argument as may be presented at or before the time this motion is heard and/or taken under submission by the Court.

DATED: October 17, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

# TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................................1

BACKGROUND....................................................................................................2

FACTS ALLEGED IN THE COMPLAINT............................................................2

FACTS SUBJECT TO JUDICIAL NOTICE...........................................................5

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ...............................7

LEGAL STANDARD .............................................................................................7

ARGUMENT .........................................................................................................7

I.      PLAINTIFFS FAIL TO PLEAD A VALID COPYRIGHT CLAIM ................7

    A.      Plaintiffs Fail To Plead Ownership Of A Valid Copyright..........................8

        1.      Typefaces, Or Fonts, Are Not Copyrightable ................................8

        2.      Plaintiffs Fail To Plead That They Authored The Original Code For The Font Software At Issue...............................................................9

        3.      Judicially Noticeable Documents Appear To Confirm That Plaintiffs' Font Software Is *Not* Copyrightable...............................9

    B.      Plaintiffs Fail To Plead Infringement Of Any Protected Rights ...............10

II.     THE COPYRIGHT ACT PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.............11

    A.      Plaintiffs' First, Second And Third Fraud-Based Claims Are Preempted ...........12

    B.      Plaintiffs' Seventh Claim For Breach Of Contract Is Preempted .............13

    C.      Plaintiffs' Fourth Claim For Intentional Interference Is Preempted .........14

III.    PLAINTIFFS FAIL TO PLEAD THEIR FRAUD CLAIMS WITH PARTICULARITY AND FAIL TO PLEAD THE NECESSARY ELEMENTS ...............16

IV.     PLAINTIFFS FAIL TO PROPERLY PLEAD A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS...............20

V.      PLAINTIFFS FAIL TO PLEAD ACTIONABLE TRADEMARK INFRINGEMENT...............20

VI.     PLAINTIFFS FAIL TO PLEAD A CLAIM FOR BREACH OF CONTRACT AGAINST MR. ALKHATIB...............21

VII.    PLAINTIFFS FAIL TO PLEAD THAT PLAINTIFF NICKY LAATZ CREATIONS UK LTD. HAS STANDING TO ASSERT ITS CLAIMS ...............22

CONCLUSION ................................................................................................................23

# TABLE OF AUTHORITIES

**Page**

### Cases

*Ace Am. Ins. Co. v. Hallier*,
  2015 WL 1326499 (D. Nev. Mar. 25, 2015) ........................................................... 19

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988) ................................................................................ 7

*AMC Tech., LLC v. Cisco Sys., Inc.*,
  2012 WL 174949 (N.D. Cal. Jan. 20, 2012) ......................................................... 18

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ........................................................................................ 20

*Applied Underwriters, Inc. v. Lichtenegger*,
  913 F.3d 884 (9th Cir. 2019) ............................................................................. 21

*Art of Living Found. v. Does, 1-10*,
  2012 WL 1565281 (N.D. Cal. May 1, 2012) ........................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 7

*Balistreri v. Pacific Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) .............................................................................. 7

*Barrett v. Apple Inc.*,
  523 F. Supp. 3d 1132 (N.D. Cal. 2021) .............................................................. 20

*Canard v. Bricker*,
  2015 WL 846997 (N.D. Cal. Feb. 25, 2015) .................................................. 17, 18

*Cleveland v. Deutsche Bank Nat. Tr. Co.*,
  2009 WL 250017 (S.D. Cal. Feb. 2, 2009) ......................................................... 23

*Crafty Prods., Inc. v. Michaels Companies, Inc.*,
  389 F. Supp. 3d 876 (S.D. Cal. 2019) ............................................................... 15

*Daniher v. Pixar Animation Studios*,
  2022 WL 1470480 (N.D. Cal. May 10, 2022) ..................................................... 12

*Eltra Corp. v. Ringer*,
  579 F.2d 294 (4th Cir. 1978) .............................................................................. 8

*F.D.I.C. v. Frankel*,
  2011 WL 5975262 (N.D. Cal. Nov. 29, 2011) ..................................................... 22

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ............................................................................ 7

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   111 S. Ct. 1282 (1991) ........................................................................................................ 8

*Giddings v. Vison House Prod., Inc.*,
   2007 WL 2274800 (D. Ariz. Aug. 7, 2007) ...................................................................... 13

*Harris v. Simon & Schuster, Inc.*,
   646 F. Supp. 2d 622 (S.D.N.Y. 2009) .............................................................................. 11

*Hsu v. OZ Optics Ltd.*,
   211 F.R.D. 615 (N.D. Cal. 2002) ...................................................................................... 17

*Idema v. Dreamworks, Inc.*,
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ............................................................................ 13

*Iezza v. Saxon Mortg. Servs.*, Inc.,
   2010 WL 3834041 (C.D. Cal. Sept. 28, 2010) ................................................................ 23

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ............................................................................................ 7

*Jackson v. City of Modesto*,
   2022 WL 3083649 (E.D. Cal. Aug. 3, 2022) ................................................................... 19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 16

*Lawrence v. Sony Pictures Ent. Inc.*,
   2011 WL 13143714 (C.D. Cal. July 28, 2011),
   aff'd, 534 F. App'x 651 (9th Cir. 2013) ............................................................................. 8

*Laws v. Sony Music Entm't, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) .......................................................................................... 12

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*,
   351 F. Supp. 2d 436 (M.D.N.C. 2005) ............................................................................ 14

*Mazur v. eBay Inc.*,
   2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ..................................................................... 18

*McCormick v. Sony Pictures Ent.*,
   2008 WL 11336160 (C.D. Cal. Nov. 17, 2008) ............................................................... 12

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
   156 F. Supp. 3d 1052 (N.D. Cal. 2016) ..................................................................... 15, 16

*Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit* Co.,
   361 F. Supp. 2d 1244 (E.D. Wash. 2004) ....................................................................... 23

*New Kids on the Block v. News Am. Publ'g, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ............................................................................................ 21

*PM Grp., Inc. v. Stewart*,
   154 Cal. App. 4th 55 (2007) ............................................................................................. 20

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*Ryan v. Aegis Specialty Ins.*,
   2021 WL 6618753 (C.D. Cal. Nov. 1, 2021) ........................................................... 23

*Scafidi v. W. Loan & Bldg. Co.*,
   72 Cal. App. 2d 550 (1946) ...................................................................................... 19

*Selby v. New Line Cinema Corp.*,
   96 F. Supp. 2d 1053 (C.D. Cal. 2000) ............................................................... 12, 14

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ................................................................................... 16

*Shum v. Intel Corp.*,
   2008 WL 4414722 (N.D. Cal. Sept. 26, 2008) ....................................................... 19

*Silvers v. Sony Pictures Ent., Inc.*,
   402 F.3d 881 (9th Cir. 2005) ................................................................................... 22

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................. 16, 17

*Solo v. Dawson*,
   2010 WL 11508000 (C.D. Cal. Feb. 8, 2010) ........................................................ 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..................................................................................... 7

*TV One LLC v. BET Networks*,
   2012 WL 13012674 (C.D. Cal. Apr. 2, 2012) .................................................... 14, 15

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
   2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ........................................................... 22

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
   2019 WL 3804019 (S.D. Cal. Aug. 13, 2019) ........................................................ 19

## <u>Statutes</u>

15 U.S.C. § 1114 ............................................................................................................. 2

17 U.S.C. § 101 ............................................................................................................... 2

17 U.S.C. § 301(a) ......................................................................................................... 12

17 U.S.C. § 410(c) ........................................................................................................... 8

17 U.S.C. § 501(b) ......................................................................................................... 22

17 U.S.C. § 506(e) ........................................................................................................... 6

Cal. Civ. Code § 1572 ..................................................................................................... 2

1

## <u>Other Authorities</u>

2

Melville B. Nimmer and David Nimmer,
   1 Nimmer on Copyright § 1.01[B][1][a] (1994) .......................................................... 14

3

Registrability of Computer Programs That Generate Typefaces, 57 FR 6201-01 ........................ 8, 9

4

## <u>Rules</u>

5

37 C.F.R. § 202.1 ............................................................................................................. 8

6

Fed. R. Civ. P. 9(b)........................................................................................................... 16

7

H.R. Rep. No. 94-1476...................................................................................................... 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

## INTRODUCTION

Defendants respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint (Dkt. 1) in its entirety.  The gravamen of Plaintiffs' claims is that Defendant Zazzle Inc.'s employee bought a $20 license for Plaintiffs' fonts and that Zazzle made these fonts available on its website through its servers, in excess of its rights.  The complaint is irreparably deficient and should be dismissed with prejudice.

