PATRICK M. RYAN (SBN 203215)
   pryan@bzbm.com
STEPHEN C. STEINBERG (SBN 230656)
   ssteinberg@bzbm.com
CHAD E. DEVEAUX (SBN 215482)
   cdeveaux@bzbm.com
CHRISTOPHER W. GRIBBLE (SBN 285337)
   cgribble@bzbm.com
P. CASEY MATHEWS (SBN 311838)
   cmathews@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:    (415) 956-1900
Facsimile:     (415) 956-1152

Attorneys for Plaintiffs NICKY LAATZ and
NICKY LAATZ CREATIONS UK LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ and NICKY LAATZ CREATIONS UK LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ZAZZLE, INC. and MOHAMED ALKHATIB, <br><br> Defendants. | Case No. 5:22-cv-04844-BLF <br><br> **PLAINTIFFS' OPPOSITION TO ZAZZLE, INC. AND MOHAMED ALKHATIB'S MOTION TO DISMISS** <br><br> Date:          March 2, 2023 <br> Time:          9:00 a.m. <br> Courtroom:  3 <br> Judge:         Hon. Beth Labson Freeman <br><br> Trial Date:    None Set |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................................1

II.     THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR JUDICIAL
        NOTICE AND TREAT THEIR MOTION AS A RULE 56 MOTION..................3

III.    ANALYSIS ..........................................................................................................5

        A.      Nicky Laatz's State Law Claims Are Properly Pleaded.............................5

                1.      Defendants' Challenges to Nicky Laatz's Contract Claim Are
                        Meritless ........................................................................................5

                        a.      The Contract Claims Are Not Preempted ...........................5

                                (i)     The *Altera-ProCD* Test Governs Copyright
                                        Preemption ...........................................................5

                                (ii)    Defendants' Arguments Fail the *Altera-ProCD* Test...........10

                                (iii)   Defendants' Cases Also Do Not Support Preemption .........10

                2.      Both Zazzle and Alkhatib Can Be Held Liable for Breach of
                        Contract .......................................................................................11

                3.      The Tortious Interference Claim Is Properly Pleaded................................12

                        a.      The Tortious Interference Claim Is Not Preempted ......................12

                        b.      Tortious Interference Was Properly Pleaded in the
                                Alternative ..................................................................13

                4.      Defendants' Challenges to the Fraud Claims Are Meritless ......................13

                        a.      The Fraud Counts Satisfy Rule 9 and California Law ....................13

                                (i)     The Complaint Alleges Misrepresentation............................14

                                (ii)    The Complaint Alleges Scienter ...........................................15

                                (iii)   The Complaint Alleges Reliance and Damages...................17

                                (iv)    Defendants' Disclosure Arguments Are Frivolous ..............18

                        b.      The Fraud Claims Are Not Preempted...................................18

        B.      The Copyright Claim Is Properly Pleaded .................................................21

                1.      The Complaint Pleads Ownership of a Valid Copyright............................21

                        a.      The Complaint Pleads Ownership of Copyrighted Software ..........21

b.  Infringement Claims Need Not Be Pleaded with Particularity ........22

c.  Defendants' Copyright Invalidity Defense Fails............................22

2. The Complaint Pleads Paradigmatic Infringement of Protected Rights ............................................................................................................24

IV. CONCLUSION ............................................................................................................25

PLAINTIFFS' OPPOSITION TO ZAZZLE, INC. AND MOHAMED ALKHATIB'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*
424 F.3d 1079 (9th Cir. 2005) ........................................................................*passim*

*Am. Airlines, Inc. v. Wolens*
513 U.S. 219 (1995) ................................................................................................. 6, 7

*Bean v. McDougal Little*
538 F. Supp. 2d 1196 (D. Ariz. 2008) ..................................................................... 20

*Bonner v. Select Portfolio Serv., Inc.*
2010 WL 2925172 (N.D. Cal. July 26, 2010) .......................................................... 2

*Campbell v. Walt Disney Co.*
718 F. Supp. 2d 1108 (N.D. Cal. 2010) .................................................................. 4

*Cavalier v. Random House, Inc.*
297 F.3d 815 (9th Cir. 2002) ................................................................................. 21

*Clinton v. Boladian*
2013 WL 12126107 (C.D. Cal. May 2, 2013) ........................................................ 22

*Computerland Corp. v. Microland Comput. Corp.*
586 F. Supp. 22 (N.D. Cal. 1984) .......................................................................... 22

*Dielsi v. Falk*
916 F. Supp. 985 (C.D. Cal. 1996) ........................................................................ 20

*Esplanade Prods., Inc. v. Walt Disney Co.*
2017 WL 5635027 (Nov. 8, 2017) ......................................................................... 25

*Facebook, Inc. v. Sluchevsky*
2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ...................................................... 15

*Feist Publ'ns, Inc. v. Rural T. Serv. Co., Inc.*
499 U.S. 340 (1991) ............................................................................................... 19

*Geraci v. Homestreet Bank*
347 F.3d 749 (9th Cir. 2003) ................................................................................. 23

*Giddings v. Vision House Prods., Inc.*
2007 WL 2274800 (D. Ariz. Aug. 7, 2007) ..........................................................*passim*

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*
925 F.3d 1140 (9th Cir. 2019) ............................................................................... 23

*Hale v. Atl. Rec. Corp.*
  2013 WL 12138708 (C.D. Cal. Sept. 3, 2013)..............................................22

*Idema v. Dreamworks, Inc.*
  162 F. Supp. 2d 1129 (C.D. Cal. 2001)..............................................*passim*

*JZK, Inc. v. Weaver*
  2006 WL 2988172 (W.D. Wash. Oct. 17, 2006)..............................6, 9, 10, 11

*Keithley v. Homestore.com, Inc.*
  2007 WL 2701337 (N.D. Cal. Sept. 12, 2007)..............................................24

*Khoja v. Orexigen Therapeutics, Inc.*
  899 F.3d 988 (9th Cir. 2018)..............................................................4, 5

*Klinger v. Modesto Fruit Co.*
  107 Cal. App. 97 (1930)................................................................11, 12

*Lazar v. Super. Ct.*
  12 Cal. 4th 631 (1996)........................................................................13

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*
  351 F. Supp. 2d 436 (M.D.N.C. 2005)..................................................10

*McCormick v. Sony Pictures*
  2008 WL 11336160 (C.D. Cal. Nov. 17, 2008) ........................................19

*MDY Indus., LLC v. Blizzard Entm't, Inc.*
  629 F.3d 928 (9th Cir. 2010)..........................................................12, 13

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*
  426 F. Supp. 2d 1101 (E.D. Cal. 2006)..............................................*passim*

*Micro Star v. Formgen Inc.*
  154 F.3d 1107 (9th Cir. 1998)............................................................21

*Micro/sys, Inc. v. DRS Tech., Inc.*
  2015 WL 12748631 (C.D. Cal. Feb. 18, 2015) ..............................19, 20, 21

*Newt v. Twentieth Cent. Fox Film Corp.*
  2016 WL 4059691 (C.D. Cal. July 27, 2016) ...........................................4

*Northwest Home Designing Inc. v. Sound Built Homes Inc.*
  776 F. Supp. 2d 1210 (W.D. Wash. 2011)..........................................*passim*

*Oracle USA Inc. v. Rimini Street, Inc.*
  6 F. Supp. 3d 1108 (D. Nev. 2014)..................................................24, 25

*PAE Gov't Servs., Inc. v. MPRI, Inc.*
  514 F.3d 856 (9th Cir. 2007)..............................................................13

*Peter T. Erdelyi & Assoc. v. Optimum Seismic, Inc.*
    2021 WL 4775635 (C.D. Cal. July 21, 2021) .......................................................... 21, 22

*ProCD, Inc. v. Zeidenberg*
    86 F.3d 1447 (7th Cir. 1996) ..................................................................................*passim*

*S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*
    697 F.3d 544 (7th Cir. 2012) ................................................................................... 7

*Scott v. Kuhlmann*
    746 F.2d 1377 (9th Cir. 1984) ................................................................................ 23

*Selby v. New Line Cinema Corp.*
    96 F. Supp. 2d 1053 (C.D. Cal. 2000) ........................................................ 2, 10, 11

*Semegen v. Weidner*
    780 F.2d 727 (9th Cir. 1985) .................................................................................. 14

*Smith v. Equinox Holdings, Inc.*
    2015 WL 1952564 (N.D. Cal. April 10, 2015) ................................................ 23, 24

*Tacori Ent. v. Nerces Fine Jewelry*
    2013 WL 12113229 (C.D. Cal. Sept. 20, 2013) ................................................. 9, 10

*Tangiers Inv., L.P. v. Klein*
    2011 WL 13356110 (S.D. Cal. Nov. 10, 2011) ...................................................... 16

*Teller v. Dogge*
    8 F. Supp. 3d 1228 (D. Nev. 2014) .................................................................. 21, 22

*Ticketmaster LLC, v. Prestige Ent't, Inc.*
    306 F. Supp. 3d 1164 (C.D. Cal. Jan. 31, 2018) .............................................*passim*

*TV One LLC v. BET Networks*
    2012 WL 13012674 (C.D. Cal. April 2, 2012) ...................................................... 12

*U.S. v. Ritchie*
    342 F.3d 903 (9th Cir. 2006) ................................................................................... 3

*Valente-Kritzer Video v. Pinckney*
    881 F.2d 772 (9th Cir. 1989) .................................................................. 2, 18, 19, 20

*Walling v. Beverly Enters.*
    476 F.2d 393 (9th Cir. 1973) ........................................................................... 14, 16

*Warner Const. Corp. v. City of Los Angeles*
    2 Cal. 3d 285 (1970) ............................................................................................. 18

*Wixen Music Publ'g, Inc. v. Triller, Inc.*
    2021 WL 1255190 (C.D. Cal. Feb. 24, 2021) ........................................................ 4

*Zeleny v. Burge*
  2022 WL 3013138 (C.D. Cal. July 1, 2022) ................................................................ 4

*Zito v. Steeplechase Films, Inc.*
  267 F. Supp. 2d 1022 (N.D. Cal. 2003) ................................................................. 20

**Statutes**

17 U.S.C.
  § 301 ................................................................................................................ 6, 7, 18
  § 410 ................................................................................................................ 21

49 U.S.C.App.
  § 1305(a)(1) ................................................................................................... 7

**Legislative History**

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 129-132 .................................... 6, 10

**Court Rules**

Federal Rules of Civil Procedure
  Rule 8 ............................................................................................................ 13
  Rule 9 ............................................................................................................ *passim*
  Rule 12 ................................................................................................... 3, 21, 23
  Rule 56 ................................................................................................... 3, 23

**Other Authorities**

Chad DeVeaux, *Lost in the Dismal Swamp: Interstate Class Actions, False Federalism, and the Dormant Commerce Clause*
  79 Geo. Wash. L.R. 995 (2011) ................................................................. 7

Erin Hogan, *Approval Versus Application*
  83 Denv. U. L. Rev. 843 (2006) ................................................................. 6

I.      **INTRODUCTION**

This case presents a textbook example of graft. Plaintiff Nicky Laatz owns federally registered copyrights for the font software used to implement her Blooming Elegant Trio of fonts. She and her company, Nicky Laatz Creations UK Ltd. (collectively "Nicky Laatz"), offer the software for these fonts by a limited license available for purchase both directly through her website and through select online marketplaces such as Creative Market.

In 2016, hoping to offer the Blooming Elegant fonts to its customers, Defendant Zazzle, Inc. ("Zazzle") contacted Nicky Laatz, asking: "Do you offer a license in perpetuity for server-based use?" Complaint ("Comp.") ¶¶ 53-54. She did not reply, as she often does not respond to requests to vary the terms of her standard single-seat licenses. In May 2017, after failing to obtain a perpetual server-based license, Zazzle directed one of its engineers, Defendant Mohamed Alkhatib ("Alkhatib"), to acquire a single-seat license in his own name, so Zazzle could obtain and use the software implementing the fonts in a manner it knew was not covered by the license. At Zazzle's direction, Alkhatib violated the license by uploading the software onto Zazzle's servers for commercial use by Zazzle's independent designers as well as any of the nearly 100 million people who use Zazzle's website. This brazen chicanery, which is alleged with great detail in the Complaint, constitutes such clear-cut examples of fraud, breach of contract, and copyright infringement, that Nicky Laatz has already moved for partial summary judgment as to liability. *See* Dkt. 26. Despite this, Defendants assert the Complaint "should be dismissed with prejudice." Motion to Dismiss ("Mtn.") at 1:5-6. But their flimsy arguments fail for myriad reasons.

First, Defendants' contract preemption arguments fail because, under controlling Ninth Circuit precedent, a state claim is *not* preempted if it "includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). And for contract claims, the Ninth Circuit adopted "the Seventh Circuit's analysis" in *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996). *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1108 (E.D. Cal. 2006). Under this test (hereinafter, the *Altera-ProCD* test), contract claims are not preempted because they include the "extra element" of "mutual assent and consideration." *Id.*

1    Second, despite the fact that Nicky Laatz anticipated Defendants' preemption argument

2    and cited *Altera* in her Complaint (*see* Comp. ¶ 124), Defendants fail to even cite *Altera* let alone

3    address it in their motion. Instead, they rely on three district court cases, which either predate

4    *Altera*, ignore it, or are from outside the Ninth Circuit. But even if these cases were the law (they

5    are not), there would still be no preemption. This is because these cases opine that contract claims

6    are preempted "where the **only** 'promises' at issue in the contract" were promises to refrain from

7    conduct prohibited by the Copyright Act. Mtn. at 13:19-21 (emphasis added). These cases all held

8    that contract claims are *not* preempted if they allege breaches of "additional rights" created by the

9    contract. *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1062 (C.D. Cal. 2000). Here,

10   since Nicky Laatz seeks to enforce contract rights separate from or in addition to those under the

11   Copyright Act, Defendants' preemption argument fails even under their inapposite cases.

12   Third, Defendants' claim that Nicky Laatz's fraud count fails to plead misrepresentation

13   and scienter is meritless. Misrepresentation is pleaded by alleging a defendant "created [an]

14   account" to access a website which required "assent[ing] to [Terms of Use]" prohibiting certain

15   conduct while harboring the intent to engage in the prohibited conduct. *Ticketmaster LLC, v.*

16   *Prestige Ent't, Inc.*, 306 F. Supp. 3d 1164, 1169-70 (C.D. Cal. Jan. 31, 2018). And "[s]cienter may

17   be averred generally, simply by saying that it existed." *Bonner v. Select Portfolio Serv., Inc.*,

18   2010 WL 2925172, at *5 (N.D. Cal. July 26, 2010). The Complaint satisfies these requirements by

19   alleging, inter alia, that Defendants misrepresented that the font software would "be used in

20   accordance with the terms of the … License," despite the fact that they "did not intend to use [the]

21   font software in accordance with the terms of the … License." Comp. ¶¶ 130, 138-39.

22   Fourth, Defendants' claim that Plaintiffs' fraud count is preempted fails because claims for

23   fraudulent inducement to contract are "not preempted … because the element of misrepresentation

24   is present." *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989).

25   Fifth, Defendants' challenges to the copyright infringement claims all fail because they are

26   either premised on *evidentiary* arguments that, at most, raise factual disputes or are based on

27   contentions that are at odds with black-letter law. Notably, Defendants claim they did not

28   "violat[e] … Plaintiffs['] exclusive right to 'reproduce' the software" by "download[ing] [it] and

PLAINTIFFS' OPPOSITION TO ZAZZLE, INC. AND MOHAMED ALKHATIB'S MOTION TO DISMISS

install[ing] [it] on Zazzle's servers" because the license authorized Alkhatib to "download[] a copy of the software." Mtn. at 10:21-27. But this ignores the fact that the license limited access to "one user"—Alkhatib—who was authorized to download it *only* "on up to two computers." Comp. ¶ 42. And it prohibits uploading onto a server, stating the user may not "mak[e] the [fonts] available on a digital asset management system, shared drive, or the like." *Id*. ¶ 42.

Finally, Plaintiffs concede that Nicky Laatz is the sole plaintiff with standing to pursue the copyright infringement count at issue here because the "trademark registration … states that it is registered to 'Laatz, Nicky' … ." But Defendants' claim that Nicky Laatz Creations UK Ltd. lacks standing to pursue Plaintiffs' state law claims fails because it rests on nothing more than Defendants' conclusory factual assertion that the corporate entity lacks standing.

Nicky Laatz notes, as a procedural matter, that Defendants' Motion is 24 pages long, including the notice of motion and motion, and that Defendants' Request for Judicial Notice ("RJN") is two pages long. Defendants' RJN thus exceeds the Court's 25-page limit. *See* Standing Order re Civil Cases of Judge Beth Labson Freeman, §§ IV(A)(1) & IV(G). Nonetheless, Nicky Laatz hereby addresses each of the requests contained in Defendants' RJN.

## II.   THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND TREAT THEIR MOTION AS A RULE 56 MOTION

A court must convert a Motion to Dismiss to a Motion for Summary Judgment if it considers extrinsic evidence submitted by the moving party that is not "attached to the complaint, … incorporated by reference in the complaint, or [a] matter[] of judicial notice." *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2006); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the ***motion must be treated as one for summary judgment under Rule 56***." (emphasis added)). But the extrinsic evidence that Defendants submit in support of their Motion is not attached to the Complaint, is not incorporated by reference into the Complaint, and cannot be judicially noticed. Accordingly, the Court should deem Defendants' Motion to Dismiss to be a Motion for Summary Judgment and consider the additional evidence that Nicky Laatz submits in support of her opposition to Defendants' converted Motion for Summary Judgment. *See* Fed. R.

Civ. P. 12(d) (when considering extrinsic evidence submitted on a motion to dismiss, "[a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

Defendants seek judicial notice of two categories of evidence that cannot be properly

considered on a motion to dismiss, all of which appear to have been taken from papers submitted

by Nicky Laatz in support of her Motion for Partial Summary Judgment. (RJN at 1:24-27, 2:3-5,

2:17-19.) Defendants rely on and request judicial notice of exhibits relating to Nicky Laatz's

registration of her copyrights. Exhibits 1-3 consist of pdfs of computer code that were deposited

with the U.S. Copyright Office in connection with Nicky Laatz's copyright registrations. But in

each of the cases cited by Defendants where such materials were judicially noticed, they were

"attached to, or referenced in, the Complaint." *Wixen Music Publ'g, Inc. v. Triller, Inc.*, 2021 WL

1255190, at *3 (C.D. Cal. Feb. 24, 2021); *see also Newt v. Twentieth Cent. Fox Film Corp.*, 2016

WL 4059691, at *3 & n.4 (C.D. Cal. July 27, 2016) (citing *Campbell v. Walt Disney Co.*,

718 F. Supp. 2d 1108, 1111 n.3 (N.D. Cal. 2010)) (taking judicial notice of materials because their

"contents are alleged in or incorporated by reference to the complaint").

Here, Nicky Laatz has made no reference to nor alleged any details of the contents of the

code for the software used to implement the Blooming Elegant Trio of fonts. Nor has she

mentioned the existence of these exhibits. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

1002 (9th Cir. 2018) (if a document not mentioned in the Complaint "merely creates a defense to

the well-pled allegations in the complaint, then that document did not necessarily form the basis of

the complaint" and cannot be incorporated by reference). Similarly, Exhibits 4-6 are

correspondence between counsel for Nicky Laatz and the U.S. Copyright Office. In the sole case

Defendants cite where judicial notice was taken of similar correspondence, the court also took

judicial notice *because* the correspondence was incorporated by reference in the complaint. *Zeleny

v. Burge*, 2022 WL 3013138, at *4 (C.D. Cal. July 1, 2022) ("[J]udicial notice is appropriate under

the incorporation-by-reference doctrine."). But there is no mention of correspondence with the

U.S. Copyright Office anywhere in the Complaint. *See Khoja*, 899 F.3d at 1002.

Finally, even if the Court were to take judicial notice of the exhibits, the purpose for which

Defendants seek judicial notice is improper on a Motion to Dismiss. "Although incorporation by

reference generally permits courts to accept the truth of matters asserted in incorporated

documents, we reiterate that it is improper to do so only to resolve factual disputes against the

plaintiff's well-pled allegations in the complaint. The incorporation-by-reference doctrine does not

override the fundamental rule that courts must interpret the allegations and factual disputes in

favor of the plaintiff at the pleading stage." *Khoja*, 899 F.3d at 1014. Thus, the Court should deny

the RJN and convert Defendants' Motion to Dismiss into a Motion for Summary Judgment.

## III.    ANALYSIS

### A.    Nicky Laatz's State Law Claims Are Properly Pleaded

#### 1.    Defendants' Challenges to Nicky Laatz's Contract Claim Are Meritless

##### a.    The Contract Claims Are Not Preempted

Defendants posit that Nicky Laatz's contract claim is "preempted by the Copyright Act"

because "the only 'promises' at issue in the contract" were "promises" not to "reproduce and

distribute" Plaintiffs' software. Mtn. at 1:13, 13:21-23. This misrepresents the terms of the license,

which includes numerous contractual rights different from those covered by the Copyright Act.

And Defendants' argument is also directly contrary to controlling Ninth Circuit precedent.

##### (i)    The *Altera-ProCD* Test Governs Copyright Preemption

The leading Ninth Circuit case holds that a "state law claim is not preempted" if it

"includes an 'extra element' that makes the right asserted qualitatively different from those

protected under the Copyright Act." *Altera*, 424 F.3d at 1089. For this reason, "[m]ost courts"

around the country "have held that the Copyright Act does *not* preempt the enforcement of

contractual rights." *Id.* (emphasis in original). Following this majority rule, "[t]he Ninth Circuit …

held that the Copyright Act does *not* preempt the enforcement of contractual rights." *Northwest

Home Designing Inc. v. Sound Built Homes Inc.*, 776 F. Supp. 2d 1210, 1215 (W.D. Wash. 2011)

(citing *Altera*, 424 F.3d at 1089) (emphasis added). This follows from "the purpose of federal

preemption: to prevent 'states from substituting their own [copyright] regulatory systems for those

of the federal government.'" *Meridian*, 426 F. Supp. 2d at 1108 (citing *Altera*, 424 F.3d at 1089).

The Copyright Act's legislative history makes this purpose clear. While "the Constitution

vested copyright protection in the federal government," Congress declined to meaningfully

1   exercise this power until it enacted the Copyright Act of 1976. Erin Hogan, *Approval Versus*

2   *Application*, 83 Denv. U. L. Rev. 843, 845 (2006). During the intervening "157 years, copyright

3   protection developed under a dual system of both state and federal law, creating an inconsistent

4   and confusing set of rules." *Id.* To cure this problem, Congress enacted the 1976 Act "to promote

5   national uniformity and to avoid the practical difficulties of determining and enforcing [a

6   copyright holder's] rights under the differing laws and in the separate courts of the various States."

7   H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 129. The Act thus preempts state laws "that are

8   equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301.

9   This is meant to prevent states from enacting their own copyright laws protecting a work that fails

10  to qualify for "Federal statutory copyright [protection] because it is too minimal or lacking in

11  originality to qualify." H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 131. But preemption does *not*

12  extend to state claims targeting the "invasion of personal rights" imposed by ***private*** agreements.

13  *Id.* at 132. As the Act's authors recognized, "***[n]othing in the [Act] derogates from the rights of***

14  ***parties to contract with each other and to sue for breaches of contract***." *Id.* (emphasis added).

15      In "finding [that] no federal preemption" barred the contract-based claim "in *Altera*, the

16  Ninth Circuit found compelling the Seventh Circuit's analysis … in *ProCD*." *Meridian*, 426

17  F. Supp. 2d at 1108. In *ProCD*, as here, the defendant "purchased [the plaintiff's] software and

18  used it in a manner contrary to the terms [of use]" in the parties' contract by "ma[king] it available

19  to the public for a reduced price, although the terms of the license allowed only private use." *JZK,*

20  *Inc. v. Weaver*, 2006 WL 2988172, at *3 (W.D. Wash. Oct. 17, 2006) (citing *ProCD*, 86 F.3d at

21  1455). *ProCD* held the contract claim was not preempted because "the rights created by contract

22  are not equivalent to any of the exclusive rights within the general scope of copyright." *Id.* (citing

23  *ProCD*, 86 F.3d at 1455). The *Altera-ProCD* test adopted by the Ninth Circuit requires the Court

24  to "focus[] its analysis on the purpose of federal preemption: to prevent 'states from substituting

25  their own regulatory systems for those of the national government.'" *Id.*

26      Applying this rationale in *ProCD*, Judge Easterbrook recognized that copyright preemption

27  is analogous to the preemption principles governing the Airline Deregulation Act ("ADA")

28  articulated by the Supreme Court in *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29 (1995).

1    *ProCD*, 86 F.3d at 1454. The ADA "preempts any state 'law, rule, regulation, standard, or other

2    provision relating to rates, routes, or services of any air carrier.'" *Id.* (quoting 49 U.S.C. App.

3    § 1305(a)(1)). The *Wolens* Court, per Justice Ginsberg, held the ADA did not preempt a state-law

4    contract claim because it sought "recovery solely for the airline's alleged breach of its own, *self-*

5    *imposed undertakings*." 513 U.S. at 228 (emphasis added). The "terms and conditions" contained

6    in an airline's contract with a passenger—even if those obligations are identical to the ones

7    imposed by a statute—"are privately ordered obligations" and do not implicate any "law, rule,

8    regulation, [or] standard … relating to … [the] services of [an] air carrier." *Id.* at 228-29.

9          Judge Easterbrook held the Copyright Act preempts only state laws that are analogous to

10   the consumer protection statutes preempted by the ADA—meaning laws or rules that seek to

11   apply *state-imposed duties* on parties. *ProCD*, 86 F.3d at 1455. Such statutes present a clear

12   impediment to national uniformity as "one state's deceptive practice might be another state's hard

13   bargain" because "state consumer protection laws 'vary substantially, imposing myriad

14   different … substantive elements, including differing requirements of privity, demand, scienter

15   and reliance.'" *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 557 (7th Cir.

16   2012) (quoting Chad DeVeaux, *Lost in the Dismal Swamp: Interstate Class Actions, False*

17   *Federalism, and the Dormant Commerce Clause*, 79 Geo. Wash. L. Rev. 995, 1021 (2011)).

18         The Copyright Act, like the ADA, prevents states from creating similar impediments to

19   nationwide copyright uniformity by "substituting their own regulatory systems for those of the

20   national government." *ProCD*, 86 F.3d at 1455. But it "does not … interfere with private

21   transactions in intellectual property, so it does not prevent states from respecting those

22   transactions." *Id.* This is because the rights imposed by copyright law—like the rights imposed by

23   the consumer-protection laws at issue in *Wolens*—are *government-imposed* "right[s] against the

24   world." *Id.* at 1454. But "by contrast," contract rights "affect only their parties." *Id.* Because they

25   are based on *privately* assumed obligations, "strangers" who are not parties "may do as they

26   please." *Id.* Thus, enforcement of the terms of the license prohibiting public dissemination of the

27   plaintiff's software did not interfere with the "attainment of national objectives" within the domain

28   of section 301. *Id.* at 1455. To the contrary, enforcement of contracts "reflect[s] private ordering"

1    that is "essential to the efficient functioning of markets." *Id.* at 1455.

2          In *Meridian*, Eastern District Judge Damrell applied the Ninth Circuit's *Altera-ProCD* rule

3    in rejecting preemption arguments identical to those in Defendants' Motion. There, the defendant

4    contracted to purchase a limited license to use the plaintiff's "project management software."

5    426 F. Supp. 2d at 1103-04. The license included terms of use that prohibited the defendant from

6    "copy[ing]" the software or "distribut[ing] copies of [the] software" to unauthorized persons. *Id.* at

7    1104, 1109. The plaintiff filed suit against the defendant "for breach of contract and copyright

8    infringement" for, inter alia, "cop[ying]" the plaintiff's software and "attach[ing] [it] as part of …

9    email attachments sent to [an unauthorized person]." *Id.* at 1104-05, 1109. The defendant argued

10   that the "plaintiff's contract claims [were] preempted by the federal Copyright Act." *Id.* at 1106.

11         Judge Damrell rejected this argument because a contract claim contains "an 'extra element'

12   that makes the right asserted qualitatively different from those protected by the copyright act." *Id.*

13   at 1108 (quoting *Altera*, 424 F.3d at 1089). "A copyright is a [government imposed] right against

14   the world" while contracts "affect only their parties; strangers may do as they please, so contracts

15   do not create exclusive rights." *Id.* "The 'extra element' was the mutual assent and consideration

16   required by a contract claim." *Id.* The terms the defendant breached—by "copy[ing]" the software

17   and "distribut[ing] copies" to an unauthorized person—was "a simple, two-party contract that,

18   whether general or restrictive, is not equivalent to any of the exclusive rights within the general

19   scope of copyright, and therefore may be enforced." *Id.* at 1104-05, 1108-09.

20         Judge Bryan made an identical holding in *Northwest*. There, the plaintiff "licens[ed]" the

21   defendant contractor to utilize the plaintiff's copyright-protected "architectural building plans" to

22   build a limited number of homes. 776 F. Supp. 2d at 1213. The defendant "exceeded the scope" of

23   the license by utilizing the plans to build numerous other houses without "pay[ing] royalties" to

24   the plaintiff. *Id.* Judge Bryan rejected the defendant's argument that the plaintiff's contract claims

25   were preempted because "[t]he Ninth Circuit … has held that the Copyright Act does not preempt

26   the enforcement of contractual rights." *Id.* at 1215 (citing *Altera*, 424 F.3d at 1089). By adopting

27   *ProCD*, the Ninth Circuit held that "[a] claim for breach of contract has the 'extra element' of an

28   alleged exchange of promises/representations between the parties" and thus "depends on more

1   than the mere act of copying or distribution regulated by the federal Copyright Act and is on that

2   basis not preempted by § 301(a)." *Id.* at 1216.

3        Judge Burgess likewise reached the same result in *JZK*. There, the defendant contracted to

4   participate in "seminars conducted by [the plaintiff]." 2006 WL 2988172, at *1. The contract's

5   "Conditions of Participation" barred the defendant from "disseminat[ing] information learned at

6   [the seminars]" to unauthorized persons. *Id.* at *1-2. The plaintiff sued the defendant after learning

7   she had "provided instruction, information and techniques she learned" in the seminars to paying

8   customers. *Id.* at *2. "The Complaint allege[d] a breach of the Conditions of Participation" by

9   disseminating the information "for [the defendant's] sole financial benefit" and sought "damages,

10  including, but not limited to, the income [the defendant] received from the activities conducted in

11  violation of the Conditions of Participation." *Id.* Applying the *Altera-ProCD* test, the court held

12  that the contract claim was *not* preempted because "[a] claim for breach of contract has the 'extra

13  element' of an alleged exchange of promises/representations between the parties" and, as such, it

14  "depends on more than the mere act of copying or distribution regulated by the federal Copyright

15  Act." *Id.* at *4. "The breach of contract claim [sought] to enforce the plaintiff's bargained-for right

16  not to have certain information disclosed to others …, rather than, as the copyright law provides,

17  to enforce an exclusive right to reproduce, distribute and display certain works." *Id.*

18       In *Tacori Ent. v. Nerces Fine Jewelry*, 2013 WL 12113229 (C.D. Cal. Sept. 20, 2013),

19  Judge Fischer likewise made this identical holding. There, the plaintiff sued the defendant for

20  breaching a contract "by infringing on [the plaintiff's] copyrights." *Id.* at *8. Applying the *Altera-*

21  *ProCD* test, the court held that the plaintiff's "breach of contract claim" was not preempted

22  because it "contain[ed] an extra element: the existence of an actual agreement between the

23  parties." *Id.* (citing *Altera*, 424 F.3d at 1089; *ProCD*, 86 F.3d at 1454). The existence of an "extra

24  element" is particularly evident when "the agreement between [the] plaintiff and defendant

25  involv[ed] a promise to pay for use of disclosed ideas." *Tacori*, 2013 WL 12113229, at *8.

26       Even *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001), another

27  pre-*Altera* case, cited by Defendants (*see* Mtn. at 13:2), reached this same conclusion, holding that

28  a contract claim—alleging the defendant disclosed "elements" of the plaintiff's copyrighted

1    work—had the requisite "'extra element'" because it required an "exchange of

2    promises/representations between the [parties]." *Id.* at 1171, 1192. This is the only construction

3    compatible with Congress's instruction that "[n]othing in the [Act] derogates from the rights of

4    parties to contract with each other and to sue for breaches of contract." H.R. Rep. No. 94-1476,

5    94th Cong., 2d Sess. 132.

6            **(ii)**        **Defendants' Arguments Fail the *Altera-ProCD* Test**

7          The Complaint itself explains that *Altera* is controlling precedent in this Circuit, which

8    dictates that the state-law claims at issue here are *not* preempted. *See* Comp. ¶ 124. Yet, despite

9    being put on notice of this binding authority, Defendants tellingly failed to even cite, let alone

10   address *Altera*, the *ProCD* decision it adopts, or any of the myriad cases applying the *Altera-*

11   *ProCD* test. Under this test, Defendants' preemption argument fails. Like the licensees in

12   *Meridian*, *Northwest*, *JZK*, *Tacori*, and *ProCD*, Alkhatib, acting on Zazzle's orders, "purchased

13   [Plaintiffs'] software and used it in a manner contrary to the terms of the … license" by "ma[king]

14   it available to the public" for Defendants' own profit despite the fact that "the terms of the license

15   allowed only private use." *JZK*, 2006 WL 2988172, at *3. He and Zazzle "copied [the font

16   software onto Zazzle's servers] and distributed copies of [it] as prohibited by [the license]."

17   *Meridian*, 426 F. Supp. 2d at 1109. "This type of license is a simple two-party contract that

18   whether general, or restrictive, is not equivalent to any of the exclusive rights within the general

19   scope of copyright, and therefore may be enforced." *Id.* at 1108-09. Under the *Altera-ProCD* test,

20   Plaintiffs' "contract claim seeks to enforce the plaintiff's bargained-for right not to have certain

21   information disclosed to others …, rather than, as the copyright law provides, to enforce an

22   exclusive right to reproduce, distribute and display certain works." *JZK*, 2006 WL 2988172, at *4.

23           **(iii)**       **Defendants' Cases Also Do Not Support Preemption**

24         Seeking to avoid the *Altera-ProCD* test, Defendants only cite cases that either predate

25   *Altera* (*Selby*, 96 F. Supp. 2d 1053), fail to cite *Altera* or appear to be unaware of its existence

26   (*Giddings v. Vision House Prods., Inc.*, 2007 WL 2274800 (D. Ariz. Aug. 7, 2007)), or are from

27   outside the Circuit (*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436

28   (M.D.N.C. 2005)). These cases are unavailing because *Altera* is controlling precedent. But even if

1  they could be reconciled with the *Altera-ProCD* test, Defendants' preemption argument still fails.

2  In these cases "the *only* 'promises' at issue in the contract" were promises to refrain from

3  conduct prohibited by the Copyright Act, i.e., not to "'reproduce and distribute the copyrighted

4  work.'" Mtn. at 13:19-21 (quoting *Giddings*, 2007 WL 2274800, at *2 (emphasis added)). The

5  promises that were breached "'d[id] not prohibit any conduct beyond that prohibited by the

6  Copyright Act.'" Mtn. at 13:28-14:1 (quoting *Selby*, 96 F. Supp. 2d at 1062). These cases held

7  contract claims are not preempted if the plaintiff alleges breaches of "additional rights [created by

8  the contract] other than promising not [to engage in conduct]" that is "prohibited by the Copyright

9  Act." *Selby*, 96 F. Supp. 2d at 1062; *accord Giddings*, 2007 WL 2274800 at *2.

10  The license here—unlike those in *Meridian*, *Northwest*, *JZK*, *Tocori*, and *ProCD*—does

11  not merely prohibit conduct that is proscribed by the Copyright Act. The Complaint seeks to

12  enforce contract rights that are apart from and in addition to rights under the Copyright Act. The

13  Blooming Elegant License limits, inter alia, use of the font software to "one single user," Alkhatib.

14  Comp. ¶¶ 175-76. The license also only permits a user to install the software on a maximum of

15  "two computers." *Id.* ¶ 42. And the license prohibits uploading the software onto a server, stating

16  that the user may not "mak[e] the [fonts] available on a digital asset management system, shared

17  drive, or the like for the purposes of sharing or transferring the [fonts], and [the user] must not

18  permit an end user of the end product to extract the [fonts] and use [them] separately from the End

19  Product." *Id*. These contract rights outlining the contours of who, how, and when the licensee can

20  access and use the software as well as the fonts they generate are contractual rights separate, apart,

21  and substantively different from Nicky Laatz's rights to control who can reproduce and/or

22  distribute the Blooming Elegant Trio font software protected by the Copyright Act.

23  **2.  Both Zazzle and Alkhatib Can Be Held Liable for Breach of Contract**

24  Defendants next argue that the breach of contract claim against Alkhatib "fails because …

25  [he] entered into the contract on his employer Zazzle's behalf, and thus he cannot be individually

26  liable as he is not a party to the contract." Mtn. at 21:19-22. This argument fails as a matter of law

27  because when an agent executes a contract on behalf of a principal "without disclosing [his or her]

28  agency," the other party may sue **both** the agent and the undisclosed principal. *Klinger v. Modesto*

*Fruit Co.*, 107 Cal. App. 97, 99, 101 (1930). This is because "[t]he agent may be held liable for his negligence in failing to disclose his principal and because the agent has seen fit to contract in his own name." *Id.* at 101. After "the agency is established," the non-breaching party may amend the complaint to add the principal as a party and has the option, any time before a damages judgment is entered, "to designate which party [it] elects to hold responsible for the obligation." *Id.* at 100.

Here, the Complaint alleges that Alkhatib executed the contract in his own name to obtain a one-user license "without disclosing [his] agency." *See Id.* at 99. It alleges that Alkhatib, Zazzle's "Senior Network Engineer," "***secretly purchase[d]*** a one-user … license for the Blooming Elegant Trio in his own name" at Zazzle's "instruct[ion]" to "***surreptitiously obtain[]*** the … font software ***for Zazzle***." *Id.* ¶¶ 8-9, 58 (emphasis added). Thus, Alkhatib may be held liable. But, in addition, when Alkhatib's "agency is established" by the Court, Nicky Laatz may amend the Complaint to add Zazzle as a co-defendant in the contract claim and, at any time prior to judgment, will have the option "to designate which party [it] elects to hold responsible for the obligation." *See Klinger*, 107 Cal. App. at 100-01.

### 3. The Tortious Interference Claim Is Properly Pleaded

#### a. The Tortious Interference Claim Is Not Preempted

Defendants argue Nicky Laatz's "intentional interference claims are preempted." Mtn. at 14:17. But again, the Ninth Circuit "relie[s] on the Seventh Circuit's analysis in *ProCD*," in determining whether "tortious interference claims [are] preempted by the Copyright Act." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010). Under this test, tortious interference claims are rarely preempted because "contractual rights are not equivalent to the exclusive rights of copyright" since "'[a] copyright is a right against the world" while "'[c]ontracts, by contrast, generally affect only their parties." *Id.* (quoting *ProCD*, 86 F.3d at 1454). The authorities cited by Defendants opine that the Ninth Circuit nonetheless permits preemption of tortious interference claims when the claims are based solely on the defendants' inducement of breaches of "rights granted by section 106 of the Copyright Act." *See TV One LLC v. BET Networks*, 2012 WL 13012674, at *11 (C.D. Cal. April 2, 2012). But the Ninth Circuit has made clear that a tortious interference claim can never be preempted when it is based on any

"contractual rights that are not equivalent to any of its exclusive rights in copyright." *MDY Indus.*, 629 F.3d at 957. Here, as explained above, Plaintiffs' tortious interference claim is based on contractual rights that are separate and apart from, and in addition to, Nicky Laatz's rights under the Copyright Act. *See supra* § III-A-1-a-iii. Thus, this preemption argument likewise fails.

### b.    Tortious Interference Was Properly Pleaded in the Alternative

Defendants assert that because "the Blooming Elegant License was between Zazzle and Plaintiffs" the tortious interference claim fails because "a party cannot intentionally interfere with its own contract." Mtn. at 20:13-16. This ignores the well-settled rule that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8. Indeed, such alternative pleading is allowed "even if the alternatives are mutually exclusive." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007).

Zazzle admitted it is a party to the contract because "the Blooming Elegant font was among four fonts purchased on a [Zazzle] company card by Mohamed Alkhatib," a Zazzle engineer, "***for use on [Zazzle's] site*** … .'" Comp. ¶ 63. Still, it is appropriate for Nicky Laatz to plead an interference claim in the alternative in the event Zazzle attempts to disown its prior admission and argue that it is not a party to the contract. But once the Court issues an order recognizing the existence of the agency relationship, Nicky Laatz will withdraw her tortious interference claim and add Zazzle as a co-defendant to her contract claim, as is her legal right.

### 4.    Defendants' Challenges to the Fraud Claims Are Meritless

### a.    The Fraud Counts Satisfy Rule 9 and California Law

Defendants claim that "Plaintiffs fail to plead the elements of fraud with particularity, and otherwise fail to plead the required elements." Mtn. at 16:7-10. This is wrong. "The elements of fraud … are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Id.* While fraud must be pleaded with particularity, Rule 9(b) does *not* "require any particularity in connection with an averment of intent, knowledge or condition of the mind"—only

"the identification of the circumstances constituting fraud." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). It requires allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). It simply requires the pleader to "state time, place and specific content of the false representation." *Id.* The Complaint abundantly satisfies all these requirements.

### (i)      The Complaint Alleges Misrepresentation

The Complaint specifies the requisite misrepresentation by alleging, inter alia, that Alkhatib and Zazzle: a) "misrepresented … that the Blooming Elegant License [would] be used in accordance with the terms of the Blooming Elegant License, including that it was for a single user named Mohamed Alkhatib" (Comp. ¶ 130); b) concealed the facts that "[they] did not intend to use Nicky Laatz's font software in accordance with the terms of the Blooming Elegant License," "the intended use was not for a single user named Mohamed Alkhatib, and was actually for Zazzle," and "Alkhatib's employment and agency relationship with Zazzle" (*id.* ¶¶ 138-39); and c) falsely promised that they would comply with the terms of the Blooming Elegant License, including that use of the font software would be limited to one user, the fonts would not be made available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the fonts, and they would not permit an end user of the end product to extract the fonts and use them separately from the end product. *Id.* ¶ 145.

Defendants claim this was insufficient to satisfy the "misrepresentation" requirement because Defendants' acceptance of the terms and conditions was a "routine online transaction," and the Complaint does not allege they made any "false statements, false promises, [or] omissions" regarding "how the [font software] will be used." Mtn. at 17:1-4. Judge Wright flatly rejected this identical argument in *Ticketmaster*, 306 F. Supp. 3d 1164. There, the defendant ticket scalpers electronically contracted with Ticketmaster to utilize its website to purchase "tickets for live entertainment events." *Id.* at 1169. "Users must agree to Ticketmaster's Terms of Use ('TOU') before they can view and use Ticketmaster's website." *Id.* at 1170. The "TOU grant users a limited … license to view [Ticketmaster's] Site … to purchase tickets as permitted by [the TOU]

for non-commercial purposes only if the user agrees not to conduct certain activities." *Id.* Prohibited activities include "using bots … to purchase and reserve large amounts of tickets." *Id.* Ticketmaster's complaint alleged that the defendants "assented to the TOU" by "creat[ing] … account[s]" with the intent to breach the TOU "by using bots … to purchase large quantities of tickets." *Id.* at 1178. Judge Wright held "[t]hese allegations satisf[ied] Rule 9(b) and California's pleading requirements for promissory fraud." *Id.* Specifically, the complaint included the requisite misrepresentation by alleging the scalpers "assented to the TOU" which prohibited "using bots … to purchase … tickets" while harboring the intent to "us[e] bots … to purchase … tickets." *Id.*

Judge Scott Corley made an identical finding in *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020). There, Facebook's fraud count alleged the defendants, participants in the Cambridge Analytica scandal, created "developer accounts on Facebook" that "violat[ed] … Facebook's [terms of service]." *Id.* at *8. The court held that this satisfied the "misrepresentation" requirement. *Id.* Likewise here, Defendants' acceptance of the "terms of the Blooming Elegant License" constitutes a fraudulent misrepresentation because they entered into the license while harboring the intent not to comply with its terms.

**(ii)      The Complaint Alleges Scienter**

The Complaint alleges Defendants made their misrepresentations with knowledge of falsity because, inter alia, they: a) knew "the Blooming Elegant License … did not cover Zazzle's intended use of the fonts and software, and that their representation that it was for a single user was false"; and b) "did not intend to use [the] font software in accordance with the terms of the Blooming Elegant License" and knew this was "unknown to Nicky Laatz." Comp. ¶¶ 132, 138, 141. Their "true intention in … entering into the … License was to allow Zazzle to install the … software on its servers, roll it out to Zazzle's entire user base, and exploit the font software for Zazzle's benefit and enrichment" (*id.* ¶ 139), and they intended Nicky Laatz to rely on their false promises. *Id.* ¶ 146. Despite these clear allegations, Defendants argue the Complaint fails to adequately plead that they "harbored an intention not to be bound by the terms of the contract at formation." Mtn. at 17:20-22. The Court should reject this frivolous claim. The allegations are far greater than what is required, as they are quite particular as to Defendants' scienter.

1    Rule 9(b) does *not* "require any particularity in connection with an averment of intent,

2    knowledge or condition of the mind. It only requires the identification of the circumstances

3    constituting fraud so that the defendant can prepare an adequate answer from the allegations."

4    *Walling*, 476 F.2d at 397. "Scienter may be averred generally, simply by saying that it existed."

5    *Tangiers Inv., L.P. v. Klein*, 2011 WL 13356110, at *2 (S.D. Cal. Nov. 10, 2011). The Complaint

6    goes far beyond merely "identif[ying] the circumstances constituting fraud" from which intent can

7    be inferred. It alleges that Defendants *admitted* their fraudulent intent, stating "on October 8, 2021

8    Zazzle's Senior Director of Legal, Liana Larson, admitted in writing 'that the Blooming Elegant

9    font was among four fonts purchased on a company card by Mohamed Alkhatib, our Sr. Network

10   Engineer, ***for use on our site*** … .'" Comp. ¶ 63 (emphasis in original).

11   　　Indeed, even without Defendants' admission, the Complaint would still satisfy Rule 9(b)'s

12   requirements. It alleges that before directing Alkhatib to "secretly purchase a one-user … license

13   for the Blooming Elegant Trio in his own name" to "surreptitiously obtain[] the … font software

14   for Zazzle," a "Senior Product Marketing Manager for Zazzle … contacted Nicky Laatz" and

15   asked Ms. Laatz: "'Do you offer a license in perpetuity for server-based use?'" *Id.* ¶¶ 8-9, 52, 54.

16   Zazzle asked this question because it knew "that a standard, single-seat license … would not cover

17   Zazzle's intended use." *Id.* ¶ 54. Nicky Laatz "did not respond to this inquiry, as she never offers

18   the type of server-based license for her font software that Zazzle would require." *Id.* ¶ 55. Thus, an

19   intent to deceive "may be deduced from the circumstances" because this communication shows

20   Zazzle always intended to use the font software in "perpetuity for server-based use" and that it

21   knew the terms of the license did not permit such use.

22   　　Defendants curiously claim "the Complaint omits a critical sentence" that suggests Zazzle

23   did not act with fraudulent intent—that Zazzle's manager stated: "***We noticed that you offer free***

24   ***personal use options, but weren't able to find any options that address non-personal use***." Mtn.

25   at 18:6-11 (emphasis in original). Based on this language, Zazzle argues: "There is no reference to

26   a (paid) standard license in the message, as Plaintiffs imply. The message provides no basis from

27   which to infer fraudulent intent." *Id.* at 18:12-13. But Zazzle's argument, based on the omitted

28   language outside of the four corners of the Complaint, is unavailing for at least three reasons.

First, for clarification because Defendants argue evidence beyond the Complaint, contrary to the omitted statement by Zazzle's manager, Nicky Laatz has never offered "free personal use options" related to the Blooming Elegant Trio of fonts. Decl. of Nicky Laatz ("Laatz Decl.") ¶¶ 10-15. Second, Zazzle's request for a perpetual server license was made via the Creative Markets chat system and that site only offered single-user commercial licenses costing $20 per user. Comp. ¶¶ 42, 52. Thus, regardless of the erroneous reference to "free personal use options," it can be inferred Zazzle knew that the only commercial licenses offered were for single users, not for servers. Third, it can be inferred that Zazzle's use of the Creative Markets site made it aware that the type of commercial license it sought was not available, which is why Zazzle requested that Nicky Laatz consider a perpetual server-based license.

### (iii)   The Complaint Alleges Reliance and Damages

The Complaint alleges: a) Nicky Laatz "rel[ied] on the false representation that the Blooming Elegant License was for a single user when entering into the license agreement with Mr. Alkhatib for the use of the … font software," and if Defendants had not made these misrepresentations, "Nicky Laatz would not have entered into the Blooming Elegant License with Mr. Alkhatib" (Comp. ¶¶ 134-35); b) had Defendants not concealed certain facts, "Nicky Laatz would not have entered into the Blooming Elegant License with Mr. Alkhatib" (*id.* ¶ 142); and c) Nicky Laatz relied on Defendants' false promises when entering into the license agreement, and absent the false promises, she would not have done so (*id.* ¶¶ 147-48).

Defendants claim this is insufficient because Nicky Laatz did not allege that she contemporaneously "saw any of the supposed misrepresentations [Defendants] made … when entering into the … License." Mtn. at 18:22-25. The *Ticketmaster* decision disposes of this frivolous argument. There, Ticketmaster alleged that "it relied on" the defendants' "assent[] to the [Terms of Use]" in allowing them access to its website and when it "sold [them] tickets." 306 F. Supp. 3d at 1178. "These allegations satisf[ied] Rule 9(b) and California's pleading requirements for promissory fraud" notwithstanding the fact that they did not allege any human being contemporaneously saw the scalpers' misrepresentations as the transactions occurred over the

17
**PLAINTIFFS' OPPOSITION TO ZAZZLE, INC. AND MOHAMED ALKHATIB'S MOTION TO DISMISS**

Internet without any direct human interaction. *Id.* Thus, Defendants' reliance argument fails. Defendants do not assert the Complaint fails to plead damages, so this element is also satisfied.

**(iv)** **Defendants' Disclosure Arguments Are Frivolous**

Defendants argue "Plaintiffs fail to adequately plead a claim for fraudulent concealment because they do not allege any duty to disclose on the part of Alkhatib or Zazzle." Mtn. at 19:2-3. But even "[i]n transactions which do not involve fiduciary or confidential relations," a "fraudulent concealment" claim arises when, inter alia, a defendant fails to disclose any material facts that "are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff." *Warner Const. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 293-94 (1970). Here, the Complaint alleges, inter alia, Defendants "conceal[ed] that the intended use" of the font software, "was not for a single user named Mohamed Alkhatib," but, in fact, the license "was actually for Zazzle." Comp. ¶ 138. Defendants likewise "concealed": "Mr. Alkhatib's … agency relationship with Zazzle; … [t]he true intention in Mr. Alkhatib entering into the Blooming Elegant License was to allow Zazzle to install the … font software on its servers, roll it out to Zazzle's entire user base, and exploit the font software for Zazzle's benefit and enrichment without Zazzle compensating Nicky Laatz, the owner and creator." *Id*. ¶ 139. These facts were material to the transaction and were "accessible exclusively to [Defendants]," and "[Defendants] knew that these facts were not known or reasonably discoverable by Nicky Laatz." *Id*. ¶¶ 140-42.

**b.** **The Fraud Claims Are Not Preempted**

The Ninth Circuit recognizes "fraud [in the inducement] is not preempted by § 301 because the element of misrepresentation is present." *Valente-Kritzer*, 881 F.2d at 776. Seeking to avoid this rule, Defendants cite two cases, addressing allegations of plagiarism and forgery, where defendants committed fraud by falsely identifying the author of artistic works. While these cases targeted fraudulent statements, neither involved fraud *in the inducement*.

In *Idema*, which pre-dated *Altera*, the plaintiff-screenwriter sued film producers for fraud claiming they "misrepresented that the source of [the film] 'The Peacemaker' was [the book] *One Point Safe* … in order to conceal … that the film was actually derived from" the plaintiff's "film treatments." 162 F. Supp. 2d at 1171-73. Similarly, in *Giddings*, the plaintiff-artist sued the

1   defendants for fraud, alleging they "forged [her] signature on prints and misrepresented limited

2   editions of [her] art." 2007 WL 2274800, at *1. These courts held that the plaintiffs' plagiarism

3   and forgery claims were preempted because allegations the defendants "misrepresent[ed] the

4   source of [plaintiffs' works]" did not plead "an 'extra element' of falsity" because "the only

5   'misrepresentation' alleged" was "the authorship of what was, for purposes of the copyright

6   claims, the allegedly infringing work." *See Idema*, 162 F. Supp. 2d at 1191-92; *see also Giddings*,

7   2007 WL 2274800, at *3 (fraud claim preempted because alleged "misrepresentation" was

8   "Defendants' misrepresentation of the artist's signature" which was "not … different from [the

9   plaintiff's] copyright claim"). This is because "copyright law" proscribes "a false claim of

10  authorship." *Micro/sys, Inc. v. DRS Tech., Inc.*, 2015 WL 12748631, at *3 (C.D. Cal. Feb. 18,

11  2015). Thus, these claims did not require any element not encompassed in the Copyright Act.

12  Similarly, unjust enrichment claims are preempted when they do not require "an[y] element other

13  than the unauthorized use of the copyrighted work." *Northwest*, 776 F. Supp. 2d at 1216.

14          In contrast, fraudulent *inducement* "is not preempted" because it requires an additional

15  "element of misrepresentation" that is not proscribed by the Copyright Act. *Valente-Kritzer*, 881

16  F.2d at 776. Unlike the fraud claims in *Idema* and *Giddings*, to prove fraud *in the inducement*, the

17  plaintiff must allege a "false promise or representation" *to the plaintiff* "upon which he [or she]

18  reasonably relied." *McCormick v. Sony Pictures*, 2008 WL 11336160, at *10 (C.D. Cal. Nov. 17,

19  2008) (citing *Idema*, 162 F. Supp. 2d at 1191-92). Reliance is *not* an element of a copyright

20  infringement claim. *See Feist Publ'ns, Inc. v. Rural T. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

21          Judge Gee's decision in *Micro/sys* demonstrates this critical distinction. There, the plaintiff

22  gave the defendant a limited license to access the plaintiff's copyrighted software "for the sole

23  purpose of determining whether to use that software or a competitive software." 2015 WL

24  12748631, at *4. But "[r]ather than using [the software] for this limited purpose," the defendant

25  "copied the software" and provided it to a third party, UPS. *Id.* at *1. The plaintiff sued the

26  defendant, inter alia, for copyright infringement and fraud because the plaintiff did not "provide a

27  license to [the defendant] or UPS … to copy [the software]." *Id.* Judge Gee rejected the argument

28  that the Copyright Act preempted the fraud claim, recognizing "[n]umerous courts in the Ninth

1   Circuit have found that claims of fraud … are not preempted" when the plaintiff alleges fraudulent

2   inducement because such claims "involve the element of a statement or misrepresentation that

3   induced the plaintiff's reliance." *Id.* at *4 (citing *Valente-Kritzer*, 881 F.2d at 776; *Zito v.*

4   *Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003); *Dielsi v. Falk*,

5   916 F. Supp. 985, 991 (C.D. Cal. 1996)). Applying this rule, Judge Gee held the fraud claim was

6   not preempted because the defendant, in obtaining the license, "falsely represented that it intended

7   to use [the] software for the limited purpose of proof-of-concept testing, even though it intended to

8   make unauthorized copies." *Micro/sys*, 2015 WL 12748631, at *4. Thus, unlike the fraud counts in

9   *Idema* and *Giddings*, the plaintiff's fraud claim "involve[d] the element of a … misrepresentation

10  that induced the plaintiff's reliance" that was not encompassed by the Copyright Act. *Id.*

11      *Bean v. McDougal Little*, 538 F. Supp. 2d 1196 (D. Ariz. 2008) applied this rationale to

12  distinguish *Giddings*, noting that in *Valente-Kritzer*, the Ninth Circuit held that fraudulently

13  inducing a plaintiff to contract by "intentionally misrepresenting one's intent to perform a

14  contract … is 'not substantially equivalent to [the] claim for copyright infringement.'" *Id.* at 1200.

15  Thus, an allegation that a defendant made representations to induce a plaintiff to execute

16  "licenses" giving the defendant access to the plaintiff's work "provides an extra element which

17  distinguishes the nature of [the] fraud action from a copyright claim." *Id.*

18      Here, as in *Micro/sys*, *Valente-Kritzer*, and *Bean*—and unlike in *Idema* and *Giddings*—the

19  Complaint alleges misrepresentation and reliance. By accepting the terms of the Blooming Elegant

20  License, Defendants "misrepresented … that the … License [would] be used in accordance with

21  the terms of the … License, including that it was for a single user named Mohamed Alkhatib."

22  Comp. ¶ 130. Plaintiffs "rel[ied] on the false representation that the … License was for a single

23  user when entering into the license agreement." *Id.* ¶ 134. And if Defendants had not made these

24  representations, "Nicky Laatz would not have entered into the … License." *Id.* ¶¶ 135, 142, 148.

25      Defendants claim that because their acceptance of the terms was a "routine online

26  transaction," they did not make any "false statements, false promises, [or] omissions" regarding

27  "how the [font software] will be used." Mtn. at 17:1-4. But, again, *Ticketmaster* shows this is

28  wrong. Judge Wright held that by accepting "Terms of Use … to use Ticketmaster's website,"

which prohibited "using bots," the defendants made fraudulent "misrepresentations" because they harbored the intent "to breach the TOU by using bots." 306 F. Supp. 3d at 1170, 1178. Here, by agreeing to "the terms of the Blooming Elegant License," Defendants made misrepresentations because they "did not intend to use Nicky Laatz's font software in accordance with the terms of the … License." Comp. ¶¶ 130, 138. This "adds an 'additional element' such that [the] fraud … [claim is] not preempted by copyright law." *See Micro/sys*, 2015 WL 12748631, at *4.

### B.    The Copyright Claim Is Properly Pleaded

To plead copyright infringement, a plaintiff must allege that "he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The Complaint pleads both of these elements.

#### 1.    The Complaint Pleads Ownership of a Valid Copyright

##### a.    The Complaint Pleads Ownership of Copyrighted Software

A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership. *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

The Complaint alleges the software has been copyrighted. Comp. ¶ 40. The date of first publication was February 16, 2016, and the effective date of the registrations is February 18, 2021. *Id.*, Ex. A. "[T]he effective date of a copyright registration is the day on which an application, deposit, and fee ... have all be received by the Copyright Office." 17 U.S.C. § 410(d). Defendants claim that because the registration fell two days shy of the five-year anniversary, the "presumption of validity does not apply." Mtn. at 8:7-9. Not so. Courts routinely accept late-filed registrations. *See e.g.*, *Teller v. Dogge*, 8 F. Supp. 3d 1228, 1233 (D. Nev. 2014) (even though work was not registered until seven years after first performance, plaintiff proved ownership of a valid copyright). For this reason, a defendant's argument that a copyright registration is not entitled to the five-year statutory presumption of validity "is not considered at the pleading stage" and cannot be the basis of a Rule 12(b)(6) motion. *Peter T. Erdelyi & Assoc. v. Optimum Seismic, Inc.*, 2021

WL 4775635, at *3 (C.D. Cal. July 21, 2021). Rather, all that is required "to satisf[y] the pleading requirements of copyright infringement" are "allegations that [the plaintiff] owns [a] copyright …, and has obtained [] copyright registration certificates." *Id.* Here, the Complaint adequately pleads that Nicky Laatz owns the copyrights to font software, and it has all been duly registered. Moreover, the fact that Defendants' reliance on extrinsic evidence has converted its motion to dismiss into a summary judgment motion does not alter the outcome because their rote assertion that the registration was untimely does not present the Court with any irrefutable facts that would permit the Court to grant a motion for summary judgment. *See Teller*, 8 F. Supp. 3d at 1233.

Defendants also argue the registration fails because "typeface is not copyrightable." Mtn. at 9:10-11. This fails because, as Defendants acknowledge, "software that generates typefaces" *is* copyrightable. *Id.* at 25-28. Here, the Complaint alleges ownership of copyrighted "font software." Comp. ¶ 40. It also pleads Defendants copied copyrighted material by "download[ing] [this] … font software and install[ing] such software on Zazzle's servers." *Id.* at ¶ 59.

### b.    Infringement Claims Need Not Be Pleaded with Particularity

The Complaint alleges, inter alia, that Nicky Laatz "creat[ed] software to implement her font on computers, and licens[ed] this software to users who wish to use the custom font for their own purposes." Comp. ¶ 4. It also alleges this software has been copyrighted. *Id.* ¶ 40. Defendants argue that the infringement claim fails because "Plaintiffs plead nothing about Ms. Laatz's training or education in software programming or her ability to code, or whether she personally wrote the code for the software at issue." Mtn. at 9:15-18. But "[c]opyright claims need not be pled with particularity." *Clinton v. Boladian*, 2013 WL 12126107, at *2 (C.D. Cal. May 2, 2013). Such claims "need only satisfy the minimum notice-pleading requirements of [Rule] 8." *Hale v. Atl. Rec. Corp.*, 2013 WL 12138708, at *3 (C.D. Cal. Sept. 3, 2013). Thus, "complaints that allege present copyright ownership by the plaintiff, proper registration, and infringement by defendant [are] sufficient." *Clinton*, 2013 WL 12126107, at *2. The Complaint meets these requirements.

### c.    Defendants' Copyright Invalidity Defense Fails

Defendants argue that Nicky Laatz's copyright registration is invalid. Copyright invalidity is "an affirmative defense to claims of infringement." *Computerland Corp. v. Microland Comput.*

*Corp.*, 586 F. Supp. 22, 24 (N.D. Cal. 1984). Defendants seek dismissal based on their claim that "judicially noticeable documents ***suggest*** the invalidity of [the] registrations." Mtn. at 10:14-15 (emphasis added). But a motion to dismiss cannot be granted based on an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Thus, a Rule 12 motion cannot be granted based on suggestion of invalidity.

On a motion to dismiss, the facts, pleaded or judicially noticed, must be "viewed in the light most favorable to the plaintiff." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). Defendants do not identify factual allegations that contradict the documents they seek judicial notice of. Instead, they make inferences about those documents *against* Plaintiffs, when the law requires the opposite. Here, with particular attention to the code's reference to being generated by FontLab, Defendants misconstrue the document. It states: "Generated on: 2021-2-17 10:43\n# Generated by: FontLab 7.1.2." Kassabian Decl., Exs. 1, 2; Laatz Decl. ¶ 9. Defendants omit the generation date. That the fonts were in use years earlier shows the reference to the copy generated on February 17, 2021, at 10:43, which was output from FontLab, is insufficient to prove, as a matter of law, that the entire program at issue was "merely generated by a font program." Defendants' rationale would strip copyright protection from any code that includes as a comment the program that generated any particular output instance of code. That is not the law.

Further, the fact that Defendants' citation to extrinsic evidence has converted their motion into a Rule 56 motion does not save their arguments. To obtain summary judgment on the basis of an affirmative defense, the movant must "conclusively establish[]" *all* of the elements of that defense. *Smith v. Equinox Holdings, Inc.*, 2015 WL 1952564, at *5 (N.D. Cal. April 10, 2015). To prove a registration is invalid, Defendants must prove: (1) "inaccurate information" was "included in the application"; (2) this "inaccurate information" was included "with knowledge that it was inaccurate"; and (3) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1146 (9th Cir. 2019). Defendants have submitted no evidence that "conclusively establish[es]" *any* of these elements, much less all three. In fact, Defendants cannot prove *any* of these elements. First, Nicky Laatz did in fact hand code the "designs and instructions" for the font

software, with the assistance of the font generating engine FontLab (as is the practice in the

industry). Laatz Decl. ¶¶ 3-8. She even hand wrote portions of the code that were incorporated into

the final font software. *Id.* ¶¶ 7, 8. Thus, Defendants cannot show any information included in the

registration was inaccurate or that Nicky Laatz knew it was inaccurate. Finally, the Copyright

Office regularly registers copyrights for font software created using font-generating engines like

FontLab. Mathews Decl. ¶¶ 2-6 & Exs. 1-4. Thus, even if there had been inaccuracies, Defendants

cannot show they would have caused the Register of Copyrights to refuse registration.

### 2.     The Complaint Pleads Paradigmatic Infringement of Protected Rights

Defendants claim "Plaintiffs failed to plead facts" that "Defendants infringed on any of

their … protected rights in the Blooming Elegant font software." Mtn. at 10:19-20. Not so.

First, Defendants claim they did not "violat[e] … Plaintiffs [sic] exclusive right to

'reproduce' the software" by "download[ing] the … font software and install[ing] [it] on Zazzle's

servers" because the license agreement authorized Alkhatib to "download[] a copy of the

software." *Id.* at 10:21-27. But the license was a "one seat license" which "cover[ed] one user"—

Alkhatib. Comp. ¶ 42. It permitted *only* that "one user" to download the software *only* "on up to

two computers" to be used *only* by the "end user." *Id.* It dictated the software can only be used on

"one computer … at a time" and the "one" user may not "mak[e] the [fonts] available on a digital

asset management system, shared drive, or the like for purposes of sharing or transferring the

[fonts], and [the user] must not permit an end user of the end product to extract the [fonts] and use

[them] separately from the End Product." *Id.* Thus, contrary to Defendants' obtuse argument,

"downloading … the font software and install[ing] [it] on Zazzle's servers," as a matter of law,

exceeded the single-user reproduction authorized by the license. "A server … organizes" data and

provides "access" to this data to "other computers linked to it." *Keithley v. Homestore.com, Inc.*,

2007 WL 2701337, at *17 (N.D. Cal. Sept. 12, 2007). Defendants' reproduction of the software

did not limit access to Alkhatib—the "one user" authorized by the license—and allowed the

software to be accessed on multiple computers simultaneously by Zazzle employees and users in

contravention of the license's restrictions to only two computers and "one computer … at a time."

*Oracle USA Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1108 (D. Nev. 2014) shows the

speciousness of Defendants' argument. There, Oracle sued the defendant for infringement for "cop[ying] Oracle's copyright protected software" onto the defendant's servers. *Id.* at 115. The defendant claimed it did not impermissibly reproduce the software because "copying … was expressly authorized by the Developer License" it executed with Oracle. *Id.* at 1116. This failed because "the plain language of the … License provide[d] that only a single copy of [the software] may be downloaded" and "installed on one computer only, and used by one person." *Id.* at 1117. Copying the software onto a server was "well above the single copy authorized by the … License." *Id.* Thus, "Oracle [was] entitled to summary judgment." *Id.* at 1122. That Defendants exceeded the scope of the license is even clearer here, because it explicitly prohibits uploading the software onto a *server*, stating the user may not "mak[e] the [fonts] available on a digital asset management system, shared drive, or the like … ." Comp. ¶ 42. Thus, Defendants' claim they "download[ed] a copy of the software" in a manner "authorized by the license" is frivolous.

Second, Defendants claim they did not "violat[e] their distribution right" by "ma[king] the fonts available to everyone of Zazzle's designers" because they claim they did not "distribut[e] … the software" to "Zazzle's designers" but only the fonts themselves. Mtn. at 10:25-26, 11:4-7. This does not advance Defendants' motion because, as noted above, they infringed Plaintiffs' copyright by uploading the font software onto Zazzle's servers. Even "one copy is enough to be actionable." *Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635027, at *18 (Nov. 8, 2017). But even if this were not so, Defendants' motion still fails because the Complaint alleges the "font software" was "install[ed] … on Zazzle's servers" and made "available to all of Zazzle's designers and customers." Comp. ¶ 59. Zazzle's contention regarding the *specific content* of the programs it made "available to … Zazzle's designers" is not a basis to grant the motion because: (a) Zazzle's uploading the software onto its servers is sufficient by itself; and (b) Zazzle could not have given its users access to the fonts or font software, but for the fact that it illegally loaded the software onto its servers, and thus, is liable for the damage caused by this action; and (c) the exact content of what Zazzle provided to its users is a question of fact outside the four-corners of the Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be swiftly denied.

1    DATED: October 31, 2022                                    Respectfully submitted,

2                                                    BARTKO ZANKEL BUNZEL & MILLER
                                                      A Professional Law Corporation
3

4                                                    By:_____/s/ Patrick M. Ryan_____

5                                                              PATRICK M. RYAN
                                                          Attorneys for Plaintiffs
6                                                         NICKY LAATZ and
                                                    NICKY LAATZ CREATIONS UK LTD.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28