PATRICK M. RYAN (SBN 203215)
 *pryan@bzbm.com*
STEPHEN C. STEINBERG (SBN 230656)
 *ssteinberg@bzbm.com*
CHRIS W. GRIBBLE (SBN 285337)
 *cgribble@bzbm.com*
CHAD E. DEVEAUX (SBN 215482)
 *cdeveaux@bzbm.com*
P. CASEY MATHEWS (SBN 311838)
 *cmathews@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Plaintiff NICKY LAATZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>          Plaintiff,<br><br>     v.<br><br>ZAZZLE, INC. and MOHAMED ALKHATIB,<br><br>          Defendants. | Case No.  5:22-cv-04844<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**1. FRAUDULENT MISREPRESENTATION, CAL. CIV. CODE § 1572**<br>**2. FRAUDULENT CONCEALMENT, CAL. CIV. CODE § 1572**<br>**3. PROMISSORY FRAUD, CAL. CIV. CODE § 1572**<br>**4. FEDERAL COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 101**<br>**5. FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114**<br>**6. BREACH OF CONTRACT**<br><br>**[DEMAND FOR JURY TRIAL]** |

1

Plaintiff Nicky Laatz ("Nicky Laatz"), by and through her attorneys, Bartko Zankel Bunzel & Miller, files this First Amended Complaint against Defendants Zazzle, Inc. ("Zazzle") and Mohamed Alkhatib ("Alkhatib") (collectively, "Defendants"), and alleges as follows:

## I.    INTRODUCTION

1.      Zazzle is an enormously profitable business worth up to $2 billion, built on a lie that it supports, promotes, and fairly compensates artists and designers for their creative work. In reality, Zazzle's high valuation and hundreds of millions of dollars in annual profits are largely derived from the intellectual property of designers whom Zazzle has stolen from and failed to properly compensate, if at all. Nicky Laatz is one such victim whose custom premium fonts and the copyrighted software that implements them were brazenly stolen by Zazzle, which it then unlawfully profited from by allowing tens of millions of designers and customers to access and use Nicky Laatz's popular fonts and related protected software without any compensation to her.

2.      Zazzle promotes itself as a one-stop platform for online design and on-demand production of customized products in over a thousand different product and design categories.

3.      Zazzle claims that its business supports artists and designers by allowing them to focus on designing products while Zazzle does all the back-end work, including ensuring that designers whose works are offered on Zazzle are properly compensated through royalty payments.

4.      Custom fonts and the software used to implement custom fonts on computers are widely used in graphic design, including on invitations, business cards, signs, websites, and other applications. Artists and designers like Nicky Laatz commercialize custom fonts by designing the letters for a new font, creating copyright protected software to implement the font on computers, and licensing this protected software to users who wish to use the custom font for their own purposes. But the unauthorized use of such protected font software without, or in violation of, a license represents a growing threat to the livelihood of artists and designers who create and depend on the income from these font creations.

5.      Nicky Laatz is one of the world's leading custom premium font designers and creators of related font software.

6.      In late 2016, Zazzle attempted to obtain a very broad license, a type of which Nicky Laatz has never offered, to use three of Nicky Laatz's fonts (the "Blooming Elegant Trio") and the software that implements the Blooming Elegant Trio (the "Blooming Elegant Software") on Zazzle's servers, in order to make them available to its employees as well as its millions of designers, users, and customers, including for commercial use.

7.      Zazzle failed to obtain such a license.

8.      Zazzle believed that obtaining such a license would drive up Zazzle's profits.

9.      Thus, months after failing to obtain an appropriate license, on or about May 4, 2017, Zazzle directed its Senior Network Engineer, Alkhatib, to secretly purchase a one-user (also known as a single "seat") license for the Blooming Elegant Trio and Blooming Elegant Software in his own name.

10.     Alkhatib surreptitiously obtained the Blooming Elegant Trio and Blooming Elegant Software and he or Zazzle downloaded and installed them on a computer so that they could be illegally transferred to Zazzle.

11.     Alkhatib or Zazzle then illegally copied the Blooming Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers, made them available to Zazzle's employees who used them, and made them available for commercial use to all of Zazzle's millions of designers, users, and customers until at least early August 2022.

12.     Zazzle allowed millions of its designers, users, and customers to access the Blooming Elegant Trio and Blooming Elegant Software for commercial use.

13.     Zazzle allowed millions of its designers, users, and customers to use the Blooming Elegant Trio and Blooming Elegant Software for commercial use.

14.     This is not an isolated occurrence, as Zazzle has engaged in similar illegal conduct toward other designers of custom fonts and related software whose fonts and software have also been exploited by Zazzle without compensation to the designers.

15.     The Blooming Elegant Trio became some of Zazzle's most popular fonts among its designers and individual users.

16.     For instance, the Blooming Elegant Trio was listed as Zazzle's #2 handwriting font from May 2019 through at least August 2022.

17.     Zazzle's most successful commercial designers, who have each sold hundreds of thousands of dollars in goods through their own Zazzle storefronts, overwhelmingly picked Blooming Elegant Trio as the font for their top products designed and sold on Zazzle, likely unaware that Zazzle was illegally allowing them to use the Blooming Elegant Trio and Blooming Elegant Software without a license.

18.     Even though Nicky Laatz put Zazzle on notice on or about August 26, 2020 that it was illegally using the Blooming Elegant Trio and Blooming Elegant Software, Zazzle continued misappropriating Nicky Laatz's intellectual property rights without abatement, while reaping massive profits from these violations.

19.     For nearly two years after being put on notice, through at least early August 2022, Zazzle continued actively promoting Nicky Laatz's Blooming Elegant Trio of fonts to its millions of designers, users, and customers, and offering numerous designs and customizable products using the Blooming Elegant Trio and Blooming Elegant Software.

20.     Since making the Blooming Elegant Trio and Blooming Elegant Software available to Zazzle's users, based on information and belief, ***Zazzle has made hundreds of millions of dollars in profits from designs and sales of products using the Blooming Elegant Trio and Blooming Elegant Software***.

21.     In sum, Zazzle built a $2 billion business by stealing intellectual property from artists and designers—the very people Zazzle claims to support and help. In this lawsuit, among other things, Nicky Laatz seeks the disgorgement of the hundreds of millions of dollars in profits that Zazzle obtained using her stolen intellectual property, and recovery of full damages, including compensatory damages and unjust enrichment.

22.     Nicky Laatz also seeks injunctive relief to protect her intellectual property rights and to enjoin Zazzle from further unlawful and infringing conduct.

## II.    THE PARTIES

23.    Plaintiff Nicky Laatz is an individual residing in Launceston, Cornwall, United Kingdom.

24.    Defendant Zazzle, Inc. is a California corporation with its principal place of business at 1200 Chestnut Street, Menlo Park, California 94025. Zazzle is rumored to be preparing for an IPO with an initial valuation of up to $2 billion.

25.    Defendant Mohamed Alkhatib is an individual who resided in Campbell, Santa Clara County, California during all relevant times herein.

## III.    JURISDICTION AND VENUE

26.    This action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and related causes of action. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b).

27.    This action also arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), and related causes of action. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338(a) and (b).

28.    This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367 because these claims are so related to Nicky Laatz's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

29.    This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). Nicky Laatz is a citizen of a foreign state and Defendants are citizens of the State of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

30.    This Court has personal jurisdiction over Defendant Zazzle, Inc., which is incorporated under the laws of the State of California and which has its principal place of business in California, and Defendant Mohamed Alkhatib, who was a resident of California when all of the events described herein took place.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b-c) in that a substantial part of the events or omissions giving rise to the claims occurred herein and Defendants are subject to personal jurisdiction in this District.

32.     In any event, by appearing in the action without objecting to the appropriateness of this jurisdiction, venue, or divisional assignment, Defendants have consented to all three.

## IV.    DIVISIONAL ASSIGNMENT

33.     In accordance with Civ. L.R. 3-2I and U.S. District Court, Northern District of California, General Order No. 44(D)(1), this action has already been assigned to the San Jose Division.

## V.    FACTUAL ALLEGATIONS

*A.    Nicky Laatz's Font Business, the Blooming Elegant Trio of Fonts, and the Blooming Elegant Software*

34.     Nicky Laatz is an expert font designer and creator of the font software that implements them, has been involved in the graphic design industry for nearly two decades, and has created over 110 unique fonts (including the software to implement those fonts) for use in graphic design. Custom fonts and the software used to implement custom fonts on computers are widely used in graphic design, including on invitations, business cards, signs, websites, and other applications.

35.     Nicky Laatz designs and creates original premium font designs and the computer software necessary to implement those font designs on a computer system. Nicky Laatz specializes in, and is world renowned for, original artistic script fonts, such as the Blooming Elegant Trio, as opposed to the traditional Serif and Sans Serif fonts such as Times New Roman and Arial, respectively.

36.     Nicky Laatz offers licenses for limited use of her fonts and font software through her website (https://nickylaatz.com), and through certain online markets such as Creative Market (https://creativemarket.com/Nickylaatz).

37.     Nicky Laatz relies on these licenses as her primary source of income and these licenses are her primary means of monetizing her creative works.

38.     Nicky Laatz has experienced incredible success with her font designs. Nicky Laatz made her first $1 million in revenue through selling licenses on Creative Market in 2015 and has continued to earn significant amounts through licensing fees ever since.

39.     On Creative Market alone, Nicky Laatz has been followed by over 30,000 Creative Market designers, users, and customers due to the popularity of her designs and the extensive offering of premium fonts that she has created.

40.     In 2016, Nicky Laatz designed and created a unique trio of fonts titled "Blooming Elegant," "Blooming Elegant Hand," and "Blooming Elegant Sans" (defined previously, and collectively referred to as the "Blooming Elegant Trio"), along with the Blooming Elegant Software.

41.     Nicky Laatz has offered the Blooming Elegant Trio and Blooming Elegant Software for licensing since at least 2016.

42.     The Blooming Elegant font is a handwriting-style font. Blooming Elegant includes stylistic alternative characters (e.g. multiple design versions of the same character so that when the same character is used multiple times in a given typesetting, they appear differently to mimic handwritten text), ligatures (e.g. connections between certain combined characters when used next to each other, like "fl" or "fi," to improve legibility and mimic the connections in handwritten text), as well as individual swashes (e.g. flourishes such as tails or exaggerated serifs that can be stylistically added to certain characters to enhance the visual representation of such characters).

43.     These unique features make the Blooming Elegant font particularly valuable and difficult to replace with another script that will have the same proportions of elegance, weight, and playfulness. The Blooming Elegant Sans font is a set of uppercase sans serif characters, and the Blooming Elegant Hand font is a set of hand-lettered uppercase characters, both designed to complement the Blooming Elegant font.

44.     Nicky Laatz created the Blooming Elegant Trio and Blooming Elegant Software with the assistance of FontLab 7.1.

45.     In the font industry, font generating engines, such as FontLab or Fontographer, are used by font designers to input font data and to compile that font data into executable font

software. FontLab allows font designers like Nicky Laatz to hand code designs and instructions for the font within the font-generating engine, which then in turn compiles the code for the font into a piece of font software, often a machine-readable packaged software file such as an ".OTF" or ".TTF" file that instructs a computer how to display the font.

46.    Designing with these font-generating engines requires a high degree of creativity, skill, and originality in order to generate a unique and desirable font that will be advantageous enough to users that they want to license it. Within font-generating engines such as FontLab, designers can create and hand code the designs for the glyphs (font representation of characters) that make up a given font by setting "on-curve" and "off-curve" reference points that determine the shape of each symbol within the font. The "on-curve" reference points indicate fixed points for each symbol, and the "off-curve" reference points dictate the shape and location of the curve between the "on-curve" reference points. Within font-generating engines such as FontLab, designers also specify a large variety of other font-wide variables numerically rather than solely visually, typically including cap height, letter spacing, ascender height, and descender height.

47.    When designers use version 6.1 or later of FontLab, including version 7.1, the "on-curve" and "off-curve" reference points can be displayed *both* in a graphic format on a window that shows the outline of the shape, and in a pure text representation. Designers can hand code these points either by moving them with their pointer in the visual display, or by changing the numbers in the text representation. There are also *in-between* options where the designer can click on the point in the visual representation, and then edit the numbers specifying the coordinates of that point.

48.    These font-generating programs, including FontLab, then take the hand-coded coordinates for each glyph's reference points, the hand-coded font-wide variables, and any other code (such as kerning or OpenType glyph substitution) that has been written by the font designers and convert them into a final font software format file such as ".OTF" or ".TTF," which implements the font for computers.

49.    When creating the Blooming Elegant Trio and Blooming Elegant Software, Nicky Laatz hand-coded the designs for individual characters/glyphs by selecting the "on-curve" and

"off-curve" reference points for each individual character/glyph for each font using FontLab 7.1. The "on-curve" reference points indicate fixed points for each character/glyph, and the "off-curve" reference points dictate the shape and location of the curve between the "on-curve" reference points. Nicky Laatz personally hand-coded the instructions for how the characters/glyphs should appear next to each other by choosing the values for each of the font-wide variables that FontLab permits a designer to set, such as cap height, letter spacing, ascender height, and descender height.

50.    Additionally, Nicky Laatz hand wrote and inserted custom code that FontLab incorporated into the final packaged Blooming Elegant Software, which implemented ligatures and stylistic alternate letters for the fonts.

51.    This method used by Nicky Laatz for creating the Blooming Elegant Software is consistent with the custom and practice in the font industry. Indeed, nearly all font designers use visual design tools or font-generating engines or font editors, such as FontLab, to assist with the design and creation of font software.

52.    It is the custom and practice in the font industry to hand-code font software with the assistance of font-generating software.

53.    Software created with the assistance of font-design programs such as FontLab is entitled to Copyright Protection if the person utilizing the software makes creative choices as to what points to select based on the image in front of them on the computer screen. What Nicky Laatz did in creating the Blooming Elegant Software involved sufficient creativity to satisfy the standards under *Adobe Sys., Inc. v. S. Software, Inc*, 1998 WL 104303 (N.D. Cal. Feb. 2, 1998).

54.    The Copyright Office has registered thousands of fonts that were created using such software.

55.    The "Blooming Elegant" font software is protected by U.S. Copyright Registration No. TX0008984766, which correctly lists Nicky Laatz as the Copyright Claimant and the Author. The "Blooming Elegant Hand" font software is protected by U.S. Copyright Registration No. TX0008984764, which correctly lists Nicky Laatz as the Copyright Claimant and the Author. The "Blooming Elegant Sans" font software is protected by U.S. Copyright Registration No. TX0008984762, which correctly lists Nicky Laatz as the Copyright Claimant and the Author.

Accordingly, the Blooming Elegant Software is collectively protected and the corresponding

Registration Certificates for each of the three fonts are attached hereto as **Exhibit A**.

56.    Nicky Laatz has also obtained U.S. Trademark Registration No. 6,626,946 for the

mark "BLOOMING ELEGANT" for use in connection with "Downloadable printing fonts;

Printing fonts that can be downloaded provided by means of electronic transmission; Typeface

fonts recorded on magnetic media," which Nicky Laatz used in commerce since at least 2016. A

copy of the corresponding Registration Certificate is attached hereto as **Exhibit B**.

### B.    *The Blooming Elegant License*

57.    Nicky Laatz has offered the Blooming Elegant Trio and Blooming Elegant

Software for licensing since at least 2016 on her Creative Market shop, and more recently on her

own website, nickylaatz.com. A user can pay a one-time fee of $20 to Creative Market to

download the Blooming Elegant Trio and Blooming Elegant Software for limited use on the

specified terms, or more recently, a user can also purchase a license directly from Nicky Laatz at

nickylaatz.com for $17.

58.    The license at issue in this case offered by Nicky Laatz via her Creative Market

shop for the Blooming Elegant Trio and Blooming Elegant Software is very limited in scope.

59.    In order to license and download the Blooming Elegant Trio and Blooming Elegant

Software from Creative Market, a user must first set up an account, which requires the user to

agree to the Creative Market Terms of Service ("TOS"), which incorporate the License Terms.

60.    A copy of the Creative Market TOS from in or around May 2017 is attached hereto

as **Exhibit C**. The TOS' Preamble states, "by creating an account and checking the 'I agree' box

or accessing or using the Service, you agree you have read, understood, and agree to be bound by

the terms and conditions of these Terms of Service, including the License Terms ('Terms'), which

constitute a binding agreement between us . . . ."

61.    A copy of the Creative Market License Terms from in or around May 2017 is

attached hereto as **Exhibit D**. The Preamble to the License Terms states, "The following License

Terms together with the Creative Market Terms of Service ('TOS') as the same may be amended

or updated from time to time (collectively the 'Agreement') constitute an agreement between you

('Buyer' or 'You'), the seller ('Shop Owner') and Creative Market Labs, Inc. . . . setting forth the rights and obligations with respect to the digital content ('items') licensed by you."

62.    In addition, the offering page for the Blooming Elegant Trio and Blooming Elegant Software from Nicky Laatz's Creative Market shop describes the license at a high level, and then includes a prominent link to the Creative Market Licenses webpage (previously called the "Licenses FAQ"), which includes a prominent link to the Creative Market License Terms. Further, after a user purchases a license to the Blooming Elegant Trio and Blooming Elegant Software from Creative Market, they receive an email from Creative Market with a link to the Creative Market Licenses webpage, and a link to download the Blooming Elegant Trio and Blooming Elegant Software from Creative Market.

63.    A copy of the offering page for the Blooming Elegant Trio and Blooming Elegant Software from Nicky Laatz's Creative Market shop from in or around May 2017 is attached as **Exhibit E**.

64.    A copy of the Creative Market Licenses FAQ from in or around May 2017 is attached as **Exhibit F**.

65.    **Exhibits C, D, E, and F** are collectively referred to herein as the Blooming Elegant License.

66.    The Blooming Elegant License is the operative license in this case and contains the following express limitations:

    a.    The license grants the licensee a "non-transferable right to use, modify and reproduce" both the fonts and the font software (Exhibit D, License Terms, Preamble);

    b.    For "Installable Items (Fonts and Add-Ons)," "an End Product must be a unique implementation of the [fonts and the font software]. For example, you may purchase a font and use it to make unique word art, … but you must not redistribute the original files in any way" (Exhibit D, License Terms, Standard License Term 1);

c.     "Installable Items [including fonts and font software] may be used in an unlimited number of Projects on a one seat per license basis" (Exhibit D, License Terms, Standard License Term 2);

d.     The license is specifically limited to "one seat per license," which "covers one user, which we call a seat," that user can install the fonts and font software "on up to two computers used by the end user, so long as only one computer is used at a time," and "each unique user of the [fonts and font software] requires their own license" (Exhibit F, Licenses FAQ);

e.     A licensee "may modify or manipulate the [fonts and font software], or incorporate it into other content and make a derivative work from it," but "the Shop Owner [in this case, Nicky Laatz] will retain all right, title, and ownership in the [fonts and font software], and the resulting derivative work is subject to the terms of this Standard License" (Exhibit D, License Terms, Standard License Term 4);

f.     The license prohibits a licensee from "sublicens[ing], … shar[ing], transfer[ing], or otherwise redistribut[ing]e the [fonts and font software] (e.g. as stock, in a tool or template, with source files, and/or not incorporated into an End Product) under any circumstances, not even for free" (Exhibit D, License Terms, Standard License Term 5);

g.     The license prohibits a licensee from "mak[ing] the [fonts and font software] available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the [fonts and font software], and [the user] must not permit an end user of the end product to extract the [fonts and font software] and use [them] separately from the End Product" (Exhibit D, License Terms, Standard License Term 6);and

h.     The license prohibits a licensee from "publicly display[ing] the [fonts and font software]: (a) as a standalone file in any digital format on the internet; or (b) in any digital format without imposing technical or written

restrictions to prevent the unauthorized use of the [fonts and font software] by third parties," and the licensee agrees to "take all commercially reasonable steps to prevent third parties from accessing and/or duplicating the [fonts and font software]" (Exhibit D, License Terms, Standard License Term 8).

67.     These provisions dictate, inter alia, that the licensee breaches the terms of the license by:

      a.     Distributing the fonts, regardless of whether the font software is also distributed;

      b.     Allowing anyone other than the licensee to access the fonts or the font software on the licensee's computer.

68.     From September 2015 to July 2017, Nicky Laatz used a limited company called Brightbox Collective (Pty) Ltd ("Brightbox") to collect revenue from her licensing of the Blooming Elegant Trio and Blooming Elegant Software, among other things, primarily through Creative Market (also fontspring.com and MyFonts.com), as well as to pay expenses associated with her commercialization of her Blooming Elegant Trio and Blooming Elegant Software.

69.     In July 2017, Nicky Laatz created an informal partnership formed with her husband John Laatz and called Nicky Laatz Creations ("Laatz Partnership"), transferred any rights Brightbox may have had with respect to collection of revenue from licensing her custom fonts and related software to the Laatz Partnership, and from then to September 2018, used the Laatz Partnership to collect revenue from her licensing activities of the Blooming Elegant Trio and Blooming Elegant Software, still primarily through Creative Market, as well as to pay expenses associated with her commercialization of her Blooming Elegant Trio and Blooming Elegant Software.

70.     In February 2018, Nicky Laatz formed Nicky Laatz Creations UK Ltd. ("Laatz Creations"), transferred any rights her Laatz Partnership may have had with respect to collection of revenue from licensing her custom fonts and related software, and from that date forward,

began collecting revenue from her licensing of the Blooming Elegant Trio and Blooming Elegant Software through Laatz Creations.

71.    Out of an abundance of caution, as of the date of this First Amended Complaint, any and all rights (to the extent they exist) related to the Blooming Elegant Trio and Blooming Elegant Software, including the right to collect both past and future licensing revenue, have been assigned from Laatz Creations, the Laatz Partnership, and Brightbox, to Nicky Laatz. Thus, Nicky Laatz is the sole owner of the intellectual property and all rights associated with the Blooming Elegant Trio and Blooming Elegant Software.

### C.    Zazzle's Design Business

72.    According to Zazzle's website, "Zazzle is the world's leading people-powered design platform. Our proprietary technology connects consumers, designers, manufacturers, and major brands, such as Disney and Marvel, to design, customize and make anything imaginable. Zazzle's rapidly expanding product base of over 1000+ different product and design categories includes everything from apparel and accessories, invitations, art, home goods, office supplies, electronics, and custom gifts. Zazzle provides tools to design digital and physical products, coupled with content and images for inspiration. Upon creation, products and designs are instantly and accurately visualized and offered in the Zazzle marketplace. When ordered, products are made on-demand, typically within 24 hours. We've built never-before-seen hardware and manufacturing systems along with patented, cutting-edge software and tools to achieve all of this. Established in 2005, Zazzle is based in Menlo Park, California, with locations in Cork, Ireland, and Reno, Nevada. Zazzle has grown from a Silicon Valley startup to a global brand with multiple international domains and a worldwide ecosystem of makers and designers."

73.    Based on information and belief, Zazzle's affiliated design professionals can design, offer, and sell their products through Zazzle, while individual users can design and order their own products directly from Zazzle using an online design customization tool available on the Zazzle website.

74.    Once an order is placed, Zazzle handles the production logistics for the products its designers and users design and order.

75.     Zazzle then reaps the profits from each product sold, while providing a percentage of those profits to each affiliated design professional in the form of royalty payments when that professional's designs are ordered by Zazzle customers.

76.     One artist that Zazzle uses on its website to promote itself attests that: "Zazzle allows me to earn a living by doing what I'm truly passionate about which is art and design."

77.     Zazzle then explains that "[o]n Zazzle, you set the royalty rate* for your designs and *you receive a royalty payout for every product sold with your design. Zazzle handles all of the product fulfillment and customer service while you collect a paycheck*." (Emphasis added.)

78.     Users of Zazzle's website can use fonts and graphics provided by Zazzle, and can also upload their own graphics to combine with what Zazzle offers.

79.     One of the key features on Zazzle's website is the online design customization tool, which provides designers and individual users with access to and the ability to choose from and use various fonts in designing and customizing products, including from around May 2017 until at least early August 2022, the Blooming Elegant Trio of fonts.

80.     Based on information and belief, Zazzle users have created over 600 million different designs.

81.     Zazzle also allows its designers, users, and customers the ability to offer products for sale that incorporate the Blooming Elegant Trio, which was implemented via the Blooming Elegant Software, without any compensation to Nicky Laatz.

**D.     *Zazzle's Scheme to Unlawfully Use Nicky Laatz's Font Software***

82.     On November 2, 2016, a Senior Product Marketing Manager for Zazzle, Monica McGhie, contacted Nicky Laatz through the Creative Market chat system, stating that Zazzle wanted to make the Blooming Elegant Trio available to Zazzle's designers and customers for designing products using its customization tool, and noting that Zazzle houses fonts on its internal servers.

83.     In her November 2, 2016 message to Nicky Laatz, Ms. McGhie told Nicky:

> I'm reaching out on behalf of Zazzle, a marketplace for custom products – our goal is to help enable our customers to make anything. To that end, *we do everything we can to enable our over 600K individual designers to sell their original designs on*

***Zazzle by using our design tools (which include a wide variety of fonts) and then applied to thousands of made-to-order products!***

All our fonts are houses on Zazzle's internal servers, so Designers and our customers can use it on our site to design on products using our customization tool, but they are not able to download a copy of the font code.

Saw your Blooming Elegant Font Trio and believe that ***our Designers would love it!*** We noticed that you offer free personal use options, ***but weren't able to find any options that address non-personal use. Do you offer a license in perpetuity for server-based use?***

(Emphasis added.)

84.     Between late-2016 and mid-2017, when Alkhatib purchased the Blooming Elegant License, the only available type of license on Creative Market for the Blooming Elegant Trio and Blooming Elegant Software was the Blooming Elegant License.

85.     Given the above, Ms. McGhie and Zazzle knew that the Blooming Elegant License would not cover Zazzle's intended use and that Zazzle required something very different for its intended use.

86.     Nicky Laatz did not respond to this inquiry, as she never offers the type of server-based license for her fonts and font software that Zazzle would require.

87.     Indeed, Zazzle's intended use of Nicky Laatz's Blooming Elegant Trio and Blooming Elegant Software went far beyond even the "server license" that has been offered by some other font licensing websites for other fonts (not the Blooming Elegant Trio).

88.     But Zazzle wanted the Blooming Elegant Trio and Blooming Elegant Software in order to improve its customization tool for its designers and customers and thereby increase its profits, so it sought to find a surreptitious way to acquire them without obtaining a broad-based perpetual server license, a type of which Nicky Laatz has never previously offered.

89.     To that end, Zazzle instructed Senior Network Engineer Alkhatib to purchase the Blooming Elegant License.

90.     On or about May 4, 2017, Alkhatib, at Zazzle's direction, purchased the Blooming Elegant License. A copy of the receipt from Alkhatib's purchase of the Blooming Elegant License on Zazzle's behalf is attached as **Exhibit F**.

91.     Consistent with the description above, before being allowed to purchase the Blooming Elegant License on Creative Market, Alkhatib set up a user account and accepted the Creative Market TOS and License Terms. When he navigated to the offering page for the Blooming Elegant Trio and Blooming Elegant Software, he saw a prominent link to the Licenses FAQ, which included a prominent link to the License Terms. And after he purchased a license to the Blooming Elegant Trio and Blooming Elegant Software, he received an email from Creative Market with a link to the Licenses FAQ, and a link to download the Blooming Elegant Trio and Blooming Elegant Software from Creative Market.

92.     Alkhatib then used the links in the aforementioned email to download and install the Blooming Elegant Trio and Blooming Elegant Software on a computer.

93.     Alkhatib or Zazzle then illegally copied the Blooming Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers, made them available to Zazzle's employees who used them, and made them available to all of Zazzle's millions of designers, users, and customers until at least early August 2022.

94.     During this time, Zazzle allowed millions of its designers, users, and customers to access the Blooming Elegant Trio and Blooming Elegant Software.

95.     During this time, Zazzle allowed millions of its designers, users, and customers to use the Blooming Elegant Trio and Blooming Elegant Software.

96.     Zazzle then integrated the Blooming Elegant Trio and Blooming Elegant Software into its online design tool, permitting Zazzle's designers, users, and customers to use the Blooming Elegant Trio and Blooming Elegant Software in their own designs on Zazzle's platform, and to do so for free with the ability to offer and sell whatever they created on the platform without any compensation to Nicky Laatz. When Zazzle integrated the Blooming Elegant Trio and Blooming Elegant Software into its online design tool, it specifically identified the Blooming Elegant Trio on Zazzle's online design tool using the names "Blooming Elegant," "Blooming Elegant Sans," and "Blooming Elegant Hand, and also promoted the fonts using those names elsewhere on Zazzle's website.

97.    Alkhatib paid for and agreed to the standard, single-seat license in his name as an individual, concealing the facts that he was a Zazzle employee, that he was acting on Zazzle's behalf, and that he entered into the Blooming Elegant License so that Zazzle could acquire the Blooming Elegant Trio and Blooming Elegant Software, to make them available to Zazzle's employees, use them on its website, and make them available to all of its designers, users, and customers to use with no compensation to Nicky Laatz.

98.    At all relevant times when entering into the Blooming Elegant License to purchase a copy of Nicky Laatz's Blooming Elegant Trio and Blooming Elegant Software and when loading them onto Zazzle's servers, Alkhatib was acting in his capacity as an employee of, on behalf of, and at the direction of Zazzle.

99.    Though Zazzle was controlling Alkhatib's actions at the time, Zazzle's role as his principal was undisclosed and secret from Nicky Laatz.

100.    Zazzle has admitted that the Blooming Elegant License purchased by Alkhatib was purchased on behalf of Zazzle for the express purpose of allowing Zazzle to make the Blooming Elegant Trio and Blooming Elegant Software available for use by Zazzle's designers, users, and customers on its website.

101.    Specifically, on October 8, 2021, Zazzle's Senior Director of Legal, Liana Larson, admitted in writing "that the Blooming Elegant font was among four fonts purchased on a company card by Mohamed Alkhatib, our Sr. Network Engineer, *for use on our site ... .*" (Emphasis added.)

102.    Beginning on or about May 4, 2017 and continuing to the present, Zazzle copied the Blooming Elegant Trio and Blooming Elegant Software onto its servers for access and use by its employees, and made the Blooming Elegant Trio and Blooming Elegant Software available on its website for designers, users, and customers to use in their designs.

103.    Zazzle's use of the Blooming Elegant Trio and Blooming Elegant Software violated the Blooming Elegant License.

104.    Zazzle's use of the Blooming Elegant Software violates Nicky Laatz's copyrights in the Blooming Elegant Software.

105.   Zazzle's use of the name "Blooming Elegant" on its website violates Nicky Laatz's trademark rights to the "BLOOMING ELEGANT" mark.

106.   Based on information and belief, since making the Blooming Elegant Trio and Blooming Elegant Software available to its employees, designers, users, and customers, Zazzle has made hundreds of millions of dollars in profits from offering and selling products using the Blooming Elegant Trio and Blooming Elegant Software.

107.   Zazzle has enabled and caused others to use the Blooming Elegant Trio and Blooming Elegant Software without compensation to Nicky Laatz to the tune of many millions of dollars, and Zazzle must compensate Nicky Laatz for that harm, as well, which would not have occurred but for Zazzle's conduct.

108.   The Blooming Elegant Trio became some of Zazzle's most popular fonts for use by its designers, users, and customers.

109.   The Blooming Elegant Trio became popular fonts in part because, as one Zazzle user put it, Zazzle's "font selection is very limited as far as variety" and Blooming Elegant is one of the few fonts offered on Zazzle "with universal swashes that can be added onto the start and end of any word."

110.   The Blooming Elegant Trio and Blooming Elegant Software's special qualities made these fonts and software uniquely valuable and uniquely profitable for Zazzle.

111.   Users on Zazzle had no material alternative to turn to for many of their designs.

112.   Zazzle offered numerous customizable products using the Blooming Elegant Trio and Blooming Elegant Software, including many of its most popular items.

113.   At least five of Zazzle's twelve most popular business cards and ten of Zazzle's twenty-four most popular business cards until at least early August 2022 used one or more of the Blooming Elegant Trio and were generated using the Blooming Elegant Software, e.g.:





114.   At least up until early August 2022, several of Zazzle's most popular wedding invitations used one or more of the Blooming Elegant Trio and were generated using the Blooming Elegant Software, e.g.:



FIRST AMENDED COMPLAINT



115.    At least up until early August 2022, Zazzle also enabled its individual users to design their own products using the Blooming Elegant Trio and were generated using the Blooming Elegant Software, e.g.:



116.    As reflected on Zazzle's website as of at least up until August 2022, Zazzle ranked and recommended to its users Blooming Elegant as its **#2 handwriting font since 2019**:



## Top 10 Handwriting Fonts

PUBLISHED ON MAY 17, 2019  BY ZAZZLE CONTRIBUTOR

**2. Sophisticated Penmanship: Blooming Elegant**

Blooming Elegant is a very popular, refined cursive font. It's all lower case, generating a high-energy vibe that looks totally put together. It creates a distinctly modern style and feels relaxed chic rather than stiff and formal.

117.     Zazzle's most successful commercial designers and sellers overwhelmingly picked Blooming Elegant as their font of choice for their products, particularly their top-selling products.

118.     In particular, Zazzle's Diamond Sellers ($500K+ earnings), Platinum Sellers ($250K+ earnings), and Gold Sellers ($100K+ earnings) made extensive use of Blooming Elegant.

119.     Elke Clarke, a Diamond Seller on Zazzle who has multiple online storefronts and teaches others how to use Zazzle successfully, used one or more of the Blooming Elegant Trio in at least seven of her eight most popular products, eleven of her sixteen most popular products, and seventeen of her twenty-four most popular products, e.g.:



25

FIRST AMENDED COMPLAINT



120.    Audrey Chenal, another Diamond Seller on Zazzle, used one or more of the Blooming Elegant Trio in at least seven of her top twelve most popular products and fourteen of her top twenty-four most popular products, e.g. (the third example circled below shows only one side of the product, but Blooming Elegant Sans was used on the other side):



https://www.zazzle.com/store/girly_trend/products



Logo pink brushstroke typography hair ...
**$7.25**
50% Off with code XMASJULY2022
⭐ EDITORS' PICK



Thank you typography minimalist black ...
**$7.25**
50% Off with code XMASJULY2022



Minimalist black white jewelry earring di...
**$21.10**
50% Off with code XMASJULY2022



Rose gold glitter ombre photo Sweet 16 ...
**$57.45**
20% Off with code XMASJULY2022



Black and white minimalist photo budge...
**$1.27**
20% Off with code XMASJULY2022



Spring pastel floral watercolor birthday s...
**$3.97**
50% Off with code XMASJULY2022



Rustic brown wood chic script 5 photos ...
**$2.40**
50% Off with code XMASJULY2022



Makeup hair minimalist black and white ...
**$27.40**
50% Off with code XMASJULY2022

https://www.zazzle.com/store/girly_trend/products



Pink brushstroke logo jewelry earring di...
**$31.65**
50% Off with code XMASJULY2022



Modern minimalist blush pink order than...
**$29.50**
50% Off with code XMASJULY2022



Handmade love pastel rainbow marble ...
**$7.25**
50% Off with code XMASJULY2022
⭐ EDITORS' PICK



Painted mailbox watercolor new home ...
**$1.95**
50% Off with code XMASJULY2022
⭐ EDITORS' PICK



Makeup elegant typography marble ros...
**$27.40**
50% Off with code XMASJULY2022



Rose gold glitter confetti navy budget w...
**$1.27**
20% Off with code XMASJULY2022



Modern black rose gold glitter chic omb...
**$27.40**
50% Off with code XMASJULY2022



Modern simple birthday teal 10 photo co...
**$3.97**
50% Off with code XMASJULY2022
⭐ EDITORS' PICK

FIRST AMENDED COMPLAINT

1      121.    Christine Kovacs, another Diamond Seller on Zazzle, used one or more of the

2  Blooming Elegant Trio in at least six of her top eight, nine of her top sixteen, and eleven of her top

3  twenty-four most popular products in her store called "Violet and Pine," e.g.:





1      **E.      *Nicky Laatz's Discovery of Zazzle's Theft and Abuse of Her IP Rights***

2      122.    Nicky Laatz had no knowledge of Zazzle's use of the Blooming Elegant Trio and

3  Blooming Elegant Software until August 25, 2020 when a Zazzle user contacted her directly to

4  request assistance with an issue related to the use of the Blooming Elegant Trio fonts on Zazzle's

5  website.

6      123.    Upon learning of Zazzle's unlawful use of her designs, Nicky Laatz contacted

7  Zazzle to inquire about the unlawful use of the Blooming Elegant Trio and Blooming Elegant

8  Software. In response, Zazzle sent back the receipt for Alkhatib's purchase of the Blooming

9  Elegant License, and suggested that it covered Zazzle's use.

10      124.    Nicky Laatz sent further correspondence pointing out that the Blooming Elegant

11  License purchased by Alkhatib did not cover Zazzle's use and demanded that Zazzle cease and

12  desist from any further unlawful use of the Blooming Elegant Trio and Blooming Elegant

13  Software.

14      125.    Zazzle refused and continued to illegally use the Blooming Elegant Trio and

15  Blooming Elegant Software.

16      126.    Instead, Zazzle once again asked if it could purchase an "unrestricted and perpetual

17  use" license for the Blooming Elegant Trio and Blooming Elegant Software.

18      127.    Though Nicky Laatz does not provide perpetual, server-based licenses for her fonts

19  of the type Zazzle would need, she was willing to consider providing Zazzle with such a license to

20  avoid damaging the designs of the many independent graphic designers who sell designs on

21  Zazzle that use the Blooming Elegant Trio and Blooming Elegant Software.

22      128.    But Nicky Laatz was only willing to consider providing Zazzle with a server-based

23  license if Zazzle would provide data about the numbers of Zazzle designers and customers who

24  have used the Blooming Elegant Trio and Blooming Elegant Software and numbers of unique

25  designs that Zazzle designers and customers had created and purchased using the Blooming

26  Elegant Trio and Blooming Elegant Software, and appropriately compensate her for Zazzle's

27  illegal use of the Blooming Elegant Trio and Blooming Elegant Software.

28

129.    Zazzle, however, refused to provide the data or appropriately compensate Nicky Laatz for its illegal use of the Blooming Elegant Trio and Blooming Elegant Software; thus, no license was granted to Zazzle.

130.    Undaunted, Zazzle brazenly continued to exploit Nicky Laatz's fonts and software for massive profits until at least early August 2022.

131.    Zazzle's continued, widespread infringement of Nicky Laatz's copyrights and trademark rights was entirely willful.

### F.    *Zazzle Replaces Blooming Elegant with a Cheap Imitation*

132.    On or about August 5, 2022, perhaps aware that it was about to be sued, Zazzle began unilaterally removing the Blooming Elegant Trio and Blooming Elegant Software from its website.

133.    Zazzle did so by removing the Blooming Elegant Trio of fonts from the Zazzle design tool and automatically replacing each of the Blooming Elegant Trio of fonts with cheap imitations that attempt to mimic the look and feel of the Blooming Elegant Trio, but are materially inadequate for designers in many ways.

134.    For instance, the Blooming Elegant font was automatically swapped with a font called "Morgana."

135.    The designer of the Morgana font copied it from Blooming Elegant.

136.    The Morgana font infringes on Nicky Laatz's copyrights to the Blooming Elegant Software.

137.    Even though the designer of Morgana copied it from Blooming Elegant, it is not an exact copy and not an adequate substitute.

138.    On information and belief, when Zazzle began using the Morgana font in place of the Blooming Elegant font in early August 2022, Zazzle knew, or should have known, that Morgana was copied from Blooming Elegant and infringed on Nicky Laatz's copyrights to the Blooming Elegant Software.

139.   Regardless, on or about August 8, 2022, Zazzle was informed by the licensor of the Morgana font that Morgana was a copy of Blooming Elegant and should be taken down from Zazzle's website.

140.   Yet, Zazzle kept using the Morgana font and failed to remove or replace it until at least the date of filing for this First Amended Complaint.

141.   In automatically swapping the Blooming Elegant Trio of fonts for cheap imitations, Zazzle materially altered the designs of many Zazzle designers.

142.   As one Zazzle designer put it: "It doesn't seem like they fully grasp that retiring fonts would greatly affect hundreds and thousands of already published designs. We designers are not here writing essays on a word document where changing a font from Times New Roman to Garamond is inconsequential. The FONTs we selected to use are very much a part of the design. When we choose a font it is because the selected font works very well with the rest of the other elements in the design, you can't simply do a switcheroo with fonts, that would throw off the entire design."

143.   Indeed, the fonts that Zazzle chose to replace the Blooming Elegant Trio of fonts created substantial defects in the designs of many of the designers who publish their works on Zazzle.

144.   For instance, a font called "Dongle," the font that replaced the "Blooming Elegant Sans" font, "is smaller, has no auto caps, and the line spacing is much wider," as one Zazzle designer commented.

145.   Another Zazzle designer lamented that "Dongle" is an inadequate replacement because it "has rounded edges and looks rather childish."

146.   The loss of the "Blooming Elegant Sans" font from the Zazzle design tool led one designer to worry because it is "most used" on certain parts of holiday cards and invitations.

147.   Similarly, switching the "Blooming Elegant" font out with the "Morgana" font created substantial difficulties for many Zazzle designers.

148.   One Zazzle designer had wedding invitations for a customer printed incorrectly due to the automatic swapping of "Blooming Elegant" and "Morgana."

149.    Indeed, multiple Zazzle designers noted that for customers who ordered products in batches (such as wedding-related paper products) or re-order products (such as business cards) may end up having to choose different fonts and designs for later purchases; hence, receiving non-matching products.

150.    Even where swapping out "Morgana" for "Blooming Elegant" did not impair existing and in-progress orders, "Morgana" has not served the needs of designers who previously used "Blooming Elegant."

151.    As one Zazzle designer put it, "Morgana is not an adequate replacement, I doubt any font can be. Some have found issues with the slashes, I've found issues with its terrible kerning."

152.    Another designer commented that among the unique benefits of using the Blooming Elegant font are the "leading and trailing swashes," and that she "checked all of the new fonts and none of them will replace the swashes."

153.    Another Zazzle designer lamented "it looks like we lost the beautiful Blooming Elegant script font, which was the only font that could create these nice swirls in front and after a word. I don't see anything that replaces this option. What is sort of doing that, but not as well, is a font that is much thinner (Morgana) and now looks really horrible in all designs (a lot!) in which I used the Blooming font."

154.    The removal of the Blooming Elegant Trio of fonts from Zazzle will likely cause substantial economic harm to Zazzle designers who have used the Blooming Elegant Trio as well, due to the unique and appealing features of the Blooming Elegant Trio.

155.    One Zazzle designer noted that the "Blooming Elegant" font is on 69% of her bestselling products and is on 51% of her last sold products.

156.    Yet another Zazzle designer noted that "[m]any of [her] best sellers have Blooming Elegant Script and Blooming Elegant Sans, and [she] do[es] prefer the look of Blooming Elegant Script over Morgana."

157.    In complaining about the loss of Blooming Elegant, one Zazzle designer described Blooming Elegant as "the very font that some Elite designers utilize in their myriad of bestsellers."

158.    Another Zazzle designer expressed concern that removing the Blooming Elegant Trio of fonts would "jeopardiz[e] current bestsellers ability to sell."

159.    Other designers expressed disbelief that the most popular and commonly used fonts on Zazzle's platform were gone, with one writing "I'm not understanding how the literally most popular font may be gone entirely, and another that "I am STUNNED that they got rid of THE most common font family on Zazzle!"

160.    In addition to losing the unique appeal that comes from the Blooming Elegant Trio of fonts, many Zazzle designers had to undertake extensive work in order to re-edit designs that previously used the Blooming Elegant Trio so that the designs would work with new fonts.

161.    One such Zazzle designer estimated that she had "hundreds if not thousands of designs that will need to be fixed."

162.    Another Zazzle designer encountered a similar problem, noting that she would have "at least a couple thousand" designs impacted by the removal of the Blooming Elegant Trio of fonts.

163.    Indeed, one Zazzle designer noted that "editing several thousand items and even finding the ones with issues isn't an option for many of us."

164.    In the end, Zazzle's illegal scheme to steal and exploit Nicky Laatz's fonts garnered Zazzle hundreds of millions of dollars in profits, but severely harmed both Nicky Laatz and Zazzle's own designers and users who came to rely and depend upon access to the Blooming Elegant Trio of fonts that Zazzle illegally provided to them.

165.    The fact that Zazzle could not and did not stop using the Blooming Elegant Trio and Blooming Elegant Software for nearly two years after being put on notice and the fact that it sought out substitutes for the Blooming Elegant Trio of fonts highlights the high value and profitability that Zazzle enjoyed from its exploitation of Nicky Laatz's Blooming Elegant Trio and Blooming Elegant Software.

1

### G.     *Nicky Laatz's State Law Claims Are Not Preempted By the Copyright Act*

2    166.    Binding Ninth Circuit precedent holds that a state law tort claim is not preempted

3  by the Copyright Act if the state law claim "includes an 'extra element' that makes the right

4  asserted *qualitatively different* from those protected under the Copyright Act." *Altera Corp. v.*

5  *Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (emphasis in original). This is because an

6  extra element changes "the nature of the action so that it is qualitatively different from a copyright

7  infringement claim." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440

8  (9th Cir. 1993).

9    167.    In *Altera*, the Ninth Circuit "held that the Copyright Act does *not* preempt the

10  enforcement of contractual rights." *Nw Home Designing Inc. v. Sound Built Homes Inc.*, 776 F.

11  Supp. 2d 1210, 1215 (W.D. Wash. 2011). This is because a contract claim contains "an 'extra

12  element' that makes the right asserted qualitatively different from those protected by the copyright

13  act." *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1108 (E.D.

14  Cal. 2006). The Copyright Act's Framers recognized this fact, warning that "[n]othing in the [Act]

15  derogates from the rights of parties to contract with each other and to sue for breaches of

16  contract." H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 131.

17    168.    Moreover, even if courts were not bound by the Act's Framers' understanding that

18  contract claims categorically are *not* preempted by section 301, a contract claim would still not be

19  preempted if the claim alleged breaches of "additional rights [created by the contract] other than

20  promising not [to engage in conduct]" that is prohibited by the Copyright Act." *Selby v. New Line*

21  *Cinema Corp.*, 96 F. Supp. 2d 1053, 1062 (C.D. Cal. 2000).

22    169.    These principles dictate that Nicky Laatz's contract claim is not preempted both

23  because contract claims categorically fall outside § 301's preemption, and because her contract

24  claims allege breaches of additional rights and restrictions conferred by the license that do not

25  independently exist under the Copyright Act.

26    170.    For example, the Blooming Elegant License restricts the use of the Blooming

27  Elegant Trio itself by:

28

a.   Restricting use of the fonts to "one user" and installation to two computers used by that same person, only one of which can be used at a time (Exhibit F, Licenses FAQ);

b.   Prohibiting the sublicensing, reselling, sharing, transferring, or redistribution of the fonts (Exhibit D, License Terms, Standard License Term 5);

c.   Prohibiting making the fonts available on a "digital asset management system, shared drive, or the like" for the purposes of sharing or transferring the fonts (Exhibit D, License Terms, Standard License Term 6);

d.   Prohibiting a licensee from publicly and digitally displaying the fonts without "imposing technical or written restrictions to prevent [] unauthorized use" by third parties, and requiring a licensee to "take all commercially reasonable steps to prevent third parties from accessing and/or duplicating the [fonts]" (Exhibit D, License Terms, Standard License Term 8); and

e.   Requiring a licensee to purchase a license and pay the price prescribed by the Blooming Elegant License of $20 for "each unique user" of the fonts (Exhibit F, Licenses FAQ)

171.   Further, the Blooming Elegant License restricts the use of the Blooming Elegant Software beyond the protections under the Copyright Act, including:

a.   Restricting use of the font software to "one user" and installation to two computers used by that same person, only one of which can be used at a time (Exhibit F, Licenses FAQ);

b.   Prohibiting the reselling or transferring of the font software (Exhibit D, License Terms, Standard License Term 5);

c.   Prohibiting making the font software available on a "digital asset management system, shared drive, or the like" (Exhibit D, License Terms, Standard License Term 6);

    d.    Prohibiting a licensee from publicly and digitally displaying the font software without "imposing technical or written restrictions to prevent [] unauthorized use" by third parties, and requiring a licensee to "take all commercially reasonable steps to prevent third parties from accessing and/or duplicating the [fonts]" (Exhibit D, License Terms, Standard License Term 8); and

    e.    Requiring a licensee to purchase a license and pay the price prescribed by the Blooming Elegant License of $20 for "each unique user" of the font software (Exhibit F, Licenses FAQ).

172.    Likewise, a common law tort claim alleging "fraud [in the inducement] is not preempted by section 301 because the element of misrepresentation is present." *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989). For this reason, "[n]umerous courts in the 9th Circuit have found that claims of fraud … are not preempted" when the plaintiff alleges fraudulent inducement because such claims "involve the element of a statement or misrepresentation that induced the plaintiff's reliance." *Micro/sys, Inc. v. DRS Tech., Inc.*, 2015 WL 12748631, at *4 (C.D. Cal. Feb. 18, 2015).

173.    Because Nicky Laatz's fraud claims allege fraudulent inducement, they contain multiple elements that make the claims qualitatively different from a copyright infringement claim. In California, a party to a contract commits fraud where, "with the intent to deceive another party [to the contract], or to induce him to enter into the contract," does, inter alia, any of the following:

    a.    Suggests, as a fact, "that which is not true, by one who does not believe it to be true";

    b.    Suppresses "that which is true, … having knowledge or belief of the fact"; or

    c.    Makes a promise "without any intention of performing it."

Cal. Civ. Code § 1572.

174.     Nicky Laatz's claims for fraud thus are qualitatively different than a claim for copyright infringement, because they relate to the false statements, false promises, and omissions of Zazzle and Alkhatib when entering into the Blooming Elegant License, and Nicky Laatz's claims for fraud would exist irrespective of the copyright infringement that Zazzle engaged in after wrongfully obtaining access to the Blooming Elegant Trio and Blooming Elegant Software and continued to engage in at least until August 2022.

## VI.     FIRST CLAIM FOR RELIEF

### *Fraudulent Misrepresentation (Fraud/Deceit) Against All Defendants*

### (California Civil Code § 1572)

175.     Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 174 of this Complaint as if fully set forth herein.

176.     Alkhatib misrepresented (as did Zazzle, by and through its agent/employee, Alkhatib) that the Blooming Elegant License was to be used in accordance with the terms of the Blooming Elegant License, including that it was for a single user named Mohamed Alkhatib.

177.     Alkhatib and Zazzle knew that the Blooming Elegant License purchased by Alkhatib did not cover Zazzle's intended use of the Blooming Elegant Trio and Blooming Elegant Software.

178.     Thus, Alkhatib and Zazzle knew that the representation that the Blooming Elegant License was for a single user was false.

179.     Alkhatib and Zazzle intended for Nicky Laatz to rely on this false representation in agreeing to license the Blooming Elegant Trio and Blooming Elegant Software to Alkhatib.

180.     Nicky Laatz did in fact rely on the false representation that the Blooming Elegant License was for a single user when entering into the license agreement with Alkhatib for the use of the Blooming Elegant Trio and Blooming Elegant Software.

181.     Had the false representation not occurred, Nicky Laatz would not have entered into the Blooming Elegant License with Alkhatib for the use of the Blooming Elegant Trio and Blooming Elegant Software.

182.    As a direct and proximate result of the false representation, Nicky Laatz has suffered damage to her business.

## VII.    SECOND CLAIM FOR RELIEF

### *Fraudulent Concealment (Fraud/Deceit) Against All Defendants*

### **(California Civil Code § 1572)**

183.    Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 182 of this Complaint as if fully set forth herein.

184.    Alkhatib concealed (as did Zazzle, by and through its agent/employee, Alkhatib) the fact that he and Zazzle did not intend to use to the Blooming Elegant Trio and Blooming Elegant Software in accordance with the terms of the Blooming Elegant License, including concealing that the intended use was not for a single user named Mohamed Alkhatib, and was actually for Zazzle.

185.    Alkhatib and Zazzle concealed the following material facts:

      a.    Alkhatib's employment and agency relationship with Zazzle; and

      b.    The true intention of Alkhatib entering into the Blooming Elegant License which was to allow Zazzle to install the Blooming Elegant Trio and Blooming Elegant Software on its servers, allow Zazzle and its employees access to and use of the Blooming Elegant Trio and Blooming Elegant Software on their multiple computers, roll it out to Zazzle's entire user base, and exploit the Blooming Elegant Trio and Blooming Elegant Software for Zazzle's benefit and enrichment without Zazzle compensating Nicky Laatz, the owner and creator.

186.    These facts were known and accessible exclusively to Alkhatib and Zazzle.

187.    Alkhatib and Zazzle knew that these facts were not known or reasonably discoverable by Nicky Laatz.

188.     Had Alkhatib and Zazzle not concealed the facts listed in Paragraph 185, Nicky Laatz would not have entered into the Blooming Elegant License with Alkhatib.

189.     As a direct and proximate result of the fraudulently concealed facts, Nicky Laatz has suffered damage to her business.

## VIII.     THIRD CLAIM FOR RELIEF

### *Promissory Fraud (Fraud/Deceit) Against All Defendants*

### **(California Civil Code § 1572)**

190.     Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 189 of this Complaint as if fully set forth herein.

191.     Alkhatib falsely promised (as did Zazzle, by and through its agent/employee, Alkhatib) that:

    a.    They would comply with the terms of the Blooming Elegant License, including that use of the Blooming Elegant Trio and Blooming Elegant Software would be limited to one user, and the fonts and font software would be installed on no more than two computers used by that one person;

    b.    The Blooming Elegant Trio and Blooming Elegant Software would not be made available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the Blooming Elegant Trio and Blooming Elegant Software; and

    c.    They would not permit an end user of the end product to extract the Blooming Elegant Trio and Blooming Elegant Software and use them separately from the end product.

192.     Alkhatib and Zazzle intended for Nicky Laatz to rely on the false promises listed in Paragraph 191 in agreeing to license the Blooming Elegant Trio and Blooming Elegant Software to Alkhatib.

193.     Nicky Laatz did in fact rely on Alkhatib's and Zazzle's false promises listed above when entering into the license agreement with Alkhatib for the use of the Blooming Elegant Trio and Blooming Elegant Software.

194.     Had Alkhatib and Zazzle not made the false promises listed above, Nicky Laatz would not have entered into the Blooming Elegant License with Alkhatib for the use of the Blooming Elegant Trio and Blooming Elegant Software.

195.     As a direct and proximate result of the false promises, Nicky Laatz has suffered damage to her business.

## IX.     FOURTH CLAIM FOR RELIEF

### *Federal Copyright Infringement Against Zazzle*

### **(17 U.S.C. §§ 101 *et seq.*)**

196.     Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 165 of this Complaint as if fully set forth herein.

197.     At all relevant times, Nicky Laatz has been the exclusive holder of the copyrights to the Blooming Elegant Software.

198.     Without the permission or consent of Nicky Laatz, Zazzle reproduced and distributed the Blooming Elegant Software by loading it on Alkhatib's computer under false pretenses; loading it on multiple Zazzle servers; thereby giving Zazzle's employees access to, and allowing Zazzle's employees to use, the Blooming Elegant Software; and making the Blooming Elegant Software and the fonts implemented therefrom available to all of Zazzle's designers, users, and customers. In doing so, Zazzle violated Nicky Laatz's exclusive rights of reproduction and distribution. Zazzle's actions constitute infringement of Nicky Laatz's exclusive rights protected under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

199.     The Morgana font also infringes on Nicky Laatz's copyrights to the Blooming Elegant Software. Without the permission or consent of Nicky Laatz, Zazzle reproduced and distributed, and continues to reproduce and distribute the Morgana font software by installing it on Zazzle's servers, and thereby making the Morgana font available to all of Zazzle's designers and individual users and customers. In doing so, Zazzle has violated Nicky Laatz's exclusive rights of reproduction and distribution, and perhaps also the exclusive right to prepare derivative works based on the Blooming Elegant Software. Zazzle's actions constitute infringement of Nicky Laatz's exclusive rights under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

200.     Zazzle's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Nicky Laatz.

201.     As a direct and proximate result of Zazzle's infringement of Nicky Laatz's copyrights and exclusive rights under copyright, Nicky Laatz is entitled to damages and Zazzle's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

202.     Zazzle's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Nicky Laatz substantial and irreparable harm to her business that cannot be fully compensated or measured monetarily.

203.     As a direct and proximate result of Zazzle's infringing actions, Nicky Laatz has suffered damage to her business.

## X.     FIFTH CLAIM FOR RELIEF

### Federal Trademark Infringement Against Zazzle

### (15 U.S.C. §§ 1114 et seq.)

204.     Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 165 of this Complaint as if fully set forth herein.

205.     Nicky Laatz's "BLOOMING ELEGANT" mark is a valid mark entitled to protection under the Lanham Act and registered on the principal register in the United States Patent and Trademark Office. Nicky Laatz is the exclusive owner and registrant of the mark.

206.     Without Nicky Laatz's consent or authorization, Zazzle used in commerce, reproductions, copies, and/or colorable imitations the "BLOOMING ELEGANT" mark in connection with the sale, offering for sale, distribution, or advertising of Zazzle's goods and services.

207.     Zazzle's infringing activities have caused, are causing, or are likely to cause, confusion, mistake, and deception among the consuming public as to the origin, sponsorship, and quality of Zazzle's products that used the "BLOOMING ELEGANT" trademark.

208.     On information and belief, Nicky Laatz alleges that Zazzle's conduct was committed willfully, in bad faith, and with the knowledge of Nicky Laatz's exclusive rights to its

mark, or with willful blindness to the same, and with intent to cause confusion, mistake, and/or to deceive.

209.    As a direct and proximate result of Zazzle's infringing activities, Nicky Laatz has suffered irreparable harm and damage to her valuable marks and damage to her reputation and goodwill.

210.    Pursuant to 15 U.S.C. § 1116(a), Nicky Laatz is entitled an order for the destruction of all infringing materials, as well as all monetary relief and other remedies available under the Lanham Act, including, but not limited to, treble damages and/or profits, statutory damages, reasonable attorneys' fees, costs, and prejudgment interest under 15 U.S.C. § 1117(a).

## XI.    SIXTH CLAIM FOR RELIEF

### Breach of Contract Against Alkhatib and Zazzle

211.    Nicky Laatz hereby incorporates by reference each of the allegations in paragraphs 1 through 174 of this Complaint as if fully set forth herein.

212.    Nicky Laatz entered into the Blooming Elegant License in order to license the Blooming Elegant Trio and Blooming Elegant Software to Alkhatib as an individual.

213.    In entering into the Blooming Elegant License with Nicky Laatz, Alkhatib deliberately concealed the fact that he did so as an agent of Zazzle and, unbeknownst to Nicky Laatz at that time, Alkhatib was acting at the request of—and entered into the Blooming Elegant License on behalf of—Zazzle, which was an undisclosed principal. Thus, both Alkhatib and Zazzle are parties to the Blooming Elegant License.

214.    The Blooming Elegant License prohibits a user from "mak[ing] the [fonts and font software] available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the [fonts and font software], and [the user] must not permit an end user of the end product to extract the [fonts and font software] and use [them] separately from the End Product."

215.    The Blooming Elegant License is limited to one single user and permits the user to install the Blooming Elegant Trio and Blooming Elegant Software on only "up to two computers used by the end user, so long as only one computer is used at a time."

216.    The Blooming Elegant License prohibits a licensee from "shar[ing], transfer[ing], or otherwise redistribut[ing]e the [fonts and font software] (e.g. as stock, in a tool or template, with source files, and/or not incorporated into an End Product) under any circumstances, not even for free."

217.    The license to use the Blooming Elegant Trio and Blooming Elegant Software is "non-transferable."

218.    Alkhatib and Zazzle breached the Blooming Elegant License by, inter alia:

a.    Downloading, copying, and installing both the Blooming Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers and thereby allowing the fonts and the font software to be used on more than the two computers permitted by the license;

b.    Allowing persons other than Alkhatib to access and use both the Blooming Elegant Trio and Blooming Elegant Software—including both agents and employees of Zazzle and millions of individuals who accessed and used the fonts and the font software on Zazzle's website;

c.    Sharing and redistributing the Blooming Elegant Trio and Blooming Elegant Software as part of Zazzle's design tool, not incorporated into an end product; and

d.    Failing to pay the price prescribed by the license for "each unique user" who was provided access to the Blooming Elegant Trio and Blooming Elegant Software by Defendants—again including both agents and employees of Zazzle and millions of individuals who accessed and used the fonts and the font software on Zazzle's website.

219.    As a direct and proximate result of Defendants' breach of the Blooming Elegant License, Nicky Laatz has suffered irreparable harm and damage to her business.

## **PRAYER FOR RELIEF**

WHEREFORE, Nicky Laatz respectfully prays for the following relief:

A.    For an entry of judgment in favor of Nicky Laatz that Zazzle and Alkhatib committed fraud on Nicky Laatz in violation of California Civil Code § 1572;

B.    For an entry of judgment in favor of Nicky Laatz that Zazzle infringed Nicky Laatz's copyrights rights under 17 U.S.C. §§ 101 *et seq*;

C.    For an entry of judgment in favor of Nicky Laatz that Zazzle infringed Nicky Laatz's trademark rights under 15 U.S.C. § 1114;

D.    For an entry of judgment in favor of Nicky Laatz that Alkhatib and Zazzle breached the contract with Nicky Laatz;

E.    An injunction enjoining Zazzle and its subsidiaries, parents, agents, officers, members, directors, servants, employees, attorneys, successors, assigns, affiliates, and joint ventures, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through, or under them, from ever using the Blooming Elegant Trio of fonts and font software, or anything substantially similar (e.g. the Morgana font software that was first used by Zazzle in early August 2022) on Zazzle's website, and related injunctive relief;

F.    An order that Zazzle must immediately produce to Nicky Laatz a complete list of all individuals, businesses, and entities who have accessed the Blooming Elegant Trio or the Blooming Elegant Software through Zazzle's servers, other electronic storage devices, websites, or otherwise, including the date and extent of such use;

G.    Nicky Laatz to recover all damages and remedies, including compensatory damages, lost profits, prospective profits, and profits of Zazzle attributable to Zazzle's infringement in an amount to be proven at trial;

H.    Nicky Laatz to be awarded punitive damages from Zazzle and Alkhatib;

I.    An accounting of each of Zazzle's profits attributable to their illegal and infringing acts and an award of: (1) Zazzle's profits; and (2) all of Nicky Laatz's damages pursuant to 15 U.S.C. § 1117;

J.    Nicky Laatz to be awarded all of Zazzle's ill-gotten profits and gains, and/or any other unjust benefits received by Zazzle from Zazzle's manufacture, sale, and/or distribution of products using the "BLOOMING ELEGANT" trademark;

1    K.    Treble damages and/or enhanced damages;

2    L.    An order to freeze Zazzle's assets pending a final determination of liability and

3    damages;

4    M.    An order for an accounting of and imposition of a constructive trust on all of

5    Zazzle's funds and assets connected to their infringing acts;

6    N.    Pre- and post-judgment interest;

7    O.    All costs and investigative expenses associated with Zazzle's infringing acts; and

8    P.    Any and all other relief the Court deems just, proper, fair and equitable.

9    ### **DEMAND FOR JURY TRIAL**

10    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nicky Laatz demands a

11    trial by jury of all claims asserted in this Complaint so triable in this action.

12

13    DATED:  March 14, 2023                    Respectfully submitted,

14                                        BARTKO ZANKEL BUNZEL & MILLER

15                                        A Professional Law Corporation

16                                        By:    */s/ Patrick M. Ryan*

17                                        PATRICK M. RYAN
                                          Attorneys for Plaintiffs

18                                        NICKY LAATZ

19

20

21

22

23

24

25

26

27

28