PATRICK M. RYAN (SBN 203215)
 *pryan@bzbm.com*
STEPHEN C. STEINBERG (SBN 230656)
 *ssteinberg@bzbm.com*
CHRIS W. GRIBBLE (SBN 285337)
 *cgribble@bzbm.com*
CHAD E. DEVEAUX (SBN 215482)
 *cgribble@bzbm.com*
P. CASEY MATHEWS (SBN 311838)
 *cmathews@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:   (415) 956-1900
Facsimile:    (415) 956-1152

Attorneys for Plaintiff NICKY LAATZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ, | Case No. 5:22-cv-04844-BLF |
| Plaintiff, | **DECLARATION OF DANIEL B. GARRIE IN SUPPORT OF REPLY BRIEF IN SUPPORT OF PLAINTIFF'S REFILED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ZAZZLE, INC. and MOHAMED ALKHATIB, | |
| Defendants. | Judge:    Hon. Beth Labson Freeman<br>Date:     August 3, 2023<br>Time:     9:00 a.m.<br>Dept.:    3 |
| | Trial Date:   None Set |

I, Daniel B. Garrie, declare as follows:

1.      I am an expert witness in the above-entitled action. I have relevant expertise concerning forensic computer examination, and social media, including how information and messages can be conveyed over the Internet. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief, and, as to those, I am informed and believe them

to be true. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration supporting Plaintiff's Reply Brief in Support of Plaintiff's Refiled Motion for Partial Summary Judgment.

**A.      QUALIFICATIONS**

2.      I am the Co-Founder and Managing Partner of Law & Forensics, LLC ("Law and Forensics"). As summarized below and outlined in my abridged CV, attached hereto as Exhibit A, I have substantial experience with Electronically Stored Information ("ESI") and a wide range of computer forensic systems. A full CV is quite voluminous and is available on request.

3.      I have acted as a forensic expert witness, forensic neutral, e-discovery expert, and/or ESI liaison for parties in litigation, as a court-appointed Special Master and Discovery Referee, and as a party-selected neutral to assist with forensic and ESI disputes throughout the United States and abroad, including *United States v. Joseph Sullivan*, Case No. 3:20-cr-00337-WHO (N.D. Cal. 2022); *Washington Commanders v. National Football League*, JAMS Case No. 1410009206 (2022); *Gutierrez Jr., Peter Moses, et al. v. Amplify Energy Corp., et al.*, JAMS Case No. 1220071875 (2021); *In Re: Facebook Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-MD-02843-VC-JSC (C.D. Cal. 2021); and *IV Solutions v. Aetna, Inc.*, JAMS Case No. 1200055122 (2020).

4.      I hold a Bachelor's Degree and a Master's Degree in Computer Science from Brandeis University and a Juris Doctor from Rutgers University. I am a member of the State Bars of Washington and New York. I have authored over 250 legal and technical articles and publications. I am a co-author of *Understanding Software, the Internet, Mobile Computing, and the Cloud: A Guide for Judges*, published by the Federal Judicial Center in 2015, and a co-author of *Plugged In: Guidebook to Software and the Law*. I am also an Adjunct Lecturer at Harvard University and the co-inventor of a patented method of scanning forensic images of a computer system using multiple malicious code detection engines simultaneously, US 20140181975 A1.

**B.      SCOPE OF ASSIGNMENT**

5.      In conjunction with Plaintiff's Reply Brief in Support of Plaintiff's Refiled Motion for Partial Summary Judgment, counsel requested I provide expert examination, analysis, and

opinions regarding forensic artifacts and other materials located on Nicky Laatz's computer systems to identify any information that could bear on the statute of limitations for any of the claims for relief at issue in the case. Counsel also requested that I form an opinion about Zazzle's arguments concerning Instagram posts, email, web browser history, and potential contacts with Zazzle.com. As part of my work, I reviewed the Declaration of Nicky Laatz in Support of Plaintiff's Refiled Motion for Partial Summary Judgment and the Supplemental Declaration of Nicky Laatz in Support of Plaintiff's Motion for Partial Summary Judgment to determine whether my findings are consistent with or inconsistent with Nicky Laatz's testimony.

6. In performing my analysis, I relied on counsel's representation that the relevant periods for the statute of limitations, in this case, are calculated from August 24, 2022, when Ms. Laatz filed her complaint, back to either August 24, 2019, for the Fraud and Copyright Infringement claims with a three-year statute of limitations, or August 24, 2018, for the Breach of Contract and Trademark Infringement claims with a four-year statute of limitations. I further relied on counsel's representation that Zazzle's wrongful conduct began with acquiring an individual license to install the licensed software on 1-2 computers for one user on or about May 4, 2017, but that was then installed on commercial servers for an unlimited amount of the public to access. Accordingly, we examined Ms. Laatz's computers and account activity for evidence relating to Zazzle between May 4, 2017, and August 24, 2018, and up to August 24, 2019 (the "Relevant Period").

7. My understanding is that the relevant inquiry is whether Ms. Laatz received communications or obtained information that would have put her on reasonable inquiry notice that Zazzle had acquired and installed Ms. Laatz's Blooming Elegant Trio font software and made it available in its design tool for users before either August 24, 2019 (or 2018) and after May 4, 2017.

8. I sought to analyze representations made by Robert Beaver III (aka "Bobby Beaver") in his declaration in support of Defendants' Opposition to Plaintiff's Refiled Motion for Partial Summary Judgment. Mr. Beaver makes several representations, but the primary ones I sought to address by way of this declaration are (1) paragraph 9, concerning Zazzle's purported "hundreds of emails" Mr. Beaver asserts that Zazzle sent to Ms. Laatz; and (2) paragraph 11, concerning Zazzle's presence on Instagram. I also reviewed the declaration of Olga Slobodyanyuk, including her

1    identification of the use of hashtags in 10 Instagram posts.

2    **C.**      **ANALYSIS OF MS. LAATZ'S COMPUTER AND EMAIL FROM THE**

3          **RELEVANT TIME PERIOD DID NOT IDENTIFY ANY EMAILS FROM**

4          **ZAZZLE INDICATING THAT ZAZZLE HAD ACQUIRED AND WAS**

5          **USING THE BLOOMING ELEGANT TRIO FONT SOFTWARE IN ITS**

6          **DESIGN TOOL**

7      9.      I examined the documents Zazzle attached to the Declaration of Bobby Beaver as

8    Exhibit 1. That exhibit appears to be four emails sent from zazzle@cm.zazzle.com with no email

9    recipient listed. Based on the produced emails in Exhibit 1, Mr. Beaver's claim that these emails

10    were sent to Ms. Laatz is not supported. One of my investigation's focuses was determining whether

11    these emails were received and viewed by Ms. Laatz.

12      10.      I interviewed Ms. Laatz on May 7, 2023 and have reviewed her declarations

13    associated with the present motion. Ms. Laatz informed me that she had implemented rules on her

14    computer, at least as early as January 2017 through the end of 2019, that filtered mass promotional

15    emails (commonly referred to as "spam"), and placed them in the Trash for deletion, including

16    emails from Zazzle and other similar websites that generated mass promotional emails. While there

17    are commercial email platforms that provide such filtering passively on behalf of their users, Ms.

18    Laatz used a private email server and set email filtering rules on the mail client. This was a common

19    and useful practice at that time for people receiving large amounts of promotional emails, who did

20    not use a commercial email platform.

21      11.      I investigated whether such email filtering rules existed on the mail client installed

22    on Ms. Laatz's computers during the Relevant Period by: a) checking to see if there was any forensic

23    corroboration of the existence of the email filtering rules described by Ms. Laatz on the computers

24    she used; and b) checking to see if there were any emails from zazzle.com on the computers she

25    used, including whether the emails attached as Exhibit 1 to the Beaver Declaration were present.

26      12.      For this analysis, I analyzed forensic images of the following repositories, which Ms.

27    Laatz's counsel represented to me are computers Ms. Laatz used during the Relevant Period

28

1    (hereinafter "Ms. Laatz's Computers"):[1]

2    • Apple Studio (S/N: G9CRW2191C)

3    • iMac Pro 2017 (S/N: C02W41L8HX8F) and 11 backups of the computer taken

4       between December 2019 and August 2020[2]

5    • Macbook Pro 16-inch (S/N: Q7CP6QC6LF)

6    **1.        Analysis of Ms. Laatz's Computers Identified an Email Filtering Rule**

7            **on the iMac Pro 2017, Which Had Been in Place Since at Least**

8            **February 1, 2018, That Routed Emails from Zazzle to the Trash Folder**

9        13.    Analysis of Ms. Laatz's Computers determined that the Apple Mail application

10   installed on the iMac Pro 2017 has an email filtering rule to route emails from Zazzle to the Apple

11   Mail Trash folder instead of the inbox. <u>See</u> Exhibit B. This email filtering rule is timestamped from

12   February 1, 2018, indicating the rule has been on the computer since at least that date. The following

13   screenshot shows the details of the email filtering rule on the iMac Pro 2017.

```
[0] AllCriteriaMustBeSatisfied = False
[1] AutoResponseType = 0
[2] CopyToMailboxURL = Trash
⊿ [3] Criteria
   ⊿ [0]
         [0] CriterionUniqueId = 67129841-A0F5-4447-9758-F36F6175746F
         [1] Expression = Zazzle
         [2] Header = From
[4] Deletes = False
[5] HighlightTextUsingColor = False
[6] MailboxURL = Trash
[7] MarkFlagged = False
[8] MarkRead = False
[9] NotifyUser = False
[10] RuleId = 8C107FCE-692E-4600-A87F-622CC66BDB73
[11] RuleName = zazzle
[12] SendNotification = False
[13] ShouldCopyMessage = False
[14] ShouldTransferMessage = True
[15] TimeStamp = 539184216
```

26   ---
[1] Chain of custody documentation for the repositories is provided in Exhibit E.

27   [2] The dates of the backups are as follows: December 19, 2019, December 26, 2019, January 28, 2020, February 25, 2020, March 31, 2020, April 23, 2020, May 29, 2020, June 6, 2020, June 25, 2020, July 28, 2020, and August 31, 2020.

14.     As shown above, the "Criteria" field indicates that the criterion for triggering the rule is the expression "Zazzle" found in the "From" field of email headers. The "ShouldTransferMessage" field is set to True, indicating that messages that meet the criteria are transferred. The "MailboxURL" field is set to Trash, indicating that messages that meet the criteria are sent to the mailbox's Trash folder. I also note that the "MarkFlagged", "MarkRead", "NotifyUser", and "SendNotification" fields are all set to False, indicating that the rule does not notify the user when messages are transferred to the Trash folder. The "Timestamp" entry is a code used by the email program to identify dates. The "Timestamp" entry shown above converts to February 1, 2018 1:23:36 PM GMT, indicating that the rule was set up or modified at this time. See Exhibit B.

15.     This means that, as a general rule, emails from zazzle.com to Ms. Laatz's Apple Mail accounts **would not appear in the inbox** on her iMac Pro 2017, but would instead be routed directly into the mailbox's Trash folder, without notifying Ms. Laatz. The timestamp indicates that this rule was in place at least as early as February 1, 2018. I note that this does not contradict Ms. Laatz's testimony that she had set up the email filtering rule at least as early as January of 2017, as I did not identify any indicia of Zazzle emails on Ms. Laatz's Computers prior to February 1, 2018, as discussed below.

**2.      Analysis of Ms. Laatz's Computers Did Not Identify the Emails Referenced in Mr. Beaver's Declaration or Any Emails from Zazzle Mentioning the Blooming Elegant Trio**

16.     I analyzed Ms. Laatz's Computers to identify emails sent from Zazzle during the Relevant Period. To do this, I searched the email data from the Relevant Period on Ms. Laatz's Computers using the search term "Zazzle."

17.     This analysis identified only four emails from Zazzle sent between April 19, 2018 and April 21, 2018 present on the iMac Pro 2017 backups. See Exhibit C. The emails appear to be promotional emails that do not mention the Blooming Elegant Trio. See Exhibit C. The emails were located in a "recovery" folder, which may have occurred due to a computer crash or other computer failure, notwithstanding the Zazzle email rule in place at the time. Ms. Laatz testifies that she was

1  presented with these emails and attests that she does "not recall having ever seen them previously."

2  Supplemental Declaration of Nicky Laatz in Support of Plaintiff's Motion for Partial Summary

3  Judgement, ¶ 81. She also testified that "none of these emails appeared to contain any of the Trio of

4  fonts." Id. And she testified that she "did not know the section of the backups that held these files

5  existed until Mr. Garrie located it." Id. I find it credible that Ms. Laatz would not have detected,

6  opened, or viewed these emails, as it would very unusual for a standard computer user to be aware

7  of the recovery folder, let alone open it to check for emails.

8    18.    I did not identify any indicia that the emails referenced in Mr. Beaver's declaration

9  were present on any of Ms. Laatz's Computers. Based on these findings and my findings regarding

10  the email filtering rule, I find that there is nothing forensically inconsistent with Ms. Laatz's

11  testimony that she never saw the emails referenced in Mr. Beaver's declaration prior to reviewing

12  Mr. Beaver's declaration.

13  **D.**     **ANALYSIS OF MS. LAATZ'S ZAZZLE PROFILE AND WEB BROWSING**

14         **ACTIVITY INDICATE THAT MS. LAATZ DID NOT MATERIALLY**

15         **ENGAGE WITH HER ZAZZLE PROFILE DURING THE RELEVANT**

16         **PERIOD**

17    19.    I understand, based on Defendants' Opposition to Plaintiff's Refiled Motion for

18  Partial Summary Judgement, that Zazzle contends that Ms. Laatz "engaged" with the zazzle.com

19  website during the Relevant Period via the Toasted Pixels store on the Zazzle website, which she

20  created using her nicky@brightbox.co.za e-mail account.

21    20.    To test Zazzle's contention, I conducted a forensic review of Ms. Laatz's Toasted

22  Pixels store profile and the web browsing history available on Ms. Laatz's Computers. Based on

23  this analysis, it appears that Ms. Laatz did not materially engage with her Toasted Pixels store profile

24  or zazzle.com during the Relevant Period.

25    21.    Based on my review of the Toasted Pixels store profile activity, Ms. Laatz first

26  uploaded an image to her Toasted Pixels store profile on or around February 2, 2014, more than

27  three years prior to the start of the Relevant Period. Ms. Laatz last uploaded an image on July 8,

28  2016, almost a year before the start of the Relevant Period. See Exhibit D. The next time Ms. Laatz

uploaded an image was on around November 3, 2021, more than two years after the end of the Relevant Period, when I understand she was investigating the site as part of this lawsuit. See Exhibit D. I did not identify any activity by Ms. Laatz with respect to the Toasted Pixels store profile during the Relevant Time Period.

22.    I also conducted a forensic investigation of Ms. Laatz's web browsing history on Ms. Laatz's Computers and saw no evidence that she had accessed or viewed Zazzle's website during the Relevant Period. This further suggests that Ms. Laatz did not materially engage with her Toasted Pixels store profile or zazzle.com during the Relevant Period.

**E.    ANALYSIS OF MS. LAATZ'S INSTAGRAM ACCOUNT DID NOT IDENTIFY ANY DIRECT LINKS TO ZAZZLE.COM**

23.    Hashtags are a feature of Instagram that allows users to categorize and search for content. Hashtags are represented by a combination of letters, numbers, and/or emoji preceded by the "#" symbol (e.g. #nickylaatz). Clicking on a hashtag or performing a hashtag search connects the user to an Instagram page showing all the public posts tagged with the hashtag. Users can also follow a hashtag, making content with such hashtags more likely to appear in their feed. Businesses often use hashtags to amplify their marketing messages and reach a wider audience.

24.    Hashtags are not used to communicate directly with the entities named in a hashtag. When a user posts a hashtag, they do not send a message to the entities named in it, nor do they necessarily visit the entity's Instagram page, nor become a follower of the entity's Instagram page. Instead, hashtags categorize content so that other users interested in the same topics find it. In other words, adding a hashtag is different from "tagging" an entity. Tagging is a different action used with the @ symbol that directly connects to the entity tagged.

25.    As part of my analysis, I pulled all the posts on Ms. Laatz's Instagram account (@nickylaatz) and reviewed them for Zazzle hashtags, tags of Zazzle, or links to the Zazzle Instagram page or website. Based on this analysis, I did not identify any instances in which Zazzle was tagged in a post on Ms. Laatz's Instagram account or any instances in which a post linked to the Zazzle website. I did identify ten posts in which #zazzle was used, which occurred on the following dates: 12/12/2015, 2/16/2016, 2/21/2016, 5/24/2016, 6/13/2017, 6/21/2017, 4/23/2018,

5/4/2018, 5/21/2018, and 6/5/2018. The posts from 2/16/2016 and 2/21/2016 are the only mentions of the Blooming Elegant Trio in the tagged posts but are from before the Relevant Period.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of May 2023.


/s/ Daniel B. Garrie
DANIEL B. GARRIE

I hereby attest that Daniel B. Garrie has concurred in the filing of this document on his behalf and the inclusion of a conformed signature (/s/) within this e-filed document on his behalf.


/s/ Patrick M. Ryan
PATRICK M. RYAN

DANIEL GARRIE DECLARATION ISO REPLY BRIEF ISO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT