UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICKY LAATZ, et al.,

         Plaintiffs,

    v.

ZAZZLE, INC., et al.,

         Defendants.

Case No.  22-cv-04844-BLF

**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[Re: ECF No. 86]

Plaintiff Nicky Laatz ("Plaintiff") brings this suit alleging that Defendant Zazzle, Inc. ("Zazzle"), through its employee, Defendant Mohamed Alkhatib ("Alkhatib," and, with Zazzle, "Defendants"), fraudulently obtained a license to use software implementing a trio of fonts created by Plaintiff, and subsequently violated the license by making the fonts available to millions of people, including for commercial use.  The operative First Amended Complaint asserts claims for (1) fraudulent misrepresentation, (2) fraudulent concealment, and (3) promissory fraud, all in violation of Cal. Civ. Code § 1572, as well as (4) federal copyright infringement under 17 U.S.C. § 101, (5) federal trademark infringement under 15 U.S.C. § 1114, and (6) breach of contract.

Presently before the Court is Defendants' Motion to Dismiss the First Amended Complaint (the "Motion").  Mot., ECF No. 86.  Plaintiff opposes the Motion.  Opp'n, ECF No. 36. Defendants have filed a reply in support of their Motion.  Reply, ECF No. 37.  The Court heard oral argument on June 22, 2023.

Having carefully considered the parties' respective written submissions, the oral argument of counsel, and the relevant legal authority, the Motion is hereby DENIED.

United States District Court
Northern District of California

# I.     BACKGROUND

## A.     Zazzle's Business

Zazzle operates an online platform for the design and on-demand production of customized products.  First Am. Compl. ("FAC"), ECF No. 82, ¶ 2.  Consumers can purchase products designed and offered on Zazzle by design professionals or use Zazzle's design customization tool to design a product directly.  *Id.* ¶ 73.  Zazzle provides fonts and graphics to consumers and design professionals, who can also upload other graphics to combine with Zazzle's offerings.  *Id.* ¶ 78. After an order is placed, Zazzle handles the production logistics.  *Id.* ¶ 74.  Design professionals receive royalty payments from Zazzle for each product ordered by a consumer that uses their designs.  *Id.* ¶ 77.

## B.     Font Design and Creation

A font is a set of representations of characters, called glyphs.  FAC ¶ 46.  The shape of each glyph within a font consists of a curve determined by "on-curve" and "off-curve" reference points.  *Id.*  On-curve reference points indicate fixed points through which the curve passes.  *Id.* Off-curve reference points dictate the shape and location of a glyph's curve between the on-curve points.  *Id.*  In addition to these glyph-specific parameters, a font may also be characterized by font-wide variables, such as cap height, letter spacing, ascender height, and descender height.  *Id.*

Nearly all font designers use visual design tools or font-generating engines or font editors to assist with the design and creation of font software.  *Id.* ¶ 51.  One such tool is a font-generating engine, or font-design program.  FAC ¶¶ 45, 53.  Within a font-design program, a designer may set the on-curve and off-curve reference points that determine the shape of each glyph within the font.  *Id.* ¶ 46.  A designer using version 7.1 of the font-design program FontLab can "hand code" the on-curve and off-curve reference points for a glyph by (1) viewing the outline of the glyph's shape on a computer's visual window display and moving the reference points with her computer pointer; (2) editing numbers in the text representation of the reference points making up a glyph's outline; or (3) clicking on a given reference point in the visual representation of the glyph and then editing the numbers specifying the coordinates of that point.  *Id.* ¶ 47.  FontLab also permits a designer to specify numerical values for font-wide variables.  *Id.* ¶ 46.

After a designer is satisfied with her font, a font-design program will compile the designer-inputted font data, as well as any other code written by the font designer, into a final executable font software file that implements the font display on a computer.  *Id.* ¶¶ 45, 48.

### C.    Plaintiff's Fonts

Plaintiff derives her primary source of income from creating fonts and selling licenses for limited use of those fonts and associated font software.  FAC ¶¶ 36–37.  She has created over 110 unique fonts.  *Id.* ¶ 34.  In 2016, Plaintiff used FontLab 7.1 to design and create a trio of fonts—the "Blooming Elegant Trio," comprised of Blooming Elegant, Blooming Elegant Sans, and Blooming Elegant Hand—along with the software (the "Blooming Elegant Software") used to implement the Blooming Elegant Trio.  *Id.* ¶¶ 6, 40.  When creating the Blooming Elegant Trio and Blooming Elegant Software, Plaintiff "hand-coded the designs for individual characters/glyphs by selecting the 'on-curve' and 'off-curve' reference points for each individual character/glyph for each font."  *Id.* ¶ 49.  Plaintiff also "personally hand-coded the instructions for how the [] glyphs should appear . . . by choosing the values for each of the font-wide variables that FontLab permits a designer to set, such as cap height, letter spacing, ascender height, and descender height."  *Id.*  Additionally, Plaintiff "hand wrote and inserted custom code that FontLab incorporated into the final packaged Blooming Elegant Software, which implemented ligatures and stylistic alternate letters for the fonts."  *Id.* ¶ 50.

The United States Copyright Office has issued a registration certificate, with an effective date of February 18, 2021, for the software for each of the three fonts in the Blooming Elegant Trio.  FAC Ex. A ("Ex. A"), ECF No. 82-1; *see id.* ¶ 55.  The registration certificates all show February 16, 2016 as the date of first publication.  *See* Ex. A, at 2, 4, 6.  Additionally, the United States Patent and Trademark Office has issued a registration certificate, dated January 25, 2022, for the mark "BLOOMING ELEGANT" for use in connection with downloadable printing fonts, typeface fonts recorded on magnetic media, and printing fonts that can be downloaded provided by means of electronic transmission.  FAC Ex. B ("Ex. B"), ECF No. 82-2; *see id.* ¶ 56.

United States District Court
Northern District of California

### D.     Creative Market

Plaintiff sells licenses to her fonts and the associated font software both through her own website and through certain online market platforms, including Creative Market.  FAC ¶ 36. Plaintiff has offered the Blooming Elegant Trio and Blooming Elegant Software for licensing on Creative Market since at least 2016.  *Id.* ¶ 57; *see* Shop Page, FAC Ex. E ("Ex. E"), ECF No. 82-5. To license the Blooming Elegant Trio and Blooming Elegant Software from Creative Market, a purchaser must set up a Creative Market account, which requires the user to agree to Creative Market's Terms of Service (the "Service Terms").  FAC ¶ 59; *see id.* Ex. C ("Ex. C"), ECF No. 82-3.  The Service Terms incorporate Creative Market's License Terms (the "License Terms"). FAC ¶ 60; *see id.* Ex. D ("Ex. D"), ECF No. 82-4.  Creative Market also provides a webpage regarding "frequently asked questions" about licenses (the "License FAQ").  FAC ¶ 62.  The License FAQ includes a prominent link to the License Terms.  *Id.*; *see also id.* Ex. F ("Ex. F"), ECF No. 82-6.  Exhibits C, D, E, and F together comprise the operative license in this action (the "License").  FAC ¶¶ 65–66.

### E.     Use of Blooming Elegant Trio on Zazzle's Platform

On November 2, 2016, a Zazzle employee contacted Plaintiff through Creative Market to ask whether Plaintiff offered a perpetual license for server-based use for the Blooming Elegant Trio that Zazzle could house on its internal servers and offer on its design customization tool. FAC ¶¶ 82–83.  Plaintiff "never offers the type of server-based license for her fonts and font software that Zazzle would require," and therefore did not respond to Zazzle's inquiry.  *Id.* ¶ 86.

On or about May 4, 2017, Defendant Alkhatib—a Senior Network Engineer at Zazzle— purchased a License for the Blooming Elegant Trio and Blooming Elegant Software through Creative Market.  *Id.* ¶¶ 9, 90–91.[1]  Although he purchased the License at Zazzle's direction, Alkhatib paid for and agreed to Plaintiff's standard, single-seat license in his name as an individual.  *Id.* ¶ 97.  Plaintiff alleges that Alkhatib concealed his status as a Zazzle employee and

---

[1] The FAC's allegation that a copy of the receipt from Alkhatib's purchase is attached to the complaint as Exhibit F appears to be incorrect, as Exhibit F to the FAC is a copy of the License FAQ.  *See* FAC ¶¶ 64, 90; Ex. F.

United States District Court
Northern District of California

that he purchased the License so that Zazzle could acquire the Blooming Elegant Trio and Blooming Elegant Software, make them available to Zazzle employees, include them on Zazzle's website for commercial use, and make them available to Zazzle's designers, users, and customers with no compensation to Plaintiff.  *See id.* ¶ 97.

Alkhatib subsequently received an email from Creative Market with a link to the License FAQ and a link to download the Blooming Elegant Trio and the Blooming Elegant Software from Creative Market.  *Id.* ¶ 91.  Plaintiff alleges that Alkhatib downloaded the Blooming Elegant Trio and Blooming Elegant Software onto a computer, and that Alkhatib or Zazzle then copied the downloaded files onto multiple Zazzle servers.  FAC ¶¶ 92–93.  Zazzle integrated the Blooming Elegant Trio and Blooming Elegant Software onto its online design tool, where it identified the fonts as Blooming Elegant, Blooming Elegant Sans, and Blooming Elegant Hand.  *Id.* ¶ 96.  By including the Blooming Elegant Trio in its design tool, Zazzle permitted designers, users, and customers to use the fonts on Zazzle's platform for free, with the opportunity to sell designs on Zazzle without compensating Plaintiff.  *Id.* ¶ 96.

The Blooming Elegant Trio of fonts became some of Zazzle's most popular fonts; for example, at least five of Zazzle's twelve most popular business cards and several of Zazzle's most popular wedding invitations used one or more of the Blooming Elegant Trio and were generated using the Blooming Elegant Software.  *Id.* ¶¶ 113–114.  In May 2019, Zazzle recommended a Blooming Elegant font to its users and ranked it second on a list of its top ten handwriting fonts.  *See id.* ¶¶ 116.  Further, several of Zazzle's most commercially successful designers, including those who have made over $500,000 in earnings from Zazzle sales, made extensive use of the Blooming Elegant Trio in their most popular products.  *See id.* ¶¶ 117–121.  Plaintiff alleges that Zazzle has made hundreds of millions of dollars in profits from offering and selling products using the Blooming Elegant Trio and Blooming Elegant Software.  FAC ¶ 106.

### F.     Communications Between Plaintiff and Zazzle

Upon receiving a direct message from a Zazzle user on August 25, 2020, requesting assistance with the use of the Blooming Elegant Trio on Zazzle's website, Plaintiff contacted Zazzle to "inquire about the unlawful use" of the Blooming Elegant Trio and Blooming Elegant

Software. *Id.* ¶ 122–123.  Zazzle provided Plaintiff the receipt for the License from Alkhatib's purchase. *Id.* ¶ 123.  Plaintiff told Zazzle that the License did not cover Zazzle's use and demanded that Zazzle "cease and desist from any further unlawful use of the Blooming Elegant Trio and Blooming Elegant Software." *Id.* ¶ 124.  Zazzle instead asked Plaintiff if Zazzle could purchase an "unrestricted and perpetual use" license for the Blooming Elegant Trio and Blooming Elegant Software." *Id.* ¶ 125–126.

Plaintiff was willing to consider providing Zazzle with a perpetual, server-based license for her fonts, but only if Zazzle provided "data about the numbers of Zazzle designers and customers who ha[d] used the Blooming Elegant Trio and Blooming Elegant Software and numbers of unique designs that Zazzle designers and customers had created and purchased using the Blooming Elegant Trio and Blooming Elegant Software." *Id.* ¶ 128.  Plaintiff further required compensation for Zazzle's prior use of the Blooming Elegant Trio and Blooming Elegant Software.  FAC ¶ 128.  Zazzle refused to provide either the data or compensation, and Plaintiff did not grant a perpetual, server-based license to Zazzle. *Id.* ¶ 129.

### G.    Replacement of Blooming Elegant Trio on Zazzle's Platform

On or about August 5, 2022, Zazzle began removing the Blooming Elegant Trio from its design tool. *Id.* ¶¶ 132–133.  Zazzle replaced each of the Blooming Elegant Trio with "cheap imitation[] [fonts] that attempt to mimic the look and feel of the Blooming Elegant Trio"; for example, it replaced one Blooming Elegant font with a font titled Morgana, and another with a font titled Dongle. *Id.* ¶¶ 133–134, 144.  Plaintiff alleges that the designer of the Morgana font copied it from Blooming Elegant, but that Morgana is neither an exact copy of nor an adequate substitute for Blooming Elegant. *Id.* ¶¶ 135, 137.  On or about August 8, 2022, Zazzle was "informed by the licensor of the Morgana font that Morgana was a copy of Blooming Elegant and should be taken down from Zazzle's website." *Id.* ¶ 139.  As of March 14, 2023, the Morgana font remained available on Zazzle's website. *See* FAC ¶ 140.

### H.    Procedural History

Plaintiff filed this lawsuit against Zazzle and Alkhatib on August 24, 2022.  ECF No. 1.  Defendants filed a motion to dismiss the complaint in October 2022.  ECF No. 40.  Following a

United States District Court
Northern District of California

1    January 19, 2023 hearing on Defendants' motion, Plaintiff moved for leave to file a first amended

2    complaint.  *See* ECF Nos. 64, 68, 74.  The Court granted leave, and Plaintiff filed the operative

3    FAC on March 14, 2023.  ECF Nos. 81, 82.  Defendants filed the pending Motion on March 31,

4    2023.  ECF No. 86.  On April 7, 2023, Plaintiff filed a motion for partial summary judgment,

5    which is set for hearing on August 3, 2023.  ECF Nos. 89, 97.

6    ## II.     LEGAL STANDARD

7           Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

8    to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff

9    must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

10   *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts

11   that allow the court to "draw the reasonable inference that the defendant is liable for the

12   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must

13   be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts

14   generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts

15   sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555,

16   570.  However, "[i]n alleging fraud or mistake, a party must state with particularity the

17   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

18          When determining whether a claim has been stated, the Court accepts as true all well-pled

19   factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP*

20   *Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as

21   true allegations that contradict matters properly subject to judicial notice" or "allegations that are

22   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

23   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

24   omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and

25   matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986);

26   *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

27   ## III.    REQUEST FOR JUDICIAL NOTICE

28          Defendants have submitted five exhibits that they ask the Court to review in ruling on the

United States District Court
Northern District of California

7

1   Motion.  *See* Request for Judicial Notice ("RJN"), ECF No. 87; Kassabian Decl., ECF 87-1 ¶¶ 2–

2   6, Exs. 1–5.  The two doctrines that permit district courts to consider material outside the

3   pleadings without converting a motion to dismiss into a motion for summary judgment are (1)

4   judicial notice under Federal Rule of Evidence 201 and (2) incorporation by reference.  *Khoja v.*

5   *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

6          Under the judicial notice doctrine, a court may judicially notice a fact that is "not subject to

7   reasonable dispute," *i.e.*, a fact that is "generally known," or "can be accurately and readily

8   determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

9   201(b)(1)–(2).  If a judicially noticeable document contains disputed facts, the court may notice

10  the document, but not the disputed facts therein.  *Khoja*, 899 F.3d at 999 ("[A] court cannot take

11  judicial notice of disputed facts contained in [judicially noticeable] public records.") (citation

12  omitted).  "[I]ncorporation-by-reference is a judicially created doctrine that treats certain

13  documents as though they are part of the complaint itself."  *Id.* at 1002.  Under this doctrine, a

14  court may consider a document "if the plaintiff refers extensively to the document or the document

15  forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

16  2003).  A court generally "may assume an incorporated document's contents are true for purposes

17  of a motion to dismiss under Rule 12(b)(6)," but "it is improper to assume the truth of an

18  incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded

19  complaint."  *Khoja*, 899 F.3d at 1003 (internal quotations omitted).

20         Defendants assert that Exhibits 1 through 5 are either incorporated by reference in the FAC

21  or subject to judicial notice.  RJN 1–3.  Plaintiff expressly opposes the request as to Exhibit 2, and

22  refers to Exhibits 3 and 4 as "extrinsic evidence."  Opp'n 13, 25.

23         **A.     Exhibit 1**

24         Exhibit 1 is a copy of an excerpt of Chapter 700 of the Compendium of U.S. Copyright

25  Office Practices, Third Edition (2021) (the "Compendium").  Kassabian Decl. ¶ 2.  Courts

26  routinely take judicial notice of public records, including documents from the Copyright Office.

27  *See, e.g.*, *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 979 (E.D. Cal. 2000) (taking judicial

28  notice of informational circular issued by Copyright Office after finding circular "'generally

United States District Court<br>Northern District of California

8

United States District Court
Northern District of California

1   known' and 'capable of accurate and ready determination by resort to sources whose accuracy

2   cannot reasonably be questioned' because it is contained in the United States Copyright Office");

3   *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1172 n.4 (N.D. Cal.

4   2015) (taking judicial notice of report filed with Copyright Office as a matter of undisputed public

5   record); *see also Naruto v. Slater*, 2016 WL 362231, at *4 (N.D. Cal. Jan. 28, 2016) (granting

6   motion to dismiss based in part on "guidance of the Copyright Office" from the Compendium).

7   Because the Compendium is a public record of the Copyright Office and Plaintiff does not dispute

8   any facts contained therein, the Court takes judicial notice of Exhibit 1.  *See* Opp'n 21–23; *Khoja*,

9   899 F.3d at 999.

10          **B.      Exhibit 2**

11          Exhibit 2 is a copy of a legal news article entitled "Battle Lines Drawn Over Font

12   Copyright Protection," dated October 24, 2020, and (per the webpage URL) published on the

13   website of Frankfurt Kurnit Klein & Selz PC.  *See* Kassabian Decl. ¶ 3.  Defendants assert that

14   document may be judicially noticed as material that was in the public realm at the time of its

15   publication, and that the document "quot[es] official correspondence between font designers and

16   U.S. Copyright Office Examiners" that is judicially noticeable as a copyright record.  RJN 2.

17   Plaintiff argues that the document is a law firm website marketing post, rather than a news article,

18   and that the accuracy of its contents cannot be readily determined.  Opp'n 25.  Upon reviewing the

19   document at issue, the ostensible quotations of official correspondence from the Copyright Office

20   are sourced from "[r]edacted letters posted on an online typeface designer forum (now removed)."

21   ECF No. 87-3, at 3.  That is, the purported official correspondence is no longer available for

22   verification, and is sourced from an online forum.  The contents of the document are therefore

23   neither "generally known" nor capable of being "accurately and readily determined from sources

24   whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2); *see U.S. v. Baker*,

25   641 F.2d 1311, 1316 (9th Cir. 1981) (finding judicial notice of fact reported by news media

26   improper because the "source . . . cannot be said to be unquestionably accurate").  Accordingly,

27   the Court does not take judicial notice of the contents of Exhibit 2.  The Court also declines to take

28   judicial notice of the fact that the document was available in the public realm, because the mere

9

fact of its existence is not relevant to the sufficiency of Plaintiff's FAC.  *See* Mot. 8; *In re Juul Labs, Inc., Antitrust Litig.* 555 F. Supp. 3d 932, 968 (N.D. Cal. 2021) (refusing to take judicial notice of materials irrelevant to the determination of the motions at issue).

### C. Exhibits 3–5

Defendants contend that Exhibits 3, 4, and 5 are incorporated by reference into the FAC, and that judicial notice of Exhibits 3 and 4 is proper.  RJN 2–3.  Exhibit 3 is a copy of a screenshot depicting Creative Market's sign-up page and data entry fields used to set up an account as of March 28, 2023.  Kassabian Decl. ¶ 4.  Exhibit 4 is a copy of a screenshot depicting Creative Market's sign-up page and data entry fields used to set up an account as of approximately May 2017, as captured by the Wayback Machine.  *Id.* ¶ 5.  Exhibit 5 is a copy of Alkhatib's receipt for the Blooming Elegant Font Trio license purchase.  *Id.* ¶ 6.  Alkhatib's representations (or lack thereof) made by signing up for a Creative Market account, and the purchase of the License itself, "form the basis" for Plaintiff's fraud and breach of contract claims.  *See* FAC ¶¶ 175–198. Exhibits 3 through 5 are therefore incorporated by reference.  *See Ritchie*, 342 F.3d at 908; *accord Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (granting request to incorporate by reference Terms of Service because the operative complaint relied upon them to allege the breach of contract claims and statutory claims).

For the foregoing reasons, Defendants' request that the Court consider Exhibits 1–5 is GRANTED with respect to Exhibits 1, 3, 4, and 5, and DENIED with respect to Exhibit 2.

## IV.    DISCUSSION

Defendants move to dismiss all six claims in the FAC on the grounds that (1) Plaintiff fails to plead copyright infringement; (2) the Copyright Act preempts Plaintiff's state law claims; (3) Plaintiff fails to properly plead a claim for breach of contract; (4) Plaintiff fails to plead her all elements of her fraud claims and the pleaded elements lack the requisite particularity; and (5) Plaintiff fails to plead an actionable trademark infringement.  Mot. 1, 5.  The Court addresses each argument in turn.

### A.    Copyright Infringement

"To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she

United States District Court
Northern District of California

1   owns the copyright in the infringed work, and (2) the defendant copied protected elements of the

2   copyrighted work." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018) (citation omitted).

3   There is a statutory presumption that a certificate of registration of a copyright "made before or

4   within five years after first publication of the work shall constitute prima facie evidence of the

5   validity of the copyright." 17 U.S.C. § 410(c). The evidentiary weight of a registration certificate

6   dated more than five years after publication of the work is left to the discretion of the court. *Id.*

### 1.      Ownership of a Valid Copyright

8         The statutory presumption does not apply here, as the effective date of Plaintiff's copyright

9   is five years and two days after first publication. *See* Ex. A. Given the Court's holding on the

10   sufficiency of the copyright ownership allegations, as discussed below, it need not address the

11   parties' arguments regarding the statutory presumption of validity based on—and discretionary

12   weight given to—Plaintiff's registration certificates. *See* Mot. 6; Opp'n 19–20.

13         "Typeface as typeface"—*i.e.*, the design of a font—is not copyrightable. 37 C.F.R. §

14   202.1(e); *see Adobe Sys. Inc. v. S. Software Inc.*, No. C 95-20710 RMW (PVT), 1998 WL 104303,

15   at *3 (Feb. 2, 1998) (citing *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978)). However,

16   font software may be copyrightable. *See Adobe*, 1998 WL 104303, at *5. For example, a

17   "computer program[] designed for generating typeface in conjunction with low resolution and

18   other printing devices may involve original computer instructions entitled to protection under the

19   Copyright Act." Policy Decision on Copyrightability of Digitized Typefaces, 57 Fed. Reg. 35, at

20   6201-01, 6202 (Feb. 21, 1992).

21         Defendants argue that Plaintiff cannot establish ownership of a valid copyright because

22   Plaintiff used FontLab to generate the software code for the Blooming Elegant Trio font designs,

23   rather than authoring the code herself. Mot. 6–9. Plaintiff counters that the FAC sufficiently

24   pleads ownership based on its allegations that Plaintiff "hand-coded" several aspects of the

25   Blooming Elegant Trio and used FontLab to "compile" the font codes into font software. Opp'n

26   20–21 (citing FAC ¶¶ 44–45. 49–54).

27         Specifically, the FAC alleges that Plaintiff "hand-coded the designs for individual

28   characters/glyphs by selecting the 'on-curve' and 'off-curve' reference points for each individual

character/glyph for each font" of the Blooming Elegant Trio.  FAC ¶ 49.  According to the FAC, "hand-cod[ing]" a reference point can mean any one of (1) moving the reference point on a visual display with a computer pointer; (2) editing numbers in the text representation of the reference point; or (3) clicking on the reference point in the visual display of the glyph and then editing the numbers for the coordinates of that point.  *Id.* ¶ 47.  Plaintiff does not allege which of these methods she employed to "hand-code" the reference points for the Blooming Elegant Trio.  The FAC also alleges that Plaintiff "personally . . . cho[se] the values for each of the font-wide variables that FontLab permits a designer to set, such as cap height, letter spacing, ascender height, and descender height."  *Id.* ¶ 49.  Further, Plaintiff "hand wrote and inserted custom code that FontLab incorporated into the final packaged Blooming Elegant Software, which implemented ligatures and stylistic alternate letters for the fonts."  *Id.* ¶¶ 49–50.

Based on the above allegations, the Court disagrees with Defendants' characterization of the FAC as showing that "the only thing [Plaintiff] purportedly 'hand-coded' are 'the instructions for how the characters/glyphs should appear next to each other by choosing the values for each of the font-wide variables that FontLab permits a designer to set, such as cap height, letter spacing, ascender height, and descender height.'"  Mot. 7; Reply 7.  The FAC also alleges that Plaintiff "created . . . the Blooming Elegant Software," *see, e.g.*, FAC ¶ 40, and "hand wrote and inserted custom code" that was incorporated into the Blooming Elegant Software, *id.* ¶ 50.  Even if the Court found persuasive the Compendium's guidance suggesting that "merely assign[ing] coordinates to a particular letterform and then us[ing] a third party program to tender typeface or typefont from those coordinates" is not work that is registerable by the Copyright Office, *see* Mot. 6; RJN Ex. 1, at 54, Plaintiff's allegations regarding her involvement in the creation of the Blooming Elegant Software permit a plausible inference of ownership in a copyrightable work.  *See* 57 Fed. Reg. 35, at 6202 (stating font software "involv[ing] original computer instructions" may be copyrightable); RJN Ex. 1, at 53 ("A computer program that generates . . . a particular typeface . . . may be registered if [it] contains a sufficient amount of original authorship in the

1  form of statements or instructions to a computer."); *cf.* ECF No. 41-5[2] ("If the [font file] was

2  merely generated by a font program *and was not hand coded by a human author*, it cannot be

3  registered.") (emphasis added).

4      The Court acknowledges that Defendants raise serious questions as to whether Plaintiff

5  contributed enough to the Blooming Elegant Software to be considered its author.  But that is a

6  question of fact not appropriate for resolution at the pleading stage.  *See Mangiaracina v. Penzone*,

7  849 F.3d 1191, 1198 (9th Cir. 2017).  Accepting all allegations of material fact as true and

8  construing them in the light most favorable to Plaintiff, the FAC adequately pleads Plaintiff's

9  ownership of a valid copyright in the Blooming Elegant Software.

10                    **2.       Copying of Protected Elements (Infringement)**

11     A copyright owner has the exclusive right to reproduce the copyrighted work and to

12  prepare derivative works based upon the copyrighted work.  17 U.S.C. § 106(1)–(2).  According to

13  the FAC, after Alkhatib bought the License, "Alkhatib or Zazzle . . . illegally copied the Blooming

14  Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers[] . . . and made them

15  available to all of Zazzle's millions of designers, users, and customers until at least early August

16  2022."  FAC ¶ 93.  However, the License only "cover[ed] one user," who was permitted to install

17  the Blooming Elegant Trio and Blooming Elegant Software "on up to two computers used by the

18  end user," and stated that "each unique user . . . requires their own license."  *Id.* ¶ 66(d); Ex. D, at

19  1.  The FAC also alleges that Zazzle "integrated the Blooming Elegant Trio and Blooming Elegant

20  Software into its online design tool, permitting Zazzle's designers, users, and customers to use the

21  Blooming Elegant Trio and Blooming Elegant Software in their own designs on Zazzle's platform,

22  and to do so for free with the ability to offer and sell whatever they created on the platform

23  without any compensation" to Plaintiff.  *Id.* ¶ 96.

24     Defendants argue, without pointing to any legal authority, that Plaintiff has failed to plead

25

26  ───────────────

27  [2] ECF No. 41-5 includes correspondence from the Copyright Office.  It was attached as Exhibit 4
    to Defendants' request for judicial notice in support of its original motion to dismiss, and
    Defendants cite to this exhibit in the pending Motion.  Mot. 8.  The Court previously took judicial
28  notice of the document, and does so again.  *See* ECF No. 68, Transcript of Oral Argument, at
    4:21–5:16; *see also* ECF No. 41 (Initial RJN).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the unauthorized copying of a protected work because (1) the licensing documents attached to the

2   FAC describe uncopyrightable fonts, not copyrightable software, and (2) the FAC's allegations

3   regarding the Morgana font also focus on the font, rather than any copying of the Blooming

4   Elegant Software.  Mot. 9–10.  To the extent Defendants' first argument raises the issue of

5   whether Plaintiff owns a valid copyright to a copyrightable work, the Court has found ownership

6   sufficiently pled, as described above.  *See supra*, at § IV.A.1.  And to the extent this argument

7   contends that Defendants did not have a license to use Plaintiff's allegedly copyrightable software,

8   then any amount of copying would be unauthorized.  Further, as Plaintiff points out, both

9   arguments ignore the FAC's allegations that Zazzle copied the Blooming Elegant Software onto

10  multiple servers and provided access to the software to employees and users.  Opp'n 23–24.

11  These allegations sufficiently allege an act of copyright infringement.  *See, e.g.*, *Shropshire v.*

12  *Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) (holding infringement sufficiently pled

13  where defendant allegedly uploaded copy of protected work to YouTube because defendant's

14  "direct actions led to the creation of a copy of the [copyrighted] video on YouTube's servers . . .

15  and to the subsequent viewing of the video by potentially thousands").

16          The FAC's allegations regarding the Morgana font and font software are sparse.  Plaintiff

17  alleges that "[t]he designer of the Morgana font copied it from Blooming Elegant," FAC ¶ 135;

18  "[t]he Morgana font infringes on [Plaintiff's] copyrights to the Blooming Elegant Software," *id.* ¶

19  136; "Zazzle reproduced and distributed, and continues to reproduce and distribute the Morgana

20  font software by installing it on Zazzle's servers," *id.* ¶ 199; and Zazzle's reproduction and

21  distribution of Morgana "violated [Plaintiff's] exclusive rights of reproduction and distribution,

22  and perhaps also the exclusive right to prepare derivative works based on the Blooming Elegant

23  Software," *id.*  However, based on these allegations, the Court can—and must—draw the

24  reasonable inference that the Morgana font software is copied from the Blooming Elegant

25  Software, and therefore either an unauthorized copy or unauthorized derivative of a protected

26  work.  *See Shropshire*, 809 F. Supp. 2d at 1146.

27          Accordingly, the Court finds that Plaintiff has stated a claim for copyright infringement.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Preemption**

Defendants argue that the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, preempts Plaintiff's four state law claims, *i.e.*, fraudulent misrepresentation, fraudulent concealment, promissory fraud, and breach of contract. Mot. 10–14. The Copyright Act includes an express preemption clause providing that "all legal and equitable rights that are equivalent to any of the exclusive rights as specified by section 106 . . . [that] come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title." 17 U.S.C. § 301(a). Under the Ninth Circuit's two-part test for determining whether a state law claim is preempted by the Copyright Act, the court "consider[s] whether (1) the work at issue falls within the scope of copyright subject matter, and (2) the law at issue grants rights equivalent to any of the exclusive rights within the scope of copyright." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015) (citation omitted). A state claim will survive preemption if it asserts a right that is "qualitatively different from the rights protected by copyright," *e.g.*, a right that requires the plaintiff to plead an additional element not required for a copyright claim. *Id.* (quoting *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011)).

**1.     Fraud Claims**

Defendants argue that Plaintiff's three fraud-based claims are all premised on the allegation that Defendants used the Blooming Elegant Software in violation of the License, and that the relevant violation of the License—the copying of the Blooming Elegant Software onto Zazzle's servers and provision of the Blooming Elegant Trio in Zazzle's design tool—is the same set of actions that underpins Plaintiff's claim for copyright infringement. Mot. 10–12. Plaintiff responds that misrepresentation is an extra element of each of the three claims, as compared to a copyright infringement claim, so that the fraud claims survive preemption. Opp'n 10–12.

In *Valente-Kritzer Video v. Pinckney*, the Ninth Circuit determined a plaintiff's fraud claim was not preempted by § 301 of the Copyright Act. 881 F.2d 772, 776 (9th Cir. 1989). The court noted that misrepresentation is a "necessary element of any fraud claim" under California law, and reasoned that a claim for fraudulent misrepresentation in entering a contract "is not substantially equivalent to a claim for copyright infringement." *Id.* Defendants cite to four cases in which

district courts within this circuit found claims preempted by the Copyright Act, but none is

apposite: three involve alleged misrepresentations regarding the defendants' legal rights to

reproduce or distribute a protected work—so that the misrepresentations were not precursors to

but rather parts of the infringing acts—and the fourth does not involve a fraud claim.  *See*

*Giddings v. Vison House Prod., Inc.*, No. CV 05–2963–PHX–MHM, 2007 WL 2274800, at *1, *3

(D. Ariz. Aug. 7, 2007) (defendants allegedly misrepresented artist plaintiff's signature and

limited-edition prints in unauthorized reproduction and distribution of copyrighted artwork);

*Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1191–92 (C.D. Cal. 2001) (defendant's alleged

misrepresentation was of authorship of infringing work); *Sybersound Recs., Inc. v. UAV Corp.*,

No. CV 05-5861-JFW (FMOx), 2005 WL 8156567, at *6 (C.D. Cal. Nov. 7, 2005) (defendant

allegedly misrepresented its possession of licenses and royalty payments in unauthorized use of

copyrighted compositions); *BlueGem Sec., Inc. v. Trend Micro Inc.*, No. CV09–01492 ODW

(FFMx), 2009 WL 10672402, at *2 (C.D. Cal. Dec. 1, 2009) (no claims involving fraud or

misrepresentation).  Here, by contrast, Plaintiff alleges Defendants made misrepresentations in

obtaining the License—prior to the alleged infringement—in support of her three fraud claims,

which therefore are "not substantially equivalent to a claim for copyright infringement."  *Valente-*

*Kritzer Video*, 881 F.2d at 776.

### 2. Breach of Contract Claim

As with the fraud claims, Defendants argue that Plaintiff's breach of contract claim is

preempted by the Copyright Act because it is "based on the supposed unauthorized use of the

software," and therefore "rests on precisely the same conduct Plaintiff alleges constitutes

copyright infringement."  Mot. 13; *see id.* at 12–14.  Plaintiff takes the position that preemption

under the Copyright Act "has no application to contract rights" because contract rights are

established by voluntary agreement, while copyright preemption only applies to causes of action

seeking to enforce rights established by law.  Opp'n 5–7.  Plaintiff further argues that the License

protects rights not equivalent to any of the exclusive rights within the general scope of copyright,

such as the restriction of the use of the Blooming Elegant Trio to one user and installation up to

two computers used by that individual, and the prohibition of making the fonts available on a

United States District Court
Northern District of California

United States District Court
Northern District of California

1  shared digital system for the purpose of sharing or transferring the fonts.  *Id.* at 7–10.

2          There is no bright line rule in the Ninth Circuit stating that the Copyright Act may never

3  preempt a breach of contract claim.  *See, e.g.*, *Ryan*, 786 F.3d at 761 ("Indeed, we, along with our

4  sister circuits, have long recognized that a contractually-based claim *generally* possesses the extra

5  element necessary to remove it from the ambit of the Copyright Act's express preemption

6  provision.") (emphasis added) (citations omitted); *Valente-Kritzer Video*, 881 F.2d at 774–75

7  (affirming determination on summary judgment that Copyright Act preempted plaintiff's breach of

8  contract claim).  However, the contract here includes sufficient additional rights such that are

9  "qualitatively different" from the rights protected by the Copyright Act.  *Ryan*, 786 F.3d at 760.

10  For example, Plaintiff alleges that the License allowed for private use of the Blooming Elegant

11  Software by only a single user over two computers, and prohibited the purchaser from making the

12  Blooming Elegant Trio available on a shared system.  FAC ¶¶ 66, 93–96.  These restrictions on

13  specific uses of the Blooming Elegant Software go beyond the exclusive reproduction and

14  distribution rights protected by the Copyright Act.  *See, e.g.*, *Altera Corp. v. Clear Logic, Ind.*, 424

15  F.3d 1079, 1089 (9th Cir. 2005) ("The right at issue is not the reproduction of the software as

16  [defendant] argues, but is more appropriately characterized as the use of the [software's output, or]

17  bitstream."); *cf. Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933–34 (N.D. Cal. 2009) (holding

18  contract claim preempted where allegations "deal[t] exclusively with the misappropriation" of

19  copyrighted software and giving leave to amend by "demonstrating that there are rights or

20  remedies available under the contract claims that are not otherwise available under the copyright

21  claim").  The breach of contract claim here "concern[s] the unauthorized use of the software's

22  end-product," and is not preempted by federal law because preventing such unauthorized use is

23  "not within the rights protected by the federal Copyright Act."  *Altera*, 424 F.3d at 1090.

24          The Court thus finds that the Copyright Act does not preempt Plaintiff's state law claims.

25  **C.      Failure to State a Claim – Breach of Contract**

26  Defendants also move to dismiss the breach of contract claim as deficiently pled.

27          **1.      Documents Comprising the Contract**

28  According to Defendants, Plaintiff has failed to properly plead the terms of the contract

because Plaintiff submitted a declaration in support of a now-terminated summary judgment motion stating that a single document constituted the license at issue in this action, but the FAC alleges the License is comprised of a set of four documents that includes the prior document and three additional ones.  Mot. 20–21.  Plaintiff responds that all four documents comprising the License were attached as evidence either in support of or opposition to her prior motion for summary judgment, and states that the FAC "now attaches all of the relevant documents . . . which were not attached to the original Complaint."  Opp'n 12–13.  For the purposes of the present Motion, the Court accepts all four documents as comprising the relevant contract, *i.e.*, the License.

### 2. Standing

Generally, under California law, "only a party to the contract may sue for breach of the agreement's terms."  *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1092 (2005); *see Fabrinet USA, Inc. v. Micatu, Inc.*, No. 20-cv-00382-VKD, 2020 WL 3414657, at *3 (June 22, 2020) ("Absent exceptions to the general rule, privity of contract is a necessary element of a contract claim.") (citation omitted).  Exceptions to this rule include a plaintiff's status as an assignee or third-party beneficiary to the contract.  *See, e.g.*, *Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 786 (2009) (finding assignee had standing to sue for breach of contract providing for royalty payments); *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005) ("[Plaintiff] nonetheless has standing in her own right to sue for breach of contract as a third party beneficiary . . . .").

Defendants argue that Plaintiff lacks standing to sue because the FAC fails to allege she was a party to the License.  Mot. 20.  Plaintiff counters that the FAC sufficiently pleads her status as a party to the contract, including by alleging that Plaintiff offered the Blooming Elegant Trio and Blooming Elegant Software on "her" Creative Market shop, that the License at issue here was "from 'Nicky Laatz via her Creative Market Shop,'" and that Plaintiff was the Shop Owner referenced in the License.  Opp'n 13 (citing FAC ¶¶ 57–58, 66(e)).

The four documents that allegedly make up the License are the Service Terms, the License Terms, the Shop Page, and the License FAQ.  *See* FAC ¶¶ 57–66; *id.* Exs. C–F.  The Service Terms control the legal relationship between Creative Market, on the one hand, and "all visitors,

users, buyers, sellers and others who access" the platform, on the other.  Ex. C, at 1.  No party's name appears on the face of the Service Terms.  *See generally id.*  The License Terms "constitute an agreement between" the purchaser of a license to digital content (the "Buyer"), the seller of such content (the "Shop Owner"), and Creative Market or any of its affiliates.  Ex. D, at 1.  This document also does not identify by name a party to this action.  *See generally id.*  The Shop Page is the public offering page for the Blooming Elegant Trio and Blooming Elegant Software from Plaintiff's Creative Market shop.  FAC ¶ 62; Ex. E.  The Shop Page includes Plaintiff's name, Nicky Laatz, in both the byline for the Blooming Elegant Trio product and in a sidebar portion of the page, close to a "follow" button, an envelope icon, and a rating stating that "99% Recommend This Shop."  Ex. E, at 1.  The License FAQ does not specify any party's name, but includes multiple references to "shop owners."  Ex. F, at 3–5.

The appearances of Plaintiff's name on the Shop Page in the byline and above the shop recommendation suggest that Plaintiff is the Shop Owner referenced in the License Terms and the License FAQ.  *See* Exs. D, E, F; *see also* FAC ¶ 66(e) ("A licensee 'may modify or manipulate the [fonts and font software], or incorporate it into other content and make a derivative work from it,' but 'the Shop Owner [in this case, Nicky Laatz] will retain all right, title, and ownership in the [fonts and font software], and the resulting derivative work is subject to the terms of this Standard License.'").  And the equating of the "Shop Owner" with the "seller of such [digital] content" in the License Terms likewise suggests that the Shop Owner is a "seller" under the Service Terms.  *See* Exs. C, D.  Viewed in the light most favorable to Plaintiff, the Court can reasonably infer that Plaintiff is the seller and Shop Owner, and therefore a party to the License.  And because it finds that Plaintiff is an original party to the License, the Court need not evaluate the propriety of any alleged assignment to Plaintiff of licensing rights to the Blooming Elegant Trio and Blooming Elegant Software from various non-parties to this action.  *See* FAC ¶ 71.[3]

---

[3] The FAC does not allege, as Defendants claim, that a different entity stood in for Plaintiff as the original contracting party.  *Compare* Reply 12 ("We know from Plaintiff's own allegations that the *original* contracting party to the Creative Market License was an entity called Brightbox Collective (Pty) Ltd., which Plaintiff alleges was the 'limited company [used] to collect revenue from her licensing ... through Creative Market.'") (citing FAC ¶ 68), *with* FAC ¶ 68 ("[Plaintiff] used a limited company called Brightbox Collective (Pty) Ltd ('Brightbox') to collect revenue

United States District Court
Northern District of California

### 3.    Alkhatib's Agency Liability

Defendants also contend that Plaintiff cannot bring a breach of contract claim against Alkhatib.  Mot. 21–22.  In general, "corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." *Jones v. AIG Risk Mgmt., Inc.*, 726 F. Supp. 2d 1049, 1057–58 (N.D. Cal. 2010) (quoting *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1604 (2009)).  But California law provides that "an agent who makes a contract on behalf of an undisclosed or unidentified principal is a party to the contract and may be sued individually." *Aqua Connect v. Code Rebel, LLC*, No. CV 11–05764 RSWL (MANx), 2013 WL 3820544, at *6 (C.D. Cal. July 23, 2013) (citations omitted).

The FAC alleges that Alkhatib "deliberately concealed the fact that he [entered into the License] as an agent of Zazzle and, unbeknownst to [Plaintiff] at the time, Alkhatib was acting at the request of . . . Zazzle, which was an undisclosed principal." FAC ¶ 213.  Defendants argue that Plaintiff's claim against Alkhatib fails because (1) he was an agent for Zazzle, (2) the License Terms provide that an individual may "open a Creative Market account on behalf of [another] entity," (3) the Creative Market sign-up webpage does not provide a field to disclose an employer, and (4) Alkhatib signed up for a Creative Market account using his work email address, which references Zazzle.  Mot. 21–22; *see also* FAC ¶ 213; FAC Ex. C; RJN Ex. 3; RJN Ex. 5.

The Court cannot find as a matter of law that Zazzle was a disclosed principal based on these documents.  Defendants' strongest argument is that Plaintiff must have seen Alkhatib's email, "mo@zazzle.com," in the "complete licensing transaction documentation."  Mot. 22; RJN Ex. 5, at 1.  However, the California Court of Appeal has expressed its agreement with other states in reasoning that "the use of a trade name is not sufficient disclosure of the identity of the principal to protect the agent from personal liability, unless the evidence establishes the other party knew the actual identity of the principal for whom the agent was acting from some source other than the use of the trade name." *G. W. Anderson Construction Co. v. Mars Sales*, 164 Cal. App. 3d 326, 332–33 (1985).  Therefore, even assuming Plaintiff saw Alkhatib's email address, the mere use of

---

from her licensing of the Blooming Elegant Trio and Blooming Elegant Software, among other things, primarily through Creative Market.").

an agent's name and a company name in such documentation "suggests that the true identity of the principal was not revealed to Plaintiff." *Aqua Connect*, 2013 WL 3820544, at *6 (citation omitted) (permitting breach of contract claim against agent who requested trial version of software using own name and company name).  Lastly, Defendants' arguments that Alkhatib was not afforded an opportunity to identify Zazzle as his principal and that the License Terms contemplate agents using Creative Market on behalf of principals have no bearing on whether Zazzle was in fact disclosed to Plaintiff as the principal; the former argument is made further unpersuasive by the allegation that a different Zazzle employee sent a message to Plaintiff through Creative Market's chat system to inquire about obtaining a perpetual license for Zazzle.  *See* FAC ¶ 83.

For the foregoing reasons, the Court finds that Plaintiff's breach of contract claim is sufficient to survive a motion to dismiss.

### D.     Failure to State a Claim – Fraud Claims

Plaintiff brings three fraud claims under California Civil Code § 1572 for what the California Supreme Court has recognized as "misrepresentation torts."  *See Metropolitan Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 282 F. App'x 544, 546 (9th Cir. 2008) (quoting *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 414 (1992)); FAC ¶¶ 175–195.  The elements of Plaintiff's fraudulent misrepresentation, fraudulent concealment, and promissory fraud claims are prescribed by the statute and by common law.  *Bily*, 3 Cal. 4th at 414.  For these three claims, the statute requires (1) respectively, the "suggestion, as a fact, of that which is not true, by one who does not believe it to be true," or the "suppression of that which is true, by one having knowledge or belief of the fact," or a "promise made without any intention of performing it"; (2) committed by a party to the contract, or with his connivance; (3) with intent to deceive another party thereto, or to induce him to enter into the contract."  Cal. Civil Code §§ 1572(1), (3), (4).  California law also requires a plaintiff claiming fraud to establish (4) justifiable reliance; and (5) resulting damage.  *See, e.g.*, *PetConnect Rescue, Inc. v. Salinas*, — F. Supp. 3d —, No. 20-CV-00527-RSH-DEB, 2023 WL 2026546, at *28 (S.D. Cal. Feb. 15, 2023) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as modified* (July 30, 1997)).  A claim for fraudulent concealment further requires a duty to disclose.  *Moncada v. W. Coast Quartz Corp.*, 221 Cal.

App. 4th 768, 775 (2013).

Further, under Federal Rule of Civil Procedure 9(b), a plaintiff's claims sounding in fraud require particularized allegations regarding the "circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Defendants contend that Plaintiff does not have standing to bring her fraud claims because she is not a party to the contract, and that Plaintiff has not sufficiently pled a misrepresentation or concealment, fraudulent intent, reasonable reliance, or duty to disclose.  Mot. 14–18.

### 1.    Standing

With regard to the standing argument, the Court finds that Plaintiff has alleged that she is a party to the contract for the reasons described above in relation to Plaintiff's breach of contract claim.  *See supra*, at § IV.C.2.

### 2.    Fraudulent Misrepresentation and Promissory Fraud

In *Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164, 1178–79 (C.D. Cal. 2018), the court found allegations that defendants created online accounts, which required assenting to terms of service that the defendants allegedly intended to breach, satisfied Rule 9(b) and California's pleading requirements for promissory fraud.  The allegations here are similar. The FAC alleges that Alkhatib was required to sign up for the account in order to purchase and download the Blooming Elegant Trio and Blooming Elegant Software, and that as part of the sign-up process he necessarily agreed to the Service Terms and License Terms.  *Id.* ¶ 59.  Alkhatib then "agreed to the standard, single-seat license," "conceal[ed] the fact[] that he was a Zazzle employee," and "entered into the [] License so that Zazzle could acquire the Blooming Elegant Trio and Blooming Elegant Software[] to make them available to Zazzle's employees, use them on its website, and make them available to all of its designers, users, and customers."  *Id.* ¶ 97. Plaintiff relied on her understanding that Alkhatib was a single user when she entered into the License contract.  *Id.* ¶¶ 181, 188, 193.

Defendants argue that *Ticketmaster* is inapposite because the plaintiff there was enforcing

United States District Court
Northern District of California

United States District Court
Northern District of California

1  its own terms, while Plaintiff is attempting to enforce Creative Market's terms; they suggest that

2  Plaintiff should have "plead[ed] facts showing how she could have relied on any representation

3  made by any Creative Market user." Reply 10. Defendants appear to be arguing that Plaintiff

4  would not have been aware of any representation made by Defendants in signing up for a Creative

5  Market account. *See id.*; Mot. 18. However, the Service Terms—which apply to both sellers and

6  buyers on Creative Market—expressly incorporate the License Terms, which "constitute an

7  agreement between ["Buyer"], the seller ("Shop Owner") and Creative Market . . . setting forth the

8  rights and obligations with respect to the digital content ("Items") licensed by you." Ex. C, at 1;

9  Ex. D, at 1. Based on these documents and Plaintiff's allegations that she did in fact rely on the

10  representations inherent in the License, the FAC sufficiently pleads all elements, including

11  reliance, for the three fraud claims. *See Ticketmaster*, 306 F. Supp. 3d at 1178–79.

12  Further, although Defendants suggest that the Shop Page expressly permitted commercial

13  use, Mot. 15–16, the License Terms clearly state on the first page that the standard license permits

14  commercial use of installable items like fonts in an unlimited number of projects, with *one seat

15  per license*. Ex. D, at 1. Defendants also argue that the FAC is deficient for not alleging that

16  Alkhatib saw the specific terms at issue, Mot. 18, but such an allegation is unnecessary. It is

17  sufficient that Plaintiff alleged that Alkhatib necessarily agreed to the License Terms in signing up

18  for a Creative Market account. *See Ticketmaster*, 306 F. Supp. 3d at 1179; FAC ¶¶ 59, 91. And

19  Plaintiff's allegations describing Zazzle's prior request for a perpetual license for non-personal

20  (*i.e.*, commercial) use that she proceeded to ignore are sufficiently particularized and permit a

21  reasonable inference that Defendants intended to breach the terms of the License at the time of

22  purchase. FAC ¶ 83; *see* Mot. 17–18.

23  For these reasons, the Court agrees with the reasoning in *Ticketmaster* and finds the FAC's

24  allegations that (1) Alkhatib, on Zazzle's behalf, misrepresented his status as a single user and

25  promised to abide by the License while intending for Zazzle to breach its terms; (2) Plaintiff relied

26  on her understanding of Alkhatib's purpose in purchasing the License; and (3) that Plaintiff has

27  been damaged, *see* FAC ¶¶ 107, 218, are sufficient to plead claims for fraudulent

28  misrepresentation and promissory fraud.

### 3.    Fraudulent Concealment

Defendants argue that Plaintiff's fraudulent concealment claim also fails because the FAC alleges neither a duty to disclose nor concealment.  Mot. 16–17.  It is true that, generally, "[p]arties engaged in an arm's length business transaction do not have a duty to disclose absent a 'fiduciary relationship or other similar relationship of trust and confidence.'"  *GCN Prods., Inc. v. O'Young*, 22 F. App'x 772, 774 (9th Cir. 2001) (citation omitted).  However, even in the absence of a fiduciary relationship, a party to a transaction has a duty to disclose facts if it "knows both the 'materiality of the omitted matters' and 'that they were inaccessible to'" the other party.  *Walker v. KFC Corp.*, 728 F.2d 1215, 1221–22 (9th Cir. 1984) (citing *Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976)).  As described above, FAC alleges that Defendants concealed that Alkhatib's purchase was made on Zazzle's behalf in order to enable Zazzle to access the Blooming Elegant Software and make the Blooming Elegant Trio available to Zazzle's users in violation of the License Terms, following Plaintiff's refusal to grant Zazzle a perpetual license.  FAC ¶¶ 83–86, 91–94, 184–185.  The FAC further alleges that these facts were material to Plaintiff—supported by the allegations that Plaintiff did not grant licenses permitting the type of use made by Zazzle, *id.* ¶¶ 86–88—and that they were not known or reasonably discoverable by Plaintiff.  *Id.* ¶¶ 186–187.  And, as previously discussed, the mere appearance of the domain "zazzle.com" in Alkhatib's email address is not a sufficient basis on which to conclude that Plaintiff was or should have been aware of Defendants' employment or agency relationship.  *See supra*, at § IV.C.3.  Accordingly, the Court finds that these facts establish a duty to disclose.  *See Goodman*, 18 Cal. 3d at 346–47.

Defendants also argue that there was no material concealment because Creative Market permits users to sign up on behalf of a company and does not provide a field to enter an employer's name.  Mot. 17.  This is a red herring.  As Defendants acknowledge, Plaintiff does not allege that Alkhatib's mere status as a Zazzle employee would have breached the License.  *Id.* Instead, Plaintiff alleges that Zazzle obtained the Blooming Elegant Software via Alkhatib's single-user purchase after Plaintiff rejected its request for a non-personal, perpetual license.  FAC ¶¶ 83–91.  These allegations lead to the inferences that Zazzle could communicate with Plaintiff outside of Creative Market's sign-up form and that Defendants concealed Alkhatib's purpose in

United States District Court
Northern District of California

purchasing the License, so that Plaintiff's fraudulent concealment claim is sufficiently pled.

### E.    Trademark Infringement

Plaintiff brings a trademark infringement claim based on Zazzle's use of the "BLOOMING ELEGANT" mark.  FAC ¶¶ 204–210; *see* FAC Ex. B.  Defendants argue that it is clear on the face of the complaint that the affirmative defense of nominative fair use applies, so that the Court should dismiss the claim. Mot. 19–20 (relying on *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019)).[4]  Specifically, Defendants contend that, according to the FAC, they "used the 'Blooming Elegant' mark to accurately refer to the 'Blooming Elegant' font trio," which is "a classic case of nominative fair use." Mot. 20.

The nominative fair use defense applies if (1) the product or service in question is not readily identifiable without use of the trademark; (2) only so much of the mark or marks was used as was reasonably necessary to identify the product or service; and (3) the user does nothing that would, with the mark, suggest sponsorship or endorsement by the trademark holder. *Applied Underwriters*, 913 F.3d at 894 (citation omitted).  The Court cannot say from the allegations in the FAC that only so much of the [Blooming Elegant] mark was used as reasonably necessary to identify the font trio, or that Zazzle did nothing to suggest Plaintiff's sponsorship or endorsement. The pleading does not, therefore, strike a fatal blow to the trademark infringement claim.

## V.    ORDER

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

**IT IS SO ORDERED.**

Dated: July 17, 2023

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] Defendants attempt to incorporate by reference their arguments in a prior motion to dismiss brief. Mot. 20.  The Court does not permit such incorporation and considers only the "factual and legal bases for [Defendants'] position . . . presented in the [current] briefing."  Standing Order § IV(D).