UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKY LAATZ, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>ZAZZLE, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-04844-BLF<br><br>**ORDER REGARDING PARTIES' MOTIONS FOR RECONSIDERATION OR CLARIFICATION OF ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 159, 166 |

Pending before the Court are (1) Defendants Zazzle, Inc. ("Zazzle") and Mohamed Alkhatib's ("Alkhatib," and with Zazzle, "Defendants") Motion for Leave for Clarification and Reconsideration of the Court's Order on Plaintiff's Motion for Partial Summary Judgment ("Defendants' Motion"), *see* Defts.' Mot., ECF No. 159, and (2) Plaintiff Nicky Laatz's ("Plaintiff") Motion for Leave to File Motion for Reconsideration of the Court's Order on Plaintiff's Motion for Partial Summary Judgment and Motion for Clarification ("Plaintiff's Motion," and with Defendants' Motion, the "Motions"); *see* Pl.'s Mot., ECF No. 166. For the reasons given below, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I.    BACKGROUND

Plaintiff brought this suit on August 24, 2022, *see* Compl., ECF No. 1, and filed the operative First Amended Complaint ("FAC") on March 14, 2023. *See* FAC, ECF No. 82. The FAC asserts claims for (1) fraudulent misrepresentation, (2) fraudulent concealment, and (3) promissory fraud, all in violation of Cal. Civ. Code § 1572, as well as (4) federal copyright infringement under 17 U.S.C. § 101, (5) federal trademark infringement under 15 U.S.C. § 1114, and (6) breach of contract. *See id.* ¶¶ 175–219. The basis of the dispute lies in Defendants' purchase and use of fonts designed by Plaintiff.

### A. Licensing Plaintiff's Fonts

In 2016, Plaintiff alleges that she designed and created a trio of fonts—the "Blooming Elegant Trio," comprised of Blooming Elegant, Blooming Elegant Sans, and Blooming Elegant Hand—along with the software (the "Blooming Elegant Software") used to implement the Blooming Elegant Trio. Decl. of Nicky Laatz in Supp. of Partial MSJ ("Laatz Decl.") ¶ 4, ECF No. 89-1. Plaintiff has offered the Blooming Elegant Trio and Blooming Elegant Software for licensing through Creative Market, an online marketplace. *Id.* ¶¶ 3, 13. Plaintiff's Creative Market shop offering page (the "Shop Page") includes a link to Creative Market's Terms of Service (the "Service Terms") and a link to Creative Market's Licenses FAQ (the "License FAQ"). *Id.* ¶ 13; *see* Decl. of Stephen C. Steinberg in Supp. of Partial MSJ ("Steinberg Decl."), Exh. 22 (Shop Page), Exh. 23 (FAQ), Exh. 25 (Service Terms), ECF Nos. 36, 37, 40. To license the Blooming Elegant Trio and Blooming Elegant Software from Creative Market, a purchaser must set up a Creative Market account, which requires the user to agree to Creative Market's Terms of Service (the "Service Terms"). Laatz Decl. ¶ 16; *see* Steinberg Decl., Exh. 24 (Account Page), ECF No. 89-38. The Service Terms incorporate Creative Market's License Terms (the "License Terms"). Laatz Decl. ¶ 16; *see* Steinberg Decl., Exhs. 25 (Service Terms), 26 (License Terms), ECF No. 89-41. The License FAQ includes a link to the License Terms. *See* Steinberg Decl., Exh. 26.

### B. Relevant Procedural History

On April 7, 2023, Plaintiff filed a Refiled Motion for Partial Summary Judgment ("Partial MSJ"), seeking judgment in her favor as to all claims except federal trademark infringement. *See* MSJ, ECF No. 89. Defendants opposed the Partial MSJ. *See* MSJ Opp'n, ECF No. 104. On October 23, 2023, the Court granted the Partial MSJ as to the issue of Defendants' demonstration of mutual assent to the Service Terms and the License Terms, and otherwise denied the Partial MSJ. *See* Order Granting in Part and Denying in Part Pl.'s Mot. Partial Summ. J. ("MSJ Order"), ECF No. 155.

On November 22, 2023, Defendants filed their pending Motion, seeking leave to request clarification of their position on mutual assent and reconsideration of the Court's determination

that Defendants had demonstrated mutual assent to the License Terms. *See* Defts.' Mot. The Court denied Defendants' request for leave to file for reconsideration, and directed Plaintiff to file a response to Defendants' request for clarification. *See* ECF No. 160. Plaintiff responded to Defendants' Motion on December 1, 2023, *see* Pl.'s Opp'n to Defts.' Mot., ECF No. 165, and filed her pending Motion that same day, *see* Pl's Mot. The Court granted leave to file a motion for reconsideration, deemed Plaintiff's Motion to constitute the motion for reconsideration, and issued deadlines for Defendants to respond and Plaintiff to reply. *See* ECF No. 167. Defendants filed their opposition to Plaintiff's Motion on December 14, 2023, *see* Defts.' Opp'n to Pl.'s Mot., ECF No. 169, and Plaintiff filed her reply on December 18, 2023, *see* Pl.'s Reply, ECF No. 171.

## II. LEGAL STANDARDS

### A. Clarification

Under Federal Rule of Civil Procedure 60, a court may "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "[T]he clarification process presumes some legitimate need supporting relief, such as the existence of ambiguity or confusion that can be corrected with further explanation." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 16-cv-06370, 2020 WL 3892869, at *1 (N.D. Cal. July 10, 2020) (quoting *Padgett v. Loventhal*, No. 04-cv-03946, 2015 WL 13753300, at *1 (N.D. Cal. May 13, 2015)) (alteration in original). The Local Rules of this district do not require a party to seek leave to move for clarification.

### B. Reconsideration

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011), *abrogated on other grounds by Lorenzo v. SEC*, 587 U.S. ––––, 139 S. Ct. 1094 (2019). This district's local rules further require parties to obtain leave prior to filing a motion for reconsideration and to establish one of the following circumstances: (1) a material difference in fact or law from that presented to

3

1  the Court prior to issuance of the order that is the subject of the motion for reconsideration; (2)
2  new material facts or a change of law occurring after issuance of such order; or (3) a manifest
3  failure by the Court to consider material facts or dispositive legal arguments that were presented to
4  the Court before issuance of such order.  Civ. L.R. 7-9(b); *see also, e.g.*, *JMP Sec. LLP v. Altair*
5  *Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1034 (N.D. Cal. 2012).

## III. DISCUSSION

The Court first addresses the remainder of Defendants' Motion following its order denying reconsideration—*i.e.*, the question of clarification—and then turns to Plaintiff's Motion.

### A. Defendants' Motion for Clarification Regarding Assent

Defendants seek to clarify the MSJ Order by removing the following sentence from the Background section:  "Defendants do not submit a specific combination of documents, but state that the Blooming Elegant License may only include the License Terms. *See* Opp'n 12."  *See* Defts.' Mot. 4; MSJ Order 4:19–21.  Defendants state that the cited page of their opposition to Plaintiff's Partial MSJ did not concede that the Blooming Elegant License could include the License Terms document, but instead merely noted that Plaintiff's position as to the license documents had shifted from initially consisting only of the License Terms document to later including three additional documents.  *See* Defts.' Mot. 2–3; MSJ Opp'n 12.  Defendants accordingly move to clarify that they "dispute whether there was mutual assent to the License Terms, including because like the FAQ terms, they are two voluntary clicks away from the required account creation and purchase paths."  Defts.' Mot. 4.

The Court directed Plaintiff to file a response to the requested clarification.  *See* ECF No. 160.  Plaintiff states that she does not object to removing the following clause from the MSJ Order:  "[but] state that the Blooming Elegant License may only include the License Terms."  *See* Pl.'s Opp'n to Defts.' Mot. 1 (quoting MSJ Order 4:20–21).  Plaintiff does not address Defendants' request to clarify that they "dispute whether there was mutual assent to the License Terms, including because like the FAQ terms, they are two voluntary clicks away from the required account creation and purchase paths."  *See generally id.*

The Court agrees with the parties that the sentence at issue on page 4 of the MSJ Order—

"Defendants do not submit a specific combination of documents, but state that the Blooming Elegant License may only include the License Terms. *See* Opp'n 12."—should be clarified to better capture Defendants' position. To that end, the Court will issue an amended MSJ Order (the "Amended MSJ Order") to clarify the issue. *See Optronic Techs.* 2020 WL 3892869, at *1. The Amended MSJ Order will note that Defendants specifically dispute mutual assent with respect to the License Terms and FAQ. *See* MSJ Opp'n 13–14.

However, the Court determines that no further clarification is needed with respect to the number of steps needed to reach the License Terms from the account creation or purchase pages. To the extent Defendants are concerned that the Court was unaware of the steps, the Court notes that the MSJ Order makes clear that the account creation page links to the Service Terms, that the Service Terms incorporate the License Terms, and that the Service Terms and License Terms are two separate documents. *See* MSJ Order 4, 13. The MSJ Order then notes that the Service Terms' incorporation of the License Terms occurs "expressly . . . in clear language on the first page," and accordingly reasons that Defendants had reasonably conspicuous notice of the License Terms. *See id.* at 13 (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023)). The Court additionally notes here that Defendants' opposition to the Partial MSJ does not directly support the requested clarification, as the actual language in the opposition was: "But the Creative Market website's account creation and purchase functionality at the time in question never once required users to even *view* the License Terms or FAQ, let alone click on them to confirm their assent. . . . Thus, those terms were not part of any clickwrap or browsewrap agreement." MSJ Opp'n 13.

Accordingly, the Court will issue an amended order (the "Amended MSJ Order") to clarify Defendants' position as to the documents constituting the license and mutual assent. The Amended MSJ Order will not contain the following sentence and citation: "Defendants do not submit a specific combination of documents, but state that the Blooming Elegant License may only include the License Terms. *See* Opp'n 12." *See* MSJ Order 4:19–21. The Court will replace the deleted segment with the following:

> Defendants do not submit a particular combination of documents, and assert that Plaintiff's present contention regarding the four documents constituting the Blooming Elegant License is at odds with a prior

5

>declaration stating that the License Terms constituted the license at issue. *See* Opp'n 12. Defendants further specifically take the position that there was no mutual assent to the License Terms or the License FAQ. *See id.* at 13–14.

### B.     Plaintiff's Motion for Reconsideration and Clarification

Plaintiff's opposition to Defendants' Motion included an independent, affirmative request for clarification and reconsideration, *see generally* Pl.'s Opp'n to Defts.' Mot., and she additionally filed the same affirmative request for relief as a separate motion, *see* Pl.'s Mot. The Court now turns to that motion, in which Plaintiff requests (1) clarification of the location of links to the License FAQ on the Shop Page and (2) reconsideration of Defendants' assent to the Shop Page and the License FAQ. The Court addresses these requests in turn.

#### 1.     Clarification Regarding Location of Links

Plaintiff seeks to clarify a sentence in the MSJ Order regarding the location of the link to the License FAQ on the Shop Page. Currently, the MSJ Order states that "[t]he Shop Page link [to the License FAQ] is toward the bottom of the page, just above user comments, and the Court cannot conclude that its placement provided reasonably conspicuous notice. *See* Steinberg Decl., Exh. 22." MSJ Order 14:7–9. Plaintiff asserts that the hyperlink reading "FAQ" appearing above the user comments on the Shop Page is not the FAQ that she claims is part of the Blooming Elegant License, and that the uncontroverted evidence established that the Shop Page link to the License FAQ instead appeared "at the very top of the Shop Page, immediately to the left of the button labeled 'Purchase.'" Pl.'s Mot. 3 (citing Laatz Decl. ¶ 13). Plaintiff further states that the Shop Page contained a second link to the License FAQ "on the right-hand side, directly below a link to contact Nicky Laatz through the Creative Market platform, which is below the 'Purchase' button." *Id.* at 4 (citing Supplemental Declaration of Nicky Laatz ("Suppl. Laatz Decl.") ¶¶ 86–87, ECF No. 106-1). Defendants do not dispute Plaintiff's assertions that the "FAQ" link above the user comments is not the License FAQ at issue, or that the two other links discussed by Plaintiff do lead to the License FAQ. *See* Defts.' Opp'n to Pl.'s Mot. 5–6. Rather, Defendants argue that "there is no need to 'clarify' whether one or another link on the Shop Page points to the License FAQs, because none of those links provide reasonably conspicuous notice of incorporation into a binding contract," and that Plaintiff's request for clarification is in fact an

6

improper attempt to achieve a substantive material change in the MSJ Order. *See id.* at 6.

The Court has determined that its description of the location of the License FAQ link was a "mistake arising from oversight," and will accordingly amend the MSJ Order. Fed. R. Civ. Pr. 60(a); *see also Optronic Techs.*, 2020 WL 3893869, at *1. Plaintiff's moving papers in support of the Partial MSJ asserted that the Shop Page "states key license terms and links to the Creative Market Licenses FAQ (the 'FAQ')." MSJ 3 (citing Laatz Decl. ¶ 13). The cited evidence provides that the Shop Page "describes the terms to the license and contains a hyperlink ('https://creativemarket.com/licenses') that linked" to the License FAQ. Laatz Decl. ¶ 13. Likewise, Plaintiff's reply papers in support of her Partial MSJ noted that the Shop Page linked to the License FAQ, and cited to her supporting declaration indicating that a link on the right-hand side of the Shop Page also led to the License FAQ. *See* MSJ Reply 13 (citing Suppl. Laatz Decl. ¶¶ 86–89), ECF No. 106; Suppl. Laatz Decl. ¶¶ 86–87.

The Amended MSJ Order will not include the following sentence and citation: "The Shop Page link is toward the bottom of the page, just above user comments, and the Court cannot conclude that its placement provided reasonably conspicuous notice. *See* Steinberg Decl., Exh. 22." The Court will replace the deleted information regarding the link location with the following text:

> The Shop Page includes two links to the License FAQ. The first link, displayed as "http://creativemarket.com/licenses"—is toward the top of the page, under a short paragraph stating that commercial use of the Blooming Elegant License is "allow[ed] . . . with only a few exceptions." Steinberg Decl., Exh. 22; *see* Laatz Decl. ¶ 13. The second link is contained in the sixth of seven boxes of information placed in a column along the right side of the Shop Page, and is a hyperlink displayed as the word "Standard" next to a "Licenses Offered" line item. Steinberg Decl., Exh. 22; *see* Suppl. Laatz Decl. ¶¶ 86–87.

The Court will add further text as discussed below in connection with Plaintiff's request for reconsideration. *See infra*, at Part III(B)(2). Lastly, for ease of reading, the Court will insert a paragraph break before the sentence preceding the challenged sentence.

### 2. Reconsideration Regarding Mutual Assent to Shop Page and License FAQ

Plaintiff requests that the Court reconsider the following two determinations in the MSJ

Order: (a) that Plaintiff did not "provide[] sufficient briefing or argument as to Defendant[s'] assent to any terms in the Shop Page," and (b) that the Shop Page links to the License FAQ were not sufficiently conspicuous to find that Defendants had demonstrated mutual assent by viewing the Shop Page. *See* Pl.'s Mot. 5–7; MSJ Order 14. She brings this motion on the basis that there was a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Pl.'s Mot. 2 (quoting Civ. L.R. 7-9(b)(3)). The Court considers each determination in turn.

### a. Defendants' Assent to Shop Page Terms

In her motion for reconsideration, Plaintiff makes several arguments as to why Defendants did in fact assent to the terms on the Shop Page. *See* Pl.'s Mot. 5–6. Further, Defendants indicate that they "do not contest assent to the terms that actually appear on the Shop Page." Defts.' Opp'n to Pl.'s Mot. 5. The Court will therefore amend the MSJ Order to clarify that there is no genuine dispute of material fact as to Defendants' assent to the terms appearing on the Shop Page. This clarification, however, is distinct from the issue of whether the Shop Page's *links* to the License FAQ are themselves terms that are binding on Defendants. Having considered the matter, the Court finds, for the reasons discussed in greater detail below, that Defendants' unambiguous assent to the License FAQ cannot be determined as a matter of law from the Shop Page. *See infra*, at Part III(B)(2)(b). The Court's clarification with respect to Defendants' assent to the Shop Page thus does not affect its holding regarding Defendants' assent to the License FAQ.

The Amended MSJ Order will omit the final sentence of Part IV(B)(1)(a) of the initial MSJ Order, and will append the following sentence to the end of the paragraph discussing Defendants' assent to the Service Terms and License Terms:

> The Court additionally finds that there is no genuine dispute of material fact as to whether Defendants assented to the terms facially appearing on the Shop Page. *See, e.g.*, Alkhatib Decl. ¶ 3 (recollecting seeing terms for "commercial" and "unlimited" use on Shop Page); Opp'n 12:28–13:1 (citing same).

The "Order" section of the Amended MSJ Order will also reflect the Court's finding with respect to the issue of mutual assent to the Shop Page.

### b. Defendants' Assent to the License FAQ

The Court now considers whether its reconsideration of its holding on Defendants' assent to the Shop Page, or its clarification of the location of the Shop Page's links to the License FAQ, require reconsideration of the MSJ Order's holding that Plaintiff had not shown that the undisputed facts established mutual assent to the License FAQ. *See* MSJ Order 14 ("Under these circumstances, the Court cannot say that Plaintiff has established Defendants' assent to any terms contained in the License FAQ."). Plaintiff argues that the Shop Page terms incorporated the License FAQ by providing a link to the License FAQ directly following a statement that the Blooming Elegant License permitted commercial use "with only a few exceptions," *see* Pl.'s Mot. 4, and that the clarified locations of the License FAQ links on the Shop Page are material facts establishing mutual assent to the License FAQ, *see id.* at 6–7. Defendants counter that Plaintiff has shown no manifest failure on the part of Court because: (1) the location of the links on the Shop Page is immaterial "because the Court found that Defendants' point of assent is not on the Shop Page," but rather on the account creation page; (2) the two links at issue are in fact less conspicuous than the one the Court discussed; (3) the License FAQ itself does not contain language indicating it is intended to be part of a contract; (4) FAQs and similar documents cannot form part of a binding agreement as a matter of law; and (5) the Service Terms and License Terms exclude the License FAQ. *See* Defts.' Opp'n to Pl.'s Mot. 3–5. Plaintiff replies that the Court did not find that the only point of assent was the account creation page; the Shop Page links were reasonably conspicuous because they were located "at the top of the page, immediately next to and below the 'Purchase' button"; the License FAQ can be part of a legally binding agreement; and the License Terms sufficiently incorporate the License FAQ. *See* Pl.'s Reply 1–3.

Having considered the Shop Page language regarding the License FAQ links and the clarified locations of the links, the Court concludes that the Shop Page does not permit a finding that Defendants indisputably assented to the License FAQ. First, and most importantly, a purchaser is not required to click on either link in order to make a purchase. *See Oberstein*, 60 F.4th at 515 ("'[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the

9

consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'") (emphasis added); MSJ Order 12–14.  Second, the language of the Shop Page to which Plaintiff points as an incorporation of the License FAQ—*i.e.*, the provision that the Blooming Elegant License permits commercial use "with only a few exceptions – See https://creativemarket.com/licenses," *see* Steinberg Decl., Exh. 22—is markedly less clear than, for example, the incorporation of the License Terms by the Service Terms, *see id.* at Exh. 25, at 1 ("By creating an account and checking the 'I agree' box or accessing or using the Service, you agree you have read, understood, and agree to be bound by the terms and conditions of these Terms of Service, including the License Terms . . . .").  Lastly, the Court notes that the placement of the hyperlink displayed as "Standard" along the right side of the page is far from "reasonably conspicuous," as it is a single word placed five boxes below the "Purchase" button and not made prominent in any way.  Under these circumstances, Defendants cannot be said to have assented to the License FAQ via their use of the Shop Page.  *See Oberstein*, 60 F.4th at 515.

Although its holding does not change, the Court finds it appropriate to amend the MSJ Order to remove any confusion as to its reasoning, particularly in light of the clarification regarding the location of the links.  Accordingly, the Court will add to the Amended MSJ Order, following the textual additions discussed above, *see supra*, at Part III(B)(1), the following:

> The Court does not find, based on these Shop Page links to the License FAQ, that Defendants indisputably assented to any term in the License FAQ.  Even assuming the links were reasonably conspicuous—and the hyperlink displayed as the word "Standard," at least, is far from conspicuous—the evidence does not indicate that a purchaser must click on either link to purchase the Blooming Elegant License, or that Defendants in fact did so.  Nor does the language of the Shop Page expressly incorporate the License FAQ, in contrast to the Service Terms' incorporation of the License Terms.  *Compare* Steinberg Decl., Exh. 22, at 1 ("The Standard License . . . allows Commercial Use . . . with only a few exceptions – See https://creativemarket.com/licenses"), *with id.* at Exh. 25, at 1 ("By creating an account and checking the 'I agree' box or accessing or using the Service, you agree you have read, understood, and agree to be bound by the terms and conditions of these Terms of Service, including the License Terms . . . .").  Accordingly, Defendants cannot be said to have assented to the License FAQ via their use of the Shop Page.  *See Oberstein*, 60 F.4th at 515 ("'[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

checking a box, that unambiguously manifests his or her assent to those terms.'").

For further ease of reading, the Court will then add a paragraph break and transition.

## IV.   ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' motion for clarification is GRANTED;
2. Plaintiff's motion for clarification is GRANTED;
3. Plaintiff's motion for reconsideration is GRANTED with respect to Defendants' assent to the Shop Page terms and GRANTED with respect to the location of the links to the License FAQ terms.  However, the Court declines to change its holding that it cannot be determined as a matter of law that Defendants assented to the License FAQ; and
4. The Court will issue an Amended MSJ Order reflecting the changes discussed in this order.

**IT IS SO ORDERED.**

Dated: January 9, 2024

Beth Labson Freeman
United States District Judge