1
2
3
4                        UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7     NICKY LAATZ, et al.,                    Case No.  22-cv-04844-BLF
8                      Plaintiffs,
9             v.                              **AMENDED ORDER GRANTING IN
                                              PART AND DENYING IN PART
10    ZAZZLE, INC., et al.,                   PLAINTIFF'S MOTION FOR PARTIAL
                                              SUMMARY JUDGMENT**
11                     Defendants.
                                              Re: ECF No. 89
12
13           Plaintiff Nicky Laatz ("Plaintiff") brings this suit alleging that Defendant Zazzle, Inc.
14    ("Zazzle"), through its employee, Defendant Mohamed Mr. Alkhatib ("Mr. Alkhatib," and, with
15    Zazzle, "Defendants"), fraudulently obtained a license to use software implementing a trio of fonts
16    created by Plaintiff, and subsequently violated the license by making the fonts available to
17    millions of people, including for commercial use. The operative First Amended Complaint
18    ("FAC") asserts claims for (1) fraudulent misrepresentation, (2) fraudulent concealment, and (3)
19    promissory fraud, all in violation of Cal. Civ. Code § 1572, as well as (4) federal copyright
20    infringement under 17 U.S.C. § 101, (5) federal trademark infringement under 15 U.S.C. § 1114,
21    and (6) breach of contract.  *See* First Am. Compl. ("FAC") ¶¶ 175–219, ECF No. 82.
22           Presently before the Court is Plaintiff Nicky Laatz's ("Plaintiff") Refiled Motion for
23    Partial Summary Judgment (the "Motion" or "Partial MSJ"), in which Plaintiff seeks summary
24    judgment on all claims in the FAC except that for federal trademark infringement.  *See* Mot. 2,
25    ECF No. 89.  Defendants oppose the Motion.  *See* Opp'n, ECF No. 104.  Plaintiff filed a reply in
26    support of her Motion, *see* Reply, ECF No. 106, and Defendants filed objections to Plaintiff's
27    reply evidence, *see* Reply Objs., ECF No. 108.  The Court heard oral argument on August 3, 2023.
28           Having carefully considered the parties' respective written submissions, the oral argument

United States District Court
Northern District of California

of counsel, and the relevant legal authority, the Motion is hereby GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Background

The following facts are undisputed unless noted.

#### 1.    Zazzle's Business

Zazzle operates an online design platform that provides tools its users can use to design and order digital and physical products such as invitations, clothing, holiday cards, and mugs. Decl. of Bobby Beaver in Opp'n to Partial MSJ ("Beaver Decl.") ¶ 2, ECF No. 102-1. Consumers can purchase products designed and offered on Zazzle by design professionals or use Zazzle's design customization tool to design a product directly. *See id.* The design customization tool provides users with access to design features such as fonts, illustrations, templates, icons, shapes, backgrounds, images, filters, and drawing tools. *Id.* Plaintiff has been a Zazzle designer and store owner since February 2014. *Id.* ¶ 7.

#### 2.    Font Design and Creation

Nearly all font designers use visual design tools—also called font-generating engines, font-generating programs, and font editors—to assist with the design and creation of font software. Decl. of Thomas Phinney in Supp. of Partial MSJ ("Phinney Decl.") ¶¶ 5, 15, ECF No. 89-50. Within a font-generating engine, a designer may set the on-curve and off-curve reference points that determine the shape of each glyph—*i.e.*, a font representation of a character—within the font. *Id.* ¶ 17. FontLab is a font-generating engine. *See id.* ¶ 18. A designer using version 7.1 of the font editor FontLab can "hand code" the on-curve and off-curve reference points for a glyph by (1) viewing the outline of the glyph's shape on a computer's visual window display and moving the reference points with her computer pointer; (2) editing numbers in the text representation of the reference points making up a glyph's outline; or (3) clicking on a given reference point in the visual representation of the glyph and then editing the numbers specifying the coordinates of that point. *See id.* ¶ 18 & n.1. FontLab also permits a designer to specify numerical values for font-wide variables. *Id.* ¶ 19.

2

After a designer is satisfied with her font, the font-generating program will compile the designer-inputted font data, as well as any other code written by the font designer, into a final executable font software format file that implements the font display on a computer.  *Id.* ¶ 20.

### 3.  Plaintiff's Fonts

Plaintiff derives her primary source of income from creating fonts and selling licenses for limited use of those fonts and associated font software.  Decl. of Nicky Laatz in Supp. of Partial MSJ ("Laatz Decl.") ¶ 3, ECF No. 89-1.  She has created over 110 unique fonts.  *Id.* ¶ 2.  In 2016, Plaintiff designed and created a trio of fonts—the "Blooming Elegant Trio," comprised of Blooming Elegant, Blooming Elegant Sans, and Blooming Elegant Hand—along with the software (the "Blooming Elegant Software") used to implement the Blooming Elegant Trio.  *Id.* ¶ 4.  She used FontLab 7.1 to create the Blooming Elegant Trio.  *Id.* ¶ 7; Mot. 2.  Plaintiff, when creating the Blooming Elegant Software, "hand coded the designs for individual character/glyph by selecting the 'on-curve' and 'off-curve' reference points for each individual character/glyph for each font within FontLab.  *Id.* ¶ 9.  Plaintiff also "personally hand coded the instructions for how the characters/glyphs should appear next to each other by choosing the values for each of the font-wide variables that FontLab permits a designer to set, such as cap height, letter spacing, ascender height, and descender height."  *Id.*  Additionally, Plaintiff "wrote and inserted custom code that FontLab incorporated into the final packaged Blooming Elegant Trio of fonts that implemented ligatures and stylistic alternate letters for the fonts."  *Id.* ¶ 10.

On February 18, 2021, Plaintiff, through counsel, applied to the United States Copyright Office to register Plaintiff's copyrights in the font software for the Blooming Elegant Trio.  Decl. of Stephen C. Steinberg in Supp. of Partial MSJ ("Steinberg Decl.") ¶ 2, ECF No. 89-14.  On July 16, 2021, the United States Copyright Office approved the registration of Plaintiff's copyrights for each of the Blooming Elegant Trio of fonts.  *Id.* ¶ 4.  The registration certificates for the Blooming Elegant Trio all show an effective date of February 18, 2021, and a first publication date of February 16, 2016.  *See* Steinberg Decl., Exhs. 7–9.  Additionally, the United States Patent and Trademark Office has issued a registration certificate, dated January 25, 2022, for the mark "BLOOMING ELEGANT" for use in connection with downloadable printing fonts, typeface fonts

1    recorded on magnetic media, and printing fonts that can be downloaded provided by means of

2    electronic transmission.  Steinberg Decl. ¶ 5; *see id.* at Exh. 10.

3                              **4.      Licensing Via Creative Market**

4           Since 2016, Plaintiff has offered the Blooming Elegant Trio and Blooming Elegant

5    Software for licensing through Creative Market, an online marketplace.  Laatz Decl. ¶¶ 3, 13.

6    Plaintiff's Creative Market shop offering page (the "Shop Page") includes a link to Creative

7    Market's Terms of Service (the "Service Terms") and a link to Creative Market's Licenses FAQ

8    (the "License FAQ").  *Id.* ¶ 13; *see* Steinberg Decl., Exh. 22 (Shop Page), Exh. 23 (FAQ), Exh. 25

9    (Service Terms).  To license the Blooming Elegant Trio and Blooming Elegant Software from

10   Creative Market, a purchaser must set up a Creative Market account, which requires the user to

11   agree to Creative Market's Terms of Service (the "Service Terms").  Laatz Decl. ¶ 16; *see*

12   Steinberg Decl., Exh. 24 (Account Page).  The Service Terms incorporate Creative Market's

13   License Terms (the "License Terms").  Laatz Decl. ¶ 16; *see* Steinberg Decl., Exhs. 25 (Service

14   Terms), 26 (License Terms).  The License FAQ includes a link to the License Terms.  *See*

15   Steinberg Decl., Exh. 26.

16          The parties dispute which of the above documents constitute a license for the Blooming

17   Elegant Trio and Blooming Elegant Software (a "Blooming Elegant License").  Plaintiff alleges

18   and continues to assert that the Blooming Elegant License consists of the Shop Page, the License

19   FAQ, the Service Terms, and the License Terms.  *See* FAC ¶¶ 60–65; Mot. 3.  Defendants do not

20   submit a particular combination of documents, and assert that Plaintiff's present contention

21   regarding the four documents constituting the Blooming Elegant License is at odds with a prior

22   declaration stating that the License Terms constituted the license at issue.  *See* Opp'n 12.

23   Defendants further specifically take the position that there was no mutual assent to the License

24   Terms or the License FAQ.  *See id.* at 13–14.

25          A user may purchase a Blooming Elegant License for $20 via Plaintiff's shop on Creative

26   Market.  Laatz Decl. ¶ 13.  Plaintiff asserts that a Blooming Elegant License has at all times only

27   permitted an individual, single-seat license.  *Id.* ¶ 33.  Each user who purchases a Blooming

28   Elegant License receives an email from Creative Market that contains links to (1) download the

4

1   Blooming Elegant Software and (2) view the License FAQ.  *Id.*; *see, e.g.*, Steinberg Decl., Exh.

2   13, at 8–9.

3           **5.**        **Purchase of Blooming Elegant License**

4           On November 2, 2016, a Zazzle employee, Monica McGhie, contacted Plaintiff through

5   Creative Market to ask whether Plaintiff offered a perpetual license for server-based use for the

6   Blooming Elegant Trio that Zazzle could house on its internal servers and offer on its design

7   customization tool.  Laatz Decl. ¶ 30; *see id.* at Exh. 5.  The Zazzle employee told Plaintiff that

8   Zazzle users can work with fonts stored on Zazzle's internal servers, but are not able to download

9   a copy of the font code.  *See* Laatz Decl., Exh. 5.  Plaintiff claims that she "never enter[s] into

10  perpetual server-based licenses for my fonts that allow the licensee's end users (and their end

11  user's end users) to sell products they themselves created with free access . . . to my font," and

12  therefore she did not respond to the Zazzle employee's inquiry.  Laatz Decl. ¶ 52.

13          Plaintiff sold over 10,000 licenses through Creative Market between January 1, 2017, and

14  May 30, 2017, nearly 1,000 of which were for the Blooming Elegant Software.  *See* Laatz Decl. ¶

15  48.  During that period, on or about May 4, 2017, Mr. Alkhatib purchased a Blooming Elegant

16  License through Creative Market.  Decl. of Mohamed Mr. Alkhatib in Opp'n to Partial MSJ

17  ("Alkhatib Decl.") ¶ 3, ECF No. 102-7.  Mr. Alkhatib is a senior network engineer at Zazzle, and

18  states that he purchased the license on Zazzle's behalf and used a Zazzle company credit card to

19  do so.  *See id.* ¶¶ 1, 3.  Mr. Alkhatib signed up for a Creative Market account, which required him

20  to provide his first and last names and an email address.  *Id.* ¶ 4.  There was no field on the

21  Creative Market account creation page or on the Offering Page that allowed Mr. Alkhatib to enter

22  the name of a company as a purchaser, or to enter the name of an employer.  *Id.*; *see also*

23  Steinberg Decl., Exh. 24.  Mr. Alkhatib entered a work email address, mo@zazzle.com, when he

24  signed up for a Creative Market account.  Alkhatib Decl. ¶ 4.  Following his purchase of the

25  Blooming Elegant License, Mr. Alkhatib received an email receipt from Creative Market with a

26  link to download the Blooming Elegant License from Creative Market.  *Id.* ¶ 6; *see id.* at Exh. 4.

27  He then downloaded the Blooming Elegant Software for Zazzle.  Alkhatib Decl. ¶ 8.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 6.      Use of Blooming Elegant Trio on Zazzle's Platform

Zazzle does not display, distribute, or share font software to its users while they use Zazzle's online design tool, and it never displayed the Blooming Elegant Software to its users. *See* Decl. of Jason Li in Opp'n to Partial MSJ ("Li Decl.") ¶¶ 3–4, ECF No. 102-6.  Font software resides exclusively on Zazzle's servers. *Id.* ¶ 3.  A Zazzle user could set Zazzle's online design tool to render the Blooming Elegant Trio of fonts, without the user needing to independently obtain the Blooming Elegant Software.  *See* Decl. of Patrick Ryan in Supp. of Partial MSJ ("Ryan Decl."), Exh. 3 ("Beaver Dep. Tr. (Vol. 1)") at 47:12–48:15; Steinberg Decl., Exhs. 17, 20.

The parties dispute whether Plaintiff was aware that Zazzle offered the Blooming Elegant Trio on its website.  Plaintiff states that she was unaware of the offering until August 25, 2020, when a Zazzle user contacted Plaintiff via Plaintiff's website to request assistance with using the Blooming Elegant Trio on Zazzle.  Laatz Decl. ¶ 49.  Zazzle contends that it has repeatedly sent promotional emails to Zazzle users, including Plaintiff, that included images of products featuring at least one of the Blooming Elegant Trio of fonts.  Beaver Decl. ¶ 9; *see id.* at Exh. 1.  Zazzle also publicly announced to its creative community in October 2017 the deployment of 68 new fonts on Zazzle, including the Blooming Elegant Trio.  Beaver Decl. ¶ 10; *see id.* at Exh. 2.

### 7.      Communications Between Plaintiff and Zazzle

In July 2017, Plaintiff created an informal partnership with her husband, John Laatz.  Laatz Decl. ¶ 26.  John Laatz manages Plaintiff's business affairs.  Decl. of John Laatz in Supp. of Partial MSJ ("J. Laatz Decl.") ¶ 1.  On August 26, 2020—one day after Plaintiff received the request for assistance with the Blooming Elegant Trio—Mr. Laatz emailed Zazzle's copyright division, stating that Plaintiff did not grant software-as-a-service ("SaaS") licenses and requesting that Zazzle provide proof of a license that Zazzle believed permitted it to host the Blooming Elegant Trio.  *Id.* ¶ 2; *see id.* at Exh. A.  In-house counsel for Zazzle, Liana Larson, replied that same day and informed Mr. Laatz that Zazzle was continuing to locate records, but that it had purchased the Blooming Elegant font family from Creative Market in May 2017, and that internal notes indicated Zazzle "purchased a license for unlimited use of the font trio for $20.00."  *See id.* at Exh. A.

1    Mr. Laatz again emailed Zazzle on January 21, 2021 to demand that Zazzle provide a

2    license granting rights to use the Blooming Elegant font in a SaaS or template service.  J. Laatz

3    Decl. ¶ 3; *see id.* at Exh. B.  Ms. Larson responded that same day and provided the receipt for Mr.

4    Alkhatib's May 4, 2017 license purchase.  *See id*.  Mr. Laatz then informed Zazzle that the

5    purchased license did not cover Zazzle's use.  *See* J. Laatz Decl. ¶ 4.  Zazzle replied to Mr. Laatz

6    on January 26, 2021, and stated that Zazzle hosted all fonts on its internal servers, so that users

7    never had access to its fonts.  *See id.* ¶ 5; *id.* at Exh. D.

8    On September 30, 2021, Plaintiff's counsel sent a letter to Zazzle stating that Zazzle's

9    continued use of the Blooming Elegant Trio violated Plaintiff's intellectual property rights, and

10   that Plaintiff was prepared to take legal action against Zazzle.  Steinberg Decl. ¶ 6; *see id.* at Exh.

11   11; *see also* Beaver Decl. ¶ 4.  Between October 2021 and January 2022, counsel for Plaintiff and

12   Zazzle communicated by email regarding Zazzle's use of the Blooming Elegant Trio.  *See*

13   Steinberg Decl. ¶¶ 8–13; *id.* at Exhs. 13–14; Beaver Decl. ¶ 5.  With the exception of a January 27,

14   2022 letter from Zazzle with the notation "Confidential; For Settlement Purposes Only," the

15   parties dispute whether these communications constituted settlement discussions.  *See* Steinberg

16   Decl. ¶¶ 10–12 (stating that only the January 27 letter was a settlement communication); Beaver

17   Decl. ¶ 5 (describing all communications with Plaintiff's counsel following demand letter as "a

18   series of settlement discussions").  The communications did not result in a settlement.  *See* Laatz

19   Decl. ¶ 54.

20   **B.    Procedural History**

21   Plaintiff filed this lawsuit against Zazzle and Mr. Alkhatib on August 24, 2022, *see*

22   Compl., ECF No. 1, and filed the FAC on March 14, 2023, *see* FAC.  Defendants moved to

23   dismiss on March 31, 2023.  *See* ECF No. 86.  On April 7, 2023, Plaintiff filed the pending Partial

24   MSJ.  The Court denied Defendants' motion to dismiss on July 17, 2023, *see* ECF No. 124, and

25   heard oral argument on the Partial MSJ on August 3, 2023, *see* ECF No. 139.  Defendants filed an

26   answer to the FAC on August 30, 2023, to which Zazzle appended a counterclaim against Plaintiff

27   in which it seeks declaratory relief regarding the alleged invalidity of Plaintiff's copyrights

28   regarding the Blooming Elegant Trio.  *See* ECF No. 144.  Plaintiff has filed a motion to dismiss

1    Zazzle's counterclaim, which is set for hearing on February 29, 2024.  *See* ECF No. 148.

2    **II.    EVIDENTIARY OBJECTIONS**

3         Defendants object to the following evidence attached to Plaintiff's Motion:  (1) Steinberg

4    Decl., ¶¶ 6–7 and Exh. 12, at 1–4, pursuant to Federal Rule of Evidence 408(a)(2) regarding

5    compromise negotiations; (2) Laatz Decl. ¶¶ 53.a, 53.d, for lack of personal knowledge and lack

6    of foundation pursuant to Federal Rule of Evidence 602; and (3) J. Laatz Decl. ¶ 6, pursuant to

7    Federal Rule of Evidence 801, as inadmissible hearsay.  *See* Opp'n 7.  Defendants additionally

8    object to the three declarations and accompanying exhibits submitted with Plaintiff's Reply as

9    improper reply evidence.  *See* Reply Objs. 1–5.  Plaintiff asserts that the evidence submitted with

10   her Motion is admissible,[1] and objects to Paragraphs 6–12 of the Beaver Declaration, as well as

11   Exhibits 1–4 thereto, as lacking authenticity and foundation and containing and constituting

12   inadmissible hearsay.  *See* Reply 15.  The Court rules on the evidentiary objections as follows:

13        • Steinberg Decl., ¶¶ 6–7 and Exh. 12, at 1–4:  DENIED as to Paragraph 6, and

14             otherwise GRANTED.  Paragraph 7 and pages 1 through 4 of Exhibit 12 to the

15             Steinberg Declaration are inadmissible compromise negotiations, and will be

16             stricken from the record.  *See* Fed. R. Evid. 408(a)(2).

17        • Laatz Decl. ¶¶ 53.a, 53.d:  DENIED.  The subparts of Paragraph 53 are not

18             statements of fact, but rather hypothetical circumstances to which Plaintiff would

19             respond in a particular manner.  *See generally* Laatz Decl. ¶ 53.

20        • J. Laatz Decl. ¶ 6:  GRANTED as inadmissible hearsay.  The Court will not

21             consider this evidence.

22        • Supplemental Declaration of Nicky Laatz ¶¶ 59, 60, 63–65, 82–85, and Exhibit 8

23             thereto, ECF Nos. 106-1, 106-2:  DENIED as to Exhibit 8; otherwise GRANTED.

24             The Court will not consider the legal conclusions and argument contained in these

25             portions of the declaration.

26        • Supplemental Declaration of Stephen Steinberg ¶ 30 and Exhibit 29, ECF Nod.

27

28   _____
     [1] The Court denied Plaintiff's request for leave to respond to Defendants' objections to her reply
     evidence.  *See* ECF Nos. 109, 110.

United States District Court
Northern District of California

106-3, 106-4:  DENIED.  Although the information at issue does not appear to have strong probative value, there is a sufficient foundation for the evidence and the paragraph does not contain improper argument.

- Declaration of Daniel Garrie, ECF No. 106-9:  GRANTED because Plaintiff did not disclose Mr. Garrie as an expert.  *See Rojas v. Bosch Solar Energy Corp.*, 2022 WL 717567, at *4 (N.D. Cal. March 9, 2022).  The Court will not consider this evidence.

- Beaver Decl. ¶¶ 6–12 and Exhibits 1–4:  GRANTED as to Exhibits 1–4 to the extent the exhibits are offered for the truth of their contents, rather than the existence of the communications at issue.  Otherwise DENIED.  There is a sufficient foundation for the statements and exhibits.

## III.   LEGAL STANDARD

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense.  *See* Fed. R. Civ. P. advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015). As such, a court can, "when warranted, selectively fillet a claim or defense without dismissing it entirely." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  If the moving party makes such a showing, the burden then shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60

(2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment must be denied if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

Plaintiff argues that she is entitled to summary judgment on her contract claim, her three fraud-based claims, and her copyright infringement claim.  *See* Mot. 1.  Defendants initially counter that summary judgment is improper as to all of Plaintiff's claims because there are triable issues of fact as to whether Plaintiff's claims are all time-barred by the statute of limitations.  *See* Opp'n 8–9.  Defendants further argue that Plaintiff is not entitled to summary judgment on her state law claims because there are triable issues of fact as to whether Plaintiff has standing to bring the claims, and because the state law claims are preempted by the Copyright Act.  *See id.* at 9–11. Lastly, Defendants argue that Plaintiff cannot show the necessary elements of any of her claims. *See id.* at 12–25.  The Court first briefly addresses Defendants' arguments regarding the statute of limitations, Plaintiff's standing, and preemption under the Copyright Act, before turning to the parties' arguments on each of the five claims for which Plaintiff seeks summary judgment.

### A.  Defendants' Statute of Limitations, Standing, and Preemption Arguments

Defendants begin their opposition to Plaintiff's Partial MSJ with affirmative arguments that Plaintiff's claims are time-barred under the statute of limitations, and that Plaintiff cannot bring her state law claims because she lacks standing to raise them and they are preempted by the Copyright Act.  *See* Opp'n 8–11.  Defendants have preserved their arguments for affirmative relief, but the Court will not consider these arguments in this decision, which concerns only the question of whether Plaintiff has shown that the undisputed facts establish Plaintiff's claims for breach of contract, fraudulent misrepresentation, fraudulent concealment, promissory fraud, and copyright infringement.  The Court now turns to the arguments on Plaintiff's claims at issue.

### B.  Breach of Contract (Claim 6)

Plaintiff asserts a claim for breach of contract against both Zazzle and Mr. Alkhatib,

alleging that Defendants breached the terms of the Blooming Elegant License by downloading, copying and installing the Blooming Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers; allowing persons other than Mr. Alkhatib to access and use the Blooming Elegant Trio and Blooming Elegant Software; sharing and redistributing the Blooming Elegant Trio and Blooming Elegant Software; and failing to pay the price prescribed by the license for each unique user who was provided access to the Blooming Elegant Trio and Blooming Elegant Software. *See* FAC ¶¶ 211–219.

The parties agree that California law applies to Plaintiff's claim. *See* Mot. 11; Opp'n 13. The essential elements of a breach of contract claim under California law are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (internal quotations and citation omitted). Plaintiff argues that the parties entered into a valid contract, that she fully performed, that Zazzle breached the contract, and that Plaintiff suffered damages. *See* Mot. 7–10. Defendants respond that there are disputed issues of fact as to the contract's formation and terms, any breach of the alleged contract, and Mr. Alkhatib's individual liability. *See* Opp'n 11–16.

### 1.   Formation and Existence of Contract – Mutual Assent

Contract formation and construction are questions of law. *See Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006) (citation omitted). The formation of a contract requires (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) a sufficient cause or consideration. *See* Cal. Civ. Code § 1550. The only asserted dispute regards the second element, *i.e.*, whether there was mutual consent to the same terms of the contract. *See* Opp'n 12–14. Plaintiff alleges that the contract—the Blooming Elegant License—is comprised of the Shop Page, the License FAQ, the Service Terms, and the License Terms, *see* FAC ¶¶ 60–65, and she argues that Defendants assented to the combined terms of these documents, *see* Mot. 11–16. Plaintiff further contends that Defendants breached terms contained in the License FAQ and the License Terms. *See id.* at 6–7. Defendants respond that there are disputes of fact as to which documents constituted the contract and whether there was mutual

assent to the terms of the License FAQ and License Terms.  *See* Opp'n 12–14.

The question at hand is whether Mr. Alkhatib's actions in purchasing the Blooming Elegant Trio and Blooming Elegant Software demonstrated mutual assent to the Service Terms, License Terms, License FAQ, and Shop Page—and particularly to the License Terms and License FAQ, which contain the allegedly breached terms.  "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (internal quotation marks and citations omitted).  "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'"  *Id.* (citation omitted).

### a.  Clickwrap and Browsewrap

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' . . . agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen."  *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014) (citation omitted).  "Courts routinely find clickwrap agreements enforceable."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (citation omitted); *see also Houtchens v. Google LLC*, --- F. Supp. 3d ---, 2023 WL 122393, at *3 (N.D. Cal. Jan. 6, 2023) ("Courts in the Ninth Circuit and other circuits acknowledge that mutual assent manifests when internet users accept 'clickwrap' agreements.") (citation omitted).  Browsewrap agreements are not treated similarly.  "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions."  *Nguyen*, 763 F.3d at 1176.  "[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'"  *Oberstein*, 60 F.4th at 515.

United States District Court
Northern District of California

Here, Mr. Alkhatib began the process of purchasing the Blooming Elegant License by signing up for a Creative Market account.  *See* Alkhatib Decl. ¶ 4.  The Creative Market account creation page would have appeared as follows:



*See* Steinberg Decl., Exh. 24.  The word "terms" in the sentence above the "Create Account" button is a hyperlink to the Service Terms.  *See id.*  Courts have routinely found that such hyperlinks constitute reasonably conspicuous notice of terms, and that clicking a button such as the "Create Account" button is sufficient to manifest assent to those terms.  *See, e.g.*, *Houtchens*, 2023 WL 122393, at *4 (finding party assented to hyperlinked terms where checking a box was required to create account); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) (finding party assented to contract where user was required to and did click on "Accept" button directly above statement that clicking on button served as assent to hyperlinked terms of service).  The Court accordingly finds that Defendants agreed to the Service Terms, which in turn expressly incorporate the License Terms in clear language on the first page, *see* Steinberg Decl., Exh. 25, so that both the Service Terms and License Terms are included within the terms of the Blooming Elegant License.  *See Oberstein*, 60 F.4th at 515.  The Court additionally finds that there is no genuine dispute of material fact as to whether Defendants

United States District Court
Northern District of California

13

1    assented to the terms facially appearing on the Shop Page.  *See, e.g.*, Alkhatib Decl. ¶ 3

2    (recollecting seeing terms for "commercial" and "unlimited" use on Shop Page); Opp'n 12:28–

3    13:1 (citing same).

4         Whether the License FAQ constitutes "reasonably conspicuous" terms to which

5    Defendants demonstrated assent is less clear.  Plaintiff argues that the email receipt sent to Mr.

6    Alkhatib, *see* Alkhatib Decl., Exh. 4, was sufficient to convey the terms of the License FAQ

7    because it contained a link to the License FAQ.  *See* Mot. 15–16; Reply 9.  As Defendants note,

8    both of the cases upon which Plaintiff relies for this proposition are inapt because they involved

9    email confirmations of orders placed by telephone.  *See Silverman v. Move Inc.*, 2019 WL

10   2579343, at *11 (N.D. Cal. June 24, 2019); *Herkenrath v. Move, Inc.*, 2018 WL 10705782, at *1

11   (C.D. Cal. Aug. 21, 2018).  Plaintiff does not provide, and the Court has not found, further support

12   for holding that a post-purchase link can constitute a contract term where the purchaser has

13   already manifested assent to other terms.

14        The evidence further shows that Plaintiff's Shop Page on Creative Market and the License

15   Terms both contained links to the License FAQ.  The Shop Page includes two links to the License

16   FAQ.  The first link, displayed as "http://creativemarket.com/licenses"—is toward the top of the

17   page, under a short paragraph stating that commercial use of the Blooming Elegant License is

18   "allow[ed] . . . with only a few exceptions."  Steinberg Decl., Exh. 22; *see* Laatz Decl. ¶ 13.  The

19   second link is contained in the sixth of seven boxes of information placed in a column along the

20   right side of the Shop Page, and is a hyperlink displayed as the word "Standard" next to a

21   "Licenses Offered" line item.  Steinberg Decl., Exh. 22; *see* Suppl. Laatz Decl. ¶¶ 86–87.  The

22   Court does not find, based on these Shop Page links to the License FAQ, that Defendants

23   indisputably assented to any term in the License FAQ.  Even assuming the links were reasonably

24   conspicuous—and the hyperlink displayed as the word "Standard," at least, is far from

25   conspicuous—the evidence does not indicate that a purchaser must click on either link to purchase

26   the Blooming Elegant License, or that Defendants in fact did so.  Nor does the language of the

27   Shop Page expressly advise that the License FAQ is incorporated into the agreement, in contrast to

28   the Service Terms' incorporation of the License Terms.  *Compare* Steinberg Decl., Exh. 22, at 1

United States District Court
Northern District of California

14

("The Standard License . . . allows Commercial Use . . . with only a few exceptions – See https://creativemarket.com/licenses"), *with id.* at Exh. 25, at 1 ("By creating an account and checking the 'I agree' box or accessing or using the Service, you agree you have read, understood, and agree to be bound by the terms and conditions of these Terms of Service, including the License Terms . . . ."). Accordingly, Defendants cannot be said to have assented to the License FAQ via their use of the Shop Page. *See Oberstein*, 60 F.4th at 515 ("'[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'").

The License Terms include a link to the License FAQ after displaying the question "Have questions or need more clarification?" *See* Steinberg Decl., Exh. 26. Courts have found that there is no assent to terms where a user would have to click through two optional links to view a given term, particularly where the second link is not clearly described as containing contract terms. *See Savetsky v. Pre-Paid Legal Servs., Inc.*, 2015 WL 604767, at *4–5 (N.D. Cal. Feb. 12, 2015) (finding no assent to terms where "a consumer would only receive actual notice if he clicked through two optional links" and read to the seventh page to find the term, and noting that the link to terms was described as "More Plan Details," as reasonable person "could easily conclude that 'More Plan Details' are . . . [not] additional terms and conditions"). Under these circumstances, the Court cannot say that Plaintiff has established Defendants' assent to any terms contained in the License FAQ.

### b.    Summary Adjudication

The Court discussed with the parties at oral argument the question of whether the Court may grant summary adjudication on the issue of mutual assent. The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense. *See* Fed. R. Civ. P. advisory committee's note, 2010 amendments; *Ochoa*, 133 F. Supp. 3d at 1232 ("Now the Court can, when warranted, selectively fillet a claim or defense without dismissing it entirely."). Further, the Ninth Circuit has held that a

United States District Court
Northern District of California

district court may determine the existence of mutual assent, which is generally a question of fact, because "whether a certain set of facts is sufficient to establish a contract is a question of law." *Oberstein*, 60 F.4th at 517. Defendants requested that the Court not decide the issue of mutual assent, arguing that they had not had sufficient notice to brief the issue because Plaintiff did not request summary adjudication of any issue. This argument holds weight with respect to the Shop Page and the License FAQ, but the parties both provided sufficient briefing regarding the account creation page and the assent manifested as to the License Terms and Service Terms. Accordingly, the Court will hold that Plaintiff has established Defendants' assent to the License Terms and Service Terms, but that Plaintiff has failed to establish at this stage that the Shop Page and License FAQ were part of the contract.

### 2.     Breach by Defendants

Plaintiff argues that Defendants breached the License Terms when the Blooming Elegant Software was uploaded to Zazzle's servers and when Zazzle rendered the Blooming Elegant Trio for Zazzle users. *See* Mot. 6–10. Defendants counter that the License Terms prohibited more than one user from downloading the software, or the upload of the software to more than two computers, and that Plaintiff has not established either event. *See* Opp'n 14–15.

The License Terms provided that the licensee had a "non-transferable right to use, modify, and reproduce the Item" (previously defined as the licensed "digital content"), *see* Steinberg Decl., Exh. 26, at 2; the licensee could not "redistribute the original files in any way," *id.* ¶ 1; the licensee was to use the Blooming Elegant Software "in an unlimited number of [p]rojects on a one seat per license basis," *id.* ¶ 2; the licensee could "incorporate the Item into other content and make a derivative work from it," *id.* ¶ 4; the licensee could not "sublicense, resell, share, transfer, or otherwise redistribute the Item," *id.* ¶ 5; the licensee could not "make the Item available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the Item" or "permit an end user of the end product to extract the Item and use it separately," *id.* ¶ 6; and the licensee could not "publicly display the Item: (a) as a standalone file in any digital format on the internet; or (b) in any digital format without . . . prevent[ing] the

1    unauthorized use of the Item by third parties," *id.* ¶ 8.  *See* Mot. 6–7.

2          Plaintiff argues that deposition testimony establishes that the Blooming Elegant Software

3    is on at least two of Zazzle's servers and potentially on more than 50, that servers respond to

4    millions of user requests, and that at least two Zazzle employees had access to the Blooming

5    Elegant Software.  *See* Mot. 8.  Having examined the record, the Court concludes that the evidence

6    before the Court indicates that Mr. Alkhatib purchased and downloaded the Blooming Elegant

7    Software, *see* Alkhatib Decl. ¶¶ 4, 8; that Zazzle uses at least two servers in providing any service,

8    *see* Beaver Dep. Tr. (Vol. 1) 29:16–25; that Zazzle's San Francisco data center held at least 50

9    servers in 2017, *see id.* at 165:15–166:10; that Mr. Beaver did not know specifically how many

10   Zazzle employees could access font software housed on Zazzle's servers, although he "would

11   assume [at least] two," *see id.* at 35:8–36:13; and that the "'technological mechanics of how

12   Zazzle is able to utilize [] font software' 'could [be] explain[ed] . . . [as users] basically providing

13   general instructions to [Zazzle], which in turn will use font software and all sorts of other kinds of

14   software in order to render text or images or general site functionality," *see id.* at 41:15–42:10; and

15   that Zazzle does not display, distribute, or share font software, including the Blooming Elegant

16   Software, to or with its users while they use Zazzle's online design tool, *see* Li Decl. ¶¶ 3–4.

17         This evidence, without additional facts and technical context, does not establish that

18   Zazzle's use of the Blooming Elegant Software and Blooming Elegant Trio breached any of the

19   terms highlighted by Plaintiff.  Plaintiff has instead put before the Court factual determinations

20   made by other courts regarding, for example, the function of servers.  *See, e.g.*, Mot. 8 (citing

21   *Mformation Techs., Inc. v. Res. in Motion Ltd.*, 2010 WL 702447, at *7 (N.D. Cal. Feb. 25,

22   2010)); Reply 9–10 (citing *Ogunsalu v. Nair*, 2006 WL 8447969, at *4 (S.D. Cal. May 5, 2006);

23   *Tumbleweed Commc'ns Corp. v. Paypal, Inc.*, 2003 WL 25784508, at *3 (N.D. Cal. Nov. 6,

24   2003); *Matter of Search of Info. Associated with [Redacted]@gmail.com*, 2017 WL 2480752, at

25   *11 (D.D.C. Jun. 2, 2017)).  Plaintiff has not requested judicial notice of these holdings—nor do

26   the factual determinations appear properly subject to notice under Federal Rule of Evidence

27   201(b)—and although Plaintiff's breach of contract claim appears strong, the Court cannot

28   conclude on the record presently before it that Defendants breached the License Terms as a matter

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1    of law.  The Court will thus deny summary judgment on Plaintiff's claim for breach of contract.

2               **3.**       **Claim Against Mr. Alkhatib**

3          Plaintiff argues that she is entitled to bring a claim against Mr. Alkhatib because he

4    executed a contract on Zazzle's behalf without disclosing his agency status.  *See* Mot. 10.

5    Defendants counter that Plaintiff "fails to prove her breach of contract claim against Mr. Alkhatib

6    because, as a matter of well-settled law, 'an agent acting on behalf of a disclosed principal cannot

7    be held personally liable on the contract.'"  Opp'n 15 (quoting *F.D.I.C. v. Frankel*, 2011 WL

8    5575262, at *5 (N.D. Cal. Nov. 29, 2011)).

9          The evidence indicates that (1) Creative Market's account creation page does not provide a

10    field in which a user may disclose an employer, *see* Alkhatib Decl. ¶ 4; *see also* Steinberg Decl.,

11    Exh. 24; (2) Mr. Alkhatib entered a work email address, mo@zazzle.com, into the email field

12    when he signed up for the Creative Market account he used to purchase the Blooming Elegant

13    License, Alkhatib Decl. ¶ 4; (3) Mr. Alkhatib received the receipt for his purchase, which

14    contained the software download link, at the same work email address, *see* Alkhatib Decl., Exh. 4;

15    (4) the Service Terms include a warranty that "[i]f you open a Creative Market account on behalf

16    of an organization or other entity, then . . . (ii) you represent and warrant that you are an

17    authorized representative of the entity with the authority to bind the entity to these Terms, and that

18    you agree to these Terms on the entity's behalf," Steinberg Decl., Exh. 25; and (5) Creative

19    Market does not provide Plaintiff with the email address or billing information of any user who

20    purchases a Blooming Elegant License, *see* Laatz Decl. ¶¶ 35–36.  Plaintiff argues that it was not

21    her duty to investigate the existence of an agency relationship, so that any disclosure made by Mr.

22    Alkhatib was insufficient.  *See* Reply 3 (citing *W.W. Leasing Unlimited v. Comm. Stand. Title Ins.*

23    *Co.*, 149 Cal. App. 3d 792, 795 (1983)).  Based on the above evidence, the Court finds that there

24    are disputed facts as to whether Mr. Alkhatib was a disclosed agent of Zazzle, and will therefore

25    deny summary judgment on Plaintiff's claim against Mr. Alkhatib for breach of contract.

26         **C.**      **Fraud Claims (Claims 1–3)**

27          Plaintiff asserts claims for fraudulent misrepresentation, fraudulent concealment, and

28    promissory fraud against Defendants under California Civil Code § 1572, which codifies common

law fraud.  *See* FAC ¶¶ 175–195.  "'The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (citation omitted).  Plaintiff argues that Monica McGhie's November 2, 2016 message inquiring about purchasing a perpetual server-based license of the Blooming Elegant Trio shows that Defendants misrepresented or omitted their true intent when Mr. Alkhatib purchased the Blooming Elegant License; that Defendants intended to breach the terms of the Blooming Elegant License; that Defendants intended for Plaintiff to rely on their misrepresentations and omissions; that Plaintiff justifiably relied on the misrepresentations and omissions; and that Plaintiff has been harmed.  *See* Mot. 16–20.  Plaintiff additionally points to a statement by Ms. Larson made during what Defendants contend were confidential settlement negotiations.  *See* Mot. 19; Opp'n 7.  Defendants counter that Plaintiff has not submitted any evidence on multiple elements, and that McGhie's message does not establish any of the elements. *See* Opp'n 16–23.

As the Court stated at oral argument, there remains in this case a great amount of factual dispute regarding the necessary showing for fraud.  For example, Plaintiff has not even submitted evidence that Ms. McGhie informed anyone else at Zazzle that Plaintiff had not responded to the message inquiring about perpetual server-based licenses, or that any Zazzle employee believed that Plaintiff's failure to respond to the message meant that Plaintiff would not grant such a license.  This is not like the case cited by Plaintiff in support of granting summary judgment on a fraud claim, *see* Mot. 17–18, where the plaintiffs presented compelling evidence of telephone conversations containing direct misrepresentations, and where a defendant responded to the plaintiffs' propounded interrogatories by invoking his Fifth Amendment right against self-incrimination.  *See Albergo v. Immounosyn Corp.*, 2012 WL 12953736, at *3–4 (S.D. Cal. June 19, 2012).  Instead, as counsel for Plaintiff conceded at oral argument, Plaintiff has not even deposed Ms. McGhie.  *See* Aug. 3, 2023 Hr'g Tr. 20:5–23.  Defendants, on the other hand, have submitted a declaration from Mr. Alkhatib stating that he had no intention to defraud Plaintiff, and that he openly used his Zazzle email address and credit card in purchasing the Blooming Elegant

1    Software.  *See* Alkhatib Decl. ¶ 9.  Drawing all inferences in favor of Defendants, as the non-

2    moving party, the Court finds that Plaintiff has failed to establish, at a minimum, Defendants'

3    intent to defraud.  Because Plaintiff has not established this element, which is necessary for each

4    of her fraud claims, the Court need not examine the remaining elements, and will deny Plaintiff's

5    motion for summary judgment on her fraud claims.

6          **D.        Copyright Infringement (Claim 4)**

7          Plaintiff asserts that Zazzle has infringed her copyrights to the Blooming Elegant Software

8    by including the Blooming Elegant Trio in its design customization tool, and by reproducing and

9    distributing the Morgana font, which Plaintiff alleges also infringes on Plaintiff's copyrights.  *See*

10   FAC ¶¶ 196–203.  Plaintiff argues that she should receive a presumption of validity based on her

11   certificates of registration, that the Blooming Elegant Software is copyrightable, and that Zazzle

12   infringed by copying the Blooming Elegant Software onto its servers.  *See* Mot. 21–25.  Zazzle

13   counters that Plaintiff is not entitled to the statutory presumption of validity because she did not

14   register her copyrights within five years of first publication, that there is a genuine dispute as to

15   whether the work done by Plaintiff to create the Blooming Elegant Trio is sufficient to validate her

16   copyrights in the Blooming Elegant Software, and that Plaintiff has not established an actual

17   violation of an exclusive right.  *See* Opp'n 23–25.

18         A certificate of registration from the Copyright Office made within five years of first

19   publication is prima facie evidence of the validity of the copyright.  *See Micro Star v. Formgen*

20   *Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998); 17 U.S.C. § 410(c).  The district court has discretion to

21   weight the evidence of a certificate of registration made thereafter.  *See* 17 U.S.C. § 410(c).

22   Plaintiff's certificates of registration are dated five years and two days after the date of first

23   publication.  *See* Steinberg Decl., Exhs. 7–9.  Here, the arguments as to the proper weight of the

24   certificates of registration are fairly insignificant because even if the Court considered the

25   certificates to be prima facie evidence of validity, Defendants have presented substantial evidence

26   to rebut the presumption.  Most importantly, a software expert retained by Zazzle has opined that

27   Plaintiff's actions in creating the Blooming Elegant Trio using FontLab 7.1 did not create original

28   computer software, but instead used existing software to create a font.  *See* Decl. of Christopher

United States District Court
Northern District of California

1    Rucinski in Opp'n to Partial MSJ ("Rucinski Decl.") ¶¶ 9–18, ECF No. 102-12.  Plaintiff has also

2    proffered the opinions of two experts, one in the font industry and the other in font licensing,

3    design and distribution, both of which state that Plaintiff's actions resulted in a copyrightable

4    software.  *See* Decl. of Stuart Sandler in Supp. of Partial MSJ ("Sandler Decl.") ¶¶ 2, 6, 20–25;

5    Decl. of Thomas Pinney in Supp. of Partial MSJ ("Pinney Decl.") ¶¶ 3, 13–17, 21–26.  One

6    declaration expressly disagrees with the opinions presented by Defendants' expert.  *See* Pinney

7    Decl. ¶¶ 24–26.  Given the conflicting expert testimony, the Court cannot conclude as a matter of

8    law that Plaintiff's copyrights are valid.  Plaintiff therefore has not established that there is no

9    dispute of material fact related to her copyright infringement claim, and the Court will deny

10   summary judgment on the claim.

### V.    CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  Plaintiff's motion for partial summary judgment on her claim for breach of contract
    is GRANTED IN PART as to the issue of whether Defendants assented to the
    Service Terms, the License Terms, and the Shop Page.  Plaintiff's motion otherwise
    is DENIED, including with respect to Plaintiff's assertion that Defendants assented
    to the License FAQ and Plaintiff's claim against Mr. Alkhatib based on his alleged
    status as an undisclosed agent.

2.  Plaintiff's motion for partial summary judgment on her claims for fraudulent
    misrepresentation, fraudulent concealment, and promissory fraud is DENIED.

3.  Plaintiff's motion for partial summary judgment on her claim for copyright
    infringement is DENIED.

**IT IS SO ORDERED.**

Dated:  January 9, 2024

Beth Labson Freeman
United States District Judge