UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ, et al.,<br>        Plaintiffs,<br>v.<br>ZAZZLE, INC., et al.,<br>        Defendants. | Case No. 22-cv-04844-BLF<br><br>**ORDER DENYING MOTION TO DISMISS COUNTERCLAIM**<br><br>[Re: ECF No. 148] |

Before the Court is Plaintiff Nicky Laatz's motion to dismiss Defendant Zazzle, Inc.'s counterclaim. ECF No. 148 ("Mot."). Zazzle filed an opposition to the motion. ECF No. 154 ("Opp."). Laatz filed a reply. ECF No. 157 ("Reply"). The Court found this motion suitable for disposition without oral argument and vacated the hearing. ECF No. 175.

For the reasons below, the Court DENIES Laatz's motion.

I. **BACKGROUND**

The following are the facts as stated in Zazzle's counterclaim. Zazzle operates an online platform for the design and on-demand production of customized products. *See* ECF No. 44 ("Counterclaim") ¶ 10. Zazzle provides independent creators with online design and customization tools, including illustrations, templates, icons, shapes, backgrounds, images, filters, fonts, and drawing tools. *Id.* On May 4, 2017, Zazzle purchased a license to the computer files for three typefaces: Blooming Elegant, Blooming Elegant Hand, and Blooming Elegant Sans (collectively "Blooming Elegant Trio"). *Id.* ¶ 12. Laatz is an individual residing in Launceton, Cornwall, United Kingdom who holds the copyrights to the Blooming Elegant Trio. *See id.* ¶¶ 3, 15.

### A. Registration of the Blooming Elegant Trio

On February 18, 2021, Laatz sought to register the copyrights to the three computer files pertaining to the Blooming Elegant Trio. Counterclaim ¶ 15. Laatz originally submitted applications to register the computer files as computer programs. *Id.* ¶ 18. However, the Copyright Office Examiner responded that the Copyright Office could not accept the applications because "the deposit . . . submitted does not contain a computer program" and "appear[ed] to be a font." *Id.* (alteration in original). The Examiner continued, "Typically, fonts come in as XML. If this is XML, please confirm. In this case, we must amend the author created space from 'computer program' to 'XML code.'" *Id.* ¶ 19. The Examiner also stated, "In addition, if this is XML please let us know if it was hand-coded by a human author or if it was generated by a font program, such as FontLab or Fontographer. *If the XML was merely generated by a font program and was not hand coded by a human author, it cannot be registered.*" *Id.* (emphasis in original).

In response, Laatz through an authorized representative confirmed the work was a font but clarified that for each computer file, the submission was "a PDF file containing source code for an installable OTF file containing the work." *Id.* ¶ 20. The Examiner clarified that the Copyright Office "no longer register[s] fonts as 'computer programs' as they are not eligible for the registration," asked Laatz to confirm the language or format in which the code was written and whether it was hand-coded, and stated that code generated by a font program and was not hand-coded by a human author could not be registered. *Id.* ¶ 21 (alteration in original). Laatz stated that she "personally created the designs and instructions in the font software file" and that the font data "was generated by a font program in a sense, but it also reflects [her] original creative work." *Id.* ¶ 22. The Examiner again stated that the deposit must be registered as font data and asked Laatz to "confirm if the information in the PDF that you submitted is hand-coded and that it contains the entire work." *Id.* ¶ 23. After Laatz again requested that the installable OTF file be registered as a computer program, the Examiner stated that the file "is not an acceptable deposit" and that "[i]f you respond and do not authorize the change to 'font data' or confirm if the font data in the PDF file was hand-coded, I will refuse this registration with no further action." *Id.* ¶ 24. Laatz finally responded that "Ms. Laatz hand-coded the designs and instructions in the font data

that we submitted as a pdf file." *Id.* ¶ 25.

Zazzle's counterclaim alleges that, on information and belief, Laatz knew at the time that she submitted her applications to the Copyright Office that she did not hand-code the data contained in the files submitted to the Copyright Office. Counterclaim ¶ 26. Instead, Laatz used FontLab to draw and/or select the coordinates to create a digital representation of each typeface, and the FontLab software generated the code contained in the computer files Laatz registered. *Id.* ¶ 31.

### B. Procedural History

On August 24, 2022, Laatz filed this lawsuit against Zazzle and Defendant Mohamed Alkhatib. ECF No. 1. Laatz filed an amended complaint on March 14, 2023. ECF No. 83. The amended complaint brings causes of action for (1) fraudulent misrepresentation under Cal. Civ. Code § 1572; (2) fraudulent concealment under Cal. Civ. Code § 1572; (3) promissory fraud under Cal. Civ. Code § 1572; (4) copyright infringement under 17 U.S.C. §§ 101 *et seq.*; (5) trademark infringement under 15 U.S.C. §§ 1114 *et seq.*; and (6) breach of contract. *Id.* ¶¶ 175–219. After the Court denied Defendants' motion to dismiss, *see* ECF No. 124, Defendants filed an answer, in which Zazzle appended a counterclaim against Laatz. *See* ECF No. 144. Zazzle seeks a declaration stating that Laatz's copyrights to the Blooming Elegant Trio are invalid. *See* Counterclaim ¶¶ 35–43. Now pending before the Court is Laatz's motion to dismiss.

## II. LEGAL STANDARD

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F.Supp.3d 943, 949 (N.D. Cal. 2015). Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a

3

defendant has acted unlawfully." *Id.* While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### III.     REQUEST FOR JUDICIAL NOTICE

As an initial matter, the Court addresses Laatz's request for judicial notice. A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically

4

attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Laatz requests that the Court take judicial notice of two categories of documents: (1) Laatz's copyright application and deposit materials regarding the Blooming Elegant Trio, ECF Nos. 41-2, 41-3, 41-4; and (2) prior filings in this case, which include Defendants' motion to dismiss and Defendants' request for judicial notice in support of their motion to dismiss, ECF Nos. 40, 41. Mot. at 1–2. Zazzle agrees that the Court can take judicial notice of the materials before the Copyright Office but argues that the Court may not take judicial notice of the factual contents in Laatz's prior filings in this case. Opp. at 10–11. Laatz responds that her request for judicial notice is for Defendants' filings, rather than her own. Reply at 15.

The Court will take judicial notice of Laatz's copyright application and deposit materials regarding the Blooming Elegant Trio. It is common practice for courts to take judicial notice of copyright registrations and applications. *See Smith v. AMC Networks, Inc.*, No. 18-CV-03803-LHK, 2019 WL 402360, at *4 (N.D. Cal. Jan. 31, 2019) (taking judicial notice of Copyright Office Public Catalogue pages as public records); *Zeleny v. Burge*, No. 221CV05103ABAGRX, 2022 WL 3013138, at *3 (C.D. Cal. July 1, 2022) (taking judicial notice of copyright application materials under the incorporation by reference doctrine). The Court will also take judicial notice of Defendants' motion to dismiss and request for judicial notice. *See United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) ("A district court may properly take judicial notice of its own records."). However, the Court will not take judicial notice of the truth of any facts in these documents. *See Eidson v. Medtronic, Inc.*, 981 F.Supp.2d 868, 878 (N.D. Cal. 2013) ("While matters of public record are proper subjects of judicial notice, a court may take notice only of the authenticity and existence of a particular order or pleading, not the veracity or validity of its contents.").

Accordingly, Laatz's request for judicial notice is GRANTED.

**IV.   DISCUSSION**

Laatz raises two arguments in support of dismissal: (1) that the Copyright Office was

1  required to issue Laatz's copyright registrations to the Blooming Elegant Trio; and (2) that Zazzle
2  has not identified any misrepresentations that Laatz allegedly made to the Copyright Office.  The
3  Court will address each argument in turn.

      **A.**    **Whether the Copyright Office Was Required to Issue Laatz's Copyright Registrations**

Laatz argues that the statements made by the Copyright Office Examiner to Laatz regarding the form and extent to which fonts are copyrightable are not controlling law.  Mot. at 8–10.  Instead, Laatz points to the U.S. Copyright Office Regulation on the Registrability of Computer Programs That Generate Typefaces, 57 Fed. Reg. 6201-01 (Feb. 21, 1992), codified at 37 C.F.R. pt. 202 ("1992 Regulation"), and *Adobe Sys. Inc. v. S. Software Inc.*, No. C 95-20710 RMW (PVT), 1998 WL 104303 (N.D. Cal. Feb. 2, 1998), arguing that font programs need not be "hand-coded" to be registerable.  *Id.* 10–13.  It follows, Laatz argues, that the Blooming Elegant Trio was entitled to copyright protection as a matter of law and the Examiner would have violated the Constitution if he had refused to issue the copyright registrations.  *Id.* at 13–15.  Zazzle responds that the 1992 Regulation and *Adobe* apply to font software, and Laatz instead registered font data.  Opp. at 4–5.  Zazzle also argues that the Examiner's statements to Laatz regarding the form and extent to which fonts are copyrightable are consistent with the *Compendium of U.S. Copyright Office Practices*.  *Id.* at 5.  Finally, Zazzle argues that there is no category of works that the Copyright Office is required to register.  *Id.* at 4.  Laatz responds that she registered a computer program as described in the 1992 Regulation and *Adobe* and that those authorities are binding and require issuance of copyright registrations.  *See* Reply at 1–10.

As an initial matter, the Court agrees that the Copyright Office Examiner's opinions are not controlling, *see* Mot. at 8, but Zazzle's Counterclaim does not rely on the legal opinions of the Examiner to state a claim.  As described in the next section, Zazzle raises a straightforward invalidity argument that turns not on the Examiner's opinions but on Laatz's representations to the Copyright Office and her claim of authorship.

Turning to Laatz's argument that the copyright registrations to the Blooming Elegant Trio are valid as a matter of law, Laatz's reliance on the 1992 Regulation and *Adobe* is misplaced

6

because neither authority compels the Copyright Office to issue a copyright registration. Laatz argues that "the 1992 Regulation govern[s] when copyrights *must be registered* to protect font software." Mot. at 14 (emphasis added). But this argument is contrary to the plain language of the 1992 Regulation, which states only that "computer programs designed for generating typeface in conjunction with low resolution and other printing devices *may* involve original computer instructions entitled protection under the Copyright Act." 1992 Regulation, 57 Fed. Reg. at 6202 (emphasis added). Similarly, neither *Adobe* nor any of Laatz's appeals to the APA or the Constitution support her conclusion that the Copyright Office was required to issue copyright registrations to the Blooming Elegant Trio. Indeed, whether the copyright registrations for the Blooming Elegant Trio are valid turns on disputed facts. *See* Mot. at 12 (arguing the Counterclaim "admits facts showing that the Blooming Elegant Trio font software meets the aforementioned legal standards for copyrightability"). However, in ruling on the motion to dismiss, the Court must accept as true all well-pled factual allegations and construe them in the light most favorable to Zazzle. *See Reese*, 643 F.3d at 690. As outlined in the following section, the Court finds that Zazzle has adequately alleged facts that, when construed in its favor, allow the Court to draw the reasonable inference that Laatz is not the author of the code for the Blooming Elegant Trio and that she committed fraud on the Copyright Office. Thus, the Court cannot conclude that Laatz's copyright registrations are valid as a matter of law.

Moreover, Laatz's attempts to analogize this case to *Adobe* are unconvincing. *See* Mot. at 11–12. In that case, Adobe brought a copyright infringement action over its font software programs. *See Adobe*, 1998 WL 104303, at *1. Adobe purchased digital font files and translated them into its own font coordinate system using internal Adobe software. *Id.* An Adobe editor would manipulate the on-curve and off-curve reference points for each glyph and then Adobe software would "make[] the final assignment of coordinates, produce[] instructions and hints[,] and perform[] any necessary kerning." *Id.* Judge Whyte noted that "font editors make creative choices as to what points to select based on the image in front of them" and that the code is determined directly from their selections. *Id.* at *5. Thus, Judge Whyte reasoned that any copying of points is copying of literal expression. *Id.* On the evidence before him, Judge Whyte

7

1  concluded that "the Adobe font software programs are protectable original works of authorship."
2  *Id.* at *5. Notably, and unlike this case, the copyright holder in *Adobe* created the software that
3  produced the font programs. *See id.* at *1; *see also* Counterclaim ¶ 27 (alleging that Laatz used a
4  font-editing software to create her code). Thus, Judge Whyte had no occasion to consider whether
5  a work is copyrightable where, as here, the copyright holder merely "selected coordinates and
6  various other points of instruction" and a third-party software wrote the implementing code. *See*
7  Counterclaim ¶ 27. This distinction is important because the Copyright Office has suggested that
8  a computer program that generates a font is not registerable where "the author merely assigned
9  coordinates to a particular letterform and then used a third party program to render typeface or
10 typefont from those coordinates (but did not create any of the source code for that program)."
11 U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 723 (3d ed. 2021)[1]; *see*
12 *also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1068 (9th Cir. 2022) (noting
13 that the *Compendium* is entitled to *Skidmore* deference) (quoting *Unicolors, Inc. v. H&M Hennes*
14 *& Mauritz, L.P.*, 959 F.3d 1194, 1199 & n.3 (9th Cir. 2020), *vacated and remanded on other*
15 *grounds*, 595 U.S. 178 (2022)). Thus, *Adobe* does not support Laatz's argument that her copyright
16 registrations are valid.
17     Accordingly, the Court DENIES Laatz's motion with respect to her argument that the
18 Copyright Office was required to issue her copyright registrations as a matter of law.

### B. Whether Zazzle Has Adequately Pled Misrepresentations

20 Laatz argues that Zazzle fails to allege that the copyright registration certificates contain
21 any inaccuracy. Mot. at 15–16. Laatz also argues that none of her representations to the
22 Copyright Office is inaccurate because she did not claim that she hand-coded all of the font data in
23 the files she submitted and she disclosed her use of a font program. *Id.* at 17. Zazzle responds
24 that misrepresentations in copyright applications are cognizable as fraud and Laatz's copyright
25 registration certificates are inaccurate because they attribute authorship to Laatz rather than

---

[1] Although Zazzle has not requested that the Court take judicial notice of the Compendium of U.S. Copyright Office Practices, the Court previously took judicial notice of this document in ruling on Defendants' motion to dismiss. ECF No. 124 at 8–9. The Court does so again.

United States District Court
Northern District of California

FontLab. Opp. at 7 n.2. Zazzle also responds that it adequately alleged that Plaintiff knowingly misrepresented whether she hand-coded the entire file. *Id.* at 6–10.

Under the Copyright Act, a certificate of registration is valid "regardless of whether the certificate contains any inaccurate information, unless-- . . . the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and . . . the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). The Ninth Circuit has held that a party seeking to invalidate a copyright under this section must show: "(1) the registrant submitted a registration application containing inaccuracies, (2) the registrant knew that the application failed to comply with the requisite legal requirements, and (3) the inaccuracies in question were material to the registration decision by the Register of Copyrights." *Unicolors*, 52 F.4th at 1067.

The Court finds that Zazzle's allegations, when accepted as true and construed in the light most favorable to Zazzle, are sufficient for the Court to draw the reasonable inference that Laatz has committed fraud on the Copyright Office. First, the certificates of registration for the Blooming Elegant Trio reflect that "Nicky Laatz" is the author. *See* ECF Nos. 144-4 ("Ex. D"), 144-5 ("Ex. E"), 144-6 ("Ex. F"). The Counterclaim alleges that this is an inaccuracy because it was FontLab, rather than Laatz, who wrote the code implementing the visual typefaces for the Blooming Elegant Trio.[2] *See* Counterclaim ¶¶ 27, 31–32, 38. Second, Zazzle sufficiently alleges that Laatz knowingly included inaccurate information in her copyright registration application. For example, Zazzle points to Laatz's correspondence with the Copyright Office Examiner, in which the Examiner repeatedly asked Laatz to confirm whether the deposit was "hand-coded by a human author or if it was generated by a font program, such as FontLab." Counterclaim ¶ 19; *see also id.* ¶¶ 21, 23, 24. Laatz's authorized representative initially represented that the deposit "was generated by a font program in a sense, but it also reflects [her] original creative work." *Id.* ¶ 22 (alteration in original). Later, Laatz's authorized representative stated that "Ms. Laatz hand-coded

---

[2] Laatz construes the alleged inaccuracy narrowly, arguing that the Counterclaim alleges only that Laatz did not hand-code the computer files. *See* Reply at 11. However, the fact that Laatz did not hand-code the computer files is important because it is evidence that she is not the author. *See* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 723.

9

the designs and instructions in the font data that we submitted as a pdf file." *Id.* ¶ 25. Although Laatz argues that these statements are not inconsistent nor inaccurate, Mot. at 17, the Court must construe the facts in the light most favorable to Zazzle. In doing so, the Court draws the reasonable inference that Laatz had knowledge of the alleged inconsistency. Finally, the law is well-established that authorship is material to a registration decision by the Copyright Office. *See Canadian Standards Ass'n v. P.S. Knight Co.*, 649 F.Supp.3d 334, 354 (W.D. Tex. 2023) ("False statements of ownership or authorship in a work render a copyright registration invalid as a matter of law.").

Accordingly, the Court DENIES Laatz's motion with respect to her argument that Zazzle has failed to plead misrepresentations.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Nicky Laatz's motion to dismiss Defendant Zazzle, Inc.'s counterclaim (ECF No. 148) is DENIED.

Dated: March 7, 2024

_____
BETH LABSON FREEMAN
United States District Judge

10