UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>    Plaintiff,<br><br>v.<br><br>ZAZZLE, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-04844-BLF (VKD)<br><br>**REDACTED**<br><br>**ORDER RE AUGUST 19, 2024 DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 258, 259, 261, 262, 263, 264 |

Plaintiff Nicky Laatz and defendant Zazzle, Inc. ("Zazzle") ask the Court to resolve numerous discovery disputes, all of which were filed on August 19, 2024. Dkt. Nos. 258, 259, 261, 262, 263, 264. The Court finds these matters suitable for decision without oral argument, although one dispute cannot be resolved without additional submissions. *See* Civil L.R. 7-1(b).

The parties have delayed until the very end of the discovery period to submit six separate discovery dispute letters addressing many more than six distinct disagreements. Most of these disputes were not even mentioned at the time the Court convened a discovery status conference on July 2, 2024 to discuss all existing discovery disputes and the depositions that remained to be taken. *See* Dkt. Nos. 203, 212. In the interest of efficiency, and considering that the time for completion of fact discovery has closed, the Court provides a concise discussion of each dispute and its resolution below.[1]

---

[1] Portions of this order are provisionally sealed, pending the Court's resolution of the sealing requests associated with the subject discovery disputes. Matters publicly disclosed in this order reflect information that has already been disclosed in the parties' public filings, or that the Court concludes do not meet the applicable standard for sealing.

## I. DISPUTES RE DEFENDANT ZAZZLE'S DISCOVERY REQUESTS

### A. Dkt. No. 258: Interrogatories Nos. 20-22, 24; Request for Production No. 97[2]

#### 1. Interrogatory No. 20

The parties disagree about whether Ms. Laatz should be required to supplement her responses to Zazzle's Interrogatory No. 20, which asks her to identify "each and every Person or Entity who purchased or otherwise holds a license to Blooming Elegant, including by providing the Person or Entity's name, email address, mailing address, phone number, date of purchase/receipt, price paid, and type and/or terms of said license." Dkt. No. 258 at 1. Ms. Laatz has answered by invoking Rule 33(d) and citing approximately 250 business records previously produced. *Id.* at 4. Rule 33(d) permits a party to respond to an interrogatory by referring to documents only if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and if the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the [requesting] party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). The Court agrees that Ms. Laatz may rely on the identification of business records to respond to this interrogatory, but only if the interrogatory response clearly identifies where in each record the information may be found. For example, Ms. Laatz may properly rely on a summary report of licenses to the disputed font, such as the document filed at Dkt. No. 106-2, without further elaboration if that report contains only licenses to the disputed font. However, if Ms. Laatz relies on business records that refer to purchases or licenses for other fonts as well as for the disputed font, or business records that refer to information other than purchases or licenses, then her interrogatory answer must specify where in each record the responsive information is found.

#### 2. Interrogatory Nos. 21, 22, and 24

Zazzle's Interrogatories Nos. 21 and 22 ask Ms. Laatz to identify all email addresses and social media accounts used since 2017 by herself, John Laatz, and any "Laatz Entity." Dkt. No.

---

[2] The parties did not attach the discovery requests and responses at issue, contrary to Judge DeMarchi's Standing Order for Civil Cases.

2

258 at 2-3, 5. Interrogatory No. 24 asks Ms. Laatz to identify any social media content on those social media accounts that relate to Zazzle or the Blooming Elegant font. *Id.* at 3. Ms. Laatz has provided some substantive responses to these interrogatories, but otherwise objects that these requests seek information that is irrelevant, or that is outside her possession, custody, or control. *Id.* at 5. The Court agrees with Zazzle that the information these interrogatories seek is relevant to Zazzle's statute of limitations defense. Ms. Laatz must provide complete responsive answers in narrative form to Interrogatories Nos. 21 and 22 and may not rely on citation to business records. Ms. Laatz must also provide a complete responsive answer to Interrogatory No. 24. She may invoke Rule 33(d) to the extent the records she cites describe or show the social media content to which Interrogatory No. 24 is directed, but her answer should make this clear. To the extent the social media content is not described or shown in a business record, Ms. Laatz must provide a narrative answer to this interrogatory.

### 3. Request for Production No. 97

The parties disagree regarding whether Ms. Laatz should be required to produce all of her posts and communications with any "blog, forum or website related to fonts and/or typefaces, including but not limited to TypeDrawers" in response to Zazzle's RFP 97. *Id.* at 3, 5. The Court agrees with Ms. Laatz that, even if some posts or communications might be relevant to Zazzle's statute of limitations defense, this request is unreasonably broad and seeks discovery that is not proportional to the needs of the case. Zazzle has not provided an adequate justification for the breadth of discovery encompassed by RFP 97. To the extent she has not already done so, Ms. Laatz must produce posts or other communications with or on TypeDrawers or any other font- or typeface-related blog, forum, or website regarding Blooming Elegant or Zazzle.

### B. Dkt. No. 259: Ms. Laatz's Privilege Claims re Non-Party Communications

According to Zazzle, it has served document subpoenas on three non-party platforms where Ms. Laatz has licensed the dispute font—i.e., Creative Market, Fontspring, and MyFonts—seeking Ms. Laatz's communications with these platforms regarding the disputed font, Zazzle, and this action. Dkt. No. 259 at 1-4. Initially, Ms. Laatz objected to the production of these communications by the three non-parties on the ground that the communications are protected

1 from disclosure by various privileges, including the "common interest" doctrine. Dkt. No. 259,
2 Exs. A-C. However, she clarifies here that she objects only to producing "*post-Complaint*
3 communications made at the direction of and/or directly by counsel." *Id.* at 4. She says that she is
4 presently "withholding only a handful" of such communications from her own production,
5 although it is unclear whether she is preventing the non-parties from producing additional
6 communications. *Id.* Ms. Laatz acknowledges that she has not identified any of the withheld
7 communications in a privilege log or otherwise, but she says she is willing to do so (albeit only if
8 Zazzle does likewise), and that this dispute is therefore "premature." *Id.* at 4 and n.2.

9 The voluntary disclosure of a privileged or protected document or information to a third
10 party ordinarily waives that privilege or protection. *United States v. Ruehle*, 583 F.3d 600, 612
11 (9th Cir. 2009); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).
12 The "common interest" doctrine is an exception to ordinary waiver rules that applies when parties
13 represented by separate counsel communicate in confidence about a matter of common legal
14 interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d
15 1121, 1129 (9th Cir. 2012). The doctrine does not create a privilege but comes into play only if a
16 privilege or protection already covers the material disclosed to the third party. *Id.*; *see also Nidec*
17 *Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578-79 (N.D. Cal. 2007) (describing boundaries and
18 application of common interest doctrine).

19 Ms. Laatz argues that she and the three non-parties share a common legal interest because
20 the three non-parties are "co-parties" either to the license at issue in this action or to other licenses.
21 Dkt. No. 259 at 6. However, Ms. Laatz does not explain how these contractual relationships
22 support her contention that these non-parties' have *legal* interests, as opposed to financial interests
23 or interests in the general subject matter (e.g. copyrightability of fonts created using compilers),
24 that are implicated in this action. *See In re Pacific Pictures Corp.*, 679 F.3d at 1129 ("[A] shared
25 desire to see the same outcome in a legal matter is insufficient to bring a communication between
26 two parties within this exception" to the ordinary rules of waiver that govern privilege and work
27 product.); *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-04467-BLF (VKD), 2020 WL 4192285, at *4
28 (N.D. Cal. July 21, 2020) (third-party investor who observed company board meetings did not

United States District Court
Northern District of California

have common legal interest in infringement action to enforce company's patents). Ms. Laatz's counsel and counsel for the non-parties may not simply agree that the requisite common legal interest exists if it does not.

More importantly, the documents that have been withheld based on Ms. Laatz's objections must be privileged or protected *in the first instance*, before consideration of a common interest comes into play. Here, because Ms. Laatz has not yet logged or otherwise identified the documents in question as required by Rule 26(b)(5)(A), she has not established that the withheld documents are privileged or protected. It is her obligation to do so, regardless of whether Zazzle separately agrees to do likewise, and this obligation should have been undertaken well before the close of discovery. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming district court's finding of waiver of attorney-client privilege where privilege log was provided five months after Rule 34 response deadline and lacked sufficient support). Fact discovery is now closed, and the question has been called. Ms. Laatz has not properly asserted any underlying privilege or protection for these documents, and the time to do so has passed.

To the extent Ms. Laatz is withholding responsive documents of her own or preventing non-parties from producing responsive documents to Zazzle by asserting that the "common interest" doctrine protects them from disclosure, the Court overrules Ms. Laatz's objections.

## II. DISPUTES RE PLAINTIFF LAATZ'S DISCOVERY REQUESTS

### A. Dkt. No. 261: Zazzle's Objections to Rule 30(b)(6) Notice

#### 1. Disputed Topics

The parties disagree regarding whether Zazzle should be required to produce a corporate representative to provide deposition testimony on the following topics in Ms. Laatz's Rule 30(b)(6) notice:

> Topic 10(f): The number of individuals who . . . [h]ad accounts with Zazzle during the time that the design tool permitted users to create designs with the Blooming Elegant Trio.
>
> Topic 11: What documentation Zazzle has (e.g. server logs, etc.) regarding the numbers of individuals discussed in Topic 10 [i.e.

5

> individuals who created, published, sold, accessed or used the design tool, had accounts].
>
> Topic 18: What efforts Zazzle undertook to locate and produce Documents responsive to [all of Ms. Laatz's documents requests], including what custodians' Documents were searched, what computers, Servers, or other electronic devices were searched, what kinds of Documents were included in and/or excluded from any searches, and what search terms were used to identify potentially responsive Documents.

Dkt. No. 261 at 1, Ex. A.

Ms. Laatz argues that Topic 10(f) seeks information that she will use to calculate the number of users who could have accessed or used the disputed font during the time it was available in Zazzle's design tool, regardless of whether they did so or not. *Id.* at 2. Zazzle objects that this topic seeks irrelevant information, untethered to any claim or defense, because it asks for the number of individuals holding Zazzle accounts, even if these individuals did not create any designs or products using the disputed font. *Id.* at 5. Zazzle notes that it designated a witness who testified about Topic 10(d)—specifically, the number of users who accessed the design tool during the time the disputed font was available—and that this should be sufficient. *Id.* The Court agrees that if Zazzle *has* identified the number of users who accessed the design tool during the time the disputed font was available on Zazzle's platform, Ms. Laatz has not explained why the total number of account holders is relevant to any claim or defense. Conversely, if Zazzle *has not* identified the number of users who accessed the design tool during the time the disputed font was available on Zazzle's platform, it must provide this information, under oath.

Topic 11 seeks information about the documents Zazzle maintains regarding the number of users who did access or use (or who could have accessed or used) the disputed font. The scope of the parties' disagreement is somewhat unclear, but the Court infers that Zazzle refused to produce a witness to testify regarding the documentation Zazzle has regarding users who accessed the design tool, created designs, or held accounts during the time the disputed font was available on Zazzle's platform—regardless of whether those users actually created any designs using the disputed font—but agreed to produce a witness to testify regarding documentation relating to use of the disputed font. Similarly, Topic 18 seeks information about Zazzle's efforts to search for

1 and produce those documents and all other documents responsive to Ms. Laatz's document
2 requests. *Id.* at 2-3.  Zazzle objects that it has already provided information about the custodians
3 and devices it searched in response to Ms. Laatz's Interrogatories Nos. 22 and 23, but more
4 generally objects to Ms. Laatz's efforts to obtain "discovery on discovery." *Id.* at 6.

5       The information Ms. Laatz requests is the kind of information parties should exchange
6 informally at the outset of the discovery management process.  While a Rule 30(b)(6) deposition
7 may sometimes be an appropriate tool to understand the sources of information available from an
8 opposing party, it is rarely appropriate for one party to use such a deposition to scrutinize an
9 adversary's search terms, search methodologies, and review protocols.  *Uschold v. Carriage
10 Servs., Inc.*, No. 17-cv-04424-JSW (EDL), 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019)
11 (quashing similar deposition topics absent showing of specific deficiency).  Nor is a Rule 30(b)(6)
12 deposition a proper substitute for the cooperation between counsel that the Court expects
13 regarding collection and production of electronically stored information ("ESI") early in the case.
14 *See* Fed. R. Civ. P. 26(f)(3)(C) (requiring discussion of discovery of ESI); *Northern District of
15 California ESI Guidelines*, Guideline 2.02 (requiring the parties to confer about: "sources, scope
16 and type of ESI that has been and will be preserved—considering the needs of the case and other
17 proportionality factors"; "[s]earch and production of ESI, such as any planned methods to identify
18 discoverable ESI and filter out ESI that is not subject to discovery, or whether ESI stored in a
19 database can be produced by querying the database and producing discoverable information in a
20 report or an exportable electronic file").  Further, if Ms. Laatz believed that Zazzle's document
21 production was deficient, the proper course of action is to *timely* seek relief, using the Court's
22 expedited discovery dispute resolution procedure after conferring with opposing counsel to resolve
23 the dispute informally.

24       In sum, while the Court has some concerns about the timeliness and completeness of
25 Zazzle's document production, Ms. Laatz has not provided a reasonable justification for
26 deposition testimony responsive to the disputed portions of Topics 11 and 18, and she has not
27 shown that such testimony is otherwise proportional to the needs of the case.
28

### 2. Disputed Document Requests

Ms. Laatz included 10 requests for production of documents with her Rule 30(b)(6) notice to Zazzle. Dkt. No. 261 at 4, Ex. A at 11-12. Zazzle objects that these document requests are entirely duplicative of document requests Ms. Laatz has served previously and to which Zazzle has already responded. Dkt. No. 261 at 6-7. It also objects that the document requests are very broad and not "few and simple, and closely related to the oral examination." *Id.* at 7 (quoting Fed. R. Civ. P. 34 advisory committee note). Ms. Laatz does not address this objection, but she acknowledges that she has served other written discovery regarding some or all of the same subjects. *See id.* at 4.

In these circumstances, Ms. Laatz has not shown that she is entitled to an order requiring Zazzle to produce documents responsive to these 10 duplicative document requests.

### B. Dkt. No. 262: Zazzle's Preparation for Rule 30(b)(6) Deposition

Ms. Laatz contends that Zazzle's corporate representatives Catherine Sheu, Jason Li, and Jason Kang were not adequately prepared to testify in deposition about Topics 1, 6(b), 7(b), 8(b), 9, 10(a), 12-15 in Ms. Laatz's Rule 30(b)(6) notice. Dkt. No. 262 at 1-4. Zazzle contends that its witnesses were knowledgeable and prepared, and that they answered all questions reasonably within the scope of the noticed topics and information available to Zazzle. *Id.* at 4-6. While both parties refer to excerpts from these depositions, they do not attach the excerpts.

The Court cannot resolve this dispute without access to the deposition transcripts. Accordingly, the Court orders Ms. Laatz to submit to Judge DeMarchi's chambers a thumb drive containing <u>electronic copies</u> of the following deposition transcripts:

- Ms. Sheu's corporate testimony
- Mr. Li's corporate testimony
- Mr. Kang's corporate testimony
- Mr. Alkhatib's corporate testimony

The transcripts should not be highlighted or annotated in any way. The Court will issue an order resolving this dispute after reviewing these transcripts.

8

**C.     Dkt. No. 263: Discovery Requests re Use of or Access to Disputed Font**

**1.      Interrogatories**

The parties disagree about whether Zazzle should be required to amend its responses to Ms. Laatz's Interrogatories Nos. 16, 17, 18, and 25, which seek information Ms. Laatz claims is relevant to her analysis of the number of individuals who used or had access to the Blooming Elegant Trio of fonts. Dkt. No. 263 at 1-3. Zazzle responds that it has accurately responded to each of these interrogatories with information in its possession that is readily accessible without undue burden. *Id.* at 4-6.

Interrogatories Nos. 16 and 17 seek information about Zazzle's transmission of "BLOOMING ELEGANT SVG FILES" to Zazzle users. Although these interrogatories rely on a defined term—"Blooming Elegant SVG Files"—Ms. Laatz does not provide the Court with the definition of the term as used in her interrogatories. The joint submission includes only Zazzle's objection to the term, *see* Dkt. No. 263-1 at 8, and the parties' respective characterizations of the term in their joint letter, *see* Dkt. No. 263 at 2, 4. Zazzle says that "SVG" refers to "scalable vector graphic," which is an industry standard file format that it does not use, and it objected to these interrogatories, in part, on that basis. *Id.* at 4; Dkt. No. 263-1 at 8 (objection to "SCALABLE VECTOR GRAPHIC"), 9 (response to Interrogatory No. 16). Ms. Laatz does not dispute that "SVG" or "scalable vector graphic" is an industry standard file format, nor does she dispute that Zazzle does not use that format. Rather, she contends that she meant to refer to whatever means Zazzle uses to transmit text designs to its users (as explained in Zazzle's responses to Interrogatories Nos. 19-21), and Zazzle should be required to respond accordingly. Dkt. No. 263 at 2. This is the kind of dispute that the Court should not be asked to resolve. Ms. Laatz could have withdrawn and amended Interrogatories Nos. 16 and 17 to ask for the information she actually wanted, or the parties could have stipulated to so construe these interrogatories. Neither of those things happened. The Court accepts Zazzle's undisputed representation that "SVG" and "scalable vector graphic" refer to an industry standard file format that it does not use and, therefore, it has no information to provide by way of amendment to its answers to Interrogatories Nos. 16 and 17. However, in view of Ms. Laatz's belated clarification,

9

Zazzle's position is not reasonable. Accordingly, the Court directs Zazzle to answer both interrogatories with respect to the means by which it transmits designs containing text.

Interrogatory No. 18 asks for the total number of unique IP addresses that accessed Zazzle's design tools during the time the disputed font was available in the design tools. *Id.* at 2; Dkt. No. 263-1 at 10. According to Ms. Laatz, Zazzle's answer to this interrogatory omits the IP addresses of users who created "pending" designs. Dkt. No. 263 at 2. Zazzle responds that the information Ms. Laatz requests regarding users who accessed the design tool, but not the disputed font, is not relevant to any claim or defense, and even if it is relevant, Zazzle does not maintain the information in a manner that is readily accessible without undue burden or expense.[3] *Id.* at 5. Ms. Laatz does not address Zazzle's explanation for why the addresses are not readily accessible, except to say that Zazzle has not provided "specific evidence" in support of its explanation. *Id.* at 2. Given the nature of the information requested, the Court finds that Zazzle has adequately supported its explanation for why the information is not available or not readily accessible. In view of the marginal relevance of instances of "pending" designs, discussed in more detail below, the Court concludes that the additional information Ms. Laatz seeks in response to Interrogatory No. 18 is not proportional to the needs of the case.

Interrogatory No. 25 asks for the total number of users that created or customized at least one design using Zazzle's design tools during the time the disputed font was available in the design tools, including "pending" designs, regardless of whether those designed actually used the disputed font. *Id.* at 3; Dkt. No. 263-2 at 8. According to Ms. Laatz, Zazzle has improperly limited its response to the period from April 1, 2020 to March 1, 2023 and omitted "pending" designs from its count. Dkt. No. 263 at 3. Zazzle responds that it provided information from the only time period for which the information is available.[4] *Id.* at 5. With respect to "pending" designs, Zazzle explains that these designs are "unsaved drafts" that were subsequently

---

[3] Zazzle's explanation is filed provisionally under seal and so the Court does not disclose the details of it in this order.

[4] Zazzle's explanation is filed provisionally under seal and so the Court does not disclose the details of it in this order.

10

"abandoned without the user ever finalizing or even saving the draft," and that Zazzle does not keep track of the number of such drafts. *Id.* at 5-6; *see also* Dkt. No. 264 at 7 (describing limited retention period for pending designs). To the extent Ms. Laatz asks Zazzle to include in its count the number of users who created "pending" or "unsaved drafts" of designs that may or may not even use the disputed font, the Court is not persuaded that Interrogatory No. 25 seeks information that is relevant and proportional to a claim or defense, particularly given the information that Zazzle has already provided on the total number of designs created or published during the relevant time period. Moreover, Zazzle has already provided responsive information for a three-year period and has explained why information for an earlier period is not available. The Court finds no reason to question the accuracy of Zazzle's representations on this point. However, Ms. Laatz reasonably requests that Zazzle provide the information available for the period April 1, 2020 to March 1, 2023 by quarter or by month, and Zazzle does not argue that this cannot be done. Accordingly, the Court orders Zazzle to supplement its response to Interrogatory No. 25 to provide the available information on a quarterly or monthly basis.

### 2. Requests for Production Nos. 80-85

Ms. Laatz's RFPs 80-84 ask Zazzle to produce user session information, cookie or token data, and server log files that uniquely identify users who access Zazzle's design tool and/or the disputed font during the time the disputed font was available, as well as "all documents and communications" regarding Zazzle's servers, applications, and database platforms for which corresponding log files are generated. Dkt. No. 263 at 3; Dkt. No. 263-3 at 9-12. Zazzle objects to searching for and attempting to identify session level server data that satisfies these requests and to providing the extensive documentation Ms. Laatz seeks about its servers, applications, and database platforms. Dkt. No. 263 at 6. Ms. Laatz argues that this information would "enable [her] technical experts to identify the number of users who accessed Zazzle's design tools and who used the Blooming Elegant Trio of fonts during the time period in which they were available in such tools." *Id.* at 3. She does not explain why she requires the production of this data when she has already sought this information via several interrogatories and document requests to Zazzle, and the Court has already ordered Zazzle to respond. *See* Dkt. No. 218 (resolving disputes at Dkt.

11

Nos. 202 and 205); Dkt. No. 230 (addressing dispute re RFPs 34-40). While it is certainly plausible that Zazzle may collect and maintain user-identifying session data that could be used for the analysis Ms. Laatz describes, the record on this point is not well-developed. Zazzle asserts, without reference to declaration or deposition testimony, that the information if available would be difficult to parse to provide the requested information; and Ms. Laatz asserts, also without reference to declaration or deposition testimony, that the information must be available and can be used for the purpose she describes.[5] *Cf. Meta Platforms, Inc. v. BrandTotal Ltd.,* 605 F. Supp. 3d 1218, 1234 (N.D. Cal. 2022) (discussing utility of session data maintained in particular log, and corresponding duty to preserve, based on detailed factual record). At this late date, the Court is not inclined to permit further briefing or submissions on this point, particularly in view of the fact that Zazzle appears to have complied with the Court's prior orders requiring it to provide the "number of users" and "number of designs" information Ms. Laatz previously requested.[6]

RFP 85 asks for copies of "all webpages" for any product on Zazzle's website that incorporated the disputed font. Dkt. No. 263 at 4. Zazzle explains that these webpages are not archived and would have to be re-created, which would require Zazzle to reinstall the Blooming Elegant software on its servers. *Id.* at 6. Ms. Laatz acknowledges the burden Zazzle describes but contends Zazzle should have preserved the webpages before removing the disputed font software in August 2022, and so it should have to bear whatever burden is necessary. *Id.* at 4. Ms. Laatz insists that the information is necessary to rebut Zazzle's contention that the disputed font typically is only one of multiple design elements in each design. *Id.* This is another dispute that the Court should not have to resolve. While the parties likely could have come up with a reasonable sampling approach or some other compromise had they conferred seriously in an effort to resolve this dispute on their own, they did not do so. The Court agrees with Zazzle that Ms. Laatz's present demand that Zazzle re-create more than a million webpages is not reasonable and

---

[5] The Court recognizes that its expedited discovery procedure does not permit attachment of declarations and other materials without leave of the Court. But neither party asked for leave to submit additional information, and they each devoted only a paragraph to this issue in their joint submission.

[6] See discussion below regarding the dispute at Dkt. No. 264.

seeks discovery that is not proportional to the needs of this case.

**D.     Dkt. No. 264: Compliance with Prior Orders, Request for Inspection**

The discovery disputes described in Dkt. No. 264 overlap substantially with the disputes described in Dkt. No. 263. Ms. Laatz identifies three issues: (1) Zazzle's non-compliance with this Court's prior discovery orders; (2) Zazzle's failure to produce responsive documents identified in Mr. Li's deposition; and (3) Zazzle's failure to make available for inspection its backup database.[7]  Dkt. No. 264 at 1. The Court address each issue separately.

**1.     Compliance with the Court's prior orders**

According to Ms. Laatz, the Court's prior orders at Dkt. Nos. 194, 218, and 230 required Zazzle to respond to certain interrogatories and to produce Zazzle's underlying data, including its databases, to Ms. Laatz. *Id.* at 2. Ms. Laatz is correct that the Court ordered Zazzle to answer specific interrogatories. But Zazzle represents that it did so and summarizes its responses in the discovery dispute submission. *Id.* at 5-6. Ms. Laatz's principal contention is that Zazzle failed to produce "the underlying data" supporting its interrogatory answers. *Id.* at 2. However, the Court did not order Zazzle to produce all of its raw data or provide access to its databases. Rather, the Court required Zazzle to investigate whether data existed that *could be queried* and ordered that the responsive information be produced:

> With respect to RFPs 34-40, Zazzle must investigate whether it has data (regardless of the form in which that data may be maintained) that can be queried to obtain the information called for by these requests. *See Kannan v. Apple Inc.*, No. 17-cv-07305-EJD (VKD), 2019 WL 4668112, at *1 (N.D. Cal. Sept. 25, 2019) ("To the extent Apple maintains a database or other repository of information that may be queried to provide a report(s) or spreadsheet(s) showing [relevant responsive information] Apple must produce that information in report or spreadsheet form."); *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-cv-0630-LHK (PSG), at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden of creating a new dataset for the instant litigation does not excuse production.") (cleaned up). If information responsive to these requests can be obtained from data maintained by Zazzle, without undue burden,

---

[7] It is not clear from the joint discovery letter whether Zazzle maintains the data in a conventional database or in some other data structure, but because both parties use the term "database," the Court uses this same term.

13

1        then Zazzle must produce it.

2 Dkt. No. 218 at 2.  The Court clarified this part of its order in a further order 11 days later:

> As the Court has already ordered, if Zazzle has data that can be queried to obtain the information called for by RFPs 34-40, and if information responsive to these RFPs 34-40 can be obtained from such data and queries of such data without undue burden, then Zazzle must produce the information that is responsive to all of these requests, and not just those responsive to RFPs 37 and 38.  It is not sufficient to provide an answer to an interrogatory.  Rather, Zazzle must produce *documents*—e.g., the output of the relevant query—in response to these requests for *documents*.  *See, e.g.*, Fed. R. Civ. P. 34(a)(1)(A).

Dkt. No. 230 at 2 (emphasis in original).  The Court did not order Zazzle to produce its database, and therefore concludes that Zazzle did not fail to comply with this aspect of the Court's prior orders.

       To the extent Ms. Laatz objects that the information Zazzle has produced omits "pending" designs, *see* Dkt. No. 264 at 2, the Court has already addressed that issue above and will not repeat the discussion here.

       To the extent Ms. Laatz complains that Zazzle has not disclosed details of its data sources or the queries it ran on those data sources, *see id.* at 3, she points to no discovery requests seeking this information, nor does she dispute that she had an opportunity to explore these subjects in Mr. Li's deposition but chose not to, s*ee id.* at 4 n.1.  As explained above, many of these concerns might have been addressed had the parties engaged in the early discussion of ESI sources, collection, and production that Rule 26 and this Court's ESI Guidelines require.

       **2.**     **Failure to produce responsive documents**

       Ms. Laatz argues that Zazzle failed to produce a "list" it compiled in August 2022 of every design that used the disputed font.  *Id.* at 3.  Zazzle responds that it saved a list of ▓▓▓▓ not a list of designs, and that these ▓▓ are essentially ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *Id.* at 6.  Zazzle says it used the ▓▓▓▓ to query this backup database to provide the total number of designs responsive to Ms. Laatz's Interrogatory No. 5.  The Court has reviewed the excerpts of Mr. Li's deposition, to which both parties cite, and finds that his testimony generally supports Zazzle's characterization of the "list."

14

1  Ms. Laatz does not explain why she requires production of an ████████, nor does she
2  point to any information suggesting that Zazzle has not performed the queries Mr. Li described
3  using this ███. However, if Zazzle has not already disclosed *the number* of ███
4  corresponding to designs that used the disputed font, it must do so immediately.

Some of the other categories of documents Ms. Laatz says are missing from Zazzle's production appear to be entirely duplicative of other disputes the Court has already addressed, including the disputes addressed above with respect to Dkt. No. 263. *See id.* at 3-4. The Court will not address them again here. However, two categories of documents require further discussion.

First, with respect to the number of users who have accessed Zazzle's design tools during the time the disputed font was available, Ms. Laatz says that "Zazzle still has produced no records or documents showing who (or at least how many account holders) accessed its design tools when the Blooming Elegant Trio was available and/or used the Blooming Elegant Trio[.]" *Id.* at 3. Ms. Laatz does not cite a particular interrogatory or document request seeking this information. However, as noted above, Zazzle represents that it designated a corporate representative to testify regarding Topic 10(d) of Ms. Laatz's Rule 30(b)(6) notice, which concerns the number of users who accessed the design tool during the time the disputed font was available. Again, if it has not already done so, the Court orders Zazzle to query its records and provide this information to Ms. Laatz.

Second, with respect to Ms. Laatz's demand for records reflecting the number of unique Zazzle member logins, the Court has reviewed Mr. Li's deposition testimony and agrees with Zazzle that there appears to be no readily accessible and accurate way to determine the number of unique Zazzle member logins for a given time period, and therefore it is not clear what records Ms. Laatz believes reveal this information. *See id.* at 6. Moreover, Ms. Laatz does not explain why the number of unique Zazzle member logins is relevant to any claim or defense.

### 3. Inspection and copying of backup database

Ms. Laatz asks for an order permitting "physical inspection and copying" of Zazzle's backup database so that her experts can review and analyze the data themselves. *Id.* at 2-3. As

1   explained above, the Court has previously ordered Zazzle to query this database to provide the
2   information Ms. Laatz has demanded in her many interrogatories and document requests, but has
3   not ordered inspection or production of the database itself.

4       Rule 34 specifically permits a party to serve a request to "inspect . . . any designated
5   documents or electronically stored information—including . . . data compilations" in a responding
6   party's possession. Fed. R. Civ. P. 34(a)(1). However, the Rule also expressly permits a
7   responding party to "produce copies of documents or of electronically stored information instead
8   of permitting inspection." Fed. R. Civ. P. 34(b)(2)(B); *see also* Fed. R. Civ. P. 34, advisory
9   committee's note to 2015 amendment (citing "common practice of producing copies of documents
10  or electronically stored information rather than simply permitting inspection").

11      Here, Zazzle objects to Ms. Laatz's request that her expert be permitted to inspect Zazzle's
12  backup database or a copy of it on the ground that Zazzle has already queried the database to
13  provide the information Ms. Laatz requested and because it would be unduly burdensome to copy
14  and produce the data to Ms. Laatz. *See* Dkt. No. 264 at 5. While the Court is not persuaded that
15  the burden Zazzle describes for *production* of the database also applies to *inspection* of it, Ms.
16  Laatz has not explained why she believes the information Zazzle has provided is incomplete or
17  incorrect (with the exception of "pending" designs),[8] and she has provided no other justification
18  for why Zazzle should be required to also allow her expert to inspect its backup database. Absent
19  this showing, inspection or copying of the backup database appears to be duplicative of the
20  discovery Ms. Laatz has already obtained.

21  **III.  CONCLUSION**
22      For the reasons explained above, and consistent with the directions in this order, the parties
23  shall comply with this order as follows:

24      1.  Ms. Laatz must supplement her responses to Zazzle's Interrogatories Nos. 20, 21, 22,
25          and 24 by **September 20, 2024.**

---

[8] The Court has elsewhere addressed Ms. Laatz complaint that Zazzle's numbers omit "pending" or unsaved drafts of designs. As there appears to be no dispute that Zazzle did not retain unsaved drafts beyond a limited period, it is not clear why Ms. Laatz believes inspection of the backup database will contain the information she seeks about these drafts.

16

2. Ms. Laatz must supplement her document production responsive to RFP 97 by **September 20, 2024.**

3. Ms. Laatz may not withhold or cause to be withheld from production otherwise responsive communications with non-parties on the ground that the "common interest" doctrine applies.  Absent other unresolved objections, those documents must be produced by **September 20, 2024**.

4. If it has not done so already, Zazzle must provide documents, an interrogatory response, or testimony regarding the number of users (or at least account holders) who accessed its design tools during the time period the disputed font was available, including the information requested in Topic 10(d) of Ms. Laatz's Rule 30(b)(6) notice, under oath, by **September 20, 2024**.

5. Zazzle must supplement its responses to Interrogatories Nos. 16 and 17, with respect to the means by which it transmits designs containing text, by **September 20, 2024**.

6. Zazzle must supplement its response to Interrogatory No. 25 by providing the available information on a quarterly or monthly basis by **September 20, 2024**.

7. If it has not done so already, Zazzle must disclose to Ms. Laatz the number of ▮ ▮ corresponding to designs that used the disputed font from the list/index Zazzle created in August 2022.

8. By **September 13, 2024**, Ms. Laatz shall submit to Judge DeMarchi's chambers a thumb drive containing <u>electronic copies</u> of the following deposition transcripts: (1) Ms. Sheu's corporate testimony; (2) Mr. Li's corporate testimony; (3) Mr. Kang's corporate testimony; and (4) Mr. Alkhatib's corporate testimony.

This order resolves the disputes at Dkt. Nos. 258, 259, 261, 263, and 264.  Once the Court has reviewed the corporate deposition testimony of Zazzle's witnesses, the Court will issue a

///

///

///

///

17

further order regarding the dispute at Dkt. No. 262.

**IT IS SO ORDERED.**

Dated: September 6, 2024

Virginia K. DeMarchi
United States Magistrate Judge