QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

ANDREW H. SCHAPIRO (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>    Defendants. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DECLARATION OF ROBERT BEAVER III IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 288)** |
| ZAZZLE INC.,<br><br>    Counter-Claimant,<br><br>    vs.<br><br>NICKY LAATZ,<br><br>    Counter-Defendant. | Trial Date:    July 14, 2025 |

Case No. 5:22-cv-04844-BLF
DECLARATION OF ROBERT BEAVER III IN OPPOSITION TO PLAINTIFF'S
MOTION RE. DISCOVERY ORDER

I, Robert Beaver III, declare as follows:

1. I am a co-founder and Chief Technology Officer of Zazzle Inc. ("Zazzle"). I am not a named defendant in, or otherwise a party to, this action. I submit this declaration in support of Defendants' Opposition to Plaintiff Nicky Laatz's ("Plaintiff") Motion for Relief from the Nondispositive Pretrial Order of the Magistrate Judge (Dkt. 288), ("Motion"). I have personal knowledge of the matters stated below, and if called as a witness to testify to them, I could and would do so.

2. In connection with my role as a co-founder and CTO of Zazzle, I was personally involved in responding to over 700 discovery requests Plaintiff served on this case.

3. As a general matter, most of Plaintiff's requests, which span over seven years, sought information that Zazzle does not regularly track, including because Zazzle has no business reason to track information such as the number of persons who merely "access" Zazzle's product creation "Design Tool," or the number or types of products or user activities based on the use of any particular font or fonts. As a result, responding to Plaintiff's requests involved significant resources and efforts by Zazzle's most senior engineers, who had to create custom programs and queries in order to respond to Plaintiff's requests. Responding to Plaintiff's discovery requests has involved significant Zazzle personnel and machine time.

4. I have reviewed the four remaining issues of Plaintiff's Motion and submit this declaration to further explain the excessively burdensome nature of Plaintiff's requests.

I. **Plaintiff's Request to Inspect Zazzle's "Reporting Database"**

5. I understand that Plaintiff requests to inspect a copy of Zazzle's backup "reporting database" (as referenced by Jason Li, Zazzle's Vice President of Engineering, during his deposition) to determine the number of designers, designs, and products that used the Blooming Elegant typefaces, including to obtain information regarding "pending designs." "Pending designs," as they are referred to at Zazzle, are unfinished drafts of designs that were never completed. Pending designs have no business value and under Zazzle's current systems are generally retained in the normal course for six months of inactivity.

6. Zazzle's responses to Plaintiff's discovery requests include, where applicable, all finished designs (including, but not limited to, public designs published for sale in Zazzle's marketplace and all public and private designs purchased). For the avoidance of doubt, Zazzle's responses do include information regarding private saved designs. Zazzle's responses do not include pending designs, as these are unfinished drafts that were never completed.

7. Providing Plaintiff with a copy of Zazzle's backup reporting database or permitting Plaintiff to inspect Zazzle's backup reporting database would require an exorbitant amount of resources that Zazzle does not currently have, would be extremely disruptive of Zazzle's operations, and would risk exposure of sensitive proprietary information and the Personal Identifying Information ("PII") of tens of millions of Zazzle users—including many located in the European Economic Area.

8. The backup reporting database which Plaintiff requests to inspect is a very large transactional database comprised of ████████████████████████████████████

9. Creating a "copy" of the database is practically impossible as it would require, at a minimum, dedicating a team of Zazzle engineers and several months to effectuate and would necessitate, among other things: (i) designing a custom technical solution with Zazzle's hardware and software partners; (ii) purchasing new hardware and licensing new software at a cost of, at minimum, hundreds of thousands of dollars; (iii) waiting for the new hardware to be custom built and delivered; and then (iv) scheduling and deploying the solution.

10. As such, there is no realistic way for Plaintiff to inspect the database other than by viewing it in its "live" environment at Zazzle's premises. There is no way for Plaintiff to access the reporting database separate from Zazzle's other systems, as the functionality of this database inherently and symbiotically relies on Zazzle's system architecture.

11. Allowing Plaintiff access to inspect Zazzle's database not only would present significant disruptions to Zazzle's business operations for the duration of the inspection, but would also create a significant risk of damage to the integrity and security of the systems—including the potential to inadvertently and irreparably break or render inoperable the functionality of Zazzle's

websites, services, and business operations.  To be clear, with the exception of small handful of senior engineers, even Zazzle's own personnel do not have access to, or directly work in, Zazzle's reporting database, because of the significant risks associated.

12. Further, the database contains the PII of tens of millions of Zazzle users, including EEA residents, which, depending on the user, may include names, social security numbers, credit card information, and addresses.  There is also PII embedded specifically in the design data Plaintiff purportedly seeks—as users frequently create and order event invitations and other highly personal products that often include names, addresses, baby photos, and other personal information.  Zazzle does not currently have a method of redacting or removing such PII from the database or design data, or of excluding the data of EEA residents, and developing such processes would be prohibitively resource intensive, if it is possible at all.

13. In addition, Zazzle's systems are subject to strict security standards, including Payment Card Industry Data Security Standard ("PCI DSS") Compliance Level 1, given that Zazzle transacts with and maintains tens of millions of users' credit cards in its systems.  Providing access to Zazzle's systems or exporting any data from Zazzle's systems would violate PCI DSS.  The importance of PCI DSS compliance to Zazzle's business cannot be understated: Zazzle must protect its users' sensitive information and PCI DSS compliance is a requirement for Zazzle's banking partners, financial auditors, and business partners.  As such, prior to providing any type of access, Zazzle would be required to work with its security consultants and PCI auditors to determine if and how this would even be possible.  The consultation process alone would likely take additional months of planning, documentation and oversight from Zazzle's top management.

14. Zazzle's systems and databases are propriety, sui generis, and highly relational—navigable only by the small, core team of Zazzle's senior engineers who have deep knowledge of their organization and contents and decades of experience working within it.  Even with access to Zazzle's database, Plaintiff or her personnel could not simply query for the information she purportedly seeks.  They will be unable to interpret the tens of billions of rows of data created and maintained by millions of lines of proprietary source code developed over decades; the exercise would be futile.

**II.   Plaintiff's Request Regarding RFP Nos. 80-84**

15.   I understand that Plaintiff requests that Zazzle produce additional documents and information in response to RFP Nos. 80-84, which seek information relating to cookie or token data, server log files and user session information in order to determine the number of users who accessed the Design Tool and/or used the Blooming Elegant typefaces in a product design.

16.   Zazzle does not maintain comprehensive cookie or token data, server log files, or user session information that provides information regarding the number of users who accessed the Design Tool and/or used the Blooming Elegant typefaces.

**III.   Plaintiff's Request Regarding RFP No. 85**

17.   I understand that Plaintiff requests Zazzle to regenerate over one million historical webpages for any product on Zazzle's website that incorporated the Blooming Elegant Trio in response to RFP No. 85.

18.   Attempting to provide Plaintiff with this information will be enormously burdensome.

19.   First, these webpages do not exist in any static historical form—this is a technical fact, unrelated to the removal of Blooming Elegant—and Zazzle cannot simply produce images of them.  Instead, each one of the [redacted] webpages would have to be re-generated seriatim. Specifically, to search for, collect, review, and produce documents in response to RFP 85, Zazzle would need to (i) reinstall the Blooming Elegant software onto its active servers; (ii) load [redacted] designs; (iii) generate product pages associated each design; (iv) create images of each of the [redacted] designs; and then (v) Zazzle or Zazzle's counsel would need to review each image and redact for PII.

20.   Each of these steps would require significant server and human technical resources, and would likely takes months to complete.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on this 3rd day of October, 2024 in San Francisco, California.

By  */s/ Robert Beaver III*
     Robert Beaver III

**ATTESTATION**

I, Andrew H. Schapiro, am the ECF user whose ID and password are being used to file the above Declaration. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Robert Beaver III has concurred in the aforementioned filing.

By /s/ *Andrew H. Schapiro*
Andrew H. Schapiro