UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ZAZZLE, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-04844-BLF (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE ZAZZLE'S PREPARATION FOR RULE 30(B)(6) DEPOSITION**<br><br>Re: Dkt. No. 262 |

Further to the Court's September 6, 2024 order regarding the parties' discovery dispute regarding Zazzle's testimony responsive Ms. Laatz's Rule 30(b)(6) deposition (*see* Dkt. No. 288 at 8), Ms. Laatz provided copies of the transcripts of the corporate deposition testimony of Ms. Sheu, Mr. Li, Mr. Kang, and Mr. Alkhatib.[1] The Court has reviewed these transcripts and now resolves the parties' dispute as follows:

**1.  Topic 1**

Topic 1 of Ms. Laatz's Rule 30(b)(6) deposition notice requests testimony regarding:

> The decision to purchase the LICENSE, including who was involved in the decision, when the decision was made, what conversations occurred regarding the decision, and the reasons the decision was made.

Dkt. No. 262-1 at 8. The notice defines "LICENSE" to mean: "[T]he Standard License for the BLOOMING ELEGANT SOFTWARE purchased by ALKHATIB, at ZAZZLE's direction or otherwise, on the Creative Market website on or about May 4, 2017." *Id.* at 7. Zazzle designated

---

[1] Matters publicly disclosed in this order reflect information that has already been disclosed in the parties' public filings, or that the Court concludes do not meet the applicable standard for sealing.

1  Ms. Sheu and Mr. Alkhatib to testify on its behalf regarding this topic.  Mr. Alkhatib's corporate
2  testimony was "limited to the May 4, 2017, license purchase transaction itself and the
3  circumstances and communications on and around that date involving that transaction only."
4  (Alkhatib dep., 21:8-12.)  Zazzle designated Ms. Sheu to provide testimony regarding the
5  remainder of topic 1.

6  Ms. Laatz argues that Ms. Sheu could not answer questions regarding "who, if anyone, at
7  Zazzle reviewed the [Creative Market] License FAQ in the days prior to the [License] purchase,"
8  which she says is a critical issue in this case.  Dkt. No. 262 at 2.  Ms. Laatz is correct that Ms.
9  Sheu testified that she did not know, and had not investigated, whether anyone at Zazzle had
10 reviewed the Creative Market License FAQs or the "license options" they describe; she testified
11 only that she had not personally reviewed the FAQs.  (Sheu 30(b)(6) dep., 37:24-38:25; Ex. 89.)
12 However, it is not clear that this subject matter falls within the scope of topic 1, which asks for
13 corporate testimony about Zazzle's decision to purchase the Blooming Elegant Software License,
14 including *who* was involved in that decision, *when* the decision was made, *what conversations*
15 occurred regarding the decision, and *the reasons* for the decision.  Topic 1 does not specifically
16 ask for Zazzle's testimony about whether anyone viewed the FAQs or license options.

17 However, Ms. Laatz also argues that Ms. Sheu was not prepared to testify about matters
18 squarely within the scope of topic 1.  The Court agrees.

19 Rule 30(b)(6) of the Federal Rules of Civil Procedure requires the party seeking the
20 deposition to describe "with reasonable particularity the matters for examination."  Fed. R. Civ. P.
21 30(b)(6).  The designating party must make a good faith effort to prepare its designees so that they
22 can answer questions fully, completely, and without evasion.  *In re JDS Uniphase Corp. Sec.*
23 *Litig.*, Case No. 02-cv-1486 CW (EDL), 2007 WL 219857, at *1 (N.D. Cal. Jan. 29, 2007).  If the
24 designee cannot testify fully and completely on behalf of the entity as to a particular topic based
25 on his or her own personal knowledge, the entity has a duty to prepare the designee using other
26 sources of information reasonably available to it.  *Id.* ("The deponent must prepare the designee to
27 the extent matters are *reasonably available*, whether from documents, past employees, or other
28 sources.").

2

Ms. Sheu testified only about what she *personally* did or did not do—i.e. she viewed only the Blooming Elegant "marketing page," did not click on the link that followed summary text describing the "Standard License" available on the Creative Market website, and had never seen the License referred to in topic 1. (Sheu 30(b)(6) dep., 37:13-22; 45:2-46:18; 47:19-48:15; 148:18-149:21; Exs. 88, 93.) She was not prepared to testify about whether anyone else at Zazzle had clicked on the link that followed summary text describing the "Standard License" available on the Creative Market website, and she made no inquiries on this point in preparation for her deposition, including of the people to whom a link to the "Standard License" had been sent in an email. (Sheu 30(b)(6) dep., 49:24-50:9; 77:20-79:20.)

When asked a direct question, "Who at Zazzle made the decision to purchase the license to the Blooming Elegant Trio and Blooming Elegant software?," Ms. Sheu did not provide a definitive or fully informed answer, and essentially avoided giving a direct and unqualified answer to this question and follow-up questions on this point. (Sheu 30(b)(6) dep., 92:12-97:15.) Similarly, Ms. Sheu was not prepared to testify about the reasons Zazzle decided to purchase the License, beyond her own personal knowledge. (Sheu 30(b)(6) dep., 62:14-63:9.) While Ms. Sheu identified Zazzle employees were involved in the decision to put the disputed font in Zazzle's design tool, she apparently did not inquire about the decision to purchase the License specifically. For example, when asked a direct question, "Why did Zazzle want to purchase a License to the Blooming Elegant Trio of fonts?," Ms. Sheu gave the following answers:

> A: So as somebody who was working with designers, one of the things that I did was take designer-feedback. One of the feedback was the designers wanted new fonts. Our fonts were old at the time. Most of our fonts, we hadn't added any new ones since, like, eight-plus years prior to this. So we were looking to both refresh our font selection, as well as create new categories of fonts. Mostly as design options for our designers.
>
> Q  And so is it correct, then, that Blooming Elegant was one of the fonts that Zazzle wanted to make available to its designers?
>
> A  It was one that we were looking at that we were interested in adding. And again, I don't know the details of which, like, why Monica picked Elegant or any of that. Just that we wanted to

>change our font selection.  And again, I don't know if it was just one font or all three or how they made the decision as to why they chose what they chose.  My involvement was more around -- hey, designers have said they want fonts.  Let's go do this for them and get them what they want.

(Sheu 30(b)(6) dep., 63:21-64:22.)

Although Ms. Sheu acknowledged that Zazzle had collected information regarding the Blooming Elegant font in a folder in advance of the License purchase, she did not investigate what information Zazzle had collected.  (Sheu 30(b)(6) dep., 84:4-86:10.)  There is no indication in the transcript that defense counsel collected information responsive to this topic and provided it to Ms. Sheu to enable her to testify on behalf of Zazzle; rather, it appears she testified solely from her own personal knowledge.

Remarkably, Ms. Sheu had never even seen the License that is the subject of topic 1 before her deposition, even in preparation for her testimony on behalf of Zazzle.  (Sheu 30(b)(6) dep., 148:18-149:21; Ex. 93.).  She did not know whether anyone else at Zazzle had seen the License and had made no inquiries on that point in preparation for her deposition.  (Sheu 30(b)(6) dep., 149:22-150:11.)

As noted above, Mr. Alkhatib's designation on topic 1 was very limited, and his testimony did not address any of the gaps in Ms. Sheu's testimony.

The Court concludes that Zazzle's corporate representatives were not adequately prepared and did not provide testimony fully responsive to topic 1.  Moreover, having reviewed the entire transcript of Ms. Sheu's deposition, the Court is left with the distinct impression that many of defense counsel's objections were unnecessary and improper, including speaking objections and unwarranted requests to "read back" plaintiff's counsel's questions.  This conduct appears to have obstructed the efficient taking of the deposition.  Thus, the Court orders as follows:

1. Zazzle must produce a corporate representative who is fully prepared to testify about all aspects of topic 1 for a further deposition on that topic.
2. Ms. Laatz's questioning shall be limited to the matters described in topic 1 and reasonable follow-up questions regarding the factual bases for the answers provided.
3. The deposition will be limited to 3 hours of questioning by Ms. Laatz.

4

4. For purposes of this deposition, any objections to the form of the question shall be limited to a statement that defense counsel "objects to the form of the question," or words to that effect.

### 2. Topics 6(b), 7(b), 8(b), and 9

Topics 6(b), 7(b), and 8(b) of Ms. Laatz's Rule 30(b)(6) deposition notice request testimony regarding the "[h]ow the BLOOMING ELEGANT SOFTWARE was used," including the "technical processes" Zazzle's website, mobile app, and Create-A-Product API used to "create images of text" in the Blooming Elegant font for use in designs on Zazzle's website, mobile app, or other websites. Dkt. No. 262-1 at 8-9. Topic 9 asks for testimony regarding how Zazzle "generated, stored, transferred, and used scalable vector graphics ('SVGs')" to create images of text in the Blooming Elegant font for use in designs on Zazzle's website and mobile app. *Id.* at 10. Zazzle designated James Li, its Vice President of Engineering, to testify on its behalf regarding these topics. *See* Dkt. No. 262 at 5.

Ms. Laatz argues that Mr. Li was not adequately prepared to testify regarding these topics. Specifically, Ms. Laatz complains that while Mr. Li testified Zazzle used a software program to render text in a given typeface, he did not know how that program operates. *Id.* at 2.[2] Zazzle disputes Ms. Laatz's characterization of Mr. Li's testimony regarding the subject matter of these topics. *Id.* at 5.

Having reviewed the entirety of Mr. Li's deposition transcript, the Court concludes that Mr. Li was adequately prepared, and did testify, regarding topics 6(b), 7(b), 8(b), and 9.

Mr. Li described at length and in detail what happens when a user selects a font or typeface in the Zazzle design tool and uses that font or typeface in a design. (Li 30(b)(6) dep., 62:2-66:22; 75:21-88:14; 123:4-133:1; 153:24-157:5.) He carefully explained differences based on the time period in question and the "front end" at issue (e.g. website v. mobile app). (Li 30(b)(6) dep., 134:2-142:3; 144:4-146:9.)

---

[2] Ms. Laatz also notes purported contradictions between Mr. Li's testimony and other sources of information, but Ms. Laatz appears to credit Mr. Li's testimony and does not cite it as a basis to contend that he was unprepared. *See* Dkt. No. 262 at 2-3.

Mr. Li also explained in detail how Zazzle's system generates and displays text in a particular font or typeface. (Li 30(b)(6) dep., 130:17-132:16; 138:10-139:25; 199:19-203:3; 211:22-214:21; 216:20-219:3.) He explained in detail how Zazzle stores finished designs and handles products using those designs. (Li 30(b)(6) dep., 227:22-232:12; 233:16-235:16; 240:2-241:7.) And, with respect to scalable vector graphics, Mr. Li testified in detail that Zazzle does not use the SVG file format and explained what Zazzle uses instead. (Li 30(b)(6) dep., 287:5-288:24.)

The Court agrees with Zazzle that Mr. Li had no obligation to testify about the internal operations of the Direct Write library/API, which is provided by and proprietary to Microsoft. Dkt. No. 262 at 5. Mr. Li explained why neither he nor anyone else at Zazzle has access to this information, and Ms. Laatz's complaints on that point are not well-taken. (Li 30(b)(6) dep., 146:25-151:17; 208:21-211:9.)

The Court concludes that no further corporate deposition testimony on these topics is warranted.

### 3. Topic 10(a)

Topic 10(a) of Ms. Laatz's Rule 30(b)(6) deposition notice requests that Zazzle provide testimony regarding "the number of individuals who . . . [c]reated designs that used the BLOOMING ELEGANT TRIO." Dkt. No. 262-1 at 10. Zazzle designated Mr. Li testify regarding this topic.

The parties do not dispute that Mr. Li was prepared to and did testify regarding the number of individuals who created finished designs, including how that number was calculated. (Li 30(b)(6) dep., 263:24-266:13; *see also id.* 273:14-20.) However, Ms. Laatz takes the position that topic 10(a) encompassed draft, auto-saved, and/or pending designs, and that Mr. Li should have been prepared to testify regarding the number of individual who created such designs. Dkt. No. 262 at 3. Zazzle contends that draft or pending designs are not "created" and are therefore not within the scope of topic 10(a). *Id.* at 5.

It is not clear to the Court that topic 10(a) encompasses draft, auto-saved, or pending, designs, and it appears that the parties did not confer regarding the meaning of "create" in advance

6

of the deposition on topic 10(a). Mr. Li testified at length regarding how such designs were handled, but he did not testify regarding the number of individuals who created draft, auto-saved, or pending designs. As the party noticing the deposition, Ms. Laatz Rule 30(b)(6) was required to describe the matters for examination with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). On the record presented, the Court concludes that she has not done so with respect to examination about the number of individuals who prepared "pending designs" using the disputed font, and that no further deposition on this point is warranted at this time.

The Court understands that questions concerning discovery of "pending designs" have been presented to the presiding judge for decision. *See* Dkt. Nos. 300, 310. The Court's decision here regarding the parties' dispute concerning topic 10(a) is without prejudice Ms. Laatz ability to address the issue further after the presiding judge's decision.

### 4.   Topics 12-15

Topics 12-15 of Ms. Laatz's Rule 30(b)(6) deposition notice requests testimony regarding the amount of revenue and profits that Zazzle has received from sales of products that "depict and/or use the BLOOMING ELEGANT TRIO," as well as "what documentation" Zazzle has regarding such revenue and profits. Dkt. No. 262-1 at 10-11. Zazzle designated Jason Kang, its Chief Financial Officer, testify on its behalf regarding these topics. Dkt. No. 262 at 6.

Ms. Laatz argues that Mr. Kang was unprepared to answer questions regarding how the financial documents Zazzle provided were prepared, who compiled the data reflected in the documents, or what specific data sources had been queried to compile the documents. *Id.* at 3. In addition, Ms. Laatz argues that Mr. Kang was unable to state whether "sales of product from Zazzle business segments that had their own design tools were included in the data or Zazzle's interrogatory responses on the subject." *Id.* at 3-4. Zazzle responds that Mr. Kang was prepared to testify to matters within the scope of these topics, contending that Ms. Laatz's complaints focus on "a handful of hyper-specific questions about revenue from certain subsets of products." *Id.* at 6.

Having reviewed the entirety of Mr. Kang's deposition transcript, the Court concludes that Mr. Kang was adequately prepared, and did testify, regarding topics 12-15.

7

1   Mr. Kang testified regarding the data Zazzle maintains regarding revenue and profits and
2   what documentation it produced from that data. (Kang 30(b)(6) dep., 36:12-37:17; 40:13-41:3;
3   42:6-43:5; 59:16-25; 63:12-64:22.) In addition, Mr. Kang explained that while Zazzle does not
4   track revenue or profits for products according to which fonts are use in the products in the
5   ordinary course of its business, Zazzle had queried its financial data and prepared a set of
6   spreadsheets specifically to address Ms. Laatz's requests for information. (Kang 30(b)(6) dep.,
7   77:19-79:4.) Mr. Kang testified in detail and at length regarding those spreadsheets, including
8   answering very specific questions about the revenue, costs and profits information shown in the
9   spreadsheets. (*E.g.,* Kang 30(b)(6) dep., 79:11-94:13; 97:6-22; 101:2-102:4; 107:2-9; 108:6-
10  110:1; 111:20-112:25; 131:24-132:20; 137:3-5; 142:2-15; 155:14-159:5; 169:13-170:4; 191:2-
11  192:20; 193:14-194:19; Exs. 168, 169.) Indeed, he was questioned by plaintiff's counsel beyond
12  the scope of the generally-described topics in Ms. Laatz's deposition notice.
13  While Mr. Kang was not able to explain what queries the Zazzle engineering team ran to
14  generate the spreadsheets reflecting sales information specific to the products that use the disputed
15  font, topics 12-15 do not seek that kind of information or that level of detail. In any event, Mr.
16  Kang *was* able to answer Ms. Laatz's questions about the contents of the documents about which
17  he was questioned. (*E.g.,* Kang 30(b)(6) dep., 199:24-200:5; 203:18-21; 204:21-206:25.)
18  The Court concludes that no further corporate deposition testimony on these topics is
19  warranted.
20                                        ***
21  As explained above, the Court orders Zazzle to produce a corporate representative who is
22  fully prepared to testify about all aspects of topic 1 for a further deposition on that topic, subject to
23  the limitations stated in this order. The parties shall promptly confer regarding a mutually
24  agreeable time for this further deposition, and once they have agreed on a date, they must
25  additionally obtain an extension of the fact discovery deadline for this purpose by application to
26  ///
27  ///
28  ///

8

the presiding judge.

**IT IS SO ORDERED.**

Dated: October 4, 2024

Virginia K. DeMarchi
United States Magistrate Judge