QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

ANDREW SCHAPIRO (admitted pro hac vice)
*andrewschapiro@quinnemanuel.com*
MIRANDA M. R. HULKA (admitted pro hac vice)
*mirandahulka@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

WILLIAM F. PATRY (admitted pro hac vice)
*williampatry@quinnemanuel.com*
KATY AKOPJAN (admitted pro hac vice)
*katyakopjan@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants.<br><br>ZAZZLE INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>NICKY LAATZ,<br><br>Counter-Defendant. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF AMICUS CURIAE MONOTYPE IMAGING INC.**<br><br>Trial Date: July 14, 2025 |

Defendants Zazzle Inc. and Mohamed Alkhatib ("Defendants") submit the following Opposition to the Motion for Leave to File Brief on Behalf of Amicus Curiae Monotype Imaging Inc. ("Monotype") (Dkt. 359).

**PRELIMINARY STATEMENT**

On the eve of the hearing on Defendants' Motion for Summary Judgment, non-party Monotype (the parent and owner of MyFonts Inc., a subpoenaed non-party in this matter) moved for leave to file an amicus brief ("Request") addressing meritless arguments that Plaintiff has already made and the Court has already rejected. Monotype's Request is untimely and substantively unhelpful. The Court should deny Monotype leave to file the brief.

***The Brief is Untimely.*** Monotype filed its Request less than 24 hours before the hearing on Defendants' Motion for Summary Judgment. This was two months after Defendants filed their Motion and more than ***two years*** after the Court scheduled the hearing (Dkts. 66, 71). Monotype submitted the Request without any prior notice to Defendants or the Court. Monotype's delay in filing its Request deprived Defendants of any meaningful opportunity to respond before the hearing. The Court should reject the Request for this reason alone.

***The Brief is Unhelpful.*** The Court should also reject Monotype's Request because it is substantively unhelpful to the Court. District courts may consider amicus briefs if they present legal arguments or perspectives different from those the parties have offered, or if a party is not ably represented. These factors are not present here. Plaintiff is represented by a team of lawyers and experts who have litigated every aspect of this case to its limit. Plaintiff also has two experts, Mr. Sandler and Mr. Phinney, who already purport to be expressing the viewpoint of the "font industry." Substantively, Monotype merely reiterates Plaintiff's arguments that the Copyright Office should have granted Plaintiff registrations in "computer programs." As the Court recognized at the recent hearing, these arguments are irrelevant because Plaintiff applied for, but did not receive, registrations in computer programs. Plaintiff's registrations are, instead, for "font data."

Given the timing and overall unhelpfulness of Monotype's proposed amicus brief, the Court should deny Monotype leave to file it. Should the Court allow the filing, however, Defendants respectfully request an opportunity to respond.

# ARGUMENT

## I. THE COURT SHOULD REJECT THE PROPOSED AMICUS BRIEF BECAUSE IT IS UNTIMELY, TO DEFENDANTS' PREJUDICE

### A. Legal Standards For Timeliness Of Amicus Briefs

While there is no Federal Rule of Civil Procedure governing amicus briefs at the district court level—and neither the Supreme Court nor the Ninth Circuit has enumerated a specific standard—district courts generally look to the Federal Rules of Appellate Procedure in evaluating requests for leave to file them. *See, e.g.*, *United States v. Bd. of Cty. Comm'rs of the Cty. of Otero*, 184 F. Supp. 3d 1097, 1115 (D. N.M. 2015). In deciding issues of timeliness specifically, district courts look to Fed. R. App. P. 29(a)(6), which requires a putative amicus to file within seven days of the filing of the applicable party brief. Courts also consider the length of time the putative amicus knew of its interest in the case, and prejudice to the parties.

For example, in *Friends of Animals v. United States Fish & Wildlife Serv.*, the District Court denied multiple government agencies leave to file an amicus brief, despite their supposed "strong interest" in the case, because amici knew of the litigation for three years, but did not seek leave to intervene as amici until the day Plaintiff filed their reply brief, and thus "did not allow Plaintiff an opportunity to respond to the information raised in the proposed amicus brief." No. 4:18-CV-00053-DN-PK, 2021 WL 4440347, at *2 (D. Utah Sept. 28, 2021). The Court further recognized that granting leave to those amici "would necessitate granting leave for Plaintiff to file a sur-reply," which "would further extend the case's briefing schedule and delay the disposition of the case to the prejudice of the parties." *Id*; *see also Buckeye Tree Lodge & Sequoia Vill. Inn, LLC v. Expedia, Inc.*, No. 16-CV-04721-VC, 2019 WL 1170489, at *6 (N.D. Cal. Mar. 13, 2019) (denying leave to file amicus briefs because "they were filed too late for the defendants to have a meaningful opportunity to respond").

### B. Monotype's Proposed Amicus Brief Is Untimely

Plaintiff filed the brief that Monotype seeks to support—her Opposition to Defendants' Motion for Summary Judgment—on December 19, 2024. And Defendants filed the motion with which Monotype purports to take issue on November 21, 2024. If Fed. R. App. P. 29 applied,

Monotype's amicus brief would have been due on December 26, 2024. Although Monotype asserts it did not learn of the motion or hearing until the end of January 2025, this is implausible. It is undisputed that Monotype has known about this case for at least more than a year, because Jan Kaestner (Monotype's General Counsel and the declarant supporting the present Request) agreed to accept service of Zazzle's subpoena served on its affiliate, MyFonts, in January 2024. (Declaration of Thomas Nolan ("Nolan Decl."), filed concurrently, at Ex. A.)  At that time, Zazzle had already filed its counterclaim for invalidity of Plaintiff's copyrights (Dkt. 144), and the parties had fully briefed Plaintiff's motion to dismiss the counterclaim (Dkts. 148, 154, 156).

Moreover, if Zazzle's claims truly presented the existential threat to the font industry that Monotype now argues they do, Monotype would have promptly sought to intervene. Yet Monotype did not seek leave to intervene until after Defendants had filed their reply brief supporting the Motion for Summary Judgment, and then still waited to file its Request until the eve of the hearing.

The belated filing of the Request is unduly prejudicial to Defendants. By filing the day before the hearing, Monotype ensured that no one would be able to respond to its arguments—not any other interested amici with divergent views or even Defendants themselves. *Friends of Animals* confirms that the prejudice resulting from such circumstance weighs against allowing leave to intervene as amicus. 2021 WL 4440347, at *2 ("By filing their Motion on the deadline for Plaintiff's reply brief, the State Amici did not allow Plaintiff an opportunity to respond to the information raised in the proposed amicus brief. Granting leave to the State Amici to now participate in the case would necessitate granting leave for Plaintiff to file a sur-reply."). The Court should therefore deny Monotype's Request because it is untimely.

## II. THE COULD SHOULD REJECT THE PROPOSED AMICUS BRIEF BECAUSE IT IS NOT HELPFUL TO THE COURT AND UNDULY ONE-SIDED

### A. Legal Standards For Content Of Amicus Briefs

District courts in the Ninth Circuit have granted leave to file an amicus brief "when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case)," or "when the amicus has unique information or perspective that can help the court beyond

-3-     Case No. 5:22-cv-04844-BLF-VKD

the help that the lawyers for the parties are able to provide." *Barnes-Wallace v. Boy Scouts of Am.*, 2004 WL 7334945, at *1 (S.D. Cal. Mar. 23, 2004) (citing *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997)) (cleaned up); *accord NetChoice, LLC v. Bonta*, No. 22-CV-08861-BLF, 2023 WL 6131619, at *1 (N.D. Cal. Sept. 18, 2023) (Freeman, J.) ("The 'classic role' of amici curiae encompasses 'assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration.'") (quoting *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982)).

Conversely, district courts have denied leave to proposed amici when the parties to the case already adequately address their interests and arguments—and particularly when the amici offer factual argument in support of one side only. *See, e.g.*, *Wildearth Guardians v. Bail*, No. 2:20-CV-440-RMP, 2021 WL 2194896, at *1 (E.D. Wash. Apr. 6, 2021) (collecting authorities); *Freedom From Religion Found., Inc. v. Mack*, No. CV H-17-881, 2018 WL 6981152, at *1 n.1 (S.D. Tex. Jan. 19, 2018) (denying State of Texas leave to file amicus brief "because it is largely duplicative of arguments made in other briefs, and is therefore not particularly useful, it argues facts, it strongly favors one side over the other, and, as well, the County has representation by able counsel"); *Club v. Fed. Emergency Mgmt. Agency*, No. CIV.A. H-07-0608, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007) (denying motion for leave to file amicus curiae brief, finding *inter alia* that at the district court level, "[a]n amicus who argues facts should rarely be welcomed").

### B.     Monotype's Proposed Amicus Brief Is Unhelpful And Improper

Monotype's proposed amicus brief fails to meet these standards for admissibility. As a threshold matter, the supposed views of the "font industry" that Monotype (a for-profit company) purports to represent are not relevant to the legal questions in this case—including whether, and under what circumstances, "font data" is eligible for copyright registration, and whether Plaintiff's own registrations in "font data" are valid. By nevertheless presenting its arguments, and trying to influence the Court's ruling on legal questions and facts specific to this case, Monotype is effectively lobbying for the "font industry." And while Monotype claims to be providing a "broader perspective on the issues raised" than the parties have done themselves (Dtk. 359), it actually merely echoes Plaintiff's arguments—such as, for example, by citing the *Adobe* case that the Court has already

rejected many times over, and the comparably inapt "1992 Regulation." Monotype similarly parrots the points that Mr. Phinney and Mr. Sandler have proffered in their declarations—both of which, like Monotype's proposed brief, consist of many pages of inapt, and incorrect, legal and factual argument on the purported viewpoints of the "font industry." (Dkt. 342-53; Dkt. 342-55.) And Monotype does all of this explicitly in support of a ruling for Plaintiff. That is not a proper amicus perspective. *See, e.g.*, *Mack*, 2018 WL 6981152, at *1 n.1 (rejecting amicus brief when, *inter alia*, "it argues facts" and "strongly favors one side over the other"); *accord Club*, 2007 WL 3472851, at *1. At bottom, Monotype's proposed brief amounts to (another) unauthorized sur-reply for Plaintiff in further opposition to Defendants' Motion for Summary Judgment.

Moreover, Monotype's speculation about potential disastrous consequences to the font industry from the ruling it fears the Court will make are unsupported and wildly overstated. As an initial matter, Monotype improperly offers this purported "parade of horribles" not as a basis to demonstrate its interest in this case, but rather to pressure the Court to rule in Plaintiff's favor. Monotype's heavy-handed tactics are inappropriate for an amicus brief, and also irrelevant—as the supposed interest of the font industry has no bearing on the correctness of the arguments Defendants have raised regarding the invalidity of Plaintiff's asserted copyright registrations. The Court should reject Monotype's pressure campaign out of hand.

In any event, Monotype's arguments that a ruling in Defendants' favor could cripple the font industry are unsupported, sensationalized, and meritless. In particular, contrary to Monotype's suggestions, registering font-data files as "font data" rather than "computer programs" would not "wreak havoc" on the font industry. In fact, Defendants have established—and Monotype does not dispute—that the Copyright Office has maintained a consistent practice *for years*—since long before this case—of registering font-data files as "font data" (or the like) rather than as "computer programs," and granting registrations in such font-data files to applicants who represent (on the assumption that they are doing so accurately) that they hand-coded the entirety of the files rather than used a computer program (like FontLab) to generate them. (*See* Nolan MSJ Reply Decl. (Dkt. 347-1), at Exs. UU-XX.) Whether these other applications provided true and accurate representations about their "hand coding" is a distinct issue not before this Court, and not one that

this amicus brief either addresses, or could resolve. But regardless, the Copyright Office's practice of registering font data as "font data," rather than as "computer programs," and requiring applicants to represent that they hand-coded the entirety of those files rather than used a font-generating computer program to create them (as Plaintiff did here), has not led to the shuttering of academic programs at prestigious universities, and by all accounts, the font industry remains viable and strong.

Furthermore, a finding that Plaintiff's asserted Blooming Elegant copyright registrations in "font data" are invalid because she did not, in fact, hand code the files but instead used a computer program to generate them, would not impact any future applicant's ability to properly register font files provided that they could *truthfully* represent that they, in fact, met the requirements for that registration. Likewise, nothing about a ruling that Plaintiff's specific asserted registrations are invalid would render any existing font-data registrations invalid, or even vulnerable to attack, provided that those other registrants (unlike Plaintiff) provided true and accurate information to the Copyright Office about their hand-coding. Nor would anything about the Court's potential ruling in Defendants' favor prevent applicants who actually wrote original source code for a computer program from properly registering their works at "computer programs," provided they meet the requirements for the registration of such works.

Further dispelling any remaining doubt, Plaintiff's own experts recognize that the market for font licensing would *not* simply "disappear" if the Court invalidates Plaintiff's copyright registrations (or indeed, even if this Court's ruling on that narrow issue could somehow result in the widespread invalidation of font copyrights). In fact, Mr. Sandler and Mr. Phinney confirmed the continuing viability of font licensing regardless of the outcome in this case, and Mr. Phinney even expressed hope that a resolution in this case *for either side* would bring greater certainty about the scope of copyright protection for font data. *See* Nolan Decl., Ex. B (Sandler Dep. Tr. at 95:7-96:8) (stating that even absent copyright protection, "fonts will continue to be resold at the retail marketplace by licensees who agree to the terms and conditions of the sale of the font by the licensor."); *id*. Ex. C (Phinney Dep. Tr. at 327:23-329:22) (stating that "[r]egardless of the direction, I am hopeful for decisions or a decision that would be helpful to clarify the status of things").

### C. Monotype's Arguments Regarding Registration Of Computer Programs Are Irrelevant and Unsupported

Finally, Monotype's argument that this Court should simply treat Plaintiff's font-data registrations as "computer program" registrations is irrelevant and wrong. The parties discussed this issue at length at the hearing on Defendants' Motion for Summary Judgment, with the Court reminding Plaintiff that there is no basis on this record to recast Plaintiff's registrations as ones for computer programs—i.e., as instructions to execute functions that are written in "source code" in a computer programming language. The Copyright Office refused registration on that basis, and while Plaintiff could have "appealed" that decision—through two levels of agency reconsideration, and, if still denied, by filing a lawsuit based on the rejected application (17 U.S.C. § 411(a))—she did not do so. Instead, she accepted the alternative "font data" registrations, and brought suit based on those. The result is that any putative, hypothetical, counterfactual "registration" in a "computer program" is not before the Court, and Monotype's arguments about registering computer programs, just like Plaintiff's, are irrelevant.

It is telling that none of Plaintiff, her five experts, or now a would-be amicus is defending the registrations Plaintiff actually holds—in "font data," encompassing several hundred pages of character strings that FontLab generated automatically based on Plaintiff's (uncopyrightable) drawings of glyphs. Plaintiff and her supporters' tireless efforts to avoid having to defend Plaintiff's "font-data" registrations on the grounds that Plaintiff actually did "hand code" the entirety of the files, rather than use a third-party computer program to generate them, and their pleas to have this Court re-designate them as "computer-program" registrations, provide strong evidence that Plaintiff cannot meet the standards for "font-data" registrations. If anything, then, Monotype's arguments provide all the more reason for this Court to grant Defendants' Motion for Summary Judgment based on the invalidity of Plaintiff's asserted copyright registrations.

### CONCLUSION

The Court should deny Monotype's Request for leave to file its proposed amicus brief. Should the Court allow the filing, however, Defendants respectfully request an opportunity to respond.

DATED: March 12, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Andrew H. Schapiro*
    Andrew H. Schapiro

*Attorneys for Defendants
Zazzle Inc. and Mohamed Alkhatib*