Rachel M. Walsh (SBN 250568)
*rwalsh@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

*Attorney for Monotype Imaging Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NICKY LAATZ, et al.,<br><br>     Plaintiff,<br><br>     v.<br><br>ZAZZLE, INC., et al.,<br><br>     Defendant. | Case No. 5:22-CV-04844-BLF<br><br>**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF AMICUS CURIAE MONOTYPE IMAGING INC.**<br><br>Judge:     Hon. Beth Labson Freeman |

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF
AMICUS CURIAE MONOTYPE IMAGING INC.
CASE NO. 5:22-CV-04844-BLF

In considering Defendants Zazzle Inc. ("Zazzle") and Mohamed Alkhatib's ("Defendants") Motion for Summary Judgment, this Court confronts an issue of critical importance for the font and typeface industry, as well as for a wide variety of other related software products: Does the use of a computer design program to create font software preclude the creation of a copyright because the author did not personally type the source code of that font software. Given the potential significance of this Court's ruling, Monotype Imaging Inc. ("Monotype") seeks to fulfill the well-known role of *amici curiae* to bring to the Court's attention relevant facts and authority bearing on this issue. In response, Defendants urge this Court to deny Monotype's motion for leave to file its proposed *amicus* brief and essentially forego consideration of the many pertinent facts and arguments Monotype has submitted to help guide the Court's evaluation of the law. Defendants' position is counterproductive and lacks basis.

As a first point, and contrary to Defendants' suggestion otherwise, Monotype's submitted motion and accompanying briefing – which were filed before the hearing on Defendant's summary judgement motion – are timely. Moreover, there is no question that Monotype has a compelling interest in this case. As one of the largest providers of font and typeface software in the world, the outcome of the Court's decision could broadly affect the scope of protection for Monotype's portfolio of products and services. And finally, courts liberally permit an *amicus curiae* to brief a matter of public interest where the *amicus* offers different information or perspectives that can help the court in resolving the issues presented. *See California by & through Becerra v. United States Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019); *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Pickup v. Brown*, No. CV S-12-2497 KJM-EFB, 2012 WL 12965030, at *1 (E.D. Cal. Nov. 21, 2012).

At bottom, "a district court has broad discretion to appoint *amici curiae*." *Hoptowit*, 682 F.2d at 1260. "'There are no strict prerequisites that must be established prior to qualifying for *amicus* status although an individual or organization seeking to participate as *amicus curiae* must make a showing that his participation is useful to or otherwise desirable to the court.'" *Infineon*

1

*Techs. N. Am. Corp. v. Mosaid Techs., Inc.*, No. C 02-5772 JF(RS), 2006 WL 3050849, at *3 (N.D. Cal. Oct. 23, 2006) (citations omitted). "An *amicus* brief should normally be allowed" when, among other considerations, "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Pickup,* 2012 WL 12965030, at *1 (*citing Cmty. Ass'n for Restoration of the Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999)) "District courts frequently welcome *amicus* briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved[.]" *Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003). Based on this long and clear precedent, and on the arguments raised below and in Monotype's initial motion, the Court should grant Monotype's request to file its *amicus curiae* memorandum.

## I. ARGUMENT

### a. Monotype's Motion Is Not Untimely

Monotype's motion is not untimely because no applicable rule dictates the requisite timing of *amicus* filings. *Earth Island Inst. v. Nash*, No. 119CV01420DADSAB, 2019 WL 6790682, at *1 (E.D. Cal. Dec. 12, 2019) ("The Federal Rules of Civil Procedure do not set forth the manner and circumstances in which an *amicus* brief may be filed in district courts."). As such, while district courts may refer to Federal Rule of Appellate Procedure 29 in addressing *amicus* motions, the timing of such requests is ultimately up to the discretion of the Court. *Id*. (granting an *amicus* request filed the same week as briefing on the underlying motion).

Moreover, while "the parties before the court should have their dispute resolved without any unnecessary delay," courts have recognized that an *amicus* brief filed before a hearing on summary judgement is timely and does not cause unnecessary delay. *Nash*, 2019 WL 6790682, at *1. By contrast, it is the more extreme contexts, such as requesting to file an *amicus* brief after issuance of the court order, where requests to make amicus filings are rejected. *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999) (denying motion to file *amicus* brief that was made two months after court entered order).

1    Nor are Defendants correct in suggesting that Monotype engaged in any improper delay. Defendants may be right that Monotype was aware of the existence of the *dispute* between the parties as Monotype had previously accepted a subpoena served on one of its affiliates. However, as stated in Monotype's initial motion, Monotype only became aware of the *summary judgement briefing* in this dispute at the end of January, necessitating that Monotype quickly find and secure counsel and – with them – research and draft the *amicus* briefing attached to its pending motion. Defendant does not dispute this, instead merely implying that because Monotype was aware of the litigation, and thus possibly could have gained knowledge of the summary judgement briefing earlier, its filing somehow represents unreasonable delay. Defendants are simply wrong. As Monotype did not engage in any intentional delay, and provided their motion to the court before the summary judgment hearing in this dispute it should not be considered untimely. *See Nash*, 2019 WL 6790682, at *1.

**b. Defendants Misunderstand the Standard for Admitting Amicus Briefing**

Defendants also argue that the Court should reject Monotype's motion because "Monotype's proposed amicus brief fails to meet [the] standards for admissibility." Dkt. No. 379 at 4. Specifically, Defendants appear to argue that Monotype's motion should be rejected because its proposed briefing (1) represents an interested party that is in effect "lobbying for the 'font industry'"; (2) merely "echoes" arguments made by Plaintiff; and (3) contains legal and factual assertions regarding the potential impacts of a judgement which are purportedly outside the scope of the dispute at issue. *Id*. at 4-6. Defendants are wrong.

The claimed "issues" that Defendants raise do not preclude the Court from granting Monotype's motion, but instead merely represent Defendants' disagreement with what Monotype has to say. Contrary to Defendants' arguments, the "classic role" of *amicus curiae* is to assist a court in a case of public interest by drawing the court's attention to facts or law that may have escaped consideration. *Becerra*, 381 F. Supp. 3d at 1164 (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont*., 694 F.2d 203, 204 (9th Cir. 1982)). Under this construction, there can be no strict prerequisites that must be established prior to qualifying for *amicus* status: "an

individual seeking to appear as *amicus* must merely make a showing that his participation is useful or otherwise desirable to the court." *Id*; *see Hoptowit*, 682 F.2d at 1260 ("The district court has 'broad discretion' to permit amicus briefs.").

As to Defendants' first argument – that Monotype's motion should be denied because as a leading entity in the font industry Monotype is in effect "lobbying for the 'font industry'"– Defendants essentially argues that an entity with wide ranging and unique expertise to the dispute in question should be precluded from being an *amicus* specifically because of that expertise. Dkt. No. 379 at 4-5. Such arguments are commonly rejected. For example, in *Pickup v. Brown*, the court confronted a request to submit *amicus* briefings regarding the interpretation of a statute by the literal lobbyists who sponsored the bill at issue. 2012 WL 12965030, at *1. In rejecting arguments that the proposed *amici* were not sufficiently neutral in defending a law they themselves sponsored, the *Pickup* court stated:

> While "[h]istorically, *amicus curiae* is an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another," *Cmty. Ass'n for Restoration of Env't (CARE)*, 54 F. Supp. 2d at 975, the Ninth Circuit has said "there is no rule that amici must be totally disinterested." *Funbus Sys., Inc. v. State of Cal. Pub. Utils. Comm'n,* 801 F.2d 1120, 1125 (9th Cir. 1986); *Hoptowit*, 682 F.2d at 1260 (upholding district court's appointment of amicus curiae, even though amicus entirely supported only one party's arguments). The court has the ability to glean any useful information from Equality California's filing without being swayed by any pure advocacy.

*Id*. In effect, Plaintiff's argument that a potential *amicus* should not be allowed to advocate a point of view "became outdated long ago." *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d Cir. 2002) (opinion by Justice Samuel Alito, then chair of the Advisory Committee on the federal appellate rules, see 16A Fed. Prac. & Proc. Juris.3d § 3975).

Nor do Defendants' citations to Fifth Circuit law change this, as that circuit takes a far dimmer view of a court's ability to gain useful information from potential *amici*. By contrast, the Ninth Circuit has been clear that as long as a proposed *amicus* can offer relevant "information or

1    perspective that can help the court," that *amicus* should be allowed to do so. *See Pickup*, 2012 WL
2    12965030, at *1; *Missouri v. Harris*, No. 2:14-CV-00341-KJM, 2014 WL 2987284, at *3 (E.D.
3    Cal. July 1, 2014) (allowing industry party to submit *amicus* briefing where the "legal issues in the
4    action have potential ramifications beyond the parties directly involved"); *Sonoma Falls*
5    *Developers, LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003)
6    (granting a petition to submit *amicus* briefing by an entity that was actually involved in the events
7    in dispute and which had a real interest in the contracts being construed). Indeed, courts in this
8    circuit have made it clear that it is "preferable to err on the side of permitting *amicus* briefs' than
9    to deny them." *Nash*, 2019 WL 6790682, at *2; *Duronslet v. Cty. of Los Angeles*, 2017 WL
10   5643144, at *1 (C.D. Cal. Jan. 23, 2017).

11   Defendants also attempt to argue that Monotype's motion should be rejected because the
12   proposed *amicus* brief "merely echoes" arguments made by Plaintiffs. Dkt. No. 379 at 4-5. Yet a
13   review of these arguments shows them to represent nothing but Defendants' disagreement with the
14   relevant facts and law. For example, Defendants chastise Monotype for providing a more fulsome
15   analysis of *Adobe Sys., Inc. v. S. Software, Inc.*, 1998 WL 104303 (N.D. Cal. Feb. 2, 1998) and the
16   1992 Regulation simply because Plaintiff also cited them. *Id.* ("[Monotype's proposed brief]
17   merely echoes Plaintiff's arguments—such as, for example, by citing the *Adobe* case that the Court
18   has already rejected many times over, and the comparably inapt "1992 Regulation.") Yet
19   Defendants do not explain why it is problematic for Monotype – a global leader in registering and
20   providing font software – to provide its own analysis of the *only* legal opinion interpreting the
21   protection of font software under copyright, and the regulation fundamentally underlying copyright
22   protections in fonts. Indeed, given the nature of the dispute, it would be far more concerning if
23   Monotype's proposed *amicus* briefing that did not provide an analysis of these two central legal
24   principles.

25   Finally, Defendants appear to argue that because Monotype's proposed briefing provides
26   context on the potential harms that could arise from a ruling in this dispute, it should be rejected.
27   Dkt. No. 379 at 5. Yet providing unique perspective on the potential impacts of a possible ruling
28

5
REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF
AMICUS CURIAE MONOTYPE IMAGING INC.
CASE NO. 5:22-CV-04844-BLF

in a dispute is a classic example of the kind of helpful information and guidance an *amicus* is supposed to provide a court:

> Some *amicus* briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. ***Still others explain the impact a potential holding might have on an industry or other group***.

*Neonatology Associates*, 293 F.3d at 132 (emphasis added); *see also Infineon Techs.*, 2006 WL 3050849, at *3 (granting a request to submit *amicus* briefing specifically because such briefing would speak to the potential impacts of possible rulings); *Nash*, 2019 WL 6790682, at *2 (explicitly granting a motion to file an *amicus* brief because the proposed *amici* represented environmental groups who could speak to the potential harmful impacts of a ruling in the dispute). While Defendants dismissively describe Monotype's assessment of the potential harm of a ruling for Defendants in this dispute as merely a "parade of horribles," Monotype's unique position in the industry and its deep understanding of the harms that could be suffered under such a ruling are exactly the type of "unique information or perspective that can help the court" that justifies the submission of an amicus briefing.[1]

The remainder of Defendants' purported opposition is directed to arguments that because Plaintiff registered her copyrights under the name "font data" as opposed to as a "computer program" this difference in nomenclature invalidates Monotype's arguments. Dkt. No. 379 at 7. Defendants' attempt at extreme formalism should not be given any credence. It does not matter under *Feist* what title a work is registered under, merely whether there is sufficient originality to qualify as a copyright. 499 U.S. 340 (1991). And Defendants do not – and cannot – point to any authority stating that the category an examiner or applicant uses to name their work will

---

[1] The remainder of Defendants' purported opposition is directed to arguments that because Plaintiff registered her copyrights under the name "font data" as opposed to as a "computer program" and this difference in nomenclature invalidates Monotype's arguments. nothing more than an attempt to argue with Plaintiff's positions, not the sufficiency of Monotype's motion. See Dkt. No. 379 at 7. While Monotype does not agree with Defendants' assessments and arguments, as they are outside the scope of the question of whether the Court should grant Monotype's motion, Monotype does not address them.

1  fundamentally alter the copyright analysis. This is unsurprising as the Copyright Office's
2  "administrative classification of works has no significance with respect to the subject matter of the
3  copyright or the exclusive rights provided by the [Copyright Act]." 17 U.S.C. § 408(c)(1). The
4  relevant inquiry for the Court should be whether the output files at issue are entitled to copyright
5  protection, not merely what they are named.

6  As discussed in Monotype's proposed *amicus* briefing, the use of design software by a
7  skilled artist will cause the creation of a file which tells a computer or printer how to display and
8  scale a given font. It cannot possibly be relevant whether this output file is named by the examiner
9  to be "font software"; "font data"; "XML code"; or any other variation on this theme. Indeed,
10 examiners have applied many of these designations to registered font software owned by Monotype.
11 Moreover, none of these designations other than "computer program" appears in the 1992
12 Regulation ((57 Fed.Reg. 6201-02, 1992 WL 29306) or U.S. Copyright Office Copyright
13 Compendium. And each of these registered font products were made following the same industry
14 standard methodology as described in its *amicus* brief. Thus, the differing names applied by
15 examiners are just that – different names for the same thing: font software. There is no different
16 standard for copyrightability of font software depending on which of the many possible ways it
17 could be named.

18 Instead, what is relevant is (a) whether that file controls how a computer or printer displays
19 the font in question, and (b) whether the file has sufficient originality to be protected as a copyright.
20 The designation that file is given by a particular examiner or applicant has no bearing on whether
21 it can be registered.

22 As there is no prohibition on interested parties providing amicus briefing, as Monotype's
23 proposed briefing is not merely a carbon copy of arguments advanced by Plaintiff, as Monotype
24 accurately describes industry concerns over potential rulings in this dispute, and as Defendants
25 attempted formalism should not constrain basic copyright law, Defendants have not established
26 good reason to reject Monotype's motion.

27 **II.    CONCLUSION**

28

7

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF
AMICUS CURIAE MONOTYPE IMAGING INC.
CASE NO. 5:22-CV-04844-BLF

For the foregoing reasons, Monotype respectfully requests that the Court grant leave to file its proposed *amicus* brief.

Dated: March 19, 2025                                       GOODWIN PROCTER LLP


By: */s/ Rachel M. Walsh*
Rachel M. Walsh (SBN 250568)
*rwalsh@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

*Attorney for Monotype Imaging Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on March 19, 2025 and which was served by operation of the Court's electronic filing system upon all counsel of record. I certify under penalty of perjury that the foregoing is true and correct. Executed on March 19, 2025 in San Francisco, CA.

                                                               */s/ Rachel M. Walsh*
                                                              Rachel M. Walsh