Exhibit B

# Roadmap

- **Statute of Limitations**

- **Breach of Contract**

- **Fraud**

- **Copyright Infringement**

- **Trademark Infringement**

- **Defendants' Evidentiary Objections**

- **Nicky Laatz's Evidentiary Objections**

# Defendants' Motion for Summary Judgment

*Nicky Laatz v. Zazzle, Inc., et al.*

Hon. Beth Labson Freeman

Case No. 5:22-cv-04844

Feb. 27, 2025

# Summary Judgment Standard

- A party is entitled to summary judgment if the "there is no *genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law."

  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (emphasis added)
  (cited in Dkt. 89, Pltf's Refiled MSJ at 5)

- *Witness credibility cannot be assessed* on summary judgment.

  *Zetwick v. County of Yolo,* 850 F. 3d 436, 441 (9th Cir. 2017) (emphasis added)
  (cited in Dkt. 342, Opp. at 13)

- The movant must be denied summary judgment if they "fail[] to carry [their] initial burden of production," even if the nonmoving party has not "produce[d] anything."

  *Nissan Fire Marine Ins. Co. v. Fritz Co.,* 210 F. 3d 1099, 1102-03 (9th Cir. 2000)
  (cited in Dkt. 342, Opp. at 6)

# Defendants' MSJ on Their Statute of Limitations Affirmative Defense Fails

# Defendants Bear the Burdens of Production and Persuasion

▪ Defendants bear initial **burden of production** AND separate **burden of persuasion** to show no genuine dispute as to any material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (cited in Dkt. 342, Opp. at 6)

▪ "[T]he moving party bears a **heavy** burden of demonstrating the **absence of any material issues of fact**," and the court "must resolve all ambiguities and draw all reasonable inferences **in favor of the [non-moving party]**."

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F. 3d 157, 160 (2d Cir. 1999) (cited in Dkt. 342, Opp. at 6)

# Defendants Blur Three Distinct Doctrines

- **<u>Statute of Limitations Affirmative Defense and Accrual of Each Claim:</u>** Defendants must prove there is no dispute of material fact as to **when Nicky Laatz's claims accrued, each of which requires actual or constructive knowledge**, and that the SOL expired before she filed suit.

- **<u>Delayed Discovery Rule:</u>**
  - "'[A] cause of action will not accrue until the plaintiff discovers or should have discovered, through the exercise of reasonable diligence, **<u>all the facts essential to the cause of action</u>**.'"
    <span style="font-size:smaller">Roches v. Cnty. of Santa Clara, 2018 WL 3344647, at *4 (N.D. Cal. Jul. 9, 2018) (cited in Dkt. 342, Opp. at 9)</span>
  - This is codified for a fraud claim.
    <span style="font-size:smaller">Cal. Civ. Proc. § 338(d); Pashley v. Pac. Elec. Co., 25 Cal. 2d 226, 229 (1944) (cited in Dkt. 342, Opp. at 8)</span>
  - Also applies to a contract breach where resulting harm is not "reasonably discoverable [] until a future time."
    <span style="font-size:smaller">Perez-Encinas v. AmerUs Life Ins. Co., 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (cited in Dkt. 342, Opp. at 10)</span>
  - Also applies to copyright infringement, as an exception to the principle that damages are only recoverable for infringing acts within three years prior to filing suit, where a plaintiff did not discover earlier infringement and it was reasonable.
    <span style="font-size:smaller">Starz Etm't LLC v. MGM Dom. TV Dist., LLC, 39 F. 4th 1236. 510 F. Supp. 3d 878, 884-888 (C.D. Cal. 2021), aff'd, 39 F. 4th 1236 (9th Cir. 2022) (cited in Dkt. 342, Opp at 9)</span>

- **<u>Separate-Accrual Rule:</u>** When a Defendant commits successive violations, <u>each wrong is a separate claim</u>, and the statute of limitations runs separately from <u>each</u> violation.
  <span style="font-size:smaller">See Petrella v. MGM, Inc., 572 U.S. 663, 671 (2014) (cited in Dkt. 342, Opp. at 10)</span>

6

# Defendants Have Not Shown That Nicky Laatz's Claims Are Time-Barred

| Claim | SOL | Accrues When Plaintiff: | Evidence Shows Accrual On: | Deadline to File Based on Date of Accrual | Nicky Laatz Actually Filed On: |
|---|---|---|---|---|---|
| Fraud | Three years | Discovers "the facts constituting fraud"[1] | January 21, 2021, when Zazzle presented Nicky Laatz with Mohamed Alkhatib's receipt for a "one seat" License in response to Nicky Laatz's request for proof of lawful use.[5] | January 21, 2024 | August 24, 2022[7] |
| Breach of contract | Four years | "[D]iscovers, or could have discovered through reasonable diligence, the injury and its cause"[2] | | January 21, 2025 | |
| Copyright infringement | Three years | "[D]iscovers, or reasonably should have discovered, the alleged infringement"[3] | August 25, 2020,* when Nicky Laatz finds the BE Trio inside Zazzle's Design Tool.[6]  *Initial date of accrual for copyright infringement claim. | August 25, 2023, for _initial_ date of accrual | |
| Trademark infringement | Three years | Has "actual or constructive knowledge of the wrong"[4] | | August 25, 2023 | |

Citations included on subsequent slide

# Defendants Have Not Shown That
# Nicky Laatz's Claims Are Time-Barred

1) Cal. Civ. Proc. § 338(d) (cited in Dkt. 342, Opp. at 6)

2) Cal. Civ. Proc. § 337(a); *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 119 (1996) (cited in Dkt. 342, Opp. at 6)

3) 17 U.S.C. § 507(b); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F. 3d 1042, 1047 (9th Cir. 2020) (cited in Dkt. 342, Opp. at 6)

4)  *Karl Storz Endoscopy Am., Inc. v. Surgical Techs, Inc.,* 285 F. 3d 848, 857 (9th Cir. 2002) (cited in Dkt. 342, Opp. at 6)

5) Dkt. 342-25, N. Laatz Decl. 15:5-17:16; Dkt. 342-28, J. Laatz Decl. ¶6

6) Dkt 342-25, N Laatz Decl 14:27-15:4; Dkt. 342-26

7) Dkt. 1, Compl. at 1

# Key Dates

**Nov. 2, 2016**
Monica McGhie messages Nicky Laatz to inquire about a "server-based" license to the Blooming Elegant Trio and Software ("BE Trio and Software")[1]

**May 4, 2017**
Concealing his agency and intended use, Mohamed Alkhatib purchases a "one seat" license to BE Trio and Software ("the License") on behalf of Defendant Zazzle via Creative Market[2]

**October 12, 2017**
Zazzle makes the BE Trio available inside Zazzle's Design Tool[3]

**Jan. 21, 2021**
Zazzle first presents Mohamed Alkhatib's receipt for a "one seat" License[5]

**Aug. 25-26, 2020**
Nicky Laatz receives notice that the BE Trio is available to use on Zazzle's website and finds the BE Trio in the Design Tool[4] and contacts Zazzle

**Mar. 13, 2023**
Last date on which Zazzle admits its users could access the BE Trio in the Design Tool[7]

**Aug. 24, 2022**
Nicky Laatz files this lawsuit[6]

Citations included on subsequent slide

| 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |

9

# Key Dates

1) Dkt. 342-25, N. Laatz Decl. 11:22-12:2, 13:2-24; Dkt. 342-26

2) Dkt. 49-3, Alkhatib Decl. ¶ 3; Dkt. 342-2; Dkt. 342-11 (Alkhatib   Dep. Tr.) at 181:3-19; Dkt. 102-7 Alkhatib Decl. ¶¶ 4-5; Dkt. 342-25, N. Laatz Decl. 14:27-17:16; Dkt. 342-30

3) Dkt. 342-12 (Alkhatib   Dep. Ex. 188) at 9; Dkt. 342-21; Dkt. 342-24 (Beaver Dep. Tr.) at 164:7-165:2, 165:25-166:10; Dkt. 342-49, Garrie Decl. ¶¶ 29-30

4) Dkt. 342-25, N. Laatz Decl. 14:27-15:4, Dkt. 342-27

5) Dkt. 342-25, N. Laatz Decl. 15:17-17:16; Dkt. 342-30

6) Dkt. 1, Compl. at 1

7) Dkt. 342-21; Dkt. 342-49, Garrie Decl. ¶¶ 26-30

# Key Dates



**Nov. 2, 2016**
Monica McGhie messages Nicky Laatz to inquire about a "server-based" license to the Blooming Elegant Trio and Software ("BE Trio and Software")[1]

**May 4, 2017**
Concealing his agency and intended use, Mohamed Alkhatib purchases a "one seat" license to BE Trio and Software ("the License") on behalf of Defendant Zazzle via Creative Market[2]

**October 12, 2017**
Zazzle makes the BE Trio available inside Zazzle's Design Tool[3]

**Jan. 21, 2021**
Zazzle first presents Mohamed Alkhatib's receipt available to use on Zazzle's website and first

**Mar. 13, 2023**
Last date on which Zazzle admits its users could access the BE Trio in the Design Tool[7]

**Aug. 24, 2022**
Nicky Laatz files this lawsuit[6]

> Zazzle claims that all Nicky Laatz's claims accrued as of this date
>
> Dkt. 338 at 10

> This date ignores the discovery and knowledge requirements for accrual

Citations included on subsequent slide

| 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |

11

# Key Dates



**Nov. 2, 2016**
Monica McGhie messages Nicky Laatz to inquire about a "server-based" license to the Blooming Elegant Trio and Software ("BE Trio and Software")[1]

**Jan. 21, 2021**
Zazzle first presents Mohamed Alkhatib's receipt for a "one seat" License[5]

**Mar. 13, 2023**
Last date on which Zazzle admits its users could access the BE Trio in the Design Tool[7]

Zazzle fraudulently concealed that it secretly purchased the License via Mohamed Alkhatib, so Nicky Laatz's fraud and breach of contract claims did not accrue until this date.

**Aug. 24, 2022**
Nicky Laatz files this lawsuit[6]

**October 12, 2017**
Zazzle makes the BE Trio available inside Zazzle's Design Tool[3]

Citations included on subsequent slide

2016   2017   2018   2019   2020   2021   2022   2023

# Defendants' Concealment Tolled Accrual of the Fraud and Breach of Contract Claims Until Jan. 21, 2021 at the Earliest

- When a principal uses an undisclosed agent to inflict injury, claims will not accrue until the injured plaintiff discovers the fraud.

  *See Gregory v. Spieker,* 110 Cal. 150, 153 (1895);
  *Acme Paper Co. v. Goffstein,* 125 Cal. App. 2d 175, 179 (1954) (cited in Dkt. 342, Opp. at 8)

  - Here, Alkhatib purchased a "one seat" license in his own name and concealed that it was for Zazzle's illicit use → **misrepresentation and concealment**

- <mark>Nicky Laatz did not discover Defendants' fraud (and contract breach) until Jan. 21, 2021</mark>, when Zazzle first presented her with a receipt for the License.

  Dkt. 342-25, N. Laatz Decl. 15:5-17:16; Dkt. 342-28, J. Laatz Decl. ¶6

  - Creative Market doesn't send Nicky Laatz purchaser email addresses.

    Dkt. 342-25, N. Laatz Decl. 15:17-16:8; Dkt. 342-10 (Reynaud Depo Tr.) at 174:7-17

  - Even if Nicky Laatz learned Alkhatib used his Zazzle email address to purchase the License, that doesn't reveal Zazzle was the licensee or intended to violate the License.

13

# Licensee Information Provided by Creative Market to Nicky Laatz

- Nicky Laatz has sold over 240,000 licenses through Creative Market
- Nicky Laatz sold over 10,000 licenses from January to May 2017, of which nearly 1,000 were for the BE Trio

Dkt. 342-25, N. Laatz Decl. 18:20-26



Dkt. 342-25, N. Laatz Decl. 16:8

14

# Key Dates



**Nov. 2, 2016**
Monica McGhie messages to inquire about a "server-based the Blooming Elegant Trio ("BE Trio and Software")

Nicky did not know of her copyright/trademark infringement claims until this date at the earliest

**Mar. 13, 2023**
Last date on which Zazzle admits its users could access the BE Trio in the Design Tool[7]

**May 4, 2017**
Concealing his agency and intended use, Mohamed Alkhatib purchases a "one seat" license to BE Trio and Software ("the License") on behalf of Defendant Zazzle via Creative Market[2]

**Aug. 25-26, 2020**
Nicky Laatz receives notice that the BE Trio is available to use on Zazzle's website and finds the BE Trio in the Design Tool[4] and contacts Zazzle

**Aug. 24, 2022**
Nicky Laatz files this lawsuit[6]

**October 12, 2017**
Zazzle makes the BE Trio available inside Zazzle's Design Tool[3]

2016   2017   2018   2019   2020   2021   2022   2023

## Nicky Laatz's Copyright and Trademark Infringement Claims Did Not Accrue Until August 25, 2020 at the Earliest

- A claim for copyright infringement will not accrue until "a party discovers, or reasonably should have discovered, the alleged infringement,"[1] and a claim for trademark infringement will not accrue until the plaintiff's "actual or constructive knowledge of the wrong."[2]

  1) *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 971 F. 3d 1042, 1047 (9th Cir. 2020);
  2) *Karl Storz Endoscopy Am., Inc. v. Surgical Techs, Inc.*, 285 F. 3d 848, 857 (9th Cir. 2002) ) (cited in Dkt. 342, Opp. at 6)

  - Reasonable diligence "does not create a duty to continuously monitor" a licensee "to ensure compliance with its obligations," as this "paranoia" would be "unreasonably burdensome to impose on a copyright owner[.]"

    *Starz Etm't LLC v. MGM Dom. TV Dist., LLC,* 39 F. 4th 1236. 510 F. Supp. 3d 878, 884 (C.D. Cal. 2021),
    *aff'd,* 39 F. 4th 1236 (9th Cir. 2022) (cited in Dkt. 342, Opp at 9)

- Nicky Laatz first learned of Zazzle's use of the BE Trio and Software on August 25, 2020, when she was contacted by a Zazzle user regarding the BE Trio in the Design Tool.

  Dkt. 342-25, N. Laatz Decl.14:27-15:4; Dkt 342-27

  - Creative Market doesn't send Nicky Laatz purchaser email addresses; and even if they did, that would not have revealed Zazzle as the licensee nor its intention to violate the License.

# Two Overarching Principals Guide Application of the Delayed Discovery Rule

Federal and California courts are in accord as to the rationale behind application of the delayed discovery rule:



> "First, **plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed**. … Second, **defendants should not be allowed to knowingly profit from their injure's ignorance**."

*Perez-Encinas v. AmerUs Life Ins. Co.,*
468 F. Supp. 2d 1127, 1135 (N.D. Cal. 2006)
(internal quotations omitted)

(cited in Dkt. 342, Opp. at 6)

17

# The Delayed Discovery Rule Tolls Claim Accrual

The delayed discovery rule properly applies here because:

- "[t]he injury or the act causing the injury … **[was] difficult for the plaintiff to detect**,"
  - Zazzle and Alkhatib concealed his agency and intended use in purchasing a "one seat" License.
  - Due to the tens of thousands of licensees, it is a question of fact whether even if Nicky Laatz had seen any single image or webpage, it would have provided actual or constructive notice.
- "the **defendant has been in a far superior position** to comprehend the act and the injury," **or**
  - Zazzle was in a far superior position to know about its own license agreements acquired through its agents, or lack thereof.
- "**the defendant had reason to believe the plaintiff remained ignorant** he had been wronged."
  - Zazzle had no reason to believe that Nicky Laatz knew Alkhatib purchased a license for Zazzle's use or would immediately discover a breach.
    *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134-35 (N.D. Cal. 2006) (cited in Dkt. 342, Opp. at 10);
    *Starz Etm't LLC v. MGM Dom. TV Dist., LLC,* 39 F. 4th 1236. 510 F. Supp. 3d 878, 884 (C.D. Cal. 2021),
    *aff'd*, 39 F. 4th 1236 (9th Cir. 2022) (cited in Dkt. 342, Opp at 9)

- The reasonableness of the delay in discovering infringement raises "**a question of fact**" that is not suitable for resolution on summary judgment where there is conflicting evidence.
    *Starz Entm't, LLC v. MGM Dom. TV Dist.*, LLC, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021)
    *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170-71 (N.D. Cal. 2019) (cited in Dkt. 342, Opp. at 9)

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**None of the following provided Nicky Laatz with actual or constructive knowledge of her claims:**

✗ **Nicky Laatz's use of Zazzle from 2014-2016**

✗ **Nicky Laatz's use of the #zazzle hashtag on Instagram**

✗ **Zazzle tagging Nicky Laatz in an Instagram post on September 27, 2018**

✗ **Nicky Laatz following Zazzle on Instagram**

✗ **A January 2020 email to John Laatz saying "I liked the Font on Zazzle"**

✗ **Monica McGhie's November 2, 2016 inquiry to Nicky Laatz**

✗ **Zazzle's promotional emails featuring the BE Trio**

✗ **Zazzle's blog posts with products allegedly depicting the BE Trio**

## Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Nicky Laatz's use of Zazzle from 2014-2016**

- Nicky Laatz testified under oath she abandoned her Zazzle account in July 2016 and did not use her account or access Zazzle's Design Tool between May 2017 and August 25, 2020.

  Dkt. 342-25, N. Laatz Decl. 23:4-6

- Daniel Garrie's forensic analysis confirms Nicky Laatz's sworn testimony.

  Dkt. 106-9, Garrie Decl. ISO Reply Brief ISO Pltf's MSJ ¶¶ 19-22

- **Zazzle did not proffer any evidence that Nicky Laatz used her Zazzle account or the Zazzle Design Tool between <u>May 2017-August 25, 2020</u>.**

20

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Nicky Laatz's use of the #zazzle hashtag on Instagram**

- While Nicky Laatz sporadically used this hashtag to promote her custom fonts and font software to graphic artists, this does not indicate Nicky Laatz saw any of Zazzle's Instagram activity, or that she would have been connected to Zazzle's Instagram activity in any way.

*See* Dkt. 342-49, Garrie Decl. ¶¶ 20-23

> 22. However, creating a post with a hashtag does not mean that the poster is connected or linked to the subject of the hashtag, ==nor does it mean that the poster has seen any content related to the subject of the hashtag.== *Id.* In fact, hashtags are often unrelated to other specific Instagram users. For example, #love is one of the most popular hashtags on Instagram and is simply a way to categorize and search for posts related to the concept of love.

Dkt. 342-49, Garrie Decl. ¶ 22

21

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**✗ Nicky Laatz's use of the #zazzle hashtag on Instagram**

- While Nicky Laatz sporadically used this hashtag to promote her custom fonts and font software to graphic artists, this does not indicate Nicky Laatz saw any of Zazzle's Instagram activity, or that she would have been connected to Zazzle's Instagram activity in any way.

> 63.     I understand that hashtags on Instagram allow users to search for related content. By clicking on a hashtag or searching the hashtag within Instagram's search bar, users are connected to an Instagram page showing all the public posts tagged with the hashtag. But using a particular hashtag, such as #etsy, #minted, and #zazzle, does not link the user in any way to the subject of the hashtag. In fact, I was not linked to #zazzle by use of that hashtag. Rather, I was entirely unaware that Zazzle began offering its users free access to the BE Trio and BE Software around October 2017.

Dkt. 342-25, N. Laatz Decl. 21:19-25

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Zazzle tagging Nicky Laatz in an Instagram post on September 27, 2018**

- No evidence from Zazzle that Nicky Laatz actually received or saw this post.

- Sworn testimony by Nicky Laatz that she has no recollection of seeing any Instagram posts by Zazzle.

  Dkt. 342-25, N. Laatz Decl. 22:9-21

- The fonts in that Instagram post are not part of the BE Trio.

  Compare Dkt. 338-1 Nolan Decl. ¶ 11 with ¶ 13

23

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

❌ **Zazzle tagging Nicky Laatz in an Instagram post on September 27, 2018**

- Post where Nicky Laatz was tagged did not depict Blooming Elegant

13.    Attached as Exhibit L is a true and correct copy of a post to Zazzle's public Instagram account posted on September 27, 2018, which "tagged" Plaintiff, and which was produced by Zazzle in this action at Bates number ZAZZLE-005022.  Quinn Emanuel's litigation support staff retrieved the post via web capture at my direction.

11.    Attached as Exhibits J1–J32 are true and correct copies of 32 posts to Zazzle's public Instagram account posted between November 20, 2017 and August 24, 2019 that reference by name or depict Blooming Elegant, which were produced by Zazzle in this action at Bates numbers ZAZZLE-000001; ZAZZLE-000003; ZAZZLE-000005; ZAZZLE-000007; ZAZZLE-000009; ZAZZLE-0000011; ZAZZLE-0000013; ZAZZLE-0000015; ZAZZLE-0000017; ZAZZLE-0000019; ZAZZLE-0000021; ZAZZLE-0000023; ZAZZLE-0000087; ZAZZLE-0000089; ZAZZLE-0000091; ZAZZLE-0000093; ZAZZLE-0000095; ZAZZLE-0000097; ZAZZLE-0000099; ZAZZLE-00000101; ZAZZLE-00000103; ZAZZLE-00000105; ZAZZLE-00000107; ZAZZLE-00000109; ZAZZLE-005030; ZAZZLE-005033; ZAZZLE-005040; ZAZZLE-005042; ZAZZLE-005045; ZAZZLE-005048; ZAZZLE-005063; ZAZZLE-005078.    Quinn Emanuel's litigation support staff retrieved the posts via web capture at my direction.

Dkt. 338-1, Nolan Decl. ¶¶ 11, 13

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

❌ **Zazzle tagging Nicky Laatz in an Instagram post on September 27, 2018**

- No evidence the fonts featured in this Instagram post are any of Nicky Laatz's custom fonts.

  *See* Dkt. 338-62

- Even if Nicky Laatz had seen the Instagram post, this would not have put Nicky Laatz on notice of any claims against Zazzle.

  Dkt. 342-25, N. Laatz Decl. 22:9-21



Dkt. 338-62 (Nolan Decl. Ex. L)

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

> **✗ Nicky Laatz following Zazzle on Instagram**

- Incorrect to claim that Nicky Laatz would have received Zazzle's posts featuring the BE Trio by "following" Zazzle on Instagram.

- Nicky Laatz never saw any of Zazzle's posts featuring the BE Trio that Zazzle argues should have appeared in her feed.

> 24. Likewise, following Zazzle on Instagram does not necessarily mean that Ms. Laatz would have seen Zazzle content related to the Blooming Elegant Trio of Fonts. While a user's Instagram feed can include content from accounts that the user follows, there are a variety of factors that influence what content appears in a user's feed, such as the user's activity, the user's connections with other accounts, the popularity of other posts, and other factors.[6] Simply following a certain account does not necessarily mean that posts from that account will appear in the user's feed or that the user will see those posts, as other posts may be placed higher in the feed or the user might not interact with their feed enough to see the posts. *Id.*

Dkt. 342-25, N. Laatz Decl. 21:7-11, 22:9-21; Dkt. 338-3 (Nicky Laatz Dep. Tr.) at 161:24-163:13.

Dkt. 342-49, Garrie Decl. ¶24

26

# Zazzle's Instagram Posts Would Not Have Put Nicky Laatz on Notice



Dkt. 338-47 (Nolan Decl. Ex. J27)

- Nicky Laatz didn't see the Instagram posts.

  Dkt. 342-25, N. Laatz Decl. 22:9-21;
  Dkt. 342-49, Garrie Decl. ¶¶ 20-25

- Although Zazzle claims that its Instagram posts purportedly featuring Blooming Elegant "reference[d] by name or depict[ed] Blooming Elegant," *none of the Instagram posts that it proffered in support of summary judgment mention the BE Trio* by name or otherwise identify the font.

  Dkt. 338-1, Nolan Decl. ¶ 11

# Zazzle's Instagram Posts Would Not Have Put Nicky Laatz on Notice



Dkt. 338-49 (Nolan Decl. Ex. J29)

- **Nicky Laatz didn't see the Instagram posts.**

  Dkt. 342-25, N. Laatz Decl. 22:9-21;
  Dkt. 342-49, Garrie Decl. ¶¶ 20-25

- **Even if she recognized the appearance, that wouldn't tell her that Zazzle was offering use of the BE Trio.**

  Dkt. 342-25, N. Laatz Decl. 22:6-8

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

❌ **A January 2020 email to John Laatz saying "I liked the Font on Zazzle"**

- John Laatz testified that this message did not put him on notice.

  Dkt. 342-28, J. Laatz Decl. ¶¶ 2-3

  - He did not know who or what Zazzle was.
  - He did not know that Zazzle had secretly purchased a "one seat" license.
  - He did not visit Zazzle at that time.
  - *Zazzle only provided a portion of John Laatz's testimony on this issue in Ex. P to the Nolan Declaration (Dkt. 338-1).*

- Nicky Laatz testified why even if this message had reached her, it would not have put her on notice of any claims against Zazzle.

  Dkt. 338-3 (Nicky Laatz Dep. Tr.) at 183:14-184:23

29

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**✗ Monica McGhie's November 2, 2016 inquiry to Nicky Laatz**



### Feedback on The Blooming Elegant Font Trio

monica.mcghie

Hello!

I'm reaching out on behalf of Zazzle, a marketplace for custom products – our goal is to help enable our customers to make anything. To that end, we do everything we can to enable our over 600K individual designers to sell their original designs on Zazzle by using our design tools (which ...

...weren't able to find any options that address non-personal use. Do you offer a license in perpetuity for server-based use?

All our ...
on our ...
download a copy of the font code.

Saw your Blooming Elegant Font Trio and believe that our Designers would love it! We noticed that you offer free personal use options, but weren't able to find any options that address non-personal use. Do you offer a license in perpetuity for server-based use?

We look forward to connecting,
Thanks!
Monica

Monica McGhie
Product Marketing Manager
Zazzle

Nov 2, 2016

Dkt. 342-27
(N. Laatz
Decl. Ex. 2)

30

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Monica McGhie's November 2, 2016 inquiry to Nicky Laatz**

56.     As discussed above, on November 2, 2016, Monica McGhie asked: "Do you offer a license in perpetuity for server-based use?" Nothing in that message caused me to be suspicious that Zazzle was contemplating illegally acquiring my font software through the future purchase of a single-seat license by one of its employees with the intent of loading the software onto its servers, so that it could give all of its employees, designers, shop owners, customers, and end users free access to type with or alter the outline of the text using my fonts to create their own custom designs, including offering for free, end user commercial rights to sell their custom designs.

Dkt. 342-25, N. Laatz Decl. 17:23-18:1

31

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Monica McGhie's November 2, 2016 inquiry to Nicky Laatz**

- Nothing in the message indicated Zazzle intended to secretly acquire the License in May 2017 and thereafter breach and infringe Nicky Laatz's IP.

- Rather, the message indicated to Nicky Laatz that

  1. Zazzle was aware that it needed a broader type of license than the "one seat" license offered via Creative Market to lawfully use the BE Trio and Software; and

  2. Zazzle could only acquire a broader license directly from Nicky Laatz, if at all.

Dkt. 347-25, N. Laatz Decl. 18:6-10

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**✗ Zazzle's promotional emails featuring the BE Trio**

- Zazzle claims that "Plaintiff received at least 677 emails from Zazzle during the limitations period, including at least 48 that included images of products featuring Blooming Elegant," and that "Zazzle's records reflect that Plaintiff opened at least 32 of these marketing emails."

  Dkt. 338, MSJ at 3, 8

  - No overlap between the emails purportedly featuring the BE Trio and the 32 purportedly opened.

    Dkt. 342-49, Garrie Decl. ¶ 19



**677**
Zazzle claims Plaintiff received 677 emails from Zazzle

**48**

**48**
Emails included images of products purportedly featuring Blooming Elegant

**32**

**32**
Marketing emails purportedly were opened by Plaintiff according to Zazzle's records

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

✗ **Zazzle's promotional emails featuring the BE Trio**

▪ Nicky Laatz did not see these emails because she had email rules that automatically sent all emails from Zazzle to the trash.

Dkt. 342-25, N. Laatz Decl. 24:4-16

▪ Forensic analysis confirms Nicky Laatz's email filtering rule and found no evidence that she saw or opened any of these emails.

Dkt. 342-49, Garrie Decl. ¶¶ 8-19

▪ Even had Nicky Laatz seen any of the emails, their images were not evidence of Zazzle's use of the BE Trio.

Dkt. 338-3 (Nicky Laatz Dep. Tr.) at 184:14-23;<br>Dkt. 342-25, N. Laatz Decl.  21:27-22:4

## Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**❌ Zazzle's blog posts with products allegedly depicting the BE Trio (Nolan Decl. Ex. I1-I8)**



Dkt. 338-15 (Nolan Decl. Ex. I3)

- No evidence that Nicky Laatz saw any of these posts.

- None of these "reference by name" Blooming Elegant.

  Dkt. 338-1, Nolan Decl. ¶ 10; Dkts. 338-13 through 338-21 (Nolan Decl. Exs. I1-I8)

- Even had Nicky Laatz seen these posts, they do not reveal whether the designs featuring the BE Trio were created using the Zazzle Design Tool or were static images of products lawfully created by licensed designers.

  Dkt. 342-25, N. Laatz Decl. 21:28-22:8

# Defendants Have Not Established That Nicky Laatz Had Actual or Constructive Knowledge

**At best, there are genuine disputes of material fact as to whether any of these are sufficient to show actual or constructive knowledge:**

✗ **Nicky Laatz's use of Zazzle from 2014-2016**

✗ **Nicky Laatz's use of the #zazzle hashtag on Instagram**

✗ **Zazzle tagging Nicky Laatz in an Instagram post on September 27, 2018**

✗ **Nicky Laatz following Zazzle on Instagram**

✗ **A January 2020 email to John Laatz saying "I liked the Font on Zazzle"**

✗ **Monica McGhie's November 2, 2016 inquiry to Nicky Laatz**

✗ **Zazzle's promotional emails featuring the BE Trio**

✗ **Zazzle's blog posts with products allegedly depicting the BE Trio**

## Defendants Have Not Met Their Burden
## on Their Statute of Limitations Defense

- Defendants have not established that there is **no genuine dispute of fact** as to whether Nicky Laatz knew or should have discovered "**all the facts essential to [each of] the cause[s] of action**" more than 3 years (for fraud and copyright/trademark infringement) or 4 years (for breach of contract) before she filed suit.

*See Roches v. Cnty. of Santa Clara*, 2018 WL 3344647, at *4 (N.D. Cal. Jul. 9, 2018) (cited in Dkt. 342, Opp. at 9)

## Zazzle's Actions Constitute Multiple Infringements
## Under the Separate-Accrual Rule, Precluding Summary Judgment

- Defendants wrongly claims the separate-accrual rule does not apply because the harm "arose from a single transaction," and Zazzle's "download and installation of the BE software on its servers, and then making BE available in the Design Tool," which it claims was "completed by October 2017."

  Dkt. 338, MSJ at 10; Dkt. 347, Reply at 5-6

- Contrary to Zazzle's new claim on Reply that "it took no further or different action after 2017 with the 'software,'" **many of the 100+ servers onto which Zazzle copied the BE Software did not exist in 2017**.

  Dkt. 347, Reply at 6; Dkt. 342-12 (Zazzle 2nd Am. Resp. to Interrs.) at 9-15; Dkt. 342-49, Garrie Decl. ¶¶ 29-30; Dkt. 342-52 (Garrie Rpt.) at 6, 27-32, 36

- Garrie testified that Zazzle generated a derivative work of the BE Software and distributed it to the user's computer every time a user used the BE Trio in the Design Tool.

  Dkt. 342-49, Garrie Decl. ¶¶ 26-28; Dkt. 342-52 (Garrie Rpt.) at 27-32, 36-37

- Zazzle admits visitors could use the BE Trio in the Design Tool until **March 13, 2023**, so acts of infringement continued to that date.

  See Dkt. 342-21 (Zazzle Supp. Resp. to Interrs., Set Three) at 8-9 (Am. Resp. to Interr. No. 25)



# Defendants' MSJ as to Nicky Laatz's Breach of Contract Claim Fails

# Elements of a Breach of Contract Claim

(1) Existence of a contract

(2) Plaintiff's performance or excuse for failure to perform

(3) Defendant's breach

(4) Damages to Plaintiff from Defendant's Breach

*McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1489
(cited in Dkt. 338, MSJ at 22)

# Defendants' MSJ

- Defendants argue only that there is no triable issue regarding:

  - "the terms of the license."

    Dkt. 338, MSJ at 22
    *See also* Dkt. 342, Reply at 14-15

  - "Zazzle's alleged breach."

    Dkt. 338, MSJ at 23
    *See also* Dkt. 342, Reply at 15

  - "Mr. Alkhatib's alleged breach."

    Dkt. 338, MSJ at 24

- Defendants do not argue:

  - There is no contract
  - Nicky Laatz failed to perform
  - Nicky Laatz did not suffer damages as a result of Defendants' breaches

## The Court Already Ruled as a Matter of Law
## There Is a Contract

- On Nicky Laatz's Refiled MSJ (Dkt. 89), the Court ruled as a matter of law that Defendants assented to the Blooming Elegant License consisting of <u>at least</u> three documents:

  Amended Order Granting in Part and Denying in Part
  Dkt. 174, Plaintiff's Motion for Partial Summary Judgment at 21

  - The License Terms

    Dkt. 89-41

  - The Creative Market Terms of Service

    Dkt. 89-40

  - The Blooming Elegant Offering Page

    Dkt. 89-36

## There Is a Triable Issue of Fact as to Whether Defendants Assented to the License FAQ

- Defendants falsely claim "the Court already rejected Plaintiff's claim that there was mutual assent to the 'License FAQ' document … and discovery has confirmed there was no such assent."

  Dkt. 338, MSJ at 22

- The Court instead found Nicky Laatz had not **_yet_** "established Defendants' assent to any terms contained in the License FAQ."

  Dkt. 174, Amended Order at 15

- Discovery has since shown that a reasonable jury could conclude that Defendants assented to the terms on the License FAQ page.

## There Is a Triable Issue of Fact as to Whether Defendants Assented to the License FAQ

- Zazzle employees, including its 30(b)(6) designee, admitted reading the Blooming Elegant Offering Page.

**Q.** And Ms. Sheu, was this the offering page on creative market for the Blooming Elegant Trio that you were referring to earlier that you reviewed?

**A.** Yes. This is the one that I saw, I believe. Yeah, it looks like it versus the other one, which I could not see clearly.

Dkt. 342-9 (Sheu Dep. Tr.) at 46:2-8

**Q.** Did you review this document prior to the purchase of the license to Blooming Elegant in -- I believe it was May of 2017?

**A.** Yes.

Dkt. 342-9 (Sheu Dep. Tr.) at 46:15-18

45

## There Is a Triable Issue of Fact as to Whether Defendants Assented to the License FAQ

- The Blooming Elegant Offering Page contained language stating that the Blooming Elegant License allowed "Unlimited Sales, Unlimited Projects, **with only a few exceptions**" followed by a link to the License FAQ.

COMMERCIAL USE ALLOWED- The Standard License on Creative Market allows Commercial Use of fonts and add-ons :) Unlimited Sales, Unlimited Projects with only a few exceptions - See https://creativemarket.com/licenses

Dkt. 89-36 (Blooming Elegant Offering Page)

46

## There Is a Triable Issue of Fact as to Whether Defendants Assented to the License FAQ

- Zazzle's 30(b)(6) designee admitted reading that the Blooming Elegant License had "exceptions" followed by a link to the License FAQ.

> **Q.** Could you read along with me the first full paragraph, beginning below the image at the top of the page, starting with "Commercial Use Allowed". It reads:
>
> > (As read): "Commercial Use Allowed - The Standard License on Creative Market allows Commercial Use of fonts and add-ons, Unlimited Sales, Unlimited Projects, with only a few exceptions. See https://creativemarket.com/licenses."
>
> You read this text before purchasing the Blooming Elegant license, correct?
>
> **A.** Yes.
>
> **Q.** So you read the text that says the word "exceptions" to the unlimited sales and unlimited projects that the license offered, correct?
>
> **A.** Yes.

Dkt. 342-9 (Sheu Dep. Tr.) at 47:19-48:11

## There Is a Triable Issue of Fact as to Whether Defendants Assented to the License FAQ

- The only evidence Defendants proffer for their claim they did not assent consists of self-serving testimony of Zazzle employees that they do not recall reading the "exceptions" in the License FAQ seven years ago.

  *See* Dkt. 338, MSJ at 22

- The Court cannot weigh the credibility of these witnesses' statements on summary judgment.

  *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017)
  (cited in Dkt. 342, Opp. at 13)

- Even if the License FAQ is not itself part of the BE License, it is relevant and admissible as parol evidence to help interpret the License Terms, which also include a link to the License FAQ after the question "Have questions or need more clarification?"

  *See* Dkt. 174, Amended Order at 15

## There Is a Triable Issue of Fact as to the Interpretation of the Blooming Elegant License Terms

▪ Defendants allege that the terms of the Blooming Elegant License are ambiguous, thus creating a triable issue of fact that cannot be resolved on summary judgment.

<u>**REQUEST FOR ADMISSION NO. 211:**</u>

Admit that the LICENSE is ambiguous.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 211:**</u>

Zazzle objects to this Request on the ground that the vague and ambiguous defined terms render the Request vague and ambiguous.   Subject to and notwithstanding the foregoing objections, Zazzle responds as follows: Zazzle admits that LICENSE as Plaintiff defines it is ambiguous, but the license as Zazzle defines it is not ambiguous.   Except as expressly admitted, Zazzle denies the remainder of this Request.

Dkt. 342-3 (Zazzle's Amended Responses and Objections to Nicky Laatz's RFAs, Set One)

## There Is a Triable Issue of Fact as to the Interpretation of the Blooming Elegant License Terms

- Defendants' falsely claim the Blooming Elegant License only covers the "Blooming Elegant Software" and not the "typefaces."

  *See* Reply at 14-15; *See* Dkt. 338, MSJ at 23

- The Blooming Elegant License expressly and repeatedly uses the term "Font" (not "typeface" or "type design") as the "Item" under the License, and restricts use of the:

  - "Installable items (**Fonts** and Add-Ons) can be used in an unlimited number of projects and End Products for Sale (one seat per license)."

  - "Installable Items (**Fonts** and Add-Ons): … you may purchase a **font** and use it to …"

  - You may not make the **Item** available on a … shared drive, or the like for the purposes of sharing … the **Item** …"

  Dkt. 89-41 (Blooming Elegant License) at 1, 2 (bold added)

50

## There Is a Triable Issue of Fact as to the
## Interpretation of the Blooming Elegant License Terms

- The Court already held that Nicky Laatz's breach of contract claim is not preempted because, *inter alia*:

  - The BE License "prohibited the purchaser from making the [BE] Trio available on a shared system."

  - "The breach of contract claim here 'concern[s] the unauthorized use of the software's end-product'"

    Dkt. 124 (Order Denying Motion to Dismiss First Amended Complaint) at 17
    Citing *Altera Corp. v. Clear Logic, Ind.*, 424 F.3d 1079, 1090 (9th Cir. 2005)

## There Is a Triable Issue of Fact as to
## Defendants' Breach of the Blooming Elegant License

- There are many terms in the Blooming Elegant License that Defendants breached, including:

    - The License granted Mohamed Alkhatib a "non-exclusive, ***non-transferable right to use***, modify, and reproduce the Item worldwide."

        Dkt. 89-41 (Blooming Elegant License Terms) at 2

    - The License limited use of "Fonts" to "one seat per license":

        - "*Installable items (Fonts and Add-Ons) can be used in an unlimited number of products and End Products for Sale (***one seat per license***)." …

            *Id.* at 1

# There Is a Triable Issue of Fact as to Defendants' Breach of the Blooming Elegant License

- There are many terms in the Blooming Elegant License that Defendants breached, including:

  - The License stated the licensee "may not sublicense, … ***share***, transfer, or otherwise redistribute the Item (e.g. … ***in a tool or template***, … and/or not incorporated into an End Product) ***under any circumstances, not even for free***."

    *Id*. at 3, ¶ 5

  - The License stated the licensee "may not make the Item available on a … shared drive, or the like for the purposes of sharing or transferring the Item …"

    *Id*. at 3, ¶ 6

  - The License stated the licensee "may not publicly display the Item … in any digital format without imposing technical or written restrictions to prevent the unauthorized use of the Item by third parties."

    *Id*. at 4, ¶ 8

FOLLOWING SLIDE CONTAINS CONFIDENTIAL INFORMATION

# There Is a Triable Issue of Fact as to
# Defendants' Breach of the Blooming Elegant License

26. As set out in the Expert Report of Daniel Garrie, every time a user incorporated text in the Blooming Elegant Trio of Fonts into a design using Zazzle's Design Tool, Zazzle's servers used the OTF files for the Blooming Elegant Trio of Fonts (the "Blooming Elegant OTF Files") to generate a derivative work of the Blooming Elegant OTF Files, which was transferred to the user's computer or mobile device to render text in the Blooming Elegant Trio of Fonts. *See* Exhibit C, at 27-32, 36.

27. As set out in further detail in my expert report, the general technical process by which fonts are displayed in a text object within Zazzle's Design Tool is as follows: every time a user applies a font, such as the Blooming Elegant Trio of Fonts, to text in a text object within the Design Tool, the Design Tool sends requests from the user's device to Zazzle's servers, which use the font software for the particular font (e.g. the Blooming Elegant OTF Files) to generate images of the requested text in that font. *Id.* Zazzle's servers then send the images of the text in the selected font to the user's device and the images are displayed in the Design Tool. *Id.*

28. Thus, every time a user incorporated text in the Blooming Elegant Trio of Fonts into a design using Zazzle's Design Tool, Zazzle's servers used the Blooming Elegant OTF Files.

- Evidence shows Zazzle breached all of the aforementioned terms.

Dkt. 342-49, Garrie Decl. ¶¶ 26-28

FOLLOWING SLIDE CONTAINS CONFIDENTIAL INFORMATION                    CONFIDENTIAL

# There Is a Triable Issue of Fact as to
# Defendants' Breach of the Blooming Elegant License

30. By loading Blooming Elegant OTF Files onto its shared drives and servers, Zazzle enabled the Blooming Elegant Trio of Fonts to be accessible and usable on Zazzle's website and mobile design tools, as summarized above and described in further detail in my expert report. *Id.* at 27-32, 36.

Dkt. 342-49, Garrie Decl. ¶ 30

CONFIDENTIAL

# There is a Triable Issue of Fact as to Defendants' Breach of the Blooming Elegant License

- Defendants claims Zazzle did not breach because:

  - Zazzle never "incorporated" the BE Software OTF files "into the Design Tool"

  - When a user selected Blooming Elegant, "Zazzle's servers used the OTF files for the Blooming Elegant Trio of Fonts," and "users of the Design Tool received only 'images of the requested text in that font.'"

  - Thus, no "Zazzle user ever received, used, or accessed the licensed OTF files"

    Dkt. 347, Reply at 15

- Nicky Laatz proffers testimony from Daniel Garrie that disputes all these points.

  Dkt. 342-49, Garrie Decl. ¶¶ 26-28; Dkt. 342-52 (Garrie Rpt.)

- This incorrectly limits the License to the BE Software, not the BE Trio.

- This is a distinction without a difference, like arguing a user of cloud software is not actually "using" or "accessing" it because the software is running on a server instead of their computer.

## There Is a Triable Issue of Fact as to
## Alkhatib's Breach of the Blooming Elegant License

- Defendants claim Mohamed Alkhatib cannot be liable for breaching the Blooming Elegant License as "an individual defendant acting as employee and/or agent of his employer."

  Dkt. 338, MSJ at 24

- This misstates the case law cited and relied on by Defendants:

  - "[A]n agent acting on behalf of a **disclosed principal** cannot be held personally liable on the contract."

    *FDIC v. Frankel*, 2011 WL 5975262, at *5 (N.D. Cal. Nov. 29, 2011)
    (cited in Dkt. 338, MSJ at 24)

## There Is a Triable Issue of Fact as to
## Alkhatib's Breach of the Blooming Elegant License

- Alkhatib was not a "disclosed principal" of Zazzle when he purchased the Blooming Elegant License.

- When an agent executes a contract on behalf of a principal "without disclosing [his or her] agency," the other party can sue ***both*** agent and principal for breach.

  *Klinger v. Modesto Fruit Co.,* 107 Cal. App. 97, 99, 101 (1930)
  (cited in Dkt. 342, Opp. at 24)

- "The agent may be held liable for his negligence in failing to disclose his principal and because the agent has seen fit to contract in his own name." *Id.*

- Defendants fail to address, and thereby concede, this argument on Reply.

58

## There Is a Triable Issue of Fact as to
## Alkhatib's Breach of the Blooming Elegant License

- Undisputed that Nicky Laatz received no information from Mohamed Alkhatib or Creative Market indicating he purchased the Blooming Elegant License for Zazzle, including his credit card information or email address.

  Dkt. 342-25, N. Laatz Decl. at 15:17-17:16

- Defendants admit Mohamed Alkhatib "never communicated with Plaintiff about the license."

  Dkt. 338, MSJ at 3



# Defendants' MSJ as to
# Nicky Laatz's Fraud Claim Fails

# The Limited Bases for Defendants' Motion

- Defendants present four bases for summary judgment as to Nicky Laatz's fraud claims. Defendants incorrectly claim:

  - "Defendants made no false statement to Plaintiff, Creative Market, or anyone else when Mr. Alkhatib, acting on Zazzle's behalf, purchased the BE license on Creative Market."

    Dkt. 338, MSJ at 10

  - "Zazzle 'concealed' nothing" and had no duty of disclosure when purchasing the Blooming Elegant License.

    *Id.* at 11

  - "[T]he only terms relating to the BE license that any Zazzle employee was aware of before purchasing the license were those on the BE Offering Page," and thus, they did not intend to breach the License Terms and/or FAQ.

    *Id.* at 12-13

  - "[N]either Zazzle nor Mr. Alkhatib … did anything to conceal Zazzle's public use of BE," and "everything Zazzle did with respect to obtaining the license and then using BE was open and public," thus, there was no intent to breach or defraud.

    *Id.* at 13; Dkt. 347, Reply at 6

# The Limited Bases for Defendants' Motion

- A fraud claim has five elements:

  1.  misrepresentation (false representation, concealment, or nondisclosure)

  2.  knowledge of falsity

  3.  intent to defraud

  4.  justifiable reliance

  5.  damage

  *Engalla v. Permanente Med. Grp.,* 15 Cal. 4th 951, 974 (1997)
  (cited in Dkt. 342, Opp. at 11)

- Defendants do not argue lack of damages or justifiable reliance.

# Defendants Misstate the Law re: Fraud

- Defendants claim that fraud requires "a 'false representation' made with fraudulent intent."

Dkt. 347, Reply at 6

- Not so. A promise to do something made with reckless disregard as to whether or not the party will actually do that thing is also a form of promissory fraud.

  - "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."

    *Engalla v. Permanente Med. Grp.,* 15 Cal. 4th 951, 974 (1997)<br>(cited in Dkt. 342, Opp. at 11)

  - "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Id.*

## Defendants' Intent Was Always to Put
## the BE Trio in Zazzle's Design Tool

- Zazzle's 30(b)(6) designee confirmed Zazzle's intent, even before purchasing the Blooming Elegant License, was to put the Blooming Elegant Trio in Zazzle's design tool.

> **Q.** Okay. So at the time that Ms. McGhie reached out in November of 2016, the idea of the project was that she was looking for fonts to incorporate into Zazzle's design tool; is that correct?
>
> **A.** Yes.

Dkt. 342-22 (Liu Dep. Tr.) at 87

## At Minimum, Defendants Recklessly Disregarded Whether They Would Comply With BE License Terms

- Defendants claim that "the only terms relating to the BE license that any Zazzle employee was aware of before purchasing the licensee were those on the BE Offering page stating that the purchaser could 'Use This Font For: Commercial Use, Unlimited Number of Projects, [and] Unlimited End Products for Sale."

  Dkt. 338, MSJ at 12

- **This is false.**

- Zazzle's 30(b)(6) designee admitted that she read—before Alkhatib purchased the Blooming Elegant License—the portion of the Blooming Elegant Offering Page that said the above terms have "exceptions."

  Dkt. 342-9 (Sheu Dep. Tr.) at 45:2-48:7

## At Minimum, Defendants Recklessly Disregarded Whether They Would Comply With BE License Terms

**Q.**  Could you read along with me the first full paragraph, beginning below the image at the top of the page, starting with "Commercial Use Allowed". It reads:

(As read): "Commercial Use Allowed - The Standard License on Creative Market allows Commercial Use of fonts and add-ons, Unlimited Sales, Unlimited Projects, with only a few exceptions. See https://creativemarket.com/licenses."

You read this text before purchasing the Blooming Elegant license, correct?

**A.**  Yes.

**Q.**  So you read the text that says the word "exceptions" to the unlimited sales and unlimited projects that the license offered, correct?

**A.**  Yes.

Dkt. 342-9 (Sheu  Dep. Tr.) at 47:19-48:11

FOLLOWING SLIDE CONTAINS CONFIDENTIAL INFORMATION

# At Minimum, Defendants Recklessly Disregarded Whether They Would Comply With BE License Terms

- Even if a jury believed no one at Zazzle read any other terms of the BE License, including clicking the link to read the "exceptions," the evidence shows reckless disregard for the full license terms and whether Zazzle would comply with them.

- Zazzle's in-house counsel, who had the "responsibility of reviewing license terms prior to Zazzle purchasing software licenses," received a link to the BE Offering Page before purchase of the BE License. She failed to review the license terms.

> **Q.** … Prior to May 4th, 2017, did you take any steps to review any of the documents or terms associated with the purchase of the Blooming Elegant Trio Font software package?
>
> * * *
>
> **A.** I don't have any recollection of doing so, and I don't have any notes to indicate that I did so.

Dkt. 342-14 (Larson Dep. Tr.) at 42:11-18; *see also id.* at 35:1-9

## A Jury Could Disregard as Unreliable
## the Self-Serving Testimony of Zazzle's Employees

- Defendants' claim that no employee knew the terms of the BE License other than "Commercial Use, Unlimited Number of Projects, [and] Unlimited End Products for Sale" – because no one recalls clicking the link to read about the "exceptions" seven years ago – is based entirely on Zazzle employee testimony.

- The Court cannot weigh the credibility of these witnesses' statements on summary judgment.

*Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017)
(cited in Dkt. 342, Opp. at 13)

## A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use

- Zazzle employees set up a folder called "Fonts – Legal" to collect license information and terms for the font licenses purchased along with and including the BE License on May 4, 2017.

- Zazzle could not determine if the folder ever contained copies of the BE License Terms or BE License FAQ.

  Dkt. 342-22 (Liu Dep. Tr.) at 80:11-81:14

- The contents of the folder were altered *after* this dispute began.

# A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use



Dkt. 342-23 (Liu Dep. Ex. 231)

# A Jury Could Conclude Defendants Knew the BE License Did Not Cover Zazzle's Intended Use

- On the same day Alkhatib purchased the BE License, Zazzle also directed Alkhatib to purchase (as part of the same project) a license to a font called Beyond the Mountains.

  Dkt. 342-11 (Alkhatib Dep. Tr.) at 208:9-209:19

- Zazzle considered, but Alkhatib did not purchase, a more expensive license that would have covered Zazzle's intended use of the other font.
- Zazzle wrongfully attempted to conceal this information through false claims of attorney-client privilege.

  Dkt. 277, Order Following Review of *In Camera* Documents at 5

| # | FONT TITLE | STYLE | COST | LEGAL NOTES |
|---|---|---|---|---|
| 1 | Master of Break | Script | $0.00 | Confirmed with Designer, [REDACTED FOR PRIVILEGE] |
| 2 | Beyond the Mountain | Script | $1,490.00 | Confirmed with Designer, [REDACTED FOR PRIVILEGE] |
| 3 | Bandung + Aceserif | Script | $25.00 | Creative market says unlimited use, screen captured |
| 4 | Debby Free Font | Script | $0.00 | Free, screen captures |
| 5 | Might Font Pack | Script | $20.00 | Creative market says unlimited use, screen captured |
| 6 | Sugar Plum Script | Script | $15.00 | Creative market says unlimited use, screen captured |
| 7 | The Blooming Elegant Font Trio | Script | $20.00 | Creative market says unlimited use, screen captured |
| 8 | Variane | Script | $0.00 | Free for commercial use |
| 9 | Waltograph | | | |
| 10 | Disney | | | |
| **Total** | | | **$1,570.00** | |

Dkt. 342-16
(Liu Dep. Ex. 207)

CONFIDENTIAL

## A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use

- Zazzle considered purchasing an unlimited license to the font Beyond the Mountains.



Dkt. 342-19
(Liu Dep. Ex. 211)

73

## A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use

- The unlimited license Zazzle considered, but opted not to purchase, would have covered Zazzle's intended use.

**Unlimited License**

This licence is made for companies that need the fonts for an unlimited number of devices and the possibility to re-distribute to related businnesses.
Additionally, this license includes all the licenses listed above.
This license is not limited in time, it means that once you buy it, you can use it as long as you want.

Dkt. 342-19 (Liu Dep. Ex. 211)

## A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use

- On the same day Mohamed Alkhatib purchased the BE License, as part of the same project, he also reviewed the terms of and purchased a $49 license to Beyond the Mountains, instead of the $1490 unlimited license Zazzle originally considered.

| | |
|---|---|
| **From**: | Mohamed Alkhatib [mohamed@zazzle.com] |
| **Sent**: | 5/4/2017 3:08:19 PM |
| **To**: | Bobby Beaver [bobby@zazzle.com] |
| **Subject**: | RE: Fonts?! |

I coordinated the payment and did some basic verifying of the license type.  Monica said it will be used for production and web-front. Based on that I chose the license. It is $49 and I can upgrade without issues.

Dkt. 342-15 (Larson Dep. Ex. 202)

## A Jury Could Conclude Defendants Knew
## the BE License Did Not Cover Zazzle's Intended Use

- Mohamed Alkhatib knew (and he informed Zazzle executives and counsel) that the $49 Beyond the Mountains license he purchased did not cover Zazzle's intended use.

---

**From:** Mohamed Alkhatib
**Sent:** Thursday, May 04, 2017 2:50 PM
**To:** Bobby Beaver <bobby@zazzle.com>; Monica McGhie <Monica.McGhie@zazzle.com>; Liana Larson <liana.larson@zazzle.com>
**Subject:** RE: Fonts?!

There are different license types. http://www.stereo-type.fr/faq/

This licence is made for individuals, studios or agencies that want to include our fonts in websites or applications for dynamic display of texts. You're allowed to install the font on a maximum of 10 devices.
This license is not limited in time, it means that once you buy it, you can use it as long as you want.
Of course, this license doesn't allow re-distribution of the font in any form.

---

Dkt. 342-15 (Larson Dep. Ex. 202)

CONFIDENTIAL

## A Jury Could Conclude Defendants Fraudulently Concealed Defendants' Agency Relationship and Intended Use

- Fraudulent concealment requires "concealment of material facts and a duty to disclose them."

  *Jackson v. City of Modesto*, 2022 WL 3083649 at *7 (E.D. Cal. Aug. 3, 2022) (cited in Dkt. 338, MSJ at 11)

- It is undisputed that Alkhatib failed to disclose his agency relationship with Zazzle, including the fact that the license was purchased for use by Zazzle on its website.

  - Nicky Laatz did not receive any information indicating that Alkhatib was working on behalf of Zazzle, even though Alkhatib could have provided this information via Creative Market.

    Dkt. 342-10 (Reynaud Dep.) at 174:7-17; Dkt. 342-25, N. Laatz Decl. at 16:19-21

  - "Nothing at all was communicated to Plaintiff when Mr. Alkhatib purchased the license for Zazzle."

    Dkt. 338, MSJ at 10

- An agent acting on behalf of a principal is "negligen[t] in failing to disclose his principal," implying a duty on behalf of an agent to disclose the agency relationship.

  *Klinger v. Modesto Fruit Co.*, 107 Cal. App. 97, 101 (1930) (cited in Dkt. 342, Opp. at 24)

# Summary

- There are genuine disputes of material fact as to:

    - Whether Zazzle employees acted with reckless disregard for the truth of Zazzle's "intention to perform" its obligations under the BE License.

    - Whether Defendants fraudulently concealed Mohamed Alkhatib's agency relationship with Zazzle.

    - Whether Zazzle employees actually **_knew_** that their intended use of the BE Trio and Software would violate the BE License before purchase.

- A reasonable jury, weighing the evidence, could and should conclude that Zazzle and Alkhatib committed fraud.



# Zazzle's MSJ as to Nicky Laatz's Copyright Infringement Claim Fails

# Elements of a Copyright Infringement Claim

- "[A] claim of copyright infringement requires proof of two elements:

    - '(1) ownership of a valid copyright, and

    - (2) copying of constituent elements of the work that are original.'"

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340, 361 (1991)
(cited in Dkt. 89, Pltf's Refiled MPSJ at 23)

# Zazzle Fails to Show No Genuine Dispute of Material Fact re: Nicky Laatz's Ownership of Valid Copyrights to the BE Software

## Zazzle Misstates the Law on the Copyrightability of Font Software

- Zazzle argues Nicky Laatz's copyrights in the Blooming Elegant font software are invalid because:

  - Copyright Office secretly changed the rules such that font software like the BE Software can "no longer" be treated and protected as a "computer program," only "font data"

  - Must be "hand-coded," which their expert interprets to mean "manually typed"

  - Cannot be created using a visual font editing program like FontLab

  - **All of these claims are WRONG**

    Dkt. 338, MSJ at 14-18; Dkt. 338-150, Rucinski Decl. ¶¶ 15-17, 37-48;
    Dkt. 347, Reply at 8-12

# Regulatory Law on Copyright Protection for Font Software

- "Typeface as typeface" is "not subject to copyright." 37 C.F.R. § 202.1(e). But …

- Software that generates a digital typeface (i.e., a font) has been copyrightable since **1992**.

- The 1992 Decision and Regulation are the **only** actual regulations the Copyright Office has promulgated governing the copyrightability of font software.

- During the comment period, the Copyright Office considered public hearing and submissions, including presentations by Adobe demonstrating the font design process using "**visual font editors**" to move reference points and thereby create digital font software.

*See* Dkt. 338-97 (Phinney Rebuttal Rpt.) ¶ 19;
Dkt. 338-82 (Phinney Rpt.) ¶¶ 28, 47;
Dkt. 342-53, Phinney Decl. ¶¶ 38-42, 65

# Regulatory Law on Copyright Protection for Font Software



[C]omputer programs designed for generating typeface in conjunction with low resolution and other printing devices may involve original computer instructions entitled to protection under the Copyright Act.

Registrability of Computer Programs that Generate Typefaces, 57 Fed.Reg. 6201-01 at 6202, 1992 WL 29306 (February 21, 1992) (cited in Opp (Dkt. 342) at 14-15)

# Regulatory Law on Copyright Protection for Font Software



[T]he creation of scalable font output programs to produce harmonious fonts consisting of hundreds of characters typically involves many decisions in drafting the instructions that drive the printer. The expression of these decisions is neither limited by the unprotectible shape of the letters nor functionally mandated. ==This expression, assuming it meets the usual standard of authorship, is thus registrable as a computer program.==

Registrability of Computer Programs that Generate Typefaces, 57 Fed.Reg. 6201-01, at 6202, 1992 WL 29306 (February 21, 1992) (cited in Opp (Dkt. 342) at 14-15)

# Regulatory Law on Copyright Protection for Font Software



In registering such works, "descriptions such as 'computer program' should be used" by applicants. *Id*. at *6201-02.

Registrability of Computer Programs that Generate Typefaces, 57 Fed.Reg. 6201-01 at 6201-02, 1992 WL 29306 (February 21, 1992) (cited in Opp (Dkt. 342) at 14-15)

## *Adobe Sys., Inc. v. S. Software Inc.,*
## 1998 WL 104303 (N.D. Cal. Feb. 2, 1998)

- Adobe bought "font files from third parties" containing "a digital representation of the x and y coordinates for the glyphs … ."

  *Id*. at *1

- "An Adobe editor then display[ed] and manipulat[ed] the on-curve and off-curve reference points of each displayed glyph altering its outline … to efficiently, aesthetically and accurately render the appearance of each glyph." *Id.*

- Adobe compiled the coordinates and instructions into software files. *Id.*

- "The fact that a computer program produces unprotectable typefaces does not make the computer program itself unprotectable."

  *Id*. at *3

## *Adobe Sys., Inc. v. S. Software Inc.,*
## 1998 WL 104303 (N.D. Cal. Feb. 2, 1998)

- The court noted that "[t]o qualify for copyright protection, a work must be original," meaning only that "the work was independently created … and [] possesses **at least some minimal degree of creativity**."

  *Id*. at *5

- "[T]he requisite level of creativity is **extremely low; even a slight amount will suffice**"—"no matter how crude, humble or obvious it might be." *Id.*

- Applying this standard, the court held that there "is some creativity in designing the font software" because "[the glyph] **does not dictate every point that must be chosen**." *Id.*

- The court found that Adobe's "**editors make creative choices as to what points to select** based on the image in front of them on the computer screen. **The code is determined directly from the selection of the points**. Thus, any copying of the points is copying of literal expression, that is, in essence, copying of the computer code itself." *Id.*

- "Accordingly, the court finds that the Adobe font software programs are protectable original works of authorship." *Id.*

# Expert Discovery Reveals Context re: *Adobe*

- This Court previously distinguished *Adobe* because "[Adobe] created the software that produced the font programs," whereas Nicky Laatz used a third-party visual font editor.

  *Dkt. 176, Amended Order at 8*

- **Nothing in *Adobe* turned on <u>who created the font editor</u> used to manipulate reference points and compile them with other instructions into other software.**

- By the time of the *Adobe* decision, use of third-party font editors had been the dominant way of making fonts for a decade.

  *Dkt. 338-82 (Phinney Rpt.) ¶ 53;*
  *Dkt. 342-53, Phinney Decl. ¶ 71*

- Like Nicky Laatz, Adobe also migrated to using third-party visual font editors to create its fonts and font software beginning in the 90s and had completely transitioned by 1998, rather than updating its own tools.

  *Dkt. 338-82 (Phinney Rpt.) ¶ 53;*
  *Dkt. 342-53, Phinney Decl. ¶¶ 62, 74*

# Expert Discovery Reveals Context re: *Adobe* and the Compendium

- This Court previously distinguished *Adobe* because the Compendium states "The registration specialist may communicate with the applicant if it appears that the author merely assigned coordinates to a particular letterform and then used <u>a third party program</u> to render typeface or typefont from those coordinates (but did not create any of the source code for that program)."

  Dkt. 176, Order Denying MTD Counterclaim at 8; Compendium § 723

- The language above has been included in the Compendium since 2014, yet the Copyright Office has repeatedly registered fonts that were explicitly created with FontLab, Fontographer, and other third-party visual font editors since then.

  Dkt. 338-82 (Phinney Rpt.) ¶ 40; Dkt. 342-53, Phinney Decl. ¶¶ 53, 72;
  Dkt. 342-55, Sandler Decl. ¶¶ ¶¶ 45-46, 49-51

- <u>Undisputed evidence</u> shows the Copyright Office registered font software that was explicitly created with "**third party software**."

  Dkt. 342-56 (copyright registrations) at 3, 5, 15, 44 (stating "created by third party software")

- All (or nearly all) font designers design and create fonts and font software by using visual font editors like FontLab, similar to Nicky Laatz's process.

  Dkt. 338-82 (Phinney Rpt.) ¶¶ 2, 21, 40; Dkt. 342-53, Phinney Decl. ¶¶ 33-37, 53, 60-63;
  Dkt. 342-55, Sandler Decl. ¶¶ 37-44

## Unrebutted Testimony Shows Nicky Laatz's Creation of the Blooming Elegant Software Exceeds Standards Set by the 1992 Decision and Regulation and *Adobe*

**Nicky Laatz's** testimony is that she spent several weeks and over a hundred hours creating the BE Trio and Software, including, inter alia:

- Designed 631 unique glyphs, including letters, stylistic alternatives, ligatures (e.g., pairs), numbers, punctuation, symbols, and swashes

- Drew some in Adobe Illustrator, and some in FontLab, then <u>selected and manipulated "on-curve" and "off-curve" reference points</u> and letter spacing for each glyph

- Coded instructions for how glyphs appear next to each other by choosing font-wide variable values like ascender and descender height

- Typed and inserted custom OpenType feature code for things like ligatures and stylistic alternatives

- Used FontLab to compile all of the above into OTF software files that are installable on a computer and can be used to render the BE Trio of fonts

Dkt. 345-25, N. Laatz. Decl at 3:4-6:23

92

## Unrebutted Testimony Shows Nicky Laatz's Creation of the Blooming Elegant Software Exceeds Standards Set by the 1992 Decision and Regulation and *Adobe*

**Thomas Phinney** – product manager for fonts at Adobe during the seminal case; CEO of FontLab; expert font designer:

- Reviewed and analyzed Nicky Laatz's testimony, the BE Software installable OTF files, and her copyright applications and deposits of source code

- Corroborated her description of the design process, and that it was consistent with industry practices dating back to Adobe in the 1990s, including those at the time of the 1992 Decision and Regulation and the *Adobe* decision

- Confirmed that her copyright applications and deposits were consistent with industry practices and with font software he helped register with the Copyright Office

Dkt. 338-82 (Phinney Rpt.); Dkt. 338-97 (Phinney Rebuttal Rpt.);
Dkt. 342-53, Phinney Decl. ¶¶ 33-37, 46-47, 53-57, 60-63, 72

## Unrebutted Testimony Shows Nicky Laatz's Creation of the Blooming Elegant Software Exceeds Standards Set by the 1992 Decision and Regulation and *Adobe*

**Stuart Sandler** – expert font designer who has obtained copyright registration for dozens of font software programs, and handles licensing for hundreds more fonts:

- Reviewed and analyzed Nicky Laatz's testimony, the BE Software installable OTF files, and her copyright applications and deposits of source code

- Confirmed her design process was consistent with his own and industry practices

- Confirmed that her copyright applications and deposits were consistent with his own and industry practices and with font software the Copyright Office previously registered for him and others

Dkt. 342-55, Sandler Decl. ¶¶ 37-51; Dkt. 342-56 (copyright registrations)

# Zazzle Cannot Avoid the 1992 Decision and Regulation

- Zazzle argues the 1992 Decision and Regulation are inapplicable because:
  - The BE Software is not a "computer program" as it does not contain source code; and
  - The BE Software cannot be used to "generate" a typeface.

  Dkt. 347, Reply at 9

- "Computer program" is "a set of statements or **instructions** to be used directly or indirectly **in a computer in order to bring about a certain result**," not necessarily source code.

  17 U.S.C. § 101 (cited in Dkt. 342-53, Phinney Decl. ¶ 7)

- Nicky Laatz testified the BE Software contains "**instructions**" in "executable, machine-readable files that can be … **installed on a computer to … render the BE Trio of fonts**."

  Dkt. 342-25, N. Laatz Decl. at 6:13-23

- Phinney opined that "the [BE] software … are sets of **instructions** that are **used in a computer to cause text to be displayed in a particular typeface**, which fits within this broad definition."

  Dkt. 338-97 (Phinney Rebuttal Rpt.) ¶ 10; *see also id.* ¶ 29
  Dkt. 342-28, Phinney Decl. ¶ 7

- The copyright deposits consisted of human readable printouts of source code, which were exported from and were representations of the original OTF files.

  Dkt. 342-25, N. Laatz Decl. at 6:13-23; Dkt. 338-97 (Phinney Rebuttal Rpt.) ¶ 28;
  Dkt. 342-28, Phinney Decl. ¶¶ 47-48, 55

# Zazzle's Arguments That the Copyright Examiner's Statements as Interpreted by Zazzle Control Over the 1992 Decision and Regulation and *Adobe* Are Wrong

## Zazzle's Reliance on the Copyright Examiner's Statements Is Misplaced

- Zazzle relies on remarks by the entry-level Copyright Examiner purportedly opining that:

  - Software for rendering fonts can "no longer" be described and registered as "computer programs," only "font data"; and

  - Nicky Laatz was required to have "hand-coded" the font software

    Dkt. 338, MSJ at 14-19; Dkt. 347, Reply at 8-12

- Zazzle misapplies and misinterprets the Examiner's comments, but regardless, the Examiner's legal interpretations are irrelevant and do not have the force of law.

- This Court already "agree[d] that the Copyright Office Examiner's opinions are **not** controlling."

  Dkt. 176, Order Denying MTD Counterclaim at 6

# Case Law Supports This Court's Position



In exercising its quasi-legislative and quasi-judicial powers, an administrative agency must "compl[y] with the standards set forth in … [its] own regulations."

…

"Although it is within the power of [an] agency to amend or repeal its own regulations, the agency is not free to ignore or violate its regulations while they remain in effect."

*U.S. Lines, Inc. v. Fed. Maritime Comm'n*, 584 F.2d 519, 526, n.20 (D.C. Cir. 1978)
(cited in Dkt. 342, Opp. at 17)



An agency "is bound by its [existing] regulations" until it repeals them or "Congress changes the law."

*Portland Gen. Elec. v. Bonneville Power Admin.,* 501 F.3d 1009, 1035 (9th Cir. 2007)
(cited in Dkt. 342, Opp. At 17)

# Case Law Supports this Court's Position

- Copyright examiner's legal interpretations are irrelevant and do not have "the force of law," as inferior officers are entitled to no deference.

  *Boyds Coll., Ltd. v. Bearington Coll., Inc.,* 365 F. Supp. 2d 612, 616 (M.D. Pa. 2005)
  (cited in Dkt. 342, Opp. at 16)

- Rejection by an individual examiner is subject to two more layers of review before the Copyright Office has been deemed to officially act.

  37 C.F.R. § 202.5 (cited in Dkt. 342, Opp. at 17)

- This internal process never took place here. And even when this process is complete, courts do not defer, but must "make an independent determination as to copyrightability."

  *UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1134-35 (N.D. Cal. 2021)
  (cited in Dkt. 342, Opp. at 17)

## Copyright Examiner's Distinction Between "Computer Program" vs. "Font Data" Should be Disregarded

- Zazzle relies on Copyright Examiner stating software for rendering fonts can "no longer" be described and registered as "computer programs," only "font data," and argues this affects whether and to what extent the BE Software is protected by copyrights.

  Dkt. 338, MSJ at 14-19; Dkt. 347, Reply at 8-11

  - Contradicts the 1992 Decision and Regulation stating that in applying to register a program that generates a typeface, "descriptions such as 'computer program' should be used."

    57 Fed.Reg. 6201-02, 1992 WL 29306 (cited in Dkt. 342, Opp. at 14-15)

  - Contradicts Compendium § 723 stating that "[c]omputer program' is the most appropriate term for registering a claim in this type of work."

  - Contradicts Copyright Office's registration of font software as "computer program," including as recently as 2021.

    Dkt. 342-56 (copyright registrations) at 2, 52-53 (describing font software registered in 2021 as "computer program")

- Regardless, "administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by [Copyright Act]."

  17 U.S.C. § 408(c)(1)

- What matters is what Nicky Laatz created and registered – installable OTF files containing instructions enabling a computer to render the BE Trio of fonts, from which she exported human readable printouts of source code deposited with the Copyright Office.

# Copyright Examiner's Statement on "Hand-Coding" Should be Disregarded

- Zazzle relies on Copyright Examiner stating Nicky Laatz was required to have "hand-coded" the BE Software.

  Dkt. 338, MSJ at 14-18; Dkt. 347, Reply at 8-12

- No "hand-coding" requirement in 1992 Decision, *Adobe*, or Compendium sections on font software.

- Where "an agency includes language in one section" and "omits it in another, it is reasonable to presume that the agency acted intentionally in forgoing the language."

  *U.S. v. Approx. 64,695 Lbs. of Shark Fins,* 520 F.3d 976, 983 (9th Cir. 2008)
  (cited in Dkt. 342, Opp. at 18)

- Copyright Office's statements that **HTML** must be "hand-coded" and not generated using website design software with "WYSIWYG" (What You See Is What You Get) functionality, and omission of such phrases as to **font software** (or any other type of "computer program") shows **no such requirements exist**.

101

## "Hand-Coding" ≠ "Manual Typing" and No Use of Visual Font Editor

- Even if "hand-coding" were required, Examiner never defined or explained this, and issued registrations to Nicky Laatz even after:

  - Disclosure that BE Software "was generated by a font program in a sense"; and

    Dkt. 342-25, N. Laatz Decl. at 10:13-18; Dkt. 342-33, Steinberg Decl. ¶ 4; Dkts. 342-43 through 45

  - Source code deposits themselves stated "Generated by: FontLab"

    Dkt. 49 (Zazzle Opp. to Nicky Laatz's MSJ) at 17-18; Dkt. 342-39 at 230; Dkt. 342-47 at 457

# "Hand-Coding" ≠ "Manual Typing" and No Use of Visual Font Editor

- Zazzle and its expert interpret this as meaning "manually typed" and as prohibiting use of a visual editor based on Compendium § 1006.1(A), which applies to "Hypertext Markup Language (HTML)"

  Dkt. 347, Reply at 10; Dkt. 338, MSJ at 13-16

- Zazzle argues HTML and font software "present similar concerns ... so that it makes sense for the Copyright Office to apply the same standards to them."

  Dkt. 347, Reply at 10

- Copyright Office's statements that **HTML** must be "hand-coded" and not generated using website design software with "WYSIWYG" (What You See Is What You Get) functionality, and omission of such phrases as to **font software** (or any other type of "computer program") shows **no such requirements exist**.

## "Hand-Coding" ≠ "Manual Typing" and No Use of Visual Font Editor

- Requiring only manual typing and no use of a visual font editor to obtain copyright protection for font software would be inconsistent with:

  - 1992 Decision and Regulation, which was based on Adobe's demos involving use of visual font editors and said nothing about manual typing

    *See* Dkt. 338-97 (Phinney Rebuttal Rpt.) ¶ 19; Dkt. 338-82 (Phinney Rpt.) ¶¶ 28, 47; Dkt. 342-53, Phinney Decl. ¶¶ 38-42, 65

  - Industry custom and practice in developing font software and obtaining copyright registrations over the past few decades

    Dkt. 338-82 (Phinney Rpt.) ¶¶ 2, 21, 40, 53, 72; Dkt. 342-53, Phinney Decl. ¶¶ 58-79; Dkt. 342-55, Sandler Decl. ¶¶ 37-46, 49-51

  - Issuance of registrations for font software created using third-party font editing software similar to FontLab and Fontographer, including where it is disclosed on the face of the copyright applications and registrations

    Dkt. 342-56 (copyright registrations) at 3, 5, 15, 44 (stating "created by third party software")

  - The larger field of computer science, in which "coding" encompasses visual inputs.

    Dkt. 342-49, Garrie Decl. ¶¶ 31-37

# Zazzle Fails to Show No Genuine Dispute of Material Fact re: Infringement

## Unrebutted Evidence Shows Zazzle Infringed Multiple Exclusive Rights Belonging to Nicky Laatz

- Exclusive rights in copyrighted works include: (1) reproduction; (2) preparation of derivative works; and (3) distribution to the public.

  17 U.S.C. § 106; *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011)
  (cited in Dkt. 338, MSJ at 21)

- Zazzle admits it <u>copied</u> the "BLOOMING ELEGANT SOFTWARE" onto 150+ servers and computers.

  Dkt. 342-12 (Zazzle 2nd Am. Resp. to Interrs.) at 9-15;
  Dkt. 342-49, Garrie Decl. ¶¶ 29-30; Dkt. 342-52 (Garrie Rpt.) at 6, 27-32, 36

- Garrie testified Zazzle thereby generated a <u>derivative work</u> of the BE Software and <u>distributed</u> it to the user's computer every time a user used the BE Trio in the Design Tool.

  Dkt. 342-49, Garrie Decl. ¶¶ 26-28; Dkt. 342-52 (Garrie Rpt.) at 27-32, 36-37

# Zazzle's Counterargument Fails

- Zazzle argues it never had the human-readable printouts of source code from VFJ files, which were exported from the installable OTF files for submission to the Copyright Office, so Zazzle did not infringe.

  Dkt. 347, Reply at 13-14; Dkt. 338, MSJ at 21

- Copyright Office requires deposit of human-readable source code, <u>not object code</u>.

  Compendium §§ 723, 1509.1(F) (cited in Dkt. 342, Opp. at 17, 19)

- "Source code and object code a[re] two representations of the <u>same work</u>" and copyright registration covers <u>both</u>.

  Compendium § 721.5; *accord GCA Corp. v. Chance*, 217 U.S.P.Q. 718, 719-20 (N.D. Cal. 1982)
  (cited in Dkt. 342, Opp. at 20)

- Thus, Nicky Laatz's copyrights cover any form of the BE Software, including both the source code printouts deposited with the Copyright Office and the original executable object code in the OTF files, that Zazzle admits copying.

# *GCA Corp. v. Chance*, 217 U.S.P.Q. 718 (N.D. Cal. 1982)

- Like Zazzle, defendants in *GCA Corp*. argued the plaintiff's copyrights only protected source code, not object code.

  *Id*. at 719-20

- The court rejected this, holding that "[b]ecause the object code is the encryption of the copyrighted source code, the two are to be treated as one work; therefore, copyright of the source code protects the object code as well." *Id.*

- Thus, defendants' "copying of the operating programs" constituted infringement. *Id.*

# *Data General Corp. v. Grumman Sys. Support Corp.*, 803 F. Supp. 487 (1992)

- Defendant in Data General similarly argued the plaintiff could not show "a link between the object code programs copied by [the defendant] and the source code programs registered with the copyright office" by the plaintiff.

  *Id*. at 490

- The court held the plaintiff's software was "protected from unauthorized copying, whether from its object or source code version." *Id.*

- Thus, copying of "either the source or object code representation" of the software program could show infringement.

  *Id*. at 490-91

- Zazzle fails to address these authorities, other than repeating the baseless argument that BE Software are not "computer programs."

  Dkt. 347, Reply at 13-14

# Zazzle Fails to Show No Genuine Dispute of Material Fact re: Its Affirmative Defense of Copyright Invalidity

# The Law on Copyright Invalidity

- "[A] party seeking to invalidate a copyright registration under § 411(b) must demonstrate that:
    - (1) the registrant submitted a registration application containing <u>inaccuracies</u>,
    - (2) the registrant <u>knew</u> that the application failed to comply with the requisite legal requirements, and
    - (3) the inaccuracies in question were <u>material</u> to the registration decision by the Register of Copyrights."

    *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022) (underline added)
    (cited in Dkt. 342, Opp. at 21)

- "Lack of knowledge of <u>either fact or law</u> can excuse an inaccuracy in a copyright registration."

    *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 182 (2022) (underline added)
    (cited in Dkt. 342, Opp. at 21)

- Thus, "prior to making a materiality determination, a court must assess if the registrant submitted his application with <u>knowledge</u> that the information was <u>factually inaccurate and</u> with <u>knowledge</u> that the application <u>failed to comply with the governing legal requirements</u>."

    *Unicolors*, 52 F.4th at 1065 (underline added)

- Zazzle fails to show there is no genuine dispute of fact on any, let alone all, of these points, as required for the Court to grant summary judgment.

# Nicky Laatz's Application Was Accurate

- Zazzle argues Nicky Laatz falsely represented she "hand-coded," i.e. "manually typed" the BE Software code, and concealed her use of a font editing program.

  Dkt. 338, MSJ at 18-21; Dkt. 347, Reply at 12

- Nicky Laatz accurately stated she "<u>hand-coded the designs and instructions</u> in the font data that we submitted as a pdf file," which meant setting and adjusting reference points for each glyph by hand using her stylus, setting values for font-wide variables, and manually typing and inserting custom code for ligatures and stylistic alternates.

  Dkt. 342-25, N. Laatz Decl. 2:28-6:23 (underline added); Dkt. 338-82 (Phinney Rpt.) ¶¶ 34-41; Dkt. 338-97 (Phinney Rebuttal Rpt.) ¶ 26; Dkt. 342-53, Phinney Decl. ¶¶ 46-53; Dkts. 342-46 through 48

- She also stated that her original creation was "an OTF installable computer program file" for each font, and that "the PDF file [she] initially submitted … <u>was generated by a font program</u> in a sense, but it also reflects Plaintiff's original creative work."

  Dkt. 342-25, N. Laatz Decl. 7:17-28; Dkts. 342-46 through 48

- And as Zazzle admits, the deposits (PDF files) themselves stated they were "<u>Generated by: FontLab</u>."

  Dkt. 49, Zazzle Opp. to Nicky Laatz's MSJ at 17-18; Dkt. 342-39 at 230, Dkt. 342-47 at 457 (underline added)

- Neither Nicky Laatz nor the Examiner ever defined "hand-coded" to mean she "manually typed" each coordinate or other code in the PDF files and/or BE Software and did not use a visual font editor.

112

## No Knowledge of Factual Inaccuracy and/or Failure to Comply With Law

- There is <u>no evidence</u> Nicky Laatz knew it was <u>factually inaccurate</u> to say:
  - She "hand-coded the designs and instructions" in the BE Software unless she "manually typed" every coordinate and other code in the BE Software; and/or
  - She used a "font program" to generate the pdf files containing the source code for each "OTF installable computer program file" she had created.

- There is <u>no evidence</u> Nicky Laatz knew that her design process <u>failed to comply with the law</u> concerning copyrightability of the BE Software.

- In fact, Plaintiff believed her design process was accurately described and was consistent with her understanding of the legal requirements she reviewed in the 1992 Decision and Compendium.

  Dkt. 342-25, N. Laatz Decl. 7:17-8:20

- This does not contradict her prior testimony that she has no formal "experience or training in U.S. copyright law."

  *See* Dkt. 347, Reply at 2, 12-13; Dkt. 347-2 (N. Laatz Dep. Tr.) at 213:22-24

# Alleged Inaccuracy Was Not Material to Registration Decision

- Neither "hand-coding" nor "manual typing" are stated requirements in the 1992 Decision and Regulation, nor in the Compendium.

- None of these authorities bar use of a visual font editor to set and manipulate reference points and compile them with other instructions into the installable software files.

- Phinney confirmed Nicky Laatz's process was consistent with Adobe's at the time of the 1992 Decision and Regulation and the *Adobe* decision, and with font software he subsequently helped register with the Copyright Office.

  Dkt. 338-82 (Phinney Rpt.); Dkt. 338-97 (Phinney Rebuttal Rpt.)
  Dkt. 342-53, Phinney Decl. ¶¶ 33-37, 46-47, 53-57, 60-63, 72

- Sandler confirmed Nicky Laatz's process was consistent with his own and industry practices and font software the Copyright Office previously registered for him and others, including where use of "third party software" was disclosed on the application's face.

  Dkt. 342-55, Sandler Decl. ¶¶ 37-51
  Dkt. 342-56 (copyright registrations) at 3, 5, 15, 44

114



# Defendants' MSJ as to Nicky Laatz's Trademark Infringement Claim Fails

## Nicky Laatz Owns the "BLOOMING ELEGANT" (BE) Trademark and Zazzle Used It in Connection with Fonts Without Consent

It is **undisputed** that:

- Nicky Laatz owns U.S. Trademark Registration No. 6,626,946 for the mark "BLOOMING ELEGANT" for use in connection with "Downloadable printing fonts; Printing fonts that can be downloaded provided by means of electronic transmission; Typeface fonts recorded on magnetic media."

- Nicky Laatz has used this trademark in commerce since at least 2016, and it is valid.

- Zazzle used the BLOOMING ELEGANT mark to identify and describe Nicky Laatz's BE Trio of fonts in offering them to users through Zazzle's design tools.



**BLOOMING ELEGANT**

Reg. No. 6,626,946

Registered Jan. 25, 2022

Int. Cl.: 9

Trademark

Principal Register

Laatz, Nicky (UNITED KINGDOM INDIVIDUAL), DBA Nicky Laatz Creations

106 Kenwyn Street
Truro, UNITED KINGDOM TR1 3BX

CLASS 9: Downloadable printing fonts; Printing fonts that can be downloaded provided by means of electronic transmission; Typeface fonts recorded on magnetic media

FIRST USE 2-16-2016; IN COMMERCE 2-16-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 90-535,226, FILED 02-19-2021

Dkt. 82-2
(FAC Ex. B)

# Trademark Infringement Occurs if a Defendant Copies a Mark Without the Owner's Consent in a Way Likely to Cause Confusion

- The Lanham Act protects against "reproduction, counterfeit, copy, or colorable imitation of [a plaintiff's] registered mark" in commerce without their consent in a way "likely to cause confusion" as to source, sponsorship, affiliation, or approval.

  15 U.S.C. § 1114(1); 9th Cir. Model Civil Jury Instr. 15.6 (Infringement—Elements and Burden of Proof—Trademark)

- Zazzle only argues it is entitled to summary judgment based on its defense of nominative fair use. To prevail, Zazzle must show there is no genuine dispute of material fact as to whether:

  1. The BE Trio of fonts were "**not readily identifiable"** without using the mark;

  2. Zazzle **only used the mark** as was **reasonably necessary**; *and*

  3. Zazzle did nothing to falsely suggest **Nicky Laatz sponsored or endorsed** the use of the mark.

     *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F. 2d 302, 308 (9th Cir. 1992)
     (cited in Dkt. 342, Opp. at 25 and Dkt. 338, MSJ at 24-25)

# Zazzle's Use of the Blooming Elegant Mark Was <u>Not</u> Nominative Fair Use

- Zazzle fails to show the BLOOMING ELEGANT mark was "the only word reasonably available to describe" the BE Trio.

  *New Kids on the Block,* 971 F. 2d at 308

- Zazzle could have renamed the fonts if the name itself had no value, e.g., as it did when replacing "Blooming Elegant" with "Morgana."

- The message from a Zazzle customer to Nicky Laatz shows Zazzle's use of the mark and the font falsely suggested sponsorship or endorsement by Nicky Laatz.

<<========== 2020-08-25 20:13:17, michelle.frey.hunt.art@gmail.com queried ==========

Hello, I would like to use your blooming elegant font on Zazzle, I see that they have it, however I am trying to figure out how to use the glyphs to make the swirl at the beginning and end of the letters. I'm quite new with this! Will purchasing the font from you enable me to do this on Zazzle? Also, which option would I purchase to use for print on demand?
I use an iPad Pro and procreate.
Thank you very much!
Kind regards,
Michelle

Dkt. 342-25,
N. Laatz Decl.
14:27-15:4;
Dkt. 342-27

119



# Defendants' Evidentiary Objections Should be Overruled

# Defendants' Objections to Ryan Declaration

- Defendants claim Paragraphs 2 and 12 of the Ryan Declaration contain "improper legal argument," but neither paragraph contains **_any_** legal argument; they contain only factual summaries and authentication of thes attached exhibits.

> 2.      On October 8, 2021, Zazzle's Senior Director of Legal, Liana Larson, responded to a September 30, 2021 letter from my office by way of an email in which she admitted that Zazzle's Senior Network Engineer, Mohamed Alkhatib, purchased a single-seat license for the use of the Blooming Elegant Trio of fonts along with similar licenses for three other fonts that were purchased via the Creative Market website on the same date. Ms. Larson's October 8, 2021 email attached Mr. Alkhatib's email receipts for all four of the fonts and font families that Mr. Alkhatib purchased licenses to via Creative Market on May 4, 2017. Attached to this declaration as **Exhibit 1** is a true and correct copy of that email and its attachments.

Dkt. 342-1, Ryan Decl. ¶ 2

# Defendants' Objections to Ryan Declaration

- Defendants claim Paragraphs 2 and 12 of the Ryan Declaration contain "improper legal argument," but neither paragraph contains **any** legal argument; they contain only factual summaries and authentication of the attached exhibits.

12.      On September 10, 2024, Zazzle re-produced an excel spreadsheet with Bates number ZAZZLE-004537. Zazzle had previously produced a version of this document with purported privilege redactions, but pursuant to an Order of Magistrate Judge DeMarchi, Zazzle's assertion of privilege over the material located on cell D4 of the tab labeled "Final Purchasing List" was rejected (*see* Dkt. 277 at 4-5) and Zazzle re-produced the document without this cell redacted. Attached to this declaration as **Exhibit 15** is a true and correct copy of the tab labeled "Final Purchasing List" from the excel spreadsheet that Zazzle produced with Bates number ZAZZLE-004537. The unredacted content of cell D4 shows that Zazzle was considering purchasing a license to a font titled "Beyond the Mountains" at a cost of $1,490. The website for the font designer from which Zazzle purchased a license to "Beyond the Mountains" shows that $1,490 is the cost of an "Unlimited License" to the font. A screenshot of this website was

* * *

introduced as Exhibit 209 to the September 12, 2024 deposition of Katrina Liu. A true and correct copy of Exhibit 209 to the September 12, 2024 deposition of Katrina Liu is attached hereto as **Exhibit 16**. The website for the font designer from which Zazzle purchased a license to "Beyond the Mountains" shows that the cost of a "Webfont License" costs $49. A screenshot of this website was introduced as Exhibit 210 to the September 12, 2024 deposition of Katrina Liu. A true and correct copy of Exhibit 210 to the September 12, 2024 deposition of Katrina Liu is attached hereto as **Exhibit 17**. The website for the font designer from which Zazzle purchased a license to "Beyond the Mountains" contains the terms of the various license types sold by the font designer, including the terms of an "Unlimited License" and a "Webfont License." A screenshot of the website with these license terms was introduced as Exhibit 211 to the September 12, 2024 deposition of Katrina Liu. A true and correct copy of Exhibit 211 to the September 12, 2024 deposition of Katrina Liu is attached hereto as **Exhibit 18**.

Dkt. 342-1, Ryan Decl. ¶ 12

# Defendants' Objections to Nicky Laatz Declaration

- Defendants claim that Paragraphs 16, 19-21, 24, 28, 31, 39, 40-41, 44-46, 49-50, 52-53, 55-56, 58-59, 61, 63-65, and 67-68 contain "improper legal argument" and "lack foundation from this lay witness."

- None of these paragraphs contain any legal argument, and instead they only contain factual assertions based on Nicky Laatz's personal knowledge and experience. For example, Paragraph 16 reads:

> 16.    On or about February 17, 2021, in connection with the registration of my copyrights for the BE Software with the U.S. Copyright Office (the "Copyright Office"), I used the then-current version of FontLab, FontLab 7, to export the font software into a human-readable source code format that could be printed, in compliance with Copyright Office Guidelines. To export the BE Software in the appropriate format, I opened each .OTF file and then exported and saved it as a ".VFJ" file, which is a FontLab-native "source file format" that is human-readable. I then created PDF printouts of the .VFJ files for the BE Software for submission to the U.S. Copyright Office with my original copyright applications. True and correct copies of PDFs for these files are attached to the Declaration of Stephen Steinberg in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Steinberg Decl.") as **Exhibits 4, 5, and 6**.

Dkt. 342-25,
N. Laatz Decl.
at 6:25-7:6

# Defendants' Objections to Nicky Laatz Declaration

- Paragraphs 19-21 explain the substance of and Nicky Laatz's state of mind concerning the correspondence with the Copyright Examiner concerning her BE Software and copyright applications.

- Paragraph 24 explains how and where Nicky Laatz offered the BE Trio and BE Software for licensing, including quoting from the Creative Market Offering Page and explaining the links on that page.

- Paragraph 28 quotes from and authenticates the Creative Market account creation page and explains the links on that page.

- Paragraph 31 identifies the parties to the BE License offered by Nicky Laatz on Creative Market and the relevant documents.

Dkt. 342-25, N. Laatz Decl. at 7:17-8:20, 9:2-18, 10:6-12, 11:2-5

# Defendants' Objections to Nicky Laatz Declaration

39.     I never enter into perpetual server-based licenses for my fonts and font software that allow the licensee's end users (and their end users' end users, …) to sell products they themselves created with free access (i.e., the ability to type with or alter the outline of the text) to my fonts and font software, which is what Zazzle would have needed given its business. When I get inquiries requesting broad licenses, I sometimes ignore such requests as I did with Ms. McGhie's request. In November 2016, I would not have agreed to enter into a perpetual server-based license for my fonts that would have allowed Zazzle's end users (and their end users' end users, …) to create and sell custom products with my fonts, and I certainly would not have entered into such a license for the cost of a single-seat license. Not only has Zazzle profited from each sale containing the BE Trio, but there are also many shop owners on Zazzle profiting and earning income, possibly a living, from products featuring the BE Trio that they created using the Zazzle design tools, which gave them and their customers (and their customers' customers, …) *free commercial access* and rights to the BE Trio.

Dkt. 342-25, N. Laatz Decl. at 14:1-13

# Defendants' Objections to Nicky Laatz Declaration

- Paragraph 40 states what license was offered by Nicky Laatz when Zazzle contacted her in 2016 and Alkhatib purchased the BE License in 2017.

44.    I did not learn of Mohamed Alkhatib's involvement or the specifics of Zazzle's purchase until January 21, 2021, when Zazzle sent my husband a copy of the email "receipt" to Alkhatib transmitting a link to download the BE Software for use by one user, and a link to the License FAQ.

45.    Prior to these communications with Zazzle, I did not know and had no reason to even suspect that Zazzle had executed a license with me, let alone that such license was fraudulently induced.

46.    I understand Zazzle suggests I should have learned much earlier that it had licensed my IP and was using it in violation of The License, and was infringing my copyrights in the BE Software and my Blooming Elegant trademark. But as noted above, when a license to one my fonts and font software is sold through Creative Market, I receive limited information from Creative Market about the licensee. The only information that Creative Market provides me when I sell a license through their website is: (1) the date the license was sold; (2) the status of the sale (e.g., if it refunded); (3) the name of the font that was licensed; (4) the first and last name of the licensee that was provided to Creative Market; (5) the price paid to Creative Market; (6) the earnings that I receive from Creative Market on the license sale; (7) the taxes that were withheld on the license sale; and (8) the type of license that was purchased. No other information is provided nor offered or otherwise made available by Creative Market.

Dkt. 342-25, N. Laatz
Decl. 14:17-21, 15:10-27

127

# Defendants' Objections to Nicky Laatz Declaration

- Paragraphs 49-50 discuss the limited information regarding licensees that Nicky Laatz receives from Creative Market and Nicky Laatz's state of mind regarding what information she had received about Mohamed Alkhatib.

- Paragraphs 52-53 discuss Nicky Laatz's prior experience with granting one-seat licenses to entities rather than individuals.

- Paragraphs 55-56 and 58-59 discuss Nicky Laatz's state of mind and expectations regarding how licensees will behave when they purchase licenses to her font software, as well as the specific interactions Nicky Laatz had with Zazzle employee Monica McGhie.

- Paragraphs 61, 63-65, and 67-68 discuss the effort it would take for Nicky Laatz to individually investigate the identities and actual use of her fonts by each of the hundreds of thousands of people who have purchased licenses to her font software and the efforts Nicky Laatz undertakes to detect and halt unauthorized use of her font software.

Dkt. 342-25, N. Laatz Decl. at 16:9-18, 16:22-17:6, 17:17-18:1, 18:4-10, 18:14-23, 19:2-12, and 19:25-20:11

# Defendants' Objections to Nicky Laatz Declaration

- Defendants claim paragraph 45 of the Laatz Declaration contains "testimony the Court previously struck as improper legal conclusions and argument."

  *Dkt. 347, Reply at 2:9*

  - This paragraph contains the same text as paragraph 66 of the Supplemental Declaration ISO Plaintiffs' Refiled Motion for Partial Summary Judgment.

    *See Dkt 106-1 ¶ 66*

  - Defendants did not object to paragraph 66 of the Supplemental Declaration ISO Plaintiffs' Refiled Motion for Partial Summary Judgment and the Court did not strike it.

# Defendants' Objections to Nicky Laatz Declaration

- Defendants claim paragraph 49 of the Laatz Declaration contains "testimony the Court previously struck as improper legal conclusions and argument."

  *Dkt. 347, Reply at 2:9*

  - This paragraph contains the same text as paragraph 62 of the Supplemental Declaration ISO Plaintiffs' Refiled Motion for Partial Summary Judgment.

    *See Dkt 106-1 ¶ 62*

  - Defendants did not object to paragraph 62 of the Supplemental Declaration ISO Plaintiffs' Refiled Motion for Partial Summary Judgment and the Court did not strike it.

    *Dkt. 174 at 8*

# Defendants' Objections to Garrie Decl.

- Defendants claim that paragraphs 7-9, 13, 18, 19-20, 23, 25-26, and 28 contain "improper legal argument."

- Much of the content of these paragraphs mirrors evidence provided in the Expert Report of Daniel Garrie and prior declaration of Daniel Garrie, which were attached as Dkt. 342-51 and Dkt. 342-52, which Defendants do not object to.

- None of these paragraphs contain any legal argument, and instead only contain Daniel Garrie's expert opinions and the factual bases for those opinions as permitted under FRE 702-03.

- For instance, paragraph 7 reads:

> 7.   For the reasons set out below, the emails Defendants allege were sent to Ms. Laatz and Ms. Laatz's alleged social media engagement with Zazzle do not support the conclusion that Ms. Laatz was aware that Zazzle was using the Blooming Elegant Trio of Fonts.

Dkt. 342-49, Garrie Decl. ¶ 7

# Defendants' Objections to Garrie Decl.

8.  As anyone familiar with email would know, merely receiving an email does not mean that the recipient has read the email or was aware that they received the email, as it is common for emails to be overlooked or filtered to Spam or Trash folders. This alone raises a question of fact as to whether Ms. Laatz read or was aware of any of the 48 emails with images of the Blooming Elegant Trio of Fonts that Defendants allege Zazzle sent to Ms. Laatz.

9.  In this case, it is unlikely that Ms. Laatz read or became aware of these 48 emails because Ms. Laatz had a filtering rule in place to route emails from Zazzle to the Trash folder of her mailbox.

\* \* \*

13. Thus, Defendants' claim that Zazzle sent 48 emails to Ms. Laatz with images of the Blooming Elegant Trio of Fonts does not support the claim that Ms. Laatz was aware that Zazzle was using the Blooming Elegant Trio of Fonts. Likely, Ms. Laatz never saw the 48 emails due to the email filtering rule that was in place in her mailbox.

Dkt. 342-49,
Garrie Decl.
¶¶ 8-9, and 13

FOLLOWING SLIDE CONTAINS CONFIDENTIAL INFORMATION

132

# Defendants' Objections to Garrie Decl.

18. Thus, Jason Li's claim that 32 emails sent to Ms. Laatz's email returned an "Open" event notification does not mean that Ms. Laatz opened the emails and does not support the claim that Ms. Laatz was aware that Zazzle was using the Blooming Elegant Fonts.

19. Moreover, Jason Li's declaration does not state that these 32 emails contained any references to the Blooming Elegant Trio of Fonts, so even if Ms. Laatz had opened them, she would not have been put on notice that Zazzle was using the Blooming Elegant Trio of Fonts.

\* \* \*

28. Thus, every time a user incorporated text in the Blooming Elegant Trio of Fonts into a design using Zazzle's Design Tool, Zazzle's servers used the Blooming Elegant OTF Files.

Dkt. 342-49, Garrie Decl. ¶¶ 18-19 and 28

CONFIDENTIAL

# Defendants' Objections to Garrie Decl.

20. Defendants claim that by using the hashtag "#zazzle" in Ms. Laatz's Instagram posts and following Zazzle on Instagram, Ms. Laatz was made aware of Zazzle's use of the Blooming Elegant Trio of Fonts. However, neither using hashtags nor following Zazzle on Instagram serves as technical evidence to support the conclusion that Ms. Laatz knew that Zazzle was using the Blooming Elegant Trio of Fonts.

\* \* \*

23. Thus, Defendants' claim that Ms. Laatz posted to Instagram using #zazzle does not support the conclusion that Ms. Laatz was aware that Zazzle was using the Blooming Elegant Trio of Fonts.

\* \* \*

25. Thus, Defendants' claim that Ms. Laatz followed Zazzle on Instagram does not support the conclusion that Ms. Laatz saw posts related to Zazzle's use of the Blooming Elegant Trio of Fonts.

Dkt. 342-49, Garrie Decl. ¶¶ 20, 23, 25

FOLLOWING SLIDE CONTAINS CONFIDENTIAL INFORMATION

# Defendants' Objections to Garrie Decl.

26. As set out in the Expert Report of Daniel Garrie, every time a user incorporated text in the Blooming Elegant Trio of Fonts into a design using Zazzle's Design Tool, Zazzle's servers used the OTF files for the Blooming Elegant Trio of Fonts (the "Blooming Elegant OTF Files") to generate a derivative work of the Blooming Elegant OTF Files, which was transferred to the user's computer or mobile device to render text in the Blooming Elegant Trio of Fonts. *See* Exhibit C, at 27-32, 36.

Dkt. 342-49, Garrie Decl. ¶ 26

# Defendants' Objections to Garrie Decl.

- Defendants claim that paragraphs 20-25 of the Garrie Declaration "lack foundation regarding how Instagram works."

- These paragraphs reference Daniel Garrie's prior declaration, which was attached as Dkt. 342-51 to the Garrie Declaration.

- Daniel Garrie's prior declaration provides the foundation and context for his knowledge of how Instagram works.

*See* Dkt. 342-51 (Garrie Decl. Ex. B) ¶¶ 23-25

# Defendants' Objections to Garrie Decl.

- Defendants claim that paragraphs 31-37 are "irrelevant, as 'low-code' or 'no-code' coding have no bearing on this case."

  Dkt. 347, Reply at 2

- Paragraphs 31 and 32 define software and software programs. These paragraphs make no reference to "low-code" or "no-code" and so Defendants' objection is misplaced.

- Paragraphs 33-37 address common methods of creating software, including different methods of coding that do not involve manual typing of each line of source code.

  - These methods are similar to the manner in which Nicky Laatz created the Blooming Elegant font software.

  - This is in direct response to Mr. Rucinski's testimony on these same topics, which Defendants submitted at Dkts. 338-90, 338-93, 338-94, and 338-95.

  - This testimony is relevant to the copyrightability of Nicky Laatz's font software.

# Defendants' Objections to Phinney Decl.

- Defendants allege that paragraphs 6-13, 38-45, 48, 50-53, 59-60, 66-79, and 83-84 "contain improper legal argument" and "to the extent they interpret Copyright Office rules and regulations, are improper expert testimony."

- Defendants offer no citation that supports the latter objection.

- These paragraphs do not contain legal conclusions or legal argument, but instead contain Thomas Phinney's expert opinions and the factual bases for those opinions, including his own percipient witness testimony. For instance, paragraph 50 reads:

> 50.    Contrary to the examiner's suggestion, the submitted VFJ files were not XML files (such as those one can extract from a compiled font using TTX), which many applicants have commonly submitted to the copyright office for registrations of font software that have been granted in the past. Rather, VFJ is a form of JSON file.

Dkt. 342-53, Phinney Decl. ¶ 50

# Defendants' Objections to Phinney Declaration

- Paragraphs 6-13 provide Phinney's opinions, as a font industry and design expert, that font programs are computer programs, in direct response to Rucinski's contrary opinions.

  Dkt. 338-94, Rucinski Rpt. ¶¶ 22, 26-29, 74, n. 13; Dkt. 338-150, Rucinski Decl. ¶¶ 16-18, 35, 37-38

- Paragraphs 38-45 discuss Phinney's background working at Adobe and percipient witness testimony regarding Adobe's involvement in the process that led to the U.S. Copyright Office issuing the '92 Decision and Regulation, and resulting font industry custom and practice.

- Paragraphs 48 and 83-84 provide Phinney's opinions, as the former CEO and President of FontLab, regarding the format of the copyright deposit submissions for Nicky Laatz's BE Software and whether they are properly considered source code, in direct response to Rucinski's contrary opinions.

  Dkt. 338-150, Rucinski Decl. ¶¶ 16-18

  - Phinney has ample education, specialized knowledge, and experience to opine on this issue.

    Dkt. 342-53, Phinney Decl. ¶¶ 3-5; Dkt. 342-54 (Phinney C.V.)

# Defendants' Objections to Phinney Declaration

- Paragraphs 51-53, 59-60, and 66 provide Phinney's opinions, as a font industry and design expert, regarding what "hand coding" means as well as percipient witness testimony regarding the Copyright Office's historical practice of registering font software created in manners that Defendants argue don't qualify as "hand coding," in response to Rucinski's contrary opinions.

  Dkt. 338-94 (Rucinski Rep.) ¶¶ 32, 34-36, 40-86; Dkt. 338-90 (Nov. 3, 2022 Rucinski Decl.) ¶¶ 6, 8, 15-31, 39-40

  - Note that "hand coded" is not a legal term used or defined in any statute, regulation, or case law. Thus, the interpretation of "hand coded" is not a legal argument or conclusion.

  - Defendants also object to paragraphs 52-53 on the grounds that Phinney "has no basis to opine about what the Copyright Office Examiner meant by the words in his emails," but Phinney explains in detail the basis for his opinions from his experience in font software development.

    *E.g.*, Dkt. 342-53, Phinney Decl. ¶¶ 51-53, 58-66

- Paragraphs 67-79 provide percipient witness testimony regarding Adobe's practices at the time of the *Adobe* decision when Phinney worked there and Phinney's opinions regarding the industry custom and practice of using third-party font editors.

  *Id.* ¶ 67-79

# Defendants' Objections to Phinney Decl.

55.      However, the U.S. Copyright Office has always insisted that copyright filings for font programs be accompanied by text-based human-readable representations of those programs, even when the native source code used by the creating applicants was binary. Common practice across the font industry for many years was to use TTX to translate the compiled font binary into an XML-based format for submission to the Copyright Office. For example, as prompted by Adobe legal counsel, I submitted copyright filings for Adobe using this approach, and explained to other type foundries how to do so.

Dkt. 342-53, Phinney Decl. ¶ 55

- Defendants also argue paragraph 55 "lacks foundation" for Phinney's assertion about what the Copyright Office requires for submissions for registering font software, but this paragraph provides that foundation in express detail.

# Defendants' Objections to Phinney Decl.

71.     First, at the time of the *Adobe* decision, use of font editors made by third parties had already been the dominant way of making fonts for a decade.

· · ·

74.     Adobe itself began migrating to the use of third-party font editors for the creation of its fonts in the 1990s. If using one's own (as opposed to a third-party) font editor had been required to establish copyrights in a font, Adobe, rather than migrating to third-party font editors in the 1990s, would have instead invested in updating their own tools to work on newer computers.

· · ·

78.     For example, for all OpenType OTF fonts produced by Adobe, and many other fonts produced by third parties, a tool called "makeotf" from AFDKO was used. Makeotf takes a PostScript Type 1 font alongside a separate OpenType feature code / kerning data file as input, and converts it to OpenType CFF (.otf). As far as I know, Adobe still uses makeotf as a separate utility to process its fonts. The input files that are fed into makeotf are created using another font editor.

79.     A similar process is followed for many other fonts. For example, all Google Fonts go through the "fontmake" compiler as the final step in generating a TrueType font (TTF). A majority of the world's largest websites use one or more Google Fonts.

Dkt. 342-53,
Phinney Decl.
¶¶ 71, 74, 78-79

# Defendants' Objections to Phinney Decl.

- Defendants claim paragraphs 69-79 "are irrelevant."

  Dkt. 347, Reply at 2:27

- These paragraphs describe Phinney's experience as the Project Manager for Fonts and Typography at Adobe and Adobe's practices ***during the* Adobe Sytems Inc. v. Southern Software, Inc***. case** and Phinney's opinions regarding the industry custom and practice of using third-party font editors.

- This evidence directly responds to Defendants' and the Court's suggestion that use of third-party font editors impacts the copyrightability of font software.

- Moreover, Defendants themselves submitted—as support for their MSJ—Phinney's expert reports and prior declaration, which contain much of the same evidence that Defendants now object to.

  Dkt. 338-81 (Apr. 7, 2023 Phinney Decl.); Dkt. 338-82 (Phinney Rep.); Dkt. 338-97 (Phinney Rebuttal Rep.)

# Defendants' Objections to Sandler Decl.

- Defendants claim paragraphs 15-36 and 43-51 of the Sandler Declaration "contain improper legal argument," lack foundation "at least in large part," and are irrelevant.

- These paragraphs do not contain legal argument, but rather contain Stuart Sandler's expert opinions and the factual bases for those opinions, including his own percipient witness testimony.

- Sandler's extensive experience in font creation, font licensing, and registering copyrights for font software provides the necessary foundation for these opinions.

  - For instance, Sandler has created or co-created ≈ 1,000 fonts, runs a font distributorship that handles licensing for ≈ 36,000 fonts, and has personally filed and obtained 27 copyright registrations for font software.

Dkt. 342-55, Sandler Decl. ¶¶ 3-9

# Defendants' Objections to Sandler Decl.

- There is a dispute between Nicky Laatz and Defendants regarding the proper interpretation and understanding of the terms of the Blooming Elegant License.

  *See* Dkt. 347, Reply at 14:20-15:5 (disputing Nicky Laatz's interpretation of the Blooming Elegant License)

- Expert testimony is admissible regarding "industry custom and usage regarding contract clauses."

  *Manhattan Re-Ins. Co. v. Safety Nat'l Cas. Corp*., 83 F. App'x 861, 863 (9th Cir. 2003)

- "[E]xperts may testify about industry standards."

  *King v. GEICO Indem. Co.,* 712 F. App'x 649, 651 (9th Cir. 2017)

# Defendants' Objections to Sandler Decl.

- Paragraphs 15-33 of Stuart Sandler's declaration provide factual evidence regarding font-industry custom and usage of select terms.

- For instance, paragraph 17 reads:

> 17.    As it is understood and accepted in the font industry, the terms "one seat" or "single seat" when used in a font license mean a single individual using the font. As in the License Terms here, restrictions to a single seat typically come with restrictions on the transferability of the license to other individuals. Together, a license with both a seat restriction and a transferability restriction limits the use of the font to the individual the license is purchased for, and other individuals need to separately obtain licenses for themselves.

Dkt. 342-55, Sandler Decl. ¶ 17

# Defendants' Objections to Sandler Decl.

22.    Page 2 of the License Terms states that the BE License is "a non-exclusive, non-transferable right to use, modify and reproduce the Item worldwide, in perpetuity, as expressly permitted by the license herein and subject to the terms set forth herein."

23.    Based on my decades of experience in the font industry and consistent with industry standards, a "non-transferable right to use" the Blooming Elegant Trio digital content, including the font software, means that the licensed user may not give their right to access or use the font and font software to someone else, including a co-worker. This type of language is often used in conjunction with single-seat licenses in the font industry, because otherwise the single seat could be freely transferred between many people, in effect negating the single-seat restriction. The combination of a license being single-seat with non-transferability serves together to make sure that each person with access to the font or font software has their own license.

Dkt. 342-55, Sandler Decl. ¶¶ 22-23

# Defendants' Objections to Sandler Declaration

- Paragraphs 34-36 and 43-44 provide Sandler's opinions regarding what "hand coding" means based on his font design experience, in direct response to the contrary Rucinski opinions that Defendants submitted in support of their MSJ.

  Dkt. 338-94 (Rucinski Rep.) ¶¶ 32, 34-36, 40-86; Dkt. 338-90 (Nov. 3, 2022 Rucinski Decl.) ¶¶ 6, 8, 15-31, 39-40

  - Note that "hand coded" is not a legal term used or defined in any statute, regulation, or case law. Thus, the interpretation of "hand coded" is not a legal argument or conclusion.

- Paragraphs 45-51 discuss the Copyright Office's historical practices of registering font software (including some Sandler created and registered and others he identified through independent research) that were created using third-party visual font editing software like FontLab.

148

# Defendants' Objections to Sandler Decl.

- Defendants object that paragraph 51 "contains improper expert testimony, as Mr. Sandler merely repeats the results of a search on the Copyright Office's public website that any lay witness could perform."

- This research required Sandler's expertise to identify the relevant font software registrations, given the various ways font software is described.

- Additionally, Defendants offer no citations that support this objection.
  - Indeed, the committee notes to F.R.E. 701 expressly state that "it is possible for the same witness to provide both lay and expert testimony in a single case. *See*, e.g., *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)."

    FRE 701 (Committee Notes on Rules—2000 Amendment) (cited in Dkt. 347, Reply at 3)

149



# Nicky Laatz's Objections to Defendants' Evidence Should Be Sustained

# Defendants' Reply Evidence Should Be Stricken

- Paragraphs 5-9 of the Declaration of Thomas Nolan in Support of Defendants' Reply in Support of Motion for Summary Judgment ("Nolan Reply Declaration") and Exhibits SS, UU, VV, WW, and XX are untimely, irrelevant, and/or constitute inadmissible hearsay.

  *Dkt. 350, Obj. to Reply Evid.*

- Courts in this District routinely strike or disregard reply declarations and new exhibits submitted with reply declarations because the "submission of new facts in [a] reply brief is improper."

  *Tae Youn Shim v. Lawler*, 2019 WL 2996443, at *7 (N.D. Cal. July 9, 2019) (citations omitted); *Rodgers v. Chevys Restaurants*, LLC, 2015 WL 909763, at *5 (N.D. Cal. Feb. 24, 2015) (refusing to consider new declaration submitted in reply); *Lam. Rsch. Corp. v. Schunk Semiconductor*, 2014 WL 1995799, at *2 (N.D. Cal. May 15, 2014) (declining to consider new evidence attached to reply brief) (cited at Dkt. 350, Obj. to Reply Evid. at 1)

- This is particularly true where, as here, the proffering party could have submitted the reply evidence with its opening submission. **New evidence offered in reply may be stricken for no other reason than that the proffering party could have included the evidence in its opening submission**.

  *See Ward v. Sutter Valley Hosps.*, 2022 WL 2805965, at *5 (E.D. Cal July 18, 2022) (excluding supplemental reply declaration that introduced new evidence that declarant could have included in initial declaration) (cited at Obj. to Reply Evid. (Dkt. 350) at 1)

# Defendants' Evidence Offered in Reply Should Be Stricken

- Exhibits UU, VV, WW, and XX to the Nolan Reply Declaration are purportedly ***public records*** related to the underlying copyright registrations for font software.

- Defendants ***could have submitted this in their opening brief***
  - Nicky Laatz's expert Stuart Sandler referenced the copyright registrations discussed in these exhibits in his expert materials served on Defendants during expert discovery.
  - Defendants admit to repeatedly performing their own searches for this evidence in the U.S. Copyright Office's prior to filing their reply on January 23, 2025.

Dkt. 347-1, Nolan Reply Decl. ¶ 9

153

# Defendants' Evidence Offered in Reply Should Be Stricken

- Exhibits UU, VV, WW, and XX paint an ***incomplete and prejudicial*** picture of the evidence:

  - Stuart Sandler identified at least 49 copyright registrations that have been issued for font software since 2020.

    Dkt. 342-55 ¶ 51 and Ex. 1

  - Defendants only submit correspondence regarding **<u>four</u>** of those 49 registrations to purportedly prove the Copyright Office applied the same standards to Nicky Laatz's applications. None are from the registrations that disclose on their face use of third-party font editors.

    Dkt. 347 at 11

154

# Defendants' Evidence Offered in Reply Should Be Stricken

- Exhibits UU, VV, WW, and XX are also ***inadmissible hearsay***. Defendants offer these statements by third parties to prove the truth of the matters asserted therein.

  - These exhibits contain statements by third-party font software designers and individual examiners at the U.S. Copyright Office and are offered to prove that the font designers purportedly "hand-coded" their font software and that the U.S. Copyright Office required as much.

  - But these documents do not show that "hand-coding" as used by any of these third-parties or the Copyright Office means what Defendants argue it means—i.e. manually typing each and every character and line of code.

# Defendants' Evidence Offered in Reply Should Be Stricken

- Exhibit SS to the Nolan Reply Declaration contains excerpts of Nicky Laatz's deposition testimony that Defendants failed to submit in their opening brief.

- This exhibit is both *irrelevant and untimely*. Defendants incorrectly argue Exhibit SS contradicts Nicky Laatz's Declaration in Opposition to Defendants' MSJ.

  - The identified paragraphs of the Nicky Laatz Declaration discuss her understanding of the legal requirements for copyrightability at the time she submitted her applications to register her copyrights in the BE Trio Software.

    Dkt. 342-25, N. Laatz Decl. 7:17-8:20

  - Exhibit SS cherry-picks Nicky Laatz's deposition testimony to select a portion in which she states that she does not have any formal experience or training in U.S. copyright law.

  - *This testimony is not mutually exclusive or contradictory to her declaration.*

156

# The Nolan Reply Declaration Contains Untimely Assertions That Should Be Stricken

- Paragraphs 5-8 of the Nolan Reply Declaration describe the process through which Defendants obtained Exhibits UU, VV, WW, and XX and quote from the same exhibits.
  - This inexcusably late-filed evidence should be stricken for the same reasons as Exhibits UU, VV, WW, and XX.

- Paragraph 9 of the Nolan Reply Declaration describes a search he purportedly performed of the U.S. Copyright Office's Official Public Catalog on Jan. 23, 2025 "and times before."
  - Nolan repeatedly conducted searches for relevant evidence multiple times prior to Jan. 23, 2025, but Defendants did not disclose this evidence during discovery, or include it in their opening brief.
  - Defendants have been on notice from Nov. 2022, when they were served with Sandler's initial declaration, and Sept. 2024, when they were served with Sandler's initial expert report, that Nicky Laatz intended to proffer evidence that the U.S. Copyright Office has continued to register copyrights for font software created with third-party font editors.

  Dkt. 51-6, Sandler Decl. ISO Plf.'s First MSJ ¶ 20-22

157

