PATRICK M. RYAN (SBN 203215)
  *pryan@bartkopavia.com*
STEPHEN C. STEINBERG (SBN 230656)
  *ssteinberg@bartkopavia.com*
CHAD E. DEVEAUX (SBN 215482)
  *cdeveaux@bartkopavia.com*
P. CASEY MATHEWS (SBN 311838)
  *cmathews@bartkopavia.com*
NATALIE A. FELSEN (SBN 353462)
  *nfelsen@bartkopavia.com*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, California 94111
Telephone:   (415) 956-1900
Facsimile:   (415) 956-1152

Attorneys for Plaintiff and Counter-Defendant
NICKY LAATZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ZAZZLE, INC. and MOHAMED ALKHATIB,<br><br>　　　　　Defendants.<br><hr>ZAZZLE, INC.,<br><br>　　　　　Counter-Claimant,<br><br>　　v.<br><br>NICKY LAATZ,<br><br>　　　　　Counter-Defendant. | Case No. 5:22-cv-04844-BLF<br><br>**PLAINTIFF NICKY LAATZ'S MOTION TO EXCLUDE AND/OR STRIKE OPINIONS AND TESTIMONY OF DEFENDANTS' EXPERTS**<br><br>Date:　　　　May 15, 2025<br>Time:　　　　9:00 a.m.<br>Courtroom:　3<br>Judge:　　　Hon. Beth Labson Freeman<br><br>Trial Date:　July 14, 2025 |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION.................................................................................................1

II.   STATEMENT OF FACTS....................................................................................2

III.  LEGAL STANDARD ...........................................................................................4

IV.   ARGUMENT .........................................................................................................5

    A.    Kinrich's New Damages Theories Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26 and for Being Unreliable Under Rule 702 and *Daubert* ...........................................5

        1.    Kinrich's Opinions Regarding Incremental Costs and Apportioning Profits Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26, and for Lacking Sufficient Factual Basis Under Rule 702 ........................................................5

        2.    Kinrich's Opinions Comparing Nicky Laatz's Damages to Incomparable Licenses and Regarding a Hypothetical License Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26 and for Being Unreliable Under Rule 702 and *Daubert* ..............................................8

    B.    Rucinski's Opinions Should be Excluded for Being Unreliable Under Rule 702 and *Daubert* ................................................................................11

        1.    Mr. Rucinski Lacks Sufficient Qualifications or Experience to Offer Expert Testimony on the Issues in This Case ...............................11

            a.    Rucinski Has No Relevant Background in Typography, Font Software, or Related Technologies ...................................12

            b.    Mr. Rucinski's Experience Acquired During His Work on This Case Does Not Qualify Him as an Expert..............................13

            c.    Rucinski Lacks Any Copyright Expertise.......................................14

        2.    Rucinski's Opinions Rest on a Legally Irrelevant and Misleading "Hand-Coding" Standard ..............................................................14

        3.    Mr. Rucinski's Methodology is Arbitrary, Unreliable, and Unsupported by Any Accepted Standards....................................16

            a.    Mr. Rucinski's Self-Created Definitions Are Arbitrary and Lack Industry or Legal Support .........................................17

            b.    Rucinski's Line-Counting Methodology is Scientifically Unsound and Irrelevant to Creative Authorship ............................18

            c.    Mr. Rucinski Misleadingly Differentiates Between Source Code and Object Code...................................................18

    d. Mr. Rucinski's "Round-Trip" Conversion Analysis is Circular and Provides No Insight Into Authorship ........................... 19

    e. Mr. Rucinski's Design-Tool Rebuttal Is Speculative and Methodologically Unsound ............................................................. 19

 C. Shapiro's Opinions and Testimony Should be Excluded for Being Unreliable Under Rule 702 and *Daubert* or Stricken for Being Untimely and Improper Rebuttal Under FRCP 26 ............................................................. 21

  1. Shapiro Is Not Qualified to Opine on Survey Design, Methodology, or Analysis .......................................................................................... 21

  2. Shapiro's Testimony Is Not Based on Sufficient Facts or Data, Nor on Reliable Methods .................................................................................. 22

  3. Shapiro's Testimony is Untimely and Does Not Constitute Rebuttal .......... 24

 D. Swain Expert Report ................................................................................................. 25

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*
    No. 17-CV-00851-TSH, 2020 WL 4051299 (N.D. Cal. July 20, 2020) .................................. 6

*Adobe Sys. Inc. v. S. Software Inc.*
    1998 WL 104303 (N.D. Cal. 1998) ............................................................................................ 16

*Ajaxo Inc. v. E\*Trade Group Inc.*
    135 Cal. App. 4th 21 (2005) ........................................................................................................ 5

*Amos v. Makita U.S.A.*
    2011 WL 43092 (D.Nev. Jan. 6, 2011) ..................................................................... 10ccates, 24

*Bakst v. Cmty. Mem'l Health Sys., Inc.*
    2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ........................................................................... 6

*In re Canvas Specialty, Inc.*
    261 B.R. 12 (C.D. Cal. 2001) .................................................................................................... 11

*Cates v. Sears, Roebuck & Co.*
    928 F.2d 679 (5th Cir.1991) ........................................................................................................ 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) ................................................................... 8, 25

*CDN Inc. v. Kapes*
    197 F.3d 1256 (9th Cir. 1999) ................................................................................................... 15

*Claar v. Burlington N. R.R. Co.*
    29 F.3d 499 (9th Cir. 1994) .................................................................................................. 22, 24

*Clausen v. M/V New Carissa*
    339 F.3d 1049 (9th Cir. 2003) ................................................................................................... 13

*Clear-View Technologies, Inc. v. Rasnick, et al*
    2015 WL 3509384 (N.D. Cal. Jun. 3, 2015) (Freeman, J.) ............................................*passim*

*Ctr. for Healthcare Educ. & Res., Inc. v. Int'l Congress for Joint Reconst., Inc.*
    57 Cal. App. 5th 1108 (2020) ...................................................................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*
    43 F.3d 1311 (9th Cir. 1995) ..................................................................................................... 13

*Daubert v. Merrell Dow Pharms., Inc.*
    509 U.S. 579 (1993) ....................................................................................................*passim*

PL. N. LAATZ'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

*ECIMOS, LLC v. Carrier Corp.*
  971 F.3d 616 (6th Cir. 2020) .................................................................................................... 18

*Elsayed Mukhtar v. Cal. State Univ., Hayward*
  299 F.3d 1053 (9th Cir. 2002) ................................................................................................... 4

*Ets-Hokin v. Skyy Spirits, Inc.*
  225 F.3d 1068 (9th Cir. 2000) .................................................................................................. 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
  499 U.S. 340 (1991) ................................................................................................................. 15

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
  618 F.3d 1025 (9th Cir. 2010) ................................................................................................... 4

*Foster Poultry Farms, Inc., et al. v. SunTrust Bank*
  377 F. App'x 665 (9th Cir. 2010) ............................................................................................. 5

*Gable v. Nat'l Broadcasting Co.*
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ..................................................................................... 11

*GCA Corp. v. Chance*
  217 U.S.P.Q. 718 (N.D. Cal. 1982) .......................................................................................... 19

*Griffo v. Oculus VR, Inc.*
  No. SACV151228, 2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) ........................................ 22

*Hardeman v. Monsanto Co.*
  997 F.3d 941 (9th Cir. 2021) ................................................................................................... 16

*Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*
  1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ..................................................................... 4, 10

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999) ............................................................................................................. 4, 20

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*
  970 F. Supp. 2d 1229 (D. Utah 2013) ..................................................................................... 22

*Marmo v. Tyson Fresh Meats, Inc.*
  457 F.3d 749 (8th Cir.2006) ................................................................................................. 4, 24

*Matthew Enterprise, Inc. v. Chrysler Grp. LLC*
  2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) (Freeman, J.) .................................................... 7

*Meister v. Mensinger*
  230 Cal. App. 4th 381 (2014) .................................................................................................... 6

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*
  No. SACV1601841, 2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) ...................................... 22

*Oracle America, Inc. v. Google Inc.*
 750 F.3d 1339 (Fed. Cir. 2014) .................................................................................... 18

*Primiano v. Cook*
 598 F.3d 558 (9th Cir. 2010) ...................................................................................... 16

*R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*
 2011 WL 2923703 (D. Nev. July 18, 2011) .................................................................. 25

*SA Music LLC v. Apple, Inc.*
 592 F. Supp. 3d 869 (N.D. Cal. 2022) ......................................................................... 11

*Snyder v. Bank of Am., N.A.*
 No. 15-CV-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ............................. 21

*Stonefire Grill, Inc. v. FGF Brands, Inc.*
 987 F. Supp. 2d 1023 (C.D. Cal. 2013) ....................................................................... 21

*U.S. v. Approx. 64,695 Lbs. of Shark Fins*
 520 F.3d 976 (9th Cir. 2008) ...................................................................................... 15

*U.S. v. Chang*
 207 F.3d 1169 (9th Cir. 2000) .................................................................................... 11

*UAB "Planner5D" v. Facebook, Inc.*
 534 F. Supp. 3d 1126 (N.D. Cal. 2021) ....................................................................... 16

*Young v. Wideawake Death Row Ent., LLC*
 No. CV 10-1019 CAS, 2011 WL 13371881 (C.D. Cal. May 16, 2011) .............................. 5

**Statutes**

17 United States Code
 § 101 ................................................................................................................. 15, 17
 § 504(b) ............................................................................................................. 5, 7, 8

**Court Rules**

Federal Rules of Civil Procedure
 Rule 26 .............................................................................................................. *passim*
 Rule 26(a) .................................................................................................................. 5
 Rule 26(a)(2) ........................................................................................................ 4, 24
 Rule 26(a)(2)(B) ......................................................................................................... 4
 Rule 26(a)(2)(D)(ii) ........................................................................................ 1, 5, 8, 24
 Rule 37(c)(1) ......................................................................................................... 5, 25

Federal Rules of Evidence
 Rule 702 ............................................................................................................ *passim*

PL. N. LAATZ'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

**Other Authorities**

57 Fed. Reg. 6201-01, 1992 WL 29306(F.R.) (Feb. 21, 1992)...............................................15

Compendium of U.S. Copyright Office Practices (Third)
    § 721.5 ...............................................................................................................19
    § 723 ..................................................................................................................15
    §§ 1002.4, 1006.1(A), 723 ................................................................................15

https://ipxcourses.org/lectures/.............................................................................14

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 15, 2025 at 9:00 a.m., Plaintiff Nicky Laatz ("Plaintiff" or "Nicky Laatz") will and hereby does move the Court to exclude and/or strike certain opinions and testimony of witnesses designated as experts by Defendants Zazzle, Inc. ("Zazzle") and Mohamed Alkhatib ("collectively, Defendants").

More specifically, Nicky Laatz seeks an order excluding and/or striking the opinions and testimony expressed in Paragraph 33 and Parts IV.B.4-7, IV.C, and IV.D and Exhibits 3-6 of the report of Jeff Kinrich, the entirety of the initial and rebuttal reports of Christopher Rucinski, the entirety of the report of Ellen Shapiro, and Paragraphs 72 and 75-76 of the report of Scott Swain. Nicky Laatz makes this motion on the grounds that these expert opinions are unreliable pursuant to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and/or for being untimely and not properly limited to rebuttal testimony under Federal Rule of Civil Procedure 26(a)(2)(D) and the Court's Scheduling Orders.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities included below; the Declaration of P. Casey Mathews and supporting exhibits; all pleadings, records, and other filings in this action; and any further evidence, documents, and/or arguments that may be presented to the Court at or in connection with the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Large portions of Defendants' experts' opinions and testimony should be excluded on multiple grounds. First, Defendants failed to timely disclose their experts' affirmative opinions, inaccurately framing them as "rebuttal" to the five expert reports initially disclosed by Nicky Laatz. Indeed, Defendants disclosed just *one* expert—Christopher Rucinski ("Rucinski")—and his opinions on the initial expert deadline, and instead waited until the rebuttal expert deadline to disclose:

(a) New damages theories from Jeff Kinrich ("Kinrich") that are not limited to rebutting and refuting Plaintiff's damages expert's theories and that relate to issues on which Defendants bear the burden of proof; and

(b) Opinions from Ellen Shapiro ("Shapiro") purporting to respond to Plaintiff's survey expert, Dr. Sara Parikh, when in fact Shapiro is not a survey expert, says virtually nothing about Parikh's survey, and actually offers new opinions on graphic design and typography wholly unrelated to the validity of Parikh's survey and analysis.

This late-disclosed expert evidence circumvents the clear disclosure requirements of Federal Rule of Civil Procedure 26 and this Court's Scheduling Orders, and unfairly prejudices Nicky Laatz; therefore, it should be stricken.

Second, substantial portions of Defendants' expert opinions fail to meet the stringent requirements of Rule 702 and *Daubert*. For example, some of Kinrich's opinions rely on license agreements for different fonts and font software than the Blooming Elegant ("BE") Trio and Software, with different kinds of counterparties, and granting far narrower rights than what Zazzle did with Nicky Laatz's BE Trio and Software, rendering such opinions unreliable. Rucinski lacks any qualifications to opine on typography, font software, or copyright authorship, his opinions rely on a misleading "hand-coding" premise with no support in statute, regulation, or case law, and his methods are unreliable and unsupported by accepted industry standards. Similarly, Shapiro lacks any training or experience in survey design, methodology, or interpretation, and her opinions are based solely on her subjective beliefs and not any facts, data, or reliable methods. As just one example, she compares the BE Trio to various fonts without regard to whether those fonts were available in Zazzle's design tool or even existed during the relevant time period, and, indeed, a majority of the fonts were not available, undercutting her opinion that there were many similar fonts that could have substituted for the BE Trio. Defendants' unreliable expert opinions should be excluded, both because they would unfairly prejudice Nicky Laatz and because they would not "help the [jury] to understand the evidence or to determine a fact in issue." F.R.E. 702(a).

## II.    STATEMENT OF FACTS

The Court initially required disclosure of initial expert reports by September 10 and rebuttal expert reports by October 8, 2024. Dkt. 66, 71. The Court then modified this to make initial expert reports due by September 24 and rebuttal expert reports due by October 22, 2024. Dkt. 290.

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

On September 24, 2024, Defendants served only one expert report, from Rucinski, regarding "the creation and content of the Blooming Elegant Trio, the Blooming Elegant OTF Files, and the Laatz Copyright Submission PDFs." Mathews Decl. ISO Pl.'s Motion ("Mathews Decl.") ¶ 2 & Ex. 1 at 2:12-14. Defendants did not disclose any affirmative expert testimony on *any other topic*, including the operation of Zazzle's website and design tool, interpretation of the BE License terms, popularity of the BE Trio on Zazzle's website, or damages. *Id.* ¶ 2.

Also on September 24, 2024, Nicky Laatz disclosed five expert witnesses and their opinions. *Id.* ¶ 3. These included the expert report of Dr. Sara Parikh ("Parikh")—a survey expert who conducted a pre-suit survey of Zazzle designers regarding the awareness, usage, perceptions, and substitutability of the BE Trio (*id.* ¶¶ 3-4 & Ex. 2)—which had already been disclosed to Defendants nearly two years earlier when it was filed with the Court. Dkt. 51-8; Dkt. 89-49; *id.* ¶ 4. Nicky Laatz also served the expert report of Dominic Persechini ("Persechini"), including two damages theories: (a) disgorgement of Zazzle's profits attributable to its infringement, breach of contract, and fraud; and (b) an alternative measure for breach of contract and fraud using the per-person license rate Defendants expressly and implicitly agreed to in purchasing a one-user license (minus the platform's service charge), and multiplying it by estimates of the numbers of users to whom Zazzle provided access to the BE Trio and/or who used the BE Trio on Zazzle's website. *Id.* ¶¶ 3, 5 & Ex. 3.

On October 22, 2024, Defendants disclosed four expert reports purporting to be "rebuttals" to Nicky Laatz's expert reports. Mathews Decl. ¶ 9. Ellen Shapiro's report purports to rebut the long-disclosed expert opinions of Parikh, though Shapiro's report only mentions Parikh's survey once. *Id.* ¶ 13 & Ex. 9 at p. 28. Scott Swain's ("Swain") report also purports to rebut Parikh's, though portions of it rely on and repeat the opinions of Shapiro. *Id.* ¶ 12 & Ex. 8. Defendants also disclosed the expert report of Jeff Kinrich, purportedly in rebuttal to Persechini, though Kinrich proposes multiple new damages theories. *Id.* ¶ 11 & Ex. 7. Finally, Defendants disclosed an additional expert report from Rucinski, purportedly rebutting the expert reports of Nicky Laatz's font software expert, Thomas Phinney ("Phinney"), and Nicky Laatz's expert, Daniel Garrie ("Garrie"), regarding the technical operation of Zazzle's website and design tool. *Id.* ¶ 10 & Ex. 6.

Nicky Laatz took the depositions of Shapiro, Rucinski, Swain, and Kinrich, and their depositions confirmed that their testimony should be excluded, as discussed below. *Id.* ¶¶ 14-17 & Exs. 10-12.

## III.  LEGAL STANDARD

Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert testimony. When considering such admissibility, the court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (the court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable."). "The district court must ensure that expert testimony, whether it is based on 'professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035-36 (9th Cir. 2010) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Federal Rule of Civil Procedure ("FRCP") 26(a)(2) requires parties to disclose the identity and all opinions of any expert witness they may use at trial "at the times and in the sequence that the court orders," through an initial disclosure of expert testimony followed by disclosure of any other expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party … ." "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Clear-View Technologies, Inc. v. Rasnick, et al*, 2015 WL 3509384, *2 (N.D. Cal. Jun. 3, 2015) (Freeman, J.) (quoting *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 749, 759 (8th Cir. 2006)). A defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s). *Id*. (citing *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 685 (5th Cir. 1991)); *see also Int'l Bus. Machs. Corp. v. Fasco Indus., Inc*., 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) (rebuttal experts "cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts."). If a rebuttal expert's testimony is prepared "to 'contradict an expected and anticipated portion of the other party's case-in-chief,' then the witness is not a rebuttal witness." *Clear-View Technologies, Inc.*, 2015 WL 3509384, at *2. Where a party "fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1).

## IV.   ARGUMENT

### A.   Kinrich's New Damages Theories Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26 and for Being Unreliable Under Rule 702 and *Daubert*

Nicky Laatz moves to exclude Kinrich's opinions as to: (1) alternative analyses and estimates of incremental costs of products that used the BE Trio of fonts using regression (Parts IV.B.4-6); (2) apportionment of profits Zazzle received for such products (Part IV.B.7); (3) critiquing Plaintiff's damages theory based on comparison to incomparable licenses (Part IV.C); and (4) the value of a hypothetical license that would have covered Zazzle's use of the BE Trio and Software (Part IV.D), for failing to comply with FRCP 26(a)(2)(D)'s disclosure requirements, and failing to meet the standards for expert testimony under Rule 702 and *Daubert*.

#### 1.   Kinrich's Opinions Regarding Incremental Costs and Apportioning Profits Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26, and for Lacking Sufficient Factual Basis Under Rule 702

For her copyright infringement claim, Nicky Laatz is entitled to recover her actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages," but ***Zazzle*** has the burden of proof on deduction of costs and allocation of profits to other elements. 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and ***the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work***." (emphasis added)). Disgorgement is also an available remedy for breach of contract damages. *See Foster Poultry Farms, Inc., et al. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010); *Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal. App. 4th 21, 56 (2005); *Young v. Wideawake Death Row Ent., LLC*, No. CV

10-1019 CAS (JEMx), 2011 WL 13371881, at *2-3 (C.D. Cal. May 16, 2011). And California courts hold that for such remedy, as under the Copyright Act, the defendant has the burden to prove costs, expenses, or other deductions. *See Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-399 (2014); *Ctr. for Healthcare Educ. & Res., Inc. v. Int'l Congress for Joint Reconst., Inc.*, 57 Cal. App. 5th 1108, 1127 (2020). It is thus Defendants' affirmative burden to proffer evidence regarding any expenses they contend should be deducted from Zazzle's gross revenue and any allocation of profits to elements other than the BE Trio. Where a defendant's expert opinions are on issues "on which Defendants bear the burden of proof," such opinions do not qualify as "rebuttal" opinions under Rule 26. *See Clear-View Techs.*, 2015 WL 3509384, *3. Even where the plaintiff bears the burden of proof, "a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." *Id.* at *2. "[S]upplemental or 'rebuttal' experts, therefore, 'cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2020 WL 4051299, at *2 (N.D. Cal. July 20, 2020) (quoting *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *34 (C.D. Cal. Mar. 7, 2011) (quoting *Int'l Business Machines Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, *3 (N.D. Cal. Mar. 15, 1995)).

Here, Defendants elected to not disclose any expert testimony on "deductible expenses" and "elements of profit attributable to factors other than the copyrighted work" on which Defendants bear the burden of proof with their initial expert disclosures. Mathews Decl. ¶ 2. Instead, flouting FRCP 26 and the aforementioned case law, Defendants now seek to introduce testimony on such issues, including new theories going well beyond "rebutting and refuting the theories set forth by" Nicky Laatz's expert, in the guise of Kinrich's purported "rebuttal" report and testimony. Parts IV.B.4-7 and Exhibits 3-6 of Kinrich's "rebuttal" report opine on the costs Defendants allege must be deducted from their gross revenue to calculate Zazzle's profits from selling products using the BE Trio and on apportionment of profits to other elements—issues on which Defendants bear the burden of proof.

The fact that Plaintiff's damages expert, Dominic Persechini, offered opinions in his initial report regarding the proper deduction of Defendants' costs and expenses does not impact the

inadmissibility of Kinrich's opinions. Mathews Decl. Ex. 3 §§ 6.2-6.4. Defendants knew since the outset of this case that Nicky Laatz sought recovery of "Zazzle's profits pursuant to 17 U.S.C. § 504(b) for each infringement." Dkt. 1 ¶ 162. Experts that offer opinions "to 'contradict an expected and anticipated portion of the other party's case-in-chief'" are "not [] rebuttal witness[es]." *Clear-View Techs.*, 2015 WL 3509384, at *2. This is even more true where, as here, Defendants bear the burden of proof on this issue. *Id.* at *3-4.

Further, Parts IV.B.5-7 and Exhibits 5-6 of Kinrich's report also do not constitute proper rebuttal because they provide Kinrich's own ***new*** theories, analyses, and calculations of deductible costs based on regression (Parts IV.5-6), and of apportionment of profits based on an arbitrary subset of Zazzle's designers (Part IV.7). Specifically, Kinrich's "rebuttal" report introduces, for the first time, two different regression analyses, including "an alternative approach to assessing incremental costs" by "estimating a regression of monthly costs … on monthly net revenues for the core Zazzle business." Mathews Decl. Ex. 7 ¶¶ 42-47. Further, Kinrich introduces new opinions regarding "Zazzle's and Zazzle designers' independent contributions" to the profits from products using the BE Trio, such as "the quality and characteristics of the product itself" and "design elements unrelated to the at-issue fonts" such as "photos, illustrations, and other graphical components," and "text elements often comprised of different fonts." *Id.* ¶¶ 48-57. But this testimony is not "rebuttal" because Nicky Laatz's damages expert provided no opinions or testimony on this topic. Defendants can disagree with Nicky Laatz's damages expert's methodologies, but simply alleging that "one method [to support an expert opinion] fails" does not mean a new methodology "become[s] 'rebuttal.'" *Matthew Enterprise, Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *4 (N.D. Cal. Aug. 15, 2016) (Freeman, J.).

Kinrich's opinions regarding "designers' independent contributions" and "design elements unrelated to the at-issue fonts" that he claims contributed to the products' profitability are further inadmissible because they lack evidentiary support, as Zazzle destroyed the evidence of what the products that used the BE Trio actually looked like, thus making it impossible for ***anyone*** to determine the value of design elements (other than the BE Trio) that may or may not have contributed to the products' profitability. *E.g.*, Dkt. 263 at 6-7; Dkt. 310-1 ¶¶ 17-20. The Court has

previously recognized Defendants' failure to preserve this evidence: "[T]he Court cautions Defendants that the decision not to produce the webpages sought by Plaintiff … may provide grounds to limit or exclude presentation of Defendants' value-allocation defense if Plaintiff can make a successful showing that, after receiving notice of the impending dispute, Defendants failed to preserve relevant evidence that would have been necessary to support Plaintiff's defense of her claims." Dkt. 314 at 1:19-24. Defendants have been on notice of Nicky Laatz's intent to seek disgorgement of profits under 17 U.S.C. § 504 since at least September 30, 2021 (Mathews Decl. Ex. 17 at 4) and Defendants readily admit they failed to preserve this evidence. But Defendants now seek to use Kinrich's testimony to undermine Nicky Laatz's damages calculations based on the very evidence Defendants failed to preserve. This gamesmanship cannot stand.

By sandbagging Nicky Laatz with affirmative expert opinions improperly dressed up as "rebuttal," Defendants precluded Nicky Laatz from having an opportunity to review them and provide rebuttal testimony, as contemplated by FRCP 26(a)(2)(D)(ii). Thus, the Court should strike or otherwise exclude Kinrich's opinions in Parts IV.B.4-7 and Exhibits 3-6 of his report.

Additionally, Kinrich's opinions contained in Paragraphs 33 and 49 of his expert report are inadmissible for the reason that they are based on the inadmissible opinions of Defendants' expert, Ellen Shapiro. As discussed in Part IV.C, *infra*, Shapiro's opinions are inadmissible both because they do not meet the standards required by Rule 702 and because they are improper "rebuttal" opinions. "Where an expert bases [his] opinion on - or simply repeats - the unreliable opinion of another expert, a district court may properly exclude the first expert's testimony." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017).

**2.    Kinrich's Opinions Comparing Nicky Laatz's Damages to Incomparable Licenses and Regarding a Hypothetical License Should be Stricken or Excluded for Being Untimely and Improper Rebuttal Under FRCP 26 and for Being Unreliable Under Rule 702 and *Daubert***

As noted above, Nicky Laatz's damages expert presented two damages theories in his initial expert report: (a) disgorgement of Zazzle's profits attributable to its infringement and breach of contract; and (b) an alternative measure for breach of contract and fraud using the per-

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

person license rate Zazzle expressly and implicitly agreed to in purchasing a one-user license (minus the platform's service charge), and multiplying it by estimates of the numbers of users to whom Zazzle provided access to the BE Trio and/or who used the BE Trio on Zazzle's website. Mathews Decl. ¶ 5 & Ex. 3.

Yet, Kinrich goes well beyond rebutting and refuting such theories. Instead, he presents an entirely new theory based on speculation about a hypothetical license that he claims Nicky Laatz and Zazzle would have agreed to in order to provide unlimited access to and use of the BE Trio for all of Zazzle's tens of millions of users, even though Nicky Laatz has *never* actually licensed or even offered to license these fonts for such broad use by anyone at any time. Mathews Decl. Ex. 7 ¶¶ 68, 74-75, 78-98; Dkt. 89-1 ¶ 52. Kinrich bases his opinion on an amalgamation of other licenses, most of which were for other fonts, not the BE Trio (a fact he completely ignores), and none of which provided the scope of rights Zazzle would have required. *Id.* He then compounds this error by using that amount in his alternative analysis of deductible costs, thereby rendering it similarly unreliable. Mathews Decl. Ex. 7 ¶ 52. This alternative damages model is inadmissible both because it constitutes improper rebuttal and because it is not based on "sufficient facts or data," nor on reliable methods or reliable application of such methods. F.R.E. 702.

As an initial matter, Nicky Laatz's damages expert did not opine on the value of a hypothetical license that would have covered Zazzle's actual use of the BE Trio and Software. Instead, he opined that under the law cited in his report on breach of contract damages, "the only relevant license for purpose of calculating breach of contract damages in this matter is the desktop license Alkhatib acquired." Mathews Decl. Ex. 3 ¶ 186. He then explained why even if one were to attempt to analyze a hypothetical license, "none of the font licenses granted by Nicky Laatz would be comparable to Zazzle's use and scale." *Id.* ¶ 188. But Kinrich did not limit himself to rebutting or refuting these assertions. Instead, Kinrich engages in a new analysis of Nicky Laatz's past licenses and a hypothetical license that would have covered Zazzle's use of the BE Trio and Software—presenting an entirely new methodology for calculating Nicky Laatz's damages for copyright infringement. Mathews Decl. Ex. 7 at Part IV.D. Defendants' failure to disclose these opinions in their initial expert disclosures are all the more unjustified given that Kinrich was first

contacted by Defense counsel in the "spring or early summer" of 2024 (Mathews Decl. Ex. 12 at 94:9-14)—long before initial expert disclosures and long after Defendants indicated they would likely offer testimony on the value of a hypothetical license. *E.g.* Dkt. 59 at 7 (stating Defendants would seek discovery on Nicky Laatz's "licensing practices (including terms and pricing)").

Once again, permitting Defendants to backdoor such affirmative expert testimony under the guise of "rebuttal" testimony would be contrary to FRCP 26, as well as this Court's inherent power to preclude non-rebuttal testimony at trial. *Clear-View Technologies, Inc.,* 2015 WL 3509384, *2 and 4; *Amos v. Makita U.S.A.,* 2011 WL 43092, at *1 (D.Nev. Jan. 6, 2011) ("The Ninth Circuit has held that rebuttal experts are not rebuttal experts if the testimony they give does not address or rebut previously disclosed expert testimony."); *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) (rebuttal experts "cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts. . . .; [A] party can control the scope of the testimony of its adversary's rebuttal experts by limiting its own experts' testimony to a given subject matter.").

Kinrich's testimony regarding a hypothetical license should also be excluded because it is not based on sufficient facts or data, nor on reliable methods or reliable application of such methods. To support his hypothetical license costs, Kinrich relies on "other license agreements Plaintiff herself has ever negotiated," some of which he calls "[c]omparable licenses the Plaintiff has granted for use of her fonts," and on one license Zazzle has agreed to with a third party. Mathews Decl. Ex. 7 ¶¶ 68, 74-75, 78-98. But Kinrich ignores key facts, including that most of these licenses relate to different fonts (not the BE Trio), none of Nicky Laatz's licenses were with Zazzle or any comparable counterparty, and Zazzle's license was not with Nicky Laatz or anyone similar. *Id.* He also fails to account for whether such licenses are comparable to or consistent in scope with the terms that would have been necessary to cover Zazzle's use of the BE Trio and Software. *Id.* Indeed, unrebutted opinions of Nicky Laatz's font licensing expert, Stuart Sandler, make clear that none of Nicky Laatz's other font licenses would have permitted Zazzle to use the BE Trio and Software in the manner that it did. Mathews Decl. Ex. 4 ¶¶ 53-59 & App'x A.

For the foregoing reasons, Paragraphs 68, 74-75, 78-98 of Kinrich's expert report should

be stricken and/or excluded as improper "rebuttal" and for being unreliable under Rule 702.

## B. Rucinski's Opinions Should be Excluded for Being Unreliable Under Rule 702 and *Daubert*

Mr. Rucinski's opinions should be excluded in their entirety because they fail to meet the requirements of Rule 702 and *Daubert*. First, he lacks sufficient qualifications or experience to opine on typography, font software, and copyright authorship. Second, his opinions rely on a legally irrelevant and misleading "hand-coding" premise with no support in statute, regulation, case law, or official Copyright Office guidance. Third, Mr. Rucinski's methods—particularly his self-created definitions, arbitrary line-counting analysis, misleading distinction between source and object code, circular software comparisons, and speculation about changes in Zazzle's design tool—are unreliable and unsupported by accepted industry standards. Permitting his testimony risks confusing the jury rather than assisting it, and undermining the core factual question of whether Nicky Laatz contributed protectable creative expression to the BE Software. Thus, the Court should exercise its gatekeeping role and exclude Mr. Rucinski's opinions.

## 1. Mr. Rucinski Lacks Sufficient Qualifications or Experience to Offer Expert Testimony on the Issues in This Case

Expert testimony must reflect specialized knowledge precisely matched to the issues presented. *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 901 (N.D. Cal. 2022) (excluding software expert who lacked specialized expertise regarding the specific software at issue, despite general competence in software engineering); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 828, 833 (C.D. Cal. 2010) (excluding copyright attorney who lacked expertise in specialized literary analysis, despite general copyright qualifications). Generalized skill or expertise, no matter how accomplished, cannot substitute for precise, subject-specific knowledge. *See U.S. v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (excluding general finance expert who lacked specialized knowledge of counterfeit securities); *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (C.D. Cal. 2001) (general expertise insufficient unless directly applicable to the issue before the court).

Defendants offer Mr. Rucinski as an expert on specialized questions involving typography, font software, and copyright registration processes—areas in which he admits having no prior

experience or training and where his supposed qualifications were generated solely through this litigation. This lack of specialized expertise disqualifies Mr. Rucinski's opinions in three distinct ways: (a) he has no relevant prior experience in typography, font software, or related technologies; (b) his knowledge is entirely litigation-driven, rendering it inherently unreliable; and (c) he lacks expertise concerning copyright law or registration procedures. Any one of these deficiencies alone would justify exclusion; together, they render his testimony irredeemably unreliable and precisely the kind of misleading and unhelpful testimony *Daubert* instructs courts to exclude.

### a.    Rucinski Has No Relevant Background in Typography, Font Software, or Related Technologies

Defendants designate Mr. Rucinski as an expert to testify on the technical creation, content, and authorship of the BE Trio and Software, as well as to rebut the opinions of Nicky Laatz's font expert, Thomas Phinney, regarding these specialized typographic and software questions. Mathews Decl. Ex. 1 ¶ 8, Ex. 6 ¶ 8; Ex. 10 at 112:3-12. Yet, as shown below, Mr. Rucinski admits he lacks the specialized experience and knowledge these questions demand.

By his own admission, prior to this case, Mr. Rucinski had no relevant education, training, or practical experience in typography, font design, or related technologies. Mathews Decl. Ex 10 9:24-10:4; 10:20-11:4; 12:7-17. He had never previously used standard professional font software editing tools or worked with industry-specific file formats or workflows. *Id.* at 145:24-146:6, 162:21-25. Without prior experience in these foundational aspects, Mr. Rucinski lacks the critical insights necessary to distinguish routine technical tasks from genuine creative expression.

These skills and experiences are essential because typography and font software involve specialized technical concepts (such as ligatures and kerning), distinctive file formats (such as OTF), and unique industry-standard workflows—including defining precise glyph coordinates, creating vector-based outlines by setting and modifying on- and off-curve reference points, and implementing complex OpenType feature sets—that differ from general software programming. General software expertise alone is insufficient, just as even an experienced airplane engineer is not qualified, without specialized training, to opine on helicopter design. Because Mr. Rucinski lacks this specialized background, his testimony risks misleading rather than assisting the jury—

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

precisely the type of juror confusion *Daubert*'s gatekeeping function was designed to prevent.

**b.      Mr. Rucinski's Experience Acquired During His Work on This Case Does Not Qualify Him as an Expert**

To the extent Defendants argue that Mr. Rucinski's general software experience combined with his background work on this case suffices, the *Daubert* standards also prohibit reliance on expertise hastily acquired solely for litigation, without genuine professional grounding. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*") (expert testimony inadmissible if based primarily on litigation-driven expertise); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003) (excluding testimony based on superficial, litigation-driven experience).

Here, Mr. Rucinski admits his knowledge of FontLab, OpenType font software files, and specialized typographic workflows arose entirely after Defendants engaged him, testifying he first learned how to use FontLab specifically for this litigation. Mathews Decl. Ex. 10 145:24-146:6; 162:21-25. Though he has served as an expert in unrelated technical fields, such as software patents and telecommunications, none of those engagements involved typography, fonts, or related software. *Id.* at 9:24-10:4; 162:21-25. His hurried crash course in FontLab cannot replicate the sustained, iterative experience typographic professionals gain from extensive, hands-on practice—such as routinely working with glyph outlines, managing advanced OpenType features, and refining font software metrics. *See* Mathews Decl. Ex. 5.

Indeed, typography and font software experts typically demonstrate professional involvement in industry organizations, such as ATypI, the Type Directors Club, Society of Typographic Aficionados, or relevant international standard-setting bodies (ISO, W3C). Mathews Decl. Ex. 5 ¶¶ 3-4. Mr. Rucinski's resume shows no affiliation with any such organization. Mathews Decl. Ex. 1 at Ex. II. His claim to expertise here is no more credible than the airplane engineer described above who, after watching a YouTube video and taking a helicopter tour, proclaims himself qualified to critique veteran helicopter engineers. Because Mr. Rucinski's expertise is merely a litigation-driven crash course, it fails Rule 702's requirement that testimony reflect genuine specialized "knowledge, skill, experience, training, or education." His opinions

should accordingly be excluded.

### c.    Rucinski Lacks Any Copyright Expertise

Mr. Rucinski's unsuitability to testify on copyright issues is demonstrated first by his candid admission: "I'm not an expert in copyright law." Mathews Decl. Ex. 10 at 61:9-10. His only claimed copyright-related training is "CopyrightX," a free, general introductory online course, which he confirmed provided no specialized instruction relevant to typography, font software, or the Copyright Office Compendium. Mathews Decl. Ex. 10 at 13:23-14:4, 16:10-17; *see* https://ipxcourses.org/lectures/. Indeed, he conceded that this general course did nothing to qualify or assist him as an expert in this litigation. Mathews Decl. Ex. 10 at 13:12-16, 15:16-20.

When questioned about prior experience reviewing copyright deposits, a central issue in his report, Mr. Rucinski admitted reviewing deposits in "[maybe] two or three cases" and could provide few specifics. *See* Mathews Decl. Ex. 10 at 67:18-68:16. Pressed on what was in the deposits or covered by the copyrights in these prior experiences, such as whether it was source code or object code, he conceded: "I don't know what was actually copyrighted." *Id.* at 67:15-70:18. He also admitted having no experience with deposit processes specific to font software. *See id.* at 13:8-15; 14:1-5.

Mr. Rucinski's unfamiliarity with copyright processes fundamentally undermines his ability to reliably interpret specialized Copyright Office terminology and practices, rendering his opinions speculative and unreliable. When considered alongside his lack of specialized typographic and font software background and superficial, litigation-driven "expertise," these deficiencies demonstrate that Mr. Rucinski is not qualified under Rule 702 and *Daubert* to offer reliable, helpful expert testimony in this case. His opinions should accordingly be excluded.

### 2.    Rucinski's Opinions Rest on a Legally Irrelevant and Misleading "Hand-Coding" Standard

Expert testimony is admissible only if it genuinely assists the jury in understanding evidence or resolving factual disputes. *Daubert*, 509 U.S. 579, 591-92. Opinions built on legally irrelevant premises provide no assistance and must therefore be excluded. *Id.* Yet Mr. Rucinski's testimony rests entirely on an arbitrary requirement and definition of "hand-coding" he invented

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

for this litigation. Under his rubric, authorship of font software turns exclusively on whether the code was typed manually, without graphical tools. *See* Mathews Decl. Ex. 1 ¶¶ 32-35, Ex. 10 at 114:20-115:13, 204:3-205:11, 210:1-214:10. Indeed, Mr. Rucinski admits that his opinions would change if the factfinder adopted a broader definition of "hand-coding"—specifically, one that includes use of visual editing tools. Mathews Decl. Ex. 10 at 117:24-118:12 (agreeing that "in that very specific case," where such tools qualify, "that would change this opinion"). By anchoring his opinions to a legally unsupported and idiosyncratic standard, Mr. Rucinski departs entirely from settled law.

Copyright law establishes that originality and creativity determine authorship, not the particular methods or tools an author employs. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (emphasizing originality over method); *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260-61 (9th Cir. 1999) (same). The Copyright Act simply defines a "computer program" as "a set of statements or instructions," placing no restrictions on how these instructions are created. 17 U.S.C. § 101. Reinforcing this point, the Copyright Office established in 1992 that protection for and registration of font software depends on whether the instructions are "original" and "meet[] the usual standard of authorship," not the drafting techniques employed. *See* Registrability of Computer Programs that Generate Typefaces, 57 F.R. 6201-01, 1992 WL 29306 (Feb. 21, 1992).

Mr. Rucinski's reliance on the Compendium and a single examiner's comment to support his invented standard is misplaced. (*See* Mathews Decl. Ex. 1 ¶ 32, nn. 12-14 (Rep.) (citing Compendium §§ 1002.4, 1006.1(A) and emails with examiner). He acknowledges that "hand-coded" only appears in the Compendium sections regarding HTML, and not the section addressing font software. Mathews Decl. Ex. 10 at 209:9-210:2, 213:9-214:8 (admitting the Compendium does not define "hand-coded" and uses the term only in relation to HTML, not font software); Compendium (Third) §§ 1002.4, 1006.1(A), 723. The omission shows that the Office never intended "hand-coding" to be required for font software. *See U.S. v. Approx. 64,695 Lbs. of Shark Fins*, 520 F.3d 976, 983 (9th Cir. 2008) (when an agency includes specific language in one provision but omits it from another, courts presume the omission was deliberate). Additionally, individual examiners have no authority to override statutory provisions or established guidance.

*See UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1134 (N.D. Cal. 2021) (courts independently evaluate copyrightability without examiner deference); *see also* Dkt. 140 at 24:21-22 (court declining to follow examiner's interpretation).

Copyright Office practice and case precedent further undermine Mr. Rucinski's arbitrary standard. The Office regularly registers font software created with graphical tools, including FontLab and including methods virtually identical to those used by Nicky Laatz. Mathews Decl. ¶¶ 18-19, Ex. 13 (emails describing how author drew glyphs on paper, then "hand-edited and hand-placed" "all of the curves, node points, and the relationships between th[em]," "wrote the scripts and lookup tables entirely by hand to describe the OpenType features such as kerning, ligatures, and alternates," and used Fontself to compile it into usable font software) & Exs. 14-16 (registration identifying FontLab). If Mr. Rucinski's restrictive interpretation had merit, these registrations would be inexplicable. Case law also aligns against his position, as the only court to address copyrightability of font software concluded that authorship rests on creative contribution rather than coding method. *See Adobe Sys. Inc. v. S. Software Inc.*, 1998 WL 104303, at *1-4 (N.D. Cal. 1998) (finding creativity in selecting and editing on- and off-curve reference points sufficient).

Allowing Mr. Rucinski's testimony would mislead rather than assist the jury. His arbitrary and legally unsupported "hand-coding" standard invites the kind of jury confusion *Daubert* seeks to prevent. 509 U.S. at 591-92, 595. Consequently, the Court should preclude him from testifying, or at least from suggesting authorship turns on his irrelevant and invented "hand-coding" standard.

### 3.    Mr. Rucinski's Methodology is Arbitrary, Unreliable, and Unsupported by Any Accepted Standards

To be admissible under Rule 702 and *Daubert*, expert testimony must rest on methods that are objective, testable, generally accepted, and reliably applied. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (noting courts should "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance"); *accord Hardeman v. Monsanto Co.*, 997 F.3d 941, 962 (9th Cir. 2021). Mr. Rucinski's methodology fails to meet these standards, as he: (a) invents idiosyncratic definitions

unsupported by any authority; (b) employs a simplistic line-count approach that ignores creative context; (c) incorrectly distinguishes source vs. object code; and (4) uses a "round-trip" analysis that proves nothing about authorship. These flaws render his opinions unreliable and inadmissible.

### a.      Mr. Rucinski's Self-Created Definitions Are Arbitrary and Lack Industry or Legal Support

Mr. Rucinski's methodology relies entirely on definitions he admits creating specifically for this litigation. Mathews Decl. Ex. 10 at 205:4-24. These definitions—including "hand-coded," "hand-coding," and "computer program"—are not from recognized industry standards, scholarly literature, or legal authority, nor does he claim otherwise. By rejecting accepted definitions, he violates *Daubert*'s core requirement that an expert's opinions rest on reliable principles and methods accepted in the relevant professional community.

A notable example is Mr. Rucinski's narrow definition of "hand-coding" as "manually typing digital text" without using a graphical interface. Mathews Decl. Ex. 1 ¶ 32. He treats this narrow definition as determinative of copyrightability, notwithstanding that he is neither an expert in copyright law nor able to cite any precedent endorsing such limitation. Mathews Decl. Ex. 10 at 61:9-10, 208:15-214:21. This arbitrary definition excludes commonplace practices in both the font industry and the larger technology industry, such as using visual editors that convert graphical inputs into corresponding coordinates and/or code. Similarly problematic is Mr. Rucinski's rejection of the Copyright Act's definition of "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. Mr. Rucinski discards this as "not the most apt definition" for this case, without citing any external authority. Mathews Decl. Ex. 10 at 182:16-183:20.

Mr. Rucinski's self-created definitions have not been published nor validated and accepted, and he does not even claim they comport to industry standards. Because these definitions contradict the Copyright Act's own definitions, lack industry acceptance, and were devised purely for this case, the definitions and Mr. Rucinski's opinions based thereon (which include all of his affirmative opinions and his rebuttal opinions as to Mr. Phinney) are inherently unreliable and should be excluded under *Daubert* and Rule 702 standards.

**b.      Rucinski's Line-Counting Methodology is Scientifically Unsound and Irrelevant to Creative Authorship**

Mr. Rucinski attempts to quantify authorship by counting lines of text in Nicky Laatz's original copyright deposits that meet his artificially narrow "hand-coding" definition, and then attributing a percentage to her contribution. Mathews Decl. Ex. 1 ¶¶ 48-63, 75-76. This mechanical method has no acceptance or support in typography or software engineering precisely because it ignores qualitative distinctions among lines of code. For example, a single line of OpenType feature code can dramatically alter glyph functionality and user experience, while numerous other lines might merely handle routine administrative tasks. Yet, Mr. Rucinski provides no justification for equating line count with creative authorship. Moreover, he fails to show that his simplistic method is peer-reviewed or scientifically validated.

Furthermore, courts have consistently rejected purely numeric methods—even within the narrower context of infringement analyses—recognizing that the significance, not quantity, of code determines legal outcomes. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 630 (6th Cir. 2020) ("What matters is not the quantity of code … but the significance of the code to the program"); *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1378-79 (Fed. Cir. 2014) (applying Ninth Circuit law) (upholding finding of infringement despite copying just nine lines from millions). For copyrightability, "the requisite degree of creativity [is] extremely low; even a slight amount will suffice." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) (internal quotations omitted). Thus, Mr. Rucinski's numeric approach, which disregards qualitative distinctions essential to creative evaluation, is both legally irrelevant and scientifically unsound, warranting exclusion under *Daubert*.

**c.      Mr. Rucinski Misleadingly Differentiates Between Source Code and Object Code**

Mr. Rucinski's arbitrary distinctions between source code and compiled (object) code further undermine his reliability. The OTF files Nicky Laatz initially created containing the installable, executable object code for the BE Software, and the VFJ files containing the corresponding human readable source code for submission to the Copyright Office, are different

representations of the same work. As noted in the Compendium, "[t]he U.S. Copyright Office views source code and object code as **two representations of the same work**." Compendium (Third) § 721.5 (quoting *GCA Corp. v. Chance*, 217 U.S.P.Q. 718, 719-20 (N.D. Cal. 1982) ("[b]ecause the object code is the encryption of the copyrighted source code, the two are to be treated as one work") (emphasis added)). Nevertheless, Mr. Rucinski repeatedly states that the OTF files lack the authorship present in the VFJ files. *See, e.g.*, Mathews Decl. Ex. 1 ¶¶ 34, 43, 63, 73, 76, 86. This unsupported distinction is misleading and methodologically unsound, as courts and the Copyright Office explicitly recognize that source and object code reflect the same underlying creative expression. This is a further basis for excluding Mr. Rucinski's opinions.

d.   **Mr. Rucinski's "Round-Trip" Conversion Analysis is Circular and Provides No Insight Into Authorship**

Mr. Rucinski relies on a fundamentally circular methodology: converting the OTF files into FontLab's readable source-code format (e.g., VFJ), rendering them as PDFs, and then comparing these PDFs to the original files submitted to the Copyright Office. Mathews Decl. Ex. 1 at Ex. I ¶¶ 24-31. At most, this exercise demonstrates FontLab reliably converts compiled files back into readable source code, confirming software consistency but revealing nothing about the originality or creative input underlying the font software. His method is analogous to translating Hemingway's *The Old Man and the Sea* from English into Spanish and then translating that Spanish version back into English—only to proclaim that similarity between the original and the re-translated English version proves Hemingway lacked creativity when writing the original. This approach is self-contained, self-validating, and entirely irrelevant to determining creative authorship. It offers the jury no meaningful assistance in distinguishing authorship from mechanical functionality, precisely the sort of confusion *Daubert* seeks to avoid. Consequently, Mr. Rucinski's "round-trip" conversion method—and any opinions derived from or dependent upon it—should be excluded under *Daubert*. *See, e.g.*, Mathews Decl. Ex. 1 at ¶¶ 2, 33, 38-39 (each relying on the flawed "round-trip" exercise from his earlier declaration).

e.   **Mr. Rucinski's Design-Tool Rebuttal Is Speculative and**

**Methodologically Unsound**

Mr. Rucinski's critique of Nicky Laatz's expert on the operation of Zazzle's design tool, Daniel Garrie, is not grounded in any reliable methodology. Although Mr. Rucinski asserts that Mr. Garrie's opinions cover "only 32%" of the relevant time period because he analyzed Zazzle's design tool in its current form, Mr. Rucinski concedes he did not investigate how the design tool operated before 2021, did not speak with Zazzle's technical leads about changes during that period, and does not recall what, if anything, changed. Mathews Decl. Ex. 10 at 305:21-309:25. He did not attempt to test earlier versions of the system, review archived logs, or assess whether Mr. Garrie's analysis and conclusions remain valid across the full window during which Zazzle used the BE Trio and Software in its design tool. *Id.* Instead, Mr. Rucinski simply speculates that the earlier version "might" have been different. *Id.*

Further undermining his methodology, Mr. Rucinski devotes several pages of his rebuttal to refuting Mr. Garrie's supposed claim that Zazzle sends "SVG files" to users. Yet he concedes Mr. Garrie never actually said that—only "SVG data" or "images." *Id.* at 310:14-314:25. This kind of straw-man rebuttal does not engage Mr. Garrie's actual analysis and highlights the ad hoc nature of Mr. Rucinski's approach. His failure to apply any consistent, verifiable method to analyze the design tool—especially over the full time period he criticizes—renders his opinions on this issue methodologically defective and inadmissible under *Daubert*.

Taken together, Mr. Rucinski's self-created definitions, meaningless distinction between object and source code, unsupported line-count analysis, circular conversion method, and speculative analysis of the design tool violate *Daubert*'s foundational standards for reliability. An expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Mr. Rucinski's methodologies have no objective criteria, recognized industry support, or peer-reviewed validation. Instead, they rest solely on his subjective assertions created specifically for this litigation. Therefore, his opinions should be excluded in their entirety, or at minimum, the Court should prohibit Mr. Rucinski from presenting testimony based on his arbitrary definitions, distinction between source and object code, line-count analysis, circular and misleading

conversion methodology, and his design-tool rebuttal.

**C.    Shapiro's Opinions and Testimony Should be Excluded for Being Unreliable Under Rule 702 and *Daubert* or Stricken for Being Untimely and Improper Rebuttal Under FRCP 26**

Shapiro's opinions and testimony should be stricken or otherwise excluded for three separate reasons. First, Shapiro purports to be rebutting the opinions of Nicky Laatz's survey expert, Dr. Sara Parikh, but Shapiro has no qualifications to testify as an expert in survey design, methodology, and conduct. Second, Shapiro's opinions are based solely on her personal, subjective views regarding font design and typefaces, and not on sufficient objective facts, data, or reliable methods, in further violation of Rule 702. For example, she compares the BE Trio to various fonts without regard to whether such fonts were available in Zazzle's design tool or anywhere during the relevant time period. Finally, Shapiro's testimony is improper rebuttal, as it does not address or rebut the actual opinions expressed by Parikh; but rather, primarily consists of affirmative opinions on graphic design and use of typefaces therein.

**1.    Shapiro Is Not Qualified to Opine on Survey Design, Methodology, or Analysis**

Dr. Parikh conducted a pre-suit survey of Zazzle designers regarding the awareness, usage, perceptions, and substitutability of the BE Trio, and concluded that the BE Trio was an important and popular set of fonts on Zazzle's website. Mathews Decl. ¶ 4 & Ex. 2. Shapiro purports to rebut Parikh's survey and conclusion, particularly regarding the substitutability of the BE Trio. Mathews Decl. Ex. 9. But Shapiro lacks any education, training, or experience in survey design, methodology, and analysis, so she is not qualified to testify on these topics.

Rule 702 allows expert testimony only if the expert has "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." If an expert does not possess the necessary qualifications to show expertise in the subject matter on which they are offering opinions, then the testimony is unreliable and must be excluded. *See, e.g.*, *Snyder v. Bank of Am.*, *N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1039

(C.D. Cal. 2013). Furthermore, "expertise in one subject does not necessarily mean the expert will be qualified to testify on all issues that could arise from that subject." *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1241 (D. Utah 2013).

Shapiro confirmed her opinions were solely meant to serve as a rebuttal to Parikh. Mathews Decl. Ex. 11 at 19:3-12 ("**Q.** Okay. So all of your opinions were intended to be a rebuttal to Dr. Parikh's report and her opinions? **A.** Yes."). Parikh is an expert in consumer surveys and survey design and methodology. Mathews Decl. Ex. 2, ¶ 1. Her opinions relate exclusively to the design, conduct, and results of a survey she conducted of Zazzle designers who sell their products on its website in order to "measure awareness, usage and perceptions of the Blooming Elegant Trio set of fonts." *Id.* ¶ 5.

But Shapiro has not obtained any education nor completed any coursework or training related to surveys—including how to design or conduct a survey and how to interpret survey results—nor has she acquired any significant experience conducting or interpreting surveys. Mathews Decl. Ex. 11 at 39:8-20. In fact, she testified multiple times in her deposition that she is "not a survey expert." *Id*. at 88:19-20, 127:8. Further, Shapiro testified she does not design surveys and is unable to opine as to Parikh's methodologies. *Id.* 186:6-9. As such, under Rule 702, Shapiro's testimony should be excluded.

### 2. Shapiro's Testimony Is Not Based on Sufficient Facts or Data, Nor on Reliable Methods

Shapiro's opinions and testimony should also be excluded because they are based solely on her subjective beliefs and not "sufficient facts or data." F.R.E. 702. Courts have repeatedly found that an expert's opinions are not reliable where the expert bases his or her conclusions on "mere subjective beliefs or unsupported speculation." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *see, e.g.*, *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, No. SACV 16-01841-CJC(KESx), 2019 WL 13045054, at *4 (C.D. Cal. Feb. 28, 2019) (granting motion to preclude testimony of expert because she "failed to apply reliable principles and methods to calculate in-store sales" and "engaged in no independent analysis."); *Griffo v. Oculus VR, Inc.*, No. SACV151228, 2018 WL 6265067, at *6 (C.D. Cal. Sept. 18, 2018) (finding that "[t]he expert

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

report is inadmissible" because "[i]t contains unsupported speculation and subjective belief without the factual basis for the opinion.").

Shapiro's report opines that the BE Trio is not unique, important, nor more appealing than other fonts, and that it would not have been difficult to substitute Blooming Elegant with another font. Mathews Decl. Ex. 9 at 3. Shapiro also opines that Parikh's survey was flawed because of the fonts selected for comparison in the survey. *Id*. However, Shapiro bases her conclusions on subjective beliefs, not data, and on unreliable methods. As she admitted in her deposition, Shapiro's methods were limited to:

- Using online search engines to locate fonts she personally believed are similar to the BE Trio. Mathews Decl. Ex. 11 at 121:22-122:6.

- Experimenting with the Zazzle design tool to purportedly assess the difficulty of replacing the Blooming Elegant font with a similar font in a design. But Shapiro admitted that she was not actually able to experiment with the Blooming Elegant font or the other fonts in the Trio because they had been removed from the design tool long before. *Id.* at 126:4-22.

- Her own professional experience as a graphic designer and typographer. *Id.* at 352:4-18.

Unlike Parikh's opinions, which are based on data from and responses to a survey "conducted with 136 graphic designers who sell on Zazzle" (Mathews Decl. Ex. 2 ¶ 9), Shapiro based her report solely on her own review and beliefs and did not seek to obtain any actual data, whether through a survey or otherwise. Nor did she even speak to a single Zazzle designer or user to attempt to validate her subjective opinions and conclusions:

Q. Did you speak with any Zazzle designers or users to see if they agree with your opinion that the Blooming Elegant Trio is not unique?

A. No, I did not. And I was not asked to. And I don't know any.

Q. Okay. Did you conduct a survey of any Zazzle designers or users to see if it would support your opinion that the Blooming Elegant Trio is not unique?

A. No, I did not.

Mathews Decl. Ex. 11 at 123:4-15.

PL. N. LAATZ'S  MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

Moreover, as Shapiro admitted, she made no effort to check whether all (or any) of the fonts she identified as being purportedly comparable to and substitutable for the BE Trio were actually available in Zazzle's design tool at the same time as the BE Trio. *Id.* at 129:22-130:12. In fact, Shapiro admitted in deposition that it appears that many, if not most, of such fonts were not available during the relevant time period, but rather, were added much later. Mathews Decl. Ex. 11 at 128:16-130:12, 146:10-147:13, 183:3-24, 187:8-14, 205:15-206:10, 211:25-213:19, 215:20-221:6, 244:10-245:17. Thus, Shapiro's testimony regarding the ease of replacing the BE Trio lacks *any* (let alone sufficient) valid factual bases or reliable methodology. Therefore, Shapiro's testimony does not rise above the "mere subjective beliefs or unsupported speculation" that the court in *Claar* deemed inadmissible. 29 F.3d at 502. Because of this, her testimony should be excluded in its entirety.

**3.      Shapiro's Testimony is Untimely and Does Not Constitute Rebuttal**

Shapiro's testimony should also be stricken because it consists of affirmative expert opinions, not rebuttal expert testimony. As noted above, FRCP 26 allows experts to offer rebuttal opinions "solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." Fed. R. Civ. P. 26(a)(2)(D)(ii); *Clear-View Techs.*, 2015 WL 3509384, at *2. Further, "[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006).

Even though Shapiro states that her report and testimony are meant exclusively to rebut Parikh's report and survey, Shapiro focuses most of her report on typography and graphic design. But "[t]he Ninth circuit has held that rebuttal experts are not rebuttal experts if the testimony they give does not address or rebut previously disclosed expert testimony." *Amos v. Makita*, 2011 WL 43092, at *1 (D. Nev. Jan. 6, 2011). In fact, in pages seven through twenty-seven of Shapiro's report, Parikh's report, survey, and opinions are not mentioned at all. Mathews Decl. Ex. 9 at 7-27. Instead, Shapiro offers testimony regarding the BE Trio itself from her perspective as a typographer and graphic designer. *Id.* In her deposition she states, "[this opinion] is based on my experience as a graphic designer, as an author of books and articles about graphic design and typography, as a judge in typography competitions and so forth." Mathews Decl. Ex. 11 at 352:14-

18. Further, Shapiro admits that her opinions are "from a different point of view" and "[n]ot from the point of view of a survey designer, or survey expert, or a survey analyst, but from the point of view of someone who works with typefaces … ." *Id.* at 198:23-199:4. Thus, even Shapiro herself admits that her testimony does not relate to "the same subject matter identified by an initial expert witness." *Clear-View Techs.*, 2015 WL 3509384 at *2.

When a party fails to disclose an expert by the deadline for initial expert reports, they can disclose an expert as a "rebuttal expert" only if the expert's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *Clear-View Techs.*, 2015 WL 3509384, at *2; *accord R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011). "Rebuttal" testimony that does not relate to the "same subject matter" as the expert opinion it purportedly rebuts fails to meet FRCP 26's disclosure requirements, and is inadmissible under FRCP 37(c)(1). *Clear-View Techs.*, 2015 WL 3509384, at *2. This is because improper rebuttal opinions unfairly disadvantage the opposing party by denying them the opportunity to counter the "rebuttal" opinions with true rebuttal testimony of their own. *See id.* at *4 (rejecting defendants' attempt to "sandbag Plaintiff" by attaching improper rebuttal report as exhibit to other expert's rebuttal report). Because Shapiro's testimony does not actually rebut or refute the opinions of Parikh, it should be stricken, and Shapiro should not be permitted to testify at trial.

### D.    Swain Expert Report

Similar to Paragraphs 33 and 49 of Kinrich's report, Paragraphs 72 and 75-76 of the Swain expert report are inadmissible on the basis that they rely entirely on and repeat the inadmissible opinions of Shapiro. As discussed in Part IV.C, *supra*, Shapiro's opinions are inadmissible both because they fail to meet the standards required by Rule 702 and because they are improper "rebuttal" opinions. "Where an expert bases [his] opinion on - or simply repeats - the unreliable opinion of another expert, a district court may properly exclude the first expert's testimony." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017). Accordingly, the Court should exclude Swain from testifying to his opinions contained in these paragraphs of his expert report.

DATED: April 7, 2025

Respectfully submitted,

BARTKO PAVIA LLP
A Professional Law Corporation

By: _____ */s/ Patrick M. Ryan* _____
PATRICK M. RYAN
Attorney for Plaintiff and Counter-Defendant
NICKY LAATZ