# EXHIBIT 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801 5000
Facsimile: (650) 801 5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705 7400
Facsimile: (312) 705 7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**EXPERT REPORT OF CHRISTOPHER RUCINSKI**<br><br>Trial Date:  July 14, 2025 |

## EXPERT REPORT OF CHRISTOPHER RUCINSKI

At the request of the law firm Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**") as counsel for Defendants Zazzle, Inc. ("**Zazzle**") and Mohamed Alkhatib (collectively, "**Defendants**") in the above-captioned litigation ("**Litigation**"), I hereby submit this expert report ("**Report**"), pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

### Introduction

1.     My name is Christopher Rucinski. I am the Managing Director of Elysium Digital, LLC ("**Elysium Digital**"), a subsidiary of Aon Corporation ("**Aon**"). My business address is 53 State Street, Suite 2201, Boston, MA 02109. This Report summarizes my current opinions, which are subject to change depending on ongoing discovery and any additional information received.

2.     I previously wrote and submitted two declarations in this Litigation. I submitted a first declaration ("**First Rucinski Declaration**") on November 3, 2022, and it was filed in this Litigation as Dkt. 49-10. I submitted a second declaration ("**Second Rucinski Declaration**") on May 5, 2023, and it was filed in this Litigation as Dkt. 102-12. I incorporate both the First Rucinski Declaration and the Second Rucinski Declaration into this Report. **Exhibit I** to this Report is the Second Rucinski Declaration and its first exhibit, which is the First Rucinski Declaration and all its exhibits.

### Education, Expertise, and Previous Testimony

3.     My subject matter expertise includes computer science generally, and I have been admitted to testify as an expert in various federal court proceedings regarding computer source code analysis, data analysis, and digital evidence collection.

4.     I graduated *cum laude* with an A.B. in computer science from Princeton University in 2010, and in 2015, I obtained the Global Information Assurance Certification as a Certified Forensic Examiner, which I renewed in 2019. In 2010, I began working at Elysium Digital as a computer scientist, and I continued to work there until Elysium Digital was acquired in 2015 by Stroz Friedberg. I continued to work at Stroz Friedberg until it was acquired by Aon in 2016, and I have worked at Aon since then, now through its subsidiary Elysium Digital.

5. At Elysium Digital, Stroz Friedberg, and Aon, I have consulted on more than 100 technical matters to date, many of which have involved the analysis of various data formats. I have offered expert opinions about the operation of computer source code, and I have testified as an expert about the operation of computer source code several times in the last several years. I have also provided technical consulting services for the Federal Trade Commission.

6. My current *curriculum vitae* is attached here as **Exhibit II**.

## Compensation

7. Aon is being compensated for my time at a rate of $660 per hour, and Aon is being compensated for the time of one individual working at my direction at a rate of $295 per hour. This compensation does not depend on the outcome of this Litigation.

## Summary of Expected Testimony

8. I have been asked by counsel for Defendants to offer expert opinions concerning the creation and content of the Blooming Elegant Trio, the Blooming Elegant OTF Files, and the Laatz Copyright Submission PDFs.

9. For the reasons discussed in detail below:

  a. The Blooming Elegant OTF Files analyzed in the First Rucinski Declaration are identical to the corresponding OTF files produced by Plaintiff in September 2024.

  b. Nicky Laatz did not hand-code the Blooming Elegant OTF Files.

  c. Nicky Laatz almost certainly created the Blooming Elegant Trio embodied by the Blooming Elegant OTF Files with the FontLab 5 font generating software program.

  d. The Laatz Copyright Submission PDFs are not source code for the Blooming Elegant OTF Files.

  e. Neither the Blooming Elegant OTF Files nor the Laatz Copyright Submission PDFs may be used to generate fonts.

  f. Nicky Laatz claims to have hand-coded or otherwise written only limited subsets of the text related to the Laatz Copyright Submission PDFs.

-2-

g.  The hand-coding That Nicky Laatz claims to have done for the values of font-wide variables in the Laatz Copyright Submission PDFs amounts to merely selecting integer values using the prompts provided by FontLab 5.

h.  The font-wide variable values that Nicky Laatz claims to have hand-coded constitute a vanishingly small amount of text in the Laatz Copyright Submission PDFs, which FontLab, not Nicky Laatz, generated.

i.  It is unlikely that Nicky Laatz entered any text in any way for the values of the font-wide variables in files related to Blooming Elegant Hand and Blooming Elegant Sans because the values for those font-wide values are the default values that FontLab 5 provides for a new font project.

j.  Nicky Laatz used FontLab to assign reference point coordinates for the glyphs in The Blooming Elegant Trio and used FontLab to create the Blooming Elegant OTF Files.

k.  Nicky Laatz almost certainly did not hand-code the overwhelming majority of individual glyph reference points in the Laatz Copyright Submission PDFs.

l.  The OpenType features for the Blooming Elegant font that Nicky Laatz claims to have written are written in the format defined by the AFDKO Specification, which is not a programming language.

m.  The OpenType Features for the Blooming Elegant Font that Nicky Laatz claims to have written constitute a vanishingly small amount of text in the Laatz Copyright Submission PDFs.

n.  The OpenType features for the Blooming Elegant font that Nicky Laatz claims to have written were changed by FontLab when it generated the Laatz Copyright Submission PDFs.

o.  The provenance of the text of the OpenType features identified in the Nicky Laatz Declaration for the Blooming Elegant Font is uncertain.

p.  The Blooming Elegant OpenType "liga" feature text that Nicky Laatz claims to have written is strictly conventional.

-3-

q. The Blooming Elegant OpenType feature names that Nicky Laatz claims to have written are strictly conventional.

r. None of the text that Nicky Laatz claims to have written for ligatures and stylistic alternatives for the Blooming Elegant Trio appears in the Blooming Elegant Sans Copyright Submission PDF and the Blooming Elegant Hand Copyright Submission PDF.

**Information and Materials Considered**

10.     In arriving at the opinions I express in this Report, I have relied upon my personal knowledge, education, training and professional experience. In addition, I have considered the following materials:

a. Dkt. 27, Declaration of Stephen C. Steinberg in Support of Plaintiffs' Motion For Partial Summary Judgment, dated September 21, 2022 ("**Steinberg Declaration**")

b. Dkt 27-1, Exhibit 1 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant" font copyright registration ("**Blooming Elegant Copyright Submission PDF**").

c. Dkt 27-4, Exhibit 4 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant" font ("**Blooming Elegant Copyright Submission Emails**").

d. Dkt 27-2, Exhibit 2 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant Sans" font copyright registration ("**Blooming Elegant Sans Copyright Submission PDF**").

e. Dkt 27-5, Exhibit 5 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant Sans" font ("**Blooming Elegant Sans Copyright Submission Emails**").

-4-

f.  Dkt 27-3, Exhibit 3 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant Hand" font copyright registration (**"Blooming Elegant Hand Copyright Submission PDF"**).

g.  Dkt 27-6, Exhibit 6 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant Hand" font (**"Blooming Elegant Hand Copyright Submission Emails"**).

h.  Dkt. 45-1, Declaration of Plaintiff Nicky Laatz in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss (**"Nicky Laatz Declaration"**).

i.  Dkt. 82, First Amended Complaint for Damages And Injunctive Relief For… (**"Amended Complaint"**).

j.  Transcript of the deposition of Nicky Laatz that took place on August 1, 2024 (**"Nicky Laatz Deposition"**).

k.  Rough transcript of the deposition of Stephen Steinberg that took place on September 13, 2024 (**"Steinberg Deposition"**).

l.  Compendium of U.S. Copyright Office Practices, Third Edition, January 2021 (**"Copyright Office Compendium"**).[1]

m.  FontLab 5 User's Manual For Windows (**"FontLab 5 Manual"**)[2]

n.  The AFDKO OpenType Feature File Specification (**"AFDKO Specification"**)[3]

o.  The materials listed in **Exhibit III** to this Report.

p.  Any materials cited in this Report or exhibits to this Report.

---

[1] Accessed from https://www.copyright.gov/comp3/docs/compendium.pdf on Sept. 3, 2024.

[2] Accessed from https://help.fontlab.com/pdf/FLS5WinManual.pdf on Sept. 8, 2024.

[3] Accessed from https://adobe-type-tools.github.io/afdko/OpenTypeFeatureFileSpecification.html on Sept. 24, 2024.

-5-

11.     In this Report I refer to the Blooming Elegant Copyright Submission Emails, the Blooming Elegant Sans Copyright Submission Emails, and the Blooming Elegant Hand Copyright Submission Emails collectively as the "**Laatz Copyright Submission Emails**."

12.     In this Report I refer to the Blooming Elegant Copyright Submission PDF, the Blooming Elegant Sans Copyright Submission PDF, and the Blooming Elegant Hand Copyright Submission PDF collectively as the "**Laatz Copyright Submission PDFs**."

13.     The documents that I cite in this Report comprise the information upon which I am specifically relying to support the opinions stated in this Report. However, these specific citations to documents are not the sole bases for my opinions, and I reserve the right to rely on additional documents and further information.

### Glossary of Select Technical Terms Used in This Report

14.     **Variable**: A variable is a label that may be used to refer to a data value that may be set or changed.

15.     **Glyph**: In this Report I use the term "glyph" to refer to the visual representation of a given character (such as "A," "2," or "$") in a particular font or typeface.

16.     **OpenType**: OpenType is a standard that defines a popular file format in which the information to enable a computer to render text in a given font may be packaged into a digital font file for distribution and use in various software programs. As Microsoft puts it: "An OpenType font file contains data, in table format, used for rendering of text. Portions of the data are used by applications to calculate the layout of text using the font; that is, the selection of glyphs and their placement within a line."[4]

17.     **OTF**: Font files in the OpenType file format ("OTF files") store their font data in binary form, which is not human-readable (though some limited portions may be human-

---

[4] *See, e.g.*, https://learn.microsoft.com/en-us/typography/opentype/spec/otff, a true and correct printout of which as it appeared on October 30, 2022, is **Exhibit B** to the attached First Rucinski Declaration.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

readable), and they often have a file extension of ".otf." OTF files may be used to enable a computer to render text in a given font in various software programs.

18. **JSON**: JSON ("JavaScript Object Notation") is a data format that enables the recording and distribution of structured data in a format that is easily generated and consumed by computer programs and is also human-readable. Because JSON data is often consumed by computer programs, even single errors or omissions in hand-typed JSON data can cause a computer program to fail to parse such JSON data.[5]

19. **VFJ**: VFJ files are FontLab-proprietary font files structured using the JSON format that contain font data in human-readable form, including font data generated by and specific to the FontLab font generating software program. Beginning with FontLab version 6 (and not earlier versions), FontLab permits fonts to be exported in the VFJ file format.[6] VFJ files may be used to render the glyphs of a font in FontLab version 6 or later, but since they are FontLab-proprietary they cannot be used like OTF files to enable a computer to render text in a given font in various other software programs. VFJ files often have a file extension of ".vfj."

20. **FontLab**: FontLab is a font generating software program[7] that enables a user to more easily design, generate, and edit fonts in a visual manner on their computer. FontLab also enables a font designer to import and export font data into and out of FontLab in a variety of file formats, including the OTF file format and, starting with FontLab version 6 (and not earlier versions), the FontLab-proprietary VFJ file format. A font designer may use the FontLab font generating software program to design and export a new font file "from scratch," and FontLab also allows a font designer to import an existing font file (which may have been created in a manner

[5] *See, e.g.*, https://www.json.org/json-en.html, a true and correct printout of which as it appeared on October 30, 2022, is **Exhibit C** to the attached First Rucinski Declaration.

[6] *See, e.g.*, https://help.fontlab.com/fontlab-vi/Font-Formats/, a true and correct printout of which as it appeared on October 30, 2022, is **Exhibit F** to the attached First Rucinski Declaration.

[7] The Nicky Laatz Declaration uses similar language, stating in ¶3 that "font generating engines are programs."

-7-

EXPERT REPORT OF CHRISTOPHER RUCINSKI

that does not involve FontLab), make changes to it, and subsequently export the resulting font data as a different font file in one of several formats.

21.    **Computer Language**: A computer language is a language used to communicate with a computer in some way. Computer languages have a defined syntax and rules for expression so that the receiving computer can correctly understand the language.

22.    **Programming Language**: A programming language is a type of computer language that a computer programmer may use to define general-purpose computer programs. Programming languages enable a computer programmer to express various forms of control flow such as loops (e.g. execute a statement many times), conditional statements (e.g. execute a statement under certain circumstances), and "goto" statements (a transfer of control flow to a different part of the computer program).

<u>**Different Types of Software Used in Text Creation**</u>

23.    Creative writers may write text in a human language like English, which limits what combinations of letters and numbers have prescribed meanings, such as words, and words may be arranged according to the prescribed grammar of the human language to form sentences. Within the constraints of a human language like English, creative writers can write text to express an unlimited number of stories with an arbitrary number of people of arbitrary name, number, and characteristics participating in an arbitrary number of events of arbitrary name, number, and characteristics and taking an arbitrary number of actions of arbitrary name, number, and characteristics.

24.    A creative writer can use a computer software program like Microsoft Word to assist in creative writing in a human language like English by providing reminders of certain rules and conventions of that human language such as those related to grammar and spelling. Figure 1 depicts the computer software program Microsoft Word making a spelling suggestion to change the typed text to the word correctly spelled "Definition." In this way, a computer software program like Microsoft Word facilitates creative writing but does not control the creative writer's creative output. A computer software program like Microsoft Word does not require that a creative writer abide by all the rules and conventions of the human language being used. A creative writer

EXPERT REPORT OF CHRISTOPHER RUCINSKI

may still use a computer software program like Microsoft Word to create writing that does not abide by certain rules and conventions of the human language, even though this risks a reader of the creative writing, a human, being confused and failing to understand the intended meaning of the work.



Figure 1

25.    Microsoft Word allows a creative writer to generate different document files, such as .docx files, according to a creative writer's input. Each such document file is a static record of a given document and may be used to render only the words in the given document file. A document file cannot be used to render words not defined in the given document file, and a document file

-9-

cannot be used on its own without a computer software program such as Microsoft Word to design, generate, or edit documents.

26.     Similarly, computer programmers may write text in a computer programming language like Python or C++, which limits what combinations of letters and numbers have prescribed meanings, such as keywords, and keywords may be arranged with variably named words according to the prescribed grammar of the programming language to form statements. Within the constraints of a programming language like Python or C++, computer programmers can write text to express an unlimited number of computer programs with an arbitrary number of variables of arbitrary name, number, and characteristics participating in an arbitrary number of control statements of arbitrary name, number, and characteristics and performing an arbitrary number of functions of arbitrary name, number, and characteristics.

27.     A computer programmer can use a computer software program like Atom,[8] a computer programming text editor, to assist in computer programming in a computer programming language like Python or C++ by providing reminders of certain rules and conventions of that computer programming language such as those related to grammar and the spelling of keywords. Figure 2 depicts the computer software program Atom making a spelling suggestion to change the typed text to the Python keyword correctly spelled "def."  In this way, a computer software program like Atom, a computer programming text editor, facilitates computer programming but does not control the computer programmer's creative output. A computer software program like Atom, a computer programming text editor, does not require that a computer programmer abide by all the rules and conventions of the computer programming language being used. A computer programmer may still use a computer software program like Atom, a computer programming text editor, to create a computer program that does not abide by certain rules and conventions of the computer programming language, even though this risks a reader of the computer program, a computer or a human, being confused and failing to understand the intended meaning of the work.

---

[8] *See, e.g.*, https://atom-editor.cc/, accessed on Sept. 2, 2024.

EXPERT REPORT OF CHRISTOPHER RUCINSKI



*Figure 2*

28.      Some computer programming languages such as C++ must be compiled in order for them to execute on a computer as a software program. A computer programmer may write C++ text using a computer programming text editor such as Atom; this text is human-readable and is said to be "source code" since it is the code that is the source of the subsequently created executable software program. Once the C++ source code is compiled, the result is a binary non-human-readable executable software program.

29.      Web page designers may generate visual designs as web pages that are stored as computer files structured in the HTML ("HyperText Markup Language") format. HTML is a computer language but not a programming language. HTML may be used to define the layout of a web page, but it does not support general-purpose forms of control flow such as loops, conditional statements, and "goto" statements. While web page designers may manually type text in HTML format using a text editor, it is very tedious to do so, and so web page designers often instead use web page design software programs such as Dreamweaver. Web page generating software programs such as Dreamweaver provide a visual interface that allows a user to use a computer mouse to specify on a web page the locations of design elements such as images, table columns, or

-11-

bullet points in a list, and then the web page generating software subsequently generates the HTML text that corresponds to the position of the design elements. For example, Figures 3 and 4 depict the web page generating software program Dreamweaver[9] being used to drag an image corner to resize it and the subsequent change in the visual appearance of the image dimensions as well as the corresponding height and width values of the image in the HTML.

*Figure 3*

---

[9] Version 21.4, Build 15620

EXPERT REPORT OF CHRISTOPHER RUCINSKI

*Figure 4*

30.    Similarly, beginning with FontLab 6 (and not earlier versions),[10] font designers may generate visual designs as font files that are stored as computer files structured in OTF format or the FontLab-proprietary VFJ format. While font designers may manually type text in VFJ format (but not OTF format, because it is not human-readable) using a text editor, it is very tedious to do so, and so font designers often instead use font generating software programs such as FontLab version 6 or later. FontLab provides a visual interface that allows a user to use a computer mouse (or stylus, if supported by the system on which FontLab is installed) to specify on

---

[10] *See, e.g.*, https://help.fontlab.com/fontlab-vi/Font-Formats/#fontlab-vi-json-format-vfj, last accessed on September 20, 2024, which states "FontLab VI JSON format (VFJ) This is a JSON-format FontLab VI native file."

-13-

font glyphs the locations of design elements such as "on-curve" and "off-curve" reference points. FontLab version 6 or later can subsequently automatically generate VFJ text that corresponds to the positions of the design elements. Font generating software programs such as FontLab are described as "what you see is what you get," abbreviated as "WYSIWYG," because glyphs depicted in their editing interface closely resemble the glyphs that will be depicted in a font exported from the font generating software program.[11] Figure 5 depicts the font generating software FontLab 5 being used to drag an on-curve reference point as indicated by the red square around the dot in the lower right section of the glyph.



*Figure 5*

---

[11] *See, e.g.*, FontLab 5 Manual at p. 486.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

31.    I created all the screenshots attributed to FontLab 5 in this Report by using FontLab version 5.2.2 on a Windows computer. Below in Figure 6 is what FontLab 5 displayed in response to my selecting Help → About FontLab Studio. This About screen includes a copyright notice for the FontLab font generating software program attributed to FontLab Ltd.



*Figure 6*

**<u>Definition of "Hand-Coded" as Used in This Report</u>**

32.    In this Report I use the term "hand-code" to refer to a person manually typing digital text, with or without the assistance of computer software programs such as Microsoft Word or Atom that suggest textual corrections or changes to text that a user has already manually typed. If one hand-codes digital text, such digital text is said to have been "hand-coded." This definition is consistent with the way the term "hand-coded" is used in the Copyright Office Compendium and by the Copyright Office examiner in the Laatz Copyright Submission Emails. Just because

-15-

certain digital text can be "hand-coded" does not mean that such digital text is source code.[12] Hand-coded text does not include digital text automatically generated by templates or in response to a user's use of visual design interfaces (such as WYSIWYG design interfaces used to manipulate images with a mouse or stylus) provided by software programs such as Dreamweaver and FontLab version 6 or later.[13,14]

**The Blooming Elegant OTF Files Analyzed in the First Rucinski Declaration Are Identical to the Corresponding OTF Files Produced By Plaintiff in September 2024**

33.    In the First Rucinski Declaration, I explain how I purchased and downloaded the Blooming Elegant Trio (comprising the fonts Blooming Elegant, Blooming Elegant Hand, and Blooming Elegant Sans) from Creative Market in 2022 and how I downloaded in particular the following files: "BloomingElegant.otf," "Blooming Elegant Hand.otf," and "Blooming Elegant Sans.otf" (collectively the "**Blooming Elegant OTF Files**").[15] In early September 2024, Plaintiff

---

[12] *See, e.g.*, Copyright Office Compendium at 1002.4, which reads in part, "HTML may be hand-coded, but it is often generated by web design software programs" and Copyright Office Compendium at 1006.1(A), which reads in part, "The Office will not register HTML as a computer program, because HTML does not constitute source code."

[13] *See, e.g.*, Copyright Office Compendium at 1006.1(A), which reads in part, "Unlike computer programs that are hand-coded by programmers using computer programming languages, HTML is frequently generated by website design software that provides templates or WYSIWYG ("What You See Is What You Get") functionality. If the website design software automatically creates the HTML, the website designer is not considered the author of the resulting markup language."

[14] *See, e.g.*, Blooming Elegant Copyright Submission Emails, in which the Copyright Office states on February 18, 2021, "In addition, if this is XML please let us know if it was hand-coded by a human author or if it was generated by a font program, such as FontLab or Fontographer," distinguishing hand-coded text from text generated with a font generating software program such as FontLab.

[15] *See, e.g.*, First Rucinski Declaration at ¶¶18 – 23.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

produced three files that I understand to be Plaintiff's record of the OTF files that Plaintiff attempted to submit to the Copyright Office in 2021. I verified using the Unix "diff" command that these three OTF files are identical to the Blooming Elegant OTF Files.[16]

## **Nicky Laatz Did Not Hand-Code The Blooming Elegant OTF Files**

34.    OTF files are binary files that are not human-readable. Because they do not contain text in human-readable form, OTF files may not be hand-coded. The Blooming Elegant OTF Files are OTF files and thus may not be hand-coded. Because the Blooming Elegant OTF Files may not be hand-coded, Nicky Laatz did not hand-code them.

35.    In the Nicky Laatz Declaration, Nicky Laatz does not explicitly claim that she hand-coded the Blooming Elegant OTF Files. In paragraphs 5 – 8 of the Nicky Laatz Declaration, Nicky Laatz claims that she hand-coded or otherwise wrote various parts of the Blooming Elegant Trio without explicit reference to the Blooming Elegant OTF Files, other OTF files, or VFJ files. In the Nicky Laatz Declaration, the only literal text that Nicky Laatz claims to have hand-coded or otherwise written appears paragraphs 7 and 8 of the Nicky Laatz Declaration, and paragraph 8 includes literal text excerpted from the Blooming Elegant Copyright Submission PDF. If Nicky Laatz should claim that she hand-coded the Blooming Elegant OTF Files, I explicitly reserve the right to respond to it.

## **Nicky Laatz Almost Certainly Created The Blooming Elegant Trio Embodied by the Blooming Elegant OTF Files With The FontLab 5 Font Generating Software Program**

36.    Plaintiffs' Amended Complaint alleges that Nicky Laatz created the Blooming Elegant Trio with FontLab 7.1,[17] but that is incorrect, as Nicky Laatz admitted during her deposition.[18] Nicky Laatz stated that she created the Blooming Elegant Trio between late 2015 and

---

[16] LAATZ0516705.otf is identical to BloomingElegant.otf, LAATZ0516708.otf is identical to Blooming Elegant Sans.otf, and LAATZ0516711.otf is identical to Blooming Elegant Hand.otf.

[17] See, *e.g.*, Amended Complaint at ¶44: "Nicky Laatz created the Blooming Elegant Trio and Blooming Elegant Software with the assistance of FontLab 7.1."

[18] *See, e.g.*, Nicky Laatz Deposition at 96:16 – 97:5.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

2016.[19] This is consistent with the Blooming Elegant Copyright Submission PDF, the Blooming Elegant Sans Copyright Submission PDF, and the Blooming Elegant Hand Copyright Submission PDF, which all indicate "lastModified" and "creationDate" dates in 2016. FontLab 6 was not released until December 2017,[20] so Nicky Laatz could not have used FontLab 6 or FontLab 7.1, or any later version of FontLab, to create the Blooming Elegant Trio and the Blooming Elegant OTF Files in 2016. Instead, Nicky Laatz almost certainly created the Blooming Elegant Trio and the Blooming Elegant OTF Files by using FontLab 5, which was the current version of FontLab in 2015 and 2016.[21] This is consistent with Nicky Laatz's admission during her deposition that she

---

[19] See, *e.g.*, (1) Nicky Laatz Deposition at 62:14 – 63:10 and 94:20 – 95:2 and (2) Nicky Laatz Declaration at ¶5: "In 2016, I designed and created a unique trio of fonts titled 'Blooming Elegant," 'Blooming Elegant Hand,' and 'Blooming Elegant Sans' (collectively, 'Blooming Elegant Trio')."

[20] *See, e.g.*, (1) https://help.fontlab.com/fontlab-vi/Release-Notes-Archive/#fontlab-vi-version-6006550, accessed on August 25, 2024, which states, "7 December 2017 • Initial public release." and (2) https://web.archive.org/web/20180302073414/https://blog.fontlab.com/fontlab-vi/fontlab-vi-for-mac-and-windows-is-here/ , accessed August 25, 2024, which is an archive of a FontLab blog post dated December 7, 2017 that states, "After years of hard work, we're happy to announce that FontLab VI, our 'ultra bold' font editor, is finally available."

[21] *See, e.g.*, (1) https://web.archive.org/web/20051214090909/http://www.fontlab.com/The-News/Announcements/FontLab-Studio-5/, accessed on August 26, 2024, which is an archive of a FontLab press release dated December 12, 2005 that states "Fontlab Ltd. now announces the availability of the long-awaited next-generation professional font editor FontLab Studio 5 for Mac OS X." and (2) https://typographica.org/on-typography/fontlab-studio-5-for-mac-released/, accessed on August 26, 2024, which is an article dated December 12, 2005 entitled "FontLab Studio 5 for Mac Released."

-18-

EXPERT REPORT OF CHRISTOPHER RUCINSKI

created the Blooming Elegant font, one of the three fonts comprising the Blooming Elegant Trio, with a version of FontLab earlier than version 6.[22]

37.     Nicky Laatz creating the Blooming Elegant Trio and the Blooming Elegant OTF Files with FontLab 5 is consistent with the references to "FontLab 7.1.2" and dates in the year 2021 that appear in the Blooming Elegant Copyright Submission PDF and the Blooming Elegant Sans Copyright Submission PDF. In 2021, Stephen Steinberg attempted to submit the Blooming Elegant OTF Files to the copyright office in connection with a copyright application on behalf of Nicky Laatz, but the online system of the Copyright Office did not permit attachments in the OTF file format.[23] Instead, Stephen Steinberg submitted to the Copyright Office the VFJ files represented in the Laatz Copyright Submission PDFs. As explained further in the First Rucinski Declaration, and consistent with the Steinberg Deposition, those VFJ files were extracted from the corresponding Blooming Elegant OTF Files using FontLab 7.1.[24]

**The Laatz Copyright Submission PDFs Are Not Source Code For The Blooming Elegant OTF Files**

38.     Although Nicky Laatz and Stephen Steinberg have repeatedly referred to the Laatz Copyright Submission PDFs as "source code" for the Blooming Elegant OTF Files, this is not the case because the Laatz Copyright Submission PDFs were created from the Blooming Elegant OTF Files and therefore cannot be their source.[25] Instead, the opposite of Nicky Laatz's and Stephen Steinberg's statements is true: the Blooming Elegant OTF Files are the source of the Laatz

---

[22] *See, e.g.*, Nicky Laatz Deposition at 96:8 – 14.

[23] *See, e.g.*, Steinberg Declaration at ¶2, Exhibits 4 – 6 of the Steinberg Declaration, and Steinberg Deposition at 7:23 – 8:10 and 10:11 – 2.

[24] *See, e.g.*, First Rucinski Declaration at ¶¶15 – 31 and Steinberg Deposition at 8:16 – 24, 24:7 – 17, 25:3 – 16, and 28:15 – 24.

[25] *See, e.g.*, Nicky Laatz Deposition at 60:5 – 61:2 and 101:10 – 102:14, Steinberg Declaration at ¶2, Exhibits 4 – 6 of the Steinberg Declaration, and Steinberg Deposition at 8:16 – 24, 24:7 – 17, 25:3 – 16, and 28:15 – 24.

-19-

EXPERT REPORT OF CHRISTOPHER RUCINSKI

Copyright Submission PDFs. Furthermore, the VFJ file format of the Laatz Copyright Submission PDFs did not exist at the time that Nicky Laatz created the Blooming Elegant OTF Files in 2015 or 2016, so it was impossible for any VFJ files to be the source code of any OTF files at the time that Nicky Laatz created the Blooming Elegant Trio and the Blooming Elegant OTF Files. The VFJ file format was not available in FontLab 5. "VFJ" does not appear anywhere in any of the 913 pages of the FontLab 5 Manual, and Figure 7 shows the file formats that may be opened using FontLab 5 according to the FontLab 5 Manual, none of which are the VFJ file format.

> You will see the **Open File** dialog box in which you can select a font file to open. In this dialog box, you will see all the fonts that can be opened: TrueType/OpenType TT (.ttf), Windows Type 1 and Windows Multiple Master (.pfb), Unix/ASCII Type 1 (.pfa), OpenType PS (.otf), Ikarus files (.ik), FontLab 2.5 font files (.vfa), FontLab 3.x/4.x/Studio 5 font files (.vfb), as well as FontLab Studio Project files (.flw).

*Figure 7*: Page 115 of the FontLab 5 Manual

### Neither the Blooming Elegant OTF Files Nor The Laatz Copyright Submission PDFs May Be Used to Generate Fonts

39.     A font generating software program such as FontLab allows a font designer to generate different font files, such as OTF files or VFJ files (beginning with FontLab version 6), according to a font designer's input. Each such font file is a static record of a given font and may be used to render only the glyphs defined in the given font file. A font file cannot be used to render glyphs not defined in the given font file, and a font file cannot on its own without a font generating software program such as FontLab be used to design, generate, or edit fonts. Each and every one of the Blooming Elegant OTF Files and each and every one of the VFJ files depicted in the Laatz Copyright Submission PDFs are such font files with the aforementioned uses and limitations.

### Nicky Laatz Claims to Have Hand-Coded or Otherwise Written Only Limited Subsets of The Text Related to the Laatz Copyright Submission PDFs

40.     In the Nicky Laatz Declaration, Nicky Laatz claims to have "hand-coded" only the following two subsets of text in the Laatz Copyright Submission PDFs: (1) the values of variables (but not the variables themselves) for "font-wide variables that FontLab permits a designer to set,

-20-

such as cap height, letter spacing, ascender height, and descender height"[26]; and (2) glyph reference points, including both "on-curve" and "off-curve" reference points.[27] In the Nicky Laatz Declaration, Nicky Laatz does not claim to have "hand-coded" anything else in the Laatz Copyright Submission PDFs, but she does claim that she "wrote," "inserted," "hand wrote," and "input" custom code that implemented ligatures and stylistic alternate letters for the fonts.[28] In the Nicky Laatz Declaration, Nicky Laatz does not claim to have hand-coded or otherwise written anything that appears in the Laatz Copyright Submission PDFs with computer software programs other than FontLab. In the Nicky Laatz Deposition, Nicky Laatz testified to using Adobe Illustrator and Adobe Photoshop to design fonts, and although she also described hand-coding, she did not testify to hand-coding anything through her use of Adobe Illustrator or Adobe Photoshop.

41.    The Laatz Copyright Submission PDFs, which are each a few hundred pages in length, contain much more text than the limited subsets of text that Nicky Laatz claims to have hand-coded or otherwise written. For example, many pages of the Laatz Copyright Submission PDFs comprise only either template text and associated data values or other text that Nicky Laatz does not claim to have hand-coded or otherwise written. Page 4 of the Blooming Elegant Copyright Submission PDF is an example of such a page, and it is reproduced in its entirety in Figure 8. Template text and associated values in this figure and elsewhere in the Laatz Copyright Submission PDFs include text that is necessary for VFJ files to be correctly formatted and for corresponding OTF files to have their glyphs rendered in accordance with their design, examples of which include but are not limited to open and closed curly brackets ("{" and "}"), open and closed square brackets ("[" and "]"), commas, colons, quotation marks, and various repeated variable values and corresponding names such as "hints," "horizontal," "position," and "thickness," none of which Nicky Laatz claims to have hand-coded or otherwise written, and all of which was generated by FontLab.

---

[26] *See, e.g.*, Nicky Laatz Declaration at ¶6.

[27] *See, e.g.*, Nicky Laatz Declaration at ¶6.

[28] *See, e.g.*, Nicky Laatz Declaration at ¶7.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
                    }
                ],
                "hints":[
                    {
                      "horizontal":true,
                      "position":6,
                      "thickness":17
                    },
                    {
                      "horizontal":true,
                      "position":154,
                      "thickness":15
                    },
                    {
                      "horizontal":true,
                      "position":235,
                      "thickness":17
                    },
                    {
                      "horizontal":true,
                      "position":305,
                      "thickness":17
                    },
                    {
                      "horizontal":true,
                      "position":570,
                      "thickness":17
                    },
                    {
                      "vertical":true,
                      "position":16,
                      "thickness":15
                    },
                    {
                      "vertical":true,
                      "position":32,
                      "thickness":16
                    },
                    {
                      "vertical":true,
                      "position":115,
                      "thickness":163
                    },
                    {
                      "vertical":true,
                      "position":450,
                      "thickness":17
                    }
                ]
            }
        ]
    },
    {
      "name":"eth",
```

*Figure 8*

-22-

42. The "hints" in the above figure are related to character-level hinting, which affects the design of a font by determining how font glyphs are rendered at lower resolutions. The FontLab 5 Manual describes character-level hinting in the manner illustrated below in Figure 9:

**Character-level hints** are used to declare the position and width of the most important character elements. The most common use for hints is to declare the position and width of character stems. These hints are scaled with the outline in the rendering stage, but due to their independence from the outline, they help to maintain the same stem widths for all stems of a certain width, independent of how it happens to fall on the discrete raster:



Unhinted character               Hinted character

Notice that in the unhinted character the outline falls on the grid such that two rows of pixels would be turned on for the right vertical stem. The hint forces the right stem to become the same width as the left stem in the hinted character.

*Figure 9*: FontLab 5 Manual, page 656

43. Unlike the Laatz Copyright Submission PDFs, which are human-readable, the Blooming Elegant OTF Files are not human-readable and do not contain any of the text that Nicky Laatz claims to have hand-coded or otherwise written.

**The Hand-Coding That Nicky Laatz Claims to Have Done For the Values of Font-Wide Variables in the Laatz Copyright Submission PDFs Amounts to Merely Selecting Integer Values Using the Prompts Provided by FontLab 5**

44. In paragraph 6 of the Nicky Laatz Declaration, Nicky Laatz claims that she "personally hand coded the instructions for how the characters/glyphs should appear next to each other by choosing the values for each of the font-wide variables that FontLab permits a designer to

-23-

set, such as cap height, letter spacing, ascender height, and descender height." The values of three of these four font-wide variables; cap height, ascender height, and descender height; may be specified in FontLab 5 using the first three integer fields (that is, data input text boxes that allow a user to input only integer values) on the "Key dimensions" screen, depicted in Figure 10 below, which shows this screen for a font newly created by selecting the File → New menu in FontLab 5. The "x height" font-wide variable may also be specified in FontLab 5 using the fourth integer field on this screen.



*Figure 10*

45.     The font-wide variable "letter spacing" identified in paragraph 6 of the Nicky Laatz Declaration does not appear in the "Key dimensions" screen of FontLab 5, and to my knowledge in FontLab 5 there are no variables that determine letter spacing in a font-wide manner. Instead, FontLab 5 defines letter spacing information on a glyph-by-glyph basis. Figures 11 and 12 below illustrate. Each Figure depicts a single glyph from BloomingElegant.otf along with properties for that glyph, including letter spacing properties. For the "A" glyph, the left sidebearing (shown next to the symbol) is 58, and the right sidebearing (shown next to the symbol) is -28. For the

-24-

"B" glyph, the left sidebearing is -58, and the right sidebearing is -75. The left and right sidebearings of a glyph show how much space is allocated by default (not taking into account kerning, which specifies the spacing between specific pairs of glyphs) on the left and right sides of the glyph when it appears next to other glyphs.



*Figure 11*

-25-



*Figure 12*

46.    FontLab 5 does, however, include functionality to set initial letter spacing information for all current glyphs in a font at the same time, which can then be subsequently modified for each individual glyph. This can be done by using the "Action Set" screen, which can be accessed by selecting Tools → Action Set… and which is depicted in Figure 13 below. Figure 13 shows this screen as it appears for a newly created font, with no glyphs yet created, with a left and right sidebearing set to 50 (the default that FontLab 5 sets for the corresponding integer fields), and with the action set configured to apply to "All glyphs in the font." Since it is unclear what Nicky Laatz was referring to with respect to the font-wide variable "letter spacing" in paragraph 6 of the Nicky Laatz Declaration, I will assume for the purpose of this Report that it refers to setting initial glyph-specific values for left and right sidebearing for all glyphs in the manner illustrated by Figure 13 below. I reserve the right to amend this Report if it later becomes more clear what font-wide variable in FontLab 5 the Nicky Laatz Declaration intends to refer to by "letter spacing."



*Figure 13*

EXPERT REPORT OF CHRISTOPHER RUCINSKI

47.   Nicky Laatz does not claim that she hand-coded or otherwise specified the names of the variables that determine cap height, letter spacing, ascender height, and descender height, and Nicky Laatz does not claim that she hand-coded or otherwise specified how the variables that determine cap height, letter spacing, ascender height, and descender height affect how the corresponding font is displayed. The values of the variables that Nicky Laatz selected serve the utilitarian purpose of defining font characteristics that may affect glyphs in the font, and the selections that Nicky Laatz made for the values of these variables are also limited by FontLab 5. For example, FontLab 5 does not permit one to save non-numeric characters as the values for these variables, and FontLab 5 also requires that the values for these variables cannot be blank or undefined. I tested the fields for each of these variables by inputting the letter "a" and also by erasing the field content. Upon selecting "OK," an error message appeared prompting me to "Enter an integer." As an example, Figure 14 depicts this for attempting to save a blank value for the "Ascender" variable. The exact same error message displayed when entering either "a" or a blank value for each of the four variables of "Ascender," "Descender," "Caps height," and "x height." Constraints such as these are not present in free-form text editing when editing a text file in a computer software program like Atom or when editing a .docx file in a computer software program like Microsoft Word.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

*Figure 14*

**The Font-Wide Variable Values That Nicky Laatz Claims to Have Hand-Coded Constitute a Vanishingly Small Amount of Text in the Laatz Copyright Submission PDFs, Which FontLab, Not Nicky Laatz, Generated**

48.    As explained below, the values of the "Ascender," "Descender," "Caps height," and "x height" variables constitute a vanishingly small amount of text in each of the three Laatz Copyright Submission PDFs. In accordance with its own programming related to the requirements of the formats of font files, FontLab generated the vanishingly small subsets of text in each of the three Laatz Copyright Submission PDFs as configured by the values of these four variables. The only text that FontLab generated from Nicky Laatz's selection of these variable values are the matching values that appear in the Laatz Copyright Submission PDFs on only a few lines in each file.

49.    The Blooming Elegant Copyright Submission PDF comprises 460 pages (not including the cover page), each comprising about 50 lines, for a total of about 23,000 lines. The

EXPERT REPORT OF CHRISTOPHER RUCINSKI

value set for "cap height" in the Blooming Elegant Copyright Submission PDF is "631," and this value for this variable appears in only two lines, or about 0.01% of the lines in the file:

    a.  Page 459: "capsHeight":631,

    b.  Page 461: "CapsHeight":"631",

50.    The value set for "x height" in the Blooming Elegant Copyright Submission PDF is "242," and this value for this variable appears in only two lines, or about 0.01% of the lines in the file:

    a.  Page 459: "xHeight":242,

    b.  Page 461: "XHeight":"242",

51.    The value set for "ascender height" in the Blooming Elegant Copyright Submission PDF is "684," and this value for this variable appears in only three lines, or about 0.01% of the lines in the file:

    a.  Page 459: "ascender":684,

    b.  Page 459: "hhea_ascender":684,

    c.  Page 461: "Ascender":"684",

52.    The value set for "descender height" in the Blooming Elegant Copyright Submission PDF is "-352," and this value for this variable appears in only three lines, or about 0.01% of the lines in the file:

    a.  Page 459: "descender":-352,

    b.  Page 459: "hhea_descender":-352,

    c.  Page 461: "Descender":"-352",

53.    The Blooming Elegant Sans Copyright Submission PDF comprises 235 pages (not including the cover page), each comprising about 50 lines, for a total of about 11,750 lines. The value set for "cap height" in the Blooming Elegant Sans Copyright Submission PDF is "700," and this value for this variable appears in only two lines, or about 0.02% of the lines in the file:

    a.  Page 231: "capsHeight":700,

    b.  Page 236: "CapsHeight":"700",

54.    The value set for "x height" in the Blooming Elegant Sans Copyright Submission PDF is "500," and this value for this variable appears in only two lines, or about 0.02% of the lines in the file:

    a.    Page 231: "xHeight":500,

    b.    Page 236: "XHeight":"500",

55.    The value set for "ascender height" in the Blooming Elegant Sans Copyright Submission PDF is "750," and this value for this variable appears in only three lines, or about 0.03% of the lines in the file:

    a.    Page 231: "ascender":750,

    b.    Page 232: "hhea_ascender":750,

    c.    Page 236: "Ascender":"750",

56.    The value set for "descender height" in the Blooming Elegant Sans Copyright Submission PDF is "-250," and this value for this variable appears in only three lines, or about 0.03% of the lines in the file:

    a.    Page 231: "descender":-250,

    b.    Page 232: "hhea_descender":-250,

    c.    Page 236: "Descender":"-250",

57.    The Blooming Elegant Hand Copyright Submission PDF comprises 439 pages (not including the cover page), each comprising about 50 lines, for a total of about 21,950 lines. The value set for "cap height" in the Blooming Elegant Hand Copyright Submission PDF is "700," and this value for this variable appears in only two lines, or about 0.01% of the lines in the file:

    a.    Page 438: "capsHeight":700,

    b.    Page 440: "CapsHeight":"700",

58.    The value set for "x height" in the Blooming Elegant Hand Copyright Submission PDF is "500," and this value for this variable appears in only two lines, or about 0.01% of the lines in the file:

    a.    Page 438: "xHeight":500,

    b.    Page 440: "XHeight":"500",

-31-

59.    The value set for "ascender height" in the Blooming Elegant Hand Copyright Submission PDF is "750," and this value for this variable appears in only three lines, or about 0.01% of the lines in the file:

    a.   Page 438: "ascender":750,

    b.   Page 438: "hhea_ascender":750,

    c.   Page 440: "Ascender":"750",

60.    The value set for "descender height" in the Blooming Elegant Hand Copyright Submission PDF is "-250," and this value for this variable appears in only three lines, or about 0.01% of the lines in the file:

    a.   Page 438: "descender":-250,

    b.   Page 438: "hhea_descender":-250,

    c.   Page 440: "Descender":"-250",

61.    The values for the left and right sidebearings of glyphs do not appear in any of the three Laatz Copyright Submission PDFs. Instead, the absolute width of each glyph is specified along with the reference point coordinates for each glyph. As an example, below in Figure 15 is the glyph "A" from BloomingElegant.otf as it appears in FontLab 5 along with its glyph properties. Figures 16 and 17 show the corresponding text for glyph "A" in the Blooming Elegant Copyright Submission PDF. In Figure 15, for glyph "A," FontLab 5 reports the left sidebearing as 58, the right sidebearing as -28, and the width (indicated as the ⬚ symbol) as 554. In Figure 16, the width is specified in the Blooming Elegant Copyright Submission PDF by the variable "advanceWidth," which is set to 554. The left and right sidebearing values do not appear in the Blooming Elegant Copyright Submission PDF since they can be calculated respectively as (1) the horizontal difference between the left-most "on-curve" reference point of the glyph and 0 and (2) the horizontal difference between the width of the glyph and the right-most "on-curve" reference point of the glyph. In this case, the left-most "on-curve" reference point is at x-position 58, so the left sidebearing is 58. In this case, the right-most "on-curve" reference point is at x-position 582, and the width of the glyph is 554, so the right sidebearing is -28.

-32-



*Figure 15*

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
{
  "name":"A",
  "unicode":"0041",
  "lastModified":"2016-02-25 13:27:08",
  "layers":[
    {
      "name":"Regular",
      "advanceWidth":554,
      "elements":[
        {
          "elementData":{
            "contours":[
              {
                "nodes":[
                  "569 188",
                  "551 164   496 107   478 82 s",
                  "460 56   415 -6   382 -6 s",
                  "348 -6   346 40   346 55 s",
                  "346 258   472 390   510 506",
                  "510 508   510 508   510 509",
                  "510 515   502 518   494 518 s",
                  "475 518   455 469   442 442",
                  "439 476   400 503   365 503 s",
                  "314 503   264 467   233 442 s",
                  "132 362   59 232   58 100",
                  "58 58   74 25   109 25 s",
                  "156 25   204 73   233 106 s",
                  "282 161   323 217   368 278",
                  "344 202   318 137   318 56 s",
                  "318 16   324 -30   383 -30 s",
                  "419 -30   461 23   482 52",
                  "505 82   577 164   581 184",
                  "582 188   578 191   575 191 s",
                  "572 191   570 191 c"
                ]
              },
              {
                "nodes":[
                  "343 272",
                  "286 190   181 44   115 44 s",
                  "98 44   85 71   85 91 s",
                  "85 236   185 397   317 467",
                  "340 478   426 497   426 431 s",
```

*Figure 16*: Blooming Elegant Copyright Submission PDF, page 75, the 1st data section for "A"

-34-

```
                    "426 383  374 319 c"
                  ]
                }
              ]
            }
          }
        ],
        "hints":[
          {
            "horizontal":true,
            "position":-37,
            "thickness":19
          },
          {
            "horizontal":true,
            "position":26,
            "thickness":20
          },
          {
            "horizontal":true,
            "position":485,
            "thickness":17
          },
          {
            "vertical":true,
            "position":59,
            "thickness":15
          },
          {
            "vertical":true,
            "position":317,
            "thickness":18
          },
          {
            "vertical":true,
            "position":424,
            "thickness":16
          }
        ]
      }
    ]
  },
```

*Figure 17*: Blooming Elegant Copyright Submission PDF, page 76, the 2nd data section for "A"

EXPERT REPORT OF CHRISTOPHER RUCINSKI

62.     In summary, the font-wide variable values that Nicky Laatz claims to have hand-coded are used in no more than 0.1% of the lines of any of the Laatz Copyright Submission PDFs.

63.     Unlike the Laatz Copyright Submission PDFs, which are human-readable, the Blooming Elegant OTF Files are not human-readable and do not contain any of the text that Nicky Laatz claims to have hand-coded or otherwise written.

**It Is Unlikely That Nicky Laatz Entered Any Text In Any Way For the Values of the Font-Wide Variables in Files Related to Blooming Elegant Hand and Blooming Elegant Sans Because The Values For Those Font-Wide Values Are The Default Values That FontLab 5 Provides For a New Font Project**

64.     As explained above, the values of the font-wide variables that Nicky Laatz claims in her declaration that she hand-coded—cap height, ascender height, and descender height—may be specified in FontLab 5 using the first three integer fields on the "Key dimensions" screen, depicted in Figure 18 below, which shows this screen for a font newly created by selecting the File → New menu in FontLab 5. The "x height" font-wide variable may also be specified in FontLab 5 using the fourth integer field on this screen. The values displayed in this figure are default values that were populated by FontLab 5 with no input from me other than simply creating the new font project.



*Figure 18*

EXPERT REPORT OF CHRISTOPHER RUCINSKI

65.    I opened each of the Blooming Elegant OTF Files in FontLab 5 and navigated to the "Key dimensions" screen for each of them. For "Blooming Elegant Hand.otf" and "Blooming Elegant Sans.otf," the values for the variables of cap height, ascender height, descender height, and x height were identical to the default values that FontLab 5 sets for a new font project. For "BloomingElegant.otf," the values for these variables were different from the default values that FontLab 5 sets for a new font project. Figures 19 – 21 below depict the "Key dimensions" screen of FontLab 5 for each of the Blooming Elegant OTF Files.



*Figure 19*: The "Key dimensions" screen in FontLab 5 for "Blooming Elegant Hand.otf"



*Figure 20*: The "Key dimensions" screen in FontLab 5 for "Blooming Elegant Sans.otf"



*Figure 21*: The "Key dimensions" screen in FontLab 5 for "BloomingElegant.otf"

-38-

66.    Thus, for these two fonts, Nicky Laatz apparently did not select font-wide variable values different from the default values that FontLab 5 provides on its "Key dimensions" screen.

**Nicky Laatz Used FontLab to Assign Reference Point Coordinates For The Glyphs in The Blooming Elegant Trio And Used FontLab To Create the Blooming Elegant OTF Files**

67.    In paragraph 6 of the Nicky Laatz Declaration, Nicky Laatz states, "I created the Blooming Elegant Trio with the assistance of the FontLab program. When creating the Blooming Elegant Trio, I hand coded the designs for each individual character/glyph by selecting the 'on-curve' and 'off-curve' reference points for each individual character/glyph for each font within FontLab." As an example, below in Figure 22 is the glyph "A" from BloomingElegant.otf as it appears in FontLab 5. Figures 16 and 17 show the corresponding text for glyph "A" in the Blooming Elegant Copyright Submission PDF, which was created from BloomingElegant.otf. The "on-curve" and "off-curve" reference points depicted in Figure 22 correspond to the coordinate pairs listed under the headings "nodes" in Figures 23 and 24. Each of the Laatz Copyright Submission PDFs contain coordinates for thousands of such reference points for glyphs.

-39-

EXPERT REPORT OF CHRISTOPHER RUCINSKI



*Figure 22*

-40-

```
{
  "name":"A",
  "unicode":"0041",
  "lastModified":"2016-02-25 13:27:08",
  "layers":[
    {
      "name":"Regular",
      "advanceWidth":554,
      "elements":[
        {
          "elementData":{
            "contours":[
              {
                "nodes":[
                  "569 188",
                  "551 164   496 107   478 82 s",
                  "460 56   415 -6   382 -6 s",
                  "348 -6   346 40   346 55 s",
                  "346 258   472 390   510 506",
                  "510 508   510 508   510 509",
                  "510 515   502 518   494 518 s",
                  "475 518   455 469   442 442",
                  "439 476   400 503   365 503 s",
                  "314 503   264 467   233 442 s",
                  "132 362   59 232   58 100",
                  "58 58   74 25   109 25 s",
                  "156 25   204 73   233 106 s",
                  "282 161   323 217   368 278",
                  "344 202   318 137   318 56 s",
                  "318 16   324 -30   383 -30 s",
                  "419 -30   461 23   482 52",
                  "505 82   577 164   581 184",
                  "582 188   578 191   575 191 s",
                  "572 191   570 191 c"
                ]
              },
              {
                "nodes":[
                  "343 272",
                  "286 190   181 44   115 44 s",
                  "98 44   85 71   85 91 s",
                  "85 236   185 397   317 467",
                  "340 478   426 497   426 431 s",
```

*Figure 23*: Blooming Elegant Copyright Submission PDF, page 75, the 1st data section for "A"

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
                    "426 383  374 319 c"
                ]
            }
        ]
    }
}
],
"hints":[
    {
        "horizontal":true,
        "position":-37,
        "thickness":19
    },
    {
        "horizontal":true,
        "position":26,
        "thickness":20
    },
    {
        "horizontal":true,
        "position":485,
        "thickness":17
    },
    {
        "vertical":true,
        "position":59,
        "thickness":15
    },
    {
        "vertical":true,
        "position":317,
        "thickness":18
    },
    {
        "vertical":true,
        "position":424,
        "thickness":16
    }
]
}
],
},
```

*Figure 24*: Blooming Elegant Copyright Submission PDF, page 76, the 2nd data section for "A"

**Nicky Laatz Almost Certainly Did Not Hand-Code the Overwhelming Majority of**

**Individual Glyph Reference Points in the Laatz Copyright Submission PDFs**

68.    Nicky Laatz represented that she "hand-coded" individual glyph reference points when creating the Blooming Elegant Trio by using the FontLab font editing software, including "on-curve" and "off-curve" reference points for individual glyphs.[29] FontLab 5 guides users to use a cursor (moved with a mouse or a stylus) to specify and adjust individual glyph reference points, regardless of whether the individual glyph reference points are "on-curve" or "off-curve" as described in the Nicky Laatz Declaration. Nicky Laatz also testified at her deposition that she used a stylus to digitally start to draw the glyphs of the Blooming Elegant font.[30] Using FontLab 5, I created a glyph for the capital letter "I." Figures 25 and 26 below are screenshots of how FontLab 5 guides me to edit individual glyph reference points by dragging them with a cursor (not pictured). Figure 25 shows the "on-curve" reference point at coordinates (554, 468) being moved, and Figure 26 shows the "off-curve" reference point at (364, 687) being moved. Both Figures 25 and 26 show an instruction to the user in the lower left-hand portion of the screen that states, "Move objects by dragging them…"

---

[29] *See, e.g.*, Nicky Laatz Declaration at ¶6.

[30] *See, e.g.*, Nicky Laatz Deposition at 65:10 – 22.

-43-

EXPERT REPORT OF CHRISTOPHER RUCINSKI



*Figure 25*



*Figure 26*

EXPERT REPORT OF CHRISTOPHER RUCINSKI

69.      It is possible in FontLab 5 to manually type in the X and Y coordinates for an on-curve reference point, such as the point (527, 481) above, but it is tedious to do so. Selecting an on-curve reference point with the left mouse button does not present a way to manually type in the X or Y coordinates for that on-curve reference point. As shown in Figures 27 and 28 below, in order to change the X or Y coordinates for an on-curve reference point, one must right-click on the reference point, select the "Properties" option at the very bottom of the context menu, and only then does a menu present itself for manually typing the X and Y coordinates for only that single on-curve reference point.[31] Each of the Laatz Copyright Submission PDFs contain coordinates for thousands of reference points, and Nicky Laatz almost certainly did not use this tedious method to manually type the X and Y coordinates for the overwhelming majority of on-curve reference points when the far easier method of dragging them in the visual editor was available instead. This is consistent with the Nicky Laatz Deposition in which Nicky Laatz describes how she used FontLab to design her fonts, stating that: "So that would be moving the points on the actual character, the outline, the – the nodes, the – the on-curve and of-curve points. You'd be moving those, adjusting those. With your stylus in your hand, you'd be moving them into a position …"[32]

---

[31] One may also use this menu to click up or down buttons to increment or decrement the X and Y values of the on-curve reference point.

[32] *See, e.g.*, Nicky Laatz Deposition at 79:15 – 80:9.

EXPERT REPORT OF CHRISTOPHER RUCINSKI



*Figure 27*



*Figure 28*

70.     The X and Y values for glyph reference points serve the utilitarian purpose of defining where those reference points occur on a glyph and how they are connected to each other by curves.

71.     In the Nicky Laatz Declaration, Nicky Laatz does not identify any specific glyph reference points that she manually typed in even though she claims to have hand-coded them.

72.     FontLab 5 also provides functionality that allows users to automatically create, delete, and adjust both "on-curve" and "off-curve" reference points for a glyph with very little input from the user. As an example, FontLab 5's "Optimize" functionality "Reduces number of nodes and performs other optimizations" as illustrated by Figures 29 to 31 below. Figure 29 is the result of me creating a glyph for the letter "O" by clicking and dragging on-curve and off-curve reference points. In Figure 30, I select the Contour → Optimize functionality, and Figure 31 is the result immediately after making that selection. Comparing Figure 29 and Figure 31, many of the on-curve and off-curve reference points have changed, and several more have been created, all with the click of one button. Figure 32 shows Figure 29 and Figure 31 side-by-side for ease of comparison.



*Figure 29*

EXPERT REPORT OF CHRISTOPHER RUCINSKI



*Figure 30*



*Figure 31*



*Figure 32*

73.    Unlike the Laatz Copyright Submission PDFs, which are human-readable, the Blooming Elegant OTF Files are not human-readable and do not contain any of the text that Nicky Laatz claims to have hand-coded or otherwise written.

**The OpenType Features For the Blooming Elegant Font That Nicky Laatz Claims to Have Written Are Written In The Format Defined by The AFDKO Specification, Which is Not a Programming Language**

74.    In paragraph 7 of the Nicky Laatz Declaration, Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" custom code related to six OpenType features for the Blooming Elegant font, which are "ss01," "ss02," "ss03," "salt," "liga," and "aalt." These six OpenType features are written according to the AFDKO Specification. "AFDKO" stands for "Adobe Font Development Kit for OpenType." Like HTML, the format defined by the AFDKO Specification is a computer language; it defines syntax and rules for expression. Like HTML, the format defined by the AFDKO Specification is not a programming language. The AFDKO Specification does not define a way to express loops, conditional statements, and "goto" statements, so it does not enable a computer programmer to express various forms of control flow such as loops, conditional statements, and "goto" statements.

-49-

**The OpenType Features For the Blooming Elegant Font That Nicky Laatz Claims to Have Written Constitute a Vanishingly Small Amount of Text in the Laatz Copyright Submission PDFs**

75.    In the Nicky Laatz Declaration, Nicky Laatz does not claim to have "hand-coded" custom code that implemented ligatures and stylistic alternate letters for the fonts represented in the Laatz Copyright Submission PDFs, but she does claim that she "wrote," "inserted," "hand wrote," and "input" that custom code.[33] In paragraph 8 of the Nicky Laatz Declaration, Nicky Laatz identifies vanishingly small portions of only the Blooming Elegant Copyright Submission PDF that she states were the result of "FontLab incorporat[ing]" her "hand-written code." These lines identified in paragraph 8 of the Nicky Laatz Declaration that were generated by FontLab appear contiguously on pages 457 and 458 of the Blooming Elegant Copyright Submission PDF; they amount to exactly 29 lines. The Blooming Elegant Copyright Submission PDF comprises 460 pages (not including the cover page), each comprising about 50 lines, for a total of about 23,000 lines. These lines identified in paragraph 8 of the Nicky Laatz Declaration that were generated by FontLab therefore comprise only about 0.1% of the lines in the Blooming Elegant Copyright Submission PDF.

76.    Unlike the Laatz Copyright Submission PDFs, which are human-readable, the Blooming Elegant OTF Files are not human-readable and do not contain any of the text that Nicky Laatz claims to have written.

**The OpenType Features For the Blooming Elegant Font That Nicky Laatz Claims to Have Written Were Changed by FontLab When it Generated the Laatz Copyright Submission PDFs**

77.    As Nicky Laatz acknowledges in paragraphs 7 and 8 of the Nicky Laatz Declaration, the text that she claims in paragraph 7 that she "wrote," "inserted," "hand wrote," and "input" is not the same text that appears in the Blooming Elegant Copyright Submission PDF identified in paragraph 8. In particular, when FontLab generated the Blooming Elegant Copyright

---

[33] See, *e.g.*, Nicky Laatz Declaration at ¶7.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

Submission PDF, it altered the text that Nicky Laatz claims she "wrote," "inserted," "hand wrote," and "input" by both deleting text and adding quotation marks, colons, open braces, closed braces, commas, and additional text. FontLab performed this alteration in order to conform with the requirements of the font file format that FontLab generated and to conform to its own programming. FontLab performed this alteration without any additional intervention from Nicky Laatz to generate the result in the Blooming Elegant Copyright Submission PDF. As an example, below in Figures 33 and 34 are the text that Nicky Laatz claims she "wrote," "inserted," "hand wrote," and "input" for the "salt" feature and the corresponding text that FontLab generated, as it appears in the Blooming Elegant Copyright Submission PDF. In Figure 34, I have highlighted in yellow the text that FontLab added when it performed its alteration, and I have indicated with a red arrow the text that FontLab removed (and is thus missing in its generated text) when it performed its alteration (in this case the numeral "1" was removed after "salt").

```
feature salt {
  sub @salt1 by @salt2 ;
} salt;
```

*Figure 33*: Text that Nicky Laatz claims she "wrote," "inserted," "hand wrote," and "input"

```
{
    "name":"salt",
    "feature":"feature salt {\n# GSUB feature: Stylistic
Alternates\n# Lookups: 1\n\n  sub @salt by @salt2;\n\n} salt;\n\n"
},
```
*Figure 34*: Corresponding text that FontLab generated

### The Provenance of the Text of the OpenType Features Identified in the Nicky Laatz Declaration For the Blooming Elegant Font is Uncertain

78.     In paragraph 7 of the Nicky Laatz Declaration, Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" custom code related to six OpenType features for the Blooming Elegant font, which are "ss01," "ss02," "ss03," "salt," "liga," and "aalt." Using FontLab 5, I opened BloomingElegant.otf and used FontLab 5's OpenType feature editor. The text presented by FontLab 5 does not exactly match the text that Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" using FontLab for any of these six OpenType features. It is therefore uncertain what record(s) Nicky Laatz relied upon when drafting paragraph 7 of the

-51-

Nicky Laatz Declaration, other than perhaps her memory of when she created the Blooming Elegant font in 2015 or 2016, more than seven years ago. Figures 35 – 46 depict for each of these six OpenType features the text that Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" using FontLab followed by a corresponding screenshot of the different text that FontLab 5 displays for the corresponding OpenType feature in FontLab 5's OpenType feature editor.

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
feature ss01 {
 sub [b d e l n r s t] by [b.alt02 d.alt02 e.alt02 l.alt02 n.alt02 r.alt02 s.alt02 t.alt02];
} ss01;
```

*Figure 35*: The "ss01" OpenType feature from paragraph 7 of the Nicky Laatz Declaration



*Figure 36*: The "ss01" OpenType feature of BloomingElegant.otf displayed using FontLab 5

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
feature ss02 {
  sub [l n r s t] by [l.alt03 n.alt03 r.alt03 s.alt03 t.alt03] ;
} ss02;
```

*Figure 37*: The "ss02" OpenType feature from paragraph 7 of the Nicky Laatz Declaration

*Figure 38*: The "ss02" OpenType feature of BloomingElegant.otf displayed using FontLab 5

-54-

```
feature ss03 {
  sub [s] by [s.alt04];
} ss03;
```

*Figure 39*: The "ss03" OpenType feature from paragraph 7 of the Nicky Laatz Declaration

*Figure 40*: The "ss03" OpenType feature of BloomingElegant.otf displayed using FontLab 5

-55-

```
feature salt {
  sub @salt1 by @salt2 ;
} salt;
```

*Figure 41*: The "salt" OpenType feature from paragraph 7 of the Nicky Laatz Declaration



*Figure 42*: The "salt" OpenType feature of BloomingElegant.otf displayed using FontLab 5

-56-

```
feature liga {
  sub e e by e_e ;
  sub f f by f_f ;
  sub l l by l_l ;
  sub o o by o_o ;
  sub r r by r_r ;
  sub s s by s_s ;
  sub t t by t_t ;
} liga;
```

*Figure 43*: The "liga" OpenType feature from paragraph 7 of the Nicky Laatz Declaration



*Figure 44*: The "liga" OpenType feature of BloomingElegant.otf displayed using FontLab 5

-57-

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
feature aalt {
  feature salt ;
  feature ss01 ;
  feature ss02 ;
  feature ss03 ;
} aalt;
```

*Figure 45*: The "aalt" OpenType feature from paragraph 7 of the Nicky Laatz Declaration



*Figure 46*: The "aalt" OpenType feature of BloomingElegant.otf displayed using FontLab 5

-58-

**The Blooming Elegant OpenType "liga" Feature Text That Nicky Laatz Claims to Have Written Is Strictly Conventional**

79.    In paragraph 7 of the Nicky Laatz Declaration, Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" custom code related to the "liga" OpenType feature, which is reproduced for convenience below in Figure 47 as it appears in the Nicky Laatz Declaration.

```
feature liga {
  sub e e by e_e ;
  sub f f by f_f ;
  sub l l by l_l ;
  sub o o by o_o ;
  sub r r by r_r ;
  sub s s by s_s ;
  sub t t by t_t ;
} liga;
```

*Figure 47*

80.    Apart from the standard opening and closing lines of text for the "liga" feature, each and every one of the remaining seven lines follows the same format, identifying two characters by a single letter, e.g. "f" and "f," and subsequently identifying a ligature identifier that is the two characters joined by an underscore, e.g. to form "f_f." This is precisely the convention for defining a ligature substitution that FontLab documentation prescribes. For example, Figures 48 – 52 below are screenshots from the FontLab 5 Manual that prescribe exactly this convention. Nicky Laatz expressed the substitutions in the "liga" OpenType feature in Blooming Elegant in the most conventional and utilitarian manner possible.

Almost all fonts contain at least two ligatures: "fl" and "fi" which can be easily encoded as:

**substitute** f l **by** fl;
**substitute** f i **by** fi;

*Figure 48*: FontLab 5 Manual, page 858

-59-

A contiguous set of ligature rules does not need to be ordered in any particular way by the font editor; the implementation software does the appropriate sorting. So:

```
sub f f by f_f;
sub f i by fi;
sub f f i by f_f_i;
sub o f f i by o_f_f_i;
```

will do the same thing as:

```
sub o f f i by o_f_f_i;
sub f f i by f_f_i;
sub f f by f_f;
sub f i by fi;
```

*Figure 49*: FontLab 5 Manual, page 858

Let's take a simple example: a ligature feature that covers the basic "fi" and "fl" ligatures that are present in almost every Western font. In feature-definition language this feature will be defined as follows:

```
feature liga{
  sub f i by fi;
  sub f l by fl;
} liga;
```

*Figure 50*: FontLab 5 Manual, page 823

-60-

**Compound glyph names**

If your glyph represents a "compound character", i.e. a ligature or an accented character that does not have a precomposed Unicode codepoint, and if the character is not explicitly listed in AGLFN or the Unicode Standard, construct the compound glyph name as follows.

For each element of the compound character, take the base name (or the entire glyph name if there is no suffix). Concatenate these using underscore to make the compound base name.

For each element of the compound glyph that has a suffix, concatenate the suffixes using underscore to make the compound suffix. You may eliminate duplicate suffix elements.

For example, for a ligature of the glyphs "c" and "t", use "c_t" as glyph name. For a ligature of the glyphs "f", "f" and "i", use "f_f_i" as glyph name. For a ligature of "longs" and "i" use "longs_i" as glyph name. For a ligature of the glyphs "F.smcp", "F.smcp" and "I.smcp", use "F_F_I.smcp" as glyph name. For a ligature of the glyphs "R.salt" and "s.sups", use "R_s.salt_sups" as glyph name. For the African Ẹ́ character use the glyph name "E_dotbelowcomb_acutecomb".

*Figure 51*: FontLab 5 Manual, page 152

## OpenType Panel

In FontLab Studio you can see OpenType features in the special OpenType panel. To open the panel use the **Window > OpenType panel** command. Below is the illustration of the panel that appears if you open the Palatino Linotype font (pala.ttf):



*Figure 52*: FontLab 5 Manual, page 841

**The Blooming Elegant OpenType Feature Names That Nicky Laatz Claims to Have Written Are Strictly Conventional**

81.    In paragraph 7 of the Nicky Laatz Declaration, Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" custom code related to six OpenType features for the Blooming Elegant font, which are "ss01," "ss02," "ss03," "salt," "liga," and "aalt." The names of these six OpenType features are strictly conventional, and all appear in the AFDKO Specification. "ss01," "ss02," and "ss03" are referenced in section 8(c) entitled "Descriptive names for Stylistic Set features (ss01 - ss20)." "salt" and "aalt" are referenced in section 8(a) entitled "The all alternates feature (aalt)." "liga" is referenced in section 1, entitled "Introduction."

**None of the Text that Nicky Laatz Claims to Have Written For Ligatures and Stylistic Alternatives For the Blooming Elegant Trio Appears in the Blooming Elegant Sans Copyright Submission PDF and the Blooming Elegant Hand Copyright Submission PDF**

82.    In paragraph 7 of the Nicky Laatz Declaration, Nicky Laatz states, "Additionally, I wrote and inserted custom code that FontLab incorporated into the final packaged software for the Blooming Elegant Trio of fonts that implemented ligatures and stylistic alternate letters for the fonts." None of the text that Nicky Laatz claims that she "wrote," "inserted," "hand wrote," and "input" for ligatures and stylistic alternate letters appears in the Blooming Elegant Sans Copyright Submission PDF or the Blooming Elegant Hand Copyright Submission PDF. In particular, none of the six OpenType feature names for the Blooming Elegant font, which are "ss01," "ss02," "ss03," "salt," "liga," and "aalt," appear anywhere in the Blooming Elegant Sans Copyright Submission PDF or the Blooming Elegant Hand Copyright Submission PDF.

83.    Furthermore, nothing resembling the six OpenType features present in the Blooming Elegant Copyright Submission PDF appear in the Blooming Elegant Sans Copyright Submission PDF or the Blooming Elegant Hand Copyright Submission PDF. All of the six OpenType features present in the Blooming Elegant Copyright Submission PDF appear within the structure of the "openTypeFeatures" array. The "openTypeFeatures" array as it appears in the Blooming Elegant Copyright Submission PDF on pages 457 and 458 is reproduced in its entirety below in Figures 53 and 54.

-62-

```
"openTypeFeatures":[
  {
     "feature":"###\n# OpenType Layout feature definitions\n#
Format: Adobe FDK for OpenType (AFDKO) version 2.5\n# Generated on:
2021-2-17 10:43\n# Generated by: FontLab 7.1.2\n# Font PostScript
name: BloomingElegant\n# Font copyright: Copyright (c) 2016 by Nicky
Laatz. All rights reserved.\n#\n# Totals:\n# Languagesystems: 2\n#
GSUB lookups: 7\n# GSUB features: 6 (aalt, liga, salt, ss01, ss02,
ss03)\n# GPOS lookups: 0\n#\n#\n# Languagesystem
definitions\n#\n\nlanguagesystem DFLT dflt; # Default
default\nlanguagesystem latn dflt; # Latin default\n\n#\n# Lookup
definitions\n#\n\n\n#\n# Feature definitions\n#\n\n"
  },
  {
     "name":"aalt",
     "feature":"feature aalt useExtension {\n# GSUB feature:
Access All Alternates\n# Lookups: 2\n\n  sub @aalt by @aalt2;\n  sub
b from [b.alt01 b.alt02];\n  sub d from [d.alt01 d.alt02];\n  sub e
from [e.alt01 e.alt02];\n  sub l from [l.alt01 l.alt02 l.alt03];\n
sub n from [n.alt01 n.alt02 n.alt03];\n  sub r from [r.alt01 r.alt02
r.alt03];\n  sub s from [s.alt01 s.alt02 s.alt03 s.alt04];\n  sub t
from [t.alt01 t.alt02 t.alt03];\n} aalt;\n\n"
  },
  {
     "name":"ss03",
     "feature":"feature ss03 {\n# GSUB feature: Stylistic Set
3\n# Lookups: 1\n\n  sub s by s.alt04;\n\n} ss03;\n\n"
  },
  {
     "name":"ss02",
     "feature":"feature ss02 {\n# GSUB feature: Stylistic Set
2\n# Lookups: 1\n\n  sub [l n r s] by [l.alt03 n.alt03 r.alt03
s.alt03];\n  sub [t] by [t.alt03];\n\n} ss02;\n\n"
  },
  {
     "name":"ss01",
     "feature":"feature ss01 {\n# GSUB feature: Stylistic Set
1\n# Lookups: 1\n\n  sub [b d e l] by [b.alt02 d.alt02 e.alt02
l.alt02];\n  sub [n r s t] by [n.alt02 r.alt02 s.alt02 t.alt02];
\n\n} ss01;\n\n"
  },
```

*Figure 53*: Excerpt of Blooming Elegant Copyright Submission PDF, page 457

EXPERT REPORT OF CHRISTOPHER RUCINSKI

```
        {
           "name":"salt",
           "feature":"feature salt {\n# GSUB feature: Stylistic
 Alternates\n# Lookups: 1\n\n  sub @salt by @salt2;\n\n} salt;\n\n"
        },
        {
           "name":"liga",
           "feature":"feature liga {\n# GSUB feature: Standard
 Ligatures\n# Lookups: 1\n\n  sub e e by e_e;\n  sub f f by f_f;\n
 sub l l by l_l;\n  sub o o by o_o;\n  sub r r by r_r;\n  sub s s by
 s_s;\n  sub t t by t_t;\n\n} liga;\n\n"
        }
     ],
```

*Figure 54*: Excerpt of Blooming Elegant Copyright Submission PDF, page 458

84.    Nothing resembling the six OpenType features present in the Blooming Elegant Copyright Submission PDF appear in the Blooming Elegant Sans Copyright Submission PDF. The "openTypeFeatures" array as it appears in the Blooming Elegant Sans Copyright Submission PDF on page 230 is reproduced in its entirety below in Figure 55.

```
    "openTypeFeatures":[
      {
        "feature":"###\n# OpenType Layout feature definitions\n#
Format: Adobe FDK for OpenType (AFDKO) version 2.5\n# Generated on:
2021-2-17 10:56\n# Generated by: FontLab 7.1.2\n# Font PostScript
name: BloomingElegantSans\n# Font copyright: Copyright (c) 2016 by
Nicky Laatz. All rights reserved.\n#\n# Totals:\n# Languagesystems:
2\n# GSUB lookups: 0\n# GPOS lookups: 1\n# GPOS features: 1 (kern)
\n\n#\n# Languagesystem definitions\n#\n\nlanguagesystem DFLT dflt;
# Default default\nlanguagesystem latn dflt; # Latin
default\n\n\n#\n# Lookup definitions\n#\n\n\n#\n# Feature
definitions\n#\n\n"
      },
      {
        "name":"kern",
        "feature":"feature kern {\n# GPOS feature: Kerning\n#
Lookups: 1\n\n\n  lookup kern_1 {\n  # GPOS lookup 1, type 2 (Pair
adjustment)\n\n    pos C K -10;\n    pos F A -30;\n    pos L O
-28;\n    pos L T -32;\n    pos L Y -25;\n    pos O Z -20;\n    pos
O A -10;\n    pos R I -10;\n    pos T A -28;\n    pos V A -48;\n
pos W O -10;\n    pos W A -47;\n    pos Y Y 53;\n    pos Y A -36;\n
pos Z O -27;\n    pos A O -11;\n    pos A R 19;\n    pos A T -28;\n
pos A V -48;\n    pos A W -48;\n    pos A Y -48;\n    pos a o -11;\n
pos a r 19;\n    pos a v -48;\n    pos a w -48;\n    pos a y -48;\n
pos c k -10;\n    pos f a -30;\n    pos l o -28;\n    pos l t -32;\n
pos l y -25;\n    pos o a -10;\n    pos o z -20;\n    pos r i -10;\n
pos r r -15;\n    pos t a -28;\n    pos v a -48;\n    pos w a -39;\n
pos w o -10;\n    pos y a -36;\n    pos y y 53;\n    pos z o
-27;\n  } kern_1;\n\n\n} kern;\n\n"
      }
    ],
```

*Figure 55*

85.    Nothing resembling the six OpenType features present in the Blooming Elegant
Copyright Submission PDF appear in the Blooming Elegant Hand Copyright Submission PDF.
The "openTypeFeatures" array as it appears in the Blooming Elegant Hand Copyright Submission
PDF on page 437 is reproduced in its entirety below in Figure 56.

```
    "openTypeFeatures":[
      {
        "feature":"languagesystem DFLT dflt;\nlanguagesystem latn
dflt;\n"
      },
      {
        "name":"kern"
      }
    ],
```

*Figure 56*

EXPERT REPORT OF CHRISTOPHER RUCINSKI

86.    Unlike the Laatz Copyright Submission PDFs, which are human-readable, the Blooming Elegant OTF Files are not human-readable and do not contain any of the text that Nicky Laatz claims to have hand-coded or otherwise written.

## Further Work With Respect to the Morgana Font

87.    I understand from Quinn Emanuel that Nicky Laatz has objected to Zazzle's use of the font known as "Morgana" as a replacement on Zazzle's web site for the Blooming Elegant Trio. I understand from Quinn Emanuel that Nicky Laatz has not substantiated her claim related to its objection to Zazzle's use of the font known as "Morgana" as a replacement on Zazzle's web site for the Blooming Elegant Trio. If Nicky Laatz should substantiate this claim in the future, I explicitly reserve the right to respond to it.

## Supplementation and Further Work

88.    I may prepare visual aids to demonstrate various aspects of my testimony at trial or at hearings. I reserve the right to supplement my opinions in this Report in response to new documents or information or if the parties in this Litigation or other parties related to this Litigation assert additional claims or produce new materials, expert reports, or testimony or if Court decisions require me to clarify or provide additional support for my opinions.

Date: September 24, 2024

_____
Christopher Rucinski

# Exhibit I

QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
    *rachelkassabian@quinnemanuel.com*
OLGA SLOBODYANYUK (Bar No. 311194)
    *olgaslobodyanyuk@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801 5000
Facsimile: (650) 801 5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
    *andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705 7400
Facsimile: (312) 705 7401

DANIEL C. POSNER (Bar No. 232009)
    *danposner@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ<br><br>        Plaintiff,<br><br>    vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>        Defendants. | Case No. 5:22-cv-04844-BLF<br><br>**DECLARATION OF CHRISTOPHER RUCINSKI IN OPPOSITION TO PLAINTIFF'S REFILED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      August 3, 2023<br>Time:     9:00 am PT<br>Courtroom: 3<br>Judge:   Hon. Beth Labson Freeman |

**DECLARATION OF CHRISTOPHER RUCINSKI**

I, Christopher Rucinski, declare as follows:

1.      I am the Managing Director of Elysium Digital, LLC ("Elysium Digital"), a subsidiary of Aon Corporation ("Aon"). My business address is 53 State Street, Suite 2201, Boston MA 02109. I have personal knowledge of the matters stated in this declaration and if called as a witness, I would testify competently thereto.

2.      I previously submitted a declaration in the above-captioned litigation on November 3, 2022 ("First Rucinski Declaration"), which is attached to this declaration with all its exhibits as Exhibit 1. The First Rucinski Declaration defines certain capitalized terms that I use in this declaration as well.

**Education & Expertise**

3.      My subject matter expertise includes computer science generally, and I have been admitted to testify as an expert in various federal court proceedings regarding computer source code analysis, data analysis, and digital evidence collection.

4.      I graduated *cum laude* with an A.B. in Computer Science from Princeton University in 2010, and in 2015, I obtained the Global Information Assurance Certification as a Certified Forensic Examiner, which I renewed in 2019. In 2010, I began working at Elysium Digital as a computer scientist, and I continued to work there until Elysium Digital was acquired in 2015 by Stroz Friedberg. I continued to work at Stroz Friedberg until it was acquired by Aon in 2016, and I have worked at Aon since then, now through its subsidiary Elysium Digital.

5.      At Elysium Digital, Stroz Friedberg, and Aon, I have consulted on more than 100 technical matters to date, many of which have involved the analysis of various data formats. I have offered expert opinions about the operation of computer source code, and I have testified as an expert about the operation of computer source code several times in the last several years. I have also provided technical consulting services for the Federal Trade Commission.

6.      My current *curriculum vitae* is attached here as Exhibit 2.

**Assignment**

DECLARATION OF CHRISTOPHER RUCINSKI

7.      I have been asked by counsel for Defendants Zazzle Inc. and Mohamed Alkhatib to comment on the following declarations and to assess whether the contents of the Copyright Submission PDFs and the contents of the Blooming Elegant OTF Files (both as defined in the First Rucinski Declaration) are software:

a.  Dkt. 89-1, Declaration of Plaintiff Nicky Laatz in Support of Plaintiff's Refiled Motion For Partial Summary Judgment, dated April 7, 2023 ("Laatz Declaration")

b.  Dkt. 89-52, Declaration of Stuart Sandler in Support of Plaintiff's Refiled Motion For Partial Summary Judgment, dated April 7, 2023 ("Sandler Declaration")

c.  Dkt. 89-50, Declaration of Thomas Phinney in Support of Plaintiff's Refiled Motion For Partial Summary Judgment, dated April 7, 2023 ("Phinney Declaration")

8.      The Sandler and Phinney Declarations expressly claim to dispute the First Rucinski Declaration. In my view they fail to do so, and I dispute their arguments against the First Rucinski Declaration. To the extent I do not specifically address all statements in the Laatz Declaration, the Sandler Declaration, or the Phinney Declaration, it should not be assumed that I agree with such statements.

**Opinions**

9.      For the reasons discussed in detail below, I explicitly disagree with the Laatz Declaration, the Sandler Declaration, and the Phinney Declaration, including as to their failure to recognize that the contents of the Copyright Submission PDFs and the contents of the Blooming Elegant OTF Files are essentially data. The process the Laatz Declaration describes is not reasonably understood to constitute the creation of original computer software and instead constitutes simply using software to create a font.

10.     I disagree with the analogy stated in paragraph 25 of the Phinney Declaration that the use of FontLab to generate font data files is similar to using voice recognition technology to generate printed prose. With voice recognition technology, the author is conceiving of and

-2-

DECLARATION OF CHRISTOPHER RUCINSKI

speaking each and every spoken word that corresponds one-to-one with each and every printed word in the resulting printed prose. By contrast, in using FontLab, the user is merely providing a limited set of manual inputs, and the FontLab software is actually creating the resulting font files, the contents of which do not correspond one-to-one with each and every manual input from the user.

11. I also disagree with the opinion stated in paragraph 18 of the Sandler Declaration that "[t]he work that designers do in font-generating engines like FontLab can only be characterized as 'hand coding.'" The work that users of FontLab do may be characterized as simply "designing fonts," "designing fonts with tool assistance," or "designing fonts with software assistance." For example, FontLab can assist a user by suggesting how to align parts of glyphs with FontLab's "Snap" command, as documented in Figure 1 below, which is a screenshot from the FontLab 7 manual at https://help.fontlab.com/fontlab/7/manual/View-Details-and-Settings/#snapping-glyph-parts-and-interface-features as it appeared on May 5, 2023:



Figure 1

12. I note that I am offering this declaration at an early part of this litigation, when only very limited discovery has been taken. Although I reserve my right to offer additional opinions

-3-

and analysis if needed, at a later point in the case based on a fuller evidentiary record, my opinions stated herein are based on a sufficient record to be reliable and accurate.

<b><u>The Contents of The Copyright Submission PDFs Are Data</u></b>

13.     As discussed in the First Rucinski Declaration, the Copyright Submission PDFs are printouts of VFJ files generated by FontLab, not OTF files as claimed by Laatz's counsel, Stephen Steinberg, in the Copyright Submission Emails. The subsequent Laatz Declaration confirms this in paragraph 12, stating, "I used FontLab to export the font software to ".VFJ" files (a FontLab native format which is human readable), which were then submitted to the U.S. Copyright Office as pdf printouts."

14.     As discussed in the First Rucinski Declaration in paragraph 14 and Exhibit F, VFJ files, such as those depicted in the Copyright Submission PDFs, utilize the JSON data format, and therefore their contents are data. As discussed in the First Rucinski Declaration in paragraph 11 and Exhibit C, JSON "enables the recording and distribution of structured data in a format that is easily generated and consumed by computer programs and is also human-readable." Exhibit C to the First Rucinski Declaration is a true and correct printout of https://www.json.org/json-en.html as it appeared on October 30, 2022. Exhibit C defines the "JSON Data Interchange Standard." The first few sentences of Exhibit C read: "JSON (JavaScript Object Notation) is a lightweight **data-interchange** format. It is easy for humans to read and write. It is easy for machines to parse and generate" (emphasis added), and it continues with details regarding the various data structures supported by JSON. The term "data" appears approximately 10 times in Exhibit C while the term "software" appears zero times.

<b><u>The Contents of The Blooming Elegant OTF Files Are Data</u></b>

15.     In this declaration, I use the term "Blooming Elegant OTF Files" (as defined in the First Rucinski Declaration) to refer to the same files to which I understand the term "Blooming Elegant Software" refers in the Laatz Declaration, though I disagree with that characterization. The Laatz Declaration does not clearly define what specific files comprise the Blooming Elegant Software as distinct from the Blooming Elegant Trio, another term used in the Laatz Declaration. Both terms are initially defined in paragraph 4 of the Laatz Declaration, but no specific files are

-4-

mentioned. Paragraph 16 of the Laatz Declaration describes downloading both the Blooming Elegant Trio and the Blooming Elegant Software, but no specific files are mentioned: "In order to license and download the Blooming Elegant Trio and Blooming Elegant Software from Creative Market…" Paragraph 21 of the Laatz Declaration describes downloading the Blooming Elegant Software, but no specific files are mentioned: "After purchasing the Blooming Elegant License, the licensee is sent an email from Creative Market that contains a link which the licensee can use to download the Blooming Elegant Software…" As described in the First Rucinski Declaration at paragraph 23, when I purchased the "The Blooming Elegant Font Trio" on Creative Market I was subsequently permitted to access OTF files for the Blooming Elegant Fonts, and so I infer that it is these Blooming Elegant OTF Files that are the "Blooming Elegant Software" as that term is used in the Laatz Declaration.

16.     As discussed in the First Rucinski Declaration in paragraph 10 and Exhibit B, OTF files (OpenType Font files) contain data that may be used to render text in a particular font. Exhibit B to the First Rucinski Declaration is a true and correct printout of https://learn.microsoft.com/en-us/typography/opentype/spec/otff as it appeared on October 30, 2022. Exhibit B is a document from Microsoft, which is a company known for developing and distributing software, entitled "The OpenType Font File," and its first two sentences read, "**An OpenType font file contains data**, in table format, used for rendering of text. **Portions of the data are used by applications** to calculate the layout of text using the font; that is, the selection of glyphs and their placement within a line" (emphasis added). In its 18 pages, Exhibit B describes the supported data types and internal organization of OTF files. The term "data" appears approximately 50 times in Exhibit B while the term "software" appears zero times.

**The Data Content In The Copyright Submission PDFs And The Blooming Elegant OTF Files May Be Used As Input To Separate Software That Renders Fonts**

17.     As discussed above, the Copyright Submission PDFs are printouts of VFJ files, and the VFJ file format is proprietary to FontLab. FontLab is software that a user may execute to open VFJ files such as those depicted in the Copyright Submission PDFs and subsequently use the data in the VFJ files to display fonts, input font data, and edit font data. This is a common way that

-5-

DECLARATION OF CHRISTOPHER RUCINSKI

software and data interact; software executes instructions on a computer processor and uses data in a variety of ways such as to set configuration parameters for the operation of the software or as input data that affects the output data the software generates. The Laatz Declaration describes this process of inputting font data with the FontLab software similarly in paragraph 7, stating that "In the font industry, font generating engines, such as FontLab or Fontographer, are industry standard and used by many font designers to input font data…"

18. OTF files such as the Blooming Elegant OTF files may be used as input to a variety of software programs that render fonts. For example, Adobe Photoshop is software that renders fonts, and it can use the data in OTF files to display default glyphs for certain letters. It also allows a user to select alternate glyphs for specific letters or enable or disable ligature glyphs being displayed for multiple letters. Creative Market has a tutorial on how to do this in an article entitled "Using Fonts with Special Features (OpenType)" available at

https://support.creativemarket.com/hc/en-us/articles/360037478813-Using-Fonts-with-Special-

DECLARATION OF CHRISTOPHER RUCINSKI

Features-OpenType-#characterpanel , and Figure 2 below depicts the relevant part of that tutorial as it appeared on May 5, 2023.



### The Character Panel (Photoshop CC, InDesign)

### Photoshop

First, open your Character Panel from **Window > Character**, then type some text.



You'll notice some OpenType options toward the bottom of the panel. The bolder ones are the features that are built into the font, whereas the grayed out features are not available for the current font. From left to right, these 8 features are:

- Standard Ligatures
- Contextual Alternates
- Discretionary Ligatures
- Swashes
- Stylistic Alternates
- Titling Alternates
- Ordinals
- Fractions

Just click on the feature(s) you'd like to use, and those features will be applied to all of the text. The Standard Ligatures and Contextual Alternates are selected in the example above.

Figure 2

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration is executed this 5th day of May 2023 in Medford, MA.

By _____

Christopher Rucinski

-7-

11691-00001/14067214.1

DECLARATION OF CHRISTOPHER RUCINSKI

# EXHIBIT 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
    *rachelkassabian@quinnemanuel.com*
OLGA SLOBODYANYUK (Bar No. 311194)
    *olgaslobodyanyuk@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801 5000
Facsimile: (650) 801 5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
    *andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705 7400
Facsimile: (312) 705 7401

DANIEL C. POSNER (Bar No. 232009)
    *danposner@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc.
and Mohamed Alkhatib

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ and NICKY LAATZ CREATIONS UK LTD, <br><br> Plaintiffs, <br><br> vs. <br><br> ZAZZLE INC. and MOHAMED ALKHATIB, <br><br> Defendants. | Case No. 5:22-cv-04844-BLF <br><br> **DECLARATION OF CHRISTOPHER RUCINSKI IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date:      January 19, 2023 <br> Time:      9:00 am PT <br> Courtroom: 3 <br> Judge:    Hon. J. Freeman |

DECLARATION OF CHRISTOPHER RUCINSKI

**DECLARATION OF CHRISTOPHER RUCINSKI**

I, Christopher Rucinski, declare as follows:

1.     I am the Managing Director of Elysium Digital, LLC ("Elysium Digital"), a subsidiary of Aon Corporation ("Aon"). My business address is 53 State Street, Suite 2201, Boston MA 02109. I have personal knowledge of the matters stated in this declaration and if called as a witness, I would testify competently thereto.

**Education & Expertise**

2.     My subject matter expertise includes computer science generally, and I have been admitted to testify as an expert in various federal court proceedings regarding computer source code analysis, data analysis, and digital evidence collection.

3.     I graduated *cum laude* with an A.B. in Computer Science from Princeton University in 2010, and in 2015, I obtained the Global Information Assurance Certification as a Certified Forensic Examiner, which I renewed in 2019. In 2010, I began working at Elysium Digital as a computer scientist, and I continued to work there until Elysium Digital was acquired in 2015 by Stroz Friedberg. I continued to work at Stroz Friedberg until it was acquired by Aon in 2016, and I have worked at Aon since then, now through its subsidiary Elysium Digital.

4.     At Elysium Digital, Stroz Friedberg, and Aon, I have consulted on more than 100 technical matters to date, many of which have involved the analysis of various data formats. I have offered expert opinions about the operation of computer source code, and I have testified as an expert about the operation of computer source code several times in the last several years. I have also provided technical consulting services for the Federal Trade Commission.

5.     My current *curriculum vitae* is attached here as **Exhibit A**.

**Assignment**

6.     I have been asked by counsel for Defendants Zazzle Inc. and Mohamed Alkhatib to comment on whether the contents of the Blooming Elegant Copyright Submission PDF, the Blooming Elegant Sans Copyright Submission PDF, and the Blooming Elegant Hand Copyright Submission PDF (defined below and collectively referred to hereinafter as "Copyright Submission PDFs") appear to have been hand-coded by Plaintiff Nicky Laatz ("Laatz") as claimed by

Plaintiffs' attorney, Mr. Steinberg, in the Blooming Elegant Copyright Submission Emails, the Blooming Elegant Sans Copyright Submission Emails, and the Blooming Elegant Hand Copyright Submission Emails (defined below and collectively referred to hereinafter as "Copyright Submission Emails"), or whether the contents of the Copyright Submission PDFs instead appear to have been generated by a font program, such as FontLab or Fontographer.

7.     In connection with my analysis, I reviewed the following documents:

a.   Dkt. 27, Declaration of Stephen C. Steinberg in Support of Plaintiffs' Motion For Partial Summary Judgment, dated September 21, 2022 ("Steinberg Declaration")

b.   Dkt 27-1, Exhibit 1 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant" font copyright registration ("Blooming Elegant Copyright Submission PDF" or "Steinberg Declaration Exhibit 1").

c.   Dkt 27-4, Exhibit 4 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant" font ("Blooming Elegant Copyright Submission Emails" or "Steinberg Declaration Exhibit 4").

d.   Dkt 27-2, Exhibit 2 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant Sans" font copyright registration ("Blooming Elegant Sans Copyright Submission PDF" or "Steinberg Declaration Exhibit 2").

e.   Dkt 27-5, Exhibit 5 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant Sans" font ("Blooming Elegant Sans Copyright Submission Emails" or "Steinberg Declaration Exhibit 5").

f.   Dkt 27-3, Exhibit 3 to the Steinberg Declaration, a PDF submitted to the U.S. Copyright office for the "Blooming Elegant Hand" font copyright registration

DECLARATION OF CHRISTOPHER RUCINSKI

("Blooming Elegant Hand Copyright Submission PDF" or "Steinberg Declaration Exhibit 3").

g. Dkt 27-6, Exhibit 6 to the Steinberg Declaration, copies of email correspondence between Stephen Steinberg and the U.S. Copyright Office regarding the "Blooming Elegant Hand" font ("Blooming Elegant Hand Copyright Submission Emails" or "Steinberg Declaration Exhibit 6").

### Opinion

8. For the reasons discussed in detail below, my opinion is that Laatz almost certainly did not hand-code the Copyright Submission PDFs and that instead the FontLab font program was used to generate those files. My opinion is based on the following:

a. The Copyright Submission PDFs appear to be printouts of "VFJ" files. This is significant because, based on an analysis I did, I was able to generate VFJ files using FontLab that are nearly identical to the Copyright Submission PDFs when printed, leading me to conclude that Plaintiffs also generated VFJ files using FontLab that they submitted to the Copyright Office after printing them to PDF.

b. Two of the Copyright Submission PDFs explicitly state that they were "Generated by: FontLab," and the third file has the same characteristics of the other two, showing that it too was generated by FontLab.

c. Laatz has made a number of pre-litigation, public statements that I was easily able to locate on the Internet in which she acknowledges that she uses FontLab to generate the fonts she designs (and in which she does not otherwise indicate that she hand-codes any parts of font files).

d. Given the length and complexity of the Copyright Submission PDFs, the relatively high frequency of errors in manually creating files of that sort, and the availability of popular and easy-to-use font-generating software such as FontLab, it is implausible that Laatz would have hand-coded the Copyright Submission PDFs.

DECLARATION OF CHRISTOPHER RUCINSKI

9.     Finally, I note that I am offering this declaration at an early part of this litigation, before any discovery has been taken. Although I reserve my right to offer additional opinions and analysis if needed, at a later point in the case based on a fuller evidentiary record, my opinions stated herein are based on a sufficient record to be reliable and accurate.

## Technical Background and Terminology

10.     OpenType is a standard that defines a popular file format in which the information to enable a computer to render text in a given font may be packaged into a digital font file for distribution and use. As Microsoft puts it: "An OpenType font file contains data, in table format, used for rendering of text. Portions of the data are used by applications to calculate the layout of text using the font; that is, the selection of glyphs and their placement within a line."[1] OpenType font files ("OTF files") store their information in binary form, which is not human-readable (though some limited portions may be human-readable), and they often have a file extension of ".otf".

11.     JSON ("JavaScript Object Notation") is a data format that enables the recording and distribution of structured data in a format that is easily generated and consumed by computer programs and is also human-readable. Because JSON data is often consumed by computer programs, even single errors or omissions in hand-typed JSON data can cause a computer program to fail to parse such JSON data.[2]

12.     FontLab is a font program that enables a user to more easily design and create fonts in a visual manner by using the FontLab program on their computer; its current major release version is 8. According to the FontLab web site: "With FontLab 8, you can create and edit OpenType fonts, variable fonts, color fonts and web fonts — for any Unicode writing system,

---

[1] *See, e.g.*, https://learn.microsoft.com/en-us/typography/opentype/spec/otff, a true and correct printout of which as it appeared on October 30, 2022, is attached as **Exhibit B**.

[2] *See, e.g.*, https://www.json.org/json-en.html, a true and correct printout of which as it appeared on October 30, 2022, is attached as **Exhibit C**.

-4-

DECLARATION OF CHRISTOPHER RUCINSKI

from Latin, Cyrillic, Greek, Arabic, Hebrew and Indic, all the way to Chinese, Japanese, emoji, symbols and icons. Adjust spacing, kerning and hinting. Convert between font formats."[3] The video in which FontLab 8 is introduced includes an illustrative example of what designing a font looks like when using FontLab 8; Figure 1 below is a still frame from that video as it appeared on October 30, 2022:[4]



*Figure 1: Designing fonts with FontLab*

13.     In addition to providing a visual design interface, FontLab enables a user to configure a font to be rendered in accordance with OpenType Features, for example defining certain glyph substitutions for font features such as ligatures, which replaces multiple individual

---

[3] *See, e.g.*, https://www.fontlab.com/, a true and correct printout of which as it appeared on October 30, 2022, is attached as **Exhibit D**.

[4] *See, e.g.*, https://www.youtube.com/watch?v=Ik_T_GW2iiM, which is linked from https://www.fontlab.com/ as of October 30, 2022.

DECLARATION OF CHRISTOPHER RUCINSKI

glyphs for the corresponding individual letters with a single stylized glyph representing all the given letters. The FontLab web site provides documentation that defines how a user of FontLab must use the FontLab software to define such substitutions with simple configuration statements such as those described in Figure 2, Figure 3, and Figure 4 below.[5]

## Ligature Substitution

The **ligature substitution** rule replaces several glyphs in sequence with a single glyph.

A ligature substitution rule is specified as:

```
sub <glyph sequence> by <glyph>;
```

*Figure 2: Ligature Substitution with FontLab*

**ⓘ Note**

Ligature glyphs should be named using the underscore rule, e.g. f_f_odieresis for an ffö ligature. Only the fi and fl ligatures should be named without the underscores. For an extensive discussion about devising custom glyph names in OpenType fonts, refer to the **Glyph Naming and Encoding** section.

A contiguous set of ligature rules does not need to be ordered in any particular way by the font editor; the implementation software does the appropriate sorting. So:

```
sub f f by f_f;
sub f i by fi;
sub f f i by f_f_i;
sub o f f i by o_f_f_i;
```

will do the same thing as:

```
sub o f f i by o_f_f_i;
sub f f i by f_f_i;
sub f f by f_f;
sub f i by fi;
```

*Figure 3: Ligature Substitution with FontLab: Underscore Rule*

---

[5] *See, e.g.,* https://help.fontlab.com/fontlab-vi/OpenType-Features, a true and correct printout of which as it appeared on November 2, 2022, is attached as **Exhibit E**.

-6-

DECLARATION OF CHRISTOPHER RUCINSKI

## Alternate Substitution

**Alternate substitution** replaces a glyph with one of the glyphs in a pre-defined list of alternatives. The application that uses the font is expected to decide which glyph to choose. A good example of this lookup is to provide several versions of some glyph, like the ampersand. Another application is the selection of several different forms of ornaments.

An alternate substitution rule is specified as:

```
sub <glyph> from <glyphclass>;
```

For example:

```
sub ampersand from [ampersand.1 ampersand.2];
```

or ornament variations:

```
sub asterisk from [orn.1 orn.2 orn.3 orn.4];
```

*Figure 4: Alternate Substitution with FontLab*

14. FontLab also enables a font designer to import and export font data into and out of FontLab in a variety of file formats, including the OTF and VFJ file formats. VFJ files are structured using the JSON format and contain information about the given font data in human-readable form, including font data generated by and specific to the FontLab font program.[6]

**The Copyright Submission PDFs Were Not Hand-Coded by Laatz but Rather are Printouts of VFJ Files Generated by FontLab**

15. Among the materials I reviewed in support of this declaration are correspondence between the Copyright Office Examiner and Laatz's counsel, Stephen Steinberg. I found the following exchanges relevant to my analysis:

---

[6] *See, e.g.,* https://help.fontlab.com/fontlab-vi/Font-Formats/, a true and correct printout of which as it appeared on October 30, 2022, is attached as **Exhibit F**.

-7-

DECLARATION OF CHRISTOPHER RUCINSKI

a. On February 18, 2021, the Copyright Office Examiner stated as follows: "[Y]ou filed an application to register a 'computer program,' however; the deposit you submitted does not contain a computer program. This appears to be a font. Typically, fonts come in as XML. If this is XML, please confirm. […] In addition, if this is XML please let us know if it was hand-coded by a human author or if it was generated by a font program, such as FontLab or Fontographer. If the XML was merely generated by a font program and was not hand coded by a human author, it cannot be registered..."[7]

b. On February 24, 2021, Plaintiffs' counsel responded: "You are correct that the work is a font, but what we submitted is not XML. Rather, it is a PDF file containing source code for an installable OTF file containing the work."[8]

c. On February 25, 2021, the Examiner asked Plaintiffs' counsel to "[p]lease confirm what language or format the code is written in AND that it was hand-coded rather than generated by a font design program. If this code was merely generated by a font program and was not hand coded by a human author, it cannot be registered."[9]

d. On April 7, 2021, Plaintiffs' counsel responded: "Ms. Laatz[] personally created the designs and instructions in the font software file we submitted, including instructions for linking, spacing, kerning, and outlining characters, all of which is packaged as an OTF installable computer program file, which is what was attached to my last email."[10]

---

[7] *See*, *e.g.*, Steinberg Declaration Exhibits 4 – 6, each at page 7.

[8] *See*, *e.g.*, Steinberg Declaration Exhibits 4 – 6, each at page 6.

[9] *See*, *e.g.*, Steinberg Declaration Exhibits 4 – 6, each at pages 5 – 6.

[10] *See*, *e.g.*, Steinberg Declaration Exhibits 4 – 6, each at pages 4 – 5.

-8-

DECLARATION OF CHRISTOPHER RUCINSKI

e. On April 15, 2021, the Examiner again asked Plaintiffs' counsel to "please confirm if the information in the PDF that you submitted is hand-coded ...."[11]

f. On May 28, 2021, Plaintiffs' counsel stated that the "deposit that we tried to submit originally and that I attached to my first email below is an installable OTF file, which is a 'computer program' and is the entire work of the author."[12]

g. On June 2, 2021, the Examiner informed Plaintiffs' counsel that "[i]f you respond and do not … confirm if the font data in the PDF file was hand-coded, I will refuse this registration with no further action."[13]

h. On July 15, 2021, Plaintiffs' counsel "confirm[ed] that Ms. Laatz hand-coded the designs and instructions in the font data that we submitted as a pdf file."[14]

16. Contrary to the statements by Plaintiffs' counsel to the U.S. Copyright Office Examiner described above, my opinion is that the Copyright Submission PDFs were not hand-coded by Laatz but rather are printouts of VFJ files generated by FontLab.

17. As an initial matter, The Copyright Submission PDFs are not printouts of OTF files. OTF files are not human-readable, and the Copyright Submission PDFs are human-readable. In addition, as explained below, I purchased the OTF files corresponding to each of the Copyright Submission PDFs and confirmed that simply printing out those OTF files did not result in files similar to the Copyright Submission PDFs.

---

[11] *See, e.g.,* Steinberg Declaration Exhibits 4 – 6, each at page 4.

[12] *See, e.g.,* Steinberg Declaration Exhibits 4 – 6, each at page 3.

[13] *See, e.g.,* Steinberg Declaration Exhibits 4 – 6, each at page 2.

[14] *See, e.g.,* Steinberg Declaration Exhibits 4 – 6, each at page 2.

-9-

DECLARATION OF CHRISTOPHER RUCINSKI

18. On October 27, 2022, I purchased the Blooming Elegant Trio from Creative Market so that I could determine whether it was possible to generate content similar to the Copyright Submission PDFs from the purchased OTF files simply by printing them. I started by navigating to https://creativemarket.com/Nickylaatz/537891-The-Blooming-Elegant-Font-Trio and clicked on the "Buy Now" button, leaving the default "Desktop" license selected. Figure 5 below shows the relevant portion of that web page as it appeared during this experiment.




*Figure 5*

DECLARATION OF CHRISTOPHER RUCINSKI

19.    As a result of clicking the "Buy Now" button, my browser was directed to https://creativemarket.com/sign-up?a=continue&r=%2Fpurchase%2Fproduct%2F537891%3Flicense%3D10%26quantity%3D1, which prompted me to enter information in order to create an account on Creative Market. Figure 6 below shows the relevant portion of that web page as it appeared during this experiment.

## Sign up to continue

**First Name***

**Last Name***

**Email***

**Username***

**Password***

At least 8 characters. Must include at least one: uppercase letter, lowercase letter, number, and symbol.

*Required Fields

☐ I agree to the **Terms of Service** and **Privacy Policy**

**Create Account**

OR

**f Sign Up with Facebook**

**G Sign Up with Google**

**⊗ Sign Up with Dribbble**

*Figure 6*

20.    As a result of filling in my information and clicking the "Create Account" button, my browser was directed to https://creativemarket.com/purchase/product/537891?license=10&quantity=1, which prompted me

-11-

DECLARATION OF CHRISTOPHER RUCINSKI

to confirm my billing information. Figure 7 below shows the relevant portion of that web page as it appeared during this experiment.



*Figure 7*

21.     As a result of filling in my information and clicking the "Confirm Billing Info" button, my browser then displayed a prompt for payment information. Figure 8 below shows the relevant portion of what my browser displayed during this experiment.



*Figure 8*

-12-

22.    As a result of filling in my payment information and clicking the button to confirm the purchase, my browser was directed to https://creativemarket.com/purchase/receipt/132454336, which prompted me to download the font files associated with the purchase. Figure 9 below shows the relevant portion of that web page as it appeared during this experiment. Figures 5 – 9 are also attached here as **Exhibit Q** in a larger format.



*Figure 9*

23.    Upon clicking the "Download" button, my browser downloaded a .zip file, which when decompressed created three relevant files: "BloomingElegant.otf", "Blooming Elegant Sans.otf", and "Blooming Elegant Hand.otf" (collectively, "Blooming Elegant OTF Files"). None of the files that were created by decompressing the zip file resembled the contents or format of the Copyright Submission PDFs. In particular, I have included as **Exhibits G – I** the first five pages of the results of printing to PDF each of BloomingElegant.otf, Blooming Elegant Sans.otf, and Blooming Elegant Hand.otf respectively. I created these exhibits by opening each OTF file in TextEdit, the default text editor for macOS, selecting File → Print, and printing to a PDF file. With a few limited exceptions, **Exhibits G – I** do not contain human-readable text; the nonsense characters that appear are the result of data that is not intended to be human-readable forced into being displayed a text. Because these printouts of OTF file do not resemble the Copyright Submission PDFs, the Copyright Submission PDFs are not printouts of OTF files.

DECLARATION OF CHRISTOPHER RUCINSKI

24.	The Copyright Submission PDFs are almost certainly printouts of VFJ files that were generated by the FontLab font program by exporting the data in the Blooming Elegant OTF Files to VFJ format. To formulate and verify this conclusion, I performed an experiment in which I imported the Blooming Elegant OTF files into the FontLab font program and subsequently created corresponding VFJ files using the FontLab font program. **Exhibit J** ("Blooming Elegant VFJ PDF"), **Exhibit K** ("Blooming Elegant Sans VFJ PDF"), and **Exhibit L** ("Blooming Elegant Hand VFJ PDF") (hereinafter collectively, "Blooming Element VFJ PDFs") are the results of printing the VFJ files corresponding to BloomingElegant.otf, Blooming Elegant Sans.otf, and Blooming Elegant Hand.otf, respectively. The Blooming Elegant VFJ PDFs are very similar to the Copyright Submission PDFs and are identical in several important ways, but it will be instructive to describe my experiment first in order to establish additional context before describing the similarities in more detail.

25.	On October 28, 2022, I downloaded the macOS version of FontLab that had a version number of 7.1.2.7436, where "7.1.2" is the "semantic" version number in the format of Major.Minor.Patch, and "7436" is the specific software build number that corresponds to the specific day on which that version of software was created.[15] I chose this specific version because it was the archived version available on https://download.fontlab.com/ that corresponded most closely to the version of FontLab that I believed was used to create the Copyright Submission PDFs, which is version 7.1.2.7455, because "FontLab 7.1.2" appears in the Blooming Elegant Copyright Submission PDF and the Blooming Elegant Sans Copyright Submission PDF, and

---

[15] *See*, *e.g.*, https://help.fontlab.com/fontlab/7/manual/Updates/, which states that "This is a normal version such as 7.0.0.7258. The last few digits are a 'build number' that is actually a date—the number of days since January 1, 2000, on the day the build was made." A true and correct printout of this we page as it appeared on October 30, 2022, is attached as **Exhibit M**.

DECLARATION OF CHRISTOPHER RUCINSKI

"metaBuild":"7455" appear in all three of the Copyright Submission PDFs.[16] Figure 10 below shows the relevant portion of https://download.fontlab.com/ as it appeared during my experiment.



FULL & TRIAL VERSIONS

FontLab 7, the previous version of our pro font editor (succeeded by FontLab 8), runs on all modern macOS and Windows systems. Download the **trial** version, and if you have an FL70 serial number, enter it there — and it will be converted into the **full** version. If you have 64-bit Windows, install the 64-bit version of FontLab 7.

- FontLab 7.2.0.**7644** for **macOS** (64-bit), latest: download trial & full
- FontLab 7.2.0.**7644** for **Windows (64-bit)**, latest: download trial & full
- FontLab 7.2.0.**7644** for **Windows (32-bit)**, latest: download trial & full

OLDER VERSIONS

In rare cases, we may change or remove a functionality in a newer version which worked better for you in an older version. In this case, you may download one of the older builds:

- FontLab 7.2.0.**7622** for macOS I Win64 I Win32 I notes
- FontLab 7.1.4.**7515** for macOS I Win64 I Win32 I notes
- FontLab 7.1.3.**7495** for macOS I Win64 I Win32 I notes
- FontLab 7.1.2.**7436** for macOS I Win64 I Win32 I notes
- FontLab 7.1.1.**7382** for macOS I Win64 I Win32 I notes
- FontLab 7.1.0.**7363** for macOS I Win64 I Win32 I notes
- FontLab 7.0.1.**7276** for macOS I Win64 I Win32 I notes
- FontLab 7.0.0.**7264** for macOS I Win64 I Win32 I notes

*Figure 10*

26.     I then performed the following steps for each of the Blooming Elegant OTF files, which resulted in the creation of BloomingElegant.vfj, BloomingElegantSans.vfj, and

---

[16] *See, e.g.*, pp. 457 – 458 of Steinberg Declaration Exhibit 1, pp. 230 – 231 of Steinberg Declaration Exhibit 2, and p. 437 of Steinberg Declaration Exhibit 3.

-15-

DECLARATION OF CHRISTOPHER RUCINSKI

BloomingElegantHand.vfj, each corresponding to BloomingElegant.otf, Blooming Elegant Sans.otf, and Blooming Elegant Hand.otf respectively.

    a.   I imported the OTF file using the "Open font file" prompt (Figure 11).

    b.   I selected File → Export Font as… (Figure 12)

    c.   I selected "FontLab JSON vfj" as the export format (Figure 13).

    d.   I completed the export, which resulted in the creation of a VFJ file (Figure 14).



*Figure 11*

-16-

DECLARATION OF CHRISTOPHER RUCINSKI



*Figure 12*



*Figure 13*

*Figure 14*

27.     The Blooming Elegant VFJ PDFs are very similar to the corresponding Copyright Submission PDFs; the most important similarities of each pair follow.

28.     Regarding the Blooming Elegant Copyright Submission PDF and the corresponding Blooming Elegant VFJ PDF:

       a.   Both are several hundred pages; the former is 460, and the latter is 502.

       b.   Both are JSON-formatted.

       c.   Both contain similar data in general.

       d.   Both show on the first page the same "lastModified" dates and times from 2016 for the font data.[17]

       e.   Both show date and time for when the corresponding VFJ file was generated that is consistent with when both files were generated.[18]

---

[17] The times differ by exactly five hours down to the second, which is approximately the difference in time zones between Massachusetts, where I am presently, and the United Kingdom, where I understand Laatz resides.

[18] Steinberg Declaration Exhibit 1 states, "Generated on: 2021-2-17 10:43" on page 457, which is one day before the correspondence in Steinberg Declaration Exhibit 4 began. Exhibit J states, "Generated on: 2022-10-28 14:59" on page 497, which is the date on which I generated BloomingElegant.vfj using the FontLab font program.

-18-

DECLARATION OF CHRISTOPHER RUCINSKI

f. Both state "Font copyright: Copyright (c) 2016 by Nicky Laatz"[19]

g. Both state "Generated by: FontLab 7.1.2"[20]

h. Both state a "metaBuild" version that is consistent with FontLab 7.1.2. The Blooming Elegant Copyright Submission PDF states a version of 7455 on page 458, and the Blooming Elegant VFJ PDF states a version of 7436 on page 499.

29. Regarding the Blooming Elegant Sans Copyright Submission PDF and the corresponding Blooming Elegant Sans VFJ PDF:

a. Both are about a couple hundred pages; the former is 235, and the latter is 254.

b. Both are JSON-formatted.

c. Both contain similar data in general.

d. Both show on the first page the same "lastModified" dates and times from 2016 for the font data.[21]

e. Both show date and time for when the corresponding VFJ file was generated that is consistent with when both files were generated.[22]

f. Both state "Font copyright: Copyright (c) 2016 by Nicky Laatz"[23]

g. Both state "Generated by: FontLab 7.1.2"[24]

---

[19] *See*, *e.g.*, page 457 of Steinberg Declaration Exhibit 1 and page 497 of Exhibit J.

[20] *See*, *e.g.*, page 457 of Steinberg Declaration Exhibit 1 and page 497 of Exhibit J.

[21] The times differ by exactly five hours down to the second, which is approximately the difference in time zones between Massachusetts, where I am presently, and the United Kingdom, where I understand Laatz resides.

[22] Steinberg Declaration Exhibit 2 states, "Generated on: 2021-2-17 10:56" on page 230, which is one day before the correspondence in Steinberg Declaration Exhibit 5 began. Exhibit K states, "Generated on: 2022-10-28 15:8" on page 247, which is the date on which I generated BloomingElegantSans.vfj using the FontLab font program.

[23] *See*, *e.g.*, page 230 of Steinberg Declaration Exhibit 2 and page 247 of Exhibit K.

[24] *See*, *e.g.*, page 230 of Steinberg Declaration Exhibit 2 and page 247 of Exhibit K.

-19-

DECLARATION OF CHRISTOPHER RUCINSKI

h. Both state a "metaBuild" version that is consistent with FontLab 7.1.2. The Blooming Elegant Sans Copyright Submission PDF states a version of 7455 on page 231, and the Blooming Elegant Sans VFJ PDF states a version of 7436 on page 248.

30. Regarding the Blooming Elegant Hand Copyright Submission PDF and the corresponding Blooming Elegant Hand VFJ PDF:

a. Both are about a few hundred pages; the former is 439, and the latter is 474.

b. Both are JSON-formatted.

c. Both contain similar data in general.

d. Both show on the first page the same "lastModified" dates and times from 2016 for the font data.[25]

e. Neither show a date and time for when the corresponding VFJ file was generated.

f. Both state "Copyright (c) 2016 by Nicky Laatz".[26]

g. Both also state a copyright that is missing: "Copyright (c) 2016 by . All rights reserved." This same statement occurs on page 437 of the Blooming Elegant Hand Copyright Submission PDF and on page 471 of the Blooming Elegant Hand VFJ PDF.

h. Despite "FontLab" not appearing in either file, both state a "metaBuild" version that is consistent with FontLab 7.1.2. The Blooming Elegant Hand Copyright Submission PDF states a version of 7455 on page 437, and the Blooming Elegant Hand VFJ PDF states a version of 7436 on page 471.

---

[25] The times differ by exactly five hours down to the second, which is approximately the difference in time zones between Massachusetts, where I am presently, and the United Kingdom, where I understand Laatz resides.

[26] See, e.g., page 437 of Steinberg Declaration Exhibit 3 and page 471 of Exhibit L.

-20-

DECLARATION OF CHRISTOPHER RUCINSKI

31. In conclusion, the overwhelming similarities between the Blooming Elegant VFJ PDFs, which I generated with FontLab from the Blooming Elegant OTF Files, and the Copyright Submission PDFs show that the Copyright Submission PDFs are printouts of VFJ files generated by FontLab.

## My Conclusions Are Corroborated by Other Information I Have Reviewed

32. My conclusion that the Copyright Submission PDFs were generated by FontLab is consistent with and corroborated by other information I have reviewed.

33. As detailed above, two of the Copyright Submission PDFs explicitly state that they were "Generated by: FontLab," and the third file has all the same characteristics of the other two, showing that it too was generated by FontLab.

34. My conclusion is also consistent with how Laatz herself describes her process for designing fonts. In particular, Laatz has stated that she uses the FontLab font program to design fonts, including in 2016 when she created the fonts at issue in this litigation, and there are numerous other references that are consistent with that process.

35. In a video interview posted by the Creative Market Facebook account on May 11, 2016 (hereinafter "Laatz May 2016 Interview"),[27] Laatz states that she uses the FontLab font software extensively and mentions that Blooming Elegant is among her favorite fonts that she has created. Laatz also states, "FontLab has everything that you could possibly do or want to do with a font." The transcript of relevant sections of the Laatz May 2016 Interview, as it appeared when I visited the URL https://www.facebook.com/crtvmrkt/videos/1155957707769095/ on October 27, 2022, follows:

    a. 25:05 to 26:16:

        **Aaron**: Let's take some questions from people that are tuning in.

        **Kelly**: Uhm yeah we've got a lot coming in…not very surprising…uhm…Nicole asks what program Nicky uses to create fonts?

---

[27] This interview may be found as of October 27, 2022, at: https://www.facebook.com/crtvmrkt/videos/1155957707769095/.

DECLARATION OF CHRISTOPHER RUCINSKI

**Nicky Laatz**: Okay, currently I use FontLab. I started with FontForge, which is the free (still free as far as I know), it's a font…it's a font making software. It was great. It's quite difficult to learn but once you've actually gotten seconded…and spent some time figuring out how everything works. It's fantastic. So I can recommend FontForge for people that are…have a tight budget and just have some patience learning how to use it. From there I went to Fontographer which I think is also produced by FontLab which is a simpler version of FontLab, but I don't think it has as many…or any…open type capabilities which is why I switched to FontLab, and FontLab has everything that you could possibly do or want to do with a font which is what I needed, so I use FontLab. FontLab is great.

**Aaron**: Awesome

    b.  28:40 to 28:55:

**Nicky Laatz**: And uhm I really like Blooming Elegant. There's something about the script font that I still love the look of, and I love playing with and making things with and experimenting with.

    c.  41:05 to 41:36:

**Nicky Laatz**: But most of the fonts that I've done up until that point are on paper first. Like I said I make tons and tons of words and not just letters just words, and then I pick letters out that I want on paper; I scan them in. I put them into Illustrator. I neaten them up; I vectorize them; I get rid of all the jagged edges. I smooth them; I do what I want with them in Illustrator. And from Illustrator they go into FontLab, and that's when I put the font together.

36.    At no point during the Laatz May 2016 Interview does Laatz discuss hand-coding the text of software files or any other files as part of her font design and creation process. Indeed, it would take an enormous amount of time to painstakingly hand-code each letter, number, and punctuation mark present in the Copyright Submission PDFs, which together total more than one thousand pages, and doing so would be much more inefficient and error-prone than generating

-22-

DECLARATION OF CHRISTOPHER RUCINSKI

font files using a font program such as FontLab, which is explicitly designed to obviate such manual tedium.

37.     In a quotation attributed to Laatz posted on the Creative Market web site on May 6, 2021, Laatz states about the book entitled "Practical Font Design by David Bergsland": "This was one of the first books about designing type I bought – I remember it was recommended on some of the Type forums and while a little out of date now, still has some gems for new type designers — especially if you use Fontlab 5."[28]

38.     In an interview transcript posted by the Noun Project on or around 2022, in response to the question, "Do you have any favorite design tools or resources? (podcasts, magazines, blogs, etc.)," Laatz's response is recorded as beginning with, "I can't physically go on breathing without Photoshop, Illustrator, and Fontlab."[29]

**It Is Highly Improbable That Laatz Hand-Coded the Copyright Submission PDFs**

39.     Even apart from the evidence described above which supports my opinion that Laatz did not hand-code the Copyright Submission PDFs and that they were instead generated using FontLab, there are other reasons why I have concluded that Laatz did not hand-code the Copyright Submission PDFs.

40.     Given the length and complexity of the Copyright Submission PDFs, the relatively high frequency of errors in manually creating VFJ files of that sort, and the availability of popular and easy-to-use font-generating software such as FontLab, it is implausible that Laatz would have

---

[28] The article containing this quotation may be found at https://creativemarket.com/blog/wonderful-typography-books, and a true and correct printout of that web page as it appeared on October 30, 2022 is attached as **Exhibit N**.

[29] This interview transcript appears at https://thelist.thenounproject.com/thelist/nicky-laatz, and a true and correct printout of that web page as it appeared on October 30, 2022, is attached as **Exhibit O**. That interview transcript is linked from https://thelist.thenounproject.com/, entitled "Top Illustrators and Designers of 2022," of which a true and correct printout as it appeared on October 30, 2022, is attached as **Exhibit P**.

-23-

DECLARATION OF CHRISTOPHER RUCINSKI

hand-coded the Copyright Submission PDFs. Even a single incorrect character in the hundreds of pages of each of the Copyright Submission PDFs could cause FontLab to not be able to parse, or understand, the contents of the file. Errors in inputting a given character could result from (1) logical errors, for example forgetting how many levels of nested JSON objects are present at a specific place in the file, (2) simply mistyping a critical punctuation mark, for example one that should indicate the end of a particular JSON object in the file, or (3) both. It makes much more sense for a font designer such as Laatz to avail oneself of software such as FontLab that is specifically suited to allow font designers to spend their time on the actual visual design of fonts by automatically converting those designs into font data that can be interpreted by computers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration is executed this 3rd day of November 2022 in Medford, MA.

By _____

Christopher Rucinski

DECLARATION OF CHRISTOPHER RUCINSKI

# Exhibit II



**Christopher T. Rucinski**

(617) 807-8534
christopher.rucinski@aon.com
53 State Street, Suite 2201
Boston, MA 02109

Managing Director

## Professional Experience

- Elysium Digital, LLC, a subsidiary of Aon Corporation, Managing Director, 2020 – Present
- Elysium Digital, LLC, a subsidiary of Aon Corporation, Vice President, 2019
- Stroz Friedberg, LLC, an Aon company, Vice President, 2017 – 2019
- Stroz Friedberg, LLC, an Aon company, Director, 2015 – 2017
- Elysium Digital, LLC, Computer Scientist, 2010 – 2015
- SCVNGR, Android Developer, 2009 – 2010
- Princeton University, Computer Science Course Development Assistant, 2008
- Ivy Insiders, SAT Prep Branch Manager, 2007
- We Buy New England Houses, LLC, Web Developer, 2006

## Education

- A.B. *cum laude*, Computer Science, Princeton University, 2010

## Certifications

- GIAC Certified Forensic Examiner (GCFE), Global Information Assurance Certification, 2015; recertified 2019

## Training

- Leading Professional Service Firms, Harvard Business School, 2022
- CopyrightX, Harvard Law School, 2021
- FOR500: Windows Forensic Analysis, The SANS Institute, 2019
- FOR408: Windows Forensic Analysis, The SANS Institute, 2015

## Speaking Engagements

- "Discovery Considerations Related to Software." Christopher Rucinski. Presentation at Pryor Cashman LLP: Continuing Legal Education seminar, New York City, NY, August 2019.
- "Prior Art Masterpieces." Christopher Rucinski. Presentation at Orange County Bar Association: Continuing Legal Education seminar, Orlando, FL, November 2013.

## Testimony

[1] *Louth v. NFL Enterprises LLC*
U.S. District Court, District of Rhode Island, Case No. 1:21-cv-00405
Submitted two declarations on behalf of NFL Enterprises LLC (represented by Covington & Burling) in a Video Privacy Protection Act (VPPA) class action lawsuit involving an Android smartphone application, 2024.

[2] *Aatrix Software, Inc. v. Greenshades Software, Inc.*
U.S. District Court, Middle District of Florida, Case No. 3:15-cv-00164
Testified at trial, was deposed and submitted expert report on behalf of Aatrix Software, Inc. (represented by Taft Stettinius & Hollister) in a patent matter involving tax payroll software, 2020, 2023.

[3] *Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al.*
U.S. District Court, Central District of California, Case No. 2:21-cv-09552
Submitted seven declarations on behalf of defendant Wildcard Properties, LLC (represented by Quinn Emanuel Urquhart & Sullivan) in a copyright and trade secret dispute involving video game software, 2021, 2022, 2023.

[4] *Laatz et al. v. Zazzle, Inc. et al.*
U.S. District Court, Northern District of California, Case No. 5:22-cv-04844
Submitted two declarations on behalf of Zazzle, Inc. (represented by Quinn Emanuel Urquhart & Sullivan) in a copyright matter involving fonts, 2022, 2023.

[5] *Krimmel v. Novo Nordisk, Inc. et al.*
Superior Court of New Jersey, Union County, Case No. UNN-L-819-22
Was deposed and submitted expert report on behalf of Michele Krimmel (represented by Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross) in an employment dispute involving Genesys phone records, 2023.

[6] *Joint Stock Company Channel One Russia Worldwide et al. v. Infomir LLC et al.*
U.S. District Court, Southern District of New York, Case No. 1:16-cv-01318
Testified as an expert witness in a hearing related to a motion for sanctions, was deposed, and submitted three expert reports on behalf of Infomir LLC (represented by Berkowitz Lichtstein Kuritsky Giasullo & Gross) in a copyright matter involving streaming video technology, 2018, 2019, 2020.

[7] *MercuryGate International, Inc. v. Amous International, Inc. et al.*
U.S. District Court, Northern District of Illinois, Case No. 1:19-cv-04962
Submitted expert report on behalf of MercuryGate International, Inc. (represented by Kirkland & Ellis) in a trade secret matter involving transportation management system technology and software, 2019.

[8]  *Entrust Datacard Corporation v. Atlantic Zeiser GmbH et al.*
U.S. District Court, Middle District of Florida, Case No. 3:17-cv-00110
Submitted expert report on behalf of Entrust Datacard Corporation (represented by Briggs & Morgan) in a patent matter involving smart card technology and hardware controlling software, 2019.

[9]  *Synapse Group Corporation v. Mary Kay Inc.*
In the District of Dallas County, Texas, 162nd Judicial District, Case No. DC-17-11159
Was deposed and submitted expert report on behalf of Mary Kay Inc. (represented by Lynn Pinker Cox & Hurst) in a contract dispute matter involving website source code and allegations regarding wrongful use of intellectual property, 2019.

[10]  *RELX Inc. v. Informatica Corp.*
U.S. District Court, Southern District of New York, Case No. 1:16-cv-09718
Was deposed and submitted two expert reports on behalf of RELX Inc. (represented by Scott & Scott) in a matter involving software licensing and copyright disputes, 2018.

[11]  *Rackemann v. LISNR, Inc. et al.*
U.S. District Court, Southern District of Indiana, Case No. 1:17-cv-00624
Submitted expert report on behalf of Indianapolis Colts, Inc. (represented by Covington & Burling) in an Electronic Communications Privacy Act (ECPA) class action lawsuit involving an Android smartphone application, 2017.

[12]  *BMG Rights Management (US) LLC et al. v. Cox Enterprises, Inc. et al.*
U.S. District Court, Eastern District Court of Virginia, Case No. 1:14-cv-01611
Testified at trial as an expert witness, was deposed, and submitted two expert reports on behalf of Cox Enterprises, Inc. (represented by Fenwick & West) in a matter involving copyright allegations related to BitTorrent and associated software and data, 2015.

[13]  *Shurtape Technologies, LLC et al. v. 3M Company*
U.S. District Court, Western District of North Carolina, Case No. 5:11-cv-00017
Was deposed and submitted expert report on behalf of Shurtape Technologies (represented by K&L Gates) in a trademark investigation related to brand confusion in online forum posts, 2013.


## Awards and Recognition

- Sigma Xi


## Professional and Civic Affiliations

- Somerville-Cambridge Elder Services, Technology Coach, 2021 – Present

# Exhibit III

# Materials Considered

1. Bergsland, David. *Practical Font Design With FontLab 5*. Mankato, MN, Radiqx Press, 2016.
2. Glossary to Compendium of U.S. Copyright Office Practices, Third Edition, https://copyright.gov/comp3/docs/glossary.pdf
3. Fonts and the Law, Thomas Phinney, https://www.commarts.com/columns/fonts-and-the-law
4. Adobe OpenType Feature File Specification, https://adobe-type-tools.github.io/afdko/OpenTypeFeatureFileSpecification.html
5. Basics of FontLab Studio 5. Tutorial with David Bergsland, https://www.youtube.com/watch?v=_sY3eNLHfbs
6. FontLab Studio 5 User's Manual for Macintosh, https://help.fontlab.com/pdf/FLS5MacManual.pdf
7. FontLab Studio 5 User's Manual for Windows, https://help.fontlab.com/pdf/FLS5WinManual.pdf
8. The following documents in this case's docket:
    a. Dkt. 1
    b. Dkt. 26
    c. Dkt. 27 (and Exhibits 1 – 31)
    d. Dkt. 40 and 40-1
    e. Dkt. 41 (and Exhibit 1)
    f. Dkt. 45 (and Exhibit 1)
    g. Dkt. 51 (and Exhibits 1, 4, and 6)
    h. Dkt. 66
    i. Dkt. 82 (and Exhibits 1 – 6)
    j. Dkt. 89 (and Exhibits 1 – 4, 18, and 50 – 52)
    k. Dkt. 102-6
    l. Dkt. 102-12
    m. Dkt. 106-9 (and Exhibits 106-10 through 106-14)
    n. Dkt. 144
    o. Dkt. 148
    p. Dkt. 153
    q. Dkt. 154
    r. Dkt. 156
    s. Dkt. 176
9. PLAINTIFF NICKY LAATZ'S INTERROGATORIES TO DEFENDANT MOHAMED ALKHATIB, SET ONE, dated May 11, 2023
10. PLAINTIFF NICKY LAATZ'S INTERROGATORIES TO DEFENDANT ZAZZLE, INC., SET ONE, dated May 11, 2023
11. PLAINTIFF NICKY LAATZ'S REQUESTS FOR ADMISSION TO DEFENDANT MOHAMED ALKHATIB, SET ONE, dated May 11, 2023

12. PLAINTIFF NICKY LAATZ'S REQUESTS FOR ADMISSION TO DEFENDANT ZAZZLE, INC., SET ONE, dated May 11, 2023
13. PLAINTIFF NICKY LAATZ'S REQUESTS FOR PRODUCTION TO DEFENDANT ZAZZLE, INC., SET ONE, dated May 11, 2023
14. PLAINTIFF NICKY LAATZ'S AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT ZAZZLE, INC.'S INTERROGATORIES, SET ONE, dated May 29, 2024
15. LAATZ0000029
16. LAATZ0001984
17. LAATZ0385010
18. LAATZ0445266
19. LAATZ0470521
20. LAATZ0496272 and attachments (LAATZ0496273 – LAATZ0496748)
21. LAATZ0516705
22. LAATZ0516708
23. LAATZ0516711
24. ZAZZLE-001362 and attachments (ZAZZLE-001363 -ZAZZLE-001500). This is an email from Mohamed Alkhatib to Monica McGhie on May 4, 2017.
25. John Laatz Deposition Exhibit 150 (LAATZ0489336)
26. Adobe Systems Inc. v. Southern Software Inc. (1998)

2