# EXHIBIT 4

# EXPERT REPORT OF STUART SANDLER
# QUALIFICATIONS

---

## Experience

1. I launched my first font foundry (a company that designs and/or distributes fonts) in 1996, and have since become known throughout the world for my popular display typefaces and my font licensing expertise. I am a font licensing thought-leader, having introduced font licensing concepts and terminology that have been adopted industry-wide. I continue to influence the font licensing industry as a speaker, consultant, educator, and manager of one of the largest font distributors worldwide.

2. I launched the Font Diner font foundry in 1996 and have inspired generations of designers with font and software products influenced by 1950s popular culture. I have since gone on to launch nine unique font foundries and an expansive library of over 1,400 fonts which I manage. My fonts have been licensed for use on everything from Haribo gummi snacks to millions of screens around the world broadcasting the NFL Super Bowl.

3. As a design software complement to my font releases, I launched Mister Retro in 2004, which offers original vector artwork collections and plug-in software for Adobe Photoshop. Works from Mister Retro have been prominently seen and licensed for use in locations such as the opening titling for the Spider-Man: Into the Spider-Verse feature film and on vintage distressed tee shirt graphics.

4. With my expansive font licensing knowledge and expertise, in 2006, I co-founded and launched Font Bros as a distributor of high-quality typefaces from independent font foundries throughout the world specializing in OEM licensing and retail font license sales. Font Bros—with its primary focus on custom font licensing and licensing enforcement—has earned a reputation as the leading font distributor and font licensing advocate often cited in font licensing infringement matters.

5. My son Jackson and I co-founded Artovision in 2016 as the creator and manufacturer of officially licensed collectable dimensional 3D shadowbox and desktop artwork. Licensors include The Beatles (Universal Music/Sony), Halo (343 Studios/Microsoft), Activision/Blizzard, Warner Bros/Rooster Teeth, Bandai Namco, Capcom, Konami, Asmodee, Atari, King Features Syndicate, and more.

**1**

## Education

6.       I earned an Associate of Science (AS) degree in Visual Communications from the Art Institute of Fort Lauderdale in 1993.

## Other Professional Activities

7.       My speaking engagements and work with professional organizations in my field have included the following:

- Hamilton Wood Type Museum Wayzgoose 2020 - Speaker - Exploring the Face of Hamilton
- Font Diner Font Making Workshop Series - 2017-2020 in association with AIGA Missouri, Hamilton Wood Type Museum, Circles Conference Texas, AIGA Chicago
- The Walt Disney Company - Disney Creative Group - Invited Speaker
- Typecon 2016 - Speaker - To Protect and Defend: EULAs, Copyrights & Infringements
- Typecon 2015 - Speaker - Filmotype Junto: The First Font Collective
- Typecon 2012 - Speaker - The Future of Font Licensing
- Typecon 2009 - Speaker - Filmotype by the Letter
- Board of Directions - The Society of Typographic Aficionados (SOTA) 2003 – 2007

## Publications

8.       I have authored the following publications:

- Pinchefsky, Carol and Stuart Sandler. "Turn Your Fandom Into Cash A Geeky Guide to Turn Your Passion Into a Business (or at Least a Side Hustle)". May 31, 2022. ISBN: 978-1-63-265197-6. pp. 44-46.

- Sandler, Stuart. "Sawdust to Pixels: Creating a Digital Font from Wood Type". June 2, 2020. https://woodtype.org/blogs/news/sawdust-to-pixels-creating-a-digital-font-from-wood-type

- Sandler, Stuart. "OEM Licensing and What It Means to You: An Interview with Stuart Sandler of Font Bros.". June 11, 2016. https://medium.com/type-thursday/oem-licensing-and-what-i-means-to-you-an-interview-with-stuart-sandler-of-font-bros-f14f72aa54bc

- Sandler, Stuart. "Filmotype: The Complete Illustrated History: by the Letter". 2009 Updated in 2017. ISBN: 978-0-61-530688-9

**2**

## SCOPE OF WORK

9.      I was retained by counsel from the law firm Bartko LLP on behalf of its client, Nicky Laatz, concerning her dispute with Zazzle, Inc., an online platform for customized products such as invitations, greeting cards, gifts, etc., and its employee Mohamed Alkhatib.

10.     Nicky Laatz is a custom premium font designer and one of her creations is the Blooming Elegant Trio, a set of three complementary fonts that can be used for invitations, greeting cards, announcements, and other products. The Blooming Elegant Trio set of fonts is shown in examples reflecting the font names below:

11.     In this dispute, Ms. Laatz alleges that Zazzle directed one of its senior engineers, Mohamed Alkhatib, to purchase a one seat standard license for the Blooming Elegant Trio fonts and font software from the Creative Market website. Zazzle then allegedly used the font software to make the Blooming Elegant Trio available to all visitors, designers, and customers in design tools on the Zazzle website and mobile app. Zazzle has not yet paid for licenses for the users that Zazzle allowed to access the Blooming Elegant Trio in Zazzle's design tools.

12.     Counsel asked me to opine on the meaning within the font industry of Creative Market's License Terms, Terms of Service (TOS), and Licenses FAQ, at the time of purchase. Counsel also requested that I opine on whether Zazzle's licensing practices violated standard font industry licensing practices.

3

13.    I have reviewed and considered the below materials in connection with this matter:

- Complaint for Damages and Injunctive Relief (dated: August 24, 2022)
- First Amended Complaint for Damages and Injunctive Relief (dated March 14, 2023)
- Plaintiffs' Notice of Motion and Motion for Partial Summary Judgment and supporting Memorandum of Points and Authorities and Declarations (dated: September 21, 2022)
- Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (dated: November 3, 2022)
- Declaration of Sara Parikh in Support of Plaintiffs' Reply in Support of Motion for Partial Summary Judgment (dated: November 10, 2022)
- Plaintiff's Notice of Refiled Motion and Motion for Partial Summary Judgment and supporting Memorandum of Points and Authorities and Declarations (dated: April 7, 2023)
- Declaration of Sara Parikh in Support of Plaintiffs' Refiled Motion for Partial Summary Judgment (dated: April 7, 2023)
- Defendants' Opposition to Plaintiff's Refiled Motion for Partial Summary Judgment (dated: May 5, 2023)
- Deposition Transcript of Bobby Beaver (dated: April 5, 2023)
- Deposition Transcript of Catherine Sheu (dated: July 26, 2024)
- Deposition Transcript of Jason Li (dated: July 17, 2024)
- Deposition Transcript of John Laatz (dated: August 2, 2024)
- Deposition Transcript of Liana Larson (dated: August 30, 2024)
- Deposition Transcript of Michelle Reynaud (dated: August 1, 2024)
- Deposition Transcript of Mohamed Alkhatib (dated: August 7, 2024)
- Deposition Transcript of Monica McGhie (dated: July 16, 2024)
- Deposition Transcript of Nicky Laatz (dated: August 1, 2024)
- Deposition Transcript of Patrick Haley (dated: July 16, 2024)
- Creative Market Offering Page for Blooming Elegant Trio from 2016-17 (Ex. 16)
- Creative Market Licenses FAQ from 2016-17 (Ex. 19)
- Creative Market Licenses Terms from 2016-17 (Ex. 20)
- Creative Market Terms of Service from 2016-17 (Ex. 182)
- Zazzle Website and Online Design Tool
- LAATZ0354495
- LAATZ0354600
- LAATZ0354718
- LAATZ0354841
- LAATZ0354884
- LAATZ0355014
- Defendant Zazzle Inc.'s Second Amended Responses and Objections to Plaintiff Nicky Laatz's Interrogatories [13-14] (dated: August 6, 2024)

- Defendant Zazzle, Inc.'s Amended Responses and Objections to Plaintiff Nicky Laatz's Interrogatories, Nos. 3 & 4 (dated: July 3, 2024)
- LAATZ0516656
- LAATZ0516658
- LAATZ0516662
- LAATZ0516675
- LAATZ0477001
- LAATZ0477015
- LAATZ0507707
- LAATZ0507723
- LAATZ0507751
- LAATZ0507773
- LAATZ0507776
- LAATZ0508351
- LAATZ0508448
- LAATZ0508449
- LAATZ0508466
- LAATZ0508534
- LAATZ0508535
- LAATZ0508537
- LAATZ0508538
- LAATZ0508539
- LAATZ0508541
- LAATZ0508542
- LAATZ0508543
- LAATZ0508544
- LAATZ0508545

# OPINIONS

**Meaning of Licenses Including Limitations on a Number of "Seats" in the Font Industry**

14.    Based on my decades of experience in the industry, standard font licensing language in the font industry defines and limits the total number of licensed users of a font and further restricts the ability to transfer, share, give away, or resell the font or font software to any party, making access limited solely to the licensed user(s). Consistent with licensing practices in the font industry, where a font license limits the total number of users (or "seats"), only those licensed users are permitted to access or use the font and font software. When a font license limits the number of seats, any additional individuals beyond those covered by the license are required to have a separate license to access or use the font and font software.

15.    As used in the font industry, the terms "one seat" or a "single seat" when used in a font license mean a single individual using the font. Often restrictions to a single seat come with restrictions on the transferability of the license to other individuals. Together, a license with both a seat restriction and a transferability restriction limits the use of the font to the individual the license is purchased for, and other individuals need to separately obtain licenses for themselves. For instance, if a user wants to use a particular font that did not come pre-installed in other software, such as Microsoft Word or Adobe Illustrator, they would first need to purchase a license to the font and font software before being able to install it on their computer where it could then be accessed and potentially used in these other software programs. Making the font available for a user to access requires that the user be covered by a license. In other words, in the font industry, a licensee typically pays for the ability to access the font and font software, not the actual use of the font or font software.

16.    I understand that on May 4, 2017, Zazzle's senior network engineer, Mohamed Alkhatib, purchased a Creative Market Standard License to Nicky Laatz's Blooming Elegant Trio digital content, including the font software. Hereinafter, I shall refer to this license as the "Blooming Elegant License." The Blooming Elegant License states "[i]nstallable items (Fonts and Add-Ons)" are limited to "***one seat per license.***"

17.    The Creative Market Standard Licenses Terms cover digital content licensed by Creative Market, not just fonts and font software. As such, the Creative Market Standard License uses the generic term "Item" to refer to the digital content actually licensed in a particular transaction. Here, the "Item" as that term is used in the Blooming Elegant License is the "Blooming Elegant Trio digital content," which includes (1) the Blooming Elegant font and font software in regular, monoline, and bold monoline format, (2) the Blooming Elegant Sans font and font software in

**6**

regular and bold format, (3) the Blooming Elegant Hand font and font software in bold and monoline format, and (4) a collection of over 120 hand doodled illustrations.[1] I will substitute the term "Blooming Elegant Trio digital content" for the term "Item" when that term is used in the Creative Market Standard License for clarity of analysis.

18.     Consistent with licensing practices in the font industry, in a single-seat non-transferrable license, the person who purchases the license or is identified at the time of purchase is the sole licensed user of the font and font software under the license. I understand that the person who purchased and who was identified at the time of purchase of the Blooming Elegant License was Mohamed Alkhatib. In my opinion, in the font industry, Mr. Alkhatib would be considered the sole licensed user under the Blooming Elegant License and would have been considered to be the only person entitled to access or use the Blooming Elegant Trio digital content, including the font software, under that specific license.[2]

19.     Consistent with licensing practices in the font industry, single-seat non-transferrable licenses can be purchased on behalf of organizations or entities. To indicate that a single-seat non-transferrable license is being purchased on behalf of an entity rather than an individual, the entity must be clearly identified at the time of purchase (such as by entering the entity's name in one of the name fields when purchasing the license) because it cannot later be transferred. I have reviewed lists of licenses and licensees to Ms. Laatz's fonts and font software sold on Creative Market, which contain a number of examples where an entity appeared in the customer field at the time of the purchase of the license.[3] But even when a single-seat non-transferrable license is purchased on behalf of an organization or entity, the licensed font and font software can still only be used by a single named individual within the organization or entity. This individual would be the only licensed user permitted to access or use the licensed font and font software.

20.     Organizations or entities also frequently purchase multi-seat licenses which permit more than one individual within the organization to access and use the licensed font and font software. In the case of such multi-seat licenses, organizations are purchasing the right for a certain number of people to access the font and font software, regardless of whether it is actually used. For example, an organization that purchases a 50-seat license is purchasing the right for up to 50 individuals in the organization to access the font and font software, even if less than 50 individuals actually use the font and font software.

---

[1] N. Laatz Depo. Ex. 33.

[2] ZAZZLE-001360.

[3] LAATZ0354495; LAATZ0354600; LAATZ0354718; LAATZ0354841; LAATZ0354884; LAATZ0355014.

**7**

21.    Font licenses often limit the number of devices the font or font software can be installed on. Licenses can also limit the extent of use of a typeface and font software across multiple machines at any given time. For instance:

- The Font Bros standard license agreement states: "The Font Software **may be installed on not more than two (2) computers** (workstation and laptop, iPad or other portable device used as a substitute for a workstation type computer for each licensed End User), provided that both computers are not used simultaneously. For the purposes of clarity, a Licensed End User may install the Font Software on their laptop, iPad or portable device and their workstation, provided both are not used at the same time."[4]
- The YouWorkForThem.com font license states: "Use of the YouWorkForThem Font Software is strictly and explicitly limited to the number of End Users declared and paid for at time of purchase. For a single EULA purchase, the Font Software **may be installed on not more than two (2) devices**, such as computer workstations, laptops, notebooks, netbooks, tablets, or smartphones. If the YouWorkForThem Font Software will be installed on more than two (2) devices, an additional license must be purchased for each additional device under the Pricing Terms defined below."[5]
- The Fontstand.com license states: "You may use the Licensed Software **on one Device at a time**."[6]
- The smallest purchasable End User License Agreement ("EULA") that was associated with every Monotype font listed for sale via Monotype owned distributors (e.g. MyFonts.com and Fonts.com) stated: "You are hereby granted a non-exclusive, non-assignable, non-transferable (except as expressly permitted herein) license to **access the Font Software (i) only in a Licensed Unit**, (ii) only for your Personal or Internal Business Use, and (iii) only subject to all of the terms and conditions of the Agreement." The EULA further stated that "Basic Licensed Unit" was defined as "**up to five (5) Workstations connected to no more than one (1) printer** with a non-volatile memory (for example, a hard drive). If you intend to use the Font Software on more equipment than permitted by a Basic Licensed Unit, you must create an Expanded Licensed Unit by obtaining from Monotype, for an additional fee, a license extension for all such equipment."[7]

22.    The Creative Market Licenses FAQ states: "Each license can be used to **install the purchased Installable Item on up to two computers** used by the end user, so long as only one computer is used at a time." (bold added). This explanation of the

---

[4] https://web.archive.org/web/20180825041215/http://www.fontbros.com/support/license-agreement

[5] https://web.archive.org/web/20170225221034/https://www.youworkforthem.com/font-license

[6] https://web.archive.org/web/20160621221315/https://fontstand.com/registration/downloadlicenseagreement

[7] https://web.archive.org/web/20170630230111/https://www.myfonts.com/viewlicense?lid=1992

Creative Market Standard License is consistent with industry standards and practices. The Blooming Elegant License was intended by Creative Market to restrict installation of the Blooming Elegant Trio digital content, including the font software, to up to two computers used by one end user, so long as only one computer is used at a time. Under industry standards, this means the licensed user typically may not install, access, or use the font or font software on more than two (2) devices under their direct control, provided the font or font software is not in simultaneous use on both devices.

23. In my decades of experience as a font designer, licensor, and licensee I have previously set up a Creative Market shop and sold licenses to fonts and font software. Part of Creative Market's business is to sell and distribute licenses for fonts on behalf of sellers it represents. Licensees can purchase licenses to fonts and font software through Creative Market, and Creative Market in turn receives a portion of the proceeds. The information that Creative Market periodically provides to a font designer about each individual or entity identified at the time of purchase is:

- The fact that a license was purchased,

- The status of the sale (e.g. if it was refunded),

- The name of the font and font software that was licensed,

- The name of the customer (licensed user) that was provided to Creative Market (sometimes identified as an organization or entity),

- The price paid to Creative Market,

- The earnings the font designer received from Creative Market for the sale,

- The taxes (if any) that are withheld from the sale, and

- The type of license that was purchased.

**Use Restrictions in Font Licenses and the Blooming Elegant License**

24. The Blooming Elegant License is "a non-exclusive, non-transferable right to use, modify and reproduce the Item worldwide, in perpetuity, as expressly permitted by the license herein and subject to the terms set forth herein."

25. Based on my decades of experience in the industry and consistent with font industry standards, a "non-transferable right to use" the Blooming Elegant Trio digital content, including the font software, means that the licensed user may not give their right to access or use the font and font software to someone else. This type of language is often used in conjunction with single-seat licenses in the font

**9**

industry, because otherwise the single seat could be freely transferred between many people, in effect negating the single-seat restriction. The combination of a license being single-seat with non-transferability serves together to make sure that each person with access to the font or font software has their own license.

26.    Paragraph 1 of the Blooming Elegant License warns about using the Blooming Elegant Trio digital content, including the font software, in a manner "that is directly competitive with the original [Blooming Elegant Trio digital content, including the font software] you purchased."

27.    In the font industry, the purpose of a font or font software is to allow a user to create stylized text in any application they use for personal or commercial uses to generate designs or stylize layouts containing the font. Consistent with that industry usage, the Blooming Elegant License permitted individual licensed users to access and use the Blooming Elegant Trio digital content, including the font software, to create designs containing the Blooming Elegant Trio of fonts. Zazzle's design tools permitted individuals to access and use the Blooming Elegant Trio digital content, including the font software, to generate designs and stylize layouts that include text depicted in any of the Blooming Elegant Trio of typefaces without purchasing a license to the Blooming Elegant Trio digital content, including the font software. Zazzle's design tools directly competed with the Blooming Elegant Trio digital content, including the font software. Indeed, as long as the Blooming Elegant Trio of typefaces were available for access and use in Zazzle's design tools, there was no need for any designer using Zazzle to buy a license to the Blooming Elegant Trio digital content, including the font software.

28.    Paragraph 1 of the Blooming Elegant License also states that, for Installable Items such as fonts, any "End Product must be a unique implementation of the Item. For example, you may purchase a font and use it to make unique word art ... ."

29.    Under font industry standards, this means that a user with a license could create finalized designs with rasterized images containing the fonts, and then distribute those rasterized images and/or products incorporating such images. But the user could not create something that allowed the text displayed in the fonts to be changed by an unlicensed end user (i.e., a customer of the licensee).

30.    Paragraph 2 of the Blooming Elegant License reiterated that "Installable Items may be used ... on a one seat per license basis."

31.    Paragraph 4 of the Blooming Elegant License states: "You may modify or manipulate the [Blooming Elegant Trio digital content, including the font software], or incorporate it into other content and make a derivative work from it. As between you and the Shop Owner, the Shop Owner will retain all right, title, and ownership of the [Blooming Elegant Trio digital content, including the font software], and the resulting derivative work is subject to the terms of this Standard License."

**10**

32.     Under industry standards, any usage that displays the stylized text output derived from the Blooming Elegant Trio digital content, including the font software, is considered a "derivative work" of the font software.

33.     Additionally, under font industry standards and practices, a "derivative work" of font software includes use of the font or font software in any editable template or design tool that allows the user to access or use the font or font software to create or modify stylized text or generate designs. For instance, an editable template for a wedding invitation that permits a user of the template to modify and depict text in a given font is considered, within the font industry, to be a derivative work of that font software. Similarly, a design tool that permits a user of the design tool to create and modify text within a design would be considered a "derivative work" of the font and font software.

34.     I understand from the deposition of Zazzle's Vice President of Engineering, Jason Li, that Zazzle's design tool operates in the following manner:

● When a user of Zazzle's design tool inputs text into a design using a particular font, the design tool sends instructions and information to Zazzle's design servers;
● Zazzle's design servers then send instructions and information to Zazzle's proprietary software called "Zazzle Internal Graphics";
● Zazzle Internal Graphics then sends instructions and information to an API called "Microsoft Direct Write";
● Microsoft Direct Write then calls on the font software to generate "vector paths," which are outlines depicting the text input by the user of the design tool in the font selected by the user of the design tool; and
● Zazzle's servers then deliver these "vector paths" to the computer, tablet, or phone of the user of the design tool, which then displays the user's text in the selected font.[8]

35.     I understand from Mr. Li's deposition that the above described process occurs every time a user enters new text or alters existing text within a design. Within the font industry, each and every such "vector path" file that is sent to a user's computer is considered a derivative work[9] of the font and font software being used to render the text in the design.

36.     I understand from Mr. Li's deposition that prior to November of 2018 for the web-based version of Zazzle's design tool and prior to February of 2021 for the mobile

---

[8] Deposition of Jason Li at 138:9-139:15.

[9] I understand the Copyright Act to define a "derivative work" to be "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted."

app-based version of Zazzle's design tool, the design tool operated in a similar fashion, but rather than sending "vector paths" to the computer, tablet, or phone of the user of the design tool, Zazzle's servers created and delivered rasterized images of the user's text depicted in the selected font.[10] Within the font industry, generating rasterized images of text being dynamically created by a user depicted in the selected font would be considered a derivative work of the font and font software being used to render the text in the design. The intervening system serves to recast the original work but provide the same functionality to the user.

37.    Paragraph 5 of the Blooming Elegant License states that the licensee "may not ... share, transfer, or otherwise redistribute the [Blooming Elegant Trio digital content, including the font software]," for example "in a tool or template" or "not incorporated into an End Product." This restriction is without regard to what is charged, and specifies "not even for free."

38.    It is my understanding that Zazzle admitted to placing the Blooming Elegant Trio digital content, including the font software, on over a hundred of its servers, as well as the work computers of multiple Zazzle employees other than Mr. Alkhatib.[11] Thus, based on my experience in the font industry, my opinion is that Zazzle shared, transferred, and redistributed the Blooming Elegant Trio digital content, including the font software, (as well as associated derivative works).

39.    Based on my experience in the font industry and review of the Blooming Elegant License in light of industry standards, Zazzle's incorporation of the Blooming Elegant Trio digital content, including the font software, into Zazzle's design tools is expressly forbidden by the Blooming Elegant License. It is my understanding that Zazzle's design tools gave users the option of selecting the Blooming Elegant Trio of fonts between October 12, 2017 and at least August 3, 2022, and rendered certain designs in the design tools in the Blooming Elegant Trio of fonts through at least March 14, 2023.[12] Zazzle "share[d], transfer[d], or otherwise redistribute[d] the [Blooming Elegant Trio digital content, including the font software,] ... in a tool or template ... not incorporated into an End Product ... for free."

40.    As the terms of the Blooming Elegant License are understood in the font industry, permitting users to access or use the Blooming Elegant Trio digital content, including the font software, through or by virtue of templates created by other Zazzle users that include modifiable text depicted in any of the Blooming Elegant Trio of fonts constitutes the sort of sharing that is prohibited by the Blooming Elegant License. It is my understanding that Zazzle's website permitted users to

---

[10] Deposition of Jason Li at 142:15-144:20.

[11] Defendant Zazzle Inc.'s Second Amended Responses and Objections to Plaintiff Nicky Laatz's Interrogatories [13-14]; Deposition Transcript of M. Alkhatib, Ex. 192.

[12] Defendant Zazzle, Inc.'s Amended Responses and Objections to Plaintiff Nicky Laatz's Interrogatories, Nos. 3 & 4 (dated July 3, 2024).

**12**

establish "shops" where they could create and publish designs for modifiable templates that included modifiable text depicted in any of the Blooming Elegant Trio of fonts, such as wedding invitations or business cards, which other users could then modify and use to order products through Zazzle. Thus, Zazzle shared and redistributed (as those terms are used in the industry) the Blooming Elegant Trio digital content, including the font software, (as well as associated derivative works), with its users during this time period.

41.    Paragraph 6 of the Blooming Elegant License states that the licensee "may not make the [Blooming Elegant Trio digital content, including the font software], available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the [Blooming Elegant Trio digital content, including the font software] … ."

42.    The terms "digital asset management system, shared drive, or the like," as understood and used in the font industry, include servers, as servers allow for multiple users to access and use the same digital content via multiple separate computerized devices. I understand that Zazzle placed the Blooming Elegant Trio digital content, including the font software (as well as associated derivative works) on over a hundred of its servers, which allowed millions or more users to simultaneously access and use the Blooming Elegant Trio digital content, including the font software, for the purpose of sharing the Blooming Elegant Trio digital content, including the font software, (as well as associated derivative works) with its users via Zazzle's design tools. Even if the Zazzle design tools were not a forbidden "tool" under the Blooming Elegant License, Zazzle still made the Blooming Elegant Trio digital content, including the font software, available on a digital asset management system, shared drive, or the like for the purposes of sharing or transferring the Blooming Elegant Trio digital content, including the font software, as those terms are understood in the font industry.

43.    Paragraph 8 of the Blooming Elegant License states, in part, that the licensee "may not publicly display the [Blooming Elegant Trio digital content, including the font software]: … in any digital format without imposing technical or written instructions to prevent the unauthorized use of the [Blooming Elegant Trio digital content, including the font software], by third parties."

44.    Zazzle's design tools could be used by unauthorized users to create graphics in multiple ways, including outside the Zazzle platform. First, a user can download a copy of the design directly from Zazzle's design tools. This capability is now limited to only users who are logged in, but I understand that for some period of time in the past, including in 2021, is was also permitted by users who were not logged in.[13] Second, a user can take a screenshot of their design at an arbitrary resolution as it appears in Zazzle's design tools on the user's computer or mobile device, and then

---

[13] *E.g.* LAATZ0508539

use this screenshot elsewhere. Zazzle's website and mobile app impose no technical restrictions that prevent, nor any written instructions that prohibit, unlicensed users of Zazzle's website from accessing the Blooming Elegant Trio digital content, including the font software, therein.

45. Zazzle's Senior Director of Product, Katrina Liu, confirmed that there are no technical restrictions that prevent anyone from accessing Zazzle's design tools, using the design tools and any fonts to which access is provided therein to create a design, taking a screenshot of the design, and then using that screenshot elsewhere.[14] Further, nothing in Zazzle's User Agreement, either in its current version or in the version that existed as of October 2017 when Zazzle first made the Blooming Elegant Trio of fonts available in its design tool, expressly prohibits anyone from using Zazzle's design tools in this manner.[15]

46. Users of Zazzle's design tools can use the designs they download and/or capture from Zazzle's design tools for virtually any purpose, without limitation on how the designs they create may be used. Such uses may include:

- Producing physical products for resale on any and all platforms (e.g., CaféPress.com, RedBubble.com, Printful.com, Society6.com, etc.);
- Producing digital products for resale on any and all platforms (e.g., Creative Market.com, Elements.Envato.com, Etsy.com, etc.);
- Producing digital graphics for marketing purposes including website graphics, e-newsletter graphics, online advertising banner graphics, social media graphics, YouTube thumbnail graphics; and/or
- Producing graphic designs and design elements as a hired freelance graphic designer on behalf of third parties via websites such as Fiverr.com, Upwork.com, etc.

47. I understand from the expert report of Daniel Garrie and the testimony of Jason Li cited therein that these steps could be accomplished while only creating what Zazzle referred to as a "pending" design, because all of the designing occurs before the pending design is "finished" or "finalized." It is my opinion, based on my experience in the font industry, that a user who used Zazzle's design tools to create a stylized graphic for the uses described above would likely complete and capture their design before taking the steps that would cause the design to become what Zazzle refers to as a "finished" or "finalized" design. More specifically, in my opinion a user using the Zazzle design tools for graphic design purposes would not add their design to a shopping cart or publish it for others because that is inconsistent with their use case. Accordingly, the number of total users Zazzle allowed to access the

---

[14] K. Liu Depo. Tr. at 191:12-196:25.

[15] https://www.zazzle.com/mk/policy/user_agreement;
https://web.archive.org/web/20171012135840/https://www.zazzle.com/mk/policy/user_agreement

Zazzle design tool containing the Blooming Elegant Trio is likely substantially understated by focusing on only "finished" or "finalized" designs.

48.    Paragraph 8 of the Blooming Elegant License also states that the licensee must "take all commercially reasonable steps to prevent third parties from **accessing** and/or duplicating the [Blooming Elegant Trio digital content, including the font software,]." (bold added).

49.    Under industry standards and practices, to comply with this term, Zazzle would need to impose some type of verification system to ensure that each user of the template or design tools that create text using the licensed font software has purchased their own license to the font software. License verification systems like this are common practice in the industry. For instance, Adobe requires a user to click a check box confirming they have the rights and licenses to use a piece of font software before uploading that font software to the Adobe Creative Cloud.[16] The online template design company Templett requires a user to click a check box confirming they have the rights to use a piece of font software before uploading the font software to Templett.[17] Similarly, the online design tool Canva requires a user to confirm they own or have the right to use a piece of font software for any intended purposes before uploading font software to Canva,[18] as shown in figure 1 below.



*Figure 1 – Canva Font Upload License Confirmation*

[16] https://helpx.adobe.com/creative-cloud/help/upload-your-fonts-to-creative-cloud.html
[17] https://help.templett.com/hc/en-us/articles/360021587492-Uploading-Fonts-to-Templett
[18] https://www.canva.com/help/upload-fonts/

50. Zazzle did not even verify that "users" were actual people, as I understand Zazzle has claimed that bots were also able to access its design tools and the fonts offered therein, let alone whether they personally held licenses to the Blooming Elegant Trio or any of the other fonts Zazzle integrated into the Zazzle design tools.[19]

51. Paragraph 11 of the Blooming Elegant License states, in part, that the licensee "[u]pon the Shop Owner's request ... shall immediately remove the Item from any unauthorized location or use."

52. Under industry standards, licensors of fonts and font software expect that licensees are bound by license terms like this and will comply with those requests by immediately removing the licensed font and font software from unauthorized locations. I understand that Nicky Laatz first contacted Zazzle regarding its use of the Blooming Elegant Trio digital content, including the font software, in August of 2020.[20] I further understand that Nicky Laatz informed Zazzle that the Blooming Elegant License does not cover Zazzle's use of the Blooming Elegant Trio digital content, including the font software, on January 22, 2021.[21] It is also my understanding that Nicky Laatz's attorneys sent a formal cease and desist letter to Zazzle demanding the removal of the Blooming Elegant Trio digital content, including the font software, from Zazzle's website on September 30, 2021.[22] I also understand that Zazzle did not fully remove access to the Blooming Elegant Trio digital content, including the font software, through its design tools until March 15, 2023.[23] In my opinion, based on my experience in the font industry, this is a separate violation of the Blooming Elegant License from the underlying terms violated by Zazzle.

**Non-Single-Seat Licenses Sold by Nicky Laatz**

53. Apart from the single-seat licenses that Nicky Laatz has sold both through her personal website and through third-party marketplaces such as Creative Market, Nicky Laatz has granted and executed non-single-seat licenses to various licensees. However, after reviewing the terms of a selection of these licenses, most of these licenses did not involve the Blooming Elegant Trio, and none of the non-single-seat licenses that Nicky Laatz has granted would have covered Zazzle's use of the Blooming Elegant Trio digital content, including the font software, and there

---

[19] J. Li Depo Tr. at 273:22-274:13.

[20] August 26, 2020 email from J. Laatz to copyright@zazzle.com attached to Declaration of J. Laatz in Support of Refiled Motion for Partial Summary Judgment.

[21] January 22, 2021 email from J. Laatz to L. Larson attached to Declaration of J. Laatz in Support of Refiled Motion for Partial Summary Judgment.

[22] September 30, 2021 Letter from P. Ryan & S. Steinberg to L. Larson attached to Declaration of S. Steinberg in Support of Refiled Motion for Partial Summary Judgment.

[23] Defendant Zazzle, Inc.'s Amended Responses and Objections to Plaintiff Nicky Laatz's Interrogatories, No. 4 (dated July 3, 2024).

are material distinctions between each of these other licenses and Zazzle's actual use.

54.   For instance, Nicky Laatz granted a Corporate License to Vayner Media LLC on behalf of its client Diageo Americas, Inc., who is the licensee of record, for use of the font and font software titled "Hello Sunshine Font Family."[24] The license that was granted contained the following limitations which in the font industry would have been understood to expressly prohibit using the licensed font and font software in the same manner that Zazzle used the Blooming Elegant Trio digital content, including the font software,:

- Font software and Derivative Works may not be resold, distributed, lent, shared or given away. Any and all Derivative Works remain the property of Nicky Laatz;
- Use of the font software on a server or application where the end user may generate derivative products is expressly prohibited;
- Embedded use of the font software in an application on any platform or device is expressly prohibited; and
- The license permitted unlimited seats solely within the licensee's organization, meaning only individuals employed or hired by the licensee could use the font and font software.

55.   As another example, Nicky Laatz granted a Corporate License to FontTypes on behalf of its client Great Wolf Resorts, who is the licensee of record, for the font and font software titled "Summer Loving Font Collection."[25] The license that was granted contained the following limitations which in the font industry would have been understood to expressly prohibit using the licensed font and font software in the same manner that Zazzle used the Blooming Elegant Trio digital content, including the font software,:

- Font software and Derivative Works may not be resold, distributed, lent, shared or given away. Any and all Derivative Works remain the property of Nicky Laatz;
- Use of the font software on a server or application where the end user may generate derivative products is expressly prohibited;
- Embedded use of the font software in an application on any platform or device is expressly prohibited; and
- The license permitted unlimited seats solely within the licensee's organization, meaning only individuals employed or hired by the licensee could use the font and font software.

56.   As another example, Nicky Laatz granted a Server License to Spoken Bride LLC, who is the licensee of record, for use of the font and font software titled "The Serenity

---

[24] LAATZ0488435.

[25] LAATZ0451880.

**17**

Collection."[26] The license granted customization of internally designed (not for profit) products via a single application via a single domain and contained the following limitations which in the font industry would have been understood to expressly prohibit using the licensed font and font software in the same manner that Zazzle used the Blooming Elegant Trio digital content, including the font software,:

- The license permitted the installation and embedding of the font software on a public facing web app or app server for the purpose of allowing an end user to create unlimited **not for profit** printable products, such as T-Shirts, mugs and greeting cards;
- The license permitted the licensee to create designs internally that could then be offered as customized products for sale within fixed templates that a site visitor could customize and order, but the license does not permit a visitor to the licensee's  website to create their own store or modify an existing design by adding or removing text fields or elements;
- Font software and Derivative Works may not be resold, distributed, lent, shared or given away. Any and all Derivative Works remain the property of Nicky Laatz; and
- The license permitted up to 20 seats solely within the licensee's organization, meaning only individuals employed by the licensee could use the font and font software.

57.   As another example, Nicky Laatz granted a Corporate License to L Brands, Inc. (DBA Victoria's Secret), who is the licensee of record, for use of the font and font software titled "Hello Sunshine Font Family."[27] The license that was granted contained the following limitations which in the font industry would have been understood to expressly prohibit using the licensed font and font software in the same manner that Zazzle used the Blooming Elegant Trio digital content, including the font software,:

- Font software and Derivative Works may not be resold, distributed, lent, shared or given away. Any and all Derivative Works remain the property of Nicky Laatz;
- Use of the font software on a server or application where the end user may generate derivative products is expressly prohibited;
- Embedded use of the font software in an application on any platform or device is expressly prohibited; and
- The license permitted unlimited seats solely within the licensee's organization, meaning only individuals employed or hired by the licensee could use the font and font software.

---

[26] LAATZ007978 (J. Laatz Depo. Ex. 157).

[27] LAATZ0446293 (J. Laatz Depo. Ex. 159).

58.    As another example, Nicky Laatz granted a "Product Creation License" to Minted, who is the licensee of record, for use of the font and font software for "Blooming Elegant."[28] The license that was granted contained the following limitations which in the font industry would have been understood to prohibit using the licensed font and font software in the same manner that Zazzle used the Blooming Elegant Trio digital content, including the font software:

- The license permitted installation and use of the Blooming Elegant font software on an "internal business server for [Minted's] staff to access for them to create designs using Blooming Elegant," and "allow[ed] them to place the designs that they[] made internally on their website so that their customers can go to one of the designs and change the text on one of those designs to make them say [] whatever they would like."[29] However, this only "allow[ed] for users to type with the font in an existing static template online,"[30] which would not include end users having complete ability to modify or customize and create designs and new templates as in the Zazzle design tools.

- The license did not grant end user commercial rights to designers or users of Minted.

- Minted required every designer who produced designs for and submitted them to Minted through its competitions to buy licenses from Ms. Laatz for any of her fonts, such as Blooming Elegant, that they wanted to potentially use in any design for Minted.[31]

**Comparison Chart of License Terms Required for Zazzle's Use to the Blooming Elegant License.**

59.    Attached to this report as **Appendix A** is a chart comparing (1) what license terms would be required for Zazzle's actual use of the Blooming Elegant Trio of fonts and font software, (2) what license terms were contained in the actual Blooming Elegant License, (3) what license terms were contained in other non-single-seat licenses entered into by Nicky Laatz for other fonts.

---

[28] LAATZ0506926 (N. Laatz Depo Ex. 127).

[29] N. Laatz Depo. Tr. at 126:22-127:20.

[30] N. Laatz Depo. Tr. at 135:18-136:4.

[31] J. Laatz Depo. Tr. at 303:10-308:18; LAATZ0516656; LAATZ0516658; LAATZ0516662; LAATZ0516675.

**19**

**Zazzle's Font Licenses for the Blooming Elegant Trio and Replacement Fonts**

60. I've been asked to review and identify the key differences in licensing terms granted to Zazzle, Inc. between the Blooming Elegant License and the font License Agreement between inpixy s.r.o. and Zazzle, Inc.

61. The inpixy s.r.o. font License Agreement allows the following additional grants of rights not granted under the Blooming Elegant License:

- Zazzle is granted an unlimited, unrestricted, and irrevocable license for any and all uses or purposes in unlimited media (including but not limited to physical and digital media):

  - Section 2(b)(i): "Designer hereby grants to Licensee the following rights and licenses: A fully paid up, unlimited, worldwide (including digital spaces such as a metaverse) unrestricted, non-exclusive, irrevocable and perpetual license under the IPR that includes but is not limited to the right(s) to reproduce, distribute, embed (e.g.,in a desktop or mobile website, or app, for non-static rendering of the Fonts), publicly display and modify, with the right to sublicense these rights through multiple levels of sublicensees, the Licensed Property and related Fonts for any and all uses or purposes, including but not limited to the creation of physical products, packaging, digital products or publications, social media, marketing, promotions, advertising, broadcasts and streaming, mobile apps, website software, desktop applications, and physical or digital print-on-demand and create-on-demand products, whether existing now or in the future; provided that Licensee does not have the right to sell copies of the Licensed Property or its derivative works to third parties (this limitation does not apply to the use of the Fonts)."

- The fonts or font software may be used in on-demand applications, including but not limited to as part of Licensee Zazzle's design tool that allows for customization of unlimited merchandise by its users:

  - Section 2(b)(iv): "Designer hereby grants to Licensee the following rights and licenses: The Licensed Property may be used in on-demand applications, including but not limited to as part of Licensee's design tool that allows for customization of merchandise by users of the Licensed Property and associated Fonts, either directly or through the Licensee's design tool ('Users')."

**20**

- Zazzle may sublicense the font rights through multiple sublevels of sublicensees in an unlimited manner for any and all uses or purposes:

  - Section 2(b)(i): "Designer hereby grants to Licensee the following rights and licenses: A fully paid up, unlimited, worldwide (including digital spaces such as a metaverse) unrestricted, non-exclusive, irrevocable and perpetual license under the IPR that includes but is not limited to the right(s) to reproduce, distribute, embed (e.g.,in a desktop or mobile website, or app, for non-static rendering of the Fonts), publicly display and modify, with the right to sublicense these rights through multiple levels of sublicensees, the Licensed Property and related Fonts for any and all uses or purposes and later in the inpixy s.r.o. font License Agreement Section 2(b)(iii) Designer hereby grants to Licensee the following rights and licenses: Licensee may sublicense these rights to the Licensed Property through multiple levels of sublicensees for the Licensed Use."

- Zazzle may modify the fonts or font software as it desires:

  - Section 2(b)(ii): "Designer hereby grants to Licensee the following rights and licenses: An unlimited, worldwide (including digital spaces such as a metaverse), unrestricted, non- exclusive, irrevocable and perpetual license under the IPR that includes but is not limited to the right(s) to reproduce, distribute, publicly display and modify the Licensed Property and Fonts for any and all uses ('Licensed Use')"

- Zazzle may distribute and make available the fonts or font software on an unlimited number of computers, seats, pageviews, impressions, servers, server-based applications, mobile devices, other output devices now or in the future that are used, owned or operated on behalf of Zazzle:

  - Section 2(b)(ii): "Designer hereby grants to Licensee the following rights and licenses: An unlimited, worldwide (including digital spaces such as a metaverse), unrestricted, non- exclusive, irrevocable and perpetual license under the IPR that includes but is not limited to the right(s) to reproduce, distribute, publicly display and modify the Licensed Property and Fonts for any and all uses ("Licensed Use") on an unlimited number of computers, seats, pageviews, impressions, servers, server-based applications, mobile devices, other output devices, or any other devices or metrics now existing or arising in the future that are

**21**

used, owned or operated on behalf of Licensee."

- Unrestricted and irrevocable use to use and display trademarks associated with the fonts or font software:

  - Section 2(b)(v): "Designer hereby grants to Licensee the following rights and licenses: A fully paid up, unlimited, worldwide (including digital spaces such as a metaverse) unrestricted, non-exclusive, irrevocable and perpetual license under the trademarks associated with the Fonts ("Trademarks") to use and display such Trademarks with the associated Fonts in connection with the rights granted above."

- Zazzle and any and all users of its website may claim ownership of the copyright and trademark in any artwork or other works created using the fonts or font software:

  - Section 2(b)(iv): "Designer hereby grants to Licensee the following rights and licenses: For clarification, Licensee and the Users may claim ownership of the copyright and trademark in any artwork or other works created using the Licensed Property and associated Fonts; provided that such rights shall not include ownership of the copyright or trademarks in the Licensed Property."

- Zazzle may request the creation of three (3) Custom Fonts by inpixy s.r.o., to be exclusively licensed to Zazzle:

  - Section 1, Definitions: "'Custom Fonts' means those Fonts that are: (i) created by Designer specifically for and according to the requests of Licensee; and (ii) are not publicly made available by Designer. The software (and related data and documentation) which generate the Custom Fonts shall be deemed Licensed Property for all purposes, except the license grant under Section 2 shall be exclusive."

  - Exhibit A, Fonts: "Maximum Number: The Maximum Number is ninety-three (93) Fonts, and shall consist of the following:

    - Ninety(90) Fonts that are selected by Licensee as ofthe Effective Date hereof, as listed below*;

    - Three (3) Custom Fonts; and

    - Zero (0) Later-Designated Fonts."

**22**

**Copyright Registration of Font Software**

62.    Font software computer code lists coordinates which comprise the letterform shapes and are listed in a series of X/Y positions in a particular order. The font software computer code that determines the distance on all sides of the letterform is referred to as metric information which is important to the way the font software renders the output when typed. There are also areas within the font software computer code that define how the font software output will function when typed and areas which contain information including the name of the font, its creator, the date of creation, etc.

63.    Since 1998, I have personally filed and successfully obtained twenty-seven (27) copyright registrations for font software from the United States Copyright Office. For each of these filings I authored and created the font software computer code in either the Fontographer or FontLab Studio font editor applications.

64.    From searching the U.S. Copyright Office records and my own font licensing activities, I estimate that there are approximately 3,400 copyright registrations for font software that have been issued by the United States Copyright Office since it began offering font copyright registrations. In many cases, a single copyright registration for font software is not limited to a single font style, instead, each font software copyright registration can be associated with an entire font family with many font styles or a large font collection released together which can include hundreds of font styles per font software copyright registration. Accordingly, I estimate that the font software for implementing approximately 12,600 individual font styles have received copyright protection from the United States Copyright Office.

65.    The United States Copyright Office has continued to accept and successfully register font software copyright registrations through the present. From searching the U.S. Copyright Office records and my own font licensing activities, I estimate that  there are 36 font software copyright registrations (for approximately 56 individual font styles) that have been issued by the United States Copyright Office from 2020 to date. Notably, many of these font software copyright registrations indicate that the font software was created with the use of font editing software such as FontLab and/or Fontographer.

66.    To estimate the total number of copyright registrations for font software that have been issued by the United States Copyright Office, I performed advanced Boolean searches via the Official Public Catalog ( https://cocatalog.loc.gov/). I performed the search requests by searching for the keyword 'font' and any one or more of the following keywords 'software', 'type', 'opentype', 'typeface', 'program', 'computer' and 'data' which resulted in 3,663 search results. I reviewed and tallied only those

**23**

results with a TX prefix in their copyright number that I determined to be successfully issued copyright registrations for font software.

## Compensation

67.    I am charging Plaintiff Nicky Laatz $650 per hour for my time working on this matter. No part of my compensation is based upon the outcome of this matter.

_____

Stuart Sandler

_____September 24, 2024_____

Date

**APPENDIX A**

| License Term | Requirement for Zazzle Design Tools | Blooming Elegant Trio License | Spoken Bride LLC License | Vayner Media LLC (Diageo Americas, Inc) License | FontTypes (Great Wolf Resorts) & L Brands, Inc. (Victoria's Secret) Licenses |
|---|---|---|---|---|---|
| Number of Seats | **Unlimited** Needed to allow all users, designers, and customers to access and use the font through Zazzle's platform. | **One Seat** Limited to a single user (the licensee). | **Up to 20 Seats within Organization** Permitted up to 20 seats solely within the licensee's organization. | **Unlimited within Organization** Allowed unlimited seats but only within the licensee's organization. | **Unlimited within Organization** Allowed unlimited seats but only within the licensee's organization. |
| Transferability | **Unlimited Transferability** Needed to share, transfer, or redistribute the font software to all users accessing Zazzle's platform. | **Non-Transferable** Prohibited sharing, transferring, or redistributing the font software to any third parties. | **Non-Transferable** Font software and derivative works could not be resold, distributed, lent, shared, or given away. | **Non-Transferable** Font software and derivative works could not be resold, distributed, lent, shared, or given away. | **Non-Transferable** Font software and derivative works could not be resold, distributed, lent, shared, or given away. |
| Derivative Works | **Fully Permitted** Needed authorization to create derivative works, including designs and templates incorporating the font, allowing end-users to modify text using the font. | **Restricted** Allowed creation of unique end products by the licensee only. Creation of tools or templates for third-party use was prohibited. | **Restricted** Derivative works could not be resold or shared; any derivative works remained the property of Nicky Laatz. | **Restricted** Derivative works could not be resold or shared; any derivative works remained the property of Nicky Laatz. | **Restricted** Derivative works could not be resold or shared; any derivative works remained the property of Nicky Laatz. |
| Use in Tools/Templates | **Permitted** Needed rights to embed the font in online design tools and templates that users can interact with and customize on Zazzle's platform. | **Prohibited** Explicitly forbade incorporating the font into tools or templates intended for sharing or distribution, even if offered for free. | **Limited** Use of the font software on a server or single application on a single domain where the end-user may customize internally designed (not for profit) products was granted. | **Prohibited** Use of the font software on a server or application where the end-user may generate derivative products was expressly prohibited. | **Prohibited** Use of the font software on a server or application where the end-user may generate derivative products was expressly prohibited. |
| Authorization to Compete | **Authorized** Needed permission to use the font in a manner that could directly compete with the original font product, including offering similar design capabilities to users. | **Not Authorized** Prohibited use that directly competed with the original item purchased, such as offering it in a design tool accessible by others. | **Not Authorized** Prohibited use that directly competed with the original item purchased, such as offering it in a design tool accessible by others. | **Not Authorized** Prohibited use that directly competed with the original item purchased, such as offering it in a design tool accessible by others. | **Not Authorized** Prohibited use that directly competed with the original item purchased, such as offering it in a design tool accessible by others. |
| Server Use and Distribution | **Permitted** Needed license to install and use the font on multiple servers, allowing for server-based applications and distribution to end-users across the platform. | **Not Permitted** Barred making the font available on a digital asset management system, shared drive, or similar, for sharing or transferring it to third parties. | **Limited** Use of the font software on a server or single application on a single domain where the end-user may customize internally designed (not for profit) products was granted. | **Not Permitted** Use of the font software on a server where end-users can generate derivative products was expressly prohibited. | **Not Permitted** Same restrictions as Vayner Media LLC license. |

**APPENDIX A**

| License Term | Requirement for Zazzle Design Tools | Blooming Elegant Trio License | Spoken Bride LLC License | Vayner Media LLC (Diageo Americas, Inc) License | FontTypes (Great Wolf Resorts) & L Brands, Inc. (Victoria's Secret) Licenses |
|---|---|---|---|---|---|
| Sublicensing Rights | **Granted** Needed ability to sublicense the font rights to users and designers on Zazzle's platform, allowing them to create and modify designs using the font. | **Prohibited** No rights to sublicense or distribute the font software to any other party. | **Prohibited** No sublicensing rights granted; use was limited to the licensee's organization. | **Prohibited** No sublicensing rights granted; use was limited to the licensee's organization. | **Prohibited** Same restrictions as Vayner Media LLC license. |
| Public Display Rights | **Unrestricted** Needed permission to publicly display the font in any digital format without technical restrictions or instructions to prevent unauthorized use by third parties. | **Restricted** Required to prevent unauthorized use by third parties, including imposing technical or written restrictions against such use. | **Limited** Licensee had limited use that allowed customers to display unlimited personal (not for profit) printable products. No commercial uses were granted. | **Restricted** Licensee had to prevent third parties from accessing or duplicating the font software | **Restricted** Same restrictions as Vayner Media LLC license. |
| Embedding Rights | **Permitted** Needed rights to embed the font software in applications, websites, or any digital platforms where end-users can interact with the font directly. | **Not Permitted** Embedding in any application or platform accessible by third parties was prohibited. | **Limited** Embedded use of the font software in a single titled application on a single domain was granted for unlimited (not for profit) product uses. | **Not Permitted** Embedded use of the font software in an application on any platform or device was expressly prohibited. | **Not Permitted** Same restrictions as Vayner Media LLC license. |
| Modification Rights | **Extensive** Needed ability to modify the font software as needed for integration into Zazzle's design tools and platform functionality. | **Limited** Modification allowed only for creating unique end products; modifications resulting in tools or applications for third-party use were prohibited. | **Limited** Modifications could not result in derivative works that are shared or distributed; all derivative works remained the property of Nicky Laatz. | **Limited** Modifications could not result in derivative works that are shared or distributed; all derivative works remained the property of Nicky Laatz. | **Limited** Same restrictions as Vayner Media LLC license. |
| Duration and Scope | **Unlimited and Irrevocable** Needed perpetual license without limitations on media, geography, or purpose, including commercial use by end-users. | **Limited** Perpetual but limited to personal or internal business use by the licensee, not extending rights to third parties or external commercial use by others. | **Limited** Use was limited to the licensee's organization and prohibited external distribution or commercial use by third parties. | **Limited** Use was limited to the licensee's organization and prohibited external distribution or commercial use by third parties. | **Limited** Same restrictions as Vayner Media LLC license. |
| Technical Implementation Rights | **Granted** Needed permission for technical implementation, including server-side rendering and delivery to user devices through APIs and software layers. | **Restricted** Did not permit installation or use in a manner that made the font accessible to unlicensed users or on servers for distribution purposes. | **Granted** Use on servers or applications accessible by end-users was granted. | **Restricted** Use on servers or applications accessible by end-users was prohibited. | **Restricted** Same restrictions as Vayner Media LLC license. |

**APPENDIX A**

| License Term | Requirement for Zazzle Design Tools | Blooming Elegant Trio License | Spoken Bride LLC License | Vayner Media LLC (Diageo Americas, Inc) License | FontTypes (Great Wolf Resorts) & L Brands, Inc. (Victoria's Secret) Licenses |
|---|---|---|---|---|---|
| **Use in On-Demand Applications** | **Permitted** Needed rights to use the font in on-demand customization tools where users can create and order personalized products featuring the font. | **Prohibited** Did not allow use in on-demand applications where the font could be used by third parties to generate customized products. | **Prohibited** Use in on-demand applications where end-users generate derivative products was expressly prohibited. | **Prohibited** Use in on-demand applications where end-users generate derivative products was expressly prohibited. | **Prohibited** Same restrictions as Vayner Media LLC license. |
| **Rights to Create Custom Fonts** | **Needed** Ability to request and use custom fonts derived from the original font to suit platform needs. | **Not Included** No rights granted to create custom fonts or request modifications beyond the standard license terms. | **Not Included** No provision for creating custom fonts or modifications beyond permitted derivative works. | **Not Included** No provision for creating custom fonts or modifications beyond permitted derivative works. | **Not Included** Same restrictions as Vayner Media LLC license. |
| **Trademark Use** | **Permitted** Needed unrestricted use of trademarks associated with the font for platform operations and user interactions. | **Restricted** No rights to use trademarks associated with the font beyond necessary for the licensee's own use. | **Restricted** No explicit rights to use trademarks beyond rights granted to licensee's organization. | **Restricted** No explicit rights to use trademarks beyond internal use within the licensee's organization. | **Restricted** Same restrictions as Vayner Media LLC license. |
| **Third-Party Ownership Claims** | **Allowed** Needed users and designers to claim ownership of designs and artworks they create using the font on Zazzle's platform. | **Not Allowed** All rights, title, and ownership of the font and derivative works remained with Nicky Laatz, preventing third-party ownership claims. | **Not Allowed** Derivative works remained the property of Nicky Laatz; third-party ownership claims were prohibited. | **Not Allowed** Derivative works remained the property of Nicky Laatz; third-party ownership claims were prohibited. | **Not Allowed** Same restrictions as Vayner Media LLC license. |

**27**