# EXHIBIT 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Case No. 5:22-cv-04844-BLF-VKD

- - - - - - - - - - - - - - - - - - - x

NICKY LAATZ,

                    Plaintiff,

      - against -

ZAZZLE INC. and MOHAMED ALKHATIB,

                    Defendants.

- - - - - - - - - - - - - - - - - - - x

                    November 14, 2024

                    9:23 a.m.


        VIDEO RECORDED DEPOSITION of ELLEN

SHAPIRO, an Expert Witness for the Defendants

herein, taken by the Plaintiffs, held at the

offices of Veritext Legal Solutions, Seven Times

Square, New York, New York, before Sara K.

Killian, a Registered Professional Reporter,

Realtime Certified Reporter and Notary Public.

Page 1

A P P E A R A N C E S :


BARTKO LLP

Attorneys for Plaintiff

1100 Sansome Street

San Franscisco, California   94111

BY: STEPHEN C. STEINBERG, ESQ.


QUINN EMANUEL URQUHART & SULLIVAN, LLP

Attorneys for Defendants

865 South Figueroa, 10th Floor

Los Angeles, California   90017

BY: DANIEL POSNER, ESQ.

     JUSTINE YOUNG, ESQ.


ALSO PRESENT:

     CHRIS MANCINI, Videographer

Page 2

STIPULATIONS


IT IS HEREBY STIPULATED AND AGREED by and among counsel for the respective parties hereto, that the sealing and certification of the within deposition shall be and the same are hereby waived;


IT IS FURTHER STIPULATED AND AGREED all objections except as to form of the question, shall be reserved to the time of the trial;


IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

*      *      *

Page 3

THE VIDEOGRAPHER:  Good morning.  We are going on the record at 9:23 a.m. on the 14th of November, 2024.

Please note that the microphones are sensitive and may pick up whispering and private conversations.  Please mute your phones at this time.  Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit one of the video recorded deposition of Ellen Shapiro, taken by counsel for plaintiff in the matter of Nicky Laatz against Zazzle, Inc. et al, filed in the United States District Court, Northern District of California, San Jose Division, Case No. 5:22-cv-04844-BLF-VKD.

The location of this deposition is Seven Times Square, 16th Floor, New York, New York 10036.

Page 4

My name is Christopher Mancini representing Veritext and I'm the videographer. The court reporter is Sara Killian from the firm Veritext. I'm not authorized to administer an oath, I'm not related to any party in this action, nor am I financially interested in the outcome.

If there are any objections to proceeding, please state them at the time of your appearance.

Counsel and all present will now state their appearances and affiliations for the record beginning with the noticing attorney.

MR. STEINBERG: Stephen Steinberg from Bartko LLP representing plaintiff.

MR. POSNER: Dan Posner from Quinn Emanuel for the defendant, Zazzle.

MS. YOUNG: Justine Young, also from Quinn Emanuel for Zazzle.

THE VIDEOGRAPHER: Will the

Page 5

court reporter please swear in the witness and then counsel may proceed?

E L L E N   S H A P I R O, after having first been duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY

MR. STEINBERG:

Q.      Good morning, Ms. Shapiro.

A.      Good morning.

Q.      Have you been deposed before?

A.      Yes.

Q.      How many times?

A.      Twice.

Q.      All right.

And were you testifying in your capacity as an expert in both cases?

A.      Yes, I was.

Q.      Okay.

Since your experience is somewhat limited, I'll just go over a few ground rules for today.  You may have spoken about some of these with your attorney beforehand, but just to make sure you're

Page 6

E. Shapiro

Q.      Okay.

What was the scope of your assignment in this case?

A.      The scope of my assignment was to study this report and, if possible, write a rebuttal to it.

Q.      Okay.

So all of your opinions were intended to be a rebuttal to Dr. Parikh's report and her opinions?

A.      Yes.

Q.      Are all of the opinions that you plan to testify about in this case in your report that's marked as Exhibit 305?

A.      They are.

Q.      And are all of the bases and reasons for each opinion set forth in your report?

MR. POSNER:  Object to the form.

A.      Yes.  Could you repeat the question, please?

Q.      Yeah.

Is the entire basis for each of

Page 19

E. Shapiro

the classes were outside the art field, and of the classes in design, 50% were in art -- were in art history classes.  So it was a broad liberal arts education with an emphasis on design in many forms.

Q.    Okay.

Did you do any coursework related to survey design?

A.    Not at all.

Q.    Did you do any coursework related to how to conduct a survey?

A.    No.

Q.    Did you do any coursework related to how to analyze results?

A.    I did not.

Q.    Did you do any coursework related to how to interpret survey results for marketing purposes?

A.    No.

Q.    Have you had any postgraduate training that you received since graduating from UCLA in 1970?

A.    Postgraduate training?  Not in a formal way.

Page 39

E. Shapiro

the books, magazines, articles, and blogs that you've published?

MR. POSNER:  Object to the form.

A.     I think there are more where it says, like, chapters in anthologies.  Or there's a lot more where I will be asked to write a chapter in an anthology.  Or there's a bunch of books I contributed work to, or an essay to, and I didn't list all of those.

Q.     Is there any publication that's not listed here that you think is particularly relevant to your work in this case?

A.     No.

Q.     Have you published anything related to designing or conducting surveys?

A.     No, but I'm not a survey expert.

Q.     Okay.

Have you published anything specifically related to designing and developing font software?

A.     No.

Page 88

E. Shapiro

engaged as an expert witness."

Do you see that?

A.    I do see that.

Q.    And I think if I recall the two cases where you testified in deposition before were Conner versus Optum360 and 20th Century Fox versus Marvel; is that right?

A.    That's right.

Q.    Do you have deposition transcripts from those two cases?

A.    Only 20th Century Fox versus Marvel.

Q.    Okay.

You have that transcript still?

A.    I do.

Q.    Did you provide it to Zazzle's counsel?

A.    No.

MR. STEINBERG:  Counsel, we'd ask for a copy of that, as well, please.

Dan, you heard me?

MR. POSNER:  I heard you.

MR. STEINBERG:  Okay.

Page 120

E. Shapiro

BY MR. STEINBERG:

Q.    All right.

Let's turn back to your report. Can you turn to page three of your report? It's titled Executive Summary.

A.    Yes.

Q.    Is this an accurate summary of all of your opinions in this report?

A.    Yes, it is.

Q.    And that's all of the opinions that you intend to testify about in this case, correct?

A.    Correct.

Q.    If you look at the first bullet point, you write, "The Blooming Elegant Trio is not unique."

Do you see that?

A.    I do see that.

Q.    You don't have -- well, let me ask you this.

Do you have any data to support that opinion?

A.    What do you mean by data?

Q.    Well, what's that opinion based

Page 121

E. Shapiro

on?

A.      It's based on a search I did online for other trios of typefaces that included a script, a handwritten type, all-caps typeface.

And from now on, is it okay if I use the word typeface instead of font when I'm referring to the design of the letter forms themselves?

Q.      Whatever you're most comfortable with.

A.      Okay.  So where I would find typefaces, trios of typefaces that were sold as a font package, or offered for free as a font package that included a script that resembled a handwritten script, that included an all-caps, condensed typeface that resembled if it was written in kind of a childlike hand with a marker, or crayon, or pencil, and that included a sans serif font of the geometric class in which I was able to find some, and I was able to construct some on my own from fonts that I have, and I was able to construct some on

Page 122

E. Shapiro

Zazzle's Design Tool during the month of October.

Q.    Did you speak with any Zazzle designers or users to see if they agree with your opinion that the Blooming Elegant Trio is not unique?

A.    No, I did not.  And I was not asked to.  And I don't know any.

Q.    Okay.

Did you conduct a survey of any Zazzle designers or users to see if it would support your opinion that the Blooming Elegant Trio is not unique?

A.    No, I did not.

Q.    In the next two bullet points, it looks like your opinion is that the challenges of replacing a font like Blooming Elegant are minor, correct?

A.    Correct.

Q.    Are you referring there to the Blooming Elegant Script font specifically?

A.    Specifically, but not totally.

Q.    Okay.

In that third bullet point, you

Page 123

E. Shapiro

same spot.

Q.      Okay.

So because Blooming Elegant was no longer on the website, you weren't actually able to try switching from Blooming Elegant to any other font on Zazzle's website, correct?

A.      Not on Zazzle's website.

Q.      So when you did experiments on the website, you were switching from the Morgana font to something else, correct?

A.      When I did experiments on Zazzle's website, I tried a lot of experiments with different script typefaces and switching them out for other ones to see what happened.

Q.      But none of those fonts that you were testing that with were Blooming Elegant, correct?

A.      Not -- I do not think so.  Not on Zazzle's website.

Q.      Did you speak with any Zazzle designers or users to see if they agree with your opinion that the challenge of replacing

Page 126

E. Shapiro

Blooming Elegant with another font would be minor?

A.    No, I did not.

Q.    Did you conduct any survey of Zazzle designers or users to see if they agree with that opinion?

A.    Again, I'm not a survey expert and I did not conduct any surveys.

Q.    If we look a little further down in your executive summary, you write quote -- I'm still on the third bullet point by the way, do you have that in front of you?

A.    I do.

Q.    All right.

In the third bullet point of your executive summary, you write, "Zazzle users who design new products should have no difficulty using one of the similar casual script typefaces currently available with the Zazzle Design Tool."

Do you see that?

A.    I do see that.

Q.    Do you know when the Blooming

Page 127

E. Shapiro

Elegant Trio was available in Zazzle's Design Tool?

A.    I do not know the exact dates, but I think I recall that it was replaced in 2020 or prior.

Q.    Do you recall that it was replaced in or around August of 2022?

MR. POSNER:  Object to the form.

Foundation.

A.    No, I just said I didn't remember exactly when.

Q.    Okay.

A.    Okay.

Q.    Do you know when the Blooming Elegant Trio was first made available in the Zazzle Design Tool?

A.    No, I do not.

Q.    Did you make any effort to look into the other fonts that were available in the Zazzle Design Tool during the time period in which the Blooming Elegant Trio was available in the Zazzle Design Tool?

A.    Okay.  My experience on the

Page 128

E. Shapiro

Zazzle Design Tool is that they are adding and subtracting new fonts every day.  So a font that I may have found on Tuesday and wanted to use in exhibit was not there on Wednesday or Thursday, but there was another one.

So there wouldn't have been a way for me to possibly find out when it was available on the Zazzle Design Tool and when it was really not available.

Q.      Well, you could have asked Zazzle, right?

A.      Meaning asked Zazzle's attorneys?

Q.      Or someone at Zazzle specifically.  Either one.

A.      I'm not sure that that would have been in the range of things that I was asked to do, or would feel comfortable doing, or think was actually important.

Q.      So is it fair to say then that you did not make any effort to look at the other fonts that were available in the Zazzle Design Tool back during the time when

Page 129

E. Shapiro

A.      This is me personally.

Q.      Now, if we stick with page eight for a moment, you've listed six different fonts there that you say are similar in look and feel to Blooming Elegant, correct?

A.      Correct.  Similar in look and feel.

Q.      None of these fonts are currently available in Zazzle's Design Tool, correct?

MR. POSNER:  Object to the form.

Foundation.

A.      Correct.

Q.      And none of these fonts were available in Zazzle's Design Tool during the time period when the Blooming Elegant Trio was there, correct?

MR. POSNER:  Same objections.

A.      Right.  They are used as examples of other typefaces that are similar in look and feel, and later in the report, you will find many that are in Zazzle's

Page 146

E. Shapiro

Design Tool.

Q.    Okay.

But these fonts that we're looking at on page eight that you say are similar to Blooming Elegant, none of them have ever been available in Zazzle's Design Tool, to your knowledge, correct?

MR. POSNER:  Objection.

Foundation.

A.    Right.  I don't know whether they were five years ago, or ten years ago, or during that time, any time.

Q.    But you're opining that even though these were never in the Zazzle Design Tool, Dr. Parikh should have included them in a survey of Zazzle designers?

MR. POSNER:  Misstates the witness' testimony.

A.    Ahh, should have.  I am opining that it would have been a less biased survey had Dr. Parikh chosen comparisons to other design -- other typefaces that are much more similar to Blooming Elegant in her survey.

Q.    Much more similar than what?

Page 147

E. Shapiro

Q.    Okay.

When we looked back at page nine, the only one of these six fonts that's currently available in Zazzle's Design Tool is Morgana, correct?

MR. POSNER:  Objection.

Foundation.

A.    Okay.  As far as I know, Morgana is the only one.

But as I said previously, the Zazzle Design Tool is constantly adding new fonts and at the time I did this page, I wasn't checking everything that was available on the Zazzle Design Tool.

Q.    As far as you know, none of these fonts were available in Zazzle's Design Tool at the same time as the Blooming Elegant Trio of fonts, correct?

MR. POSNER:  Objection.

Foundation.

A.    As I've already told you, I don't know specifically when that time period was, so I can't comment on that.

Q.    You know that Morgana was added

Page 183

E. Shapiro

include in that opinion that you just gave?

MR. POSNER:   Object to the

form.

Assumes facts.

A.      I do not design surveys, so I
cannot tell her what she should --
particular fonts she could have included
when she did her survey.

Q.      If you were surveying Zazzle
designers in August of 2022 to try to figure
out whether they were aware of particular
fonts that are offered in Zazzle Design
Tool, don't you think it would be important
to know which fonts were available during
the preceding time period?

MR. POSNER:   Object to the

form.

Vague.

A.      I can only speak to if someone
is designing a survey now and these are the
typefaces available.  And by the way, I'm
not sure that the fonts that she did
include, such as Century Bold or Courier
were on the Zazzle Design Tool.  They were

Page 186

E. Shapiro

just fonts.  So I might have assumed that she could have picked other well known fonts or not so well known fonts and just asked: Do you think that Blooming Elegant is more unique or more, you know, special, more attractive than such and such?

Q.      Well, did you check whether the fonts that were used by Dr. Parikh were available in Zazzle's Design Tool?

A.      Whether they're available then or now?

Q.      Either.

A.      I did not check.

Q.      Okay.

Looking back at page nine, for these six fonts that are identified here, did you exam all the same characteristics as are identified on the left-hand side of page eight in reaching your opinion that these are similar to Blooming Elegant?

A.      I examined the same characteristics, and again, similar in look and feel rather than identical in form.

Q.      At least as to these six, did

Page 187

E. Shapiro

the Blooming Elegant Trio of fonts from Nicky Laatz's website?

A.    Right.

Q.    And then she gave you a copy for you to use on your machine?

A.    Yes.

Q.    And did she buy the license in her own name?

A.    I think so.

Q.    You haven't gone and bought your own license to the software?

A.    I didn't feel it would be prudent to do it at that time.

Q.    Okay.

Going back to page ten, so on page ten, you identify nine different fonts that you say are -- I think you said earlier are currently available in the Zazzle Design Tool, correct?

A.    They were on the day that I made this page.

Q.    Do you know when each of these was added to Zazzle's Design Tool?

A.    No, I do not.

Page 205

E. Shapiro

Q.    Would it surprise you to learn that most of these were added after the Blooming Elegant Trio fonts were removed from Zazzle's Design Tool?

MR. POSNER:  Objection to form. Vague.

A.    I don't know about being surprised.  If that's a fact and you're telling me that, okay.

MR. STEINBERG:  All right. Let's look at another document.

(Whereupon, Exhibit 284 was marked for identification.)

BY MR. STEINBERG:

Q.    All right.

Ms. Shapiro, you've been handed what's been marked as Exhibit 284.  It's a document Bates numbered LAATZ 0516500 through -02.

Have you seen this before?

A.    No.

Q.    If you turn to the second page, you'll see this is an announcement posted on the Zazzle website about the addition of

Page 206

E. Shapiro

were available prior to August 4, 2022 or what those fonts were.  And there's a pretty long list here of maybe 25, there might be 100 or something in those four columns that I could then find nine others that were not added in August 20 -- on August 4th, 2022 to use many my exhibit.

THE VIDEOGRAPHER:  Ms. Shapiro, your microphone.

THE WITNESS:  My microphone fell off?

It did.

BY MR. STEINBERG:

Q.     Okay.

But on page ten, you're also opining that each of these fonts could have been substituted for Blooming Elegant, correct?

A.     Should the designer and the client agree that this will be the new font in our wedding invitation product, they could have been substituted.

Q.     Right.

So my question is:  If most of

Page 211

E. Shapiro

these fonts that you've shown on page ten were not available in the Zazzle Design Tool at the same time as Blooming Elegant, then how could a designer or a user on Zazzle have substituted one of these for Blooming Elegant.

MR. POSNER:  Objection.

Vague.

Inaccurate math and misstates the witness' opinion and testimony.

A.    All right.  Had I known that these four, Abigail, Nightstar, Southlove and Sandiha [sic], I think is the name of it, were not available, then from this very long list, which looks like nearly a hundred handwriting script fonts, I would have put not -- four others instead of those four.

Q.    You're saying you would have put four others that were available --

A.    That were --

Q.    -- at the same time as Blooming Elegant?

MR. POSNER:  Let him finish.

Object to the form.

Page 212

E. Shapiro

Vague.

Misstates the witness' testimony.

A.        Had I known that we were referring on this page and perhaps other pages in my report that all the typefaces that I could use to make demonstrations had to have been available prior to August 4, 2022 on the Zazzle Design Tool, then I would have chosen nine typefaces that were available.

Q.        Okay.

But you didn't look into which typefaces were available at the same time as Blooming Elegant, right?

MR. POSNER:   Asked and answered.

A.        Right.

Q.        Another one that's listed in Exhibit 284 is Morgana.  Do you see that? It's about a third of the way down on the third column?

A.        Yes.

Q.        All right.

Page 213

E. Shapiro

I think we could probably get through it quicker.

MR. STEINBERG:  Okay.

So do you want to stipulate that all of these fonts were added after Blooming Elegant Trio was removed?

MR. POSNER:  I'm stipulating that we can make that assumption for purposes of this deposition if you want to, and then if the assumption holds true based on this document or others, but I don't think you need to take the time to establish those dates with her because she doesn't know.

MR. STEINBERG:  Well, we'll go through a couple more.

BY MR. STEINBERG:

Q.    Ms. Shapiro, you've been handed Exhibit 285.  It's a document Bates numbered ZAZZLE 001759 through -68.  And this is a license agreement for some fonts.

If you look on the page Bates numbered 1765, do you see where it lists the

Page 215

E. Shapiro

Morgana font?

A.      Yes.

Q.      And do you see that a little further up the page, it also lists the Melly Script font, which is another one that appears on page ten of your report?

A.      Yes.

Q.      And then if you turn to the next page -- I'm sorry.  Two more pages.  It's Bates numbered 1767.

Do you have that in front of you?

A.      Mm-hmm.

Q.      And do you see it also lists the Shalimar font --

A.      Mm-hmm.

Q.      -- that's listed on page ten of your report?

A.      Yes.

Q.      Okay.

So is it fair to say that at least a majority of the fonts that you've listed on page ten were not available in the Zazzle Design Tool at the same time as the

Page 216

E. Shapiro

Blooming Elegant Trio?

MR. POSNER:  Objection.

Foundation.

This witness has absolutely no basis to answer that question based on this document or anything else, and so you can ask these questions, but they're pointless.

And if you want to assume for purposes of this deposition -- just let me finish -- that these were not added until after that date, let's do that.

And if your assumption turns out to be correct, then great.  Your questions will make some sense later. But she's never read this document. She doesn't know when Zazzle put things on its website or not.  She doesn't know if things were there before this license agreement or not.  So you could ask her if words are on a page, but it's just pointless.

I get where you're going, and so let's just assume that and then move

Page 217

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

E. Shapiro

forward.

MR. STEINBERG:  I'm trying to understand the basis for Ms. Shapiro's opinion that these fonts could have been substituted for Blooming Elegant.

MR. POSNER:  That's a different question.  That doesn't require you to prove -- to go through license agreements that are ten pages long that she's never seen before.

MR. STEINBERG:  We're not going to spend a lot of time on this document.  I'd like to finish my questions.

BY MR. STEINBERG:

Q.    So going back to my question, Ms. Shapiro.

Is it fair to say, then, that the majority of the fonts that you've listed on page ten as being potential substitutes for Blooming Elegant were not available in the Zazzle Design Tool at the same time as Blooming Elegant?

MR. POSNER:  She has no basis

Page 218

E. Shapiro

to answer that question.

MR. STEINBERG:  Can you let the witness answer instead of testifying for her?

MR. POSNER:  It's just ridiculous you're asking her that question though.  I'm willing to assume that.

MR. STEINBERG:  This is -- this is an inappropriate objection.

MR. POSNER:  But she doesn't know.

MR. STEINBERG:  Then she can say that.  But you don't need to testify for her and coach the witness.

Give me a break.

MR. POSNER:  But you're putting words in her mouth.

MR. STEINBERG:  Can you stop coaching your witness?

(Cross-talk)

MR. POSNER:  She doesn't know.

MR. STEINBERG:  Can you -- can you stop coaching your witness, please?

Page 219

E. Shapiro

MR. POSNER:  This is silly.

MR. STEINBERG:  Dan, stop coaching your witness.  State your objection in a concise manner, as is your right.  Okay?

Do not coach your witness and make long speaking objections that not only coach her up on the answer but also wastes my time on the record.  Okay?

MR. POSNER:  You're trying to make a point.  I'm trying to help you get there.

MR. STEINBERG:  What is your concise objection?  Just make your concise objection.

Is it lacks foundation?  Fine.

You said that.  Okay.

BY MR. STEINBERG:

Q.      Ms. Shapiro, is it fair to say then that the majority of the fonts that you've identified on page ten, that in your opinion could have been substituted for Blooming Elegant, were not actually

Page 220

E. Shapiro

available in the Zazzle Design Tool at the same time as Blooming Elegant?

MR. POSNER:  The witness lacks foundation to answer that question.

A.    I don't know.

Q.    Okay.

Having heard your counsel's objection and looked at him, that's your answer.

MR. POSNER:  How would she know?  Okay?  I mean, besides my objections.

MR. STEINBERG:  All right.

BY MR. STEINBERG:

Q.    So -- but it's your opinion that notwithstanding the fact that these may not have been available in the Zazzle Design Tool at the same time as Blooming Elegant, that Dr. Parikh should have considered them or used them in her survey of Zazzle designers?

MR. POSNER:  Objection.  Misstates the witness' testimony.

Page 221

E. Shapiro

available.

So I'm asking:  Do you have any reason to think that the Heathrow font was available in the Zazzle Design Tool before late 2022?

A.      I have no knowledge of when any of the fonts were added to the Zazzle Design Tool.

Q.      Okay.

When you were looking at the six fonts that are identified on page 11 of your report, did you analyze the spacing of these fonts in comparing them to Blooming Elegant?

A.      Again, the spacing can be controlled in the Zazzle Design Tool by clicking a button or plus or minus.  If you look on page 12, there's a slider called letter spacing.  And see where it says zero?  That was the screen grab that I got there.  So you can -- it's not built into the font itself.  You can use that slider, moving it to the left or right to change the letter spacing.

Page 244

E. Shapiro

Q.      I see.  Okay.

And this is a feature of Zazzle's Design Tool as of October of 2024?

A.      Yes.  Wait, wait, wait.  I'm sorry.  I don't know when they added it to Zazzle's Design Tool.  I don't know if it was there from the inception and I don't know when the inception was.

Q.      Okay.

But it was certainly there when you used the tool in October of 2024?

A.      Right.

Q.      But you don't know if it was there at the time when the Blooming Elegant Trio was available in the Design Tool?

A.      I don't know.

Q.      On page 11, you've got this list of six fonts and then six different name is that are typed out in those fonts.

How did you create this screenshot?

A.      I created it by going to the calligraphy script, custom wedding place cards product, and it allows you to replace

Page 245

E. Shapiro

A.    I don't know exactly what they were shown.

Q.    If you look down at the bottom left-hand corner of the page, you say, "Had the respondents been offered the opportunity to select from more appropriate sets of fonts, the results may have been very different."

Do you see that?

A.    I see that.

Q.    And what is that opinion based on?

A.    That is based on my experience as a graphic designer, as an author of books and articles about graphic design and typography, as a judge in typography competitions and so forth.

Q.    But I think you testified earlier, you have no training in designing or conducting surveys, right?

A.    No formal training.

Q.    Now, it looks like in the middle there you are suggesting that she should have used the Cinzel family of fonts;

Page 352

CERTIFICATION

I, SARA K. KILLIAN, RPR, RCR, CCR, do hereby certify that ELLEN SHAPIRO, the witness whose examination under oath is hereinbefore set forth, was duly sworn, and that such deposition is a true record of the testimony given by such witness.

I FURTHER CERTIFY that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of December, 2024.

SARA K. KILLIAN, RPR, RCR, CCR

Page 370