United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NICKY LAATZ, et al., | Case No.  22-cv-04844-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ZAZZLE, INC., et al., | |
| Defendants. | [Re:  ECF No. 338, 359] |

Plaintiff Nicky Laatz ("Plaintiff") brings this suit against Defendants Zazzle, Inc. ("Zazzle") and Mohamed Mr. Alkhatib ("Mr. Alkhatib," and, with Zazzle, "Defendants") alleging Defendants fraudulently obtained a license to use software implementing a trio of fonts created by Plaintiff, and subsequently violated the license by making the fonts available to millions of people, including for commercial use.  The operative First Amended Complaint ("FAC") asserts claims for 1) fraudulent misrepresentation, 2) fraudulent concealment, and 3) promissory fraud, all in violation of Cal. Civ. Code § 1572, as well as 4) federal copyright infringement under 17 U.S.C. § 101, 5) federal trademark infringement under 15 U.S.C. § 1114, and 6) breach of contract. *See* First Amended Complaint, ECF 82 ("FAC") ¶¶ 175–219.

Before the Court is Defendants' Motion for Summary Judgment. ECF 338 ("Mot."). Defendants seek summary judgment on all six claims in the FAC. *See* Mot. at 1. Plaintiff filed an opposition. ECF 342 ("Opp."). Defendants filed a reply. ECF 347 ("Reply"). On February 26, 2025, non-party Monotype Imaging Inc. filed a motion for leave to submit a brief as *amicus curiae* in support of Plaintiff's opposition. ECF 359. The Court GRANTS the motion. On February 27, 2025, the Court heard oral argument on the motion. ECF 361. On February 28, 2025, the Court invited the parties to submit supplemental briefing to address the applicability of the Ninth Circuit's opinion in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025). ECF 365. On March 14, 2025, the

parties filed supplemental briefs. *See* ECF 385 ("DSupp."); ECF 386 ("PSupp.").

For the reasons below, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

## I.    BACKGROUND

### A.    Factual Background

The following facts are undisputed unless noted.

Plaintiff is a font designer. She derives her primary source of income from creating fonts and selling licenses for limited use of those fonts and associated font software. *See* Opp. at 1; *see also* ECF 342-25, N. Laatz Decl. ¶¶ 2, 4. She has created over 160 unique fonts. ECF 342-25, N. Laatz Decl. ¶ 2.

Zazzle is an online marketplace for customizable consumer goods, such as t-shirts, mugs, invitations, and other similar items. Mot at 2. Zazzle offers hundreds of licensed fonts in various styles through a customization platform on its website—the Zazzle Design Tool. *Id.*

Plaintiff had an account with Zazzle in 2014 and a shop on Zazzle by 2016. ECF 342-25, N. Laatz Decl. ¶ 68; ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep. 157:17-158:20. Since March 2016, Plaintiff has been following Zazzle on Instagram. ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep., 161:24-162:5.

In 2016, Plaintiff designed, created, and began licensing a trio of fonts—the "Blooming Elegant Trio" ("BE Trio"), comprised of Blooming Elegant ("BE"), Blooming Elegant Sans ("BE Sans"), and Blooming Elegant Hand ("BE Hand")—along with the computer files (the "BE Software") that pertain to the BE Trio. *See* Opp. at 1; ECF 342-25, N. Laatz Decl. ¶¶ 5-7.

Plaintiff marketed her BE Trio through Creative Market, offering a license for $20. ECF 342-25, N. Laatz Decl. ¶ 24; ECF 89-36. Plaintiff's Creative Market Shop Offering Page (the "Shop Page") includes a link to Creative Market's Terms of Service (the "Terms of Service") and a link to Creative Market's License FAQ (the "License FAQ"). S*ee* ECF 89-36, Ex. 22 to Steinberg Decl. ("Shop Page"); ECF 89-37, Ex. 23 to Steinberg Decl. (License FAQ); ECF 89-40, Ex. 25 to Steinberg Decl. (Terms of Service). To license the BE Trio and the BE Software from Creative Market, a purchaser must set up a Creative Market account, which requires the user to agree to the

United States District Court
Northern District of California

1   Terms of Service. ECF 342-25, N. Laatz Decl. ¶ 27; *see* ECF 89-38, Ex. 24 to Steinberg Decl. The

2   Terms of Service incorporate Creative Market's License Terms (the "License Terms"). ECF 342-

3   25, N. Laatz Decl. ¶ 27; *see* ECF 89-40, Ex. 25 to Steinberg Decl.; ECF 89-41, Ex. 26 to Steinberg

4   Decl. (License Terms). The License FAQ also includes a link to the License Terms. *See* ECF 89-

5   41, Ex. 26 to Steinberg Decl.

6        The License Terms provide that a licensee is granted "a non-exclusive, non-transferable right

7   to use, modify, and reproduce the Item worldwide." ECF 89-41, Ex. 26 to Steinberg Decl. (License

8   Terms); *see* Opp at 23. The License Terms state that a licensee "may use a purchased Item in a new

9   End Product as long as the End Product meets the [] requirements." ECF 89-41, Ex. 26 to Steinberg

10  Decl. The License Terms states that "[Fonts] may be used in an unlimited number of Projects on a

11  one seat per license basis." ECF 89-41; *see* Opp at 23.

12       On November 2, 2016, Monica McGhie ("Ms. McGhie"), Zazzle's former Senior Product

13  Marketing Manager, emailed Plaintiff and other designers to inquire about "server-based" licenses.

14  ECF 338-5 (unredacted at ECF 337-8), Ex. C1 to Nolan Decl.; ECF 338-6, Ex. C2 to Nolan Decl;

15  *see* Mot. at 3, 4; Reply at 7. Plaintiff did not respond to that email. ECF 342-25, N. Laatz Decl. ¶

16  39; *see* Mot. at 4; Opp at 5.

17       On May 4, 2017, Mr. Alkhatib purchased a license for the BE Trio ("BE License") through

18  Creative Market, an online marketplace. ECF 338-9, Ex. E to Nolan Decl., Mr. Alkhatib Decl. ¶¶ 3-

19  9; ECF 338-11, Ex. G to Nolan Decl., Creative Market Dep., 94:9-14; *see* Mot at 3, 8. To purchase

20  the license, Mr. Alkhatib provided his name and his work email address @zazzle.com and used a

21  Zazzle company credit card. *See* ECF 338-9, Ex. E to Nolan Decl., Mr. Alkhatib Decl. ¶¶ 3-9; ECF

22  338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep. 212:18-19. After the

23  purchase, Zazzle received the installable BE Software. ECF 338-10 (unredacted at ECF 337-3), Ex.

24  F to Nolan Decl., Alkhatib Dep., 131:5-7.

25       In October 2017, Zazzle publicly announced the addition of the BE Trio to the Zazzle Design

26  Tool. ECF 338-12, Ex. H to Nolan Decl.; *see* Mot. at 8; Opp at 5. Between October 2017 and August

27  2018, Plaintiff received at least 677 promotional emails from Zazzle, including 48 emails that

28  contained images of products using BE Trio. ECF 338-100, J. Li Decl. ¶¶ 2-5; ECF 338-101 – ECF

United States District Court
Northern District of California

338-149, Ex. QQ, RR1-RR48 to J. Li Decl.; *see* Mot. at 3; Opp. at 8. Between October 2017 and August 2019, Zazzle made 8 public blog posts and 34 public Instagram posts using BE Trio. ECF 338-12 – ECF 338-52, Ex. H; I1-I8; J1-J32 to Nolan Decl.; *see* Mot. at 3, 8 On September 27, 2018, Zazzle tagged Plaintiff in an Instagram post that contained an image using BE Trio. ECF 338-62, Ex. L to Nolan Decl.; ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep., 165:7-170:24.

On January 29, 2020, John Laatz, Plaintiff's husband, received a message from a customer stating that the customer "liked the [Blooming Elegant] Font on Zazzle." ECF 338-65 (unredacted at 337-13), Ex. O to Nolan Decl; ECF 338-66, Ex. P to Nolan Decl, J. Laatz Dep., 319:14-320:10; *see* Mot. at 4-5, 9. On August 25, 2020, Plaintiff received a message from another customer stating that she saw that Zazzle had Blooming Elegant on its website and "would like to use [the] [B]looming [E]legant font on Zazzle." ECF 342-27, Ex. 2 to N. Laatz. Decl.; ECF 338-2, Ex. A1 to Nolan Decl. ¶ 49; *see* Mot. at 5; Opp at 5. On August 26, 2020, John Laatz, on behalf of Plaintiff, notified Zazzle that Plaintiff "[did] not grant [the type of license Zazzle would need to use the BE Trio] … and ha[d] not done so now for many years," and requested proof of the license Zazzle was using for the BE Trio. ECF 338-63, Ex. M to Nolan Decl.; *see* Mot. at 5.

On February 18, 2021, Plaintiff applied for copyright registrations for the BE Software for each font in the BE Trio. ECF 342-34, Ex. 1 to Steinberg Decl.; ECF 342-35, Ex. 2 to Steinberg Decl.; ECF 342-36, Ex. 3 to Steinberg Decl. The applications list "computer program" under the "Author Created" space. ECF 342-34, Ex. 1 to Steinberg Decl.; ECF 342-35, Ex. 2 to Steinberg Decl.; ECF 342-36, Ex. 3 to Steinberg Decl. In connection with this submission, Plaintiff used FontLab to convert the BE Software .OTF files to VFJ files, which are the FontLab specific JSON-based files that contain human-readable data for the .OTF files. ECF 342-25, N. Laatz Decl. ¶ 16; ECF 342-33, Steinberg Decl. ¶ 3; ECF 338-82, Ex. FF to Nolan Decl., Phinney Report ¶¶ 35-36; ECF 338-150, Rucinski Decl. ¶ 23; *See* Mot. at 17; Opp. at 2; Reply at 11-12. Plaintiff then created PDF documents of the VFJ files, printed the PDF documents, and submitted the printed copies to the Copyright office. *See* Mot. at 17; Opp at 2; *see also* ECF 342-25, N. Laatz Decl. ¶ 16; ECF 342-33, Steinberg Decl. ¶ 3. The PDF files for the BE font and the BE Sans font each contain a statement: "Generated by: FontLab." ECF 338-86, Ex. HH1 to Nolan Decl. at 457; ECF 338-87, Ex. HH2 to

1    Nolan Decl. at 230; *see* Mot. at 17; Opp. at 17, 21; Reply at 13.

2        On February 18, 2021, Copyright Examiner, A. Howard ("Examiner Howard") pointed out

3    to Plaintiff's Copyright Registration Attorney, Stephen Steinberg ("Mr. Steinberg"), that each PDF

4    deposit "does not contain a computer program," but rather "appears to be a font," and thus contains

5    "font data." ECF 338-78, Ex. BB to Nolan Decl. at 2, 7; ECF 342-33, Steinberg Decl. ¶ 4; *see* Mot

6    at 18-20; Opp at 2-3. On at least four occasions, including this first correspondence, Examiner

7    Howard asked Mr. Steinberg to confirm that the deposit was "hand-coded" by a human author rather

8    than generated by a font design program. ECF 338-78, Ex. BB to Nolan Decl. at 2, 4, 5, 7. Examiner

9    Howard also explained that if the font data was "not hand coded by a human author, it [could not]

10   be registered." *Id.* at 7. Additionally, Examiner Howard explained that when registering deposits

11   that solely contained font data, the Copyright Office required that the authorship be identified as

12   "font data," not as a "computer program" because "[computer program] requires the deposit of

13   'source code.'" ECF 338-78, Ex. BB to Nolan Decl. at 4; ECF 342-33, Steinberg Decl. ¶ 5; *see* Mot

14   at 18-20; Opp at 2-3. Examiner Howard also suggested changing the "[A]uthor [C]reated" space

15   from "computer program" to "font data." ECF 338-78, Ex. BB to Nolan Decl. at 4.

16       On July 15, 2021, Mr. Steinberg told the examiner that Plaintiff authorized the change from

17   computer program to "font data" and that Plaintiff "hand-coded the designs and instructions in the

18   font data [] submitted." ECF 338-78, Ex. BB to Nolan Decl. at 2; ECF 342-33, Steinberg Decl. ¶ 5;

19   *see* Mot at 18-20; Opp at 2-3.

20       On July 16, 2021, the Copyright Office approved Plaintiff's applications and issued

21   copyright registrations for the BE Software associated with each font in the BE Trio, identified as

22   "Font Data." *See* ECF 89-21 (Copyright Reg. No. TX 8-984-766 for the Blooming Elegant font);

23   ECF 89-22 (Copyright Reg. No. TX 8-984-762 for the Blooming Elegant Sans font); ECF 89-23

24   (Copyright Reg. No. TX 8-984-764 for the Blooming Elegant Hand font); ECF 342-25, N. Laatz

25   Decl. ¶ 22.

26       On January 25, 2022, the United States Patent and Trademark Office ("USPTO") issued a

27   trademark registration certificate Reg. No. 6,626,946 for the "BLOOMING ELEGANT" mark for

28   use in "[d]ownloadable printing fonts; [p]rinting fonts that can be downloaded provided by means

United States District Court
Northern District of California

of electronic transmission; [and] [t]ypeface fonts recorded on magnetic media." ECF 89-24, Ex. 10 to Steinberg Decl; *see* ECF 89-14, Steinberg Decl. ¶ 5.

On August 24, 2022, Plaintiff filed suit against Defendants. *See* ECF 1.

### B.    Plaintiff's Creation of the BE Trio Font

In 2016, Plaintiff created the BE Trio, which contains a total of 631 "unique glyphs." ECF 342-25, N. Laatz Decl. ¶¶ 5, 8. Plaintiff designed the glyphs initially in Adobe Illustrator and FontLab Studio 5 using a tablet and stylus. ECF 342-25, N. Laatz Decl. ¶¶ 10-11; ECF 342-53, T. Phinney Decl. ¶¶ 33-34; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 201:12-208:23; *see* Mot. at 16; Opp. at 1.

Plaintiff "created the BE Trio and BE Software with the assistance of the FontLab." ECF 342-25, N. Laatz Decl. ¶¶ 10-11; ECF 338-2, Ex. A1 to Nolan Decl. ¶ 7. FontLab is a "font-generating engine" or "font editor" that provides "WYSIWYG" (i.e., "What You See Is What You Get") functionality that allows a font designer to draw and modify glyphs for a font using a visual design interface. ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 82:19-24, 140:5-148:9; *see* Mot at 16. Initially, Plaintiff designed some of the glyphs for the BE Trio in Adobe Illustrator." ECF 342-25, N. Laatz Decl. ¶ 10. Plaintiff then exported the glyphs she sketched in Adobe Illustrator into FontLab. ECF 342-25, N. Laatz Decl. ¶ 10; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 208:25-210:18. Next, FontLab assigned numerical coordinates to the glyphs, which correspond to "on curve" and "off curve" reference points. ECF 338-150, Rucinski Decl. ¶ 28-32; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 158:19-161:9, 167:1-170:17, 214:6-215:17. Plaintiff then adjusted the on-curve and off-curve reference points for the glyphs in FontLab using a stylus. ECF 342-25, N. Laatz Decl. ¶¶ 11-13; ECF 342-53, T. Phinney Decl. ¶ 35; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 195:14-22, 250:2-251:2; *See* Mot at 16; Opp at 2. Specifically, Plaintiff adjusted the reference points to "thicken[] the downstrokes in each glyph" and "adjusted the incoming and outgoing strokes" and left and right-side bearing of each letter for aesthetic and stylistic purposes. ECF 342-25, N. Laatz Decl. ¶ 13; *see* Opp at 2.

Plaintiff also set "values for [] the font-wide variables," and "typed and inserted custom []

United States District Court
Northern District of California

code" to instruct FontLab on how to implement letter combinations and stylistic alternative letters. ECF 342-25, N. Laatz Decl. ¶¶ 13-14; *see* ECF 342-53, T. Phinney Decl. ¶¶ 35-37; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep. 169:18-170:7, 278:21-281:24, 283:6-284:2, 287:5-289:19; Mot at 16; Opp at 2. Plaintiff "used FontLab to compile [] coordinates and instructions … into a set of .OTF files," which are files in an "executable, machine-readable" format to render fonts on a computer. ECF 342-25, N. Laatz Decl. ¶ 15; *see* ECF 338-81, Ex. EE to Nolan Decl., Phinney Decl. ¶ 20; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 170:22-173:3; ECF 338-150, Rucinski Decl. ¶ 22; Mot at 16; Opp at 2. Plaintiff then installed the .OTF files, tested the fonts, and made adjustments. *See* ECF 342-25, N. Laatz Decl. ¶ 15; *see* Opp at 2. She repeated this process until she "was satisfied" with the final .OTF files for the BE Trio and BE Software. ECF 342-25, N. Laatz Decl. ¶ 15.

### C.  Procedural Background

Plaintiff filed this lawsuit against Zazzle and Mr. Alkhatib on August 24, 2022. *See* Compl., ECF 1. On March 14, 2023, Plaintiff filed the FAC. *See* FAC. On March 31, 2023, Defendants moved to dismiss all of Plaintiff's claims in the FAC. ECF 86. On July 17, 2023, the Court denied Defendants' motion to dismiss the FAC. ECF 124.

On August 30, 2023, Defendants filed an answer to the FAC and brought a counterclaim against Plaintiff alleging Plaintiff's asserted copyrights are invalid. ECF 144. On September 20, 2023, Plaintiff moved to dismiss Defendants' counterclaim. ECF 148. On March 7, 2024, the Court denied the Plaintiff's motion to dismiss the counterclaim. *See* ECF 176.

On April 7, 2023, Plaintiff renewed her previously filed motion for partial summary judgment on all claims except the trademark infringement claim. ECF 89; *see* ECF 26, 81. On January 9, 2024, the Court granted in part and denied in part Plaintiff's motion for partial summary judgment. *See* ECF 174. With respect to the breach of contract claim, the Court granted Plaintiff's motion for partial summary judgment that Defendants assented to the Terms of Service, the License Terms, and the Shop Page, denied Plaintiff's motion for partial summary judgment with respect to Plaintiff's assertion that Defendants assented to the License FAQ. ECF 174 at 21. Furthermore, the Court denied Plaintiff's motion for partial summary judgment on Plaintiff's breach of contract claim

United States District Court
Northern District of California

against Mr. Alkhatib based on his alleged status as an undisclosed agent. *See id.* The Court also denied Plaintiff's motion for partial summary judgment on Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, promissory fraud, and copyright infringement. *See id.*

## II.  EVIDENTIARY OBJECTIONS

### A.  Defendants' Objections

Defendants object to the following evidence attached to Plaintiff's opposition:

1. Ryan Decl. ¶¶ 2, 12 as containing improper legal argument.

2. N. Laatz Decl.: ¶¶ 16, 19-21, 24, 28, 31, 39, 40-41, 44-46, 49-50, 52-53, 55-56, 58-59, 61, 63-65 (as misnumbered on Page 21), and 67-68 as containing improper legal argument.

3. Garrie Decl.: ¶¶ 7-9, 13, 18, 19-20, 23, 25-26, and 28 as containing improper legal argument; ¶¶ 20-25 for lacking foundation; and ¶¶ 31-37 as irrelevant.

4. Phinney Decl.: ¶¶ 6-13, 38-45, 48, 50-53, 55, 59-60, 66-79, and 83-84 as containing improper legal argument; ¶¶ 38, 39, 42, 43-44, and 60 as irrelevant; ¶¶ 48 and 83-84 for lacking foundation; ¶¶ 52-53, 55 for lacking foundation; and ¶¶ 69-79 as irrelevant.

5. Sandler Decl.: ¶¶ 15-36, 43-51 for containing improper legal argument; ¶ 43 for lacking foundation, and ¶ 51 for containing improper expert testimony.

The Court rules on Defendants' evidentiary objections as follows:

1. Ryan Decl.: OVERRULED. ¶¶ 2, 12 do not contain improper legal argument.

2. N. Laatz Decl.:

   i.  OVERRULED as to ¶¶ 16, 19-21, 24, 40-41, 44-46, 49-50, 55-56, 58-59, 61, 63-65, 68.

   ii.  SUSTAINED as to ¶ 67.

   iii.  SUSTAINED IN PART as to ¶¶ 28, 31, 39, 52, 53. These paragraphs contain mixed statements of facts and legal conclusions. The legal conclusions will be disregarded.

3. Garrie Decl.:

      i.  SUSTAINED as to ¶¶ 7-9, 13, 18, 19-20, 23, 25-26, 28 for containing improper legal argument.

      ii.  SUSTAINED as to ¶¶ 20-25 for lacking foundation.

      iii.  OVERRULED as to ¶¶ 31-37 on relevance grounds. The Court will give each statement the weight it deserves.

4. Phinney Decl.:

      i.  SUSTAINED as to ¶¶ 6-13, 52-53, 55, 59-60, 66-79. OVERRULED as to ¶¶ 48, 50-51, 83-84. OVERRULED IN PART to allow testimony of industry perspective and SUSTAINED IN PART for containing legal argument as to ¶¶ 38-45.

      ii.  OVERRULED as to ¶¶ 38, 39, 42, 43-44, 60 on relevance grounds. The Court will give each statement the weight it deserves.

      iii.  OVERRULED as to ¶¶ 48, 83-84 for lacking foundation. SUSTAINED as to ¶¶ 52-53, 55 for lacking foundation.

5. Sandler Decl.:

      i.  OVERRULED as to ¶¶ 15-36, 43-51. Defendants identify too broad a swath of evidence to allow the Court to reasonably identify any offending portions. The Court will disregard all legal conclusions and consider only the factual portions. The Court notes that all of these paragraphs are generously laced with impermissible legal conclusions which will be disregarded.

**B. Plaintiff's Objections**

Plaintiff objects to the following evidence attached to Defendants' reply: 1) Exhibits SS, UU, VV, WW, and XX as untimely, hearsay, and/or irrelevant; and 2) Nolan Reply Decl. ¶¶ 5-9 as untimely. *See* ECF 350. The Court rules on Plaintiff's evidentiary objections as follows:

1. OVERRULED as to Ex. SS. The exhibit is Laatz's own testimony offered by Zazzle to rebut her declaration.

2. OVERRULED as to Ex. UU, VV, WW, and XX. These exhibits are timely rebuttal to Plaintiff's expert opinions.

1     3.  OVERRULED as to Nolan Reply Decl. ¶¶ 5-9. It is not untimely.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense.  *See* Fed. R. Civ. Proc. advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*, 133 F.Supp.3d 1228, 1232 (N.D. Cal. 2015).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In judging evidence at the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  By contrast, where the moving party does not have the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Once the moving party meets its initial burden, the nonmoving party must set forth, by

2    affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue

3    for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  In determining

4    whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed,

5    and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).  If the

6    nonmoving party's "evidence is merely colorable, or is not significantly probative, summary

7    judgment may be granted." *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative

8    testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and

9    defeat summary judgment.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

10   1979).  For a court to find that a genuine dispute of material fact exists, "there must be enough doubt

11   for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554,

12   562 (9th Cir. 2009).

### IV.    DISCUSSION

#### A.  Statute of Limitations (All Claims)

15   Defendants assert a statute of limitations defense and contend that all Plaintiff's claims are

16   time barred as a matter of law. Mot. at 4. The applicable statutes of limitations for Plaintiff's claims

17   are: 1) three years for fraud, Cal. Civ. Proc.Code § 338(d); 2) three years for copyright infringement,

18   17 U.S.C. § 507(b); 3) three years for trademark infringement, *see Karl Storz Endoscopy Am., Inc.*

19   *v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (borrowing state statute of limitations for

20   trademark claims, Cal. C. Civ. P. § 338(d)); and 4) four years for breach of contract, Cal. Civ. Proc.

21   Code § 337.

22   The statute of limitations begins to run at the time a cause of action accrues "regardless of

23   whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-*

24   *Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006). Generally, a cause

25   of action accrues "when the cause of action is complete with all of its elements." *Wakefield v. Wells*

26   *Fargo & Co.*, No. C 13-05053 LB, 2014 WL 5077134, at *9 (N.D. Cal. Oct. 9) (internal quotation

27   omitted).

28   Defendants argue that it is undisputed that Mr. Alkhatib purchased the BE license on the

11

1    Creative Market site on behalf of Zazzle on May 4, 2017, and Plaintiff's claims against Defendants

2    accrued "at the latest by October 12, 2017," when Zazzle publicly made BE Trio available on the

3    Zazzle Design Tool. Mot. at 4; *see* ECF 338-9, Ex. E to Nolan Decl., Mr. Alkhatib Decl. ¶¶ 3-9;

4    ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep. 212:18-19; ECF 338-

5    11, Ex. G to Nolan Decl., Creative Market Dep., 90:7-9, 94:9-14; ECF 338-12, Ex. H to Nolan Decl.

6    Defendants argue that the three-year limitations period ended no later than October 12, 2020, and

7    the four-year limitations period ended no later than October 12, 2021. Mot. at 5. Defendants argue

8    that all Plaintiff's claims were time-barred when she filed the complaint on August 24, 2022. *Id.*

9        In response, Plaintiff argues that Defendants have failed to meet their burden to prove that

10   each of Plaintiff's claims accrued by October 12, 2017. Plaintiff argues that Defendants have failed

11   to establish that she had actual or constructive knowledge of her claims at that time. Opp. at 6.

12   Plaintiff also argues that the statutes of limitations were tolled by the delayed discovery rule. Opp.

13   at 8-10. Plaintiff further argues Defendant's time-bar defense on her copyright infringement claim

14   and breach of contract claim is precluded by the separate-accrual rule. Opp. at 10-11.

15       The Court addresses the parties' arguments in turn.

16       **1.  There Is Genuine Issue of Material Fact as to whether the Discovery Rule**

17       **Applies.**

18       Under California's "discovery rule," the statute of limitations can be tolled until "the plaintiff

19   discovers or could have discovered, through the exercise of reasonable diligence, all of the facts

20   essential to his cause of action." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134

21   (N.D. Cal. 2006). The "discovery rule" applies when the underlying harm is "particularly difficult"

22   to discover. *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1232 (2014). A

23   plaintiff may be unable to discover a cause of action "when it is particularly difficult for the plaintiff

24   to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or

25   beyond what the ordinary person could be expected to understand." *Id.* (quoting *Shively v. Bozanich*,

26   31 Cal.4th 1320, 1248 (2003)). The discovery rule can be applied when a defendant fraudulently

27   conceals a claim or when it is difficult for the plaintiff to detect the injury or the act causing the

28   injury. *See Wakefield v. Wells Fargo & Co.*, No. C 13-05053 LB, 2014 WL 5077134, at *10-11

United States District Court
Northern District of California

United States District Court
Northern District of California

(N.D. Cal. Oct. 9, 2014). "Although delayed accrual under the discovery rule generally applies to most tort actions, it has been held applicable to certain types of breach of contract actions, such as those involving fraud or misrepresentation by the defendant." *NBCUniversal*, 225 Cal. App. 4th 1232. Additionally, in unusual breach of contract actions, "the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *Id.* A plaintiff seeking to avoid the statute of limitations "bears the burden of showing diligence." *James v. J2 Cloud Servs. Inc.*, No. 216CV05769CASPJWX, 2019 WL 2304157, at *12 (C.D. Cal. May 29, 2019), *aff'd sub nom. James v. J2 Cloud Servs., LLC*, 823 F. App'x 945 (Fed. Cir. 2020).

Defendants argue that the discovery rule does not apply because "Zazzle was transparent about its licensing and use of BE." Mot. at 6. Defendants also argue that there is no evidence suggesting that "Zazzle fraudulently concealed Plaintiff's claims." Reply at 3. Defendants argue that "the only information [Plaintiff] would have needed to discover that Zazzle was allegedly using BE without authorization was the fact that BE was on Zazzle." Reply at 3.

Plaintiff argues that the harm resulting from Defendants' alleged breaches was "not 'reasonably discoverable by [Plaintiff] until a future time.'" Opp. at 10. Specifically, Plaintiff argues that Mr. Alkhatib concealed his agency relationship with Zazzle, and she did not have a duty to investigate whether there was a principal-agency relationship between Mr. Alkahtib and Zazzle. Opp. at 8-9 (citing *W.W. Leasing Unltd. v. Comm. Stand. Title Ins. Co.*, 149 Cal. App. 3d 792, 795 (1983)). Plaintiff also contends that she did not have a continuous duty to monitor the BE License, and the limitation period was tolled until at least August 2020 when she first learned about Zazzle's unauthorized use. Opp. at 9 (citing *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 881, 888-89 (C.D. Cal. 2021), *aff'd*, 39 F.4th 1236 (9th Cir. 2022)).

Arguing that it would not have been difficult for Plaintiff to discover her claims, Defendants contend that Plaintiff would only have needed to discover that Zazzle was allegedly offering BE on its platform. Reply at 3. Defendants say this is so because Plaintiff has declared that "it was not [her] practice" to grant the type of license she claims Zazzle would have needed to use BE Trio in its Zazzle Design Tool. *Id.* (citing ECF 342-25, N. Laatz Decl. ¶¶ 42, 56-57). Defendants go on to say

that signs BE was "on Zazzle" were everywhere since October 2017. Reply at 3.

But Plaintiff counters with evidence that she never saw BE on Zazzle, and even if she had seen it, she sold "over 240,000 licenses through Creative Market," including over 24,000 licenses in 2017. ECF 342-25, N. Laatz Decl. ¶¶ 42, 47, 61. She states that even if she had seen BE on Zazzle, it would have been impossible to investigate each license where she had no reason to suspect misconduct. ECF 342-25, N. Laatz Decl. ¶¶ 45, 49. Considering this evidence, a reasonable jury could find that it was impossible for Plaintiff to monitor or investigate the compliance of all her licenses, and that it was difficult for her to determine that Zazzle's use was unauthorized before at least January 21, 2020. *See Starz*, 510 F. Supp. 3d at 888-89) (applying discovery rule to toll statute of limitations for a breach of contract claim because, in light of the nearly 1000 individual license with the defendant alone, it was difficult for plaintiff to determine if streaming the licensed film on Amazon was unauthorized by the valid license).

Defendants' reliance on *NBCUniversal* is also off point. *See* Mot. at 6 (citing *NBCUniversal*, 225 Cal. App. 4th at 1232-33); ECF 368, Hearing Tr. at 100:5-14 (same). In *NBCUniversal*, the court found plaintiffs who presented ideas and concepts for a television program were not entitled to delayed accrual under the discovery rule for their breach of contract claims against NBC. *NBCUniversal*, 225 Cal. App. 4th at 1234. The court explained that the plaintiffs were on notice of their breach of contract claim when the television program was publicly televised on a cable channel because there was no evidence that NBC fraudulently concealed the show's broadcast or that the plaintiffs "lacked a meaningful ability to view it." *Id.* Unlike this case, in *NBCUniversal*, the creator would have instantly known that his ideas had been pirated by merely viewing the program. *See id.* Here, recognizing the breach would not have been so obvious. Plaintiff has presented evidence that it was difficult for her to monitor every license she granted and for her to investigate and discover Zazzle's use was unauthorized by the BE License. *See Starz*, 510 F. Supp. 3d at 888 ("The duty of diligence does not create a duty to continuously monitor a licensor to ensure compliance with its obligations."). Based on the foregoing, the Court concludes that this may be one of the rare cases where delayed discovery may be proved in a breach of contract case. There is sufficient disputed evidence on this point to defeat summary judgment. That is not to say that Plaintiff's evidence is

strong, and she will have to carry the burden of proof at trial, but she is entitled to try.

A second and more common basis for applying the discovery rule to toll the statute of limitations is where a defendant has fraudulently concealed a claim. *Wakefield*, 2014 WL 5077134, at *10-11. As to this claim, Plaintiff has failed to submit sufficient evidence to support her claim for fraudulent concealment, as discussed more fully below, § IV.C., and so this basis for applying the discovery rule is defeated.

For the above reasons, the Court cannot conclude that the discovery rule does not apply to Plaintiff's claims as a matter of law.

### 2. There Is Genuine Issue as to whether Plaintiff Had Constructive and Inquiry Notice of her Claims throughout the Limitation Periods.

Under the discovery rule, the limitation periods do not begin to run "until the plaintiff discovers (or reasonably should discover) that she has been injured." *Romo v. Wells Fargo Bank, N.A.*, No. 15-CV-03708-EMC, 2016 WL 324286, at *4 (N.D. Cal. Jan. 27, 2016). A plaintiff is deemed to have discovered her injury when she has "actual or constructive notice of the claims." *Hellgren v. Providential Home Income Plan Inc.,* No. C 06-04728 MHP, 2006 WL 8447964, at *3 (N.D. Cal. Oct. 26, 2006), *aff'd*, 291 F. App'x 70 (9th Cir. 2008). A plaintiff has constructive notice of her claim when she "receives information of circumstances that would put a reasonable person on notice, or has an opportunity to obtain such knowledge through sources open to his or her investigation." *Id*. A plaintiff has "inquiry" notice if she, "through the exercise of due diligence, should have discovered the basis for the cause of action." *Romo*, 2016 WL 324286, at *4 (internal citation omitted).

Defendants argue that Plaintiff had constructive and inquiry notice of her claims during the limitation periods because she could have discovered her claims with reasonable diligence. Mot. at 7-9; Reply at 4-5. In response, Plaintiff argues that the evidence offered by Defendants is speculative and does not establish that Plaintiff had "actual or constructive knowledge as a matter of law." Opp. at 7.

Here, Defendants present evidence that 1) Plaintiff had an account with Zazzle in 2014 and a shop on Zazzle by 2016, ECF 342-25, N. Laatz Decl. ¶ 68; ECF 338-4, Ex. B to Nolan Decl., N.

Laatz Dep. 157:17-158:20; 2) Plaintiff has been following Zazzle on Instagram since March 2016 and used #zazzle on nine of her own Instagram posts between 2016 and 2018, ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep., 161:24-162:5; ECF 338-53 – ECF 338-61, Ex. K1-K9 to Nolan Decl.; 3) between 2017-2019, Zazzle made public blog and Instagram posts containing BE, ECF 388-12 – ECF 338-52, Ex. H; I1-I8; J1-J32 to Nolan Decl.; and 4) Plaintiff received at least 677 promotional emails from Zazzle, including 48 emails that contained images of products featuring BE, and at least 32 of the 677 promotional emails were opened, ECF 338-100, J. Li Decl. ¶¶ 2-5, 7; ECF 338-101 – ECF 338-149, Ex. QQ, RR1-RR48 to J. Li Decl.

Plaintiff submits evidence that she did not check Instagram messages or notifications, that she was not aware that Zazzle had tagged her in its Instagram posts, and that she relied on her Creative Market page "for communicating with customers primarily." ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep. 166:4-22. Plaintiff also submits evidence that she used #zazzle on Instagram because she knew it was a marketplace for consumer product designs whose customers "were most likely to be interested in [BE]." ECF 338-4, Ex. B to Nolan Decl., N. Laatz Tr., 163:15-164:21. Plaintiff also points out that the 32 emails from Zazzle with an "open" status did not overlap with the 48 emails that included images of products featuring BE. Opp. at 8 (citing ECF 338-100, J. Li Decl. ¶¶ 5, 7).

Defendants rely on *Goldberg* and argue that, as a professional designer and licensor of fonts to online services, Plaintiff should have discovered the injury caused by Defendants through reasonable diligence. Reply at 4-5 (citing *Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1149 (N.D. Cal. 2007)). In *Goldberg*, the Court found it unreasonable that plaintiff, a "successful song writer and producer" who shopped around a movie script and soundtrack to movie studios, lacked actual knowledge of the alleged copyright infringement of *Terminator*–a worldwide blockbuster. *See Goldberg*, 482 F.Supp.2d at 1148-49. Unlike *Goldberg*, here, the BE Trio does not share a similar world-wide fame as the *Terminator*, and there remains a great amount of factual dispute regarding whether it was reasonable for Plaintiff to not have knowledge of the Defendants' allegedly unauthorized use of the BE Trio during the limitations period.

Defendants' reliance on *Shinde* is also off point. *See* Mot. at 8 (citing *Shinde v. Nithyananda*

*Found.*, No. EDCV1300363JGBSPX, 2014 WL 10988110, at \*5-6 (C.D. Cal. Mar. 21, 2014)); ECF 368, Hearing Tr. at 100:20-101:4 (same). In *Shinde*, the Court found that the plaintiffs failed to allege in their complaint that they could not have discovered their donations were used for other purposes through reasonable diligence in light of their allegations that they continued to receive receipts reflecting other uses for the donations. *Shinde*, 2014 WL 10988110, at \*5. Unlike *Shinde*, here, Plaintiff has produced evidence stating that she "did not learn of Zazzle's claimed purchase of [the BE License] until August 26, 2020, when Liana Larson replied to an inquiry" by John Laatz. ECF 342-25, N. Laatz Decl. ¶ 43.

Although Defendants have submitted strong evidence that Plaintiff had at least constructive knowledge that BE Trio was offered on Zazzle before 2020, including hundreds of social media posts, emails, and public marketing of BE in channels Plaintiff followed, that evidence is disputed by enough evidence to the contrary to defeat summary judgment. Here, Plaintiff has issued tens of thousands of licenses and, even if she saw Zazzle's social media posts and promotional emails, a reasonable jury could find that she was not on notice of Zazzle's alleged breach of the BE License. *See Starz*, 510 F. Supp. 3d at 889. Drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has established, at a minimum, that a reasonable jury could credit her testimony and find that she did not have inquiry or constructive notice of Zazzle's allegedly unauthorized use of the BE Trio during the limitations period. *BMG Rts. Mgmt. (US) LLC v. Glob. Eagle Ent. Inc.*, No. 218CV03723VAPJEMX, 2019 WL 4544424, at \*4 (C.D. Cal. Aug. 20, 2019) (denying defendants' motion for partial summary judgment on its statute of limitations defense and finding Defendants' argument that Plaintiff had constructive notice from mainstream media's publications on their use was speculative).

For the above reasons, the Court finds that there are disputed facts whether Plaintiff had constructive and inquiry notice of Zazzle's allegedly unauthorized use of the BE Software during the limitations period.

### 3. The separate-accural rule does not apply to Plaintiff's copyright infringement claim and breach of contract claim.

In the alternative, Plaintiff argues that, under the separate-accural rule, she is at least entitled

1    to copyright infringement damages for the three years preceding her filing the Complaint and breach

2    of contract damages for the four years preceding her filing the Complaint. Opp. at 10-11.

3         The Court addresses each claim in turn.

### i. Claim 4: Federal Copyright Infringement

5         For a copyright infringement claim, "the separate-accrual rule attends the copyright statute

6    of limitations." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Under the

7    separate-accrual rule, "when a defendant commits successive violations, the statute of limitations

8    runs separately from each violation." *Id.* The alleged infringer "commits a new [infringing act]"

9    every time he reproduces or distributes an infringing work, and "each infringing act starts a new

10   limitations period." *Id.* "Thus, when a defendant has engaged (or is alleged to have engaged) in a

11   series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b)

12   with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but

13   untimely with respect to prior acts of the same or similar kind." *Id.* at 672. The "separately accruing

14   harm should not be confused with harm from past violations that are continuing." *Bell v. Oakland

15   Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 4458890, at *5 (N.D. Cal. May 4, 2020)

16   (citing *Petrella*, 572 U.S. at 671 n.6).

17        Defendants argue that Zazzle's alleged infringing acts–downloading and installing the BE

18   Software on its servers and making the BE Trio available to its users–were completed by 2017, and

19   there have been no new infringements since then. Reply at 5. In response, Plaintiff argues that the

20   separate-accrual rule applies to her copyright infringement claim because Zazzle granted its users

21   access to the BE Trio until March 2023. Opp. at 10-11.

22        Defendants point to the evidence that 1) when Defendants purchased the BE License, they

23   received the BE Software as installable OTF files for the BE Trio. ECF 338-10 (unredacted at ECF

24   337-3), Ex. F to Nolan Decl., Alkhatib Dep., 131:5-7; ECF 338-150, Rucinski Decl. ¶ 22; and 2) by

25   October 12, 2017, Defendants had installed the BE Software on the Zazzle Design Tool and made

26   the BE Trio publicly available, ECF 338-12, Ex. H to Nolan Decl. Plaintiff has no evidence to the

27   contrary. Defendants contend that if there was any infringement, it was complete no later than

28   October 12, 2017. Reply at 5-6. And there were no further acts of infringement. Reply at 6.

United States District Court
Northern District of California

The Court finds that Defendants have met their initial burden on summary judgment of showing that they did not engage in any new acts of infringement within the limitations period. *Petrella*, 572 U.S. 671. The burden thus shifts to Plaintiff to present evidence from which a reasonable jury could find that Defendants engaged in new acts that infringed Plaintiff's copyrights within the limitations period.

Plaintiff submits evidence that each time Zazzle's users created a design using the BE Trio, Zazzle's servers used the BE Software to generate the design. ECF 342-49 (unredacted at ECF 341-19), Garrie Decl. ¶¶ 27, 29-30; ECF 342-21, Ex. 20 to Ryan Decl. But this evidence at best shows a continuation of Zazzle's alleged infringement in 2017 when Zazzle made the BE Trio publicly available on the Zazzle Design Tool. The evidence Plaintiff submits fails to show that a customer's use of BE Trio on the Zazzle Design Tool is anything more than harm from the past violation of installing the copyrighted BE Software on Zazzle's servers. *See Bell*, No. 19-CV-01308-JST, 2020 WL 4458890, at *5; *Live Face on Web, LLC v. AZ Metroway, Inc.*, No. 515CV01701CASKKX, 2016 WL 4402796, at *7 n.4 (C.D. Cal. Aug. 15, 2016) (finding defendants' use of the infringing source code in 2011 that remained unchanged through 2015 constituted only harm from a past violation that was continuing through 2015, and not a series of new wrongs that would give rise to separately accruing harms).

Accordingly, the Court GRANTS Defendants' motion for summary judgment that the separate-accrual rule does not apply to Plaintiff's Claim 5 for Federal Copyright Infringement.

### ii.    Claim 6: Breach of Contract

Under California law, "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013) (quoting *Hogar Dulce Hogar v. Community Development Commission*, 110 Cal.App.4th 1288, 1295 (2003)). "Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [] —each may be treated as an independently actionable wrong with its own time limit for recovery." *Aryeh*, 55 Cal. 4th at 1199 (internal citation omitted).

Defendants argue that the separate-accrual rule does not apply because all of Plaintiff's

1    alleged harm arose from the license purchase in 2017 and the alleged breach, if any, was caused by

2    Zazzle installing the licensed BE Software on multiple servers and making it publicly available in

3    2017. Mot. at 5; Reply at 5-6. Plaintiff argues that a new limitations period was trigged each time

4    Zazzle provided a user with access to and/or use of the BE Trio and BE Software. Opp. at 11.

5         The Parties rely on the same evidence for this claim as they submitted regarding separate-

6    accrual of copyright infringement. *See* Mot. at 5; Opp. at 10-11; Reply at 5-6. Applying California

7    law to this evidence, the Court finds that Defendants' evidence is sufficient to meet their initial

8    burden that any contract breach occurred no later than October 12, 2017, when the licensed software

9    was installed. *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 895-96 (N.D. Cal. 2015) (finding the

10   separate-accural rule did not apply to plaintiff's state law claims because defendant did not enter

11   into new agreements during the limitations period). The burden thus shifts to Plaintiff to present

12   evidence from which a reasonable jury could find that Defendants had a "continuing or recurring

13   obligation" that a new wrongful act would trigger a new limitations period. *Id.* at 895.

14        Plaintiff points to evidence that Zazzle provided its users access and use of the BE Trio and

15   BE Software during the limitations period. ECF 342-21, Ex. 20 to Ryan Decl. But this evidence is

16   not sufficient to show that there were any "separate, recurring invasions" of Plaintiff's rights, such

17   as breach of newly entered agreements between Plaintiff and Defendants during the limitations

18   period. *Ryan*, 147 F. Supp. 3d at 896 (citing *Aryeh*, 55 Cal. 4th at 1198). As the California Supreme

19   Court instructs, it is the nature of the obligation breached that must be considered. *Aryeh*, 55 Cal.

20   4th at 1200. Here, the duty owned by Zazzle was to use the BE Software on a "single-seat" license

21   basis, and thus, if there was a breach, it was installing the BE Software on multiple servers and

22   making it publicly avaliable—all of which occurred before October 12, 2017. *See* ECF 338-12, Ex.

23   H to Nolan Decl. Plaintiff's evidence does not dispute this. *See* ECF 342-21, Ex. 20 to Ryan Decl.

24   That is not to say that her measure of damages would not be calculated on the basis of the number

25   of Zazzle customers who used BE Trio if she succeeds on her delayed discovery claim. The measure

26   of damages is not presently before the Court.

27        Unlike *Aryeh*, here, all of Defendants' allegedly unauthorized conduct arose out of the same

28   purchase of BE License and installation on Zazzle's servers, which occurred before the limitations

United States District Court
Northern District of California

1    period. *See Ryan*, 147 F. Supp. 3d at 896. Continuous availability in the Zazzle Design Tool does

2    not create separate harms.

3        Accordingly, the Court GRANTS Defendants' motion for summary judgment that the

4    separate-accrual rule does not apply to Plaintiff's Claim 7 for breach of contract.

5                                                    ***

6        For the above reasons, the Court DENIES Defendants' motion for summary judgment on

7    the basis that Plaintiff's claims are time-barred. Plaintiff may proceed to trial to prove delayed

8    discovery. The Court GRANTS Defendants' motion for summary judgment to the extent that the

9    separate-accrual rule does not apply to Plaintiff's Claim 5 for Federal Copyright Infringement and

10   Claim 7 for breach of contract.

11   ### B.  Claim 1, Fraudulent Misrepresentation against Mr. Alkhatib and Zazzle under

12   ### Cal. Civ. Code § 1572

13       Plaintiff asserts Claim 1 for fraudulent misrepresentation against Defendants under

14   California Civil Code § 1572, which codifies common law fraud. *See* FAC ¶¶ 175–182. "'The

15   elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure);

16   (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable

17   reliance; and (e) resulting damage.'" *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (citation

18   omitted).

19       Defendants argue that they made no false statement to Plaintiff or Creative Market when Mr.

20   Alkhatib purchased the BE License on behalf of Zazzle on Creative Market. Mot. at 10. Defendants

21   argue that it is undisputed that "Zazzle could not have acted with the requisite intent to defraud

22   Plaintiff." Reply at 6; *see* Mot. at 9-10. In response, Plaintiff argues that there is genuine dispute of

23   material fact that a reasonable jury could find "Zazzle knowingly made false representations." Opp.

24   at 14.

25       As to the misrepresentation element, it is undisputed that Mr. Alkhatib had no direct

26   communication with Plaintiff and that the purchase was entirely online. Further, Defendants point

27   to the deposition of Creative Market that Mr. Alkhatib did not communicate anything false to

28   Creative Market or Plaintiff when he purchased the BE License. Mot. at 10 (citing ECF 338-11, Ex.

1    G to Nolan Decl., Creative Market Dep. 94:5-14).

2    The Court finds that the testimony from Mr. Alkhatib and Creative Market is sufficient to

3    meet Defendants' initial burden on summary judgment. None of this testimony suggests that Mr.

4    Alkhatib or Zazzle provided any false information to Creative Market when Mr. Alkhatib purchased

5    the BE License. *See* ECF 338-11, Ex. G to Nolan Decl., Creative Market Dep. 94:5-14). The burden

6    thus shifts to Plaintiff to present evidence from which a reasonable jury could find that Defendants

7    made a knowingly false representation when Mr. Alkhatib purchased the BE License, or had the

8    intent to defraud Plaintiff.

9    Plaintiff submits evidence from which she argues inferences of intent to defraud could be

10   drawn: 1) Zazzle and its employees did not review their browser histories to verify if they visited

11   the License FAQ or Terms, ECF 342-22, Ex. 21 to Ryan Decl., Liu 30(b)(6) Dep. 20:15-28:25; 2)

12   Zazzle could not determine whether its "Fonts-Legal" folder ever contained copies of the License

13   FAQ or License Terms, ECF 342-22, Ex. 21 to Ryan Decl., Liu 30(b)(6) Dep. 80:11-81:14; 3) in

14   2016, Ms. McGhie sent an initial email to Plaintiff asking about a "server-based" license, ECF 338-

15   5 (unredacted at ECF 337-8), Ex. C1 to Nolan Decl. (ECF 337-8 Unsealed); ECF 338-6, Ex. C2 to

16   Nolan Decl.; and 4) Defendants purchased a $49 license for the "Beyond the Mountains" font that

17   was limited to "install[ing] the font on a maximum of 10 devices," despite the fact that Zazzle was

18   aware of a license option priced at $1,490 that would provide "an unlimited device license," ECF

19   342-15, Ex. 14 to Ryan Decl.; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl. Alkhatib

20   Dep. at 140:11-142.5; and ECF 342-1 (unredacted at ECF 341-3), Ryan Decl. ¶ 12.; Opp. at 12-13.

21   The Court has reviewed this evidence and concludes that no reasonable jury could make the leap to

22   infer fraudulent intent from this evidence.

23   Plaintiff also fails to identify any misrepresentation by Defendants. With respect to alleged

24   false statements made by Mr. Alkhatib in purchasing the BE License, Plaintiff points to the

25   deposition of Michelle Reynaud ("Ms. Reynaud"), Rule 30(b)(6) designee of Creative Market, who

26   testified that Mr. Alkhatib's use of his Zazzle email address "was not viewable on his Creative

27   Market account nor provided to Plaintiff." Opp. at 13 (citing ECF 342-10, Ex. 9 to Ryal Decl.,

28   Reynaud Dep. at 174:7-17). But there is no evidence that Mr. Alkhatib was aware of this fact. With

United States District Court
Northern District of California

1    respect to Defendants' intent to defraud Plaintiff, Plaintiff points to her declaration that Mr. Alkhatib

2    did not indicate his purchase was for Zazzle. Opp. at 13 (citing ECF 342-25, N. Laatz Decl. ¶ 51).

3    But Plaintiff has not identified any evidence that Mr. Alkhatib or Zazzle made any false statements

4    when purchasing the BE License or that Mr. Alkhatib had a duty to indicate his purchase was for

5    Zazzle. Nor does Plaintiff point to any portion of the purchase page where Mr. Alkhatib could have

6    made such a disclosure. Accordingly, Plaintiff has failed to meet her burden to identify specific

7    evidence demonstrating the existence of genuine disputes on Defendants' alleged misrepresentation

8    or intent to defraud Plaintiff.

9        Defendants' motion for summary judgment is GRANTED as to Claim 1, Fraudulent

10   Misrepresentation against Mr. Alkhatib and Zazzle under Cal. Civ. Code § 1572, on the basis that

11   no reasonable jury could find that Defendants fraudulently misrepresented any material fact or had

12   the intent to do so when Mr. Alkhatib purchased the BE License.

13       **C. Claim 2, Fraudulent Concealment against Mr. Alkhatib and Zazzle under Cal. Civ.**

14          **Code § 1572**

15       Plaintiff asserts Claim 2 for fraudulent concealment against Defendants under California

16   Civil Code § 1572, which codifies common law fraud. *See* FAC ¶¶ 183–189. "The required elements

17   for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant

18   with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by

19   intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would

20   not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5)

21   plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v.*

22   *Healthcare Partners Med. Grp., Inc.*, 238 Cal.App.4th 124, 162 (2015).

23       Defendants argue that Plaintiff cannot establish that Zazzle "concealed" a material fact or

24   that Zazzle had a duty to disclose that material fact. Mot. at 11; Reply at 7. In response, Plaintiff

25   argues that Mr. Alkhatib concealed his employment relationship with Zazzle and his intention to

26   allow Zazzle to install the BE Software on its server. Opp. at 13.

27       With respect to the "concealment or suppression of a material fact" element, Defendants

28   present the deposition of Creative Market that Mr. Alkhatib used his @zazzle.com email address

United States District Court
Northern District of California

1  and a Zazzle company credit card to purchase the BE License, and that there was no prompt or

2  mechanism to enter employer or company information on the purchase page. Mot. at 11 (citing ECF

3  338-11, Ex. G to Nolan Decl., Creative Market Dep., 92:17-24); *see* ECF 338-9, Ex. E to Nolan

4  Decl., Mr. Alkhatib Decl. ¶¶ 3-9; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl.,

5  Alkhatib Dep. 212:18-19. Defendants also point to Plaintiff's own deposition when she testified that

6  she did not believe Defendants "were trying to hide the fact that [Zazzle] was offering Blooming

7  Elegant." Mot. at 11 (citing ECF 338-4, Ex. B to Nolan Decl., N. Laatz Dep., 192:17-22). With

8  respect to the "duty to disclose" element, Defendants argue that they had no duty to "disclose more

9  information than Plaintiff and/or Creative Market requested." Mot. at 11. This was an ordinary arm-

10  length commercial purchase from a public website.

11      The Court finds that Defendants have met their initial burden on summary judgment. The

12  evidence presented by Defendants shows that Plaintiff cannot prove that Mr. Alkhatib or Zazzle

13  concealed a material fact when purchasing the BE License. There is also no evidence or supporting

14  authority as to Defendants' duty to disclose any allegedly concealed fact. *See Jackson v. City of*

15  *Modesto*, No. 1:21-CV-0415 AWI EPG, 2022 WL 3083649, at *7 (E.D. Cal. Aug. 3, 2022). The

16  burden thus shifts to Plaintiff to present evidence from which a reasonable jury could find that

17  Defendants concealed a material fact when Mr. Alkhatib purchased the BE License, or had the duty

18  to disclose any concealed fact.

19      Plaintiff again submits evidence from which she claims inferences of intent to defraud could

20  be made: 1) Zazzle and its employees did not review their browser histories to verify if they visited

21  the License FAQ or Terms, ECF 342-22, Ex. 21 to Ryan Decl., Liu 30(b)(6) Dep. 20:15-28:25; 2)

22  Zazzle could not determine whether its "Fonts-Legal" folder ever contained copies of the License

23  FAQ or License Terms, ECF 342-22, Ex. 21 to Ryan Decl., Liu 30(b)(6) Dep. 80:11-81:14; 3) in

24  2016, Ms. McGhie sent an initial email to Plaintiff asking about a "server-based" license, ECF 338-

25  5 (unredacted at ECF 337-8), Ex. C1 to Nolan Decl. (ECF 337-8 Unsealed); ECF 338-6, Ex. C2 to

26  Nolan Decl.; and 4) Defendants purchased a $49 license for the "Beyond the Mountains" font that

27  was limited to "install[ing] the font on a maximum of 10 devices," despite the fact that Zazzle was

28  aware of a license option priced at $1,490 that would provide "an unlimited device license," ECF

1   342-15, Ex. 14 to Ryan Decl.; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl. Alkhatib

2   Dep. at 140:11-142.5; and ECF 342-1 (unredacted at ECF 341-3), Ryan Decl. ¶ 12. Opp. at 12-13.

3   But, as discussed above, no reasonable jury could make the leap to infer fraudulent intent from this

4   evidence.

5       Plaintiff also points to Ms. Reynaud's testimony that Mr. Alkhatib's use of his Zazzle email

6   address was not viewable by Plaintiff and Plaintiff's own testimony that Mr. Alkhatib did not

7   indicate his purchase was for Zazzle. *See* Opp. at 13 (citing ECF 342-10, Ex. 9 to Ryal Decl.,

8   Reynaud Dep. at 174:7-17 and ECF 342-25, N. Laatz Decl. ¶ 51). But none of this evidence suggests

9   that Mr. Alkhatib or Zazzle concealed any material facts from Creative Market when Mr. Alkhatib

10  purchased the BE License. Additionally, the record contains no evidence or authority showing that

11  Defendants had a duty to disclose that the purchase was for Zazzle or that Defendants intended to

12  defraud Plaintiff by concealing the purpose of the purchase. Indeed, Plaintiff herself did not believe

13  that Defendants were concealing the fact that Zazzle was offering the BE fonts. 338-4, Ex. B to

14  Nolan Decl., N. Laatz Dep., 192:17-22. Accordingly, Plaintiff has failed to meet her burden to

15  designate specific evidence demonstrating the existence of genuine disputes on Defendants'

16  concealment of any material fact.

17      Accordingly, Defendants' motion for summary judgment is GRANTED as to Claim 2,

18  Fraudulent Concealment against Mr. Alkhatib and Zazzle under Cal. Civ. Code § 1572.

19  **D. Claim 3, Promissory Fraud against Mr. Alkhatib and Zazzle under Cal. Civ. Code**

20  **§ 1572**

21      Plaintiff asserts Claim 3 for promissory fraud against Defendants under California Civil

22  Code § 1572, which codifies common law fraud. *See* FAC ¶¶ 190–195. Promissory Fraud "is

23  cognizable when a party enters into an agreement without intending to be bound by its terms." *Hsu*

24  *v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing *Locke v. Warner Bros., Inc.*, 57

25  Cal.App.4th 354, 367 (1997). To prevail a promissory fraud claim, a plaintiff is required to prove

26  that defendants "harbored an intention not to be bound by terms of the contract at formation." *Hsu*,

27  211 F.R.D. at 620. However, "something more than nonperformance is required to prove the

28  defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30

United States District Court
Northern District of California

25

1  (1985) (internal quotation marks and citations omitted). A "plaintiff in an action on a fraudulent

2  promise must produce evidence of the promisor's intent to mislead him." *Id.*

### 2. Legal Standard Regarding Promissory Fraud

4  As an initial matter, the parties dispute the correct standard for promissory fraud. Plaintiff

5  argues a "reckless disregard" standard should be applied to the claim of promissory fraud. Opp. at

6  11 (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)). In response,

7  Defendants argue that fraud requires proving "a 'false representation' made with fraudulent intent."

8  Reply at 6 (citing *Engalla*, 15 Cal. 4th at 974).

9  Having reviewed *Engalla*, the Court agrees with Defendants. In *Engalla*, the California

10  Supreme Court explained that promissory fraud "is a subspecies of fraud and deceit" and may arise

11  when "a defendant fraudulently induces the plaintiff to enter into a contract." *Engalla*, 15 Cal. 4th

12  at 973-74. The Court explained that a plaintiff who brings a promissory fraud claim must still show

13  "[t]he elements of fraud that will give rise to a tort action for deceit," namely, (a) misrepresentation,

14  (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

15  (e) resulting damage. *Engalla*, 15 Cal. 4th at 974. While the *Engalla* Court explained that "[f]alse

16  representations made recklessly and without regard for their truth in order to induce action by

17  another are the equivalent of misrepresentations knowingly and intentionally uttered," *id.* (citing

18  *Yellow Creek Logging Corp. v. Dare*, 216 Cal.App.2d 50, 55 (1963)), the Court did not apply a

19  "reckless disregard" standard as a substitute for proving a misrepresentation in a promissory fraud

20  claim. *Engalla*, 15 Cal. 4th at 974.

### 3. There Is No Genuine Dispute of Material Fact as to Promissory Fraud.

22  Defendants argue that Plaintiff cannot establish that at the time of Mr. Alkhatib's purchase,

23  Defendants knew that the BE License would not cover Zazzle's intended use and "fraudulently

24  schemed to breach it immediately." Mot. at 12. In response, Plaintiff argues that Defendants acted

25  recklessly, and that there is evidence that Defendants engaged in promissory fraud. Opp. at 11-13.

26  With respect to the scope of the BE License, Defendants point to the Shop Page's statement

27  that they could "Use This Font For: Commercial Use, Unlimited Number of Projects, [and]

28  Unlimited End Products for Sale." Opp. at 12 (citing ECF 338-10 (unredacted at ECF 337-3), Ex. F

United States District Court
Northern District of California

United States District Court
Northern District of California

to Nolan Decl., Alkhatib Dep., 237:15-23 and ECF 338-71 (unredacted at ECF 337-4), Ex. U to Nolan Decl., Sheu Dep. 43:11-44:23). Defendants also point to the deposition testimony of Zazzle's employee, Catherine Sheu, who testified that "plenty of other script fonts . . . are free or unlimited-use." Opp. at 12 (citing ECF 338-71 (unredacted at ECF 337-4), Ex. U to Nolan Decl., Sheu Dep., 49:13-22). With respect to Zazzle's intent to breach the BE License, Defendants point to the testimony of eight Zazzle employees, who all testified that they were not aware of the terms in the Licensing FAQ. Mot. at 12-13; *see* ECF 338-73, Ex. W to Nolan Decl., Zazzle via Liu Dep., 61:8-65:19; ECF 338-74, Ex. X to Nolan Decl., H. Beaver Dep, 148:17-149:23; ECF 338-70, Ex. T to Nolan Decl., McGhie Dep., 52:24-53:2, 58:7-19; ECF 338-71 (unredacted at ECF 337-4), Ex. U to Nolan Decl., Sheu Dep., 48:12-50:2; ECF 338-75 (unredacted at ECF 337-5), Ex. Y to Nolan Decl., Haley Dep., 60:20-22; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep., 92:24-94:7, 224:23-228:24; ECF 338-76 (unredacted at ECF 337-6), Ex. Z to Nolan Decl., Larson Dep., 33:3-12, 52:16-53:5; ECF 338-72, Ex. V to Nolan Decl., Liu Sept. Tr. 82:22-83:19; 338-77, Ex. AA to Nolan Decl., J. Beaver Tr. 35:4-36:22.

The Court finds that Defendants have met their initial burden on summary judgment. The terms on the Shop Page support Zazzle's view that the BE License would cover Zazzle's intended "[c]ommercial use." *See* ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep., 237:15-23. Additionally, Defendants' evidence shows that, at the time Mr. Alkhatib purchased the BE License, Zazzle did not know its intended use would exceed the scope of the BE License. *See Hsu*, 211 F.R.D. 620. As the Court finds below, *infra* §IV.F.1, Defendants did not assent to the License FAQ when they purchased the BE License and there is no evidence that Defendants read the License FAQ. The burden thus shifts to Plaintiff to present evidence from which a reasonable jury could find that Defendants engaged in promissory fraud.

Plaintiff points out that, in light of the Shop Page's statement that the BE License was for "Commercial Use" with "a few exceptions," it was implausible for Defendants not to click the link on the Shop Page to the License FAQ. Opp. at 11 (citing ECF 342-5, Exhibit 4 to Ryan Decl., McGhie Dep.,165:4-167:13; ECF 342-9 (unredacted at ECF 341-10), Ex. 8 to Ryan Decl., Sheu Dep.,45:2-48:7). Plaintiff points to an email containing a link to the Shop Page received by Liana

1  Larson, Zazzle's in-house counsel, that it was Ms. Larson's "practice to review software licenses

2  prior to Zazzle's purchase," and that she "d[id not] have any recollection" and "d[id not] have any

3  notes to indicate" she reviewed the terms of the BE License prior to Defendants' purchase. Opp. at

4  12 (citing ECF 342-6 (unredacted at ECF 341-7), Ex. 5 to Ryan Decl., ECF 342-14 (unredacted at

5  ECF 341-14), Ex. 13 to Ryan Decl., Larson Dep. 21:15-23, 42:5-18, 43:7-45:3). Plaintiff argues that

6  "the only plausible explanation for Ms. McGhie's 2016 message to Plaintiff . . . is that she or others

7  reviewed the License FAQ or Terms at that time." Opp. at 13; ECF 338-5 (unredacted at ECF 337-

8  8), Ex. C1 to Nolan Decl. Plaintiff further argues that Defendants' evidence that none of Zazzle's

9  employee reviewed the License FAQ or the License Terms is "solely based on self-serving

10  testimony." Opp. at 12.

11      Plaintiff has failed to present any evidence to counter Defendants' evidence that Zazzle did

12  not review the License FAQ before Mr. Alkhatib purchased the BE License. All she argues is that

13  this is not credible. Additionally, Plaintiff's contention that Defendants' evidence is "self-serving"

14  cannot "successfully oppose a properly-supported summary judgment motion." *Albergo v.*

15  *Immunosyn Corp.*, No. 09CV2653 DMS (MDD), 2012 WL 12953736, at *4 (S.D. Cal. June 19,

16  2012). To the extent that Plaintiff argues that Defendants "acted recklessly" for not reviewing the

17  License FAQ, Opp. 11-12, as explained above that kind of garden-variety recklessness is not an

18  element of promissory estoppel. It is at most slipshod work, but not tantamount to fraud. *See*

19  *Engalla*, 15 Cal. 4th at 974. Plaintiff also argues that Zazzle must have intended to breach the BE

20  License because Ms. McGhie sent an initial email to Plaintiff asking about a "server-based" license.

21  Opp. at 12-13. But that evidence is not enough to support the multiple inferences Plaintiff suggests,

22  and no reasonable jury could make that leap.

23      Plaintiff also points to other license purchases made by Defendants on the same day they

24  purchased the BE License. Opp. at 13. Specifically, Plaintiff points to the fact that Defendants

25  purchased a $49 license for the "Beyond the Mountains" font that was limited to "install[ing] the

26  font on a maximum of 10 devices," despite the fact that Zazzle was aware of a license option priced

27  at $1,490 that would provide "an unlimited device license." Opp. at 13 (citing ECF 342-15, Ex. 14

28  to Ryan Decl.; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl. Alkhatib Dep. at

United States District Court
Northern District of California

140:11-142.5; and ECF 342-1 (unredacted at ECF 341-3), Ryan Decl. ¶ 12). Plaintiff asserts that a reasonable inference would be that Zazzle regularly disregarded known license terms. Opp. at 13. This is not a plausible inference. Before Zazzle purchased the license for the "Beyond the Mountains" font, the font's owner confirmed to Zazzle that the "standard [$49] license cover[s] [Zazzle's] needs" for Zazzle's intended use on its servers. ECF 338-6, Ex. C2 to Nolan Decl.; *see* ECF 342-15, Ex. 14 to Ryan Decl. Plaintiff has failed to show how this evidence could show Mr. Alkhatib knew Zazzle's intended use of the BE Trio would not be covered by the BE License.

Certainly, Plaintiff may prove intent to defraud by circumstantial evidence from which the jury could reasonably infer such intent from the circumstances surrounding the license purchase. *See Hsu*, 211 F.R.D. at 620. But the inferences must be reasonable. The evidence submitted by Plaintiff does not support the multiple inferences that would be necessary to create a dispute of fact. Accordingly, Plaintiff has failed to meet her burden to designate specific evidence demonstrating the existence of genuine disputes on Defendants' intention not to be bound by the terms of the BE License at the time of Defendants' purchase.

***

For the above reasons, Defendants' motion for summary judgment is GRANTED as to Claim 3, Promissory Fraud against Mr. Alkhatib and Zazzle under Cal. Civ. Code § 1572.

**E.  Claim 4, Federal Copyright Infringement against Zazzle under 17 U.S.C. § 101**

Defendants argue that this Court should grant summary judgment on Plaintiff's federal copyright infringement claim because (1) the BE Software is "ineligible for copyright protection for lack of human authorship," (2) Plaintiff's copyright registrations for the BE Software are "invalid for fraud on the Copyright Office," and (3) Zazzle "did not infringe on [Plaintiff's] asserted copyrights." *See* Mot at 13-21.

In response, Plaintiff argues that the BE Software is copyrightable and was properly registered, and there is genuine dispute of material fact as to whether Plaintiff's actions amount to fraud on the Copyright Office and whether Defendants' use of the BE Software infringed the asserted copyrights. Opp at 14-22.

The Court addresses the parties' arguments in turn.

### 1.  Validity of the Asserted Copyrights

To bring a civil action for copyright infringement, a plaintiff "must prove both valid ownership of the copyright and infringement of that copyright by the defendants." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1073 (9th Cir. 2000) (internal quotation omitted). A valid copyright requires "original works of authorship fixed in tangible medium of expression." 17 U.S.C. 102(a). "To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* Courts can use the U.S. Copyright Office, Compendium of U.S. Copyright Office Practices ("Compendium") to inform their understanding of authorship as applied to the work at issue. *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940 (9th Cir. 2023) (adopting the definitions in Compendium to access copyrightability); *VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 990 (9th Cir. 2023) ("We must follow the Compendium only to the extent it has the power to persuade.") (internal quotation and modification omitted); *Thaler v. Perlumtter*, 130 F.4th 1039, 1042-43, 1047 (D.C. Cir. 2025) (using the Compendium to access the authorship requirement as applied to the work at issue). But see, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) allows Courts to consider agency interpretation, but not to be bound by it.[1]

A certificate of registration from the Copyright Office made within five years of first publication is prima facie evidence of the validity of the copyright. *See Micro Star v. Formgen Inc.*, 154 F.3d 1007, 1110 (9th Cir. 1998); 17 U.S.C. § 410(c). Here, because Plaintiff registered the copyrights in the BE fonts more than five years after "first publication of the work," the evidentiary weight of her copyright registrations is "within the discretion of the court." 17 U.S.C. § 410(c).

Defendants argue that Plaintiff's copyrights are invalid for lacking human authorship

---

[1] The Court has considered the copyrightability of the BE Trio under the Compendium and relevant statutory and decisional law. Neither party has argued that the Compendium is not binding—Plaintiff argues Defendants misapply its requirements. The Court understands that the Compendium is not binding under *Loper Bright*, but neither party has argued that it is wrong and should not be followed. For purposes of this Order, the Court finds that Compendium to be at least persuasive.

1    because she used FontLab, a font-generating computer program, to generate the registered code.

2    Mot. at 15, 17. In response, Plaintiff argues that BE is copyrightable and was validly registered.

3    Opp. at 18-20.

4         Copyrightability of fonts is limited. Although the parties disagree on the standards to apply

5    to BE Trio and disagree on the effect of the evidence submitted, certain general matters are agreed.

6    "Typeface as typeface"—*i.e.*, the design of a font—is not copyrightable. 37 C.F.R. §

7    202.1(e); *see Adobe Sys. Inc. v. S. Software Inc.*, No. C 95-20710 RMW (PVT), 1998 WL 104303,

8    at *3 (N.D. Cal. Feb. 2, 1998) ("the *Adobe* Case"). However, font software may be

9    copyrightable. *See Adobe*, 1998 WL 104303, at *5; Compendium § 723. Additionally, font data can

10   be copyrightable as literary work. *See* Compendium § 1006.1. Plaintiff's copyrights were registered

11   as "font data." *See* ECF 89-21 (Copyright Reg. No. TX 8-984-766 for the Blooming Elegant font);

12   ECF 89-22 (Copyright Reg. No. TX 8-984-762 for the Blooming Elegant Sans font); ECF 89-23

13   (Copyright Reg. No. TX 8-984-764 for the Blooming Elegant Hand font). Plaintiff argues that her

14   copyrights are at least valid as "computer programs." Opp. at 18-20. The parties agree that human

15   authorship is required. *See* Mot. at 13, Opp. at 17-18.

16        The Court assesses the validity of Plaintiff's copyrights as computer programs and font data.

17                    **a.  Copyrightability as Computer Programs**

18        The parties dispute whether Plaintiff's copyrights are valid as computer programs.

19   Defendants argue that, as evidenced by the correspondence between Plaintiff and the Copyright

20   Office, fonts are "no longer" eligible to be registered as "computer programs." Mot. at 14 (citing

21   ECF 338-78, Ex. BB to Nolan Decl. at 7 and ECF 338-79 (unredacted at ECF 337-11), Ex. CC to

22   Nolan Decl., Phinney Dep., 302:8-304:16). Defendants argue that the files submitted by Plaintiff to

23   the Copyright Office as deposits for the BE Software copyright registrations are ineligible to be

24   registered as "computer program" because they contain "structuring data," not "source code," Mot.

25   at 15, 17; Reply at 8-9. Defendants argue that the files submitted by Plaintiff can only be registered

26   as "font data" if they are "hand coded," which they are not. Mot. at 14 (citing ECF 338-78, Ex. BB

27   to Nolan Decl. at 4).

28        In response, Plaintiff points to the U.S. Copyright Office Regulation on the Registrability of

United States District Court
Northern District of California

Computer Programs That Generate Typefaces, 57 Fed. Reg. 6201-01 (Feb. 21, 1992), codified at 37 C.F.R. pt. 202 ("the 1992 Decision") and the *Adobe* case, arguing that the BE Software should be registered as a "computer program." Opp. at 16. Plaintiff argues that Compendium § 723 "tracks" the 1992 Decision and the *Adobe* case. Opp. at 17. Plaintiff argues that the statements made by the Copyright Office Examiner to Plaintiff regarding the copyrightability of the BE Software "do not have 'the force of law.'" Opp. at 16-17 (citing *Boyds Coll., Ltd. v. Bearington Coll., Inc.*, 365 F. Supp. 2d 612, 616 (M.D. Pa. 2005)). Plaintiff argues that nothing in the 1992 Decision, the *Adobe* case or Compendium § 723 requires font software to be "hand-coded," "manually typed," or "created without a visual font editing program" to be copyrightable.  Opp. at 16, 18. Plaintiff contends that it is improper to import the "hand-coding requirement" from a different section of the Compendium. Opp. at 18.

In reply, Defendants argue that the BE Software was registered as "font data," not "computer programs." Reply at 8. Defendants argue that Plaintiff's reliance on the 1992 Decision, the *Adobe* case, and Compendium § 723 are misplaced because those authorities address the copyrightability of computer programs, not font data. Reply at 9-10.

The 1992 Decision states that "computer programs designed for generating typeface in conjunction with low resolution and other printing devices may involve original computer instructions entitled protection under the Copyright Act." 1992 Decision, 57 Fed. Reg. at 6202 (emphasis added). "For example, the creation of scalable font output programs to produce harmonious fonts consisting of hundreds of characters typically involves many decisions in drafting the instructions that drive the printer." *Id.* "The expression of these decisions is neither limited by the unprotectible shape of the letters nor functionally mandated" and "assuming [this expression] meets the usual standard of authorship, [it] is [] registrable as a computer program." *Id.*

In *Adobe*, Adobe brought a copyright infringement action over its font software programs and raised the 1992 Decision in support of its argument that the material in question was protectable. *See Adobe*, 1998 WL 104303, at *1,4 (N.D. Cal. Feb. 2, 1998). Adobe purchased digital font files and translated them into its own font coordinate system using internal Adobe software. *Id.* An Adobe editor would manipulate the on-curve and off-curve reference points for each glyph and then Adobe

software would "make[] the final assignment of coordinates, produce[] instructions and hints[,] and perform[] any necessary kerning." *Id.* The *Adobe* Court found that "font editors make creative choices as to what points to select based on the image in front of them" and that the code is determined directly from their selections. *Id.* at *5. Accordingly, the Court found that any copying of points is copying of literal expression, and thus, "the Adobe font software programs are protectable original works of authorship." *Id.*

Compendium § 723 applies to the copyrightability of a computer program that generates a typeface. A computer program that generates typeface may be registered if "the program contains a sufficient amount of original authorship in the form of statements or instructions to a computer." *Id*. A "computer program" registration requires a deposit of the program's "source code." *Id*. Compendium § 721.3 defines "source code" as "statements and instructions *written by a human being* using a particular programming language." "[I]n most cases a computer … cannot execute these statements or instructions unless they have been converted into object code" by a separate program within the computer, known as a "compiler." *Id.* at § 721.3. The Copyright Office Examiner may "communicate with the applicant" regarding the application if "the author merely assigned coordinates to a particular letterform and then used a third party program to render typeface or typefont from those coordinates (but did not create any of the source code for that program)." Compendium § 723.

As an initial matter, the Court agrees that the Copyright Office Examiner's opinions are not controlling. *See* Opp. at 16-17. But Defendants' invalidity challenge does not rely on legal opinions of the Copyright Examiner. Rather, Defendants' invalidity challenge is based on whether Plaintiff's copyrights are "original works of human authorship" as required by copyright law. *See* Mot. at 15; 17 U.S.C. 102(a); *see Desire*, 986 F.3d at 1259.

Plaintiff's reliance on the 1992 Decision and the *Adobe* case has limited application here. Opp. at 14-16. As the Court explained in its Order Denying Motion to Dismiss Counterclaim, "neither authority compels the Copyright Office to issue a copyright registration." ECF 176 at 6-7. As the Court previously explained, the 1992 Decision only states that "computer programs designed for generating typeface in conjunction with low resolution and other printing devices *may* involve

United States District Court
Northern District of California

United States District Court
Northern District of California

original computer instructions entitled protection under the Copyright Act." ECF 176 at 7 (citing 1992 Decision, 57 Fed. Reg. at 6202). The Court also explained that the *Adobe* case is distinguishable because the *Adobe* Court did not consider whether a work is copyrightable where "the copyright holder merely 'selected coordinates and various other points of instruction' and a third-party software wrote the implementing code." ECF 176 at 8.

While the *Adobe* case is not controlling law here, the Court still finds Compendium § 723 relevant in determining whether Plaintiff's copyrights are valid for containing "a sufficient amount of original authorship in the form of statements or instructions to a computer." Compendium § 723. Here, Plaintiff has submitted evidence that she created the BE Software which implements the BE Trio fonts on a computer. ECF 342-25, N. Laatz Decl. ¶¶ 5-7. The Court finds that, if credited by the jury, the BE Software could qualify as "a scalable font output program that produces harmonious fonts consisting of hundreds of characters may require numerous decisions in drafting the instructions that drive a printer or other output device." Compendium § 723. The Court is not persuaded by Defendants' argument that Compendium § 723 does not apply because Plaintiff's copyrights are not registered as "computer program." Reply at 8. The Court has the authority to determine the validity of Plaintiff's copyrights based on their original authorship, and Defendants have submitted no authority restricting the basis on which validity is found. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076-79 (9th Cir. 2000) (finding photos can be copyrightable based on their originality but not as "derivative work"); Mot. at 15-18.

To be copyrightable as a computer program that generates typefont, "the applicant must submit a portion of the source code for that program." Compendium § 723. In other words, the applicant must submit "statements and instructions *written by a human being* using a particular programming language." Compendium § 721.3 (defining "source code") (emphasis added). Additionally, the Compendium explicitly comments that "computer programs [] are *hand-coded* by programmers using computer programming languages." Compendium § 1006.1(A) (emphasis added). Indeed, the Copyright Office has repeatedly required that the entire deposit of font software be "hand-coded." See ECF 347-4, Ex. UU to Nolan Reply Decl. ¶¶ 5-8; *see also* ECF 347-5, Ex. VV to Nolan Reply Decl.; ECF 347-6, Ex. WW to Nolan Reply Decl.; ECF 347-7, Ex. XX to Nolan

Reply Decl.). To the extent that Plaintiff argues that importing the hand-coding requirement "violates fundamental rules and canons of construction," the Compendium explicitly states that a copyrightable computer program that generates typefont must include source code "*written* by a human being." Compendium § 721.3 (emphasis added); Compendium § 723.

With the above requirements in mind, the Court finds that there are genuine disputes as to whether Plaintiff "hand-coded" the BE Software based on the following evidence: 1) Plaintiff designed the glyphs initially in Adobe Illustrator and FontLab Studio 5 using a tablet and stylus, ECF 342-25, N. Laatz Decl. ¶ 10-11; ECF 342-53, T. Phinney Decl. ¶¶ 33-34; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 201:12-208:23; 2) Plaintiff passed her glyphs designed in Adobe to FontLab, and FontLab then assigned numerical coordinates to the glyphs, which correspond to "on curve" and "off curve" reference points. ECF 338-150, Rucinski Decl. ¶ 28-32; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 158:19-161:9, 167:1-170:17, 214:6-215:17; 3) Plaintiff then adjusted the on-curve and off-curve reference points for the glyphs in FontLab using a stylus, ECF 342-25, N. Laatz Decl. ¶¶ 11-13; ECF 342-53, T. Phinney Decl. ¶ 35; ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 195:14-22, 250:2-251:2; and 4) Plaintiff states in her declaration that she "personally, where applicable, coded the instructions for how the glyphs should appear next to each other by choosing the values for each of the font-wide variables that FontLab permits a designer to set" and that she "typed and inserted custom OpenType feature code" using the AFDKO language, ECF 342-25, N. Laatz Decl. ¶¶ 13-14; *see* ECF 342-53, Phinney Decl. ¶ 37.

Although much of Plaintiff's evidence may point to unprotectable drawings, and there is evidence to refute her credibility regarding her hand coding, the Court cannot conclude as a matter of law that Plaintiff's copyrights are invalid for failing to contain "a sufficient amount of original authorship" as required for computer programs that generate typefaces. Compendium § 723.

### b.  Copyrightability as Font Data

The BE Trio copyrights were issued as "font data." *See* ECF 89-21; ECF 89-22; ECF 89-23. Plaintiff has consistently argued that they are "computer programs." Opp. at 19. During prosecution, Examiner Howard requested that Plaintiff change the "Author Created" space from "computer

United States District Court
Northern District of California

1  program" to "font data" and asked Plaintiff more than once to "confirm if the information in the

2  PDF … submitted is hand-coded and [] contains the entire work." ECF 338-78, Ex. BB to Nolan

3  Decl. at 4; ECF 342-33, Steinberg Decl. ¶ 5. After Mr. Steinberg replied that Plaintiff authorized

4  the change to "font data" and confirmed that Plaintiff "hand-coded the designs and instructions in

5  the font data [] submitted," Plaintiff registered her copyrights for the BE Software with the "Author

6  Created" space as "Font Data." ECF 338-78, Ex. BB to Nolan Decl. at 2; ECF 342-33, Steinberg

7  Decl. ¶ 5; ECF 89-21; ECF 89-22; ECF 89-23.

8      Defendants argue that the Copyright Office has applied to Plaintiff's copyrights the same

9  standards as it applies to HyperText Markup Language ("HTML"), which can be copyrighted as a

10  literary work. Mot. at 14 (citing Compendium § 1006.1(A)); Reply at 10. Defendants argue that

11  Plaintiff's copyrights are ineligible for registration as non-source code text or data under

12  Compendium § 1006.1(A). Mot. at 17; Reply at 10. Plaintiff does not present any argument as to

13  how Plaintiff's copyrights comprise copyrightable authorship under Compendium § 1006.1(A). *See*

14  Opp. at 18-19.

15      HTML is not considered a computer program for copyright registration purposes.

16  Compendium § 1002.4; *see* § 1006.1(A) (the Copyright Office "will not register HTML as a

17  computer program, because HTML does not constitute source code," but is instead a "markup

18  language that merely formats [] text.").  But HTML can be registered as a literary work "if it was

19  created by a human being (rather than a website design program) and if it contains a sufficient

20  amount of creative expression." Compendium § 1006.1(A). HTML copyright registration requires

21  a deposit of the entire work. *Id.* "Unlike computer programs that are hand-coded by programmers

22  using computer programming languages, HTML is frequently generated by website design software

23  that provides templates or WYSIWYG ("What You See Is What You Get") functionality." *Id.* "If

24  the website design software *automatically creates* the HTML, the website designer is *not considered*

25  *the author* of the resulting markup language." *Id.* (emphasis added).

26      Defendants point to undisputed facts that 1) the BE font data was in "VFJ" files, which are

27  FontLab-generated JSON format files that are "functionally equivalent" to XML markup language,

28  *see* ECF 338-82, Ex. FF to Nolan Decl., Phinney Rep. ¶¶ 35-36; ECF 338-79 (unredacted at ECF

337-11), Ex. CC to Nolan Decl., Phinney Dep. 177:10-21, 255:15-258:1; 2) FontLab, a font-design program with "WYSIWYG" functionality, automatically generated font data that represented the glyphs drawn by Plaintiff, ECF 338-79 (unredacted at ECF 337-11), Ex. CC to Nolan Decl., Phinney Dep., 82:19-24, 140:5-148:9; and 3) the PDF files submitted to the Copyright Office state that the files were "Generated by: FontLab," ECF 338-86, Ex. HH1 to Nolan Decl. at 457; ECF 338-87, Ex. HH2 to Nolan Decl. at 230. Plaintiff has not pointed out any evidence to the contrary. *See* Opp. at 18-19. Absent evidence to the contrary, the Court finds that Defendants have met their burden to prove that the registered VFJ files do not contain a "sufficient amount of creative expression" by Plaintiff as required by Compendium § 1006.1(A) because the font data contained therein was created by FontLab, rather than Plaintiff.

Accordingly, the Court GRANTS Defendants' motion for summary judgment that BE Trio is not copyrightable as font data.

### 2. There is Genuine Issue of Material Fact as to whether Plaintiff Defrauded the Copyright Office in obtaining Her Copyrights for the BE Software.

Under the Copyright Act, a certificate of registration is valid "regardless of whether the certificate contains any inaccurate information, unless-- . . . the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and . . . the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). A party seeking to invalidate a copyright under this section must show: "(1) the registrant submitted a registration application containing inaccuracies, (2) the registrant knew that the application failed to comply with the requisite legal requirements, and (3) the inaccuracies in question were material to the registration decision by the Register of Copyrights." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022). "Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration." *see Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 182 (2022). "[P]rior to making a materiality determination, a court must assess if the registrant submitted his application with knowledge that the information was factually inaccurate and with knowledge that the application failed to comply with the governing legal requirements." *Unicolors*, 52 F.4th at 1065.

United States District Court
Northern District of California

1    Defendants argue that Plaintiff's copyrights for the BE Software are invalid because she

2    obtained them "by knowingly providing materially inaccurate information to the Copyright Office."

3    Mot. at 18. Defendants rely on the prosecution history of Plaintiff's copyrights and argue that

4    Plaintiff, through Mr. Steinberg, "withheld the fact[] that the font data in the PDF files w[as]

5    generated by FontLab in 2016 and exported to VFJ format in 2021." Mot. at 19 (internal quotations

6    omitted). Defendants argue that "Plaintiff plainly knew that she used FontLab to generate the BE

7    fonts," yet that "material fact" was never disclosed to the Examiner. Mot at 20. Defendants contend

8    that Mr. Steinberg represented that Plaintiff "hand coded" the BE font data, despite the fact that

9    "Plaintiff had not 'hand-coded' anything but instead merely dr[ew] her uncopyrightable glyph

10   designs." Mot. at 20 (citing ECF 338-78, Ex. BB to Nolan Decl. at 5). Defendants further argue that,

11   under 17 U.S.C. § 411(b)(2), the "Copyright Office should have the chance to consider whether the

12   true facts about Plaintiff's creation of the BE [Software] would have caused [the Office] to refuse

13   registration." *Id.*

14   In response, Plaintiff argues that "there are at least genuine issues of material fact" as to the

15   accuracy of her statements to the Copyright Office and the effect of her statements on her copyright

16   registrations. Opp. at 22. Specifically, Plaintiff argues that she "hand-coded the designs and

17   instructions" in the PDF file that she submitted for her registration. Opp. at 21 (citing ECF 342-25,

18   N. Laatz Decl. ¶¶ 5-15 and ECF 342-53, T. Phinney Decl. ¶¶ 46-51). Plaintiff argues that there is

19   no evidence suggesting that she knew her statement to the Copyright Office was "factually

20   inaccurate" or "would preclude registration" in light of her knowledge that neither "hand-coding"

21   nor "manual typing" are required in the 1992 Decision or the Compendium. Opp. at 21-22.

22   The Court finds that there are disputed facts as to whether Plaintiff committed fraud on the

23   Copyright Office in obtaining her copyrights in the BE Software. For example, in Plaintiff's

24   correspondence with the Copyright Office, Examiner Howard repeatedly asked Plaintiff "what

25   language or format the code is written in" and directed Plaintiff to confirm that it was "hand-coded

26   rather than generated by a font design program." *See* ECF 338-78, Ex. BB to Nolan Decl. at 5-6;

27   ECF 342-33, Steinberg Decl. ¶ 4. Plaintiff's representative, Mr. Steinberg, stated that Plaintiff

28   "personally created the designs and instructions" in the file submitted and the PDF files reflected

Plaintiff's "original creative work." ECF 338-78, Ex. BB to Nolan Decl. at 4-5; ECF 342-33, Steinberg Decl. ¶ 4. Mr. Steinberg also stated that the OTF files were Plaintiff's "entire work," and that Plaintiff "hand-coded the designs and instructions in the font data [] submitted." ECF 338-78, Ex. BB to Nolan Decl. at 2-3; ECF 342-33, Steinberg Decl. ¶ 5. The Court finds that there are at least genuine disputes as to whether Plaintiff's statements to the Copyright Office were inaccurate, whether Plaintiff knew her submissions failed to comply with the Copyright Office's requirements, and whether any inaccuracies were material to the registration of her copyrights. *Unicolors*, 52 F.4th at 1067.

Accordingly, the Court DENIES Defendants' motion for summary judgment that Plaintiff's copyrights are invalid on the basis that Plaintiff committed fraud on the Copyright Office.

**3.   There is Genuine Issue of Material Fact as to whether Zazzle Infringed Plaintiff's Copyrights on the BE Software.**

To establish copyright infringement, Plaintiff must prove: "(1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011).

Defendants argue that Zazzle did not infringe Plaintiff's copyrights because Zazzle received only the installable OTF files, which "contain no text or source code and are not human readable." Mot. at 21 (citing ECF 338-150, Rucinski Decl. ¶¶ 9, 22, 48); Reply at 13. Defendants contend that Zazzle has never received the VFJ files that were copyrighted and could not have "copied, reproduced, or created a derivative work based on" those files. Mot. at 21 (citing ECF 338-94, Ex. NN1 (Expert Report of Christopher Rucinski) to Nolan Decl., ¶ 38).

In response, Plaintiff argues that the U.S. Copyright Office treats the human-readable source code (e.g., the VFJ files) and the object code (e.g., the OTF files) the "same." Opp. at 20 (citing Compendium § 721.5 and *GCA Corp. v. Chance*, 217 U.S.P.Q. 718, 719-20 (N.D. Cal. 1982)). Plaintiff argues that there are genuine disputes of material fact because Zazzle "copied the OTF files onto over 150 servers," and made the BE Software available to millions of its users. Opp. at 20 (citing ECF 342-49 (unredacted at ECF 341-19), Garrie Decl. ¶¶ 27, 29-30 and ECF 342-12

(unredacted at ECF 341-12), Ex. 11 to Ryan Decl.).

Defendants reply that Plaintiff was required to submit the "entire work" to obtain her font data copyrights. Reply at 14 (citing ECF 338-78, Ex. BB to Nolan Decl. at 4).

Compendium § 721.5 states that "[t]he U.S. Copyright Office views source code and object code as two representations of the same work." Compendium § 721.5 (citing *GCA Corp. v. Chance*, 217 U.S.P.Q. at 719-20 (N.D. Cal. 1982) ("[b]ecause the object code is the encryption of the copyrighted source code, the two are to be treated as one work…")); *see Data Gen. Corp. v. Grumman Sys. Support Corp.*, 803 F. Supp. 487, 490 (D. Mass. 1992) ("[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version."). Generally, the Copyright Office "will not issue separate registrations for the source code and object code versions of the same program." Compendium § 721.5.

For the copyright infringement analysis only, the Court presumes that Plaintiff's copyrights in the BE Software are valid as computer programs. The Court finds that Defendants have failed to meet their burden to prove that Zazzle did not infringe Plaintiff's copyrights. Here, the evidence shows that: 1) when Defendants purchased the BE License, they received the BE Software as installable OTF files for the BE Trio. ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep., 131:5-7; ECF 338-150, Rucinski Decl. ¶ 22; 2) Zazzle installed the BE Software on the Zazzle Design Tools and on multiple of Zazzle's servers, *see* ECF 342-49 (unredacted at ECF 341-19), Garrie Decl. ¶¶ 27, 29-30; ECF 342-12 (unredacted at ECF 341-12), Ex. 11 to Ryan Decl.; and 3) it was not Plaintiff's practice to grant a license for "server-based" use of her BE Software, ECF 342-25, N. Laatz Decl. ¶¶ 56-57. Based on this evidence, the Court cannot conclude that Zazzle's use of the BE Software did not infringe Plaintiff's copyrights in the BE Software. The Court is unpersuaded by Defendants' arguments that they could not have infringed Plaintiff's copyrights because they did not receive the copyrighted VFJ files and that the Copyright Office explicitly refused to register the received OTF files. Mot. at 21; Reply at 13-14. The BE Software, as represented by the OTF files and the VFJ files as the same "literal work," is protected by copyright law from unauthorized copying. *See Data Gen.*, 803 F.Supp. at 490; Compendium § 721.5.

United States District Court
Northern District of California

1   Accordingly, assuming Plaintiff's copyrights are valid, the Court cannot conclude as a matter of law

2   that Defendants did not infringe Plaintiff's copyrights.

3                                                ***

4          For the above reasons, the Court DENIES Defendants' motion for summary judgment on

5   Plaintiff's Claim 4 for Federal Copyright Infringement in violation of 17 U.S.C. § 101.

6          **F.  Claim 6, Breach of Contract against Mr. Alkhatib and Zazzle**

7          Plaintiff asserts a claim for breach of contract against Mr. Alkhatib and Zazzle. *See* FAC ¶¶

8   211–219.  Plaintiff alleges that Defendants breached the terms of the BE License by 1) downloading,

9   copying and installing both the BE Trio and BE Software onto multiple Zazzle servers; 2) by

10  allowing persons other than Mr. Alkhatib to access and use the BE Trio and BE Software; 3) by

11  sharing and redistributing the BE Trio and BE Software; and 4) by failing to pay the price prescribed

12  by the license for each unique user who was provided access to the BE Trio and BE Software. *See*

13  FAC ¶ 218.

14         The parties agree that California law applies to Plaintiff's breach of contract claim. *See* Mot.

15  at 22; Opp. at 22. The essential elements of a breach of contract claim under California law are "(1)

16  the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

17  (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171,

18  1178 (2008) (internal quotations and citation omitted).

19         With respect to internet contracts, "there are browsewrap, clickwrap, [...] and sign-in wrap

20  agreements, each of which purport to bind users through different 'assent' mechanisms." *Chabolla*

21  *v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (quoting *Keebaugh v. Warner Bros. Ent.*

22  *Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). "[In 'clickwrap' agreements,] website users are required

23  to click on an 'I agree' box after being presented with a list of terms and conditions of use; and [in]

24  'browsewrap' agreements, [] a website's terms and conditions of use are generally posted on the

25  website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble*, Inc., 763 F.3d 1171,

26  1175-76 (9th Cir. 2014) (citation omitted). "Courts routinely find clickwrap agreements

27  enforceable." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (citation

28  omitted). However, browsewrap agreements are not treated similarly. *See Nguyen*, 763 F.3d at 1176.

United States District Court
Northern District of California

41

"Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* "A sign-in wrap lives somewhere in the middle [between a 'browsewrap' agreement and a 'clickwrap' agreement]: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla*, 129 F.4th at 1154.

In its Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment, the Court granted Plaintiff's motion as to the issue of whether Defendants assented to the Terms of Service, the License Terms, and the Shop Page and denied Plaintiff's motion as to Plaintiff's assertion that Defendants assented to the License FAQ. ECF 174 at 21; *see* ECF 89-36 (the "Shop Page"); ECF 89-37 ("License FAQ"); ECF 89-38 ("Account Creation Page"); ECF 89-40 ("Terms of Service"); ECF 89-41 ("License Terms"). So, the only question is whether Defendants are also bound by the License FAQ.

Defendants argue that discovery has confirmed that Zazzle did not assent to the License FAQ, and that there is no triable issue as to Defendants' breach. Mot. at 22-24; Reply at 14-15. Plaintiff argues that there are disputed issues of fact as to the Defendants' assent to the License FAQ, Zazzle's breach of the BE License, and Mr. Alkhatib's liability. Opp. at 22-24.

The Court addresses the parties' arguments in turn.

### 1. Formation and Existence of Contract

"Online contracts are subject to the same elemental principles of contract formation as paper contracts." *Chabolla*, 129 F.4th at 1154 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). "To form a contract under California ... law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023).

Contract formation is a question of law. *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006) (affirming that the district court did not abuse its discretion when it declined to instruct the jury as to formation and construction of a contract) (citation omitted).

United States District Court
Northern District of California

Contract formation requires (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) a sufficient cause or consideration. *See* Cal. Civ. Code § 1550. "To form a contract under California ... law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Chabolla*, 129 F.4th at 1154 (quoting *Oberstein*, 60 F.4th at 513).

The only asserted dispute regards the second element–whether there was mutual consent to the License FAQ. *See* Mot. 22; Defendants argue that there is no evidence that Zazzle viewed or was otherwise on notice of the License FAQ terms. Mot. at 22; Reply at 14; DSupp. at 2-3. In response, Plaintiff argues that Defendants had notice of the License FAQ because Defendants saw the links to the License FAQ on the Shop Page. Opp. at 22-23; PSupp. at 1-3.

The question remains whether Mr. Alkhatib's actions in purchasing the BE Trio and BE Software demonstrated mutual assent to the License FAQ, which contains the allegedly breached terms. "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (internal quotation marks and citations omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (citation omitted).

### a.   Notice of the License FAQ

Defendants argue that there is no evidence that Zazzle had notice of the terms provided in the License FAQ. Mot. at 22; Reply at 14. Defendants argue that neither the Account Creation Page nor the Shop Page provided users "adequate notice that purchasing a license will bind the purchaser" to the License FAQ. DSupp. at 2-3.

Plaintiff argues that Zazzle had actual notice of the License FAQ when it purchased the BE License. PSupp. at 1-2. Plaintiff further argues that Zazzle had constructive notice under *Chabolla* because the parties entered into a "continuing relationship," the "visual aspects" of the Shop Page gave Zazzle inquiry notice to the License FAQ, and Zazzle manifested its assent. PSupp. at 2-3 (citing *Chabolla*, 129 F.4th at 1155-58).

//

### i.    Actual Notice

Plaintiff argues that Zazzle had actual notice of the License FAC because it agreed to the terms on the Shop Page stating that the BE License permitted "Commercial Use of fonts and add-ons :) Unlimited Sales, Unlimited Projects with only a few exceptions" and the link to the License FAQ displayed as "http://creativemarket.com/licenses." PSupp. at 1-2. Plaintiff argues that these terms on the Shop Page provided Zazzle with actual notice of the exceptions to the BE License as described in the License FAQ. PSupp. at 1. Defendants argue that "Plaintiff offers no evidence to create a triable issue as to whether any Zazzle employee actually read the [License] FAQ." Reply at 14.

The Court finds that there is no evidence indicating that Zazzle had actual notice of the License FAQ. Indeed, none of the Zazzle employees testified that they viewed the License FAQ or were aware of the License FAQ terms. *See* ECF 338-73, Ex. W to Nolan Decl., Zazzle via Liu Dep., 61:8-65:19; ECF 338-74, Ex. X to Nolan Decl., H. Beaver Dep, 148:17-149:23; ECF 338-70, Ex. T to Nolan Decl., McGhie Dep., 52:24-53:2, 58:7-19; ECF 338-71 (unredacted at ECF 337-4), Ex. U to Nolan Decl., Sheu Dep., 48:12-50:2; ECF 338-75 (unredacted at ECF 337-5), Ex. Y to Nolan Decl., Haley Dep., 60:20-22; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep., 92:24-94:7, 224:23-228:24; ECF 338-76 (unredacted at ECF 337-6), Ex. Z to Nolan Decl., Larson Dep., 33:3-12, 52:16-53:5; ECF 338-72, Ex. V to Nolan Decl., Liu Dep. Tr. 82:22-83:19; 338-77, Ex. AA to Nolan Decl., J. Beaver Tr. 35:4-36:22. While the Shop Page provided links to the License FAQ, it did not require a user to actually read them before moving on to purchase a BE License. *Chabolla*, 129 F.4th at 1154; *see Nguyen*, 763 F.3d at 1174, 1177 (finding the record contained no evidence that the user had actual notice of the Term of Use because he "neither clicked on the 'Term of Use' hyperlink nor actually read the Term of Use"). To the extent Plaintiff argues that Defendants' evidence is "self-serving," Opp. at 23, Plaintiff has failed to produce "specific facts showing that there is a genuine issue for trial." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). Plaintiff's reliance on *Berman* is misplaced. PSupp. at 2 (citing *Berman*, 30 F.4th at 856). The Ninth Circuit found Plaintiff lacked actual knowledge and inquiry notice of the arbitration agreement. *Berman*, 30 F.4th at 856.

ii.      **Reasonably Conspicuous Notice of Terms**

"Like all online contracts, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Chabolla*, 129 F.4th 1154-55 (internal quotation omitted). To determine whether an online agreement provides reasonably conspicuous notice of the terms, Courts consider the "context of the transaction" and the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design." *Id.* at 1155 (quoting *Keebaugh*, 100 F.4th at 1019); *see Oberstein*, 60 F.4th at 516. "[T]he inquiry has always been context-and-fact-specific." *Oberstein*, 60 F.4th at 515-16 (internal quotation omitted).

In *Chabolla*, the Ninth Circuit considered the formation of a "sign-in wrap agreement." *Id.* at 1154. There, a user navigated through four web pages (the "landing page" and "screens 1, 2, and 3") to purchase a ClassPass subscription. *Id.* at 1152. To purchase the subscription, the user first encountered the landing page, which invited a user to join ClassPass at different discount options. *Id.* Below the discount options was a large blue "Continue" button. *Id.* Clicking the "Continue" button would lead the user to screen 1. *Id.* The landing page did not mention any additional terms or conditions. *Id.* On Screen 1, in addition to an invite to join ClassPass and a description of the selected discount, there were directions to "enter your email to continue," a field to do so, and another "Continue" button. *Id.* A " —or —" divider separated the "Continue" button and an equal-sized "Sign up with Facebook" button. *Id.* Below that, in the smallest font on screen 1, read "By clicking 'Sign up with Facebook' or 'Continue,' I agree to the Terms of Use and Privacy Policy." *Id.* "Terms of Use" and "Privacy Policy" were blue, while the rest of the text was gray. *Id.* Screen 2 contained different action items from screen 1. *Id.* Below those fields, in the same smallest font in screen 1, read "By clicking 'Sign up with Facebook' or 'Continue,' I agree to the Terms of Use and Privacy Policy." *Id.* "Terms of Use" and "Privacy Policy" were again in blue, while the rest of the text was gray. *Id.* Screen 3 was a checkout page that stated the selected discount, the amount owed, and the details of the offer. *Id.* Screen 3 also provided fields for the user to enter payment

United States District Court
Northern District of California

1    information. *Id.* Below the payment fields was a question asking if the user "Received a ClassPass

2    gift card?" *Id.* Below the question was a statement in the same small font from screens 1 and 2 that

3    read "I understand that my membership will automatically renew to the [$79] per month plan plus

4    applicable tax until I cancel. I agree to the Terms of Use and Privacy Policy." *Id.* "Terms of Use"

5    and "Privacy Policy" were again in blue, while the rest of the text was gray. *Id.* the "Terms of Use"

6    and "Privacy Policy" on screens 1, 2, and 3 contained hyperlinks that took the user to those

7    documents. *Id.* The second paragraph of the Terms of Use stated that the terms "contain a binding

8    arbitration agreement. *Id.*

9         The Ninth Circuit found that the agreement at issue was a "sign-in" wrap" because

10    "ClassPass's website provide[d] a link to the Terms of Use but d[id] not require that the user actually

11    read them" before purchasing a subscription. *Id.* at 1154. The Ninth Circuit explained that "a sign-

12    in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides

13    reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the

14    consumer takes some action, such as clicking a button or checking a box, that unambiguously

15    manifests his or her assent to those terms." *Id.*

16         The Ninth Circuit explained that a reasonably conspicuous notice "must be displayed in a

17    font size and format such that the court can fairly assume that a reasonably prudent Internet user

18    would have seen it." *Id.* at 1155 (citation omitted). The Ninth Circuit considered "the context of the

19    transaction" and the "visual aspects of the website" to decide "whether a website provides

20    reasonably conspicuous notice of the terms of an agreement." *Id.* at 1155-56. Considering the

21    "context of transaction," the Ninth Circuit found it "neither weigh[ed] in favor of nor against the

22    notice requirement" because the user's status as a subscriber to ClassPass did not "[give] her reason

23    to look for additional terms and conditions not explicitly listed on ClassPass's website." *Id.* at 1156.

24    Considering the "visual aspects of the website," the Ninth Circuit found that Screen 1 did not provide

25    reasonably conspicuous notice of the Terms of Use because it was distant "from relevant action

26    items," it was placed "outside of the user's natural flow," and its font was "notably timid in both

27    size and color." *Id.* at 1157 (citing *Berman*, 30 F.4th at 857). While the notices in screens 2 and 3

28    were more centrally placed, the Ninth Circuit did not decide whether those notices were conspicuous

1    enough because the user "had no means of manifesting her assent to those terms on those screens."

2    *Chabolla*, 129 F.4th at 1157-58.

3                          **1.   Context of the Transaction**

4            Plaintiff argues that Defendants "should have expected a 'continuing relationship'" because

5    Mr. Alkhatib registered an account with Creative Market and the purchase was not for "a one-time

6    discount offer." PSupp. at 2-3 (citing *Chabolla*, 129 F.4th at 1155). Defendants did not advance any

7    argument as to this factor. *See generally* DSupp.

8            Considering the "context of the transaction," the Court finds this factor slightly favors

9    Plaintiff. Here, the evidence shows that 1) Mr. Alkhatib signed up an account on Creative Market

10   to purchase the BE License, ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib

11   Dep. 212:18-19; and 2) at the time that Zazzle purchased the BE License, Zazzle intended to

12   incorporate the BE Trio into the Zazzle Design Tool. ECF 342-22, Ex. 21 to Ryan Decl., Liu

13   30(b)(6) Dep., 87:1-7. Based on this evidence, the Court finds that Zazzle should have expected a

14   continuing relationship with Plaintiff when Mr. Alkhatib purchased the BE License. *See Keebaugh*,

15   100 F.4th at 1020 (finding continuing relationship between users of a mobile game that included in-

16   app purchases and the game's developer); *Oberstein*, 60 F.4th at 517 (finding users creating an

17   account with a ticket purchasing website through a "full registration process" should expect " 'some

18   sort of continuing relationship' that would have put users on notice for a link to the terms of that

19   continuing relationship.").

20                        **2.   Visual Aspects of the Website**

21           "Website users are entitled to assume that important provisions—such as those that disclose

22   the existence of proposed contractual terms—will be prominently displayed, not buried in fine

23   print." *Berman*, 30 F.4th at 857. "While terms may be disclosed through hyperlinks, the presence of

24   a hyperlink must be readily apparent, and simply underscoring words or phrases ... will often be

25   insufficient to alert a reasonably prudent user that a clickable link exists." *Keebaugh*, 100 F.4th at

26   1014 (internal quotation omitted).

27           Defendants argue that the Shop Page did not provide adequate notice that purchasing the BE

28   License would bind the user to the License FAQ. DSupp. at 3. Plaintiff argues that the Shop Page

*United States District Court*
*Northern District of California*

47

"gave Zazzle reasonably conspicuous notice that the License FAQ contained terms to which Zazzle was assenting." PSupp. at 3.

Plaintiff's Shop Page on Creative Market contained three links to the License FAQ. The first link, displayed in green font as "http://creativemarket.com/licenses"—was toward the top of the page, under a short paragraph stating that commercial use of the Blooming Elegant License is "allow[ed] . . . with only a few exceptions." ECF 89-36; *see* ECF 89-1, Laatz Decl. ¶ 13. The second link was contained in the sixth of seven boxes of information placed in a column along the right side of the Shop Page, and was a hyperlink displayed as the word "Standard" in the same green font next to a "Licenses Offered" line item. ECF 89-36; *see* ECF 106-1, Laatz Decl. ¶ 87. The third link was located at the top of the column along the right side of the Shop Page, and was contained in the word "Standard License" in the same green font, next to a "$20" line item. PSupp. at 3; ECF 89-36. The third link was located above a divider, a gray line, that separated the third link from a request that asked the user to "Confirm your country of residence." ECF 89-36. The residence request was in a black font that was larger in size than the font used in the third link. *Id.* Below the residence request were options for a user to provide their residence information, including: 1) a drop-down menu where users could select their country of residence, and a prominent white rectangular box with large green text stating "Confirm Your Location," and 2) an alternative option, in the same green font and size as the third link, read "Or enter your VAT ID." *Id.* Below those options was another divider, in a gray line, that separated the options from large fields to enter payment information. *Id.* Below the large payment fields, there was text in the same small green font as seen in the third link. *Id.* This text read "Or buy credits with PayPal," with "PayPal" displayed as the company's actual logo rather than as text. *Id.* Below the PayPal option, there was a very prominent rectangular button–the largest on the page–containing the text "Purchase → $20" displayed in white font in a bright green box. *Id.* The font size for this white text was also the largest on the right column of the Shop Page. *Id.* The term "FAQ" appears only once on the Shop Page–near the words "237 comments" at the bottom of the page–and did not link to the License FAQ. *Id.* The evidence also shows that Zazzle reviewed the Shop Page prior to Zazzle's purchase of the BE License. *See* Ex. 8 to Ryan Decl., Sheu Dep. 45:2-48:7; ECF 102-7, Alkhatib Decl., ¶ 3.

1    Considering the "visual aspects" of the Shop Page, the Court finds that the Shop Page did

2    not provide conspicuous notice to the user of the License FAQ. The three links were in timid green

3    and the font sizes for the three links were visually among the smallest on the Shop Page. *See id.*

4    Neither the three links nor other text on the Shop Page stated or suggested that the linked terms

5    would bind the license purchaser. *See* ECF 89-36. Plaintiff argues that the placement of the links

6    were "conspicuous and prominent" because Defendants saw the word "exceptions" before the first

7    link before purchasing the BE License. PSupp. at 3. But, as the Court explained in its previous order,

8    none of the three links indicated that a user "musk click on" any of the links to purchase the BE

9    License. ECF 174 at 14 -15. Indeed, the second link, displayed as the small, green word "Standard"

10   on the right column of the Shop Page, was far from conspicuous and was placed outside of the user's

11   natural flow of the Shop Page. *See Chabolla*, 129 F.4th at 1157 (finding hyperlink that was notably

12   timid in both size and color" and distant from relevant action items did not provide reasonably

13   conspicuous notice of the Terms of Use); ECF 89-36.

14   With respect to the third link, Plaintiff argues that it was "tailored to notify the reasonably

15   prudent internet user of their presence" because the link was "directly above" the relevant action

16   item. PSupp. at 3 (citing *Chabolla*, 129 F.4th at 1157). The Court disagrees with Plaintiff. While the

17   third link was located above the action items of entering location and payment information, the

18   "Standard License" word was in timid green and small, was outside the natural flow of the fields

19   asking the user for residence and payment information, and did not advise the user that it was a

20   hyperlink or that the License FAQ contained in the link would be binding for the user's license

21   purchase. *See* ECF 89-36. Considering the design elements surrounding the third link, such as the

22   much bigger "Confirm Your Location" and the "Purchase → $20" buttons, a reasonably prudent

23   user would likely provide the residence and purchase information and complete the purchase without

24   clicking the third link because the link was "deemphasized by the overall design of the webpage"

25   and not "prominently displayed." *Chabolla*, 129 F.4th at 1157 (citing *Berman*, 30 F.4th at 857).

26   Considering the hyperlinks' visual appearance, their location on the Shop Page, and the lack

27   of notice of the License FAQ's binding effect, the Court finds the hyperlinks to the License FAQ

28   were "deemphasized by the overall design" of the Shop Page and did not give purchasers of the BE

United States District Court
Northern District of California

49

1   License reasonably conspicuous notice of the License FAQ. *Chabolla* 129 F.4th at 1157.

2                                            ***

3          For the above reasons, the Court find that the Shop Page did not provide reasonably

4   conspicuous notice of the License FAQ to which Defendants will be bound. *See id.*

### b. Unambiguous Manifestation of Assent

6          Considering the unambiguous manifestation of assent requirement, "the notice must

7   explicitly notify a user of the legal significance of the action she must take to enter into a contractual

8   agreement." *Berman*, 30 F.4th at 858. For a browsewrap-type agreement to be enforceable, there

9   must be "an explicit textual notice" advising "a manifestation of the user's intent to be bound." *Id.*

10  at 857-58 (citing *Nguyen*, 763 F.3d at 1177). The user must "take some action, such as clicking a

11  button or checking a box, that unambiguously manifests his or her assent to those terms." *Chabolla*,

12  129 F.4th at 1154-55 (citing *Keebaugh*, 100 F.4th at 1014).

13         Defendants argue that there is no evidence indicating that Zazzle assented to the License

14  FAQ. Mot. at 22; Reply at 14; DSupp. at 3. In response, Plaintiff argues that the Shop Page notified

15  that there were "exceptions" to the "commercial use," "unlimited number of projects," and

16  "unlimited end products for sale" terms of the BE License, and Zazzle unambiguously assented to

17  the License FAQ. Opp. at 23; PSupp. at 3.

18         The Court finds that Defendants have met their burden to prove that they did not assent to

19  the License FAQ. As discussed above, the Shop Page did not provide reasonably conspicuous notice

20  to Zazzle that the License FAQ would bind Zazzle as the BE License purchaser. There is also no

21  evidence indicating that Zazzle reviewed the License FAQ or was aware of its terms prior to

22  purchasing the BE License. *See* ECF 338-73, Ex. W to Nolan Decl., Zazzle via Liu Dep., 61:8-

23  65:19; ECF 338-74, Ex. X to Nolan Decl., H. Beaver Dep, 148:17-149:23; ECF 338-70, Ex. T to

24  Nolan Decl., McGhie Dep., 52:24-53:2, 58:7-19; ECF 338-71 (unredacted at ECF 337-4), Ex. U to

25  Nolan Decl., Sheu Dep., 48:12-50:2; ECF 338-75 (unredacted at ECF 337-5), Ex. Y to Nolan Decl.,

26  Haley Dep., 60:20-22; ECF 338-10 (unredacted at ECF 337-3), Ex. F to Nolan Decl., Alkhatib Dep.,

27  92:24-94:7, 224:23-228:24; ECF 338-76 (unredacted at ECF 337-6), Ex. Z to Nolan Decl., Larson

28  Dep., 33:3-12, 52:16-53:5; ECF 338-72, Ex. V to Nolan Decl., Liu Dep. Tr. 82:22-83:19; 338-77,

United States District Court
Northern District of California

Ex. AA to Nolan Decl., J. Beaver Tr. 35:4-36:22. Plaintiff argues that Zazzle's purchase of the BE License was an unambiguous assent to the License FAQ because Zazzle also "saw and knew then that these terms had 'exceptions.'" PSupp. at 3. But no reasonable jury could make the leap to infer that Defendants clicked on the links or were aware that the License FAQ contained binding terms when they purchased the BE License. *Chabolla*, 129 F.4th at 1159 (holding the terms the user manifested by enrolling were ambiguous at best).

***

For the above reasons, the Court GRANTS Defendants' motion for summary judgment that Defendants did not assent to the License FAQ.

### 2. Breach by Zazzle

Defendants argue that there is no triable issue regarding their breach. *See* Mot. at 23. Defendants argue that there was no breach when a user of Zazzle Design Tool triggered Zazzle's servers to run the BE Software for that person, because License Terms limit access to the use of BE Software, not the typefaces produced by the BE Software. *Id.* Defendants argue that there was no breach of the License Term "one-seat per license" when Zazzle installed BE Software onto multiple Zazzle servers and when other Zazzle employees had access to BE Software. *Id.* Defendants argue that there was no breach when Defendants failed pay the price prescribed by the license for "each unique user" who was "provided access to the BE Trio and BE Software." *Id.*

Plaintiff argues that there are triable issues as to whether Defendants breached the BE License. *See* Opp. at 23. Plaintiff argues that Zazzle breached the "non-transferable right to use" the BE License every time that a user of the Zazzle Design Tool triggered Zazzle's servers to run the BE Software for that person. *Id.* Plaintiff argues that Zazzle breached the License Terms, which state installable items "may be used in an unlimited number of Projects on a one seat per license basis," when Zazzle allows its employees and users to use the BE Software. Opp. at 23 (citing ECF 89-41). Plaintiff argues that the License Terms did not permit Zazzle to incorporate the BE Software into the Zazzle Design Tool. Opp. at 23. Plaintiff argues that Zazzle impermissibly allowed "anyone who accessed its design tools" to use the BE Trio and the BE Software. *Id.*

Even excluding the License FAQ, Plaintiff has submitted sufficient evidence to show that

51

1    there are disputed issues of fact on the issue of breach. The License Terms provided that the licensee

2    had a "non-transferable right to use, modify, and reproduce the Item." ECF 89-41 at 3. The License

3    Terms stated that "[Fonts] may be used in an unlimited number of Projects on a one seat per license

4    basis;" *id.* ¶ 2; the licensee could "incorporate the Item into other content and make a derivative

5    work from it," *id.* ¶ 4; the licensee could not "sublicense, resell, share, transfer, or otherwise

6    redistribute the Item," *id.* ¶ 5; the licensee could not "make the Item available on a digital asset

7    management system, shared drive, or the like for the purposes of sharing or transferring the Item"

8    or "permit an end user of the end product to extract the Item and use it separately," *id.* ¶ 6; and the

9    licensee could not "publicly display the Item: (a) as a standalone file in any digital format on the

10   internet; or (b) in any digital format without . . . prevent[ing] the unauthorized use of the Item by

11   third parties," *id.* ¶ 8. *See* Opp. at 23-24.

12          Here, there is at least evidence that could reasonably be credited by the jury that Zazzle

13   installed the BE Software on multiple of Zazzle's servers in violation of the License Terms. *See*

14   ECF 342-49 (unredacted at ECF 341-19), Garrie Decl. ¶¶ 27-28; ECF 342-12 (unredacted at ECF

15   341-12), Ex. 11 to Ryan Decl., Ex. 188 to Alkhatib Dep., 9-15. Based on this evidence, the Court

16   cannot conclude that Zazzle's use of the BE Software did not breach the terms of BE License.  The

17   Court acknowledges that Plaintiff also submits evidence that Defendants' servers would run BE

18   Software for Defendant's millions of users, but the Court is not persuaded that this evidence could

19   be credited by a reasonable jury as separate breaches of the BE License.

20          Accordingly, the Court DENIES Defendants' summary judgment as to Plaintiff's breach of

21   contract claim against Zazzle.

22              **3.  Mr. Alkhatib's liability**

23          Defendants argue that there is no triable issue as to Mr. Alkhatib's breach because he was

24   acting as an agent and employee of Zazzle. Mot. at 24. Plaintiff argues that there is a triable issue

25   as to Mr. Alkhatib's breach because "Zazzle was an undisclosed principal," and both the agent and

26   the principal are responsible for the alleged breach. Opp. at 24 (citing *Klinger v. Modesto Fruit Co.*,

27   107 Cal. App. 97, 99, 100-01 (1930)). Plaintiff argues that she had no notice that Mr. Alkhatib was

28   acting for the principal. Opp. at 25 (citing *U.S. v. Blum*, 1991 WL 317024 at *6 (N.D. Cal. Sept. 16,

United States District Court  
Northern District of California

1991)).

"[A]n agent acting on behalf of a disclosed principal cannot be held personally liable on the contract." *F.D.I.C. v. Frankel*, No. 11-CV-03279-LHK, 2011 WL 5975262, at *5 (N.D. Cal. Nov. 29, 2011). But an agent entering into a contract in his own name "may be held liable" for "failing to disclose his principal." *Klinger*, 107 Cal.App. at 101.

Here, the evidence indicates that 1) Creative Market's account creation page or the BE product purchase pages did not have a prompt or mechanism to enter employer information. ECF 338-11, Ex. G to Nolan Decl., Creative Market Dep., 92:17-24; ECF 338-9, Ex. E to Nolan Decl., Alkhatib Decl. ¶ 4; 2) Mr. Alkhatib provided his name and used his work email address, mo@zazzle.com, when setting up his Creative Market account used to purchase the BE License, ECF 338-9, Ex. E to Nolan Decl., Alkhatib Decl. ¶ 4; 3) Mr. Alkhatib purchased the BE License using a Zazzle company credit card, ECF 338-9, Ex. E to Nolan Decl., Mr. Alkhatib Decl. ¶ 5; ECF 338-11, Ex. G to Nolan Decl., Creative Market Dep., 92:17-24; 4) Mr. Alkhatib received the receipt for his purchase, which contained the software download link, at the same work email address, ECF 338-9, Ex. E to Nolan Decl., Alkhatib Decl. ¶ 4; 5) the Terms of Service included a warranty that "[i]f you open a Creative Market account on behalf of an organization or other entity, then . . . (ii) you represent and warrant that you are an authorized representative of the entity with the authority to bind the entity to these Terms, and that you agree to these Terms on the entity's behalf," ECF 338-2, Ex. A1 to Nolan Decl. ¶ 39; 6) Mr. Alkhatib did not affirmatively communicate he was acting on behalf of Zazzle, ECF 342-25, N. Laatz Decl. ¶¶ 46-54, and Plaintiff was unaware of Mr. Alkhatib's agent relationship with Zazzle, *id.*, and 7) Creative Market did not provide Plaintiff with the email address or billing information of any user who purchased a Blooming Elegant License, ECF 342-25, N. Laatz Decl. ¶¶ 48-50. Based on the above evidence, the Court finds that there are genuine disputes of material fact as to whether Mr. Alkhatib was a disclosed agent of Zazzle. *See Blum*, 1991 WL 317024 at *6 (N.D. Cal. Sept. 16, 1991).

Accordingly, the Court DENIES Defendants' summary judgment as to Plaintiff's breach of contract claim against Mr. Alkhatib.

***

United States District Court
Northern District of California

1    For the above reasons, the Court DENIES Defendants' motion for summary judgment on

2    Plaintiff's Claim 6 for breach of contract.

3    **G.  Claim 5, Federal Trademark Infringement under 15 U.S.C. § 1114**

4    Defendants argue that they are entitled to summary judgment in their favor as to Plaintiff's

5    claim regarding the "BLOOMING ELEGANT" mark based on the affirmative defense of

6    nominative fair use. Mot. at 24. To establish a nominative fair use defense where the defendant uses

7    the trademark to describe the plaintiff's product, Defendants are required to prove: 1) "the product

8    or service in question must be one not readily identifiable without use of the trademark;" 2) "only

9    so much of the mark or marks may be used as is reasonably necessary to identify the product or

10   service;" and 3) "the user must do nothing that would, in conjunction with the mark, suggest

11   sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g,*

12   *Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). The *New Kids* factors subsume the issue of confusion. *See*

13   *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). The fair use doctrine is

14   generally in play where a defendant uses a plaintiff's trademark in order to promote defendant's

15   separate product. In *New Kids*, defendant was promoting its telephone polls about the band, not the

16   band itself. In this case, Zazzle is using Plaintiff's trademark to sell Plaintiff's product.

17   Defendants argue that Zazzle used "Blooming Elegant" to identify the BE trio of typefaces

18   by their names, that Zazzle used no more than the names to identify the three typefaces, and that

19   Zazzle did not take any "affirmative act" suggesting its use of the "BLOOMING ELEGANT" mark

20   was sponsored or endorsed by Plaintiff. Mot. at 25.

21   In response, Plaintiff argues that Zazzle "could have used the fonts without using the

22   Blooming Elegant mark" because Zazzle used a "Morgana" font after BE Trio was removed from

23   its design tools. Opp. at 25 (citing ECF 342-7, Ex. 6 to Ryan Decl., Haley Dep., 93:23-95:15).

24   Plaintiff further argues that Zazzle caused confusion to the public as to "the origin, sponsorship, and

25   quality of Zazzle's products that use the Blooming Elegant mark." Opp. at 25.

26   The Court finds that Defendants have met their burden to prove the first *New Kids* factor. It

27   is virtually impossible to describe a font by anything but its name. In fact, Plaintiff misconstrues

28   Defendants' later offering of the "Morgana" font. *See* Opp. at 25 (citing ECF 342-7 (unredacted at

ECF 341-8), Ex. 6 to Ryan Decl., Haley Dep., 93:23-95:15). "Morgana" is not simply a new name given to Plaintiff's BE Trio; it is a distinct font. ECF 342-7 (unredacted at ECF 341-8), Ex. 6 to Ryan Decl., Haley Dep., 93:23-95:15. On this basis, Defendants have established that use of "BLOMMING ELEGANT" is the only way to describe the BE Trio. *See New Kids*, 971 F.2d at 308.

The Court finds that Defendants have met their burden to prove the second *New Kids* factor. Here, the Zazzle Design Tool refers to the "BLOOMING ELEGANT" mark only to the extent necessary for users to identify the BE Trio. *See* ECF 338-92, Ex. LL to Nolan Decl. Plaintiff has not provided any evidence indicating the Zazzle Design Tool otherwise makes use of the "BLOOMING ELEGANT" mark. *See New Kids*, 971 F.2d at 308 n. 7. Plaintiff has also failed to provide any evidence indicating Zazzle engaged in any "additional conduct that affirmatively suggests sponsorship or endorsement by the plaintiff." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017).

The Court finds that Defendants have met their burden to prove the third *New Kids* factor. It is undisputed that Zazzle did not suggest that its use of the "BLOOMING ELEGANT" mark was sponsored or endorsed by Plaintiff. *See* ECF 338-92, Ex. LL to Nolan Decl.

Plaintiff also argues that Zazzle's use caused confusion. Opp. at 25. In the nominative fair use analysis, the three-factor test under *New Kids* has replaced the separate *Sleekcraft* test. *See Playboy*, 279 F.3d at 801. Plaintiff argues that Defendants' use of her mark caused confusion. To support this argument, Plaintiff offers a single email that John Laatz received in 2020 from a Zazzle user stating "I would like to use your blooming elegant font on Zazzle, I see that they have it, however I am trying to figure out how to use the glyphs to make the swirl at the beginning and end of the letters." ECF 342-27, Ex. 2 to N. Laatz Decl. But this evidence does not support confusion at all or Plaintiff's sponsorship or endorsement of Zazzle. Without more, Plaintiff has failed to show that there is a disputed issue of fact on this issue.

Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Federal Trademark Infringement claim under 15 U.S.C. § 1114.

**V.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

United States District Court
Northern District of California

1. Defendants' motion for summary judgment on the basis that Plaintiff's claims are time-barred is DENIED to the extent that the discovery rule does not apply to Plaintiff's claims and that Plaintiff had constructive and inquiry notice of her claims throughout the limitation periods and GRANTED to the extent that the "separate-accural" rule does not apply to Plaintiff's Claim 5 for Federal Copyright Infringement and Claim 7 for breach of contract.

2. Defendants' motion for summary judgment on Plaintiff's Claim 1 for fraudulent misrepresentation in violation of Cal. Civ. Code § 1572 is GRANTED.

3. Defendants' motion for summary judgment on Plaintiff's Claim 2 for fraudulent concealment in violation of Cal. Civ. Code § 1572 is GRANTED.

4. Defendants' motion for summary judgment on Plaintiff's Claim 3 for promissory fraud in violation of Cal. Civ. Code § 1572 is GRANTED.

5. Defendants' motion for summary judgment on Plaintiff's Claim 4 for Federal Copyright Infringement in violation of 17 U.S.C. § 101 is DENIED.

6. Defendants' motion for summary judgment on Plaintiff's Claim 5 for Federal Trademark Infringement in violation of 15 U.S.C. § 1114 is GRANTED.

7. Defendants' motion for summary judgment on Plaintiff's Claim 6 for breach of contract is GRANTED IN PART as to the issue of whether Defendants assented to the License FAQ and is otherwise DENIED, including Plaintiff's claim against Mr. Alkhatib based on his alleged status as an undisclosed agent.

Dated: May 9, 2025

BETH LABSON FREEMAN
United States District Judge

56