1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2  RACHEL HERRICK KASSABIAN (Bar No. 191060)
   *rachelkassabian@quinnemanuel.com*
3  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065-2139
4  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
5
   ANDREW SCHAPIRO (admitted *pro hac vice*)
6  *andrewschapiro@quinnemanuel.com*
   MIRANDA M. HULKA (admitted *pro hac vice*)
7  *mirandahulka@quinnemanuel.com*
   191 N. Wacker Drive, Suite 2700
8  Chicago, IL 60606-1881
   Telephone: (312) 705-7400
9  Facsimile: (312) 705-7401

10 DANIEL C. POSNER (Bar No. 232009)
   *danposner@quinnemanuel.com*
11 THOMAS D. NOLAN (Bar No. 238213)
   *thomasnolan@quinnemanuel.com*
12 865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
13 Telephone: (213) 443-3000
   Facsimile: (213) 443 3100

14

15 Attorneys for Defendants Zazzle Inc. and
   Mohamed Alkhatib
16

WILLIAM F. PATRY (admitted *pro hac vice*)
*williampatry@quinnemanuel.com*
KATY AKOPJAN (admitted *pro hac vice*)
*katyakopjan@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

17                    UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19                          SAN JOSE DIVISION

| | |
|---|---|
| 20  NICKY LAATZ, | Case No. 5:22-cv-04844-BLF-VKD |
| 21          Plaintiff and Counterclaim-Defendant, | **DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION UNDER LOCAL RULE 7-9(b)** |
| 22      vs. | |
| 23  ZAZZLE INC. and MOHAMED ALKHATIB, | The Hon. Beth Labson Freeman |
| 24          Defendants and Counterclaimants. | Trial Date:          February 17, 2026 |
| 25 | |

26

27

28

## PRELIMINARY STATEMENT

The Court's May 9, 2025, Order on Defendants' Motion for Summary Judgment (Dkt. 414) ("Order") correctly held that Plaintiff's asserted Blooming Elegant ("BE") "font-data" copyrights are invalid because Plaintiff is not the "human author" of that data. The unavoidable consequence of that ruling is that Plaintiff has no basis to proceed with any copyright claim relating to the BE font files because she lacks a valid copyright registration, but the Order stopped short of that conclusion—and it is on this limited basis that Defendants seek reconsideration.

The Copyright Act imposes a mandatory statutory requirement that, before "institut[ing]" an infringement claim, a plaintiff must obtain *either* (i) the "registration of the copyright claim" *or* (ii) the refusal of such registration—in which latter case the plaintiff may sue, provided she notifies the Copyright Office so it can "become a party to the action with respect to the issue of registrability of the copyright claim." *See* 17 U.S.C. § 411(a).

Here, Plaintiff has neither. First, her "font-data" registrations are invalid. Second, she did not have "computer-program" registrations before suing, does not have them now, and could not prove their existence at trial because the undisputed evidence establishes that the BE files do not constitute "source code," and thus are not "computer programs" under the Copyright Act. This is why the Copyright Office would not register the BE font files as "computer programs." Rather than sue on the basis of that refusal, however, Plaintiff abandoned her "computer-program" applications and accepted her now-invalid "font-data" registrations. As multiple courts have recognized—and as this Court recognized at the hearing on Defendants' motion—only the Copyright Office can issue registrations, and a copyright plaintiff cannot side-step Section 411 and recharacterize one type of registration as a different type in the middle of litigation, with no certificate of registration or deposit copy to support it. Because Plaintiff's copyright claim lacks a valid registration and is now barred by statute—and further because the BE files are not copyrightable as computer programs—Defendants respectfully request that the Court grant Defendants leave to move for limited reconsideration of the copyright rulings in the Order.

## LEGAL STANDARD

The Court may grant leave to move for reconsideration where there has been a "manifest

1    failure … to consider material facts or dispositive legal arguments which were presented to the

2    Court." Civ. L.R. 7-9(b); *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). A

3    party seeking reconsideration "must specifically show reasonable diligence in bringing the

4    motion." Civ. L.R. 7-9(b). Here, Defendants are diligently moving for leave under Local Rule 7-

5    9(b) within 30 days of the issuance of the Order.

6                                              **ARGUMENT**

7    **I.    THE COPYRIGHT RULING WARRANTS RECONSIDERATION BECAUSE
             PLAINTIFF HAS NO VALID COPYRIGHT TO ASSERT IN THIS CASE AND**
8           **CANNOT PROVE AT TRIAL THAT SHE DOES**

9           The Court's Order on Plaintiff's copyright claim warrants reconsideration for two

10   independent but related reasons:  First, the Court's invalidation of Plaintiff's asserted "font-data"

11   copyrights leaves Plaintiff with no valid registration on which to proceed in this lawsuit, and her

12   claim is barred by statute.  Second, Plaintiff could not prevail on a "computer-program" theory in

13   any event because there is no remaining dispute that the BE font files are not "source code" that

14   Plaintiff authored.

15          **A.    Plaintiff Has Neither A Valid Registration Nor A Refusal Of A Registration –
                    Which Are Mandatory, Statutory Prerequisites For An Infringement Claim**
16

17          Although registration is not a precondition of copyright protection, it is a mandatory,

18   statutory prerequisite for an infringement suit.  17 U.S.C. § 411(a); *Reed Elsevier, Inc. v.*

19   *Muchnick*, 559 U.S. 154, 157 (2010).  Plaintiff initially tried to register the BE files as "computer

20   programs."  The Copyright Office repeatedly told Plaintiff (over her protestations) that it would

21   not and could not grant that registration because the deposit copies that Plaintiff submitted—pdf

22   printouts of the "VFJ" data she exported from FontLab (*see* Nolan MSJ Decl., Exhs. HH1-HH3)—

23   do not constitute "source code" and thus cannot be registered as "computer programs" under the

24   Copyright Act (*id.* at Exh. BB).  The Examiner ultimately told Plaintiff that if she continued to

25   press for computer-program registrations, the Office would refuse her applications.  *See* MSJ Br.

26   at 16-17, 20; MSJ Reply at 8-9.  At that juncture, as Defendants argued at the hearing on their

27   motion (*see* Nolan Declaration (filed concurrently) at Exh. A (2/27/25 MSJ Hearing Transcript

28   ("Tr.") at 31:4-32:4)), Plaintiff could have (i) accepted a formal refusal of her "computer-

1    program" applications for failure to "meet the eligibility requirements for a particular registration

2    option" (Compendium § 1702) and then appealed that determination within the Copyright Office

3    (*see* 37 C.F.R. § 203.9), and/or (ii) filed her infringement suit, provided that she served "notice

4    thereof, with a copy of the complaint, . . . on the [Copyright Office] Register of Copyrights" so

5    that the "Register may, at his or her option, become a party to the action with respect to the issue

6    of registrability of the copyright claim by entering an appearance within sixty days after such

7    service" (17 U.S.C. § 411(a)), or (iii) do both.

8         But Plaintiff chose none of the above.  Instead, she abandoned her applications to register

9    the BE font files as "computer programs" and accepted the Office's alternative registrations in an

10   entirely different category of work, called "font data."  But in so doing, Plaintiff had to represent

11   that she "hand-coded" the entirety of the VFJ deposit-copy files—when she had not.

12        Years later, based on the undisputed facts Defendants presented on their motion for

13   summary judgment, the Court correctly found that Plaintiff did not hand-code the VFJ files and

14   that they are, therefore, not copyrightable as "font data."  The Court also rightly found that it "has

15   the authority to determine the validity of Plaintiff's copyrights based on their original authorship."

16   Order at 34:15-17.  However, respectfully, the Court overlooked that it can reach the question of

17   original authorship only if Plaintiff first establishes a valid *registration*—and here, she cannot.

18        Registration is not a technicality—it is a mandatory statutory gating issue for every

19   copyright claim in federal court.  A copyright owner enjoys copyright protection at fixation of a

20   work in a tangible medium of expression (17 U.S.C. § 102(a)) but can file an infringement suit

21   only after the Copyright Office grants, or refuses to grant, a copyright registration (17 U.S.C.

22   § 411(a)).  As the Supreme Court confirmed in *Fourth Estate Benefit Publication Corp. v. Wall-*

23   *Street.com, LLC*, Section 411 requires "***action by the Copyright Office***—namely, its registration

24   or refusal to register a copyright claim."  586 U.S. 296, 303 (2019) (emphasis added).  *Fourth*

25   *Estate* further confirmed that "if the Register determines that the deposited material 'does not

26   constitute copyrightable subject matter or that the claim is invalid for any other reason, the

27   Register shall refuse registration.'"  *Id.* at 304 (citing 17 U.S.C. § 410(b)).  Even in that case, a

28   plaintiff is not shut out of court, provided that it allows the Copyright Office to intervene in the

1    case so it can weigh in "with respect to the issue of registrability."  17 U.S.C. § 411(a).

2    By allowing Plaintiff to proceed, the Court is overlooking the statutory requirements.  As

3    noted, there is no remaining dispute that the BE font files that Plaintiff submitted to the Copyright

4    Office do not constitute "source code" written in a computer programming language and thus

5    cannot be "computer programs" under the Copyright Act.  *See* Circular 61: *Copyright Registration*

6    *of Computer Programs*; *Compendium of U.S. Copyright Office Practices* §§ 721.3, 1509.1(F).  But

7    even if Plaintiff believed the Copyright Office was mistaken in its unwillingness to register the BE

8    font files as "computer programs," then her remedy was to accept a refusal and then try to

9    establish in this Court, **with the Copyright Office's participation**, why the Office was wrong.

10    Rather than proceed that way, Plaintiff abandoned her "computer-program" applications and

11    accepted different registrations—which had different deposit requirements (*i.e*., they had to be

12    "hand coded" but did not need to constitute "source code").  *See* Compendium § 1006.1(A); Nolan

13    MSJ Decl., Exh. BB.  By doing so, Plaintiff kept the Copyright Office out of this case.  Now,

14    without the requisite input from the Office, the Court is effectively granting Plaintiff in the first

15    instance copyright registrations in "computer programs."

16    Plaintiff's request is contrary to law.  *Fourth Estate* confirms that it is for the **Register of**

17    **Copyrights** to grant or deny registrations, not the court or jury.  586 U.S. at 303.  Indeed, at the

18    hearing on Defendants' motion, the Court correctly recognized that it cannot grant Plaintiff

19    copyright registrations in "computer programs" because "**I don't give copyrights**."  *See* Tr. at

20    27:15-16 (emphasis added).  The Court proceeded:

21    > Let's assume the Examiner was incorrect in not allowing [Plaintiff] to submit this
    > as a computer program, I will just take that for the sake of argument.  She got her
22    > registration, she got it as font data, and the question is, is it a valid copyright as font
    > data?  And that's the argument. . . . If I agree with [Zazzle], I am not going to
23    > consider whether there was an alternate route for the Examiner to approve it,
    > because [Plaintiff] should have brought that to the Examiner.  ***That's outside my***
24    > ***authority, and I can't evaluate whether it . . . would have been valid under a***
    > ***different set of criterion.  So you can't win that here***.
25
    > …
26
    > This is not an issue for a district court to decide the way you have teed it up.  You
27    > are asking me to be a copyright Examiner, and now to pull all the Compendium and
    > the 1992 Decision and decide whether she can be issued a copyright as a computer
28    > program, and that's not for me to do.

1     …

2         You are asking me to do something that the Court . . . does not do.  This is a

3         Copyright Office job, and [Plaintiff] should have contested not being allowed [to register the BE font files as computer programs], and maybe she still can years

4         later, I don't know what she can do.

5 *Id.* at 67:15-68:3; 68:9-15; 70:2-11 (emphasis added).

6         Ultimately, the Court challenged Plaintiff to offer "a case that tells me that I can validate a

7 copyright under a completely different theory of registration than what the Examiner approved it

8 on," and noted that *Adobe* is "not that case."  Rather than even try to respond, Plaintiff's counsel

9 said simply that "I think maybe this is where we respectfully disagree."  *Id*. at 70:17-24.  The

10 Court's statements regarding this issue at the hearing on Defendants' motion were correct, and

11 amply supported by law.  *See Syntek Semiconductor Co. v. Microchip Tech., Inc*., 307 F.3d 775

12 (9th Cir. 2002) (determining what qualifies for registration as source code is a technical question

13 committed to the Copyright Office, not the courts).  Nothing has changed since that hearing that

14 would alter the fact that Plaintiff cannot come to this Court seeking to proceed on a copyright

15 claim based on a copyright registration that the Copyright Office neither granted nor refused.[1]

16         Moreover, multiple Courts of Appeals have confirmed that a plaintiff cannot register one

17 type of copyright only to then assert (through the "back door") infringement of a computer-

18 program copyright.  In *Action Tapes, Inc. v. Mattson*, for example, the Eighth Circuit held that the

19 holder of a visual arts copyright in data on memory cards could not assert ownership of a

20 copyright in a "computer program" to create that data, because the owner failed to apply to

21

22 _____

[1]  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000), which the Court cited *sua sponte*

23 in its Order at p. 34, does not support a "switch" to a different category of work that requires a

24 different deposit copy.  In that case, the Ninth Circuit reversed the lower court's recharacterization

25 of a registered photograph as a derivative work of another work, thus ***restoring*** the original

26 copyright analysis to the original registration as issued by the Copyright Office; and in any case,

27 the copyright was based on the *same* deposited photograph.  *Id.* at 1076-79.

28

1    register a computer program and deposit the required source code.  462 F.3d 1010, 1013-14 (8th

2    Cir. 2006).  And in *Xoom, Inc. v. Imageline, Inc.*,  the Fourth Circuit held that a plaintiff who

3    registered clip art as visual works could not then claim ownership of a copyright in a computer

4    program to generate the clip art; if the plaintiff wanted a computer-program registration, it was

5    obliged to submit deposit copies of the source code for such a "program," rather than just the

6    output files from the use of a computer program (there, image files).  323 F.3d 279, 284-85 (4th

7    Cir. 2003) (citing Circular 61).

8         To be sure, there are situations when an inadvertent mistake or clerical error on an

9    application will not invalidate a registration.  *See generally Unicolors, Inc. v. H&M Hennes &*

10   *Mauritz, L. P.*, 595 U.S. 178 (2022).  But that is not the issue here.  The authorities cited above

11   confirm that the distinction between entirely different categories of registrations is not merely

12   clerical (nor, of course, was there any inadvertent "mistake" here).  Rather, the distinction between

13   computer programs and other types of works has material, substantive implications, including for

14   registrability and for the ensuing infringement analysis.  In particular, the *sui generis* deposit-copy

15   requirements for computer programs recognize that a true computer program (meaning one

16   containing source code authored by a human in a computer-programming language) can be

17   embodied either by human-readable source code or by corresponding object code (binary 1's and

18   0's).  *See* Circular 61.  It also is unique to computer programs that the deposit copy may be limited

19   to representative excerpts of source code (and need not comprise the "entire work," as the

20   Copyright Office required Plaintiff to submit here (*see* Nolan MSJ Decl., Exh. BB)), and that

21   copying of either embodiment of the computer program (source or object code), and even of the

22   portions not included in the deposit copy excerpts, can be infringing (*id*.; Compendium § 721.5

23   (citing *GCA Corp. v. Chance*, 217 U.S.P.Q. 718, 719-20 (N.D. Cal. 1982))).

24        This is why, as the Court recognized, Plaintiff is "fighting . . . so much" (Tr. at 68:25) to

25   shoehorn the BE files into the computer-program category:  Plaintiff admits that Zazzle never

26   received (or copied) the actual VFJ files she deposited with the Copyright Office.  If the BE font

27   files are treated as ordinary literary works, Zazzle could not have infringed Plaintiff's copyrights

28   (as Zazzle argued in its motion (Dkt. 338) at Section III.D).  *See Action Tapes*, 462 F.3d at 1013–

1    14 ("Action Tapes seeks the benefit of a statute that confers extra protection on the owners of a

2    limited category of copyrights" *i.e.* computer programs).  It is only by claiming the BE files are

3    "computer programs"—so that the registrations would arguably also cover the non-human

4    readable "OTF" files that Zazzle received—that Plaintiff had even a theory of infringement.

5    **B.    Plaintiff Cannot Prove That The BE Files Are Computer Programs Because They Are Not Written In Source Code That Plaintiff Authored**

6

7    Even if a Court (or jury) could effectively recategorize Plaintiff's asserted registrations as

8    "computer programs" rather than the data files that they are—and for the reasons shown above, the

9    Copyright Act does not permit this—the Order still would warrant limited reconsideration because

10   Plaintiff could not prove on the record in this case that she authored a "computer-program."

11   Computer programs are works of authorship entitled to protection under the Copyright

12   Act" that "can be expressed in either source code or object code."  *Syntek*, 307 F.3d at 779 (citing

13   17 U.S.C. § 101, 102); *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir. 1992) ("It

14   is now well settled that the literal elements of computer programs, *i.e.,* their source and object

15   codes, are the subject of copyright protection.").  Not every computer file, however, constitutes

16   copyrightable source code.  Rather, "[s]ource code is a set of statements and instructions written

17   by a human being using a particular programming language, such as C, C++, FORTRAN,

18   COBOL, PERL, Java, Basic, PASCAL, LISP, LOGO, or other programming languages."

19   Compendium § 721.3; *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355 (Fed. Cir. 2014);

20   MSJ Reply (Dkt. 347) at 9 (citing Compendium on this point).  As the Court correctly recognized,

21   computer files written in so-called "markup" languages like HTML and XML (and VFJ) are not

22   copyrightable as computer programs because they are not source code.  Order at 36 (citing

23   Copyright Compendium §§ 1002.4, 1006.1(A)).

24   The only deposit copies in the case are the BE font files themselves—pdfs of text in VFJ

25   format.  In the Order, the Court correctly concluded that these deposit-copy files are FontLab-

26   generated JSON files "functionally equivalent" to XML markup language—and cited the

27   Copyright Office's longstanding position that markup formats like XML and HTML are not

28   source code.  Order at 36.  The Court further found that "Plaintiff has not pointed out any evidence

1    to the contrary." *Id.* at 37.  And at the hearing, the Court recognized that Plaintiff "didn't create

2    software" but simply "hand draws things," and that Plaintiff has "nothing" to show that she is an

3    "engineer and can write code."  *See* Nolan MSJ Decl., Exh. BB; Tr. at 69:16-20.  There is thus no

4    remaining dispute that the VFJ deposit-copy files do not constitute source code and are not

5    copyrightable or registrable as "computer programs"—which is why the Copyright Office would

6    not register them as such.

7         Plaintiff cannot remedy these fatal deficiencies in her computer-program claim.  The Court

8    found it could not rule against Plaintiff's "authorship" of the BE files as "computer programs."

9    But even if Plaintiff could show she hand-coded (or otherwise "author[ed]") some part of the files,

10   they are still not copyrightable as computer programs because they are not source code.  That

11   determination—whether the files constitute computer programs—is a question of law for the

12   Court, not the jury.  *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 788 F. Supp. 78, 95 (D. Mass. 1992)

13   (determining whether computer software programs are copyrightable is for the court, not a jury).

14   There is nothing in the record for Plaintiff to take to the jury to support a valid "computer-

15   program" copyright.  Any finding by a jury that the files Plaintiff submitted are "computer

16   programs" would be unsustainable—because it could not be based on competent evidence in the

17   record.

18        Nor, in light of the Court's invalidation of the "font-data" registrations, is there any

19   evidence that would allow Plaintiff to prove that she is the "human author" of "computer

20   programs"—because whether characterized as "font data" or "computer programs," the BE font

21   files are the same files, and Plaintiff created them in either case using the same process.  Because,

22   as the Court correctly found, that process did not render Plaintiff the "human author" of the files

23   when characterized as "font data," she is necessarily also not the "human author" of the files if

24   they are recharacterized as "computer programs."  And in any event, the question of whether

25   Plaintiff is the "human author" of "computer programs" is not one that is suitable for a jury to

26   decide, as the Court tacitly acknowledged.  *See* Tr. at 70:25-71:8.

27        In sum, in the wake of this Court's sound decision rejecting the copyrightability of the files

28   as "font-data," the absence of registrations for any "computer programs" leaves this case with no

-8-                          Case No. 5:22-cv-04844-BLF-VKD

1    registration on which to base any copyright claim under Section 411.  Moreover, there is no

2    remaining dispute that the files are not source code and not copyrightable as computer programs in

3    any event.  Because the Order stopped short of these inevitable conclusions, reconsideration is not

4    only appropriate but necessary.  *See, e.g.*, *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018

5    WL 2573183, at *9 (N.D. Cal. Mar. 30, 2018) (Freeman, J.) (granting reconsideration of scope of

6    preliminary injunction); *Medtronic Vascular Inc. v. Advanced Cardiovascular Systems, Inc*., 2008

7    WL 276379, at *2 (N.D. Cal., Jan. 31, 2008) (granting reconsideration under "manifest failure"

8    standard); *Alameda Cnty. Elec. Indus. Serv. Corp. v. Stuward*, No. C 11-05676 LB, 2013 WL

9    85353, at *2 (N.D. Cal. Jan. 7, 2013) (same).

10   **II.    IN THE ALTERNATIVE, DEFENDANTS INTEND TO  SEEK CERTIFICATION
            OF THE ORDER FOR INTERLOCUTORY APPEAL**

11

12          If the Court rules against leave for reconsideration under Local Rule 7-9, then Defendants

13   intend to move under 28 U.S.C. § 1292(b) to certify the Order for interlocutory appeal.  Under

14   Section 1292(b), the Court may certify for interlocutory appeal a non-final order that "involves a

15   controlling question of law as to which there is substantial ground for difference of opinion and

16   [when] an immediate appeal from the order may materially advance the ultimate termination of the

17   litigation, he shall so state in writing in such order."  28 U.S.C. § 1292(b).  Here, Defendants

18   would seek interlocutory appeal of the following questions:

19          1.   Whether the Court must dismiss a copyright claim when it has ruled that
                 the plaintiff's asserted copyright registration is invalid, even if the plaintiff
20               asserts that the Copyright Office should have issued a different category of
                 copyright registration.
21

22          2.   Whether a digital font file can be copyrightable as a "computer program"
                 under the Copyright Act even if it does not comprise source code written
                 in a computer-programming language.
23

24   All these relevant factors are present here, rendering these questions appropriate for certification

25   under Section 1292(b).  Because such certification will be unnecessary if the Court reconsiders its

26

27

28

1  Order on this issue, Defendants shall await the Court's ruling on the instant motion before filing

2  such a motion under Section 1292(b).[2]

3

4                                    **CONCLUSION**

5       For the foregoing reasons, Defendants respectfully request that the Court grant their

6  motion for leave to move for limited reconsideration of the Court's Order.

7

8   DATED:  June 5, 2025                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
9

10

11                                  By_____/s/ *Andrew H. Schapiro*_____
                                        Andrew H. Schapiro
12
                                        Attorneys for Defendants Zazzle Inc. and
13                                      Mohamed Alkhatib

14

15

16

17

18

19

20

21

22

23
_____
24  [2]  If the Court prefers to have Defendants' potential motion for certification of interlocutory

25  appeal briefed simultaneously with this motion for leave to move for reconsideration, then

26  Defendants will follow any briefing schedule the Court may set on one or both motions and are

27  prepared to promptly file their motion for certification of interlocutory appeal.

28

DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION