PATRICK M. RYAN (SBN 203215)
  pryan@bartkopavia.com
STEPHEN C. STEINBERG (SBN 230656)
  ssteinberg@bartkopavia.com
CHAD E. DEVEAUX (SBN 215482)
  cdeveaux@bartkopavia.com
P. CASEY MATHEWS (SBN 311838)
  cmathews@bartkopavia.com
NATALIE A. FELSEN (SBN 353462)
  nfelsen@bartkopavia.com
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, California 94111
Telephone:    (415) 956-1900
Facsimile:    (415) 956-1152

Attorneys for Plaintiff and Counter-
Defendant NICKY LAATZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>          Plaintiff,<br><br>     v.<br><br>ZAZZLE, INC. and MOHAMED ALKHATIB,<br><br>          Defendants.<br><br>ZAZZLE, INC.,<br><br>          Counter-Claimant,<br><br>     v.<br><br>NICKY LAATZ,<br><br>          Counter-Defendant. | Case No. 5:22-cv-04844-BLF<br><br>**PLAINTIFF AND COUNTER-DEFENDANT NICKY LAATZ'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S DESIGNATED EXPERT WITNESSES**<br><br>Date:        October 23, 2025<br>Time:        9:00 a.m.<br>Courtroom: 3<br>Judge:       Hon. Beth Labson Freeman<br><br>Trial Date:  February 17, 2026 |

2885.000/5863486.3                                         Case No. 5:22-cv-04844-BLF

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................1

II. ANALYSIS .......................................................................................................................1

A.  Defendants' Motion to Exclude Portions of Thomas Phinney's Opinions Should Be Denied as Withdrawn ..................................................................................1

B.  Defendants' Motion to Exclude All Mr. Sandler's Opinions Should Be Denied ...............................................................................................................................1

    1.  Mr. Sandler's Opinion That Zazzle "Violated Standard Font Industry Practices" Should Not Be Excluded ...............................................2

    2.  Mr. Sandler's Opinion Regarding "Pending Designs" Is Admissible............4

C.  Zazzle's Motion to Exclude Portions of Mr. Garrie's Opinions Fails .......................6

    1.  Mr. Garrie's References to Legal Terms Reflect Technical Analysis, Not Legal Conclusions ...............................................................................7

    2.  Mr. Garrie's Testimony About User Experience Is Properly Qualified and Technically Sound.............................................................8

    3.  Mr. Garrie's Opinions About the Number of Designs Demonstrate Appropriate Methodological Restraint..............................................9

    4.  Mr. Garrie's Factual Background Provides Appropriate Contextual Information...............................................................................................10

D.  Zazzle's Motion to Exclude Mr. Persechini's Opinions Should Be Denied............11

    1.  The Court Should Not Exclude Mr. Persechini's Damages Testimony Based on the Single-Seat License Purchased by Defendants and the Millions of Additional People to Whom They Provided the BE Trio...............................................................................................11

        a.  The License-Based Damages Are Based In Record Evidence.........15

        b.  Mr. Persechini's Opinions Are Consistent with the Law.................18

    2.  Mr. Persechini's Disgorgement Opinions Should Not Be Excluded ...........19

E.  The Court Should Not Exclude the Opinions of Dr. Sara Parikh ............................20

    1.  Dr. Parikh's Survey Population Was Appropriately Representative ...........21

    2.  Dr. Parikh's Survey Chose an Appropriate Sampling of Typefaces, Supported by Zazzle's Own Admissions .....................................................22

    3.  Dr. Parikh's Study Did Not Require a Control .........................................23

          4.      Dr. Parikh's Survey Supports All Her Conclusions ....................................24

III.    CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Group Inc.*
135 Cal. App. 4th 21 (2005) ................................................................................................ 19

*Arcade Cnty. Water Dist. v. Arcade Fire Dist.*
6 Cal. App. 3d 232 (1970) ............................................................................................. 13, 15

*Bergen v. F/V St. Patrick*
816 F.2d 1345 (9th Cir. 1987) ............................................................................................... 5

*BillFloat Inc. v. Collins Cash, Inc.*,
105 F.4th 1269, 1275 (9th Cir. 2024) .............................................................................. 20-21

*Blaustein v. Burton*
9 Cal. App. 3d 161 (1970) ............................................................................................. 13, 15

*Blue Bottle Coffee, LLC v. Liao*
2023 WL 6850573 (N.D. Cal. Oct. 16, 2023) ...................................................................... 3

*Cairo, Inc. v. Crossmedia Servs., Inc.*
2005 WL 756610 (N.D. Cal. April 1, 2005) ....................................................................... 13

*California v. Aerojet Gen. Corp.*
13 F. App'x 639 (9th Cir. 2001) ........................................................................................... 4

*Campbell Indus. v. M/V Gemini*
619 F.2d 24 (9th Cir. 1980) ................................................................................................ 17

*Desny v. Wilder*
46 Cal. 2d 715 (1956) ....................................................................................... 13, 15, 16, 18

*Donahue v. Ziv TV Programs, Inc.*
245 Cal. App. 2d 593 (1966) ............................................................................... 15, 16, 18

*DSU Med. Corp. v. JMS Co.*
296 F. Supp. 2d 1140 (N.D. Cal. 2003) .............................................................................. 14

*Elosu v. Middlefork Ranch Inc.*
26 F.4th 1017 (9th Cir. 2022) ............................................................................................... 9

*Foster Poultry Farms, Inc., et al. v. SunTrust Bank*
377 Fed. Appx. 665 (9th Cir. 2010) .................................................................................... 19

*Green Wood Indus. Co. v. Forceman Int'l Dev. Group, Inc.*, 156 Cal. App. 4th 766,
773 (2007) ........................................................................................................................... 12

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

*Hangarter v. Provident Life & Acc. Ins. Co.*
  373 F.3d 998 (9th Cir. 2004)..............................................................................2, 3, 7, 8

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999) ............................................................................................... 8

*Long Beach Mem. Med. Ctr. v. Kaiser Found. Health Plan, Inc.*
  71 Cal. App. 5th 232 (2021).................................................................................. 15

*Lucido v. Nestle Purina Petcare Co.*
  217 F. Supp. 3d 1098 (N.D. Cal. 2016) ................................................................. 2

*Maglica v. Maglica*
  66 Cal. App. 4th 442 (1998).................................................................................. 15

*Meister v. Mensinger*
  230 Cal. App. 4th 381 (2014)................................................................................ 19

*Meyer Intellectual Props. Ltd.v . Bodum, Inc.*
  690 F.3d 1354 (Fed. Cir. 2012) ............................................................................ 20

*Mid–America Tablewares, Inc. v. Mogi Trading Co.*
  100 F.3d 1353 (7th Cir.1996)................................................................................ 20

*Nationwide Transp. Fin. v. Cass Info. Sys.*
  523 F.3d 1051 (9th Cir. 2008)............................................................................ 7, 8

*Oracle Am., Inc. v. Google Inc.*
  2012 WL 4017808.................................................................................................. 20

*In re Paoli R.R. Yard PCB Litig.*
  35 F.3d 717 (3rd Cir. 1994).................................................................................. 20

*Pelican Int'l, Inc. v. Hobie Cat Co.*
  655 F. Supp. 3d 1002 (S.D. Cal. 2023) ................................................................ 14

*Primiano v. Cook*
  598 F.3d 558 (9th Cir. 2010)............................................................................ 2, 11

*Residential Funding Corp. v. Degeorge Fin'l Corp.*
  306 F.3d 99 (2nd Cir. 2002).................................................................................. 17

*SEC v. Cornerstone Acquisition & Mgmt. Co. LLC*
  No. 22-CV-765 JLS (VET), 2025 WL 276318 (S.D. Cal. Jan. 23, 2025) ............... 10

*Stiner v. Brookdale Senior Living, Inc.*
  665 F. Supp. 3d 1150 (N.D. Cal. 2023) ................................................................. 5

*THOIP v. Walt Disney Co.*
  690 F. Supp. 2d 218 (S.D.N.Y. 2010) ................................................................... 24

*Unigard Security Ins. Co. v. Lakewood Engineering & Mgg. Corp.*
    982 F.2d 363 (9th Cir 1992) ................................................................................ 17

*United Fabrics Int'l, Inc. v. Lane Bryant, Inc.*
    2010 WL 11545595 (C.D. Cal. June 24, 2010) ................................................... 20

*United States Fid. & Guar. Co. v. Ulbricht*
    576 F. Supp. 3d 850 (W.D. Wash. 2021) .............................................................. 2

*U.S. v. Andujo*
    No. 20-50043, 2021 WL 5860900 (9th Cir. Dec. 10, 2021) .................................. 4

*U.S. v. Cloud*
    576 F. Supp. 3d 827 (E.D. Wash. 2021) ...................................................... 8, 9, 10

*U.S. v. Diaz*
    876 F.3d 1194 (9th Cir. 2017) .............................................................................. 3

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*
    2025 WL 1726969 (E.D. Cal. June 20, 2025) ..................................................... 24

*Walker v. Soo Line R.R. Co.*
    208 F.3d 581 (7th Cir. 2000) .............................................................................. 20

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal. App. 3d 987 (1972) ................................................................................ 13

*Young v. Wideawake Death Row Ent., LLC*
    2011 WL 13371881 .............................................................................................. 19

**Court Rules**

Federal Rules of Civil Procedure
    Rule 37 .............................................................................................................. 17

Federal Rules of Evidence
    Rule 702 ......................................................................................................... 7, 25
    Rule 703 ............................................................................................................ 25
    Rule 704 .............................................................................................................. 4

**Other Authorities**

Samuel Williston, *Mutual Assent in the Formation of Contracts*, 14 Ill. L. Rev. 85
    (1919) ............................................................................................................... 13

2 Williston on Contracts § 6:47 (4th ed. 2023) ......................................................... 13

## I.     INTRODUCTION

Defendants Zazzle, Inc. ("Zazzle") and Mohamed Alkhatib (collectively, "Defendants") present no credible basis to exclude any of Plaintiff Nicky Laatz's ("Nicky Laatz") expert opinions and testimony. Instead, Defendants' Motion to Exclude Testimony of Plaintiff's Designated Expert Witnesses ("Motion to Exclude" or "Mot.") (Dkt. 398) relies on mischaracterizations of Nicky Laatz's experts' opinions and misrepresentations of both their deposition testimony and of the relevant law in an attempt to preclude the jury from hearing critical, well-supported expert testimony that will assist them in understanding the complex issues presented by this case.

## II.     ANALYSIS

### A.     Defendants' Motion to Exclude Portions of Thomas Phinney's Opinions Should Be Denied as Withdrawn

As stated in the Parties' Joint Report on *Daubert* Motions, Nicky Laatz withdrew most of the expert reports and opinions of Thomas Phinney, and Defendants withdrew the portions of their Motion to Exclude as to Mr. Phinney's opinions and testimony. Nicky Laatz thus requests that the Court deny those portions of Defendants' Motion to Exclude as withdrawn.

### B.     Defendants' Motion to Exclude All Mr. Sandler's Opinions Should Be Denied

As stated in the Parties' Joint Report, Nicky Laatz withdrew paragraphs 62-66 of the initial expert report and the entire rebuttal report of Stuart Sandler, and Defendants withdrew the portions of their Motion to Exclude as to such opinions. Accordingly, Defendants' Motion as to such opinions should be denied as withdrawn.

The non-withdrawn portions of Defendants' Motion contend that certain portions of Mr. Sandler's opinions should be excluded on two grounds: (1) his opinion that Zazzle "violated standard font industry licensing practices" is improperly based on legal conclusions as to the meanings of certain Blooming Elegant License ("BE License") terms, and he cannot rely on custom and usage in the font industry because such an industry has not yet been sufficiently recognized; and (2) his opinion as to "pending designs" on Zazzle's platform would be confusing to a jury in light of prior rulings by this Court on discovery disputes. As explained below, these arguments lack merit and certainly do not warrant the exclusion of any of Sandler's opinions.

**1.    Mr. Sandler's Opinion That Zazzle "Violated Standard Font Industry Practices" Should Not Be Excluded**

Mr. Sandler opines that Zazzle's licensing practices "violated standard font industry practices." Dkt. 398-6, ¶¶ 12-61. Defendants contend that this opinion should be excluded because it relies in part on meanings he ascribes to certain terms in the BE License, which Defendants contend rise to the level of "improper legal opinions." This argument lacks merit.

***First,*** it is well-settled that industry experience and knowledge, including custom and practice in the industry, is a proper basis for expert testimony. *E.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (allowing experts' opinions based on their experience and familiarity with industry standards); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (expert testimony based on experience and specialized knowledge is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."); *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016) ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 861–62 (W.D. Wash. 2021) ("[W]hile the jury may understand the meaning of 'objective' or 'timely' in common usage, the court will not presume they understand those terms as they are used by the insurance industry. Because [the expert's] testimony is aimed at educating the jury in that manner, the court finds his testimony to be relevant and reliable.").

Here, Mr. Sandler's opinion is based on his decades of industry experience and specialized knowledge with respect to the creation and licensing of fonts. For example, Mr. Sandler launched nine unique font foundries since 1996; he manages a library of over 1,400 fonts; he is recognized worldwide for his popular display typefaces and his expertise in font licensing; he has introduced font licensing concepts and terminology adopted industry-wide; he manages one of the largest font distribution networks worldwide; and he co-founded a business, recognized as the leading font distributor and font licensing advocate, which distributes high quality typefaces from independent font foundries throughout the world specializing in OEM licensing and retail font license sales. Dkt. 398-6, ¶¶ 1-4.

Recognizing that experts are entitled to rely on their industry experience and custom and practice in that industry, Defendants contend that there is not yet a sufficient "font industry" to support Sandler's experience and knowledge. Mot. at 9:5-21. But they fail to cite any authority suggesting—much less demonstrating—that there is *no* font industry. In fact, the only authority they offer are two cases that noted in passing that "astrology" (the notion that the movement of celestial bodies influences human affairs) and "necromancy" (communicating with the dead) lack a recognized body of knowledge to support expertise. Dkt. 398 at 9:7-10. Obviously, these decisions fall far short of demonstrating that there is no recognized body of knowledge in the font industry.

To the contrary, the font industry has been a recognized area of artistic creativity and commerce for decades and has been a critical component of Zazzle's business model. Further, while Mr. Sandler can elaborate more on the font industry at trial, he already testified to the existence of the font industry at his deposition. Mathews Decl. Ex. 1 (Sandler depo.) at 13:19-20 (noting that the font industry is comprised of somewhat less than 5,000 participants).

*Second*, if Defendants believe that Mr. Sandler lacks sufficient industry experience and knowledge to support his opinions, they have the right to cross-examine him at trial on the sufficiency of his experience. *E.g.*, *Blue Bottle Coffee, LLC v. Liao*, 2023 WL 6850573, at *6 (N.D. Cal. Oct. 16, 2023) (expert's experience "goes to the weight of [the] testimony rather than its admissibility.").

*Third*, while Nicky Laatz does not dispute the general proposition that an expert opinion could be inadmissible as a "legal conclusion" in certain situations (*Hangarter*, 373 F.3d at 1016), Mr. Sandler will not testify to any improper "legal conclusions" nor instruct the jury on contract law. The fact that, in expressing his opinions, he relies on meanings he ascribes to the BE License terms to explain the bases for his opinions does not render them inadmissible. "[I]t is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *U.S. v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017).

*Fourth,* Mr. Sandler's reliance on meanings he ascribes to BE License terms is admissible insofar as Defendants have contended that the BE License is ambiguous, i.e., reasonably

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

susceptible to more than one meaning. Dkt. 342-3. Parol evidence—including expert testimony—is admissible to prove a meaning to which a contract is reasonably susceptible. It is settled that "courts must consider extrinsic evidence to determine whether the contract is ambiguous even if the contract appears clear on its face." *California v. Aerojet Gen. Corp.*, 13 F. App'x 639, 642 (9th Cir. 2001). Here, Defendants even concede that an expert may construe a contract that is asserted to be ambiguous. Dkt. 398 at 8:28-15:3.

*Finally*, Mr. Sandler, while ascribing meanings to certain terms in the BE License, does not impermissibly invade the province of the jury. He does not attempt to instruct the jury on the law, nor does he opine on ultimate issues reserved for the jury. Rather, he provides factual information and insights derived from his extensive experience and expertise in the font industry as well as the custom and practice in that industry—knowledge that is critical for the jury to understand and decide factual issues in this case. And even if, in expressing his opinions, Mr. Sandler were to address an ultimate issue, it certainly does not justify barring his opinion outright. Indeed, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. To the contrary, it is settled that "[a]n expert may give an opinion about an ultimate issue." *U.S. v. Andujo*, No. 20-50043, 2021 WL 5860900, at *1 (9th Cir. Dec. 10, 2021).

### 2.    Mr. Sandler's Opinion Regarding "Pending Designs" Is Admissible

Mr. Sandler opines, based on his experience in the font industry, that "the number of total users Zazzle allowed to access the Zazzle design tool containing the Blooming Elegant Trio is likely substantially understated" to the extent it includes "only 'finished' or 'finalized' designs". Dkt. 398-6, ¶ 47. This is because that number *excludes* users who accessed the design tool and only created "what Zazzle referred to as a 'pending' design"—i.e., where "all of the designing occurs before the pending design is 'finished' or 'finalized'." *Id*.

Defendants claim this opinion is inadmissable because it is unreliable and speculative. But Mr. Sandler explains the precise basis for this opinion in his report by stating "users of Zazzle's design tools can use the designs they download and/or capture from Zazzle's design tools for virtually any purpose, without limitation on how the designs they create may be used." Dkt. 398-6 ¶¶ 46-47. As. Mr. Sandler explained, he reached this conclusion based on his review of "the expert

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

report of Daniel Garrie and the testimony of Jason Li cited therein." *Id.*; *see also* Dkt. 398-6 ¶¶ 34, 36 (discussing in detail Mr. Li's testimony on operation of Zazzle's design tools).

Further, Mr. Sandler does not purport to calculate the actual number of additional users who accessed the Zazzle design tools and only created "pending" (but not "finished" or "finalized") designs that should be included. Rather, he simply notes that the number of users Zazzle admittedly allowed to access the design tool and the Blooming Elegant Trio of fonts ("BE Trio") contained therein is likely understated—i.e., conservative—because it excludes any and all users who only created "pending designs". This opinion is accurate and relevant whether the number of additional users who only created "pending designs" is 1,000 or 1,000,000 or far more.

In any event, Defendants' challenge, at most, goes to the weight to be given to the opinion, not its admissibility, and Defendants are free to cross-examine Mr. Sandler at trial if they disagree with his opinion or its factual basis. *E.g.*, *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5 (9th Cir. 1987) ("The relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility … . The weakness in the underpinnings of [expert] opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony."); *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1170 (N.D. Cal. 2023) (expert's failure to consider other evidence goes "to the weight that [the expert's] opinions should be given, not their admissibility.").

Defendants also argue that this opinion should be excluded because "the Court has already ruled, multiple times, that 'pending designs' are not relevant to this case." Dkt. 398 at 10:14-17. This misstates the prior rulings. Defendants cite two discovery rulings: (i) Magistrate Judge DeMarchi's September 6, 2024 ruling concerning interrogatories ("Interrogatory Ruling", Dkts. 287-288), and (ii) Judge Freeman's November 12, 2024 ruling concerning the scope of a 30(b)(6) deposition ("Deposition Ruling", Dkt. 333). Neither ruling supports Defendants' argument:

- Interrogatory Ruling. Contrary to Defendants' argument, this ruling actually found that "'pending' designs" *are relevant* (albeit marginally relevant to the extent that the interrogatory in question extended to users who accessed the design tool and created pending designs, not just those who used one of the BE Trio of fonts). Dkts. 287, 288

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

at 10:3-16. Further, far from finding pending designs to be irrelevant, the Court determined that Zazzle had furnished sufficient information in response to an interrogatory asking for the number of IP addresses that accessed Zazzle's design tools. *Id*. Another interrogatory asked Zazzle for the number of users that created designs using Zazzle's design tools, including "pending" designs. In light of Zazzle's explanation that it does not keep track of this information past a "limited retention period," the scope of the interrogatory extending to pending designs that may not have used one of the BE Trio of fonts, and the information that Zazzle had already provided on the total number of designs created, the Court did not compel Zazzle to calculate the number of "pending" designs. *Id*., 10:17-11:14. But not requiring Zazzle to provide information it does not maintain "in a manner that is readily accessible" has no bearing on the admissibility of Sandler's opinion concerning "pending designs".

- Deposition Ruling: This ruling merely confirmed that it was not clearly erroneous when Magistrate Judge DeMarchi found that a 30(b)(6) deposition topic on the number of people who created designs using the BE Trio of fonts was not stated with "reasonable particularity" as to the number of people who prepared "pending designs" using the BE Trio of font and that, therefore, no further deposition on that point was warranted. Dkt. 333, 1:25-2:6, 2:12-15, 3:19-23. Nowhere did this ruling find that "pending designs" or the number of users who created them, particularly using the BE Trio of fonts, are irrelevant. In fact, Zazzle argued that "pending designs" are irrelevant to Plaintiff's damages (*id*., 2:11-12), but the Court responded that "that question is not before the Court." *Id*., 3:13-14. Thus, contrary to Defendants' contention, this ruling did not find "pending designs" to be irrelevant.

In sum, no basis exists for excluding Mr. Sandler's opinion that the number of users Zazzle allowed to access the BE Trio through its design tool is likely understated—i.e., is conservative—because it excludes users who accessed the design tool and only created "pending designs."

## C.    Zazzle's Motion to Exclude Portions of Mr. Garrie's Opinions Fails

Defendants seek to exclude portions of Daniel Garrie's expert testimony on four topics:

(1) alleged improper legal conclusions; (2) testimony about users' interactions with the BE Trio of fonts; (3) opinions regarding the number of designs; and (4) factual narratives. Each argument fails because Mr. Garrie's testimony satisfies Rule 702 and *Daubert* standards. His opinions are technically sound, properly qualified, and based on sufficient facts and methods.

### 1. Mr. Garrie's References to Legal Terms Reflect Technical Analysis, Not Legal Conclusions

When Mr. Garrie uses terms like "copyright-protected" and "derivative works," he does so in a descriptive technical context, not as legal conclusions. The Ninth Circuit in *Hangarter* held that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible" and may "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." 373 F.3d 998, 1016-17 (9th Cir. 2004).

Analyzing Mr. Garrie's expert testimony requires applying *Hangarter*'s standard that experts may aid the jury in understanding facts couched in legal terms without giving the jury a legal standard or conclusion. *See id.* at 1017 (9th Cir. 2004). Mr. Garrie's references to "copyright-protected font software" cite Nicky Laatz's Declaration rather than presenting independent legal judgments. His analysis of license terms requiring "unique implementation" of fonts quotes the agreement directly, addressing factual requirements without opining on legal enforceability. This is consistent with the distinction recognized in *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051 (9th Cir. 2008) between "factual corporate norms" and impermissible legal interpretations. *Id.* at 1056. Courts prohibit experts from concluding a party "breached the contract" while allowing technical analysis using legal terminology relevant to the contract. *Hangarter*, 373 F.3d at 1017.

Regarding "notice," Mr. Garrie opined only about what Zazzle's evidence demonstrated as a factual matter, not as a legal conclusion for statute of limitations purposes. More specifically, Mr. Garrie merely explained that Plaintiff "would not have been put on notice that Zazzle was using the Blooming Elegant Trio" because Zazzle "does not state that these 32 emails [which returned an "Open" event notification] contained any references to the Blooming Elegant Trio of Fonts." Dkt. 342-49 ¶¶ 18-19. This respects the Ninth Circuit's recognition that experts may

properly "couch[] [facts] in legal terms" while "not improperly invad[ing] the province of the jury or the court." *Hangarter*, 373 F.3d at 1017.

Mr. Garrie explicitly attributes characterizations like "copyright-protected" to Nicky Laatz's declarations rather than presenting them as his independent legal conclusions. His discussion of "derivative works" is connected to technical analysis of the SVG data transformation that took place on Zazzle's servers, not legal determinations. Unlike the improper opinions rejected in *Nationwide Transport Finance*, Mr. Garrie does not instruct the jury on legal standards or ultimate conclusions. 523 F.3d at 1058.

In *U.S. v. Cloud*, 576 F. Supp. 3d 827 (E.D. Wash. 2021), the court addresses this distinction. It recognized that expert testimony about facts underlying legal issues differs from testimony about legal conclusions themselves. *Id.* at 838. As the *Cloud* decision explains, far from requiring rigid application of *Daubert* factors, "judges are entitled to broad discretion when discharging their gatekeeping function." *Id.* This judicial discretion is particularly important when evaluating expert testimony that references legal terminology while providing technical analysis.

### 2. Mr. Garrie's Testimony About User Experience Is Properly Qualified and Technically Sound

Defendants mischaracterize Mr. Garrie's testimony about user interactions with the font software through Zazzle's design tools. He distinguishes between the user's perception ("from a practical perspective and from a user's perspective") and the technical processes where "████ ████████████████████████████████████████████████████." Dkt. 398-8 at 37.

This analysis reflects the kind of experience-based expertise that courts routinely admit. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) emphasized that *Daubert* factors are flexible guidelines, not rigid checklists, particularly for non-scientific testimony. *Id.* at 141-42. Accordingly, the Ninth Circuit recognizes that for technical experts, traditional scientific benchmarks like peer review "simply are not applicable" when reliability "depends heavily on the knowledge and experience of the expert." *Hangarter*, 373 F.3d at 1017.

Defendants cherry-pick Mr. Garrie's testimony, omitting his careful qualification that "████ ████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████.” Dkt. 398-8 at 37. He conducted his analysis by actually testing and using Zazzle's design tool similar to how an actual Zazzle user would, not through speculation. Disagreement with his conclusions does not render his opinion inadmissible, particularly because his conclusions are derived from technical analysis of how Zazzle's system operates from an end user's perspective.

The *Cloud* court acknowledged that for subjective methodologies that involve professional judgment rather than purely objective criteria, traditional scientific benchmarks might not apply. 576 F. Supp. 3d at 838. It noted that "[f]ar from requiring trial judges to mechanically apply the *Daubert* factors … judges are entitled to broad discretion when discharging their gatekeeping function." *Id.* This approach is particularly relevant to Mr. Garrie's technical perspective regarding user interaction with font software, which draws on his professional experience and expertise, as well as his actual use and analysis of the Zazzle design tool.

### 3.    Mr. Garrie's Opinions About the Number of Designs Demonstrate Appropriate Methodological Restraint

Mr. Garrie's acknowledgment of data limitations regarding pending designs is a strength, not a weakness, of his testimony. He states: "Therefore it is not possible to know how many times the Blooming Elegant Trio of Fonts were used in pending designs." Dkt. 398-8 at 40. This intellectual honesty demonstrates appropriate methodological restraint.

Defendants incorrectly claim Mr. Garrie confuses product sales with designs created. While Defendants point to another interrogatory response, this is really a dispute about semantics—whether each unique combination of a product and design that used the BE Trio is properly called a "unique design" (Mr. Garrie's perspective), or whether the same or a substantially similar design used on different products should only be counted once (Defendants' counsel's perspective)—that goes to weight, not admissibility. Defendants can cross examine Garrie on this issue. The Ninth Circuit has established that courts should not exclude expert testimony based on competing interpretations of underlying data. *Elosu v. Middlefork Ranch Inc.*,

26 F.4th 1017 (9th Cir. 2022) recognized that many technical fields "require[] sound judgment in the face of uncertainty," and experts must often "use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties." *Id.* at 1028-29.

Most importantly, Mr. Garrie's analysis is less about the numbers stated in Defendants' interrogatories and more about the general relationship between the different categories for which numbers have (or have not) been provided. Based on the way Defendants constructed their computer systems, ██████████████████████████████████████████████████ ████████████████████████████. Therefore, as Mr. Garrie opines, the category of all users who had access to the BE Trio, and all designs that used the BE Trio, is larger, but unknowably so, compared to the user and design data that Defendants saved that contained the BE Trio. This is useful to the jury to understand what Defendants actually did.

*Cloud* supports this approach, recognizing that weaknesses in the factual basis of an expert opinion generally go to weight rather than admissibility. As the Ninth Circuit has repeatedly emphasized, and the *Cloud* court recognized, limitations in data or methodology should typically be addressed through cross-examination rather than exclusion of expert testimony. *See Cloud*, 576 F. Supp. 3d at 838-39 (discussing burden of proof for admissibility and noting the party presenting the expert must demonstrate that findings are based on sound principles).

### 4.      Mr. Garrie's Factual Background Provides Appropriate Contextual Information

Mr. Garrie's report contains a six-page factual background under the heading "Factual Background." While Defendants specifically mention Section II.A, their "*see*, *e.g.*" language suggests they challenge all background sections.

This six-page background provides necessary context for complex technical opinions. It does not merely recounting case facts. While "'expert testimony cannot be presented to the jury *solely* for the purpose of constructing a factual narrative based upon record evidence'" a court "cannot distinguish between constructing a factual narrative and 'using relevant facts as context for [one's] expert opinions' in a pre-trial vacuum." *SEC v. Cornerstone Acquisition & Mgmt. Co. LLC*, 2025 WL 276318, at *8 (S.D. Cal. Jan. 23, 2025).

The technical complexity of font software licensing and implementation reasonably requires detailed context. Font software involves specialized concepts that are not common knowledge, including distinctions between font files, typeface designs, and rendering mechanisms.

The Court should evaluate any factual background in context at trial rather than excluding it wholesale pre-trial. The Ninth Circuit in *Primiano v. Cook* emphasized that the court's role is to ensure expert testimony "rests on a reliable foundation and is relevant to the task at hand," not to exclude helpful contextual information. 598 F.3d 558, 564 (9th Cir. 2010). Mr. Garrie's background section serves precisely this legitimate expert function.

**D.    Zazzle's Motion to Exclude Mr. Persechini's Opinions Should Be Denied**

Defendants argue first that the Court should exclude what they erroneously refer to as Mr. Persechini's opinions on "lost profits damages." Dkt. 398 at 18:19-20:20. In reality, these opinions address *disgorgement* of Zazzle's profits, which is a permissible contract remedy. Defendants then argue that the Court should exclude what they refer to as Mr. Persechini's opinions on "license-based damages." Dkt. 398 at 20:21-24:3. Given there is no need to address the copyright-specific issues related to damages in light of the Court's recent dismissal, Nicky Laatz addresses Defendants' arguments in reverse order below.

**1.    The Court Should Not Exclude Mr. Persechini's Damages Testimony Based on the Single-Seat License Purchased by Defendants and the Millions of Additional People to Whom They Provided the BE Trio**

There is no dispute that:

(a)    Defendants knowingly purchased a single-seat license for the BE Trio that allowed download and potential use of the licensed digital content including the fonts and font software by only one user (Dkt. 398-16 at 55-60);

(b)    Zazzle provided unlicensed access to the BE Trio through its design tools to all of its ████████ from October 12, 2017 to March 13, 2023, but only produced evidence of a portion of this number covering about half the relevant time period and limited ██████████████████████████ ████████████ (Dkt. 398-16 at 29-37); and

(c)      a large number of these individuals actually used one or more of the BE Trio of fonts in one or more designs, but again, Zazzle only produced evidence of a portion of these users covering ██████████████████████ ██████████████████████████ ██████████████████████ (Dkt. 398-16 at 37-41).[1]

Defendants simply dispute whether and how much they should have to pay for each such user. Here, Zazzle's conduct created an implied-in fact contract to pay $14 per "seat" for each additional unlicensed individual it allowed to access the BE Trio.

"Damages for breach of contract" are "'measured by the loss in value'" suffered by the nonbreaching party "'less any expenses saved … by the nonbreacher.'" *New Investments Inc. v. Altanatural Corp.*, 780 Fed. App'x 426, 429-30 (9th Cir. 2019) (emphasis omitted). When a buyer breaches a contract, the loss in value is the amount that it "agreed to pay." *Perth v. Davis*, 2009 WL 10695050, at *4 (N.D. Cal. April 20, 2009). Costs avoided are "expenses saved" by the non-breaching party "in consequence of the … breach." *Green Wood Indus. Co. v. Forceman Int'l Dev. Group, Inc.*, 156 Cal. App. 4th 766, 773 (2007). Nicky Laatz's "loss in value" is $20 for each "seat" (or user) Zazzle allowed to access the BE Trio as this is "the amount due by the terms of [Zazzle's] obligation." *Green Wood Indus.*, 156 Cal. App. 4th at 773. Creative Market deducts $6 for each license sold through its site, so that is what Nicky Laatz avoided paying for each seat Zazzle misappropriated. Dkt. 398-16 at 12, 36, 39, 55. Thus, she is entitled to at least $14 in damages for each seat Zazzle misappropriated.

---

[1] Notably, this deficiency in the evidence was of Zazzle's own creation, as Zazzle admitted it ████████████████████████████████████████████ ██████ (*see* Dkt. 396-7 ¶¶ 17-19, 61, 64, 80; Dkt. 396-3 at 39-40, nn. 110-112; Dkt. 264-7 (Li Dep.) at 105, 219-220; Dkt. 299-2 (Li Dep.) at 92-93, 219-222); and Zazzle refused to produce its backup database that contained at least six months of pending design data. *See* Dkt. 300, 299-2, 300-18 (Nicky Laatz's Motion seeking to compel production of the backup database, with lay and expert witness testimony on such database); Dkt. 310 (Defendants' Opp.).

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

California law recognizes that: "[a] buyer who goes into a shop and asks and is given … the price of an article, cannot take it" and later "say 'I decline to pay the price you ask, but will take it at its fair value.' He will be liable, if the seller elects to hold him so liable, not simply as a converter for the fair value of the property, but as a buyer for the stated price." *Desny v. Wilder*, 46 Cal. 2d 715, 736 (1956) (quoting Samuel Williston, *Mutual Assent in the Formation of Contracts*, 14 Ill. L. Rev. 85, 90 (1919)); *accord Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972) (a defendant may be held to have accepted, by conduct, whatever terms the offer contains).

By misappropriating the items after being told the unit price offered by the seller, Professor Williston's shoplifter is deemed to have accepted the offer "creating an 'implied-in fact' contract," and he must pay "the stated price" for *each item* he stole. *Arcade Cnty. Water Dist. v. Arcade Fire Dist.*, 6 Cal. App. 3d 232, 236, 236 n.3 (1970). "It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes acceptance of the terms, which accordingly become binding on the offeree." *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. April 1, 2005). And the "acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the persons accepting." *Blaustein v. Burton*, 9 Cal. App. 3d 161, 181 (1970). Thus, taking items "with knowledge that they are offered at a certain price indicates a promise to pay that price." 2 Williston on Contracts § 6:47 (4th ed. 2023). Thus, here, having been offered (and in this case having accepted) a license for one person to have access to the BE Trio at a specified rate, and having then provided access to the BE Trio to millions of users, Zazzle is deemed by its conduct to have accepted the terms and is thereby liable for the stated price for each such person.

Based on these facts and the foregoing law, Mr. Persechini performed three different calculations to which he applied the $14 per user rate. Dkt. 398-16, pp. 29-41.

***First***, Zazzle claimed that at least ███████████████████████████████████████ ██████████████████████. But this undercounts the number of people to whom Zazzle provided unlicensed access to the BE Trio because it only covers about half the relevant time period and it

only includes users who created "finished designs," not users who only created pending designs. Thus, Mr. Persechini used the number of users Zazzle provided plus its sales revenue over the corresponding period as compared to the relevant damages period to extrapolate the actual number of users over the relevant time period, at least for a "finished design," and thereby were provided by Zazzle with unlicensed access to the BE Trio. Dkt. 398-16, pp. 29-37.

*Second*, Zazzle claimed it delivered "vector paths to render" the BE Trio to ███ ███████████████████████████████████. Again, this substantially undercounts the number who actually used the BE Trio in a design because it only covers about half the relevant period and includes only users who created "finished designs," not users who only created pending designs. Thus, Mr. Persechini used the number of users Zazzle provided plus its sales revenue over the corresponding period as compared to the relevant damages period to extrapolate the true number of users during the relevant period, at least for a "finished design." Dkt. 398-16 at 37-39.

*Third*, in a further attempt to calculate the number of people who used the BE Trio through Zazzle's design tool, Mr. Persechini took data from Dr. Parikh's survey about the percentage of surveyed Zazzle users who had used one or more of the BE Trio of fonts and then applied it to his calculation of the total number of individuals who used Zazzle's design tools, and thereby had unlicensed access to the BE Trio over the relevant time period. Dkt. 398-16 at 40-41.

Zazzle's motion admits a lost license fee is a valid measure of damages. Mot. at 21:3. It then makes a series of inapplicable arguments which fail to withstand examination.

Zazzle argues that a damages expert in a patent lawsuit cannot rely on non-comparable licenses for a hypothetical negotiation and license, citing *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1048 (S.D. Cal. 2023) and *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003). Mot. at 21:3-12. But there is no patent infringement claim here, the copyright infringement claims are not presently going to trial, and the previously cited California law makes clear that Zazzle's liability is properly based on the amount stated for each single-seat license. Further, the license fee used by Nicky Laatz's damage expert is directly comparable and founded in relevant record evidence since it is the amount received by Nicky Laatz from Zazzle's employee purchasing a single-seat license. The fact that Zazzle elected to engage in grave

breaches by improperly giving unlicensed seats to millions of individuals does not form a defense nor grounds for limiting damages. Zazzle is held to be a buyer of each of the required license seats at the stated per-seat price. *Desny*, 46 Cal. 2d at 736 (one who misappropriates items must pay "the stated price" for *each item* he stole); *Donahue v. Ziv TV Programs, Inc.*, 245 Cal. App. 2d 593, 605 (1966) (same); *Blaustein*, 9 Cal. App. 3d at 180 (same); *Arcade*, 6 Cal. App. 3d at 236 n.3 (same). Moreover, as explained in greater detail below, employing hypothetical licenses as a measure of damages is a quasi-contractual remedy that is only available when *no* actual contract exists between the parties. Here, an actual contract exists. Thus, Zazzle cannot force Nicky Laatz to accept the purported market value of a non-existent, hypothetical license.

### a.    The License-Based Damages Are Based In Record Evidence

Zazzle makes its legally incorrect assumption that Nicky Laatz can be forced to accept as contract damages the purported market value of a non-existent, hypothetical license that allowed Zazzle to provide an unlimited number of seats to members of the public (the "hypothetical license"). Mot. at 21:14-22:2. And it uses this incorrect assumption as a jumping off point to argue for exclusion based on the lack of commercial market evidence for the hypothetical license at a fixed $14 per individual "license fee." *Id*. This fails at the outset because it is built on a false assumption that contradicts the applicable California law under which Zazzle cannot force Nicky Laatz to accept as contract damages the purported market value of such a hypothetical license. *Desny*, 46 Cal. 2d at 736; *Donahue*, 245 Cal. App. 2d at 605.

Damages based on "the going rate" for the good or service—i.e., "the price that a *hypothetical* willing buyer would pay a *hypothetical* willing seller" if neither was "under compulsion to buy or sell, and both having full knowledge of all pertinent facts"—is a "quasi-contractual remedy" available for so-called implied-in-*law* contracts. *Long Beach Mem. Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 71 Cal. App. 5th 232, 338, 344 (2021) (emphasis in original). Such damages are only appropriate in cases "without an actual agreement of the parties." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). This measure of damages is forbidden "where the parties have an actual contract covering a subject." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1287 (2012) (citation omitted). And misappropriating an item after learning the stated

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

price creates a contract "implied-in-*fact*"—not implied-in *law*. *Desny*, 46 Cal. 2d at 736 (emphasis added). And "implied-in-fact" contracts, unlike those implied-in-*law*, are *real* contracts and "on their breach the normal measure of damage is applied." *Id.*

Here, the record evidence makes clear that the $14 per seat "license fee" is exactly what Nicky Laatz received from Zazzle's employee's purchase of a single-seat license via Creative Market. Furthermore, Nicky Laatz's damages expert's opinions and analysis—including calculations of various numbers of users and resulting license fees—are based on record evidence as set forth in his Report's extensive citations. *See* Dkt 398-16, §§ 1-11, nn. 1-431 (with specific cites to record evidence), and Schedules to Dkt. 398-16 (with cited record evidence).

Zazzle wrongly argues that the fact that Nicky Laatz never previously agreed to license her fonts to an online service for a separate license fee for each visitor thereto somehow means she is precluded from recovery using the stated price of a single-seat license to calculate the damages arising from Zazzle's breaches. Mot. at 22:3-17. Tellingly, Zazzle cites no authority for this novel argument. This is not surprising, since Zazzle's theory contradicts hornbook law. *See*, *e.g.*, *Desny*, 46 Cal. 2d at 736; *Donahue*, 245 Cal. App. 2d at 605. There is no legal requirement to have previously executed such a hypothetical license. Rather, in a transparent and misleading effort to evade the immensity of its breaches, Zazzle is fabricating such a requirement. If allowed, it would incorrectly reward a breaching defendant based on the magnitude and implementation of its breaches. Under Zazzle's misguided theory, Professor Williston's shoplifter could avoid the full damages arising from his theft by asserting (as Zazzle does here) that "I decline to pay the price you ask, but will take it at its fair value." *See* Williston, 14 Ill. L. Rev. at 90. But California's Supreme Court rejected such nihilistic reasoning long ago. The rule of law mandates that such a thief must pay "the stated price" for *each item* he misappropriated. *Desny*, 46 Cal. 2d at 736.

Next, Zazzle argues without citing any supporting authority that, because a licensee under the single-seat license can purportedly use the fonts "anywhere," it somehow means the $14 license per seat fee cannot be used as a damage model for Zazzle providing unlicensed access to the fonts to all members of the public "solely on Zazzle's Design Tool." Mot. at 22:18-26. This misconstrues the facts on both sides. On the one hand, the License prohibited the one licensed user

from sharing or redistributing the digital content in a tool or making it available on a shared drive. Dkt. 398-6 ¶¶ 37-42. On the other hand, as shown in Sandler's report, Zazzle's design tools allowed people to use the BE Trio, download copies of their designs or take screenshots of their designs, and then use them *anywhere*. Dkt. 398-6 ¶¶ 44-46. And again, Zazzle ignores the fact it knew the stated price for each individual to have access to the BE Trio. The fact that Zazzle then elected to wrongfully provide unlicensed access to the fonts to every visitor to Zazzle's website via a method and under conditions unilaterally dictated by Zazzle does not form a defense nor a basis for claiming a discount from the stated price to provide such access. Moreover, if Zazzle's argument that the per-seat license fee should be a different amount had any application (which it does not), it would go to the weight of Mr. Persechini's testimony and is not a basis for exclusion.

Zazzle's argument that Persechini is unjustified in relying on Parikh's survey (Mot. at 23:12-28) likewise ignores the fact that this calculation is based on valid evidence, and any potential uncertainty results solely from Zazzle's failure to preserve and produce evidence. As noted above, Zazzle failed to preserve evidence of either the total number of people who used its design tools and thereby had access to the BE Trio, or who actually used the BE Trio, during the entire relevant time period. This failure by Zazzle does not form a basis for exclusion and, instead, forms a basis for sanctioning Zazzle. *Residential Funding Corp. v. Degeorge Fin'l Corp.*, 306 F.3d 99, 106-107 (2nd Cir. 2002) (separate from Rule 37, "Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction …"); *Unigard Security Ins. Co. v. Lakewood Engineering & Mgg. Corp.*, 982 F.2d 363, 368 (9th Cir 1992), quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) ("This circuit has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'"); *see also* Fed. R. Civ. Proc. Rule 37(e).

Mr. Persechini first calculated the total number of people who used Zazzle's design tools, at least for "finished designs," using Zazzle's own user and revenue data. Dkt. 398-16 at 29-37. Then to calculate the number of these individuals who used the BE Trio, he relied on Dr. Parikh's survey about the percentage of users who had used one or more of the BE Trio. Dkt. 398-16 at 40-

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

41. Zazzle complains that the survey universe consisted of users who had shops on Zazzle's website (falsely characterizing all of them as being "professional designers"), omitting the fact that not only did Zazzle fail to preserve and produce evidence that could have obviated the need for Persechini to rely on such data, but Zazzle also refused to produce a database that would have identified a broader group of users of its design tools or of the BE Trio. Dkt. 300, 299-2, 300-18 (Nicky Laatz's Motion seeking to compel production of the backup database, with lay and expert witness testimony on such database); Dkt. 310 (Defendants' Opp.).

Zazzle cannot create a defense nor benefit from its discovery abuses. Further, if Zazzle's argument that people who have shops on its website are not representative of the larger universe of users of its design tools had any validity (it does not), it would go to the weight of Mr. Persechini's testimony and is not a basis for exclusion.

### b. Mr. Persechini's Opinions Are Consistent with the Law

Defendants repeat their argument that *Desny*, 46 Cal. 2d at 736, is insufficient legal support for Nicky Laatz's license fee damage model. Mot. at 22:28-23:11. But examination of *Desny* does not support Zazzle's position. As explained above, *Desny*, 46 Cal. 2d at 736, held:

> A buyer who goes into a shop and asks and is given [told] the price of an article, cannot take it and say "I decline to pay the price you ask, but will take it at its fair value." He will be liable, if the seller elects to hold him so liable, not simply as a converter for the fair value of the property, but as a buyer for the stated price.

Therefore, California's Supreme Court made clear that the plaintiff has the legal right to recover the stated price, and the defendant does not have the right to limit damages to what it thinks is the lower fair value amount. Likewise, *Donahue*, 245 Cal. App. 2d at 605, reiterated that contract liability can arise in a variety of circumstances, including circumstances similar to those discussed in *Desny*, 46 Cal. 2d at 736, and the plaintiff thereby has the right to recover the stated price.

Here, the recovery of contract damages based on the stated price of a license for each individual's access to the BE Trio of fonts is proper because Zazzle knew the stated price of such access based on its employee's purchase of a single-seat license. With this knowledge in hand, Zazzle then unilaterally elected to breach by providing unlicensed access to the fonts to all

individuals who used the design tool on Zazzle's website. Under California law, Nicky Laatz has the right to recover contract damages based on the stated price of each individual's access (or based on disgorgement of Zazzle's profits as explained in more detail below).

Additionally, Zazzle cannot be allowed to benefit from its failure to produce requested evidence covering the entire relevant time period, including on the number of individuals who accessed the design tools and thereby had access to the BE Trio, and who actually used the BE Trio of fonts in one or more designs, whether finished or finalized (only some of which Zazzle produced) or pending designs (some of which data Zazzle failed to preserve after having been put on notice of this dispute, and some of which it refused to produce).

### 2. Mr. Persechini's Disgorgement Opinions Should Not Be Excluded

Mr. Persechini's report provides a lengthy analysis of Zazzle's profits from its wrongful use of the BE Trio, and disgorgement can be a permissible remedy for breach of contract.

Under California law, "a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy. *Foster Poultry Farms, Inc., et al. v. SunTrust Bank*, 377 Fed. Appx. 665, 669 (9th Cir. 2010) (disgorgement of bank's profits was the proper remedy for its breach of a confidentiality contract).

*Foster Poultry* relied on *Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal. App. 4th 21 (2005), which upheld disgorgement of profits as a remedy for breach of a non-disclosure agreement. *Id.* at 56. As Judge Snyder has recognized, "[i]n some circumstances, California courts have permitted disgorgement of improperly obtained profits as a remedy for breach of contract." *Young v. Wideawake Death Row Ent., LLC*, 2011 WL 13371881 (citing *Ajaxo*). Judge Snyder further explained that "at this stage, there are various potential measures of plaintiff's breach of contract damages. *Id.* at \*2. *Foster Poultry* "teaches that where actual damages are difficult to prove, disgorgement may be an appropriate remedy." *Id.* (citations omitted) (denying in *limine* motion to exclude evidence of defendants' profits). *Meister v. Mensinger*, 230 Cal. App. 4th 381 (2014) further explained "nonrestitutionary disgorgement [] focuses on the defendant's unjust enrichment." *Id.* at 398-99. "In measuring the amount of the defendant's unjust enrichment, the plaintiff may present evidence of the total or gross amount of the benefit, or a reasonable

approximation thereof, and then the defendant may present evidence of costs, expenses, and other deductions to show the actual or net benefit the defendant received." *Id.*

Zazzle's attempt to exclude Mr. Persechini's disgorgement analysis has other fatal defects.

***First***, the focus of Zazzle's argument is that, under copyright law, the defendant "may" argue the deductions in the lost profit analysis should include a reasonable share of "indirect" (or "overhead") expenses, and that Nicky Laatz's damages expert did not include all of the deductions for indirect expenses that Zazzle wants to apply. Mot. at 18:19-20:20. This copyright law argument contradicts the aforementioned California law, and at best, goes to the weight of the competing expert opinions. It does not form a basis for exclusion of Nicky Laatz's damages expert. *Mid–America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1362-63 (7th Cir.1996) (affirming district court's denial of a motion to exclude evidence of profit, noting it turns on the specific facts established at trial); *Meyer Intellectual Props. Ltd.v . Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) (exclusion motions "are not the appropriate vehicle weighing the sufficiency of the evidence"). That Nicky Laatz's damages expert's opinions are different from Zazzle's damages expert's opinions in precise methodology and conclusions does not provide a basis for excluding expert opinions. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746, fn. 15 (3rd Cir. 1994); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588-589 (7th Cir. 2000).

***Second***, even in the unpublished case Zazzle cites, the competing expert testimony was admitted and went to the jury. *United Fabrics Int'l, Inc. v. Lane Bryant, Inc.*, 2010 WL 11545595, at *5 (C.D. Cal. June 24, 2010) (court upheld deduction applied by jury for certain overhead expenses); *see also Oracle Am., Inc. v. Google Inc.*, 2012 WL 4017808, at *4 (denying exclusion motion; defendants had the burden of showing which expenses were properly deductible). Thus, Zazzle's motion to exclude Mr. Persechini's opinions on disgorgement should be denied.

### E.    The Court Should Not Exclude the Opinions of Dr. Sara Parikh

As an initial matter, Defendants concede—and the Ninth Circuit has ***repeatedly*** confirmed—that issues regarding "methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions" go to the weight of a survey and not to its admissibility. Dkt. 398 at 15:11-14; *see also BillFloat Inc. v. Collins Cash, Inc.*, 105 F.4th 1269,

1275 (9th Cir. 2024). Because Defendants only raise purported issues regarding the design, methodology, reliability, and conclusions of Dr. Parikh's survey, the Court's inquiry must stop there and Defendants' motion as to Dr. Parikh's opinions and testimony must be denied. But even if we ignore the Ninth Circuit's mandate on this point, Defendants' Motion to Exclude lacks merit.

### 1.     Dr. Parikh's Survey Population Was Appropriately Representative

Defendants concede that a "survey must query relevant people," but assert that Dr. Parikh's survey of Zazzle's own designers (whom Zazzle itself admits are its most frequent designers and sellers of products on Zazzle) is not sufficient to address her stated goal of "measur[ing] awareness, usage and perceptions of the Blooming Elegant Trio set of fonts ***among graphic designers who sell their products on Zazzle***." Dkt. 398-13 ¶ 5 (emphasis added). Specifically, Defendants complain that Dr. Parikh limited her survey to "graphic designers at the 'Bronze level' or above" (i.e. Zazzle designers who had merely met the nominal threshold of $1,000 in lifetime sales on Zazzle). Mot. at 15:25-27. But Defendants misrepresent Dr. Parikh's testimony and ignore her survey's stated purpose.

***First***, Defendants claim Dr. Parikh chose her sample universe because "she assumed that the group she surveyed constituted most of Zazzle's sales." Mot. at 15:27-28. Not so. Dr. Parikh expressly stated that she chose the sample group because it "would constitute the most active designers on Zazzle," which Dr. Parikh determined "was a really good representation of graphic designers who were selling their products on Zazzle." Dkt. 398-14 at 111:20-112:1. ***Next***, Defendants complain that Dr. Parikh did not "collect data on Zazzle customers." Mot. at 16:5-8. But this ignores the fact that Dr. Parikh's survey was designed specifically to measure awareness, usage, and perceptions of the BE Trio of fonts "among graphic designers who sell their products on Zazzle." Dkt. 398-13 ¶ 5. ***Finally***, Defendants claim Dr. Parikh's results are inapplicable to "Zazzle users, customers, or designers as a whole" and ask the court to "exclude testimony that extrapolates her opinions to any other Zazzle designers or users." Mot. at 16:13-17. But such a limitation would be improper. Her survey specifically measured attitudes, usage, and awareness of the BE Trio among users who design and sell products on Zazzle's website—i.e. the people who best know the fonts available through its design tool and who best know what font choices sell

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES

more products. This is why Dr. Parikh specifically asked respondents questions about whether they had used the BE Trio in their own work, how important the BE Trio is to respondents in their work, and how difficult it would be to substitute the BE Trio. Dkt. 398-13 at App'x B, p. 3. Indeed, these open-ended questions confirmed that they consider Zazzle customer behavior and demand when choosing fonts. For example, one respondent stated: "Blooming Elegant Script appeals to my customers and is on many of my top-selling products." Dkt. 398-13 at App'x C, p. 1. Another similarly stated that the Blooming Elegant font "works well with a lot of wedding products." *Id.* at p. 6. Limiting Dr. Parikh's testimony to the "views of Zazzle sellers at the Bronze level or higher who are professional graphic designers" would thus impermissibly exclude the reasonable conclusions of her survey.

2.      **Dr. Parikh's Survey Chose an Appropriate Sampling of Typefaces, Supported by Zazzle's Own Admissions**

Defendants argue that Dr. Parikh's survey is unreliable because she measured the awareness, usage, and perceptions of the BE Trio by allegedly "placing images of the three BE typefaces alongside five other typefaces … that she selected arbitrarily, and not for any similarity of comparability to BE." Mot. at 16:20-24. Defendants' suggestion that Dr. Parikh placed images of the BE Trio "alongside" the five other typefaces is categorically false. Dkt. 398-13 ¶¶ 31-34; Mathews Decl. Ex. 2 at 184:12-18. Moreover, Defendants are well-aware of the reasons Dr. Parikh chose the fonts she did from her extensive testimony on the reasons she chose each font—testimony that Defendants misleadingly failed to include with their Motion. Specifically, Dr. Parikh chose the fonts she did because she "wanted a mix of trio and singular fonts, as well as other fonts that Zazzle had considered to be popular at the time, as well as some more basic fonts." Mathews Decl. Ex. 2 at 48:10-14. And Dr. Parikh chose several of the comparison fonts because they "were all listed on that webpage, that Zazzle webpage I cited earlier, as among the top handwriting fonts on Zazzle at the time I conducted my survey." *Id.* at 44:14-20. Indeed, the very testimony of Dr. Parikh that Defendants cite for this assertion shows that she chose the five other fonts and font trios that she included in her survey because they were "fonts that … Zazzle considered to be popular, as well as a mix of plain and script fonts and more or less common

fonts." Dkt. 398-14 at 50:11-18. Thus, the fonts selected—and that Dr. Parikh's survey tested the BE Trio against—were selected in part because they would provide "a measurement of the relative importance and appeal of the Blooming Elegant Trio set of fonts compared to other fonts that are available on Zazzle." Dkt. 398-13 ¶ 33.

Defendants' suggestion that Dr. Parikh's testimony should be "limit[ed] … to statements about how the BE typefaces compare to the five other specific typefaces or trios of typefaces she selected for comparison—but not the general 'importance' or 'popularity' of BE overall" is likewise misplaced. Dr. Parikh's survey tested not just the "relative measure" of the BE Trio's importance and popularity among designers on Zazzle; it also determined "the absolute measure" of the characteristics that the survey tested, including the absolute measure of the appeal, uniqueness, importance, and difficulty of substitution of the BE Trio. Dkt. 398-13 ¶ 12. And on an absolute basis, Dr. Parikh determined, for instance, that 90 percent of respondents considered the BE Trio to be very or somewhat appealing, 82 percent considered it to be very or somewhat unique, 77 considered it to be very or somewhat important to their design work, and 61 percent considered it very or somewhat difficult to substitute. *Id.* Not only are these absolute numbers (rather than comparisons with the other fonts in Dr. Parikh's survey), but the comparisons also show that her results *do* have applicability outside the five other fonts included in her survey. For instance, Dr. Parikh included as comparison points the fonts titled "Freehand Thick" and "Delighted" in her survey—both fonts that Zazzle admitted were among its top 10 handwriting-style fonts. Dkt. 89-34 at 3. Yet, despite these being some of Zazzle's most popular handwriting-style fonts, the BE Trio outperformed both fonts by miles on Dr. Parikh's survey on all metrics Dkt. 389-13 ¶ 12, showing that her results demonstrate both absolute and relative popularity and importance of the BE Trio beyond just the five other fonts included in her survey.

### 3. Dr. Parikh's Study Did Not Require a Control

Defendants misleadingly suggest that Dr. Parikh's survey is unreliable because it did not include a "control," stating that Dr. Parikh's "*only*" explanation was that a control "was not necessary to her survey." Mot. at 17:8-9. But Defendants omit vast swaths of Dr. Parikh's testimony explaining *why* a control was not necessary for her survey. Specifically, Dr. Parikh

testified at length that "typically, in a survey, when you include a control … you're doing that because you are testing a causal proposition; that is something is causing something else, like a trademark is causing likelihood of confusion or an ad is causing deception." Mathews Decl. Ex. 2 (Parikh Tr.) at 178:7-179:4.

Indeed, the sole (non-precedential) case that Defendants cite to support their arguments on this point states that "[a] survey *designed to estimate likelihood of confusion* must include a proper control." *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010). But as Dr. Parikh explained during her deposition—testimony that Defendants misleadingly omit and ignore—her survey in this case was "an attitude and usage survey, and they *typically do not need controls because you are describing behavior and attitudes among a particular population* … ." Mathews Decl. Ex. 2 at 178:21-24. Indeed, Dr. Parikh has extensive experience conducting attitude and usage surveys like the one she conducted here, and survey experts "typically don't use controls" in such surveys. *Id.* at 179:2-4. That is because a "control" is used when "you are testing a causal proposition, in which case you are setting up a kind of an experimental design, because you are trying to isolate." *Id.* at 179:20-22. But no such causal proposition was being tested by Dr. Parikh's survey. *Id.* at 178:21. But even if Dr. Parikh *had* been testing a causal proposition (she was not), this still would not be a basis to exclude her opinions and testimony. In *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, 2025 WL 1726969 (E.D. Cal. June 20, 2025) an expert conducting a likelihood of confusion survey failed to include a control. *Id.* at *2. But the court, in applying the Ninth Circuit's directive that "issues of methodology, survey design, reliability, … and the like go to the weight of the survey rather than its admissibility" held that the lack of a control "implicates the weight, not admissibility" of the expert's survey. *Id.* Thus, Dr. Parikh's testimony must not be excluded due to a lack of a "control."

### 4.    Dr. Parikh's Survey Supports All Her Conclusions

Defendants also suggest that Dr. Parikh's testimony should be excluded on the grounds that her conclusion—that "Blooming Elegant Trio is an important and popular set of fonts on Zazzle"—is unsupported by her survey, which asked respondents about the appeal, uniqueness, importance, and difficulty of substitution. To support this inane argument, Defendants falsely

assert that when asked why Dr. Parikh chose these particular characteristics to test her hypothesis about the popularity and importance of the BE Trio, Dr. Parikh "stated only that 'I wrote the questionnaire.'" Mot. at 17:24-25. But the very testimony Defendants cite for this assertion shows its inaccuracy. Dr. Parikh testified that she chose those characteristics to test the popularity and importance of the BE Trio "[b]ecause all of those items are relevant to the importance and popularity of the font." Dkt. 398-14 at 37:2-7. Indeed, it is self-evident that Dr. Parikh's questions about whether respondents had used the BE Trio in their work and whether the BE Trio was important to their work bear directly on the popularity of the fonts on Zazzle. Similarly, Dr. Parikh's questions about whether the BE Trio was appealing, important to respondents' work, and difficult to substitute are directly relevant to whether the BE Trio was important on Zazzle.

## III.    CONCLUSION

For the foregoing reasons, and in light of the Parties' Joint Report on *Daubert* Motions, Nicky Laatz respectfully requests that:

(a) The Court deny Defendants' Motion to Exclude as to the opinions of Thomas Phinney and as to paragraphs 62-66 of the initial expert report and the entire rebuttal report of Stuart Sandler as withdrawn; and

(b) The Court deny the remaining portions of Defendants' Motion to Exclude on the basis that Defendants have failed to show that Nicky Laatz's expert opinions do not meet the requirements of *Daubert* and Federal Rules of Evidence 702 and 703.

DATED:  September 26, 2025                                Respectfully submitted,

BARTKO PAVIA LLP


By:      */s/ Patrick M. Ryan*
         PATRICK M. RYAN
Attorneys for Plaintiff and Counter-Defendant
         NICKY LAATZ

I hereby attest that Patrick Ryan has concurred in the filing of this document on his behalf and the inclusion of a conformed signature (/s/) within this e-filed document on his behalf.

*/s/ P. Casey Mathews*
P. CASEY MATHEWS

PLAINTIFF'S OPP. TO DEFS.' MOT. TO EXCLUDE TESTIMONY OF PLF.'S DESIGNATED EXPERT WITNESSES