Exhibit 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NICKY LAATZ,                          )

              Plaintiff;          )

                          )

                          )

                          )

   -v-                                )No. 22-CV-04844

                          )

                          )

                          )

ZAZZLE, INC., and MOHAMED        )

ALKHATIB                              )

              Defendant.          )

The Video-Recorded Deposition of SARA PARKIH, PH.D., having been called by Defendants for examination, taken pursuant to notice, and pursuant to all applicable rules of the Federal Code of Civil Procedure, conducted at 191 North Wacker Drive, Chicago, Illinois, and commencing at the hour of approximately 9:03 a.m., on the 12th day of November, 2024.

Reported By Beth Radtke, RPR, CRR

License No. 084-004561

                                        Page 1

APPEARANCES


Bartko, LLP

By P. Casey Matthews

   1100 Sansome Street

   San Francisco, California  94111

   cmathews@bartkolaw.com

   Appeared on behalf of the Plaintiff;


Quinn Emanuel Urquhart & Sullivan, LLP

By Andrew H. Schapiro

  Justine Young

   191 North Wacker Drive

   Suite 2700

   Chicago, Illinois  60606

   Andrewschapiro@quinnemanuel.com

   justineyoung@quinnemanuel.com

   Appeared on behalf of the Defendant.

             * * * * *

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

INDEX

WITNESS                                         PAGE

SARA PARIKH, PH.D.

Examination By Mr. Schapiro                       6

EXHIBITS

Exhibit 300   Parikh expert report              9

Exhibit 301   Notice of deposition              16

Exhibit 302   Swain expert rebuttal report     40

Exhibit 303   Zazzle creators forum post       126

Exhibit 304   Survey verbatim comments         136

Exhibit 305   Shapiro expert report            140

* * * * *

Page 3

THE VIDEOGRAPHER:  Good morning.  We are going on the record at 9:03 a.m. on November 12, 2024.

Please note that the microphones are sensitive and may pick up whispering and private conversations.  Please mute your phones at this time. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video-recorded deposition of Sara Parikh, taken by counsel for defendant, in the matter of Nicky Laatz versus Zazzle Incorporated, and others, filed in the United States District Court, Northern District of California, Case Number 22-CV-04844-BLF-VKD.

The location of the deposition is at 191 North Wacker Drive, Suite 980, Chicago, Illinois, 60606.

My name is Jamie Pritzker representing Veritext, and I am the videographer.

The court reporter is Beth Radtke from the firm Veritext.

I am not authorized to administer an oath, I am not related to any party in this action, nor am I financially interested in the outcome.

Page 4

If there are any objections to the proceeding, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MR. SCHAPIRO:  Hello, I'm Andy Schapiro, I'm with Quinn Emanuel, representing Zazzle.

MS. YOUNG:  Justine Young here representing Zazzle, and on the phone also present is Dr. Scott Swain.

MR. MATHEWS:  Casey Matthews of Bartko LLP representing the plaintiff, Nicky Laatz.

THE WITNESS:  Sara Parikh of Willow Research.

THE VIDEOGRAPHER:  Thank you.

Will the court reporter please swear in the witness, and then, Counsel, you may proceed.

Page 5

(Witness sworn.)

SARA PARIKH, PH.D.,

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. SCHAPIRO:

Q.   Ms. Parikh, you've been deposed before, correct?

A.   Yes, I have.

Q.   I imagine your attorney has reminded you of how a deposition works, but just so we have a clean record, I want to go over a couple of the ground rules.

A.   Okay.

Q.   As you see, there's no judge present.  Your attorney may occasionally object.  If your attorney objects to one of my questions, you are still obligated to answer, unless your attorney instructs you not to answer.

Do you understand?

A.   Yes, I do.

Q.   As you can see, we have a court reporter here.  The court reporter needs to take down my questions and your answers accurately, so, for that

Page 6

(appeal, uniqueness, importance, and difficult to substitute) are significantly higher than five other fonts at the 99 percent confidence level?

MR. MATHEWS:  Objection, misstates prior testimony.

BY THE WITNESS:

A.   Or than all other fonts in my survey at the 99 percent confidence level.

BY MR. SCHAPIRO:

Q.   And there were five other fonts in your survey?

A.   That's correct, yes.

Q.   You are not here to tell the Court or any jury whether Blooming Elegant trio's ratings for the above measures are higher or lower than the ratings for any other -- any of the other 300 fonts available on MyFont -- or excuse me, on Zazzle?

MR. MATHEWS:  Objection, foundation, assumes facts not in the record.

BY THE WITNESS:

A.   So I studied Blooming Elegant and five other fonts, and so that is what my results relate to.

BY MR. SCHAPIRO:

Q.   And you are not going to testify at trial --

Page 43

strike that.

You are not testifying about the relationship of Blooming Elegant trio's ratings vis-à-vis any of the other fonts available on Zazzle, correct?

MR. MATHEWS:  Objection, vague and ambiguous.

BY THE WITNESS:

A.   So again, my survey was limited to these six fonts, so Blooming Elegant and five other fonts.

I do want to clarify that three of the fonts that I selected, including Blooming Elegant -- I'll just go to the fonts.

Here we go.  Page 10 of my report, paragraph 32.  So three of the fonts, Blooming Elegant, Freehand, those are both trios, as well as Delighted, which is a single font, were all listed on that webpage, that Zazzle webpage I cited earlier, as among the top handwriting fonts on Zazzle at the time I conducted my survey.

So three of them were among Zazzle's -- what Zazzle considered the more popular fonts, and then I selected a few other more basic fonts:  Courier trio, Century Bold, and Rubik.

Page 44

BY MR. SCHAPIRO:

Q.   Did you study Mandela Script?

A.   No, I did not.

Q.   I think you said a moment ago that you tried to come up with a mix of fonts of some sort, is that accurate?

MR. MATHEWS:   Objection, misstates prior testimony, misstates the evidence.

BY THE WITNESS:

A.   I selected -- I used six -- tested six different fonts.  I wanted a mix of trio and singular fonts, as well as other fonts that Zazzle had considered to be popular at the time, as well as some more basic fonts.  So it was a mix of fonts, yes.

BY MR. SCHAPIRO:

Q.   Well, Blooming Elegant is a trio, correct?

A.   Yes.

Q.   And you just used the phrase "basic fonts." Would you characterize Blooming Elegant as a basic font or a not basic font?

A.   Well, it's a trio font.  It's a trio font, so they have some -- it's kind of a mix.  It has, you know, handwritten script, it's got a handwritten block, as well as the last one, the sans is a more

Page 48

You could also have a ubiquitous font, or ubiquitous product, for example, that is very unique. Those aren't mutually exclusive. I don't think of them as mutually exclusive.

Q. Why didn't you compare Blooming Elegant to sets of fonts that were similar to Blooming Elegant?

MR. MATHEWS: Objection, misstates prior testimony, mischaracterizes the evidence, vague and ambiguous, lack of foundation.

BY THE WITNESS:

A. So I said in my report, first, I didn't see a reason just to compare it to similar fonts. I wanted to show a range of fonts, and compare it to a range of fonts including other fonts that were -- that Zazzle considered to be popular, as well as a mix of plain and script fonts and more or less common fonts. There was no reason that I needed to compare it to other similar fonts.

BY MR. SCHAPIRO:

Q. Well -- sorry, go ahead.

A. I should say that Delighted has a similar handwritten script style, and Freehand Loose is also -- Freehand is also similar in the sense that it has sort of more handwritten elements as well.

Page 50

number of people said, yes, I've used Parikh Bold, you would know those people -- that gives you some sense of a margin of error of people who make mistakes, right?

MR. MATHEWS:  Object --

BY MR. SCHAPIRO:

Q.    Because Parikh Bold is fictitious?

MR. MATHEWS:  Objection, lack of foundation, incomplete hypothetical.

BY THE WITNESS:

A.    You can -- like I said, you could certainly do anything.  You could do that.  I didn't think it was necessary to include a control here.

I was not -- so typically, in a survey, when you include a control, or a control group as you are suggesting, or a control font, you're doing that because you are testing a causal proposition; that is something is causing something else, like a trademark is causing likelihood of confusion or an ad is causing deception.

This wasn't that.  This is an attitude and usage survey, and they typically do not need controls because you are describing behavior and attitudes among a particular population around a -- you know, a

Page 178

certain topic.

So I've done many attitude and usage surveys for commercial clients, and we typically don't use controls.

BY MR. SCHAPIRO:

Q.   Focusing on usage, you've seen usage surveys that include a control, haven't you?

A.   I can't think of any.

Q.   So your testimony is that, as a survey expert, you're not familiar with using -- with the utilization of controls in usage surveys?

MR. MATHEWS:   Objection, mischaracterizes prior testimony.

BY THE WITNESS:

A.   I'll say that the converse is that I am -- my understanding and my experience is you use controls -- typically we're not using controls in most surveys; you use them under certain circumstances, and the circumstances have to do with whether you are testing a causal proposition, in which case you are setting up kind of an experimental design, because you are trying to isolate.  So for example, you're trying to isolate why something -- you know, whether a trademark is causing confusion,

Page 179

likelihood of confusion survey.  There you would use a control because you want to make sure it's the trademark that's causing the confusion, not some extraneous factor like, you know, the defendant's market share, for example.

But I'll give you another example.  In the Teflon survey we talked about, Go Away Gray, that is -- Teflon is a methodology.  It's also within the trademark case, trademark domain, but you typically are not using a control, you're measuring brand -- you know, brand or type of product, because you're not necessarily testing a causal proposition.

BY MR. SCHAPIRO:

Q.   Can you explain for those of us who don't live in this industry, what is a Teflon survey?

A.   It's a survey to measure genericness, whether a mark is generic.  So for example, is Kleenex generic, or is it a brand name.

Q.   Did you discuss the idea of using a control with anyone as you prepared this survey?

A.   I don't think so.

Q.   And safe to say you don't believe that a control would have -- would have helped us identify whether there are any problems in this survey?

Page 180

about in isolation.

So but if I had shown -- you know, certainly you do surveys like this all the time, where you show them ten paint cans and ask them which label they like the best, for example.  That is, you know, that set that they're looking at impacts their likelihood of picking one or the other.  So you can change sets -- if you have a bunch of ugly labels, you can change things.

But that's a different type of survey than was done here.

Q.   So you're saying, in this instance, the respondents were asked just to look at and assess each font one at a time in a random order --

A.   Yes.

Q.   -- answering all of the questions about it, then on to the next, and on to the next, right?

A.   Correct.

Q.   And therefore, it is not vulnerable or as vulnerable as it would have been to a contrast effect that you had shown all of them at the same time and said pick among these, which do you think is more attractive, or which do you find attractive here?

A.   I mean, I guess so.  Again, I'm not really

Page 184

CERTIFICATE OF

CERTIFIED SHORTHAND REPORTER

I, Beth Radtke, a Certified Shorthand Reporter of the State of Illinois, CSR License No. 084-004561, do hereby certify:

That previous to the commencement of the examination of the aforesaid witness, the witness was duly sworn by me to testify the whole truth concerning the matters herein;

That the foregoing deposition transcript was stenographically reported by me and was thereafter reduced to typewriting under my personal direction and constitutes a true and accurate record of the testimony given and the proceedings had at the aforesaid deposition;

That I am not a relative or employee or attorney or counsel for any of the parties herein, nor am I interested directly or indirectly in the outcome of this action.

IN WITNESS WHEREOF, I do hereunto set my hand at Chicago, Illinois, this 15th day of November, 2024.

Beth Radtke, RPR, CRR

License No. 084-004561

Page 199