QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
MIRANDA M. HULKA (admitted *pro hac vice*)
*mirandahulka@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443 3100

WILLIAM F. PATRY (admitted *pro hac vice*)
*williampatry@quinnemanuel.com*
KATY AKOPJAN (admitted *pro hac vice*)
*katyakopjan@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Defendants Zazzle Inc. and Mohamad Alkhatib

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants.<br><br>ZAZZLE INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>NICKY LAATZ,<br><br>Counter-Defendant. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE AND/OR STRIKE OPINIONS AND TESTIMONY OF DEFENDANTS' EXPERTS**<br><br>Date:  October 23, 2025<br>Time:  9:00 a.m.<br>Courtroom:  3<br>Judge:  Hon. Beth Labson Freeman<br><br>Trial Date: February 17, 2026 |

Case No. 5:22-cv-04844-BLF-VKD

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................1

I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE
      KINRICH ...................................................................................................................1

      A.    Plaintiff Misstates The Burden Of Proof On Damages ................................2

      B.    Kinrich Is A Rebuttal Expert And Will Provide Proper Rebuttal Testimony ............3

            1.    Kinrich Properly Rebuts Persechini's Analysis Of Zazzle's Profits ..............3

            2.    Kinrich's Allegedly "New" Regression Analyses Properly Rebut
                  Persechini's Opinions That Zazzle's Costs Are Not "Incremental" ..............4

            3.    Kinrich's Apportionment Opinions Properly Rebut Persechini's
                  Opinions Declining To Apportion Zazzle's Profits .......................................5

            4.    Plaintiff's Argument Regarding Other Design Elements Is Irrelevant ..........5

            5.    Kinrich's License Opinions Properly Rebut Persechini's
                  Economically Unreasonable Contract Damages Opinions ............................6

      C.    Plaintiff Identifies No Harm Or Prejudice From Kinrich's Rebuttal
            Opinions ......................................................................................................7

II.   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE
      RUCINSKI ...............................................................................................................10

      A.    The Majority Of Plaintiff's Motion As To Rucinski Is Moot ...............................10

      B.    Plaintiffs Do Not Challenge Rucinski's Qualifications As To His
            Remaining Opinions ....................................................................................11

      C.    The Court Should Permit Rucinski To Offer His Remaining Opinions ..................11

III.  THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE
      SHAPIRO .................................................................................................................12

      A.    Plaintiff Identifies No Requirement That Shapiro Be A Survey Expert ..................13

      B.    Shapiro's Opinions Properly Rebut The Parikh Survey ...........................................13

      C.    Shapiro's Opinions Are Based On Technical Expertise ..........................................16

IV.   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE SWAIN .........17

CONCLUSION ..................................................................................................................18

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Andrews v. Plains All Am. Pipeline, L.P*,
    No. CV 15-4113 PSG, 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) .....................................8

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2018 WL 1586276 (N.D. Cal. Apr. 2, 2018) ..................................17

*Archie v. Pop Warner Little Scholars, Inc.*,
    No. CV 16-6603 PSG, 2019 WL 13020480 (C.D. Cal. Oct. 10, 2019) ...................................8

*Campagnolo S.r.l. v. Full Speed Ahead, Inc.*,
    No. C08-1372 RSM, 2010 WL 11527323 (W.D. Wash. May 5, 2010) ..................................16

*Clear-View Technologies, Inc. v. Rasnick*,
    No. 13–CV–02744–BLF, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ..................................3

*Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint Reconstruction, Inc.*,
    57 Cal. App. 5th 1108 (2020)..................................................................................................3

*Fed. Deposit Ins. Corp. v. Van Dellen*,
    No. CV 10-4915 DSF (SHX), 2012 WL 12886825 (C.D. Cal. Nov. 6, 2012) ........................8

*Freteluco v. Smith's Food & Drug Centers, Inc.*,
    336 F.R.D. 198 (D. Nev. 2020) .............................................................................................13

*Gene Pool Techs., Inc. v. Coastal Harvest, LLC*,
    No. 521CV01328JWHSHK, 2023 WL 5941757 (C.D. Cal. July 26, 2023)............................7

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. EDCV 17-1388-AB
    (KK), 2019 WL 3209451 (C.D. Cal. June 10, 2019), *report and
    recommendation adopted*, No. EDCV171388ABKKX, 2019 WL 3205797
    (C.D. Cal. July 15, 2019) .......................................................................................................14

*Jarrow Formulas, Inc. v. Now Health Grp., Inc.*,
    No. CV 10-8301 PSG, 2012 WL 3186576 (C.D. Cal. Aug. 2, 2012)......................................8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ...............................................................................................................16

*Louisville Mktg., Inc. v. Jewelry Candles, LLC*,
    No. 3:15-CV-00084-DJH, 2016 WL 6595094 (W.D. Ky. Nov. 4, 2016)...............................17

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006)..............................................................................................14, 15

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  No. 13-CV-04236-BLF, 2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ............................ 7, 13

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) ........................................................................................ 2, 3

*Rally Concepts, LLC v. Republican Nat. Comm.*,
  No. 5:05-CV-41-DF, 2006 WL 6889674 (E.D. Tex. Nov. 9, 2006) ...................................... 17

*Rodgers v. Watt*,
  722 F.2d 456 (9th Cir. 1983) .............................................................................................. 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
    Liab. Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) .......................................................................... 7, 17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................................................ 8

**Rules / Statutes**

Fed. R. Civ. P. 37(c)(1) ....................................................................................................... 7

Fed. R. Evid. 702 ............................................................................................................... 16

Fed. R. Evid. 702(a) ..................................................................................................... 12, 16

Rest. 3d Restitution and Unjust Enrichment ........................................................................ 2

Rest. 3d Restitution and Unjust Enrichment § 51(5)(d) ....................................................... 3

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS

**INTRODUCTION**

The Court should deny Plaintiff's Motion To Exclude Opinions of Defendants' Experts ("Motion") in full.

***First***, Plaintiff fails to show that Defendants' damages expert, Jeff Kinrich, offered improper rebuttal opinions that he should have raised in an opening report.  Plaintiff bears the burden to present evidence on damages, so it was appropriate for Defendants to present their own damages opinions in rebuttal.  Each of Kinrich's opinions properly rebuts opinions that Plaintiff's damages expert, Dominic Persechini, presented in his opening report.  And even if the Court concludes that Kinrich should have offered certain of his opinions in an opening report, the Court should still allow him to testify to those matters because Plaintiff has suffered no prejudice from the timing of his disclosure of his opinions and she has had plenty of time and opportunity to address them.

***Second***, after waiving her objections to the majority of the opinions of Defendant's computer-science expert, Christopher Rucinski, on the grounds they are moot following the Court's dismissal of Plaintiff's copyright infringement claim, Plaintiff identifies only minor critiques to his remaining opinions which go at most to the weight of Rucinski's testimony, not its admissibility.

***Third***, Plaintiff fails to show that the rebuttal opinions of Ellen Shapiro, Defendants' font-design expert, are inadmissible to rebut Plaintiff's survey expert, Dr. Sara Parikh, because Shapiro is not herself a "survey expert."  Plaintiff misses the point of Shapiro's testimony, which is not to critique Parikh's survey design—Defendants' expert Dr. Scott Swain does that—but rather to rebut her ultimate opinions about the uniqueness and difficulty to replace Blooming Elegant.  Plaintiff does not dispute that Shapiro is qualified to offer those opinions, which are proper rebuttal.

***Finally***, Plaintiff provides no basis to exclude limited portions of Swain's opinions on the grounds they rely on background information from Shapiro's report.  The Court should permit Swain to rely on Shapiro, just as experts may ordinarily rely on other experts.

**ARGUMENT**

**I.   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE KINRICH**

Defendants' damages expert, Jeff Kinrich, presented a report rebutting the opinions of Plaintiff's damages expert, Dominic Persechini.  Persechini presented (1) an analysis of Zazzle's

profits, based on a disgorgement of profits theory of damages; and (2) an "alternative remedy" based on breach of contract damages.  Matthews Decl. (Dkt. 399-1) Ex. 3.[1]

As to the disgorgement of profits theory of damages, Kinrich opines that "Mr. Persechini's methodology to determine Zazzle's profits attributable to the Blooming Elegant Font Trio (the "at-issue fonts") is flawed and incomplete," with reference to multiple specific errors in that analysis. Matthews Decl. Ex. 7 at ¶ 6(a).  As to the breach of contract damages theory, Kinrich opines that "Mr. Persechini's Alternative Remedy based on alleged breach of contract is economically unreasonable and cannot be relied upon to assess potential damages from the alleged infringement," and further that it is flawed because "Mr. Persechini provides no estimate of Plaintiff's own lost profits from the alleged infringement."  *Id.* at ¶ 6(b)-(c).  Plaintiffs seek to exclude Kinrich's rebuttals to Persechini's opinions on both theories of damages.

Kinrich is a highly qualified and experienced expert who has provided expert testimony on damages issues in nearly 100 matters in just the last eight years and has never been excluded as an expert.  *Id.* at App'x A.  Unable to attack the substance of his opinions, Plaintiff argues that his opinions are not proper rebuttal.  As discussed below, her procedural attack on Kinrich's opinions is meritless, and in any event, she was not prejudiced by any alleged untimely disclosure.

### A.    Plaintiff Misstates The Burden Of Proof On Damages

Plaintiff argues (Mot. 5) that Kinrich's opinions are improper rebuttal because "***Zazzle*** has the burden of proof on deduction of costs and allocation of profits to other elements."  But this fundamentally misstates the burden of proof on damages in this case.

The law here is crystal clear:  Plaintiff bears the burden of proof on damages.  When applying a disgorgement of profits remedy, California follows the Restatement (Third) Of Restitution And Unjust Enrichment. *See Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014) (citing

---

[1]  Persechini also presented opinions relating to punitive damages.  The parties have stipulated to withdraw Persechini's opinions on punitive damages as irrelevant, given the Court's August 4, 2025 Order granting Defendants' Motion for Reconsideration and granting summary judgment for Defendants on Plaintiff's claim for copyright infringement (Dkt. 443).  *See* Joint Report (Dkt. 450). Because Plaintiff declined to withdraw Persechini's opinions related to disgorgement of Zazzle's profits, Defendants continue to seek to admit Kinrich's testimony rebutting those opinions.

Restatement).  According to the Restatement, "[a] claimant who seeks disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain. Residual risk of uncertainty in calculating net profit is assigned to the defendant." Rest. 3d Restitution and Unjust Enrichment § 51(5)(d).  Said another way, "the claimant has the burden of producing evidence from which the court may make at least a reasonable approximation of the defendant's unjust enrichment.  If the claimant has done this much, the defendant is ***then*** free … to introduce evidence tending to show that the true extent of unjust enrichment is something less." *Id.* at cmt. I (emphasis added).  That is, ***after*** Plaintiff meets her burden of producing evidence on her calculation of disgorgement—which she did here through Persechini's opening report— Defendants may ***then*** introduce evidence showing that Persechini's calculations are flawed—which they did here through Kinrich's rebuttal.

None of Plaintiff's authorities (Mot. 6) is to the contrary.  Plaintiff's primary authority, *Clear-View Technologies, Inc. v. Rasnick*, found that a defense expert opinion was not appropriate rebuttal because it "speaks directly to Defendants' affirmative defenses and counterclaims, on which Defendants bear the burden of proof."  No. 13–CV–02744–BLF, 2015 WL 3509384, at *3 (N.D. Cal. June 3, 2015).  That is not the case here.  Plaintiffs also cite *Meister*, but the court there found, consistent with Defendants' argument here, that after the plaintiff's initial showing, "***then*** the defendant may present evidence of costs, expenses, and other deductions."  230 Cal. App. 4th at 399 (emphasis added); *see also Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint Reconstruction, Inc*., 57 Cal. App. 5th 1108, 1127 (2020) (noting that after the plaintiff's showing, "[t]he burden then shifts").  Plaintiff offers no authority that would support the Court precluding Defendants from offering any expert rebuttal testimony on damages where, as here, Plaintiff bears the burden of proof on damages.

**B.    Kinrich Is A Rebuttal Expert And Will Provide Proper Rebuttal Testimony**

**1.    Kinrich Properly Rebuts Persechini's Analysis Of Zazzle's Profits**

Nor is Plaintiff correct that Kinrich's opinions are not, in substance, proper rebuttal opinions. Mot. 6-10.  As to Persechini's disgorgement of profits opinions, Plaintiff seeks to exclude Kinrich's rebuttal opinions that (1) Persechini neglects to deduct most overhead costs in his profit calculations

and instead adopts a standard of "incremental" costs that significantly overstates Zazzle's profits from the at-issue transactions (Matthews Decl. Ex. 7 at Section IV.B.4); (2) even assuming the "incremental" costs framework is correct, Persechini fails to correctly identify all incremental costs by arbitrarily categorizing costs as incremental or not incremental, which overstates Zazzle's profits (*id.* at Section IV.B.5-6); and (3) Persechini fails to perform the requisite apportionment of profits (*id.* at Section IV.B.7).   These are obviously rebuttal opinions because they identify the methodological errors that render Persechini's opinions unreliable.

### 2.     Kinrich's Allegedly "New" Regression Analyses Properly Rebut Persechini's Opinions That Zazzle's Costs Are Not "Incremental"

Plaintiff also fails to show that certain of Kinrich's opinions are improper rebuttal because they are "new" opinions.  Plaintiff argues, in particular (Mot. 7), that "Kinrich's 'rebuttal' report introduces, for the first time, two different regression analyses, which she contends Kinrich should have presented in an opening report.  Plaintiff is wrong because both analyses are directly responsive to Persechini's opinions from his opening report.[2]

The first is "a regression analysis to estimate the relation between Mr. Persechini's claimed non-incremental costs and Zazzle's net revenue."  Matthews Decl. Ex. 7 at ¶ 42.  As Kinrich explains, the purpose of this analysis is to attempt to validate Persechini's opinions:  "If Mr. Persechini's assertion that these costs are non-incremental is correct, the slope coefficient from this analysis should be statistically indistinguishable from zero." *Id.*  Kinrich's regression is therefore a direct rebuttal to an opinion Persechini offered in his opening report, and one that Kinrich could not have performed without reference to Persechini's opinion.

The second of Kinrich's purportedly "new" analyses "estimat[es] a regression of monthly costs (including COGS and operating expenses, which Mr. Persechini subjectively judged to be incremental or not incremental) on monthly net revenues for the core Zazzle business over the time period covered by the at-issue transactions."  *Id.* at ¶ 45.  As Kinrich explains, this regression "provides an objective statistical estimate of the additional costs that Zazzle bears for each additional

---

[2]  Plaintiff dos not identify anything "new" in paragraphs 36-41 of Kinrich's Rebuttal Report and thereby concedes that these paragraphs contain proper rebuttal.

dollar of net revenue that it generates," and thus again serves to attempt to validate Persechini's opinions regarding Zazzle's so-called "incremental" costs. While these analyses are "new" in that Kinrich did not present them before serving his Rebuttal Report, they are based on and directly responsive to the opinions Persechini expressed in his opening report regarding incremental costs, and therefore are proper rebuttal testimony.

### 3. Kinrich's Apportionment Opinions Properly Rebut Persechini's Opinions Declining To Apportion Zazzle's Profits

Plaintiff also argues (Mot. 7) that Kinrich's opinions on apportionment of profits are "new" because Persechini did not offer an opinion on apportionment. Mot. at 7. But Persechini did offer an opinion in his opening report that he is not required to present any opinion on apportionment, and he "reserve[d] the right to opine on any apportionment methodology proffered by Defendants." Matthews Decl. Ex. 3 at ¶ 58. Persechini further disclosed that he intends to testify that Plaintiff is entitled to recover all of Zazzle's profits, without any adjustments for profits due to elements of the products sold other than the use of the Blooming Elegant Trio. Kinrich therefore presented the appropriate rebuttal opinion that damages should instead be reduced proportionally to reflect those "other" elements, and he provided details on his apportionment methodology in his Rebuttal Report.

### 4. Plaintiff's Argument Regarding Other Design Elements Is Irrelevant

Plaintiff argues (Mot. 7-8) that Kinrich's apportionment opinions are also subject to exclusion because he improperly relied on evidence that Plaintiff alleges Zazzle destroyed, but this evidence is irrelevant to Kinrich's opinions. The webpages Plaintiff references ceased to exist once Zazzle uninstalled the Blooming Elegant Trio, before Plaintiff filed this case, so that Zazzle could not produce them without reinstalling the font software and re-generating more than one million webpages. *See* Dkt. 310 at 4. Plaintiff seizes on this to argue (Mot. 8) that Kinrich's apportionment opinion is "based on the very evidence Defendants failed to preserve." This is not true.

The portion of Kinrich's report that Plaintiff cites to support this argument (*see* Mot. 7) consists of his general comments about the reasons for apportioning profits, where he notes that some portion of Defendants' profits are attributable to aspects of the products sold other than the choice of typeface. Mr. Kinrich states: "Such contributions may include, for example, the quality

and characteristics of the product itself, design elements unrelated to the at-issue fonts, and Zazzle's technology for implementing and visualizing product designs… A typical product sold on Zazzle incorporates many design elements.  For example, a wedding invitation may contain photos, illustrations, and other graphical components, as well as numerous text elements often comprised of different fonts."  Matthews Decl. Ex. 7 at ¶¶ 48-49.

Having thus explained the concept behind his apportionment analysis—including the non-controversial fact that the typeface is not the sole element of the products that drives sales—Kinrich performs his apportionment analysis.  That analysis, which he describes fully in his report, *id.* at ¶¶ 50-57, does not involve any analysis of the webpages that Plaintiffs claim Zazzle destroyed, or any other analysis of individual design elements on a product-by-product basis.  Instead, Kinrich compares the cost of font licensing to Zazzle's total Cost of Goods Sold ("COGS").  *Id.* at ¶¶ 53-54.  License fees account for 0.5% of product COGS, leading Kinrich to apportion 0.5% of Zazzle's profits to the specific typeface used.  *Id.* at ¶¶ 55-57.  This methodology makes no use of any material that Plaintiff alleges Zazzle destroyed, and Plaintiff's reference to that dispute is simply a distraction intended to muddy the waters on this motion.

### 5. Kinrich's License Opinions Properly Rebut Persechini's Economically Unreasonable Contract Damages Opinions

Plaintiff's criticism of Kinrich's rebuttal to Persechini's breach of contract damages theory fares no better.  Kinrich evaluates Persechini's opinions on that damages theory and finds them "economically unreasonable."  In support, he discusses the market conditions (*i.e.*, free availability of fonts on a variety of platforms) that make those opinions unreasonable, and explains how Persechini's improper extrapolation from a survey with a narrow universe caused him to reach unrealistic conclusions.  Matthews Decl. Ex. 7 at Sections IV.C.1-3.  Kinrich further criticizes Persechini for opinions which would grant Plaintiff a significant windfall, and for failing to calculate the more economically reasonable measure of Plaintiff's own lost profits.  *Id.* at Sections IV.C.4-D.2.  In short, Kinrich's rebuttal opinions demonstrate that Persechini's opinions on breach of contract damages are at odds with economic reality, and in so doing, Kinrich suggests an alternative calculation methodology that is grounded in the economic reality of Plaintiff's own license

agreements.  This is core rebuttal testimony, as its function is "is to contradict, impeach or defuse the impact of" the rebutted expert's opinions.  *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016).

Plaintiff also criticizes Kinrich's license opinions as speculative or "not based on sufficient facts or data."  Mot. 9-10.  Kinrich bases his opinions on Plaintiff's lost profits on comparable licenses Plaintiff has actually negotiated and entered into, with a citation to each such comparable license drawn from discovery produced by Plaintiff or Plaintiff's sworn testimony.  Matthews Decl. Ex. 7 at p. 51, Fig. 8.  Plaintiff admits the licenses were hers, and genuine, and does not argue that Kinrich inaccurately reflected their contents.  Nor does Plaintiff establish why such licenses would not be "comparable," simply because the counterparties were not Zazzle and the specific fonts at issue were not Blooming Elegant.  These are actual licenses, from Plaintiff, for her fonts, at comparable times, for comparable uses, in the marketplace.  Moreover, if Plaintiff believes these licenses are not sufficiently comparable, that is an issue for cross-examination, not admissibility.

Finally, Plaintiff argues (Mot. 8) that the Court should exclude certain paragraphs of Kinrich's Rebuttal Report because Kinrich relies on factual information about typography from Defendants' graphic design expert, Ellen Shapiro.  But Shapiro's opinions are admissible, *see infra* at Section III, so this argument fails—and indeed, Kinrich would be entitled to rely on factual background from another expert even if she does not testify.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (when one expert relies on another, "[t]here is no general requirement that the [underlying] expert testify as well").

**C.     Plaintiff Identifies No Harm Or Prejudice From Kinrich's Rebuttal Opinions**

Even if the Court concludes that certain of Kinrich's opinions constitute improper rebuttal, the Court should still permit him to testify.  An expert can testify as to opinions even if they were not timely disclosed if the disclosure was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, allowing Kinrich to testify to all the opinions in his Rebuttal Report is harmless and poses no prejudice to Plaintiff.

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS

In determining whether an untimely disclosure is "harmless," courts consider whether "the opponent still has ample time and opportunity to prepare responses to the expert reports and/or take depositions of the designated witnesses." *Gene Pool Techs., Inc. v. Coastal Harvest, LLC*, No. 521CV01328JWHSHK, 2023 WL 5941757, at *7 (C.D. Cal. July 26, 2023), *report and recommendation adopted*, 2023 WL 5944139 (C.D. Cal. Sept. 11, 2023). Courts routinely permit experts to testify even if their reports were disclosed untimely, so long as the opposing party has sufficient time to examine those opinions, including through deposing the expert, before trial. *See, e.g.*, *Andrews v. Plains All Am. Pipeline, L.P*, No. CV 15-4113 PSG (JEMx), 2019 WL 6647928, at *5 (C.D. Cal. Nov. 22, 2019) (finding the untimely service of expert reports harmless where defendants would "still have the opportunity to prepare responses to these reports, and depose these experts with an extended deadline, thereby solving the problem short of striking the reports"); *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, No. CV 10-8301 PSG (JCx), 2012 WL 3186576, at *15 (C.D. Cal. Aug. 2, 2012) (rejecting one challenge to amended expert report because "[d]efendants had ample opportunity to review the report and question [the expert] regarding its contents," and therefore were not prejudiced); *Archie v. Pop Warner Little Scholars, Inc.*, No. CV 16-6603 PSG (PLAx), 2019 WL 13020480, at *3 (C.D. Cal. Oct. 10, 2019) (permitting defendant's untimely expert disclosures in part because extending the schedule to allow plaintiffs to "depose the witnesses and conduct relevant discovery ... will cure any prejudice"). Courts exclude untimely expert testimony when additional opinions are disclosed in close proximity to trial, making a deposition of the expert unrealistic. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Van Dellen*, No. CV 10-4915 DSF (SHX), 2012 WL 12886825, at *1 (C.D. Cal. Nov. 6, 2012) (excluding expert testimony disclosed six weeks before trial).

Moreover, as always, the Court should construe the federal rules to do substantial justice to the parties, with "the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983). And the Ninth Circuit provides "particularly wide latitude to the district court's discretion" in matters of discovery sanctions like exclusion of an expert witness for untimely disclosure of an affirmative opinion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This

Court therefore has discretion to determine whether Defendants may present their evidence on damages to the fact finder so that the jury may determine damages on the merits.

Here, Plaintiff does not argue that they suffer any actual prejudice from permitting Kinrich to offer his opinions. Her only claim (Mot. 8) is that "Defendants precluded Nicky Laatz from having an opportunity to review [Kinrich's opinions] and provide rebuttal testimony." But a cursory examination of the timeline shows this is baseless. Defendants disclosed Kinrich as an expert in October 2024, at the time set by the operative scheduling order for disclosure of rebuttal testimony. *See* Mot. 2-3. This was nine months before the then-scheduled trial date—and **sixteen** months before the rescheduled trial date in February 2026—thus affording Plaintiff ample time to depose Kinrich and formulate any response to his opinions. Plaintiff took that opportunity, deposing Kinrich for a full seven hours on all aspects of his report on November 22, 2024. *See* Matthews Decl., Ex. 12. Plaintiff further deposed Defendants' corporate representative, Jason Kang, for a full seven hours on all aspects of the financial documents on which Kinrich relies.

During all this time following the disclosure of Kinrich's Rebuttal Report, Plaintiff's expert, Persechini, had ample time to formulate any additional damages opinions required to respond to Kinrich's rebuttal report. Indeed, at his deposition, Persechini noted that at trial, he would express "my opinions about Mr. Kinrich's analysis" if he is called to rebut Kinrich. Declaration of Thomas Nolan Ex. T at 28:21-29:4. Persechini also stated that his opinions in rebuttal to Kinrich are "formed now," but not presented in a report because "there is no scheduling for like a surrebuttal reply." *Id.* at 35:21-38:7.

In other words, by Persechini's own admission, he formed the necessary expert opinions to respond to Kinrich's rebuttal opinions eight months before the previously scheduled trial date, and sixteen months before the current trial date. Yet during this time, Plaintiff has not sought any additional discovery or information from Kinrich (or Defendants), or proposed to offer any supplemental report from Persechini to respond to Kinrich's supposedly untimely opinions. And even now in her Motion, Plaintiff does not identify a single question she wished to pose to Kinrich and was unable to ask, any additional discovery or information that she requires from him or from Defendants to respond to his opinions, or any basis for his opinions that she was unable to explore.

At this point, Plaintiff has no basis to assert that Kinrich's rebuttal opinions pose any risk of unfair surprise at trial, and her accusation (Mot. 8) that Defendants engaged in "sandbagging" is untrue on its face.  Rather, Plaintiff is engaging in gamesmanship by seeking the right to tell the jury that Defendants owe wildly overstated damages as high as $70 million, Matthews Decl. Ex. 3 at ¶ 6, while preventing Defendants from offering ***any expert response at all***.  There is no basis to exclude any of Kinrich's opinions based on timeliness or because they are improper rebuttal.

## II.   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE RUCINSKI

### A.   The Majority Of Plaintiff's Motion As To Rucinski Is Moot

Defendants' computer-science expert, Christopher Rucinski, submitted two expert reports in this matter.  Because the Court granted summary judgment against Plaintiff on her claim for copyright infringement (Dkt. 443), the parties have agreed to withdraw significant portions of Rucinski's testimony that related to Plaintiff's copyright claim.  *See* Joint Report (Dkt. 450).

Specifically, Defendants have withdrawn the portions of Rucinski's opening report related to the process by which Plaintiff created the Blooming Elegant Trio and whether those fonts were "hand coded"; the nature of the font-data files Plaintiff submitted to the Copyright Office; the operation of the FontLab software; and several opinions regarding the OpenType Features of the Blooming Elegant Trio OTF and VFJ files.  The sole remaining substantive opinion from Rucinski's opening report is that "The OpenType features for the Blooming Elegant font … are written in the format defined by the AFDKO Specification, which is not a programming language."  *See* Matthews Decl. Ex. 1 at ¶ 9 (the remaining opinions are 9(a) and 9(l)); *id.* at ¶ 74 (opinion not withdrawn).

Defendants have also withdrawn the portions of Rucinski's rebuttal report related to Plaintiff's creation of the Blooming Elegant Trio, the FontLab software, and the Blooming Elegant TTX files.  The remaining substantive opinions in Rucinski's rebuttal report are rebuttals to Plaintiffs' computer-science expert, Daniel Garrie, relating to his opinions on the definition of "software" and the operation of Zazzle's Design Tool.  *See* Matthews Decl. Ex. 6 at ¶ 9 (the remaining opinions are 9(m)-(r) and 9(y)-(ss)).

Accordingly, Plaintiffs' motion is moot as it relates to Rucinski's qualifications to offer expert testimony on "specialized questions involving typography, font software, and copyright

registration processes," and to Rucinski's "hand coding" and FontLab opinions.  Mot. 14-19 (Sections IV.B.2-3.d).

**B.    Plaintiffs Do Not Challenge Rucinski's Qualifications As To His Remaining Opinions**

The remaining topics on which Rucinski may testify affirmatively or in rebuttal to Garrie include the difference between data and software and how Zazzle's Design Tool interacts with underlying files to render text. These topics are well within his expertise as a computer scientist with over a decade of experience reviewing and analyzing source code.  *See* Matthews Decl. Ex. 6 at ¶¶ 4-5.  Indeed, Plaintiff does not present any argument that Rucinski's qualifications are insufficient for these core computer-science opinions.  Accordingly, the Court should reject Plaintiff's challenge to Rucinski's qualifications.

**C.    The Court Should Permit Rucinski To Offer His Remaining Opinions**

In the little that remains of Plaintiff's critiques of Rucinski's opinions, Plaintiff fails to provide any basis to exclude.[3]

*First*, Plaintiff offers (Mot. 20) a conclusory argument that Rucinski's critique of Garrie's opinions regarding Zazzle's Design Tool is not methodologically sound, because Rucinski "did not investigate how the design tool operated before 2021, did not speak with Zazzle's technical leads about changes during that period," and "did not attempt to test earlier versions of the system."  Mot. 20.  This argument is ironic, and meritless, as it raises the same critique that Rucinski makes of Garrie.

Specifically, Rucinski observes that Garrie opines that "the Blooming Elegant Trio of Fonts were available for users of the Design Tool to incorporate into any product or design created using the Design Tool from at least around October 2017 to at least around August 2022," but that Garrie's

[3]  While Plaintiff argues that the Court should exclude Rucinski's opinions in their entirety, Plaintiff appears to present no argument for exclusion of (1) Rucinski's opinion in his opening report that the AFDKO Specification is not a programming language, Matthews Decl. Ex. 1 at ¶¶ 9(l), 74; or (2) Rucinski's rebuttal opinions not directly related to the Design Tool, such as his critique of Garrie's use of the term "software," Matthews Decl. Ex. 6 at ¶ 9(m)-(r).  The Court should therefore permit Rucinski to offer these opinions.

analysis of how the Design Tool operates is limited to how text is rendered only as of February 2021, when Zazzle deployed its current systems, and thus Garrie's opinions about the Zazzle Design Tool apply to only 32% of the relevant period during which Blooming Elegant was available in the Design Tool. Mathews Decl. Ex. 6 at ¶ 64. In criticizing Rucinski for offering this opinion, Plaintiff concedes that Garrie's affirmative opinions about the Zazzle Design Tool are themselves unreliable, because Garrie did not investigate how the Design Tool worked before 2021, test the pre-2021 systems, or address the technical changes to the Design Tool between October 2017 and February 2021. Mot. 20. Thus, to the extent Plaintiff's challenge to Rucinski's criticism of Garrie has any merit, that would only confirm that Garrie's affirmative opinion, which suffers from the same alleged flaw, is likewise inadmissible.

*Second*, Plaintiff criticizes (Mot. 20) Rucinski for "devot[ing] several pages of his rebuttal to refuting Garrie's supposed claim that Zazzle sends '***SVG files***' to users" even though, according to Plaintiff, "Garrie never actually said that—only '***SVG data*' or [SVG] '*images*.'" Plaintiff thus tacitly concedes that it would be improper for Garrie to refer to "SVG files." Based on Plaintiff's apparent admission that Garrie did not opine that Zazzle sends "SVG files" to users of the Design Tool and does not intend to do so at trial, and absent any substantive objection from Plaintiffs, the Court should preclude Garrie from offering testimony at trial about "SVG files."

## III.   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE SHAPIRO

Plaintiff moves (Mot. 21-25) for the complete exclusion of Ellen Shapiro, Defendants' expert in graphic design and typography, on the grounds that she does not have appropriate qualifications to rebut Plaintiff's survey evidence, her opinions are not based on facts or data, and her opinions do not constitute proper rebuttal. None of these arguments is true or warrants exclusion. Shapiro is an expert with specialized knowledge in a relevant technical area (typography) that will allow her to present information to assist the trier of fact, drawn from her technical expertise and experience, which counteracts or contradicts the opinions Plaintiff's survey expert Dr. Sara Parikh expresses. The Court should permit her to testify.

### A.    Plaintiff Identifies No Requirement That Shapiro Be A Survey Expert

Shapiro provided rebuttal opinions to Plaintiff's survey expert not premised on the technical design of the survey.  Nevertheless, Plaintiff argues (Mot. 21) that Shapiro cannot rebut Parikh's survey opinions because she "lacks any education, training, or experience in survey design, methodology, and analysis."  But Plaintiff cites no authority for the proposition that only a survey expert can rebut a survey expert.  Nor is this the law.  Instead, an expert must only have "specialized knowledge" in the subject matter of his or her opinions that "will help the trier of fact to understand the evidence." Fed. R. Evid. 702(a).  "[R]ebuttal expert opinion is proper where it 'explains, repels, counteracts or disproves evidence of the adverse party," even if the rebuttal expert's specific field of expertise is different from the original expert's. *Freteluco v. Smith's Food & Drug Centers, Inc.*, 336 F.R.D. 198, 205 (D. Nev. 2020) (permitting a neuropsychologist to rebut opinion by a psychiatrist).  Regardless of the specific field of expertise, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of" the rebutted expert's opinions. *Matthew Enter.,* 2016 WL 4272430, at *1.

Plaintiff spends several paragraphs (Mot. 22) establishing that Shapiro has no qualifications related to survey design, while never addressing Shapiro's actual qualifications.  Shapiro is an expert in the field of graphic design with a focus on typography; received a degree in design; has published books on graphic design; has taught graphic design with a focus on typography at schools including SUNY, Parsons School of Design and the Pratt Institute; and has presented guest lectures on the same subjects at many other schools, including UCLA and The Cooper Union.  Matthews Decl. E. 9 at 4-5.  Plaintiff makes no mention of any of this, instead seeking without basis to dictate the kind of expert Defendants must use.  Plaintiff's "strawman" challenge to Shapiro's qualifications to offer "survey" opinions she did not offer is irrelevant and wrong.

### B.    Shapiro's Opinions Properly Rebut The Parikh Survey

Plaintiff's expert Parikh seeks to testify regarding a survey of a limited group of graphic designers on Zazzle, from which she purports to conclude that the "Blooming Elegant Trio is an important and popular set of fonts on Zazzle."  Matthews Decl. Ex. 2 at 20.  The underlying survey presented respondents with six fonts or sets of fonts, including the Blooming Elegant Trio, and then

asked whether the Blooming Elegant Trio was "unique." *Id.* at 10-11.  It also asked designers who had used the Blooming Elegant Trio, "how difficult would it be for you to find a similar font that would serve as a good substitute?" *Id.* at 12.  Based on this, Parikh intends to testify that the Blooming Elegant Trio is both unique and difficult to substitute. *Id.* at 20.

Shapiro's expert opinions squarely rebut Parikh's testimony.  To be sure, she does not provide a methodological critique of the survey—that is left to Defendants' survey expert, Dr. Scott Swain.  Instead, Shapiro presents information drawn from her technical expertise and experience in graphic design to "contradict, impeach or defuse the impact of" Parikh's testimony. *Matthew Enter.*, 2016 WL 4272430, at *1.  Specifically, as Shapiro explains, she "responds to, and disagrees with, the findings in the [Parikh] Report."  Matthews Decl. Ex. 9 at 3.  Shapiro's opinion counteracting or disproving Parikh's ultimate conclusion is appropriate rebuttal testimony, "regardless of whether it could have been included in" an initial report.  *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. EDCV 17-1388-AB (KK), 2019 WL 3209451, at *6 (C.D. Cal. June 10, 2019), *report and recommendation adopted*, No. EDCV171388ABKKX, 2019 WL 3205797 (C.D. Cal. July 15, 2019) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).  And while Shapiro noted that her opinions come "from the point of view" of a graphic designer, an examination of the actual opinions she presented—which is notably absent from Plaintiff's motion—reveals that they are indeed related to "the same subject matter" as Parikh's opinions, and are directly responsive too Parikh's ultimate conclusions.  *See* Mot. 25 (implying that Shapiro's different "point of view" constitutes an admission of different subject matter).

To rebut Parikh's ultimate conclusions, Shapiro presents visual evidence that the Blooming Elegant Trio is in fact not "unique," including by showing alternatives for each of the three fonts in the Blooming Elegant Trio sourced from Zazzle's Design Tool, Adobe Fonts, and other internet sources.  Matthews Decl. Ex. 9 at 8-14.  Her report includes information on the criteria by which she judged the similarity between fonts. *Id.* at 8, 13-14.  She also demonstrates that the Blooming Elegant Trio is not unique in its trio structure, presenting examples of similar sets of coordinated fonts from multiple sources. *Id.* at 15-17.  To further rebut Parikh's opinions regarding substitutability, Shapiro provides information on technical features of fonts that affect substitution,

*id.* at 20, and a description of how to substitute and examples of the actual substitute font on Zazzle's Design Tool. *Id.* at 24, 22.

Shapiro also discusses the Parikh survey more directly when she critiques Parikh's selection of additional fonts and font trios to include in the survey and explains why those other fonts are not appropriate comparators to the Blooming Elegant Trio, as they are from different font categories, would be used in different applications, and do not offer the swashes (decorative elements). *Id.* at 28-29.

Finally, Shapiro's testimony serves as a rebuttal to the Parikh Survey in another way: she provides background technical information on which Defendant's survey expert, Swain, relied in his critique of Parikh's survey methodology. Shapiro's explanation of the decorative elements of a font—its glyph set—informs Swain's critique of Parikh's choice of comparison fonts. Similarly, Shapiro's discussion of the technical challenges of substituting a font in a completed design (and the lack of those challenges in creating a new design) inform Swain's critique of Parikh's biased presentation of the "substitutability" question and resulting analysis in the Parikh survey. Matthews Decl. Ex. 8 at nn. 54-56.

Putting all these aspects of Shapiro's rebuttal together, the jury will hear from Plaintiff's survey expert, Parikh, that she conducted a survey and, from that survey, draws certain conclusions about the uniqueness and substitutability of the Blooming Elegant Trio. The jury will then hear from Defendants' graphic design expert, Shapiro, who will present evidence undermining these ultimate conclusions about uniqueness and substitutability. Finally, the jury will hear from Defendants' survey expert, Swain, who—drawing on the technical information provided by the graphic design expert as well as his expertise in survey design—will explain how methodological flaws in Parikh's survey caused her to reach these erroneous conclusions. Shapiro's testimony thus will serve to "explain, repel, counteract or disprove" Parikh's opinions, and is valid rebuttal testimony. *Marmo*, 457 F.3d at 759.[4]

---

[4] Even if the Court concludes that Shapiro's opinions are untimely affirmative opinions, the Court should still permit her to testify because such untimely disclosure was harmless and Plaintiff

### C.    Shapiro's Opinions Are Based On Technical Expertise

Plaintiff argues (Mot. 22) that Shapiro's opinions are inadmissible because they are based on her "subjective beliefs." This criticism misstates the law as it applies to experts, such as Shapiro, who rely on their long experience in a technical field. Plaintiffs establish that Shapiro did not conduct a survey or otherwise collect data from Zazzle designers—things she never purported to do. But collection and analysis of new data via interviews or surveys is not the only appropriate function of an expert or a requirement for admissibility. Plaintiffs are once again attempting—without basis—to dictate what type of opinion testimony the Court should permit Defendants to offer.[5]

There are "many different kinds of expertise" and some experts' testimony rests "upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The plain language of Rule 702 makes clear that expert opinions may be based on the expert's "knowledge, skill, experience, training, or education," regardless of whether new data was collected or some new study performed, so long as the opinions based on that knowledge and experience "will help the trier of fact to understand the evidence." Fed. R. Evid. 702(a). The Court may therefore permit such an expert "to testify to conclusions that the Court is confident can be reliably based on [her] experience alone." *Campagnolo S.r.l. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 11527323, at *3 (W.D. Wash. May 5, 2010) (permitting testimony by witness with "thirty years of experience in the advertising industry" even though he "conducted no outside research").

Here, Shapiro seeks to offer opinions on the existence of fonts with similar visual features to the Blooming Elegant Trio and the process required to substitute fonts in a new or existing design—matters that are "precisely the types of issues that [graphic] designers consider in their

suffered no prejudice, for the same reasons that Plaintiff suffered no prejudice from Kinrich's opinions. *See supra* Section I.C.

[5]  Plaintiff also criticizes Shapiro (Mot. 24) for discussing fonts that may not have been available on Zazzle's Design Tool during the relevant period. Shapiro never claimed to evaluate only fonts available on the Design Tool at the relevant time. If Plaintiff finds this a weakness of her opinions, this should be the subject of for cross-examination, as Plaintiff provides no reason why it should go to admissibility.

work." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2018 WL 1586276, at \*14 (N.D. Cal. Apr. 2, 2018) (permitting testimony by an industrial designer on how a user would typically hold a smartphone, based only on his own experience).  And the type of experience Shapiro brings to bear, from teaching and professional experience in graphic design, is of a kind that courts regularly admit when relevant.  *See, e.g.*, *Louisville Mktg., Inc. v. Jewelry Candles, LLC*, No. 3:15-CV-00084-DJH, 2016 WL 6595094, at \*4 (W.D. Ky. Nov. 4, 2016) ("Particular fonts and graphic elements within a logo qualify as specialized knowledge, that common jurors may need assistance in evaluating."); *Rally Concepts, LLC v. Republican Nat. Comm.*, No. 5:05-CV-41-DF, 2006 WL 6889674, at \*2 (E.D. Tex. Nov. 9, 2006) (admitting testimony of a graphic design expert on fonts used in a logo).

## IV.     THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE SWAIN

Finally, the Court should deny Plaintiff's motion to exclude Paragraphs 72 and 75-76 of the expert report of Defendants' rebuttal survey expert, Dr. Scott Swain.  Plaintiff provides no challenge to Swain's qualifications, methods, or analysis; Plaintiff's only argument is that, in these particular paragraphs, Swain incorporates opinions from Shapiro.  Mot. at 25.  Shapiro's opinions are admissible rebuttal opinions, *see supra* Section III, and Swain may permissibly rely on her expert knowledge of typeface design.  Indeed, Swain may rely on Shapiro's expertise in design even if she is excluded from testifying, as when one expert relies on the separate expertise of another, "[t]here is no general requirement that the [underlying] expert testify as well."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (alterations in original).

Even if Swain is not permitted to rely on Shapiro—and he should be—there is no basis to exclude the entirety of the three paragraphs identified by Plaintiff.  Plaintiff seeks the exclusion of this portion of Swain's report apparently based on three footnote citations to Shapiro's rebuttal report.  Paragraph 72 discusses the "positive contract effect" which artificially biases the results of the Parikh Survey in favor of the Blooming Elegant font trio, with a footnote citation to Shapiro for the fact that the other fonts in the Parikh survey do not offer the same design features as the Blooming Elegant Trio in their glyph sets.  Matthews Decl. Ex. 8 at ¶ 72.  Paragraphs 75 and 76

discuss the effect of temporal context on the design of the Parikh survey—that is, that the Parikh Survey asks about the difficulty of substituting replacement fonts after a product has been designed, rather than the difficulty of designing a product with a different font from the outset. *Id.* at ¶¶ 75-76. These paragraphs rely on Shapiro's design expertise only for the limited factual claim that factors "such as character sizing, spacing, kerning, or different glyph sets" may make it difficult or infeasible to substitute a font in a completed design, but do not present the same difficulties in the creation of a new design. *Id.* The Court should deny Plaintiff's motion and permit Swain to testify as to these methodological criticisms.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court deny Plaintiff's motion to exclude the testimony of Defendants' expert witnesses in full.

DATED: September 26, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Andrew H. Schapiro*
      Andrew H. Schapiro

      *Attorneys for Defendants*
      *Zazzle Inc. and Mohamed Alkhatib*

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS