QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
MIRANDA M. HULKA (admitted *pro hac vice*)
*mirandahulka@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

WILLIAM F. PATRY (admitted *pro hac vice*)
*williampatry@quinnemanuel.com*
KATY AKOPJAN (admitted *pro hac vice*)
*katyakopjan@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Defendants Zazzle Inc. and Mohamad Alkhatib

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S DESIGNATED EXPERT WITNESSES**<br><br>Date: October 23, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Beth Labson Freeman<br><br>Trial Date: February 17, 2026 |
| ZAZZLE INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>NICKY LAATZ,<br><br>Counter-Defendant. | |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.    PLAINTIFF FAILS TO SHOW THAT SANDLER'S TESTIMONY IS ADMISSIBLE .................................................................................................................1

    A.    Plaintiff Fails To Show That Sandler's Improper Legal Conclusions About The License Are Admissible .........................................................................1

    B.    Plaintiff Fails To Show That Sandler's Duplicative Opinions About "Pending Designs" Are Admissible ...........................................................3

II.   PLAINTIFF FAILS TO SHOW THAT GARRIE'S TESTIMONY IS ADMISSIBLE .................................................................................................................4

    A.    Plaintiff Fails To Show That Garrie's Opinions On Copyright Law Are Admissible .................................................................................................4

    B.    Plaintiff Fails To Show That Garrie's Opinions On Contract Interpretation Are Admissible .................................................................................................6

    C.    Plaintiff Fails To Show That Garrie's Opinions On The Statute Of Limitations Are Admissible .................................................................................6

    D.    Plaintiff Fails To Show That Garrie's Opinions About User Experience And Zazzle's Design Tool Are Admissible .................................................................7

        1.    Plaintiff Concedes That Garrie's Opinion That Zazzle Users Directly Used The BE Font Data Is Improper .................................................7

        2.    Plaintiff Fails To Show How Garrie's Irrelevant, Unqualified Opinions About "User Perception" Of The Design Tool Will Aid The Jury .................................................8

        3.    Plaintiff Fails To Show That Garrie's *Ipse Dixit* Opinion About Zazzle's Use Of The BE Font Data Is Admissible .................................................9

    E.    Plaintiff Fails To Show That Garrie's Speculative Testimony About The Number of Users Who Had "Access" To BE Is Admissible .................................................9

III.  PLAINTIFF FAILS TO SHOW THAT PERSECHINI'S TESTIMONY IS ADMISSIBLE .................................................................................................................10

    A.    Plaintiff's Arguments Regarding Implied-in-Fact Contracts Are Irrelevant, Because Plaintiff Asserts An Express Contract .................................................10

    B.    Plaintiff Fails To Show That Persechini's Opinions Regarding Zazzle's Profits Are Relevant Because That Is Not a Remedy Available For Her Contract Claim .................................................11

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES

IV.    PLAINTIFF FAILS TO SHOW THAT PARIKH'S TESTIMONY IS
       ADMISSIBLE ......................................................................................................13

CONCLUSION ......................................................................................................................15

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ajaxo Inc. v. E\*Trade Group, Inc.*,
   135 Cal.App.4th 21 (2005)........................................................................................... 13

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)................................................................................................... 12

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ........................ 2, 9

*In re Canvas Specialty, Inc.*,
   261 B.R. 12 (Bkrtcy. C.D. Cal. 2001) ............................................................................ 2

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
   2021 WL 5407316 (N.D. Cal. Nov. 18, 2021).................................................................. 5

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004)..................................................................................... 5, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)....................................................................................... 13

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
   377 F. App'x 665 (9th Cir. 2010).................................................................................. 12

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*,
   2009 WL 1764652 (N.D. Cal. June 18, 2009) ................................................................ 5

*McHugh v. United Serv. Auto. Ass'n*,
   164 F.3d 451 (9th Cir. 1999)..................................................................................... 1, 6

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
   2018 WL 5974299 (C.D. Cal. Aug. 16, 2018)................................................................ 12

*Roblox Corp. v. WowWee Grp. Ltd.*,
   2024 WL 4057418 (N.D. Cal. Sept. 3, 2024)................................................................... 5

*SA Music LLC v. Apple, Inc.*,
   592 F. Supp. 3d 869 (N.D. Cal. 2022) ........................................................................... 8

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
   2021 WL 6107023 (C.D. Cal. Nov. 21, 2021)................................................................. 4

*Sheppard v. Banner Food Prod.*,
   78 Cal.App.2d 808 (1947)........................................................................................... 13

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019) ................................................................................. 9, 10

*Sumotext Corp. v. Zoove, Inc.*,
  2020 WL 533006 (N.D. Cal. Feb. 3, 2020) ................................................................. 7

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) ..................................................................................... 7

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
  2001 WL 1673258 (C.D. Cal. Aug. 15, 2001) .......................................................... 12

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ............................................................ 4

**<u>Statutes</u>**

Cal. Civ. Code §§ 3281, 3300, 3282 ................................................................................ 12

**<u>Rules</u>**

Federal Rule of Evidence 403 ............................................................................................ 4

Federal Rule of Evidence 702 ....................................................................................... 1, 4

**INTRODUCTION**

As the parties stated in their Joint Report on *Daubert* Motions (Dkt. 450), Plaintiff withdrew most of the expert reports and opinions of Thomas Phinney and portions of the opinions of Stuart Sandler and Dominic Persechini. Dkt. 450. The remaining proposed testimony of Stuart Sandler, Daniel Garrie, Dominic Persechini, and Sara Parikh does not meet Rule 702's and *Daubert*'s stringent standards, and the Court should preclude Plaintiff from offering these opinions to the jury.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO SHOW THAT SANDLER'S TESTIMONY IS ADMISSIBLE**

Plaintiff has withdrawn paragraphs 62-66 of Sandler's initial expert report, as well as the entirety of Sandler's rebuttal report. Opp. 1. Plaintiff fails to refute that Sandler's remaining opinions are inadmissible. The Court should exclude Sandler from testifying in full.

**A.    Plaintiff Fails To Show That Sandler's Improper Legal Conclusions About The License Are Admissible**

Defendants moved to exclude (Mot. 8-10) Sandler's opinions on (i) the meaning of the License and (ii) whether Zazzle's licensing practices "violated standard font industry licensing practices." Plaintiff fails to adequately defend either set of opinions.

*First*, Plaintiff fails to address the Court's previous ruling disregarding Sandler's legal conclusions. Sandler included these same two opinions, among others, in his declaration in support of Plaintiff's opposition to summary judgment. Dkt. 342-55 at ¶¶ 15-36. Defendants objected on the ground they contain improper legal argument. Dkt. 347 at 2-3. While the Court overruled the objection, it stated that it "will disregard all legal conclusions and consider only the factual portions," and that "all of these paragraphs are generously laced with impermissible legal conclusions which will be disregarded." Dkt. 414 at 9. The Court should now formally exclude these opinions. *See, e.g.*, *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999 ("[Expert] testimony cannot be used to provide legal meaning or interpret the [contract] as written.").

*Second*, Plaintiff misstates the issue by arguing (Opp. 3-4) that Sandler may opine on the meaning of the License even if his testimony "embraces the ultimate issue." Sandler's testimony does not merely "embrace the ultimate issue," it presents inadmissible legal conclusions. Plaintiff

explicitly agrees this is improper (Opp. 7) by acknowledging that "[c]ourts prohibit experts from concluding a party 'breached the contract.'" Yet Sandler does precisely that by opining, for example, that "Zazzle's incorporation of the Blooming Elegant Trio digital content, including the font software, into Zazzle's design tools is expressly forbidden by the Blooming Elegant License" (Dkt. 342-55 at ¶ 39), and that "this is a separate violation of the Blooming Elegant License from the underlying terms violated by Zazzle" (*id*. at ¶ 52). There is no basis for Sandler to simply tell the jury that Zazzle breached the License—particularly when he lacks any proper foundation to do so.

*Third*, Plaintiff argues (Opp. 3-4) that Sandler may opine on the meaning of the License because "Defendants have contended that the [License] is ambiguous." But Defendants' consistent position has been that the License is *unambiguous*. *See, e.g.*, Dkt. 342-3 at 86. Plaintiff's sole support for her argument—Zazzle's Amended Responses to Requests for Admission (Opp. 3-4 (citing Dkt. 342-3))—undermines her position. Zazzle expressly stated in those responses that the License "is not ambiguous." Dkt. 342-3 at 86 (Responses to RFA Nos. 210-211). Given that Plaintiff, apparently, does not contend the License is ambiguous either, any supposed ambiguity provides no basis for Sandler to opine on the meaning of the License. *See, e.g.*, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ("Unless a contract is deemed ambiguous or there is a term of the contract that requires an expert's explanation, it is improper for an expert to interpret or construe a contract in his opinion.").

*Fourth*, Plaintiff contends (Opp. 1-3) that Sandler may opine on the License's meaning based on his font industry experience and alleged specialized knowledge regarding font creation and licensing. But even if Sandler did have foundation to offer this testimony, it still would not be admissible given the lack of ambiguity in the License. And in any case, Sandler lacks foundation for this testimony. Any general experience he may have in the "font industry" does not, by itself, qualify him to interpret the License. *See In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (Bkrtcy. C.D. Cal. 2001) ("It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue."). Plaintiff does not dispute (*see* Mot. 9-10) that the License is a form agreement from the Creative Market website applicable to digital content generally—and is not exclusive to Sandler's supposed expertise in fonts. Sandler did

Case No. 5:22-cv-04844-BLF-VKD

not draft the License, has never been a party to it, and never worked for Creative Market. Nor has he shown that any other font license with which he is familiar is similar to the License in any relevant way (such as in its specific language or terms), or that any experience he has with different licenses qualifies him to construe this particular License. This is not an issue of minor qualification deficiencies that goes to weight versus admissibility, as Plaintiff asserts. Opp. 3. Rather, Sandler's lack of prior knowledge, skill, experience, or training with respect to the License, or any other font license having similar language or terms, bars him from opining on the meaning of the License.

Moreover, Plaintiff fails to refute (Opp. 2-3; *see* Mot. 9-10) that there are, in fact, no recognized or relevant "font industry standards" that would inform the meaning of the License. Plaintiff merely recites (Opp. 2-3) Sandler's credentials, offers the conclusory assertion that "the font industry has been a recognized area of artistic creativity and commerce for decades," and cites testimony regarding industry participation numbers. These strawman arguments fail to establish the existence of any uniform, applicable font-licensing standards that are relevant to the meaning of the License. And Plaintiff does not dispute, or explain, the testimony of her (now-withdrawn) other supposed "font-industry" expert, Phinney, that there is no industry standard for font licensing. Dkt. Mot., Ex. F (Phinney Dep. Tr.) 39:21-40:13. Indeed, Sandler himself testified that the font industry is "not an organized entity" but rather a "loose coalition of independent font authors and font distributors. . .[who] have their own businesses and their own practices." Mot., Ex. D (Sandler Dep. Tr.) at 56:23-57:22. He also confirmed there are no memorialized rules or standards for this purported "industry." *Id.* at 58:20-59:13. Plaintiff's reliance on supposed font-industry standards that would inform the meaning of the License is thus belied by her experts' own testimony—which shows such standards simply do not exist. The Court should preclude Sandler from offering speculative and unsupported testimony on supposed font industry standards.

B.     **Plaintiff Fails To Show That Sandler's Duplicative Opinions About "Pending Designs" Are Admissible**

Plaintiff also fails to defend (*see* Mot. 10-11; Opp. 4-5) the admissibility of Sandler's opinions that "the number of total users Zazzle allowed to access the Zazzle design tool containing the Blooming Elegant Trio is likely substantially understated."

For starters, Plaintiff effectively concedes that Sandler's purported opinions about so-called "pending designs" merely parrot Garrie's proposed testimony on the same issue. Opp. 5. Plaintiff identifies no independent analysis, methodology, or expertise that Sandler himself brings to this opinion. Sandler's duplicative testimony serves no legitimate purpose and the Court should exclude it under Federal Rule of Evidence 403 to avoid the waste of judicial resources, confusion of the jury, and undue prejudice to Defendants by giving Plaintiff's position the false appearance of corroboration from multiple independent sources. *See, e.g.*, *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 6107023, at *3 (C.D. Cal. Nov. 21, 2021) (excluding "expert evidence that is duplicative, cumulative, and confusing"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (excluding testimony of expert who "simply adopted the opinions of others" and "parroted [a second expert's] opinion").

More fundamentally, Plaintiff points to no qualifications or expertise that Sandler has to evaluate the functionality, user-access capabilities, or technical operations of Zazzle's Design Tool which he would need to offer competent opinions about how many users accessed the Design Tool. Without such foundational expertise, Sandler cannot reliably opine on these matters, rendering his testimony inadmissible under Rule 702.

Finally, Plaintiff fails to explain (Opp. 5-6) why information regarding "pending designs" is relevant and admissible for purposes of expert testimony when, as Defendants argued (Mot. 10-11), the Court has repeatedly limited or denied discovery on this same topic. Dkts. 287, 288 at 10-11 (affirmed at Dkt. 314). Further, Plaintiff fails to refute (Opp. 5-6) Defendants' argument (Mot. 10) that testimony regarding "pending designs" would be a waste of the Court and jury's time and would cause unnecessary jury confusion.

## II.    PLAINTIFF FAILS TO SHOW THAT GARRIE'S TESTIMONY IS ADMISSIBLE

### A.    Plaintiff Fails To Show That Garrie's Opinions On Copyright Law Are Admissible

Plaintiff fails to provide any persuasive response to Defendants' argument (Mot. 11-12) that Garrie offers inadmissible legal opinions about matters of copyright law, including that the BE font data is "copyright-protected" and that Zazzle created and delivered "derivative works." Plaintiff

argues (Opp. 7) that Garrie uses these terms "in a descriptive technical context, not as legal conclusions." But whatever Plaintiff means by that, it cannot change the fact that the terms "copyright-protected" and "derivative work" have legal meanings under copyright law, such that any assertion about something being copyright-protected or a derivative work is necessarily a legal conclusion about their status under the law. *See, e.g.*, *Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4057418, at *7 (N.D. Cal. Sept. 3, 2024) (whether works are or "'are not derivative works' is an improper opinion about a legal conclusion"); *Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, 2009 WL 1764652, at *1 (N.D. Cal. June 18, 2009) (excluding expert testimony on the copyrightability of a work because "whether a particular item is copyrightable" is "an ultimate issue of law to be decided by the Court"). Plaintiff makes no attempt to distinguish this authority.

Nor do Plaintiff's cited authorities help her. In *Hangarter v. Provident Life & Acc. Ins. Co.*, the Ninth Circuit affirmed that expert testimony that a party had failed to comport with industry standards was appropriate because the expert ***never testified to a legal conclusion***. 373 F.3d 998, 1016 (9th Cir. 2004). And in *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, the Ninth Circuit affirmed the exclusion of expert testimony that "appl[ied the] law to the facts of this case" and "discuss[ed] the parties' legal rights." 523 F.3d 1051, 1058-59 (9th Cir. 2008). Using the terms "copyright-protected" and "derivative works" implicitly applies copyright law to the facts of this case and offers legal conclusions.

Moreover, this Court has already held that the "BE Trio is ***not copyrightable*** as font data" and recognized that the Copyright Office in fact "refused to register the BE data files as a computer program." Dkt. 443 at 5 (emphasis added); Dkt. 338-78 at 4, 5-6. Thus, it is factually and legally incorrect, and contrary to the law of the case, for Garrie refer to the BE Trio or BE font data as "copyright-protected." The Court should not permit Garrie to offer testimony that "constitute[]s erroneous statements of law"—as it is "not only superfluous but mischievous." *Nationwide*, 523 F.3d at 1059.

Plaintiff also argues (Opp. 7) that Garrie's use of the phrase "copyright-protected font software" does not reflect his own "independent legal judgment" because such references "cite [to] Nicky Laatz's Declaration." But the law does not permit Garrie to parrot Plaintiff's erroneous and

improper legal conclusions any more than presenting his own. *See Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 5407316, at *2-3 (N.D. Cal. Nov. 18, 2021) (excluding expert testimony that threatened to "mislead the jury by putting the 'imprimatur of [his] expertise' on the statements of other witnesses"). The fact that Garrie cites to Plaintiff's prior declaration as a source for this phrasing is irrelevant, as the jury will not read his report but will simply hear his testimony.

**B.     Plaintiff Fails To Show That Garrie's Opinions On Contract Interpretation Are Admissible**

Plaintiff's sole attempt to defend Garrie's improper opinions about the meaning of the License (Opp. 7) is that "[h]is analysis of license terms requiring 'unique implementation' of fonts quotes the agreement directly, addressing factual requirements without opining on legal enforceability." This characterization both misrepresents Garrie's Report and fails to address multiple improper opinions Garrie's seeks to offer at trial.

As an initial matter, Garrie does not just quote the License, but replaces the word "Item" with brackets containing the language "[fonts and font software]." Mot., Ex. G (Garrie Report) at 4-5. In opining that the "Item" refers to "fonts and font software," Garrie is offering his interpretation of the meaning and scope of the License. As discussed *supra*, that is wholly improper, as contract interpretation is a question of law reserved entirely for the Court. *McHugh*, 164 F.3d at 454. As with Sandler, the Court should preclude Garrie from offering any interpretation or characterization of the License.

Likewise, Plaintiff does not and cannot rebut Defendants' argument (Mot. 11) that Garrie's proposed testimony that Zazzle breached the License by giving its users "unlicensed access" to BE is inadmissible. Mot., Ex. G (Garrie Report) at 6, 35, 40, 41. As with Sandler, Plaintiff fails to reconcile her concession that "courts prohibit experts from concluding a party breached the contract" (Opp. 7) with her argument that the Court should permit Garrie to testify that Zazzle breached the License. The Court should not permit any of Plaintiff's experts to testify to this ultimate legal issue.

**C.     Plaintiff Fails To Show That Garrie's Opinions On The Statute Of Limitations Are Admissible**

The Court held that Garrie's opinions regarding Plaintiff's "notice" for purposes of the

statute of limitations are improper. Dkt. 414 at 8-9 (striking Garrie's assertions in ¶¶ 7-8 and 18-20 of his Declaration as "containing improper legal argument"). Plaintiff ignores this but still attempts to defend (Opp. 7) Garrie's use of the term "notice," asserting he "opined only about what Zazzle's evidence demonstrated as a factual matter, not as a legal conclusion for statute of limitations purposes." But opining that the evidence demonstrates a particular result amounts to an impermissible instruction about what the fact-finder should ultimately find. *See Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006, at *12 (N.D. Cal. Feb. 3, 2020) (Freeman, J.) (quoting *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.")). The Court should preclude Garrie from offering these opinions at trial.

**D.      Plaintiff Fails To Show That Garrie's Opinions About User Experience And Zazzle's Design Tool Are Admissible**

In response to Defendants' arguments (Mot. 12-13) that the Court should not permit Garrie to offer his unsupported and unreliable opinion that "Zazzle enabled millions of users to use the [BE font data] to render text in [BE] using the Design Tool," Plaintiff denies that Garrie offered such an opinion and asserts instead (Opp. 8-9) that he should be able to opine that, in a "user's perception," and as a technical matter, Zazzle's use of the BE font data to render text in BE in the Design Tool is "effectively the same as a user's computer using a locally installed copy of [BE]." For the following reasons, Plaintiff fails to show that any of these opinions are proper expert testimony.

1.      Plaintiff Concedes That Garrie's Opinion That Zazzle Users Directly Used The BE Font Data Is Improper

Plaintiff fails to respond to Defendants' argument (Mot. 12) that Garrie has no basis to opine that Zazzle allowed users to "use" the BE font data because such opinions are unsupported and unreliable. Instead, Plaintiff argues (Opp. 8) that "Defendants mischaracterize Garrie's testimony about user interactions with the font software through Zazzle's design tools" and that Garrie "distinguishes between the user's perception . . . and the technical processes where a 'user's actions within the Design Tool trigger Zazzle's servers to use the Software.'" By these arguments, Plaintiff either represents that Garrie does not intend to testify that Zazzle users directly accessed or used the

BE font data, or concedes (in declining to defend the admissibility of such an opinion) that it would be improper for Garrie to offer this opinion. Either way, the Court should preclude Garrie from testifying that Zazzle allowed users to "access" or "use" the BE font data at trial—as Garrie provides no evidence to support this conclusion and in fact stated in his Report and at deposition, inconsistently, that only *Zazzle's servers*—not users themselves—access or use the BE font data. Mot. 12; *id.* Ex. G (Garrie Report) at 40; *id.* Ex. H (Garrie Dep. Tr.) at 290:24-291:8.

> 2.    Plaintiff Fails To Show How Garrie's Irrelevant, Unqualified Opinions About "User Perception" Of The Design Tool Will Aid The Jury

Plaintiff fails to refute (Mot. 12-13) the inadmissibility of Garrie's opinion that, "*from a user's perspective*, the outcome of the process [of using the Design Tool to render text in BE] . . . is effectively the same as a user directly obtaining a copy of the Software, installing it on their computer, and having the option to use it to generate text in [BE] within a design tool." *See* Mot. Ex. G (Garrie Report), at 37 (emphasis added).

*First*, Plaintiff fails to address the point (Mot. 13) that Garrie's opinion regarding the user's perspective is irrelevant and risks seriously confusing the jury. The central dispute remaining in this case is whether Zazzle, by allowing users to render text in the BE font in the Zazzle Design Tool, permitted its users to access the BE font data (the licensed asset) in violation of the License. Whether, from a user's perspective, using the Design Tool to render text in BE is the same as having the BE font data installed on their computer is wholly irrelevant to the question of whether Zazzle *in fact* allowed users to access the BE font data. Rather than address this point, Plaintiff launches (Opp. 8-9) into an irrelevant tangent about experience-based expertise that has no bearing on this issue. The Court should exclude this testimony on that basis alone. *See Hangarter*, 373 F.3d at 1020 (affirming exclusion of expert testimony that was irrelevant and likely to confuse the jury).

*Second*, Plaintiff does not (Opp. 8-9) and cannot show that Garrie is qualified to opine about the supposed user experience. Indeed, Plaintiff admits that Garrie formed this opinion not by applying any particular expertise earned through education or experience, but by "using Zazzle's design tool similar to how an actual Zazzle user would." Opp. 9. Thus, to the extent specialized knowledge is required to opine on a "user's perspective," Plaintiff fails to demonstrate that Garrie

has it. *See, e.g.*, *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 901 (N.D. Cal. 2022) (excluding technical expert's testimony on technical functions of music platform where expert never "reviewed [platform's] internal technical specifications" and it appeared he was only "aware of [the platform's] capabilities in the same way any user of it could be"). And to the extent specialized knowledge is not necessary for a jury to understand the use of the Design Tool, then expert testimony about that is improper. *Aya*, 613 F. Supp. 3d at 1322 ("Expert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help.").

Nor does Plaintiff's argument (Opp. 9) that Garrie formed his opinion by using the Design Tool render the opinion non-speculative. Plaintiff fails to explain how merely using the Design Tool provides a basis for Garrie to credibly opine on Zazzle's users' perceptions of the Design Tool. Absent that explanation, Plaintiff cannot show that Garrie's opinion is anything more than inadmissible "assumptions and speculation." *See Stephens*, 935 F.3d at 856.

      3.     <u>Plaintiff Fails To Show That Garrie's *Ipse Dixit* Opinion About Zazzle's Use Of The BE Font Data Is Admissible</u>

Plaintiff fails to address (Opp. 8-9) that Garrie's opinion—that the "result [of Zazzle's use of the BE font data] is effectively the same as a user's computer using a locally installed copy of the Software"—directly contradicts his own prior testimony, as Defendants argued. Mot. 12-13. Indeed, Plaintiff fails (Opp. 8-9) to reconcile this unsupported opinion with Garrie's deposition testimony in which he admits that users who obtained the BE font data and installed it on their device "would have a much wider breadth of use," Mot., Ex. H (Garrie Dep. Tr.) 296:22-297:4. Defendants do not seek to exclude Garrie's testimony merely because it disagrees with Garrie's conclusions (Opp. 9); rather, Defendants challenge this testimony as unsupported and thus unreliable *ipse dixit*, and Plaintiff fails to meet her burden to show otherwise.

**E.     Plaintiff Fails To Show That Garrie's Speculative Testimony About The Number of Users Who Had "Access" To BE Is Admissible**

Contrary to Plaintiff's argument (Opp. 9), Defendants' objections to Garrie's proposed testimony that "the [BE font data] was used to generate text in the Blooming Elegant Trio of Fonts in at least ▆▆▆▆▆ unique designs using the Design Tool" are neither "semantic" nor merely based

on a "competing interpretation[] of underlying data." Garrie seeks to rely on Zazzle's Response to Interrogatory No. 12 to opine that BE was used *in the Design Tool* at least ███████ times—in other words, to provide a baseline number of times that, in Plaintiff's (incorrect) theory of the case, the BE font data was "used" by Zazzle users. But, as Zazzle Response to Interrogatory No. 12 makes clear, ████████ is "the number of unique products depicting the [BE] typefaces *sold* at any time." Mot., Ex. K (Zazzle Responses to Interrogatories), at 15. Importantly, just because a product depicting BE is sold on Zazzle does not mean that the product design was created *in the Design Tool*, or that the text in BE featured on the product was rendered using the Design Tool.

The number of designs created in the Design Tool to depict BE is far lower—████████— as Zazzle provided in its Response to Interrogatory No. 5. *Id.* at 10-11. The Court should not permit Garrie to confuse the jury and artificially inflate the number of users who, according to Plaintiff's damages expert, would have needed to obtain their own license to use BE on Zazzle's Design Tool, by testifying to conclusions based entirely on demonstrably incorrect data.

Furthermore, Plaintiff points to no facts supporting Garrie's opinion that "the actual numbers [of users who created or customized at least one design in the Design Tool or unique designs created in the Design Tool] are likely *significantly* higher" because they exclude pending designs, nor any legal authority stating that it would be proper for Garrie to offer his hyperbolic speculation to the jury. *See* Mot. Ex. G (Garrie Report), at 38-40; Opp. 9-10. Indeed, Ninth Circuit law makes clear it would be error to allow such testimony. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (expert opinions based on mere "assumptions and speculation" are inadmissible).

## III.    PLAINTIFF FAILS TO SHOW THAT PERSECHINI'S TESTIMONY IS ADMISSIBLE

Plaintiff has withdrawn paragraphs 30, 31-32 and 87-95 of the expert report of Persechini (Dkt. 450 at 3), so Defendants do not address these withdrawn portions. Plaintiff fails to refute that Persechini's remaining opinions are inadmissible.

### A.    Plaintiff's Arguments Regarding Implied-in-Fact Contracts Are Irrelevant, Because Plaintiff Asserts An Express Contract

Plaintiff argues (Opp. 12) that Zazzle's "conduct" created an "implied-in-fact contract" to

pay $14 for millions of alleged "users," and that Defendants "simply dispute whether and how much they should have to pay for each such user." Defendants dispute those claims vigorously—indeed, nothing about them is true.

Plaintiff's lynchpin remains *Desny v. Wilder*, where the California Supreme Court created an "implied contract" remedy for the benefit of a plaintiff who did not have an oral or written contract, but who pitched an idea for a motion picture project to director Billy Wilder's secretary at Paramount, and Paramount then, it appears, went on to make the picture. 46 Cal. 2d 715 (1956). *Desny* and its progeny are miles away from this case. From the outset, Plaintiff has not claimed a contract implied solely by conduct; rather, Plaintiff has asserted breach of an express, written license, and the parties have litigated the contents of that license extensively, through motions for summary judgment by both sides. Plaintiff cites no case, and Zazzle is aware of none, where the plaintiff asserted an express, written contract, but then claimed damages based on another, different "implied-in-fact" contract on precisely the same subject matter. *Desny* does not support Plaintiff.

Plaintiff's arguments regarding "loss in value" are also non sequiturs. Plaintiff argues (Opp. 12) that "[w]hen a buyer breaches a contract, the loss in value is the amount that it 'agreed to pay.'" But Plaintiff presents no evidence that Zazzle actually "agreed to pay" Plaintiff $14 for every person who had the hypothetical opportunity to use BE on its website. Plaintiff provides no basis to support charging "per user" on that scale—including for "users" who did not actually use BE. Plaintiff additionally provides no basis to extrapolate Parikh's survey results of Zazzle's "most active graphic designers" to *all* users of Zazzle.com, one-for-one. Indeed, Plaintiff's entire, extended metaphor with "Professor Williston's shoplifter" (Opp. 16) begs the question of what Zazzle actually licensed. Far from "shoplifting" BE, Zazzle purchased a license for it, and then put the licensed fonts to the unlimited, commercial use that the License expressly allows. Plaintiff offers Persechini to seek a "gotcha" windfall that exceeds anything she could ever obtain in the marketplace by many orders of magnitude. The Court should exclude Persechini's opinions on "lost profit damages."

**B.      Plaintiff Fails To Show That Persechini's Opinions Regarding Zazzle's Profits Are Relevant Because That Is Not a Remedy Available For Her Contract Claim**

The Court should also exclude Persechini's opinions regarding disgorgement of Zazzle's

profits because disgorgement is not an available remedy for Plaintiff's sole remaining claim for breach of contract. Plaintiff's own authority (Opp. 19) recognizes that, in some circumstances, disgorgement of the defendants' profits can be recoverable on a contract claim, but in most circumstances, it is not. Specifically, under the California Civil Code, the remedy for breach of contract is "damages" sufficient to "compensate the party aggrieved for all the detriment"—*i.e.*, the "loss or harm suffered in person or property"—"proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3281, 3300, 3282. Unless a statute provides otherwise—such as the Copyright Act—the plaintiff may not "recover a greater amount in damages for . . . breach . . . than he could have gained by the full performance thereof on both sides." *Id*. § 3358; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("Contract damages seek to approximate the agreed-upon performance."). The general rule in contract cases is, therefore, that the defendant's profits are not recoverable as harm to the plaintiff. *See, e.g.*, *Mission Viejo Florist, Inc. v. Orchard Supply Co.*, LLC, 2018 WL 5974299, at *5 (C.D. Cal. Aug. 16, 2018) (internal quotations omitted) (denying disgorgement of profits for breach of contract because "disgorgement is an equitable remedy, and it is a 'general principle of equity that equitable relief will not be afforded when the plaintiff's remedies at law are adequate to redress his or her injury"); *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 2001 WL 1673258, at *1 (C.D. Cal. Aug. 15, 2001) (plaintiff not entitled to disgorgement of profits for breach of contract, especially where it would "result in an inequity" in the form of "a huge monetary windfall [for plaintiff], strikingly disproportionate to the nature of [the] breach and its impact on [plaintiff]"). Plaintiff makes no attempt to demonstrate that any unusual circumstance is present here that would permit her to recover Zazzle's profits as a remedy for breach of contract, and there is none.

Plaintiff relies heavily (Opp. 19) on *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665 (9th Cir. 2010), which (Plaintiff argues) "teaches that where actual damages are difficult to prove, disgorgement may be an appropriate remedy." But Plaintiff does not argue that actual damages are difficult to prove here; to the contrary, she presents multiple ways of calculating her alleged "actual damages." Moreover, *Foster Poultry* merely recognized that disgorgement "can be an appropriate remedy for breach of a contract ***protecting trade secrets and proprietary confidential***

*information.*" *Id.* at 668 (emphasis added). And *Foster Poultry* relies on cases addressing the unique scenario, not present here, where the plaintiff suffered no financial harm but the defendant realized improper gains, such as where the claim is for breach of a confidentiality agreement. *See, e.g.*, *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal.App.4th 21, 37 (2005).

Plaintiff also misplaces reliance on *Young v. Wideawake Death Row Ent., LLC*, but that case did not find that Dr. Dre could disgorge Death Row Records' profits for unauthorized online distribution of songs from *The Chronic*; rather, *Young* denied a motion *in limine* to exclude evidence of the profits Death Row realized, because they could be relevant to computing Dr. Dre's actual damages. 2011 WL 13371881, at \*2 (C.D. Cal. May 16, 2011). There is no analogy here, where Plaintiff does not allege, and Persechini does not opine, that Zazzle actually would have paid her, voluntarily, $14 for each user of its website while BE was available. Indeed, Persechini specifically admitted that his $14 "framework" was not a license-based measure of damages, and indeed has no relation to Plaintiff's actual licenses, or the actual market for font licensing. Mot. 21-22; *id.*, Ex. P, (Persechini Dep. Tr.) 210:2-16, 202:24.

Finally, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020). But Plaintiff does not plead unjust enrichment; she pleads breach of contract. And she does claim to have suffered a very significant loss—indeed, she claims her loss literally exceeds $150 million. It is hornbook law that a party with an adequate remedy at law cannot also seek equitable remedies such as disgorgement. *Sheppard v. Banner Food Prod.*, 78 Cal.App.2d 808, 813 (1947).

## IV.    PLAINTIFF FAILS TO SHOW THAT PARIKH'S TESTIMONY IS ADMISSIBLE

Plaintiff fails to refute that Parikh's survey is flawed to the point of being inadmissible.

*First*, contrary to Plaintiffs' misleading argument (Opp. 20), Defendants did not "concede" that "issues" regarding survey design and methodology "go to the weight of a survey and not to its admissibility," and this is not the law. Plaintiff ignores Defendants' citation to *Clicks Billiards, Inc. v. Sixshooters, Inc.*, which held that a court must "first" determine if a survey is "admissible" by considering if it is "relevant and conducted according to accepted principles," and that only if the

survey passes this first test then "follow-on issues of methodology [and] survey design . . . go to the weight of the survey." 251 F.3d 1252, 1263 (9th Cir. 2001). *BillFloat Inc. v. Collins Cash Inc.*, is not to the contrary, as it merely recognized that a survey "should be admitted as long as it is conducted according to accepted principles and is relevant." 105 F.4th 1269, 1275 (9th Cir. 2024) (cleaned up). Defendants argue here that the Parikh survey is inadmissible because it is not "conducted according to accepted principles" (Mot. 15), and thus Plaintiff's attempt to insulate it from exclusion is simply wrong.

*Second*, Plaintiff does not dispute that, to be probative, a survey must query "relevant people" (*see* Mot. 15), or that Parikh limited her survey to Zazzle's "most active [graphic] designers." Yet Plaintiff still intends for Persechini to rely on Parikh's survey to support his assumption about the "total Zazzle users"—not just "the most active graphic designers"—who used BE. *See* Mot., Ex. O (Persechini Report), at ¶ 40. Plaintiff provides no basis to extrapolate Parikh's survey results beyond Zazzle's "most active graphic designers." Parikh could have surveyed all Zazzle users, but did not. Her survey results are therefore not probative of the alleged "awareness, usage and perceptions" of all Zazzle users. The Court should either exclude the Parikh survey entirely because it measured the wrong universe, or limit any testimony about Parikh's survey results—from Parikh or Persechini—to Zazzle's "most active graphic designers."

*Third*, Plaintiff does not dispute that Parikh measured the relative "importance or popularity" of BE only as compared to five specific typefaces (or trios of typefaces), some of which had no similarity to BE at all (*i.e.*, the common Courier typeface). Plaintiff does not explain how the Parikh survey could show the relative "importance or popularity" of BE as compared to any other typefaces, and so, at a minimum, the Court should limit Parikh's testimony to the five comparators she used. Plaintiff argues (Opp. 23) that Parikh determined the "absolute" importance and popularity of BE—divorced from any comparison to other typefaces—but her survey did no such thing. If she wanted to simply test how her respondents felt about BE, then she could have asked only about BE. Instead, she asked her respondents about "six different fonts (or sets of fonts)"—including BE and the five others. Mot., Ex. L (Parikh Report), at 34, 56. Her entire survey was thus framed in relative terms. Because the survey is not probative of the "absolute" importance or popularity of BE, and the

survey's "relative" findings regarding how BE compares to five random fonts likewise have no relevance, the survey is not probative of any material issue.

*Fourth*, without citing to any authority to support Parikh's exclusion of a "control," Plaintiff argues (Opp. 24) that Parikh did not need to use a control because she was merely testing "attitude and usage" rather than a "causal proposition." But this is a distinction without a difference. Plaintiff does not dispute (Mot. 17) that the purpose of a "control" is to ensure a survey—no matter its purpose—is not infected with "error." And even a survey like Parikh's could be subjected to error if the respondents were simply making up their responses—such as by saying BE is difficult to substitute even if they have never used it before—so that a control could help to eliminate that irrelevant survey "noise" by testing for made-up fonts. Again, Parikh easily could have included a control in her survey, and her failure to do so is yet another reason to exclude it.

*Finally*, Plaintiff argues (Opp. 24-25) that it was appropriate for Parikh to extrapolate from her survey results that BE is "popular and important" on Zazzle, but does not explain how Parikh could reasonably draw these conclusions even though she presented her respondents with only a handful of the many fonts available on Zazzle. At a minimum, the Court should preclude Parikh from offering these misleading and unsupported characterizations of her survey results.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court grant Defendants' motion to exclude.

DATED: October 6, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Andrew H. Schapiro*
      Andrew H. Schapiro

      *Attorneys for Defendants*
      *Zazzle Inc. and Mohamed Alkhatib*