PATRICK M. RYAN (SBN 203215)
  pryan@bartkopavia.com
STEPHEN C. STEINBERG (SBN 230656)
  ssteinberg@bartkopavia.com
CHAD E. DEVEAUX (SBN 215482)
  cdeveaux@bartkopavia.com
P. CASEY MATHEWS (SBN 311838)
  cmathews@bartkopavia.com
NATALIE A. FELSEN (SBN 353462)
  nfelsen@bartkopavia.com
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, California 94111
Telephone:   (415) 956-1900
Facsimile:    (415) 956-1152

Attorneys for Plaintiff and Counter-Defendant
NICKY LAATZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>                    Plaintiff,<br><br>        v.<br><br>ZAZZLE, INC. and MOHAMED ALKHATIB,<br><br>                    Defendants.<br>_____<br><br>ZAZZLE, INC.,<br><br>                    Counter-Claimant,<br><br>        v.<br><br>NICKY LAATZ,<br><br>                    Counter-Defendant. | Case No. 5:22-cv-04844-BLF<br><br>**PLAINTIFF NICKY LAATZ'S REPLY IN SUPPORT OF MOTION TO EXCLUDE AND/OR STRIKE OPINIONS AND TESTIMONY OF DEFENDANTS' EXPERTS**<br><br>Date:         October 23, 2025<br>Time:        9:00 a.m.<br>Courtroom:  3<br>Judge:       Hon. Beth Labson Freeman<br><br>Trial Date:   February 17, 2026 |

2885.000/5868893.5

Case No. 5:22-cv-04844-BLF

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................1

    A.    Kinrich's Damages Theories Should be Stricken or Excluded ..................1

        1.    Kinrich's Opinions Regarding Incremental Costs and Apportionment Are Untimely, Improper Rebuttal, and Lack Factual Support ...................................................................1

        2.    Kinrich's Hypothetical License Opinions Are Untimely, Improper Rebuttal, and Are Unreliable Under Rule 702 and *Daubert* ..........................4

        3.    Kinrich's Contract Damages Opinions Violate Hornbook Law ...................4

            a.    A Hypothetical License Cannot Be Used When a Contract Exists ................................................................4

            b.    Laatz's Damages Must be Measured by the License's Unit Price ................................................................6

            c.    Williston's Parable Applies Outside the Entertainment Industry ...........................................................7

            d.    Zazzle Cannot Benefit From Its Failure to Preserve Evidence and Laatz May Alternatively Disgorge Zazzle's Profits ...................8

        4.    Defendants' Late Disclosure of Kinrich's Opinions Is Prejudicial ...............8

    B.    The Remaining Opinions of Rucinski Must Be Excluded ........................9

        1.    Rucinski's Lack of Font Software Expertise Affects All His Opinions ...................................................................9

            a.    Plaintiff's Opening Brief Expressly Challenged Rucinski's Qualifications for All His Opinions ...................................................................10

            b.    Rucinski's Scope Cannot Cure His Lack of Qualifications .............10

        2.    Rucinski's "Software vs. Data" Distinction Is Improper and Irrelevant ...................................................................11

        3.    The Licensed Font Software's Content and Function, Not Internal Data Structures, Determines the Scope of the License ...............................11

        4.    ¶ 9(a) and ¶¶ 83-86 of Rucinski's Initial Report Risk Jury Confusion ........12

        5.    Defendants Mischaracterize Garrie's Testimony .......................................12

    C.    Shapiro's Improper "Rebuttal" Opinions Must Be Entirely Excluded ...................13

1.    Shapiro's Lack of Survey Expertise Disqualifies Her ...............................13

2.    Shapiro's Opinions Do Not Properly Rebut Dr. Parikh's Testimony ..........14

3.    Shapiro's Opinions Are Not Based on Reliable Data or Facts ....................14

D.    Swain's Report at ¶¶ 72 and 75-76 Rely on Shapiro's Inadmissible Opinions ..........15

III.    CONCLUSION ......................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*
2020 WL 4051299 (N.D. Cal. July 20, 2020) ............................................................. 2

*Alameda Water & San. Dist. v. Bancroft Fire Prot. Dist.*
544 P.2d 979 (Colo. 1976) ............................................................................................ 8

*Andrews v. Plains All Am. Pipeline, L.P*
2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) ............................................................. 9

*Apple, Inc. v. Samsung Elect. Co., Ltd.*
2012 WL 2571332 (N.D. Cal. June 30, 2012) ............................................................. 4

*Arcade Cnty. Water Dist. v. Arcade Fire Dist.*
6 Cal. App. 3d 232 (1970) ................................................................................... 6, 7, 8

*Bakst v. Cmty. Mem'l Health Sys., Inc.*
2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ............................................................. 2

*Blaustein v. Burton*
9 Cal. App. 3d 161 (1970) ............................................................................................ 6

*Campagnolo S.r.l. v. Full Speed Ahead, Inc.*
2010 WL 11527323 (W.D. Wash. May 5, 2010) ................................................... 14, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) ........................................................... 15

*Cazares v. Saenz*
208 Cal. App. 3d 279 (1989) ....................................................................................... 5

*Clear-View Tech., Inc. v. Rasnick, et al.*
2015 WL 3509384 (N.D. Cal. Jun. 3, 2015) (Freeman, J.) .............................. 2, 4, 9

*Ctr. for Healthcare Educ. & Res., Inc. v. Int'l Cong. for Joint Reconst., Inc.*
57 Cal. App. 5th 1108 (2020) ...................................................................................... 1

*Desny v. Wilder*
46 Cal. 2d 715 (1956) .............................................................................................. 6, 7

*Dominion Assets LLC v. Masimo Corp.*
2018 WL 11452321 (N.D. Cal. Aug. 1, 2018) ............................................................. 4

*Droplets, Inc. v. Yahoo! Inc.*
2021 WL 11701485 (N.D. Cal. Nov. 29, 2021) ......................................................... 14

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

*DSU Med. Corp. v. JMS Co., Ltd.*
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ...............................................................................5

*Foster Poultry Farms, Inc. v. SunTrust Bank*
377 F. App'x 665 (9th Cir. 2010)...........................................................................................5

*Freteluco v. Smith's Food & Drug Centers, Inc.*
336 F.R.D. 198 (D. Nev. 2020) ..........................................................................................13

*Gen. Elec. Co. v. Joiner*
522 U.S. 136 (1997) ..............................................................................................................3

*Gene Pool Techs., Inc. v. Coastal Harvest, LLC*
2023 WL 5941757 (C.D. Cal. July 26, 2023) .......................................................................9

*Green Wood Indus. Co. v. Forceman Int'l*
156 Cal. App. 4th 766 (2007)................................................................................................7

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*
41 Cal. App. 4th 1410 (1996)................................................................................................5

*IBM v. Fasco Indus., Inc.*
1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ........................................................................4

*Jarrow Formulas, Inc. v. Now Health Grp., Inc.*
2012 WL 3186576 (C.D. Cal. Aug. 2, 2012) ........................................................................9

*Klein v. Chevron U.S.A., Inc.*
202 Cal. App. 4th 1342 (2012)..............................................................................................6

*Kumho Tire Co., Ltd. v. Carmichael*
526 U.S. 137 (1999) ..............................................................................................................3

*Lang v. Gates*
36 F.3d 73 (9th Cir. 1994).....................................................................................................6

*Long Beach Mem. Med. Ctr. v. Kaiser Found. Health Plan, Inc.*
71 Cal. App. 5th 232 (2021)..................................................................................................5

*Maglica v. Maglica*
66 Cal. App. 4th 442 (1998)..................................................................................................6

*Matthew Ent., Inc. v. Chrysler Grp. LLC*
2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) (Freeman, J.)................................................2

*Meister v. Mensinger*
230 Cal. App. 4th 381 (2014).................................................................................................1

*Messick v. Novartis Pharm. Corp.*
747 F.3d 1193 (9th Cir. 2014)...............................................................................................4

*Navarro v. Procter & Gamble Co.*
    2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ...........................................................................14

*New Investments Inc. v. Altanatural Corp.*
    780 F. App'x 426 (9th Cir. 2019)..................................................................................... 2, 7

*People v. Fusting*
    1 Cal. App. 5th 404 (2016)...................................................................................................7

*Perth v. Davis*
    2009 WL 10695050 (N.D. Cal. April 20, 2009) ...................................................................7

*Stepovich v. Kupoff*
    261 F.2d 693 (9th Cir. 1958)................................................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.*
    *Liab. Litig.*
    978 F. Supp. 2d 1053 (C.D. Cal. 2013)...............................................................................15

*Truong Giang Corp., v. Twinstar Tea Corp.*
    2008 WL 11515375 (N.D. Cal. April 2, 2008) .....................................................................8

*Unigard Sec. Ins. Co. v. Lakewood Eng'ring & Mfg. Corp.*
    982 F.2d 363 (9th Cir 1992)..................................................................................................3

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal. App. 3d 987 (1972)..................................................................................................6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
    259 F.3d 1101 (9th Cir. 2001)......................................................................................... 2, 3

*Young v. Wideawake Death Row Ent., LLC*
    2011 WL 13371881 (C.D. Cal. May 15, 2011).................................................................. 5, 8

**Statutes**

California Penal Code § 409a............................................................................................... 7

**Court Rules**

Federal Rules of Civil Procedure
    Rule 26(e)............................................................................................................................. 9

Federal Rules of Evidence
    Rule 403 ......................................................................................................................... 11, 12
    Rule 702 ..................................................................................................................... 3, 4, 10
    Rule 702(a)..................................................................................................................... 11, 12

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...................................................................................... 6

Samuel Williston, *Mutual Assent in the Formation of Contracts*
     14 Ill. L. Rev. 85 (1919) ...................................................................................................... 6

2 Williston on Contracts § 6:47 (4th ed. 2023) ......................................................................... 6

## I.    INTRODUCTION

As a purported rebuttal expert, Kinrich improperly seeks to present new damages theories, while Defendants' own spoliation makes his apportionment opinion impossible to test. *See* §§ II.A.1, II.A.4. He also improperly invents a platform-wide, perpetual license no party ever negotiated or agreed to, built on non-comparable agreements, and then uses that fiction for both "license-based" damages and to recast Zazzle's profitability and apportionment for disgorgement damages. Besides being unreliable, where an actual contract governs, a "hypothetical license" is legally irrelevant. *See* § II.A.2-3. Rucinski lacks the specialized font-software expertise his opinions require, and his semantic distinctions are ultimately irrelevant to the remaining claim for breach of contract. *See* § II.B. Shapiro is not a survey expert, does not engage Parikh's survey design or analysis, and offers only inadmissible *ipse dixit* dressed as rebuttal. *See* § II.C. Swain's challenged opinions (¶¶ 72, 75-76) merely launder Shapiro's inadmissible views. *See* § II.D. The Court should strike the identified sections of Kinrich's report and exhibits, and exclude Rucinski's remaining opinions, Shapiro's opinions in their entirety, and the corresponding Swain opinions.

## II.    ARGUMENT

### A.    Kinrich's Damages Theories Should be Stricken or Excluded

#### 1.    Kinrich's Opinions Regarding Incremental Costs and Apportionment Are Untimely, Improper Rebuttal, and Lack Factual Support

Defendants wrongly argue they have no burden of proof on costs or other deductions for disgorgement damages. Dkt. 453 at 2:17-3:23. A defendant may elect not to present any evidence of costs, but if it elects to present such evidence, it bears the burden of proof. *Ctr. for Healthcare Educ. & Res., Inc. v. Int'l Cong. for Joint Reconst., Inc.*, 57 Cal. App. 5th 1108, 1127 (2020) (party seeking disgorgement has burden of producing evidence permitting "at least a reasonable approximation of the amount of the wrongful gain" and the burden is on the defendant to "present evidence of costs, expenses, and other deductions" to show the actual or net benefit received). *Meister v. Mensinger,* 230 Cal. App. 4th 381, 398-99 (2014) likewise held the defendant has the burden to present evidence of deductions to allow calculation of net profit.

Expert testimony on issues "on which Defendants bear the burden of proof" or offered to

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

"contradict an expected and anticipated portion of the other party's case-in-chief" is not rebuttal evidence and "the witness is not a rebuttal witness or anything close to one." *Clear-View Tech., Inc. v. Rasnick, et al.*, 2015 WL 3509384, *1-3 (N.D. Cal. Jun. 3, 2015) (Freeman, J.); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001) (affirming exclusion of expert improperly disclosed as a rebuttal expert). Kinrich's testimony on incremental costs and other deductions does not constitute rebuttal testimony and he is not a rebuttal witness. *Id*. Defendants' untimely provision of his testimony precluded preparing rebuttal thereto. This is exactly why the sanction of exclusion for untimely expert testimony exists and should be applied here. If Defendants misunderstood their burden, that is no excuse. *Yeti by Molly*, 259 F.3d at 1105-06 (misunderstanding of when disclosure was due is insufficient justification to avoid exclusion of expert testimony). Thus, Kinrich's testimony on the identified topics should be excluded.

Parts IV.B.5-7 and Exhibits 5-6 of Kinrich's report impermissibly are his own ***new*** theories and analyses, a new hypothetical license, and new regression models. Kinrich also improperly introduces new theories regarding Zazzle's and its designers' "independent contributions" to the sales and profitability of products using the BE Trio based on a tiny subset of designs. Dkt. 397-4 ¶¶ 48-57 & n.74 (citing FAC ¶ 114 identifying just 5 designs). "[A] defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." *Clear-View Tech.,* 2015 WL 3509384, at *2; *see Matthew Ent., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *4 (N.D. Cal. Aug. 15, 2016) (Freeman, J.). "[S]upplemental or 'rebuttal' experts, therefore, 'cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Abdo v. Fitzsimmons*, 2020 WL 4051299, at *2 (N.D. Cal. July 20, 2020) (quoting *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *34 (C.D. Cal. Mar. 7, 2011)). Kinrich cannot present new theories in rebuttal.

Kinrich's opinions regarding "designers' independent contributions" and non-font "design elements" underlying his apportionment opinion also lack evidentiary support and are unreliable. Dkt. 397-4 ¶¶ 48-57. Defendants destroyed the evidence of what products using the BE Trio **actually** looked like. Thus, one can only speculate about their elements, independent design value, or lack thereof. *E.g.*, Dkt. 263 at 6-7; Dkt. 310-1 ¶¶ 17-20.

This Court has recognized that Defendants' failure to preserve this evidence is grounds to limit or exclude presentation of their value allocation defense. Dkt. 314 at 1:19-24. Thus, as gatekeeper, the Court should exclude Kinrich's unreliable testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-52 (1999) (*Daubert's* gatekeeping obligation applies to all expert testimony; even if the expert is qualified, if the methodology as applied in a case is not reliable, the testimony is to be excluded); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court properly excludes *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered"). Defendants deprived the jury of the chance to determine whether the few examples of designs cited by Kinrich (Dkt. 397-4 ¶ 49, n.74) are sufficient to support his opinions. And Defendants' spoliation deprived Laatz of the ability to present cross-examination and rebuttal expert testimony based on alleged elements in the missing designs.

Defendants argue that because Kinrich did not rely on the destroyed evidence, their spoliation is irrelevant. Dkt. 453 at 6:6-15. Tellingly, they cite no support for this contention. The destroyed evidence is needed for the Court's gatekeeping function, the trier of fact to assess the reliability, and Laatz's testing of and rebuttal to Kinrich's speculative opinions. That he could not, and so did not, use the spoliated evidence does not make the resulting uncertainty irrelevant.

Additionally, Kinrich's opinions contained in ¶¶ 33 and 49 of his report are based on the inadmissible opinions of Defendants' expert, Ellen Shapiro. Shapiro's opinions are inadmissible both because they do not satisfy Rule 702 and are improper "rebuttal" opinions. *See* § II.C, *infra*.

Defendants claim Kinrich's opinions should nonetheless be allowed because the report by Laatz's expert had the foresight to mention that he might "opine on any apportionment methodology proffered by Defendants." Dkt. 453 at 5:7-16. But this ignores that Defendants failed to timely disclose these or any other damages opinions in an initial report and destroyed evidence, thereby depriving Laatz of the time and ability to provide rebuttal evidence to Kinrich. The harm is real and constitutes undue prejudice. *Yeti by Molly*, 259 F.3d at 1105-06 (burden on party facing exclusion to prove harmlessness; delay in producing expert's report supported exclusion); *Unigard Sec. Ins. Co. v. Lakewood Eng'ring & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir 1992) (exclusion of expert was proper exercise of court's inherent powers due to defendants' destruction of evidence).

**2.      Kinrich's Hypothetical License Opinions Are Untimely, Improper Rebuttal, and Are Unreliable Under Rule 702 and *Daubert***

As noted above, Kinrich presents a new theory on a hypothetical license he claims Laatz and Zazzle would have agreed to, providing Zazzle's tens of millions of users with unlimited access to and use of the BE Trio, even though Laatz has **never** licensed or even offered to license these fonts for such broad use by anyone. Dkt. 397-4, ¶¶ 68, 74-75, 78-98; Dkt. 89-1 ¶ 52. Not only is this testimony unreliable since it is based on non-similar licenses, it is also not rebuttal testimony. Laatz's expert did not opine on such a hypothetical license. Dkt. 397-2, ¶ 186; *IBM v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) (rebuttal experts "cannot put forth their own theories"); *Clear-View Tech.,* 2015 WL 3509384, *2. Kinrich's non-rebuttal and unreliable hypothetical license is also incorporated into and thereby also infects his new apportionment analysis. Dkt. 397-4, ¶¶ 52-57. All of this should be excluded.

Moreover, Kinrich's hypothetical license opinions are unreliable. An amalgamation of other licenses (none of which provided the scope of rights Zazzle required) is inapposite. Dkt. 397-4 ¶¶ 68, 74-75, 78-98; Dkt. 89-1 ¶ 52. Kinrich's selected licenses are non-comparable, thereby lacking the requisite reliability. Dkt. 397-4, ¶ 52; Dkt. 399-5 at App'x A; *Apple, Inc. v. Samsung Elect. Co.*, *Ltd.,* 2012 WL 2571332, *8 (N.D. Cal. June 30, 2012) (excluding expert opinion based on non-comparable licenses under FRE 702 and *Daubert*); *Dominion Assets LLC v. Masimo Corp.*, 2018 WL 11452321, * 5-6 (N.D. Cal. Aug. 1, 2018) (same.)

Defendants do not address that Kinrich's new opinions are based on new methodologies. Instead, they change topics and point to subpoints in Kinrich's report which opine that Laatz's expert's damage opinions are "economically unreasonable" and not based in "economic reality." Dkt. 453 at 6:18-27. This tactic fails because as explained below, where a contract already exists, a hypothetical license analysis is irrelevant and thereby inadmissible. *See* § II.A.3.a.

For the foregoing reasons, Kinrich's expert report should be stricken and/or excluded.

**3.      Kinrich's Contract Damages Opinions Violate Hornbook Law**

**a.      A Hypothetical License Cannot Be Used When a Contract Exists**

An expert's testimony must have "a valid connection to the pertinent inquiry." *Messick v.*

*Novartis Pharm. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014). *Daubert* excludes "expert testimony" concerning damages that "relies upon a legal 'principal' that is not legally acceptable." *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1156 (N.D. Cal. 2003). Kinrich's so-called "rebuttal" testimony regarding Laatz's contract damages ignores this axiom.

The Court ruled that an *actual contract* exists because "Defendants agreed to the Service Terms" of Laatz's offer creating a binding contract that included "both "the Service Terms and License Terms." Dkt. 155 at 13:21-24. Abiding by this ruling, Persechini's contract damages opinions are premised on two metrics: (1) "expectation damages" based on the parties' agreed per-seat price multiplied by the number of "users"—*i.e.*, *seats*, "to whom Zazzle provided unlicensed access to the [BE] Trio"—and (2) "disgorgement of Zazzle's ill-gotten profits" derived from its breach. Dkt. 397-2 at 4. These are appropriate measures of contract damages.

"When the parties have an actual contract," the preferred remedy for breach is to award damages conferring the benefit of the "parties' bargain." *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419-20 (1996). The measure of such damages is the "value as expressed in the parties' agreement." *Cazares v. Saenz*, 208 Cal. App. 3d 279, 290 (1989). Alternatively, "a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy." *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010). Such damages are appropriate where the existence of damages is certain but benefit-of-the-bargain damages "are difficult to prove." *Young v. Wideawake Death Row Ent., LLC*, 2011 WL 13371881, at *2 (C.D. Cal. May 15, 2011).

Kinrich bases his damages figure on the "fair market value of a hypothetical license" between Laatz and Zazzle. Dkt. 397-4, ¶ 90 at 63. He claims this is appropriate because in his opinion, an award based on the value expressed in the parties' agreement or Zazzle's ill-gotten profits would be "economically unreasonable" and "at odds with economic reality." Dkt. 453 at 6:18-27. Those opinions are wrong, but regardless, are irrelevant.

Damages based on "the price that a *hypothetical* willing buyer would pay a *hypothetical* willing seller" is a "quasi-contractual remedy." *Long Beach Mem. Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 71 Cal. App. 5th 232, 338, 344 (2021) (emphasis in original). A "quasi-

contract" is "[a]n obligation created by law for the sake of justice." Black's Law Dict. (12th ed. 2024). It "is not actually a contract but instead is a remedy that allows the plaintiff to recover a benefit conferred on the defendant." *Id.* But damages based on the price a hypothetical buyer would pay are only appropriate in cases "without an actual agreement of the parties." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). This measure is forbidden "where the parties have an actual contract covering a subject." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1287 (2012). Here, the Court correctly ruled that an *actual contract* exists. Dkt. 155 at 13:21-24. Kinrich's opinions would only be relevant if this were an implied-in-law *quasi*-contract, rather than the actual agreement it is. Thus, the opinions are inadmissible.

### b.    Laatz's Damages Must be Measured by the License's Unit Price

It is a maxim of contract law that "[t]he offeror is the master of his [or her] offer." *Lang v. Gates*, 36 F.3d 73, 75 (9th Cir. 1994). When "an offeree, knowing that an offer has been made," has "accepted [it] by [the offeree's] conduct," it is bound by "whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972). Here, through the Creative Market website, Laatz offered to sell licenses to her BE Trio for a unit price of $20 (Dkt. 49 at 2:25-26), and she only offered them on "a one seat per license" basis. Dkt. 89-41 at 1.

One "who goes into a shop" and "is given … the price of an article, cannot take it," only to later say "'***I decline to pay the price you ask, but will take it at its fair value.***' He will be liable, if the seller elects to hold him so liable, ***not simply as a converter for the fair value of the property, but as a buyer for the stated price***." *Desny v. Wilder*, 46 Cal. 2d 715, 736 (1956) (*quoting* Samuel Williston, *Mutual Assent in the Formation of Contracts*, 14 Ill. L. Rev. 85, 90 (1919)) (emphasis added). The thief is deemed to have accepted the offer "creating an 'implied-in fact' contract," and must pay "the stated price" for *each item* he stole. *Arcade Cnty. Water Dist. v. Arcade Fire Dist.*, 6 Cal. App. 3d 232, 236, 236 n.3 (1970) ("*Arcade*"); *accord Blaustein v. Burton*, 9 Cal. App. 3d 161, 181 (1970). Taking items "with knowledge that they are offered at a certain price indicates a promise to pay that price." 2 Williston on Contracts § 6:47 (4th ed. 2023).

Here, Zazzle stole the BE Trio by instructing Alkhatib to execute a license representing that he would comply with the license, then "ma[king] these fonts available to its [millions of]

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

users on its website," as well as to scores of its own employees. Dkt. 49 at 2:25-26. Obtaining an item "by false pretenses" is a form of "shoplifting." *People v. Fusting*, 1 Cal. App. 5th 404, 409 (2016) (citing Penal Code § 409a). Zazzle, in effect, stole and distributed millions of units after being told that the unit price was $20. Zazzle's theft constituted acceptance and created "an 'implied-in fact' contract" wherein it agreed to pay "the stated price" for *each item* it stole.

Laatz's "loss in value" is $20 for each "seat" (or user) Zazzle allowed to access the BE Trio. Creative Market charges her $6 for each license sold on its site. Thus, Laatz avoided paying $6 for each of the misappropriated seats. Contract damages are "measured by the loss in value" suffered by the nonbreaching party "less any expenses saved … by the nonbreacher." *New Investments Inc. v. Altanatural Corp.*, 780 F. App'x 426, 429-30 (9th Cir. 2019). When a buyer breaches, the loss in value is the amount that it "agreed to pay." *Perth v. Davis*, 2009 WL 10695050, at *4 (N.D. Cal. April 20, 2009). Costs avoided are "expenses saved" by the nonbreacher "in consequence of the … breach." *Green Wood Indus. Co. v. Forceman Int'l*, 156 Cal. App. 4th 766, 773 (2007). Thus, Laatz is entitled to $14 for each unit (*i.e.*, seat) Zazzle took.

### c.  Williston's Parable Applies Outside the Entertainment Industry

Defendants have argued that Williston's shoplifter parable described in *Desny* "applies only in the absence of an ***enforceable*** contract" and is exclusive to the "entertainment industry." Dkt. 453 at 23:8-9 (emphasis in original). They are wrong on both points. *Desny* held that one who misappropriates articles from a seller, after being told the per-unit "price," creates an "implied-in-fact" contract to pay the seller's "stated price" for each stolen article. 46 Cal. 2d at 736. It made clear that "implied-in-fact" contracts formed in this manner are *real* contracts and "on their breach the normal measure of damages is applied." *Id.* And as Williston's shoplifter parable shows, this principle is not limited to the "entertainment industry." *Arcade* made this clear. There, the defendant fire departments took water from the plaintiff water districts' hydrants after being told the expected price of $4 per hydrant per month. 6 Cal. App. 3d at 235-36. The court found that the defendants, by taking the water, "stated to [the water district] 'we decline to pay the rates you ask, but must take your hydrant service.'" *Id.* at 236 n.3, 237 (quoting *Desny*, 46 Cal. 2d at 734-37). The act of "tak[ing] water"—despite their "verbal rejection" of the plaintiff's offer (*id.* at 237)—

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

constituted acceptance creating "an implied-in-fact contract." *Alameda Water & San. Dist. v. Bancroft Fire Prot. Dist.*, 544 P.2d 979, 981 (Colo. 1976) (citing *Arcade*, 6 Cal. App. 3d at 236). The court further held an "'implied-in-fact' contract … is a true contract despite the possible absence of a simultaneous 'meeting of the minds.'" *Arcade*, 6 Cal. App. 3d at 236.

### d.    Zazzle Cannot Benefit From Its Failure to Preserve Evidence and Laatz May Alternatively Disgorge Zazzle's Profits

Zazzle claims Kinrich's quasi-contractual measure applies because Laatz cannot prove the number of Zazzle's unlicensed users who were provided with access to the BE Trio with precision. *See* Dkt. 453 at 23:12-24:3. But any potential uncertainty results solely from Zazzle's failure to preserve and produce evidence of the precise numbers of people who used its design tools and had access to the BE Trio, or who actually used the BE Trio, during the entire relevant time period. "[W]hen a party frustrates proof of damages, either by withholding facts or through inaccurate record-keeping, any doubts about the actual assessment of damages will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value." *Truong Giang Corp., v. Twinstar Tea Corp.*, 2008 WL 11515375, at *2 (N.D. Cal. April 2, 2008) (citation omitted). Thus, Zazzle cannot exploit the potential uncertainty in the numbers of unlicensed users to justify the admissibility of Kinrich's non-contractual measure of damages.

This rule also renders inadmissible Kinrich's contention that Zazzle's ill-gotten profits should be "apportioned" to account for "design elements unrelated to the at-issue fonts." Dkt. 397-4, ¶ 48. Zazzle failed to preserve webpages showing what the products that used the BE Trio looked like. Thus, the "assessment of damages" concerning each particular design's elements must "be resolved against [Zazzle]." *Truong Giang*, 2008 WL 11515375, at *2; *Stepovich v. Kupoff*, 261 F.2d 693, 694 (9th Cir. 1958) (same).

And even if bargain damages were too "difficult to prove," the "disgorgement of [the] defendants' profits" is permissible. *Young*, 2011 WL 13371881, at *2.

### 4.    Defendants' Late Disclosure of Kinrich's Opinions Is Prejudicial

Defendants ignore *this Court's* directive that experts that offer opinions "to 'contradict an expected and anticipated portion of the other party's case-in-chief'" are "not [] rebuttal

witness[es]." *Clear-View Tech.*, 2015 WL 3509384, at * 2. Instead, Defendants cite a string of out-of-district cases for the proposition that "allowing Kinrich to testify to all the opinions in his Rebuttal Report is harmless and poses no prejudice to Plaintiff." Dkt. 453 at 7:26-27. But a close review of those cases demonstrates the same exact prejudice that Laatz has suffered here.

Defendants first cite *Gene Pool Techs., Inc. v. Coastal Harvest, LLC*, 2023 WL 5941757 (C.D. Cal. July 26, 2023). But that case involved a plaintiff serving its initial expert reports just 4-5 days late, and the court there found a lack of prejudice because the "late service did not deprive [the moving party] of the opportunity to … take countermeasures via designation of rebuttal expert witnesses." *Id.* at *5-7. Here, Defendants improperly disclosed Kinrich's opinions as "rebuttal," and the Court's scheduling order does not permit disclosure of sur-rebuttal expert opinions (Dkt. 290 at 4), plus Defendants destroyed evidence. Defendants also cite *Andrews v. Plains All Am. Pipeline, L.P*, 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019). But that case involved "amended" reports that the court found simply "correct[ed] an arithmetic error." *Id.* at *4. The court found no prejudice because the movant "still ha[d] the opportunity to prepare responses to these reports" (*id.* at *5)—an opportunity Laatz does not have because no sur-rebuttal expert disclosures are permitted and Defendants destroyed evidence. Defendants also cite *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, 2012 WL 3186576 (C.D. Cal. Aug. 2, 2012), but omit that *Jarrow* excluded the expert reports because they were styled as "supplemental" reports, but "'[s]upplemental' reports which provide new opinions… are improper under Rule 26(e)." *Id.* at *15.

### B.  The Remaining Opinions of Rucinski Must Be Excluded

#### 1.  Rucinski's Lack of Font Software Expertise Affects All His Opinions

Defendants withdrew Rucinski's most problematic opinions while preserving what they recast as "core computer-science opinions" about "the difference between data and software and how Zazzle's Design Tool interacts with underlying files to render text." Dkt. 453 at 15. They wrongly state the "sole remaining substantive opinion" in Rucinski's opening report is his claim that Adobe Font Development Kit for OpenType ("AFDKO") feature text is "not a programming language." Dkt. 453 at 14-16. But ¶¶ 9(a, l), 74, and 83-86 of his Initial Report remain alongside ¶¶ 9(m-r), 40-51, and 58+ of his Rebuttal Report. Dkt. 450 at 3:25-27. Defendants claim Laatz

presents no "argument that Rucinski's qualifications are insufficient for these … opinions." *Id*. Not so. Laatz argued Rucinski's lack of font software expertise "disqualifies [his] opinions in three distinct ways," and "[a]ny one of these deficiencies alone would justify exclusion; together, they render his testimony irredeemably unreliable and precisely the kind of misleading and unhelpful testimony *Daubert* [prohibits]." Dkt. 399 at 18.

### a.    Plaintiff's Opening Brief Expressly Challenged Rucinski's Qualifications for All His Opinions

Laatz moved to "exclude[] the initial and rebuttal reports of Christopher Rucinski" in their ***entirety*** based on his lack of "sufficient qualifications or experience to offer expert testimony on the issues in this case." Dkt. 399 at 8, 18. The motion was clear: "Mr. Rucinski's opinions should be excluded in their entirety because they fail to meet the requirements of Rule 702 and *Daubert*." Dkt. 399 at 18. Plaintiff identified three interrelated deficiencies: (1) no background in typography, font software, or related technologies; (2) his knowledge is litigation-driven; and (3) he lacks legal expertise, such as copyright registration. Dkt. 399 at 19. Nothing in the Joint Report waived those objections as to the remaining opinions. *See* Dkt. 450 at 3–4.

This specialized knowledge matters because "typography and font software involve specialized technical concepts (such as ligatures and kerning), distinctive file formats (such as OTF), and unique industry-standard workflows," and "[g]eneral software expertise alone is insufficient, just as even an experienced airplane engineer is not qualified, without specialized training, to opine on helicopter design." Dkt. 399 at 19. General computer science knowledge cannot substitute for specialized font software expertise, including specialized font software programing when the opinions concern allowed and disallowed uses of files actually licensed and downloaded under a font software license.

### b.    Rucinski's Scope Cannot Cure His Lack of Qualifications

Defendants' attempt to recast Rucinski's remaining testimony as "core computer-science opinions" independent from font software specialization (Dkt. 453 at 15) cannot cure the flaw in applying his opinions to font software licensing. Each remaining opinion, *e.g.*, regarding OpenType font and AFDKO features, compilation and consumption of feature code, and rendering

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

of fonts requires font software-specific expertise. Rucinski conceded he lacks expertise with "typography, font design, or related technologies." Dkt. 399 at 19. He also admitted he "had never previously used standard professional font software editing tools or worked with industry-specific file formats or workflows" (*id.*), and acknowledged his FontLab, OTF, and font creation knowledge arose "entirely after Defendants engaged him." Dkt. 399 at 13. This gap in expertise explains Rucinski's improper reliance on superficial labels (*e.g.*, "not programming"), definitional or legal commentary rather than technical analysis, and his use of a single 2024 Ultra font demo to generalize about the historical behavior of Zazzle's Design Tool related to fonts. Rucinski lacks the experience required under *Daubert* to reliably apply general principles to specialized, technical programing and licensing questions about the BE Trio. Without understanding how font software actually functions, Rucinski does not have the expertise and cannot reliably opine whether particular files' status as "data" or "software" matters in the font-licensing context, if at all.

**2.    Rucinski's "Software vs. Data" Distinction Is Improper and Irrelevant**

Defendants also fail to address a recurring flaw in Rucinski's opinions: he redefines technical terms into litigation-driven categories and then applies his own definitions to reach ***his*** conclusion. His "software versus data" distinction is untethered from any recognized standard and does not "fit" a contract dispute where license scope is a legal question (Rule 702(a); 403). *See* Dkt. 399 at 17-18 (criticizing self-created definitions and absence of authoritative support).

Parsing Black's Law Dictionary and Creative Market terms, Rucinski spends pages arguing the Blooming Elegant OTFs are "data, not software." Dkt. 397-3, ¶¶ 9(p)-(r), 41-49, 51. This is inadmissible. If anything is permitted, it should be limited to a neutral technical description without labeling OTF files as "data" or "software." Neither term is relevant to Zazzle's breach.

**3.    The Licensed Font Software's Content and Function, Not Internal Data Structures, Determines the Scope of the License**

Defendants try to salvage Rucinski's AFDKO/"not a programming language" point (Dkt. 399-2, ¶¶ 9(l), 74) by turning this into a taxonomy fight. But the label placed on AFDKO features will not help the jury decide any surviving issue. Discussing whether AFDKO is appropriately called a "programming language," "feature language," or "markup-like specification" will not

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

assist the trier of fact, and risks distracting the jury with considering whether the Blooming Elegant OTF files are "data" or "software," which is not a decision they need to make. ***The breach question is how Zazzle used the licensed "item.***" Expert testimony on irrelevant taxonomy will invite juror confusion, warranting exclusion under Rules 702(a) and 403. *See* Dkt. 399 at 4–5.

The function of the licensed BE Software—enabling type to be rendered in the BE Trio in user-facing applications—drives the scope of the license; parsing the internal AFDKO/OpenType feature text does not. And without specialized knowledge (*e.g.*, regarding OpenType font layout, font feature compilation/consumption, font engines), a general computer science taxonomy will not assist the jury. *See* Dkt. 399 at 14, 19. The Court should exclude the AFDKO labeling opinions under Rules 702(a) and 403. And, if any discussion is allowed, it should be limited to a neutral description of what AFDKO is, without inferences as to implications under the BE License.

### 4.    ¶ 9(a) and ¶¶ 83-86 of Rucinski's Initial Report Risk Jury Confusion

Defendants also preserved ¶ 9(a) of Rucinski's initial report, which states only that the OTF files he analyzed match Laatz's production. *See* Dkt. 399-2, ¶ 9(a). This neither advances nor rebuts any question related to the BE License, and invites a mini-trial over file handling. Whatever minimal probative value it has on authentication is outweighed by the risk of confusion. The Court should exclude it under Rules 702(a) and 403. Similarly, ¶¶ 83-86 compare OpenType font-feature arrays across PDFs and repeat that OTF binaries are not "human-readable." Dkt. 399-2, ¶¶ 83-86. Without the copyright claim, these observations shed no light on the scope or breach of the BE License, and risk confusing the jury into thinking "human-readability" matters for the license.

### 5.    Defendants Mischaracterize Garrie's Testimony

Defendants fail to respond to Laatz's substantive challenges to Rucinski's design tool rebuttal. Instead, they focus on a purported distinction about whether Garrie referenced "SVG files" versus "SVG data" or "images." Dkt. 453 at 16. But as Laatz explained, "Rucinski devotes several pages of his rebuttal to refuting Garrie's supposed claim that Zazzle sends 'SVG files' to users. Yet, he concedes Garrie never actually said that—only 'SVG data' or 'images.'" Dkt. 399 at 27. Nonetheless, Defendants intend to present the SVG points in Rucinski's rebuttal, but they rest on a strawman. He argues users do not receive *SVG **files***, even though Garrie spoke about

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

SVG-formatted data in the browser pipeline, which Rucinski's data confirms. *See* Dkt. 397-3 ¶ 69 & n.27 (admitting "SVG-formatted data" rather than "SVG files"). It's not rebuttal.

Defendants also misrepresent the record by inserting bracketed "[SVG]" before references to images. The cited testimony concerned rasterized images generated and transmitted containing the fonts, not "SVG images," as a distinct item. Garrie's report accurately reflects that Zazzle's system both sent SVG data to be rendered in the client-side SVG viewer and also transmitted rasterized images containing the fonts—a nuance deleted by Defendants' misleading modification of the quotation. Most critically, Defendants do not respond to Laatz's showing that "Rucinski concedes he did not investigate how the design tool operated before 2021, did not speak with Zazzle's technical leads about changes during that period, and does not recall what, if anything, changed." Dkt. 399 at 27. This methodological failure—speculating about earlier versions and criticizing Garrie without investigation—renders his design tool rebuttal unreliable.

In sum, Defendants do not address, much less refute, Laatz's core arguments. Rucinski's lack of font software expertise renders all of his opinions unreliable because the context in which he applies supposedly "general" principles is inherently specialized. His remaining opinions are improper, irrelevant, unreliable, and risk confusing the jury for the reasons explained above and in Laatz's motion. If any portion is admitted, the Court should at least: (i) limit Rucinski from suggesting that his definitions (*e.g.*, "software" vs. "data" vs. "files," "programming language") have any impact on the BE License; and (ii) bar his opinions about the pre-2021 Design Tool.

**C.    Shapiro's Improper "Rebuttal" Opinions Must Be Entirely Excluded**

**1.    Shapiro's Lack of Survey Expertise Disqualifies Her**

Shapiro purports to rebut a survey expert while having no training or experience in the conduct or analysis of surveys. Defendants argue that Shapiro's opinions are not improper rebuttal "even if the rebuttal expert's specific field of expertise is different from the original experts." Dkt. 453 at 13:8-10. Defendant's reliance on *Freteluco v. Smith's Food & Drug Centers, Inc.* for this argument is telling. In *Freteluco*, the rebuttal expert was a ***neuropsychologist retained to rebut the opinions of a neurologist and psychiatrist***. 336 F.R.D. 198, 204-05 (D. Nev. 2020). This is a far cry from a ***graphic designer*** rebutting ***survey design***.

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS

Defendants claim no authority exists regarding the ability of non-survey experts to rebut survey experts. Dkt. 453 at 13:5-6. No so. *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485 (N.D. Cal. Nov. 29, 2021) excluded the putative "rebuttal" testimony of an e-commerce, web marketing, and search engine optimization expert offered to rebut the opinions of a survey expert because he was not a survey expert and admitting his testimony would "prejudice [the plaintiff] through the aura of authority experts often exude." *Id.* at *5. Similarly, *Navarro v. Procter & Gamble Co.*, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) held that a damages expert was unqualified to even voice agreement with another expert's surveys or survey results, stating that the damages expert was "not a survey expert, and so he is unqualified." *Id.* at *23-24.

Shapiro admits she has no experience or expertise in survey design, survey analysis, or survey methodology. Yet, she seeks to rebut the expert opinions on a topic for which she is unqualified. Dkt. 399-1 Ex. 11 at 19:3-12, 39:8-20, 88:19-20, 127:8. As *Droplets* held, allowing Shapiro to testify on the survey methodology, results, or analysis presented in Parikh's report and testimony would prejudice Laatz because of the "aura of authority" that expert testimony conveys.

**2.      Shapiro's Opinions Do Not Properly Rebut Dr. Parikh's Testimony**

Defendants argue that Shapiro's opinions as a graphic designer and typographer are proper rebuttal to the expert testimony of a survey expert because her opinions are "counteracting or disproving Parikh's ultimate conclusion" that "the Blooming Elegant Trio is unique and difficult to substitute." Dkt. 453 at 14:10-12. But Shapiro's report focuses on the technical aspects of typeface, visual representations of fonts, and "how to substitute" fonts, not on any specific portions of Parikh's report. Indeed, Defendants fail to address the fact that Parikh's report is not mentioned in pages 7 through 27 of Shapiro's 30-page report. Parikh's report is based on the results of a survey which she designed, analyzed, and interpreted as a survey expert. Rather than respond to Parikh's methodologies or analysis, Shapiro offers opinions on how she would have ***answered*** Parikh's survey as a graphic designer. This is not proper rebuttal of a survey expert.

**3.      Shapiro's Opinions Are Not Based on Reliable Data or Facts**

Defendants further claim Shapiro's opinions are admissible because they are based on her "experience in a technical field." Dkt. 453 at 16:3-4. Defendants rely on *Campagnolo S.r.l. v. Full*

*Speed Ahead, Inc.*, 2010 WL 11527323, at *3 (W.D. Wash. May 5, 2010) to assert that outside research is not always necessary to provide expert opinion. But Defendants ignore *Campagnolo*'s directive that just because "an expert may be qualified by experience does not mean that experience, standing alone, is sufficient foundation rendering reliable any conceivable opinion the expert may express." *Id.* In fact, *Campagnolo* did not allow the expert's testimony merely based on his experience and further held that "many of [the expert's] conclusions ... push[ed] the bounds of his purported knowledge and expertise and, accordingly, lack a reliable basis." *Id.* at *3.

Here, Shapiro's graphic design experience does not qualify her to rebut a survey designed, conducted, and interpreted by a survey expert. As in *Campagnolo*, there is a disconnect between her expertise and her conclusions rebutting Dr. Parikh, rendering Shapiro's opinions inadmissible.

### D.    Swain's Report at ¶¶ 72 and 75-76 Rely on Shapiro's Inadmissible Opinions

Defendants claim the opinions in ¶¶ 72 and 75-76 of Swain's report—which rely on and repeat the inadmissible opinions in Shapiro's report—are admissible because "[t]here is no general requirement that the [underlying] expert testify as well." Dkt. 453 at 17:17-19 (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) ("*Toyota*").) But the *Toyota* court immediately followed the sentence Defendants quote with this: "There are limits to this general rule, however. Where the 'soundness of the underlying expert judgment is an issue,' ***the testifying expert cannot merely act as a conduit for the underlying expert's opinion***." *Id.* at 1066. This is consistent with *In re Cathode Ray Tube (CRT) Antitrust Litig.*, which held "[w]here an expert bases [his] opinion on—or simply repeats—the unreliable opinion of another expert, a district court may properly exclude the first expert's testimony." 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017). Defendants claim ¶¶ 72 and 75-76 of Swain's report "rely on Shapiro's design expertise." Dkt. 453 at 18:4-7. But Swain's reliance on Shapiro's inadmissible opinions is exactly why these paragraphs are inadmissible.

## III.    CONCLUSION

The Court should exclude the opinions expressed in ¶ 33 and Parts IV.B.4-7, IV.C, and IV.D and Exhibits 3-6 of Kinrich's report, the remaining unwithdrawn portions of Rucisnki's initial and rebuttal reports, the entirety of Shapiro's report, and ¶¶ 72 and 75-76 of Swain's report.

DATED: October 6, 2025

Respectfully submitted,

BARTKO PAVIA LLP
A Professional Law Corporation

By:  _____*/s/ Patrick M. Ryan*_____
PATRICK M. RYAN
Attorney for Plaintiff and Counter-Defendant
NICKY LAATZ

    I hereby attest that Patrick Ryan has concurred in the filing of this document on his behalf and the inclusion of a conformed signature (/s/) within this e-filed document on his behalf.

*/s/ P. Casey Mathews*
P. CASEY MATHEWS

REPLY ISO PLF.'S MOT. TO EXCLUDE AND/OR STRIKE OPINIONS & TESTIMONY OF DEFS.' EXPERTS