*First*, Plaintiffs' copyright infringement claim (fifth claim) fails because Plaintiffs do not plead ownership of a valid copyright or infringement of any exclusive right.  Fonts, unlike font software, are not copyrightable, and font software must be hand-coded (not computer-generated) to be copyrightable.  Lacking a presumption of validity because their registrations were untimely, Plaintiffs fail to meet their burden of stating facts sufficient to allege valid copyright ownership.

*Second*, the state law claims (first, second, third, fourth and seventh claims) should be dismissed because they are preempted by the Copyright Act.  Plaintiffs do not plead any extra element for these claims which would make them qualitatively different from the rights enforceable through copyright.

*Third*, Plaintiffs' fraud-based claims (first, second and third claims) fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Plaintiffs fail to plead any facts detailing the alleged misrepresentations, intent, or reliance in connection with the license for Plaintiffs' fonts, nor could they plausibly do so, given that Defendants acquired the license through a routine online transaction.

*Fourth*, Plaintiffs fail to properly plead how Zazzle could have possibly interfered with the license agreement purportedly between Plaintiffs and Zazzle's employee Mr. Alkhatib (fourth claim).  Because, as Plaintiffs allege, Mr. Alkhatib was acting on Zazzle's behalf in obtaining the license, the contracting parties are Plaintiffs and Zazzle.  As a matter of law, Zazzle cannot interfere with its own contract, and therefore Plaintiffs fail to state a valid interference claim.

*Fifth*, Plaintiffs' claim for trademark infringement (sixth claim) must be dismissed under the nominative fair use doctrine, because Plaintiffs allege merely that Defendants referred to Plaintiffs' work by its trademarked name—conduct that is not actionable as a matter of law.

*Sixth*, Plaintiffs fail to properly plead breach of contract against Mr. Alkhatib (seventh claim), because by their own allegations, Mr. Alkhatib was a Zazzle employee acting for Zazzle at all relevant times, and thus Zazzle, not Mr. Alkhatib, is a party to the contract.

*Finally*, Plaintiffs fail to plead facts establishing that the entity Plaintiff, Nicky Laatz Creations UK Ltd., has standing to sue, so all claims brought by that Plaintiff should be dismissed for lack of subject matter jurisdiction.

Accordingly, the complaint should be dismissed in its entirety, without leave to amend.[1]

## BACKGROUND

Plaintiffs Nicky Laatz and Nicky Laatz Creations UK Ltd. ("Plaintiffs") filed this action against Defendants Zazzle Inc. ("Zazzle") and Mohamed Alkhatib on August 24, 2022, alleging seven claims:  (1) fraudulent misrepresentation, Cal. Civ. Code § 1572; (2) fraudulent concealment, Cal. Civ. Code § 1572; (3) promissory fraud, Cal. Civ. Code § 1572 (these three claims are collectively referred to as the "fraud-based" claims); (4) intentional interference with contractual relations ; (5) federal copyright infringement 17 U.S.C. §§ 101; (6) federal trademark infringement, 15 U.S.C. § 1114; and (7) breach of contract.  Plaintiffs assert claims 1-3 against all defendants; claims 4-6 against Zazzle; and claim 7 against Mr. Alkhatib.  Dkt. 1.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff Nicky Laatz is a font designer.  Compl. ¶ 30.  Plaintiff Nicky Laatz Creations UK Ltd. is private limited company.  Compl. ¶ 20.  The complaint defines "Nicky Laatz" as both Plaintiffs collectively, and does not distinguish between them.  Compl. at p. 1.  Defendant Zazzle is a design platform which provides tools to design digital and physical products which customers can order.  Designers can sell their products through Zazzle, and individual users can also design their own products using Zazzle's online design and customization tool.  Compl. ¶¶ 43-44. Defendant Mohamed Alkhatib is a Senior Network Engineer at Zazzle.  Compl. ¶ 58.

---

[1] On September 26, 2022, Plaintiffs filed a motion for partial summary judgment ("MSJ"), seeking judgment on liability for all claims.  *See* Dkt. 26.  Should the Court grant the instant motion, the MSJ will be mooted as there will be no operative pleading on which to grant summary judgment.

Plaintiffs allege that Ms. Laatz "designed and created a trio of fonts titled 'Blooming Elegant,' 'Blooming Elegant Hand,' and 'Blooming Elegant Sans.'"  Compl. ¶ 36.  Plaintiffs offer licenses to their Blooming Elegant Trio of fonts through certain third-party websites such as Creative Market (www.creativemarket.com) for $20.  Compl. ¶¶ 32, 42.

Plaintiffs allege that in November 2016, a Zazzle Senior Product Marketing Manager contacted Ms. Laatz to ask whether Plaintiffs offer a license in perpetuity for server-based use.  Compl. ¶¶ 52-54.  Plaintiffs did not respond.  *Id*.¶ 55.  In May 2017, Plaintiffs allege, Zazzle directed Mr. Alkhatib to purchase a standard, single "seat" license for the Blooming Elegant Trio from Creative Market.   Compl. ¶ 58.  Plaintiffs allege that Zazzle copied the software onto Zazzle's servers, exceeding the license terms.  Compl. ¶ 65.  Plaintiffs expressly allege that at all relevant times, Mr. Alkhatib was acting in his capacity as an employee of, on behalf of, and at the direction of Zazzle.  Compl. ¶ 61.  On this alleged factual premise, Plaintiffs assert seven claims.

First Claim for Fraudulent Misrepresentation.  Plaintiffs allege that Defendants misrepresented that the license Mr. Alkhatib purchased was for a single seat, knowing that would not cover their intended use.  Compl. ¶¶ 130-132.  Plaintiffs do not allege where or how Defendants made this misrepresentation.  Plaintiffs do not allege that Zazzle or Mr. Alkhatib made any misrepresentations separate from each other; instead, Plaintiffs premise this claim on a single course of conduct by both Defendants.  Plaintiffs make further conclusory allegations that Defendants intended for Plaintiffs to rely on the misrepresentation and that Plaintiffs did rely on it.  Compl. ¶¶ 133-135.  Plaintiffs do not allege when (if ever) this misrepresentation was communicated to them, nor when or how they relied on it.

Second Claim for Fraudulent Concealment.  Plaintiffs allege that Defendants concealed Mr. Alkhatib's employment at Zazzle and Mr. Alkhatib's intent to allow Zazzle to install the software on its servers.  Compl. ¶ 139.  Plaintiffs do not allege that they had a special relationship with Defendants (such as a fiduciary one), nor do they allege when, where, or how Defendants had the ability or opportunity to conceal this information via an online purchase.

Third Claim for Promissory Fraud.  Plaintiffs conclusorily allege that by purchasing the license, Defendants falsely promised they would comply with its terms.  Compl. ¶ 145.

1    <u>Fourth Claim for Intentional Interference with Contractual Relations (Against Zazzle</u>

2    <u>Only)</u>.  Plaintiffs allege that Ms. Laatz and Mr. Alkhatib entered into a valid license agreement, of

3    which Zazzle was aware.  Compl. ¶¶ 151-152.  Plaintiffs further allege that Zazzle's alleged act of

4    instructing its employee, Mr. Alkhatib, to download the software onto Zazzle's servers interfered

5    with Mr. Alkhatib's agreement with Plaintiffs.  Compl. ¶¶ 153-154.

6    <u>Fifth Claim for Federal Copyright Infringement (Against Zazzle Only)</u>.  Plaintiffs allege

7    that Zazzle infringed Plaintiffs' copyright by (1) installing its Blooming Elegant Trio font software

8    on Zazzle's servers, thereby allegedly reproducing and distributing it (Compl. ¶ 159), and (2) later

9    offering a different font, the Morgana Font, to its users, which Plaintiffs claim mimicked the "look

10   and feel" of Plaintiffs' fonts (Compl. ¶¶ 91-95, 160).  The complaint includes no allegations

11   regarding the software behind the Morgana font, or whether the person who wrote the code for the

12   Morgana font software had access to or copied the alleged Blooming Elegant font software.

13   Plaintiffs' copyright registrations state that Ms. Laatz published the works on February 16,

14   2016, but did not register them until more than five years later, on February 18, 2021.  Compl. ¶

15   40, & Ex. A at 39-44.  The registrations state that Ms. Laatz created "font data," and also indicate

16   that there is "correspondence" associated with the registrations.  Compl. Ex. A at 40, 42, 44.  The

17   registrations state that the owner and author is individual Plaintiff Nicky Laatz.  *Id.* at 39, 41, 43.

18   <u>Sixth Claim for Federal Trademark Infringement (Against Zazzle Only)</u>.  Plaintiffs allege

19   that "Nicky Laatz" (defined in the complaint to include both Plaintiffs) obtained Trademark

20   Registration No. 6,626,946 for the mark "BLOOMING ELEGANT."  Compl. ¶ 41.  The

21   trademark registration states that it is registered to "Laatz, Nicky (UNITED KINGDOM

22   INDIVIDUAL), DBA Nicky Laatz Creations."  Compl. Ex. B at 46.  Plaintiffs contend that Zazzle

23   infringed their trademark by using the "BLOOMING ELEGANT" mark in connection with the

24   sale, offering for sale, distribution, or advertising of the (actual) Blooming Elegant Font Trio as

25   used on Zazzle's goods and services.  Compl. ¶ 167.  Plaintiffs cite an online design customization

26   tool using the BLOOMING ELEGANT mark which allows users to design their own products

27   using the Blooming Elegant Trio of fonts.  Compl. ¶ 74.  Plaintiffs also allege that at least through

28   August 2022, Zazzle ranked and recommended the Blooming Elegant font.  Compl. ¶ 75.

1    Seventh Claim for Breach of Contract (Against Mr. Alkhatib Only).   Plaintiffs allege that

2  Ms. Laatz entered into a license agreement with Mr. Alkhatib, and that Mr. Alkhatib breached it

3  by, among other things, copying Plaintiffs' font software onto Zazzle's servers and permitting

4  Zazzle's designers to use the Blooming Elegant Trio in their designs.  Compl. ¶¶ 173, 174, 177.

5                              **FACTS SUBJECT TO JUDICIAL NOTICE**

6        For the reasons set forth in Defendants' concurrently filed Request for Judicial Notice, the

7  following additional facts pertinent to this Motion are subject to judicial notice.

8        As Plaintiffs' copyright deposit materials reflect, Plaintiffs submitted to the Copyright

9  Office "PDF file[s] containing source code for an installable OFT file containing the work."  Ex. 4

10  at 6, Ex. 5 at 6, Ex. 7 at 6.  The files follow a visually similar format and layout, and contain

11  various common references such as "Generated by: FontLab 7.1.2" (Ex. 1 at 2, Ex. 2 at 2) and

12  "'metaCreator':true," "'metaFormatVersion':8," and "'metaBuild:':'7455'" ( Ex. 1 at 7, Ex. 2 at

13  7; Ex. 3 at 8).[2]

14        Plaintiffs' correspondence with the Copyright Office shows that, in response to Plaintiffs'

15  applications, the Copyright Office Examiner had concerns about whether the works were

16  copyrightable, stating as follows:

17        "[Y]ou filed an application to register a 'computer program,' however; the deposit

18        you submitted does not contain a computer program.  This appears to be a font.

19        Typically, fonts come in as XML.  If this is XML, please confirm.  […] In addition,

20        ***if this is XML please let us know if it was hand-coded by a human author or if it***

21        ***was generated by a font program, such as FontLab or Fontographer.  If the XML***

22        ***was merely generated by a font program and was not hand coded by a human***

23        ***author, it cannot be registered***..."

24  Ex. 4 at 7, Ex. 5 at 6, Ex. 6 at 6 (emphasis added).  Through several subsequent exchanges,

25  Plaintiffs' attorney (on Plaintiffs' behalf) avoided responding to the Examiner's question

26  ――――――――――――――――――

27  [2]   Exhibits cited herein refer to the concurrently filed Declaration of Rachel Kassabian in support

28  of Defendants' Request for Judicial Notice.

1  regarding whether the software file was "hand-coded by a human author" or "generated by a font

2  program, such as FontLab." Plaintiffs initially stated: "You are correct that the work is a font, but

3  what we submitted is not XML.  Rather, it is a PDF file containing source code for an installable

4  OTF file containing the work." Ex. 4 at 6, Ex. 5 at 5, Ex. 6 at 5.  The Examiner responded with its

5  original question, asking Plaintiffs again to "[p]lease confirm what language or format the code is

6  written in AND that it was hand-coded rather than generated by a font design program.  If this

7  code was merely generated by a font program and was not hand coded by a human author, it

8  cannot be registered." Ex. 4 at 4-5, Ex. 5 at 4-6, Ex. 6 at 4-6.

9        Plaintiffs responded: "Ms. Laatz[] personally created the designs and instructions in the

10  font software file we submitted, including instructions for linking, spacing, kerning, and outlining

11  characters, all of which is packaged as an OTF installable computer program file, which is what

12  was attached to my last email." Ex. 4 at 5, Ex. 5 at 5, Ex. 6 at 5.  Not seeing an answer to his

13  question, the Examiner again asked Plaintiffs to "please confirm if the information in the PDF that

14  you submitted is hand-coded …." Ex. 4 at 2-4, Ex. 5 at 2-4, Ex. 6 at 2-4.  Plaintiffs again dodged

15  the question, stating only that the "deposit that we tried to submit originally and that I attached to

16  my first email below is an installable OTF file, which is a 'computer program' and is the entire

17  work of the author." Ex. 4 at 3, Ex. 5 at 3, Ex. 6 at 3.

18        The Examiner then informed Plaintiffs that "[i]f you respond and do not … confirm if *the*

19  *font data* in the PDF file was hand-coded, I will refuse this registration with no further action."

20  Ex. 4 at 2, Ex. 5 at 2, Ex. 6 at 2  (emphasis added.)  Plaintiffs then "confirm[ed] that Ms. Laatz

21  hand-coded *the designs and instructions* in the font data that we submitted as a pdf file." Ex. 4 at

22  2, Ex. 5 at 2, Ex. 6 at 2(emphasis added).

23        The Examiner repeatedly informed Plaintiffs throughout the correspondence referenced

24  above that knowingly making a false representation in any written statement filed in connection

25  with the copyright application is a violation of 17 U.S.C. § 506(e) and a finable offense. *See id*.

26        Separately, Plaintiffs' citation of a message which they received from a Zazzle Senior

27  Product Marketing Manager in November 2016 is incomplete. *See* Dkt. ¶¶ 52-54.  In full, the

28  message reads:  "Saw your Blooming Elegant Font Trio and believe that our Designers would love

it!  ***We noticed that you offer free personal use options, but weren't able to find any options that address non-personal use***.  Do you offer a license in perpetuity for server based use?"  Ex. 7.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

I. Whether the Court should dismiss Plaintiffs' complaint because (1) Plaintiffs fail to plead a valid copyright claim; (2) Plaintiffs' state law claims are preempted; (3) Plaintiffs fail to properly plead their fraud-based claims; (4) Plaintiffs fail to properly plead intentional interference with contractual relations; (5) Plaintiffs fail to properly plead an actionable trademark infringement; and (6) Plaintiffs fail to properly plead a breach of contract claim.

II.  Whether the Court should dismiss all claims brought by Nicky Laatz Creations UK Ltd. due to lack of standing.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Dismissal is proper where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacific Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Although factual allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation omitted).  If "allegations of other facts consistent with the challenged pleading could not possibly cure" deficiencies in the complaint, then dismissal with prejudice is appropriate even if the complaint has not been amended yet.  *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).  On a motion to dismiss, a court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## ARGUMENT

## I.    PLAINTIFFS FAIL TO PLEAD A VALID COPYRIGHT CLAIM

### A.     Plaintiffs Fail To Plead Ownership Of A Valid Copyright

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282, 1296 (1991).  Ordinarily, a presumption of validity applies to all works timely registered.  *Art of Living Found. v. Does*, *1-10*, 2012 WL 1565281, at \*8 (N.D. Cal. May 1, 2012).

Here, because Plaintiffs did not apply to register the copyrights in their asserted Blooming Elegant "font software" within five years of first publication (Compl. Ex. A at 39-44), the statutory presumption of validity does not apply.  *See* 17 U.S.C. § 410(c); *Lawrence v. Sony Pictures Ent. Inc.*, 2011 WL 13143714, at \*3 (C.D. Cal. July 28, 2011), aff'd, 534 F. App'x 651 (9th Cir. 2013) (presumption that purported copyright owner owns valid copyright based on a certificate of registration "arises only if the underlying work is registered within 5 years of initial publication").  Plaintiffs thus bear the burden of pleading facts establishing the validity of their asserted copyrights, and have failed to do so here.

### 1.     Typefaces, Or Fonts, Are Not Copyrightable

U.S. copyright law distinguishes between a "typeface," which generally refers to the design of letters and characters, and "font software," which is a computer program that generates a typeface.  As the Copyright Office confirms, it "does not register claims to copyright in typeface designs as such, whether generated by a computer program, or represented in drawings, hard metal type, or any other form."  Registrability of Computer Programs That Generate Typefaces, 57 FR 6201-01; *see also, e.g.*, 37 C.F.R. § 202.1 ("The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained: (e) Typeface as typeface."); *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978) ("[T]ypeface is an industrial design in which the design cannot exist independently and separately as a work of art.  Because of this, typeface has never been considered entitled to copyright.").  On the other hand, the Copyright Office may register a copyright in software that generates typefaces, but only if the software consists of "original computer programs."  Registrability of Computer Programs That Generate Typefaces, 57 Fed. Reg. 6201-01 at 6201-2 (Feb. 2, 1992).

Although Plaintiffs appear to recognize that typefaces are not copyrightable, their complaint nevertheless focuses on the alleged uniqueness and originality of the unprotectable Blooming Elegant typeface (which they refer to as a "font" or "script").  They claim that Ms. Laatz is an "expert font designer" who "has been involved in the graphic design industry for decades."  Compl. ¶ 30.  Plaintiffs allege that Ms. Laatz "designed and created a unique trio of fonts" in 2016—that is, the unprotectable typefaces.  Compl. ¶ 36.  Their allegations focus on the "unique features" of the Blooming Elegant font, such as "stylistic alternative characters," "ligatures," and "individual swashes," that make it "particularly valuable and difficult to replace with another script that will have the same proportions of elegance, weight, and playfulness." Compl. ¶¶ 37-38.  Because a typeface is not copyrightable, these allegations do not establish Plaintiffs' ownership of a valid copyright.

### 2.   Plaintiffs Fail To Plead That They Authored The Original Code For The Font Software At Issue

Plaintiffs' complaint is devoid of facts sufficient to allege Ms. Laatz's creation of the original Blooming Elegant "font software," or that otherwise establish the originality and copyrightability of that computer program.  Plaintiffs plead nothing about Ms. Laatz's training or education in software programming or her ability to code, or whether she personally wrote the code for the software at issue, and if so, when she created it and what coding language she used. In sum, the complaint fails to plausibly allege Plaintiffs' creation and ownership of an original font software program.  Instead, Plaintiffs simply allege that she "has offered the font software to implement" the Blooming Elegant typefaces since 2016.  *Id.*

### 3.   Judicially Noticeable Documents Appear To Confirm That Plaintiffs' Font Software Is *Not* Copyrightable

Judicially noticeable documents appear to confirm that the Blooming Elegant font software is *not* copyrightable.  Specifically, in connection with Plaintiffs' applications for copyright registrations, the Copyright Office informed Plaintiffs that software generated by font programs such as FontLab were *not* copyrightable, and that only font software that was hand-coded by a human author could be copyrighted.  *See, e.g.,* Ex. 4 at 7 (Copyright Office emails to Plaintiffs' lawyer Stephen C. Steinberg, repeatedly asking Plaintiffs to "please let us know" if the Blooming

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

Elegant font software "was hand-coded by a human author or if it was **generated by a font program, such as FontLab**," and informing Plaintiffs that if it "was merely generated by a font program and was not hand coded by a human author, **it cannot be registered**") (emphasis added).

Plaintiffs (through their counsel) failed to answer the Examiner's question, requiring the Examiner to repeat the question three more times in follow-up emails, with Plaintiffs sidestepping the question each time.  Finally, the Examiner warned Plaintiffs that "[i]f you respond and do not … confirm if **the font data** in the PDF file was hand-coded, I will refuse this registration with no further action."  *See, e.g.,* Ex. 4 at 2 (emphasis added.)  Plaintiffs' response was artfully phrased: "We … confirm that Ms. Laatz hand-coded **the designs and instructions** in the font data that we submitted as a pdf file."  *Id.* at 1.  (Emphasis added.)  Despite this representation to the Copyright Office, the deposit materials themselves state on their face that the font software was "**Generated by: FontLab 7.1.2**."  *See* Ex. 1 at 2 (emphasis added); Ex. 2 at 6.

Thus, Plaintiffs have not only failed to meet their burden of pleading facts establishing the validity of their copyrights (warranting dismissal of their copyright claim), judicially noticeable documents suggest the invalidity of their registrations, such that leave to amend would be futile.

**B.      Plaintiffs Fail To Plead Infringement Of Any Protected Rights**

Even if Plaintiffs had adequately alleged ownership of valid copyrights in the Blooming Elegant font software, their copyright claim would still be subject to dismissal because they have failed to plead facts supporting their bald claim that Defendants infringed any of their purported protected rights in the Blooming Elegant font software.

As for Defendants' alleged violation of Plaintiffs exclusive right to "reproduce" the software, Plaintiffs merely allege that after Mr. Alkhatib, acting on Zazzle's behalf, entered into a license agreement with Plaintiffs, he "download[ed] the Blooming Elegant Trio font software and install[ed] such software on Zazzle's servers."  Compl. ¶ 59; *see id.* ¶ 159 (alleging Zazzle "reproduced and distributed the Blooming Elegant Trio font software by installing it on Zazzle's servers, and thereby made the fonts available to everyone of Zazzle's designers and individual users").  But downloading a copy of the software is explicitly authorized by the license, by Plaintiffs' own allegations.  *See* Compl. ¶ 42 (license permits user to "install the font software 'on

1    up to two computers used by the end user, so long as only one computer is used at a time'").

2    Plaintiffs' allegations of the violation of their exclusive right of "distribution" fare even

3    worse.  Plaintiffs do not allege that Zazzle distributed their software—which is the copyrighted

4    work at issue.  Instead, Plaintiffs allege that Defendants violated their distribution right when they

5    "install[ed] [the software] on Zazzle's servers, and *thereby made the fonts* available to everyone

6    [sic] of Zazzle's designers and individual users."  Compl. ¶ 159 (emphasis added).  But this

7    allegation fails to allege any distribution of the alleged copyrighted work—the software.  Making

8    "the fonts" available to Zazzle users would not violate any distribution right because the "fonts"

9    (*i.e.*, the "typeface") are not copyrightable as a matter of law.  *See* § I.A.1 *supra*.

10   Finally, Plaintiffs fail to state a claim for violation of their exclusive rights to reproduce or

11   distribute the Blooming Elegant font software based on their allegations of Defendants' use of the

12   "Morgana font."  *See* Compl. ¶ 160 ("By installing Morgana on Zazzle's servers and making it

13   available to its designers and individual users, Zazzle has violated Nicky Laatz's exclusive rights

14   of reproduction and distribution.").  Again, Plaintiffs' allegations are insufficient, because they

15   focus on Defendants' alleged reproduction and distribution of an uncopyrightable "font"—or

16   typeface—not a font software.  Plaintiffs make no allegation that Defendants ever had access to

17   the Morgana *software* or that it was substantially similar to the Blooming Elegant software, or that

18   Defendants ever reproduced or distributed the Morgana software.  Plaintiffs' allegations about

19   similarities between the Morgana typeface and the Blooming Elegant typeface are insufficient as a

20   matter of law to state a claim for copyright infringement.  *See, e.g.*, *Harris v. Simon & Schuster,*

21   *Inc.*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) ("[F]onts are not protected by the federal

22   copyright statute, and therefore [Plaintiff's] allegation that [defendant] altered the font of the

23   Passage in violation of his copyright is without merit.").

24   Plaintiffs have therefore failed to state a claim for infringement of any of their alleged

25   exclusive rights in any validly registered copyrightable work.

26   **II.    THE COPYRIGHT ACT PREEMPTS PLAINTIFFS' STATE LAW CLAIMS**

27   Plaintiffs' first, second, third, fourth and seventh claims, all premised on state law, fail to

28   state valid claims because the federal Copyright Act preempts them.

1    Section 301(a) of the Copyright Act preempts state law rights and remedies that are

2  equivalent to the exclusive rights within the general scope of copyright.  17 U.S.C. § 301(a); *Laws*

3  *v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (stating that Congress enacted §

4  301 "to preempt and abolish any rights under the common law or statutes of a State that are

5  equivalent to copyright and that extend to works[ ] within the scope of the Federal copyright law")

6  (quoting H.R. Rep. No. 94-1476, at 130 (1976)).

7    "The Ninth Circuit employs a two-part test to determine whether the Act preempts

8  particular state law claims.  Preemption occurs when: (1) the work at issue comes within the

9  subject matter of copyright and (2) the rights granted under state law are 'equivalent to any of the

10  exclusive rights within the general scope of copyright' set forth in the Act."  *Selby v. New Line*

11  *Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000).  "[W]hen plaintiff's claim relies

12  solely on defendant's use of copyrighted material—that is, the reproduction, performance,

13  distribution, or display of the work—the claim is preempted."  *McCormick v. Sony Pictures Ent.*,

14  2008 WL 11336160, at *9 (C.D. Cal. Nov. 17, 2008).  To survive preemption, "the state cause of

15  action must protect rights which are qualitatively different from the copyright rights," and "have

16  an extra element which changes the nature of the action."  *Laws*, 448 F.3d at 1143 (citation

17  omitted).

18    Moreover, for preemption, the question "is not whether a work is protected by copyright,

19  but rather whether it is the kind of work covered by the Copyright Act."  *Daniher v. Pixar*

20  *Animation Studios*, 2022 WL 1470480, at *5 (N.D. Cal. May 10, 2022).  Thus, Plaintiffs' state law

21  claims may be preempted even if Plaintiffs do not own valid copyrights.  *Id.*

22    **A.    Plaintiffs' First, Second And Third Fraud-Based Claims Are Preempted**

23    For a fraud-based claim to survive preemption, "the misrepresentation must be based on a

24  core of allegations dissimilar from those on which the copyright infringement claim is based."

25  *Giddings v. Vison House Prod., Inc.*, 2007 WL 2274800, at *3 (D. Ariz. Aug. 7, 2007).  When the

26  alleged misrepresentations "are derived from Defendants' unauthorized reproduction and

27  distribution of Plaintiff's [alleged copyright work] and, thus, are not, in actuality, different from

28  the copyright claim," the claims are preempted.  *Id.* (applying preemption where "Plaintiff's fraud

claim is rooted in Defendants' alleged misrepresentation of the artist's signature and of limited-edition prints"); *Idema v. Dreamworks, Inc*., 162 F. Supp. 2d 1129, 1191-92 (C.D. Cal. 2001) ("Though nominally including an 'extra element' of falsity, the only 'misrepresentation' alleged is as to the authorship of what was, for purposes of the copyright claims, the allegedly infringing work.... Plaintiffs do not allege any 'false promise' or misrepresentation (separate) from that of authorship/basis for the allegedly infringing work .... Thus, this claim falls squarely within the preemption analysis....").

Here, the crux of Plaintiffs' fraudulent misrepresentation, fraudulent concealment, and promissory fraud claims is the allegation that Defendants used the Blooming Elegant font software in violation of the Blooming Elegant License.  Compl. ¶¶ 130, 138, 145.  Plaintiffs allege that, in violation of the license, "Zazzle copied the Blooming Elegant Trio font software onto its servers and made the Blooming Elegant Trio available on its website for designers and individual users to use in their designs."  Compl. ¶ 64.  These are the same allegations (and theory of liability) that underpin Plaintiffs' claim for copyright infringement.  Because Plaintiffs' allegations supporting their fraud-based claims derive from Defendants' alleged unauthorized reproduction and distribution of the Blooming Elegant font software, they do not state an "extra element."  The Copyright Act therefore preempts those claims.

**B.     Plaintiffs' Seventh Claim For Breach Of Contract Is Preempted**

Breach of contract claims are preempted where the only "promises" at issue in the contract, and that were allegedly breached, are promises "to protect the rights to reproduce and distribute" the copyrighted work.  *See, e.g.*, *Giddings*, 2007 WL 2274800 at *2 ("In this case, Plaintiff's contract with Defendants only promises to protect the rights to reproduce and distribute Plaintiff's copyrighted artwork.  These are exactly the same rights that are covered by federal copyright law. Because there are no extra elements present in the contract, Plaintiff's breach of contract claim is preempted by her federal copyright infringement cause of action.") (citations omitted); *Selby v. New Line Cinema Corp*., 96 F. Supp. 2d 1053, 1061 (C.D. Cal. 2000) (dismissing plaintiff's breach of implied-in-fact contract which was based on Defendants' alleged promise not to "use" plaintiff's ideas, as this promise does not prohibit any conduct beyond that prohibited by the

Copyright Act); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 444 (M.D.N.C. 2005) ("The instant breach of contract claim "is not saved because [defendant] permitted its employees to use the unauthorized [protected work] copy.  [Defendant's] grant of access to its employees is nothing more than distribution, a right protected by the Copyright Act."); *see also* Melville B. Nimmer and David Nimmer, 1 Nimmer on Copyright § 1.01[B][1][a] (1994) ("Preemption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials.").

Plaintiffs' claim for breach of contract is preempted under this standard.  To support their claim for breach of contract, Plaintiffs allege that Mr. Alkhatib breached the Blooming Elegant License by "copying the software for the Blooming Elegant Trio of fonts onto Zazzle's own internal servers and permitting each of Zazzle's hundreds of thousands of designers and tens of millions of customers to use the Blooming Elegant Trio in their custom designs."  Compl. ¶ 177.  Thus, substantively, Plaintiffs are alleging nothing more than that a breach of Plaintiffs' alleged exclusive rights to reproduce and distribute their copyrighted works.  Accordingly, the Court should dismiss Plaintiffs' breach of contract claim as preempted.

### C.      Plaintiffs' Fourth Claim For Intentional Interference Is Preempted

Claims for intentional interference are preempted "to the extent the requirement of an intentional wrongful act was satisfied by acts of copyright infringement."  *TV One LLC v. BET Networks*, 2012 WL 13012674, at *10 (C.D. Cal. Apr. 2, 2012) (collecting cases).  In *TV One*, the plaintiff had a contract with some of the defendants for the exclusive rights to broadcast defendants' copyrighted TV program.  *Id.* at *1-2.  The plaintiff alleged that the defendants breached that right by providing the program to unlicensed distributors who improperly broadcast the program.  *Id*.  The plaintiff brought claims for copyright infringement and state law violations, including intentional interference with contractual relations.  The court held that "it is clear that unauthorized broadcasting is the predicate on which the tortious interference claims are based.  These rights are equivalent to the rights granted by section 106 of the Copyright Act.  Consequently, the court concludes that the [state law] causes of action are preempted."  *Id.* at *11; *see also*, *e.g.*, *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 887 (S.D.

Cal. 2019) (finding intentional interference claims preempted:  "Plaintiffs make it clear they are accusing Defendants of distributing and/or selling Plaintiffs' copyrighted designs without Plaintiffs' authorization. [] Plaintiffs' claim of intentional interference is "predicated on" the allegation that Defendants sold the copyrighted works, even though the claim also involves the element of Defendants interfering with [Plaintiff's] relationship in order to obtain those works."); *Media.net Advert.  FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1072 (N.D. Cal. 2016) (finding intentional interference with contract claim preempted where "the core of Plaintiff's claim is based on copying its registered HTML code in violation of Plaintiff's copyright," and thus is "not qualitatively different from its copyright infringement claims"); *Solo v. Dawson*, 2010 WL 11508000, at *10 (C.D. Cal. Feb. 8, 2010) (tortious interference claims are preempted where "it is clear that the acts that allegedly constitute interference are acts covered by the Copyright Act").

These authorities compel the dismissal of Plaintiffs' intentional interference claim.  The "wrongful act" on which Plaintiffs premise their claim for intentional interference is Defendants' alleged distribution and reproduction of Plaintiffs' allegedly copyrighted work beyond the scope of a license.  Specifically, Plaintiffs allege that Mr. Alkhatib and Ms. Laatz entered into the Blooming Elegant License; that Zazzle knew about the Blooming Elegant License at the time of its execution and intended to interfere with it by "by directing Mr. Alkhatib to download the Blooming Elegant Trio font software to Zazzle's servers and to provide access and use by all of Zazzle's designers and individual users"; that "Mr. Alkhatib did in fact download [the alleged font software] onto Zazzle's servers and provide it for access and use by  Zazzle's designers and individual users"; that these actions were a breach of contract; and that, as a result of this alleged intentional interference, Ms. Laatz suffered damages.  Compl. ¶¶ 151-156.

Thus, despite Plaintiffs' legal argument in its Complaint that this claim is not preempted because it seeks to enforce contractual rights which are separate from the copyrights (*see* Compl. ¶ 128), the only facts Plaintiffs allege show that this claim, like the breach of contract claim, is based on Defendants' alleged unauthorized reproduction and distribution of the alleged copyrighted work.  This claim is therefore preempted too.

Nor is Plaintiffs' allegation of Zazzle's supposed "intent" to interfere with the Blooming

1   Elegant License sufficient to avoid preemption.  In *Media.net*, the court held that, "[t]o the extent

2   Plaintiff argues there is an extra element of intent, Plaintiff still cannot avoid preemption" because

3   "Defendants' alleged intent does not qualitatively change the nature of the claim here which is

4   predicated on a copyright violation." *Id.* at 1073 (collecting cases).  The same is true of the

5   alleged intent Plaintiffs pleaded here—it does not qualitatively change the nature of this claim.[3]

6   ### III.   PLAINTIFFS FAIL TO PLEAD THEIR FRAUD CLAIMS WITH PARTICULARITY AND FAIL TO PLEAD THE NECESSARY ELEMENTS

7
8           Plaintiffs' first, second and third claims based on Defendants' alleged fraud-based conduct

9   fail to state valid claims, including because Plaintiffs fail to plead the elements of fraud with

10  particularity, and otherwise fail to plead the required elements.

11          "Under California law, a cause of action for fraud requires the plaintiff to establish: (1) a

12  knowingly false representation by the defendant; (2) made with intent to deceive or induce

13  reliance by the plaintiff; (3) justifiable reliance by the plaintiff; (4) resulting damages." *Smith v.*

14  *Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001).  "In alleging fraud or mistake, a

15  party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ.

16  P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (any fraud claims,

17  including claims of nondisclosure, need to plead with the heightened pleading requirement of Rule

18  9(b) and are not satisfied by general pleadings).  To satisfy the heightened standard under Rule

19  9(b), the allegations must be "specific enough to give defendants notice of the particular

20  misconduct which is alleged to constitute the fraud charged so that they can defend against the

21  charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

22  727, 731 (9th Cir. 1985).  Claims sounding in fraud "must identify the time, place and content of

23  the alleged misrepresentation" and "must plead facts explaining why the statement was false when

24  it was made." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001)

25          Plaintiffs fail to satisfy the heightened pleading standards for fraud for any of the elements

26  of their fraud-based claims.

27

28  [3] This claim also fails because Zazzle cannot interfere with its own contract.  *See* § VI *infra.*

***First***, as to the element of misrepresentation, Plaintiffs contend that Mr. Alkhatib misrepresented how the Blooming Elegant License will be used, but they allege no actual "false statements, false promises, [or] omissions" which he made in the course of this routine online transaction, nor any such false statements made by Zazzle.  Compl. ¶ 126; *see id.* at ¶¶ 130, 138, 145.  Nor is it otherwise evident how Mr. Alkhatib even could have made any such false statements, given that whatever "statements" he made were made in connection with a routine online transaction—visiting a website, selecting a product, and clicking "purchase."  Indeed, Plaintiffs fail to allege when and how any "statement"—let alone a false one—was made at all, and thus, they fail to plead their fraud claims with particularity.  *See, e.g.*, *Canard v. Bricker*, 2015 WL 846997, at *6 (N.D. Cal. Feb. 25, 2015) (claim not pled with particularity required by Rule 9(b) where "plaintiff fails to identify the time, place, and content of any purported misrepresented fact or omission of material fact").

Plaintiffs' allegation that the act of entering into the Blooming Elegant License constituted simultaneously a false statement, false promise, and omission by Zazzle and Mr. Alkhatib cannot withstand Rule 9(b).  It is well-settled that failure to perform a promise standing alone does not amount to fraud.  *See Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001) (dismissing plaintiff's fraud claim for failing to comply with Rule 9(b) because it "contains no facts (besides the alleged breach of contract) suggesting that [Defendant's] representations were false at the time they were made").

***Second***, Plaintiffs also fail to allege fraudulent intent.  "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation.'"  *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (dismissing fraud claim under Rule 9(b)) (citations omitted).  Nor does failure to perform a promise constitute conclusive or complete evidence of fraud or fraudulent intent, or even raise a presumption that the promisor did not intend to perform when he or she made the promise.  *See Canard*, 2015 WL 846997 at *6 ("Courts [] have oft rejected the argument that a plaintiff can prove the fraudulent intent by simply pointing to the defendant's subsequent failure to perform under the agreement.").

Plaintiffs have pleaded no facts supporting even an inference of intent (nor could they). Their core allegation is that a Zazzle Senior Product Marketing Manager contacted Ms. Laatz in November 2016 to tell Ms. Laatz that she "saw your Blooming Elegant Font Trio" and thought Zazzle users "would love it!," and then inquired about a possible "license in perpetuity for server based use." Compl. ¶¶ 53-54. Thus, Plaintiffs claim, Zazzle made its purchase in May 2017 knowing that Plaintiffs' standard license was insufficient for their purposes. But the Complaint omits a critical sentence between the two statements it selectively quotes from this message:

> Saw your Blooming Elegant Font Trio and believe that our Designers would love it! ***We noticed that you offer free personal use options, but weren't able to find any options that address non-personal use***. Do you offer a license in perpetuity for server based use?

Ex. 7 (emphasis added). There is no reference to a (paid) standard license in the message, as Plaintiffs imply. The message provides no basis from which to infer fraudulent intent. Plaintiffs' allegations are insufficient as a matter of law. *See, e.g.*, *AMC Tech., LLC v. Cisco Sys., Inc*., 2012 WL 174949, at *3 (N.D. Cal. Jan. 20, 2012) ("While AMC alleges that Cisco never intended to perform its obligations under the OEM Agreement, it fails to allege any actions by Cisco that substantiate that Cisco harbored such an intent at the time it entered the agreement.").

***Third***, Plaintiffs fail to plead with particularity facts showing Plaintiffs' reasonable reliance on Defendants' alleged misrepresentations. *See Mazur v. eBay Inc*., 2008 WL 618988, at *13 (N.D. Cal. Mar. 4, 2008) ("The same level of specificity is required with respect to [pleading] reliance."). Plaintiffs merely make a conclusory allegation that they relied on Mr. Alkhatib's alleged misrepresentations when entering into the Blooming Elegant License. Compl. ¶¶ 133, 142, 147. They offer no facts or allegations to support that they even saw any of the supposed representations he made in making this online purchase, or that they received any information provided by Mr. Alkhatib before entering into the Blooming Elegant License, which again, was a routine online purchase. Compl. ¶ 134. To the contrary, the complaint alleges that Mr. Alkhatib was able "to download the Blooming Elegant Trio font software and install such software on Zazzle's servers" after he bought the Blooming Elegant License, without any interaction with Ms.

1   Laatz whatsoever.  Compl. ¶¶ 58-59.

2       *Finally*, Plaintiffs fail to adequately plead a claim for fraudulent concealment because they

3   do not allege any duty to disclose on the part of Mr. Alkhatib or Zazzle.  *See* Compl. ¶¶ 60, 137-

4   143.  A duty to disclose is a required element of this claim.  *See, e.g.*, *Jackson v. City of Modesto*,

5   2022 WL 3083649, at *7 (E.D. Cal. Aug. 3, 2022) ("It is true that the FAC alleges that Carroll

6   failed to disclose facts and information to Plaintiffs, but the FAC fails to allege any kind of duty

7   that would have required Carroll to disclose any facts to Plaintiffs. Without allegations or citation

8   to applicable authority that establishes that Carroll had some form of duty to disclose, the FAC's

9   allegations of silence or a failure to disclose are insufficient."); *Workplace Techs. Rsch., Inc. v.

10   Project Mgmt. Inst., Inc.*, 2019 WL 3804019, at *8 (S.D. Cal. Aug. 13, 2019) ("To the extent

11   WTRI asserts a fraudulent concealment claim, it fails to establish PMI had a duty to disclose its

12   intent not to perform its contractual obligations and does not plausibly allege PMI intentionally

13   concealed this decision with the intent to defraud WTRI.").

14       Here, Plaintiffs have failed to plead any duty to disclose—nor is there such duty.  Plaintiffs

15   do not plead that Mr. Alkhatib had any relationship, fiduciary or otherwise, with Plaintiffs.  At

16   best, Plaintiffs allege that Mr. Alkhatib purchased a license from them by visiting a website and

17   making an online purchase.  But "courts have generally held that parties in an arms-length

18   negotiation are not in a special relationship that gives rise to a duty to disclose." *Ace Am. Ins. Co.

19   v. Hallier*, 2015 WL 1326499, at *3 (D. Nev. Mar. 25, 2015); *see also Shum v. Intel Corp.*, 2008

20   WL 4414722, at *10 (N.D. Cal. Sept. 26, 2008) (parties in an arms-length negotiation had no duty

21   to disclose any potential harmful facts); *Scafidi v. W. Loan & Bldg. Co.*, 72 Cal. App. 2d 550, 562

22   (1946) ("[M]ere silence or inaction, or both, are by themselves insufficient to establish such a

23   concealment.").  And this rule applies even more forcefully here, where the parties to the

24   transaction were literal strangers in a routine, asynchronous, online transaction.

25       Further, Plaintiffs fail to allege how, in the context of an online transaction, any alleged

26   omission by Defendants could have impacted Plaintiffs' actions to prevent the alleged harm.  *See

27   Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1152 (N.D. Cal. 2021) (granting motion to dismiss

28   fraud by omission claim where plaintiffs failed to plead that they read the information on

defendant's webpage or other information provided by defendant and thus "cannot argue that curing an alleged omission in [defendant's information] would have changed Plaintiffs' behavior such that they would have successfully identified and avoided [the alleged harm]").

## IV.   PLAINTIFFS FAIL TO PROPERLY PLEAD A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiffs' fourth claim for intentional interference with contractual relations is premised on Zazzle's alleged improper interference with a contract between Mr. Alkhatib and Plaintiffs—the Blooming Elegant License.  Compl. ¶¶ 150-156.  But Plaintiffs also allege that, at all times, including with respect to his entry into the license, Mr. Alkhatib was acting in his capacity as an employee of, on behalf of, and at the direction of Zazzle.  *Id.* at ¶ 61 ("At all relevant times when entering into a license agreement to purchase a copy of Nicky Laatz's Blooming Elegant Trio font software and when uploading the software to Zazzle's servers, Mr. Alkhatib was acting in his capacity as an employee of, on behalf of, and at the direction of Zazzle.").

Accordingly, based on Plaintiffs' own allegations, the Blooming Elegant License was between Zazzle and Plaintiffs.  As a matter of law, a party cannot intentionally interfere with its own contract.  *See, e.g.*, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("The tort cause of action for interference with contract does not lie against a party to the contract."); *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007) (extending rule to contracts generally).  Plaintiffs have therefore failed to state a claim for intentional interference.

## V.   PLAINTIFFS FAIL TO PLEAD ACTIONABLE TRADEMARK INFRINGEMENT

Plaintiffs' sixth claim for trademark infringement is barred by the nominative fair use doctrine.  The "nominative use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law:  Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition."  *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  "[A] commercial user is entitled to a nominative fair use defense provided he meets the following three requirements:  first, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may

1   be used as is reasonably necessary to identify the product or service; and third, the user must do

2   nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the

3   trademark holder."  *Id*.  In other words, when a mark is used merely to refer to the actual product

4   in question, rather than to promote knockoff goods with an intent to confuse the consumer into

5   purchasing the latter, that use is considered a non-actionable nominative fair use.

6        Here, Plaintiffs allege that Zazzle is "using, and will continue to use, in commerce,

7   reproductions, copies, or colorable imitations of the "BLOOMING ELEGANT" mark in

8   connection with the sale, offering for sale, distribution, or advertising of Zazzle's goods and

9   services.  Compl. ¶ 167.  They further assert that "Zazzle copied the Blooming Elegant Trio font

10  software onto its servers and made the Blooming Elegant Trio available on its website for

11  designers and individual users to use in their designs."  Compl. ¶ 64.  Plaintiffs' trademark

12  infringement claim asserts that Zazzle infringed their trademark rights by using the BLOOMING

13  ELEGANT mark to reference exactly that—the Blooming Elegant typeface.  This is a non-

14  actionable nominative fair use.  *See, e.g.*, *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d

15  884, 894-95 (9th Cir. 2019) (affirming motion to dismiss where Defendants offered a seminar

16  discussing Plaintiffs' specific program and provided advertisements using words which were

17  "necessary to identify Plaintiff's product").

18  **VI.    PLAINTIFFS FAIL TO PLEAD A CLAIM FOR BREACH OF CONTRACT
           AGAINST MR. ALKHATIB**

19
20       Plaintiffs' seventh claim against Mr. Alkhatib for breach of contract also fails because, by

     Plaintiffs' own allegations, Mr. Alkhatib entered into the contract on his employer Zazzle's behalf,
21
     and thus he cannot be individually liable as he is not a party to the contract.  *See* Compl. ¶ 61 ("At
22
     all relevant times when entering into a license agreement to purchase a copy of Nicky Laatz's
23
     Blooming Elegant Trio font software and when uploading the software to Zazzle's servers, Mr.
24
     Alkhatib was acting in his capacity as an employee of, on behalf of, and at the direction of
25
     Zazzle.").  "In general, under California law, an agent acting on behalf of a disclosed principal
26
     cannot be held personally liable on the contract."  *F.D.I.C. v. Frankel*, 2011 WL 5975262, at *5
27
     (N.D. Cal. Nov. 29, 2011) (granting motion to dismiss with prejudice a breach of contract claim
28

1   against an individual defendant where the allegation in the complaint that the individual defendant

2   "was, 'at all times relevant to this Complaint, ... acting in his capacity as an employee and/or agent

3   of [his employer],' [] effectively precludes a breach of contract claim against [the employee]

4   personally").  The breach of contract claim should be dismissed for this reason too.

5   **VII.   PLAINTIFFS FAIL TO PLEAD THAT PLAINTIFF NICKY LAATZ CREATIONS UK LTD. HAS STANDING TO ASSERT ITS CLAIMS**

6          The Court should dismiss all claims raised by Nicky Laatz Creations UK Ltd. (claim nos.

7   1-7) for lack of standing.  Throughout their complaint, Plaintiffs use the defined term "Nicky

8   Laatz" to refer to the individual Nicky Laatz and the corporate entity Nicky Laatz Creations UK

9   Ltd. collectively.  *See* Compl. at p. 1.  Thus, the complaint fails to plead that the corporate entity

10  owns the intellectual property at issue in those claims, which is requirement for standing.  *Silvers*

11  *v. Sony Pictures Ent., Inc*., 402 F.3d 881, 884 (9th Cir. 2005) (to have standing to sue for

12  "copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right

13  under a copyright,'" citing 17 U.S.C. § 501(b)).  The copyright registrations attached to the

14  complaint state on their face that the owner and author is Nicky Laatz.  Compl. at 39, 41, 43.

15  Because Plaintiffs fail to plead that Nicky Laatz Creations UK Ltd. is an owner of the alleged

16  copyrights, the copyright infringement claim it brings should be dismissed for lack of standing.

17  *See Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp*., 2011 WL 281020, *6 (C.D. Cal.

18  Jan. 26, 2011) ("The complaint's alternative characterizations of plaintiff as the assignee and

19  licensee of copyrights owned by Lee does not demonstrate that plaintiff has standing to sue for

20  infringement of the copyrights at issue.").

21         Likewise, Plaintiffs' trademark registration, which is attached to the complaint, states that

22  it is registered to "Laatz, Nicky (UNITED KINGDOM INDIVIDUAL), DBA Nicky Laatz

23  Creations."  Compl. Ex. B at 46.  Only the owner of a trademark has standing to bring trademark

24  claims, and therefore, this claim should also be dismissed based on lack of standing for the

25  corporate entity.  *See Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit* Co., 361 F. Supp. 2d

26  1244, 1254 (E.D. Wash. 2004) (granting motion to dismiss for lack of standing for trademark

27  infringement since "the Lanham Act grants standing to assert a claim of trademark infringement to

28

1   the 'registrant' of the mark,'" citations omitted).

2      Similarly, Plaintiffs do not allege any facts showing that the corporate entity was a party to

3   the license agreement, nor do they allege that it experienced any of the alleged fraud.  *See* Compl.

4   ¶¶ 151, 173.  Claims 4 and 7, as raised by the entity plaintiff, must therefore be dismissed.  *See*

5   *Ryan v. Aegis Specialty Ins.,* 2021 WL 6618753, at *3 (C.D. Cal. Nov. 1, 2021) (dismissing breach

6   of contract claims for lack of standing where "Plaintiff does not allege the contracting entities to

7   the agreements assigned their contract claims to Plaintiff, nor identify any other basis on which he

8   has standing to sue for Defendants' termination of the agreements with those entities."); *Cleveland*

9   *v. Deutsche Bank Nat. Tr. Co.,* 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) ("[S]omeone who

10  is not a party to a contract has no standing to enforce the contract or to recover extra-contract

11  damages for wrongful withholding of benefits to the contracting party," citations omitted).

12     Finally, Plaintiffs' pleading deficiency means that they fail to allege that the corporate

13  entity had any interaction with or reliance on the alleged misrepresentations that are the basis of

14  the fraud-based claims (claims 1-3).  Those also must be dismissed.  *Iezza v. Saxon Mortg. Servs.,*

15  Inc., 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010) (dismissing misrepresentation-based and

16  breach of contract claims, among others, for lack of standing, where claims stem from mortgage

17  loan payments and plaintiff was not a party to the loan agreement).

18                                **CONCLUSION**

19     Defendants respectfully request that the Court grant this motion without leave to amend.

20

21  DATED:  October 17, 2022                Respectfully submitted,

22                                          QUINN EMANUEL URQUHART &
23                                          SULLIVAN, LLP

24

25                                  By   */s/ Rachel Herrick Kassabian*
                                    _____
26                                       Rachel Herrick Kassabian
                                         Attorneys for Defendants Zazzle Inc. and
27                                       Mohamed Alkhatib

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS