1

2

3
### UNITED STATES DISTRICT COURT

4
### NORTHERN DISTRICT OF CALIFORNIA

5
### SAN JOSE DIVISION

6

7
NICKY LAATZ, et al.,

Case No. 5:22-cv-04844-BLF

8
Plaintiffs,

9
v.

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' *DAUBERT* MOTIONS AND GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S *DAUBERT* MOTIONS**

10
ZAZZLE, INC., et al.,

11
Defendants.

12
[Re: ECF Nos. 398, 399]

13

14
Before the Court are eight *Daubert* motions, four brought by Defendants Zazzle, Inc.

15
("Zazzle") and Mohamed Alkhatib and four brought by Plaintiff Nicky Laatz.[1]

16
Defendants move to exclude the entirety of Plaintiff's industry expert Stuart Sandler's

17
testimony, portions of Plaintiff's technical expert Daniel Garrie's testimony, the entirety of

18
Plaintiff's survey expert Sara Parikh's testimony, and the entirety of Plaintiff's damages expert

19
Dominic Persechini's testimony. ECF No. 398 ("Defs.' Mot."); *see also* ECF No. 457 ("Defs.'

20
Reply"). Plaintiff opposes Defendants' motions. ECF No. 452 ("Pl.'s Opp.").

21
Plaintiff moves to exclude the remaining portions of Defendants' technical expert

22
Christopher Rucinski's testimony, the entirety of Defendants' design expert Ellen Shapiro's

23
testimony, portions of Defendants' survey expert Scott Swain's testimony, and the entirety of

24
Defendants' damages expert Jeff Kinrich's testimony. ECF No. 399 ("Pl.'s Mot."); *see also* ECF

25
No. 458 ("Pl.'s Reply"). Plaintiff also moves in limine to exclude portions of Mr. Kinrich's

26
testimony as improper rebuttal testimony under Federal Rule of Civil Procedure 26. Defendants

27

28
[1] Plaintiff has withdrawn the initial expert report of Thomas Phinney, as well as most of his rebuttal report. *See* ECF No. 450.

United States District Court
Northern District of California

1  oppose Plaintiff's motions.  ECF No. 453 ("Defs.' Opp.").

2      For the reasons described below, the Court rules as follows.  Defendants' motions as to

3  Mr. Sandler, Mr. Garrie, and Mr. Persechini are GRANTED-IN-PART and DENIED-IN-PART.

4  Defendants' motion as to Dr. Parikh is DENIED.  Plaintiff's motions as to Ms. Shapiro and

5  Mr. Kinrich are GRANTED-IN-PART and DENIED-IN-PART.  Plaintiff's motions as to

6  Mr. Rucinski and Dr. Swain are DENIED.

7  **I.    BACKGROUND**

8      The Parties are familiar with the facts of this case, which the Court briefly summarizes in

9  relevant part.  *See* ECF Nos. 414, 443.

10      Plaintiff is a font designer whose primary source of income is derived from creating and

11  licensing type fonts.  Declaration of Nikki Latz ¶¶ 2–4, ECF No. 342-25.  In 2016, Plaintiff

12  created a trio of fonts called the Blooming Elegant Trio ("BE Trio"), *id.* ¶¶ 5–7, and offered a

13  single-seat license for $20 through Creative Market (the "BE License"), *id.* ¶ 24.  To obtain a BE

14  License from Creative Market, a purchaser must set up a Creative Market account and agree to

15  Creative Market's Terms of Service and License Terms.  *Id.* ¶ 27.  As relevant here, the BE

16  License contains the following provisions:

> 2. A purchased Item may be used in one Project. . . .  Installable Items
> [including fonts] may be used in an unlimited number of Projects on
> a one seat per license basis.  A Project is defined as a complete and
> cohesive undertaking that may result in one or more End Products. . . .
> However, all purchased Items may be used in an unlimited number of
> Personal Use Projects.
> . . . .
> 4. You may modify or manipulate the Item, or incorporate it into other
> content and make a derivative work from it.  As between you and the
> Shop Owner, the Shop Owner will retain all right, title, and ownership
> in the Item, and the resulting derivative work is subject to the terms
> of this Standard License.
> . . . .
> 6. You may not make the Item available on a digital asset
> management system, shared drive, or the like for the purposes of
> sharing or transferring the Item, and you must not permit an end user
> of the end product to extract the Item and use it separately from the
> End Product.

26  BE License at 2, ECF No. 82-4.

27      Zazzle is an online marketplace for customizable consumer goods that offers hundreds of

28  licensed fonts through a customization platform on its website called the Zazzle Design Tool

("Design Tool").  On May 4, 2017, Zazzle employee Mr. Alkhatib purchased one BE License through Creative Market on behalf of Zazzle.  *See* Deposition Transcript of Michelle Reynaud at 90:7–9, 92:17–24, ECF No. 338-11.  In October 2017, Zazzle publicly announced the addition of the BE Trio to the Design Tool.  ECF No. 338-12 at 2.  In August 2020, Plaintiff's husband John Laatz, on Plaintiff's behalf, notified Defendants that Plaintiff "[did] not grant [the type of license Zazzle would need to use the BE Trio] . . . and ha[d] not done so now for many years," and requested proof of the license Defendants were using for the BE Trio.  ECF No. 338-63.

Plaintiff initiated this action on August 24, 2022.  ECF No. 1.  In her first amended complaint, she asserted claims for (1) fraudulent misrepresentation, (2) fraudulent concealment, (3) promissory fraud, (4) federal copyright infringement, (5) federal trademark infringement, and (6) breach of contract.  ECF No. 82 ¶¶ 175–219.  On May 9, 2025, the Court granted Defendants' motion for summary judgment as to Plaintiff's first, second, third, and fifth claims.  ECF No. 414.  On August 4, 2025, the Court granted Defendants' motion for reconsideration and entered judgment in Defendants' favor as to Plaintiff's fourth claim, leaving only Plaintiff's sixth claim for breach of contract in this action.  ECF No. 443.

Following the Court's order granting reconsideration, the Parties withdrew portions of their expert witnesses' reports that were previously the subject of these motions.  *See* ECF No. 450.  The Court does not address the arguments made in reference to those now-withdrawn expert reports.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589.  In

United States District Court
Northern District of California

*Daubert*, the Supreme Court discussed four factors that may be used to determine reliability: (1) whether the theory or technique used by the expert "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether there is "general acceptance" of the theory or technique in the "relevant scientific community." *Id.* at 593–94; *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), *overruled on other grounds*, *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. *Id.* at 147. The Supreme Court also made clear that the four *Daubert* factors "do *not* constitute a 'definitive checklist or test'" for reliability. *Id.* at 150 (quoting *Daubert*, 509 U.S. at 593). The reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153. The Ninth Circuit has held that another "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*"). While opinions developed expressly for litigation are not necessarily unreliable, the district court "may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Id.*

In deciding a *Daubert* challenge, the district court makes findings as to both relevance and reliability. *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007). In making those findings, the district court must address the soundness of the expert's methodology, not the correctness of their conclusions. Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an

expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may

testify[,] and the jury decides how much weight to give that testimony." *Id.* at 564–65 (footnote

omitted) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

On December 1, 2023, the Judicial Conference's amendments to Rule 702 went into effect,

"clarif[ying]" that expert testimony may be admitted only if the court determines "that it is more

likely than not that the proffered testimony meets the admissibility requirements set forth in the

rule." Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment; *see also Reflex*

*Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024). The

amendment makes clear that a court must first find by a preponderance of the evidence that the

expert's basis and methodology are sufficient. Only once that threshold has been met are further

challenges to the expert's reliability or their conclusions considered questions of weight, which are

left to the jury.

## III.    DEFENDANTS' MOTIONS

### A. Stuart Sandler

Plaintiff's industry expert Mr. Sandler, a self-described "font licensing thought-leader," is

the founder of several font foundries and font distributors, holds an associate's degree in visual

communications, and has lectured on licensing practices in the font industry for more than a

decade. ECF No. 398-6 ("Sandler Rep.") ¶¶ 1–8. Plaintiff offers Mr. Sandler to opine as to the

meaning that the font industry would ascribe to the BE License. Specifically, Mr. Sandler opines

that Defendants "violated standard font industry licensing practices" by making the BE Trio

available to Zazzle's customers through the Design Tool. *See id.* ¶¶ 12, 27.

Defendants challenge Mr. Sandler's testimony on two grounds. First, Defendants argue

that portions of Mr. Sandler's testimony constitute improper legal opinions about the meaning of

the BE License that invades the province of the Court to construe the terms of agreement. Defs.'

Mot. at 8–10. Second, Defendants argue that Mr. Sandler's testimony that any quantification of

Zazzle's customers who accessed the Design Tool while BE Trio was available must include users

with unfinished designs (what the Parties refer to as "pending designs") is speculative and

irrelevant. *Id.* at 10–11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**1. Legal Conclusions**

Defendants argue that the Court should exclude portions of Mr. Sandler's testimony that amount to no more than legal conclusions. Defs.' Mot. at 8 (citing Sandler Rep. ¶¶ 12, 14–33, 35–43, 48–49, 51–61). It is well established that "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), *amended sub nom.*, *Mukhtar v. Cal. State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003)). The prohibition of legal conclusions in in recognition that "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court. *Id.* (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). Moreover, it is improper to attempt to use expert testimony "to provide legal meaning or interpret [legal documents] as written." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996); *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1029 (C.D. Cal. 2017), *aff'd sub nom.*, *GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019).

Mr. Sandler's expert report is plagued by improper legal conclusions as to the meaning of the terms of the BE License and whether Defendants breached those terms. For example, Mr. Sandler intends to testify as to how the jury should construe the term "single-seat license," offering that "Mr. Alkhatib would be considered the sole licensed user under the [BE License] and would have been considered to be the only person entitled to access or use the [BE Trio] digital content." Sandler Rep. ¶ 18. Mr. Sandler also intends to outright testify that Defendants breached the terms of the BE License, opining that "Zazzle's incorporation of the [BE Trio] . . . into Zazzle's design tools is expressly forbidden by the [BE License]." *Id.* ¶ 39. The Court agrees with Defendants that the challenged portions of Mr. Sandler's expert report, *see id.* ¶¶ 12, 14–33, 35–43, 48–49, 51–61, state legal conclusions that are wholly divorced from his experience and expertise.

In this respect, Mr. Sandler's testimony is distinguishable from the facts before the Ninth Circuit in *Hangarter*. There, the Ninth Circuit found that, although an expert witness's testimony

United States District Court
Northern District of California

that the defendants "deviated from industry standards" supported a finding that they acted in bad faith, the testimony was nevertheless permissible because the expert "never testified that he had reached a legal conclusion" that the defendants had done so.  373 F.3d at 1016.  By contrast, Mr. Sandler's "[t]estimony about whether a right has been violated is a legal opinion subject to exclusion."  *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2023 WL 5667884, at *7 (N.D. Cal. Aug. 9, 2023).  Far from applying his experience and expertise to the matters at hand, Mr. Sandler's testimony merely recites legal opinions prepared in anticipation of litigation.  *Cf. Daubert II*, 43 F.3d at 1317.

There are two additional independent grounds supporting exclusion of the portions of Mr. Sandler's expert report identified by Defendants in their motion.  First, Mr. Sandler fails to establish that there is in fact a recognized font industry with recognized norms and rules.  *See* ECF No. 398-5 ("Sandler Dep. Tr.") at 56:23–57:22 (explaining that "the first and foremost thing" "to understand" is that the purported font industry is "not an organized entity" but rather a "loose coalition of independent font authors and font distributors" who have "their own businesses and their own practices").  While Mr. Sandler states that there are numerous professional font design organizations, he does not assert that these organizations regularly meet or memorialize standards that are relevant to licensing practices.  Moreover, he does not assert that Creative Market, which prepared the BE License, is even a member of the font industry or prepared the BE License with industry standards in mind.  *See, e.g.*, *id.* at 84:5–84:15 ("I did not find the terms and conditions [Creative Market] extended to their customers to be the same terms and conditions which I would be comfortable extending my font typeface and font software products for sale.").  Mr. Sandler's lack of foundation as to his conclusions that Creative Market incorporated industry standards into the BE License and that Defendants violated these industry standards constitutes an independent ground for exclusion.

Second, Mr. Sandler opines as to the contracting parties' subjective intentions and motivations.  *See, e.g.*, Sandler Rep. ¶ 22 ("The [BE License] was intended by Creative Market to restrict installation of the [BE Trio] digital content, including the font software, to up to two computers used by one end user, so long as only one computer is used at a time.").  This is

United States District Court
Northern District of California

likewise improper.  Such considerations are for the trier of fact and are not an appropriate subject of expert testimony.  *See Madrigal v. Allstate Indemn. Co.*, No. 14-cv-04242-SS, 2015 WL 12746232, at *5 (C.D. Cal. Oct. 29, 2015) (explaining that an expert cannot opine on the internal thought processes and intentions of actors); *E.E.O.C. v. MJC, Inc.*, No. 17-cv-00371-SOM, 2019 WL 2992013, at *5 (D. Haw. July 9, 2019) (collecting cases).

As presented in the expert report, the opinions expressed in paragraphs 12, 14–33, 35–43, 48–49, and 51–61 all constitute improper legal opinions.  Accordingly, the Court GRANTS Defendants' motion on this ground and limits Mr. Sandler's testimony.  While Mr. Sandler may testify generally as to the role of licenses in marketing and distributing fonts, he may not testify as to (1) the meaning of terms in the BE License, (2) whether Defendants ultimately breached the BE License, or (3) the contracting parties' intent.

### 2.  Design Tool

Defendants argue that Mr. Sandler's testimony about the Design Tool would amount to "offering" the jury "wildly speculative opinions" as to how many Zazzle customers used the Design Tool to infringe the BE License.  Defs.' Mot. at 10 (citing Sandler Rep. ¶¶ 46–47).  For example, Mr. Sandler opines that "the number of total users Zazzle allowed to access the Zazzle design tool containing the Blooming Elegant Trio is likely substantially understated by focusing on only 'finished' or 'finalized' designs."  Sandler Rep. ¶ 47.  The Court agrees that such testimony amounts to nothing more than conjecture and does not "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs."  *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  Because this testimony relies only on "assumptions and speculation," it is inadmissible.  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

Mr. Sandler's testimony on this point is particularly unreliable because he does not explain how his opinions as to the total number of users with access to the BE Trio are in any way connected to his expertise in the font industry.  As an experience-based expert, Mr. Sandler must clearly connect his testimony to his experience in the business of font licensing.  To the contrary, the connection is woefully inadequate here.  Because "[h]e does not explain how he used his

expertise to evaluate that evidence[,] . . . it is unclear what helpful testimony [he] could provide that is outside 'the common knowledge of the average layman.'" *Patterson v. Six Flags Theme Parks Inc.*, No. 21-cv-02398-KJM, 2024 WL 2112376, at *3 (E.D. Cal. May 9, 2024) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)).

As presented in the expert report, the opinion expressed in paragraph 47 is unreliable. Accordingly, the Court GRANTS Defendants' motion on this ground and limits Mr. Sandler's testimony. Mr. Sandler may not testify as to the total number of infringing uses of the Design Tool.

### B.  Daniel Garrie

Plaintiff's technical expert Mr. Garrie is the co-founder and managing partner of a firm specializing in Electronically Stored Information and has previously served as a technical expert, forensic neutral, software expert, e-discovery expert, court-appointed Special Master and Discovery Referee, and a party-selected neutral to assist with software, enterprise web and mobile systems, and forensic and ESI disputes. ECF No. 398-8 ("Garrie Rep.") at 1. Mr. Garrie holds a bachelor's degree and master's degree in computer science, as well as a Juris Doctor. *Id.* Mr. Garrie opines that the operation of the Design Tool allows consumers to access and use the software covered by the BE License. *Id.* at 20–32.

Defendants challenge Mr. Garrie's testimony on four grounds. First, like their objection to Mr. Sandler's testimony, Defendants characterize portions of Mr. Garrie's export report as improperly offering legal opinions about the ultimate issues in this case. Defs.' Mot. at 11–12. Second, Defendants argue that Mr. Garrie's conclusion that Defendants enabled consumers to "use" the software covered by the BE License is unreliable and "incorrect." *Id.* at 12–13. Third, Defendants contend that Mr. Garrie should not be permitted to testify as to the number of consumers who were able to access the software by using the Design Tool. *Id.* at 13–14. Fourth, Defendants urge that "the Court should preclude [Mr.] Garrie from testifying about any of the lengthy factual narratives he included in his Report," characterizing these narratives as improper and outside the scope of his expertise. *Id.* at 14–15.

### 1.  Legal Conclusions

United States District Court
Northern District of California

Defendants argue that portions of Mr. Garrie's expert report should be excluded as improper legal opinions.  Mot. at 11 (citing Garrie Rep. at 2, 4–5, 7 n.27, 11, 25, 35–37, 40, 41).  The Court agrees.  As is the case with Mr. Sandler, Mr. Garrie's expert report contains statements that, if introduced at trial, would constitute improper legal conclusions about the ultimate issues in this case.  For example, like Mr. Sandler, Mr. Garrie intends to testify that Defendants breached the terms of the BE License by "giv[ing] unlicensed users access to the [BE Trio] on Zazzle's website and in Zazzle's Design Tool."  Garrie Rep. at 6.  Portions of Mr. Garrie's expert report also improperly opine on Defendants' motivations with respect to breaching the BE License.  *Id.* at 7 n.27 ("Zazzle continued to make the [BE Trio] available on the Design Tool for at least two years despite knowing that Zazzle use of the [BE Trio] of Fonts violated the [BE] License.").  These legal conclusions are not the proper subject of expert testimony under Rule 702.

As presented in the expert report, the opinions expressed in portions of pages 2, 4–5, 7 n.27, 11, 25, 35–37, and 40–41 constitute improper legal opinions.  Accordingly, the Court GRANTS Defendants' motion on this ground and limits Mr. Garrie's testimony.  Mr. Garrie may not testify on legal issues such as whether Defendants knowingly breached the terms of the BE License or whether Plaintiff had notice of such breach.

### 2.  Design Tool

Defendants argue that Mr. Garrie should not be permitted to testify that "Zazzle enabled millions of users *to use the Software* to render text in the [BE Trio] using the Design Tool."  Defs.' Mot. at 12 (quoting Garrie Rep. at 40).  Defendants argue that his opinion is "unreliable and incorrect" because Mr. Garrie "conceded" at deposition that Zazzle users do not directly access the BE Trio software.  *Id.* (citing ECF No. 398-9 ("Garrie Dep. Tr.") at 290:24–291:8).  For the same reason, Defendants argue that Mr. Garrie should not be permitted to testify that, "from a user's perspective, the outcome of the process . . . is effectively the same as a user directly obtaining a copy of the Software, installing it on their computer, and having the option to use it to generate text in the [BE Trio] within a design tool" is properly within his expertise.  Garrie Rep. at 37.  Defendants' argument at bottom amounts to a disagreement with Mr. Garrie's conclusions and is not a proper basis for exclusion.

United States District Court
Northern District of California

1       As a threshold matter, Plaintiff has agreed that Mr. Garrie will not testify that users

2   literally "use" the software directly—the Court will enforce this requirement, and Mr. Garrie is

3   precluded from any testimony to that effect.  The remainder of Mr. Garrie's proposed testimony,

4   however, is admissible.  While the Court agrees with Defendants that Mr. Garrie cannot testify as

5   to what users may be *thinking* while they are accessing and using the Design Tool, he does not

6   purport to do so in his expert report.  Rather, his opinion as to what users *see* and how what they

7   see and interact with relates to the underlying technology is both relevant to the issue of breach

8   and firmly within the domain of his experience and expertise as a software engineer.  Moreover,

9   contrary to Defendants' argument that Mr. Garrie's testimony is speculative and lacking in

10  evidentiary support, Mr. Garrie provides sufficient foundation by explaining how he used the

11  Design Tool from Zazzle's website to "create, edit, and download various products" and analyzed

12  the data "using the Web Browser Development Tools and/or X-Ways Forensics."  Garrie Rep.

13  at 9.  This testimony is an application of his technical experience to the issue of how consumers

14  use and interact with software.  *See, e.g.*, *Hangarter*, 373 F.3d at 1017 (emphasizing the propriety

15  of expert testimony that "depends heavily on the *knowledge and experience* of the expert"); *United

16  States v. Cloud*, 576 F. Supp. 3d 827, 838 (E.D. Wash. 2021).

17      As presented in the expert report, the opinions expressed in portions of pages 36–37 and 40

18  reflect the kind of experience-based expertise that courts routinely admit.  Accordingly, the Court

19  DENIES Defendants' motion on this ground.  Mr. Garrie may testify as to how Zazzle's customers

20  interact with the Design Tool, provided that he does not state that they "use" the underlying BE

21  font software.

22      **3.  Pending Designs**

23      Defendants argue that that Mr. Garrie should not be permitted to testify as to the number of

24  users who created or customized at least one design in the Design Tool or that this actual number

25  is "likely significantly higher" because such testimony amounts to pure speculation.  Defs.' Mot.

26  at 13–14 (citing Garrie Rep. at 38–40).  As defined in the expert report, "pending designs" are

27  "designs created using the Design Tool that were not published for others to see and use on

28  Zazzle, did not result in a purchase on Zazzle's website, or were not manually saved to an

United States District Court
Northern District of California

account," regardless of whether they incorporated the BE Trio or not.  Garrie Rep. at 39.  Plaintiff intends to argue to the jury that, because the number of users who had pending designs using the BE Trio is unknown, all users of the Design Tool had the opportunity to experiment with the BE Trio, such that each use of the Design Tool would have required a BE License.

To the extent Defendants dispute whether each unique combination of a product and design is properly called a "unique design," this issue goes to weight, not admissibility.  *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1028 (9th Cir. 2022).  That said, the Court agrees with Defendants that Mr. Garrie cannot be permitted to merely speculate that the numbers he analyzes are likely to be significantly undercounted, since this testimony would invite the jury to speculate as to the total number of pending designs without any limiting principle.  In his expert report, Mr. Garrie admits that "it is not possible to know how many times the [BE Trio] w[as] used in pending designs," and he provides no basis for his conclusion that the number of pending designs was "significant."  Garrie Rep. at 40.  Moreover, Mr. Garrie is not permitted to give an expert gloss on these figures, which he did not develop and simply accepted from Defendants' interrogatory responses.

As presented in the expert report, opinions expressed in portions of pages 38–40 are too speculative to be considered reliable under the Federal Rules of Evidence.  Accordingly, the Court GRANTS Defendants' motion on this ground and limits Mr. Garrie's testimony.  While Mr. Garrie may testify as to the number of customers who used the Design Tool, he may not speculate to the jury that the true number is likely to be significantly higher.

### 4.  Factual Narratives

Defendants argue that Mr. Garrie should not be permitted to testify about any of the "lengthy factual narratives" included in his expert report regarding Plaintiff's creation of, or Defendants' purchase and use of, the BE Trio.  Defs.' Mot. at 14.  Experts may not offer a factual narrative simply to give it the imprimatur of "expert" testimony.  *See, e.g.*, *Johns v. Bayer Corp.*, No. 09-cv-01935-AJB, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding expert testimony that "offer[ed] nothing more than a factual narrative" of documents in the record).  The Court agrees with Defendants that the factual background in Mr. Garrie's report about Plaintiff's

1   creation of the BE Trio and Defendants' purchase and use of the BE License and BE Trio is

2   excessive.

3        As presented in the expert report, certain factual narratives are excessive and are not

4   necessary for the jury to understand Mr. Garrie's technical opinions.  Accordingly, the Court

5   GRANTS Defendants' motion on this ground and limits Mr. Garrie's testimony.  Mr. Garrie's

6   factual narratives must be limited to the background necessary for the jury to understand his

7   technical opinions.

8   **C.  Sara Parikh**

9        Plaintiff's survey expert Dr. Parikh is the president of a research and consulting firm that

10   designs and conducts quantitative and qualitative studies of consumers and professionals and has

11   over thirty years of experience designing and conducting original research studies.  ECF No. 398-

12   13 ("Parikh Rep.") ¶ 1.  She holds a bachelor's degree in political science, a master's degree in

13   sociology, and a PhD in Sociology.  *Id.*  Dr. Parikh designed and carried out a double-blind survey

14   of 136 graphic designers who sell on Zazzle as "Bronze" sellers or above (based on their sales), in

15   which they were shown six different fonts or sets of fonts including the BE Trio and asked

16   whether they were aware of the fonts, used the fonts, and found the fonts unique or appealing.  *Id.*

17   ¶¶ 9–10.  Dr. Parikh opines that the survey demonstrates that the majority of respondents are

18   familiar with BE Trio and rate BE Trio higher than the other fonts in terms of appeal, uniqueness,

19   importance, and difficulty to substitute.  *Id.* ¶¶ 11–12.

20        Defendants make four arguments as to why Dr. Parikh's survey evidence should be

21   excluded, none of which the Court finds persuasive.  The problem with all of Defendants'

22   arguments is that they are ultimately "[c]hallenges to survey methodology [that] go to the weight

23   given the survey, not its admissibility."  *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.

24   1997).

25        Defendants first argue that Dr. Parikh's testimony must be excluded because she "limited

26   her survey universe to graphic designers on Zazzle at the 'Bronze level' or above, which requires a

27   certain substantial minimum threshold of sales."  Defs.' Mot. at 15.  As a result, Defendants urge

28   that Dr. Parikh cannot establish that "the opinions of Bronze-level designers are representative of

United States District Court
Northern District of California

13

the opinions of lower tier designers or the public at large." *Id.* at 16. The Court disagrees—the extent to which Dr. Parikh's survey is not sufficiently representative is an issue for the jury. "[A]s a general rule, disputes about a survey's universe of relevant persons go to its probative value and weight, and so are not typically a basis for exclusion." *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1050 (N.D. Cal. 2024); *see also* McCarthy § 32:162 (collecting cases and concluding that "[i]n most cases, the selection of an inappropriate universe will lessen the weight of the resulting survey data, not result in its [in]admissibility"). Moreover, Dr. Parikh provided a reasonable explanation for her choice, stating that she chose the sample group because it "would constitute the most active designers on Zazzle," which she determined "was a really good representation of graphic designers who were selling their products on Zazzle." ECF No. 398-14 ("Parikh Dep. Tr.") at 111:20–112:1.

Second, Defendants argue that Dr. Parikh's survey is unreliable because she failed to "provid[e] the survey respondents with a fulsome presentation of available typefaces on Zazzle, or even all typefaces that bear similar characteristics to BE." Defs.' Mot. at 16. But Dr. Parikh explains in her report why she chose the comparator fonts, stating that she "selected these other fonts to include a mix of font trios and single fonts, script and plain fonts, and more and less common fonts." Parikh Rep. ¶ 33. The Ninth Circuit has repeatedly "made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)).

Third, Defendants argue that Dr. Parikh's failure to use a control group in her survey "was a departure from generally accepted standards of the scientific community and prejudices Defendants by depriving their expert of the means to quantify the effect of the sources of error or bias present in her survey design." Defs.' Mot. at 17. Again, this challenge "to methodology and design [is] precisely the kind of claimed deficienc[y] that go[es] to the weight of the evidence, not its admissibility." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276 (9th Cir. 2024) (affirming district court's denial of motion to exclude survey expert for failure to include a control

United States District Court
Northern District of California

group).  Defendants will be free to argue to the jury at trial that it should discredit Dr. Parikh's survey results based on the lack of a control group, but this is not an appropriate ground for exclusion by the Court.

Finally, Defendants argue that there is "too great an analytical gap" between the questions Dr. Parikh asked and the conclusions that she offers.  Defs.' Mot. at 17 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Defendants contend that Dr. Parikh's survey questions, which asked whether each typeface was appealing, unique, or difficult to substitute, did not provide a sufficient basis for her conclusion that the BE Trio "is an important and popular set of fonts on Zazzle."  Parikh Rep. ¶ 14.  The Court disagrees, since there is a reasonable throughline between questions as to graphic designers' subjective and aesthetic opinions regarding the BE Trio and the font's overall popularity.

Accordingly, the Court DENIES Defendants' motion to exclude Dr. Parikh's testimony.

### D. Dominic Persechini

Plaintiff's damages expert Mr. Persechini has nearly twenty years of experience providing consulting and expert services in connection with the financial aspects of intellectual property, contract, employment, and antitrust litigation.  ECF No. 398-16 ("Persechini Rep.") ¶¶ 1–2. Mr. Persechini holds a bachelor's degree in economics and a Master of Business Administration. *Id.* ¶ 5.  Plaintiff offers Mr. Persechini to testify as to two frameworks to calculate damages: (1) disgorgement of Defendants' profits and (2) "alternative" contract damages based on "lost" or "hypothetical" license fees.  *Id.* ¶¶ 25–29, 59–62.

As to lost profits or disgorgement damages, Defendants contend that Mr. Persechini's opinion is not reliable because he has not sufficiently deducted costs of indirect or overhead expenses in his calculation.  Defs.' Mot. at 18.  As to "lost" or "hypothetical" license fee damages, Defendants argue that his proposed license fee ($14 per user) has no basis in fact or law, and that he fails to explain why each customer who had access to the BE Trio through the Design Tool would value that access at $14.  *Id.* at 20–24.

#### 1. Disgorgement

Mr. Persechini's opinions regarding disgorgement (alternatively referred to by the Parties

15

as lost profits damages) is no longer relevant because the Court has entered judgment for

Defendants on Plaintiff's federal copyright claim.  Plaintiff's reliance on *Foster Poultry Farms,*

*Inc. v. SunTrust Bank*, 377 F. App'x 665 (9th Cir. 2010), to support disgorgement as a measure of

damages for breach of contract is misplaced.  In that case, the Ninth Circuit held only that

disgorgement "can be an appropriate remedy for breach of a contract *protecting trade secrets and*

*proprietary confidential information*" because of the difficulties in calculating damages in such

cases, for example, where the plaintiff has suffered no measurable loss, but the defendant has

obtained a monetary gain.  *Id.* at 668 (emphasis added).  No such difficulties are present here, and

the Court declines Plaintiff's invitation to inject the equitable remedy of disgorgement into this

prototypical contractual dispute.  *See, e.g.*, *Mission Viejo Florist, Inc. v. Orchard Supply Co.*,

No. 16-cv-01841-CJC, 2018 WL 5974299, at *5 (C.D. Cal. Aug. 16, 2018) (explaining that it

would be "inappropriate" for a plaintiff "to seek disgorgement as a remedy" where the remedies

available at law were adequate); *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, No. 99-cv-

07947-AHM, 2001 WL 1673258, at *1 (C.D. Cal. Aug. 15, 2001).

As expressed in the expert report, the opinions offered in paragraphs 39–58 regarding lost

profits are irrelevant.  Accordingly, the Court GRANTS Defendants' motion to exclude evidence

of lost profits and limits Mr. Persechini's testimony.  Mr. Persechini may not present a

disgorgement theory of damages to the jury.

### 2.  Lost or Hypothetical License Fees

Defendants argue that Mr. Persechini "fails to establish any basis in the . . . record of this

case, or from the commercial market for 'fonts' more generally, to support his fixed $14 'license

fee' for *every single Zazzle user who theoretically may have viewed text in* [the BE Trio] *in the*

*Design Tool*."  Defs.' Mot. at 21.  Mr. Persechini is prepared to testify that the jury may calculate

damages owed to Plaintiff by multiplying a fixed $14 "license fee" (i.e., the amount Plaintiff

typically retains from a standard $20 BE License) by various quantifications of Zazzle's

customers.  Persechini Rep. ¶¶ 76–77.  These alternative quantifications include the total number

of Zazzle users who (1) had "access" to the BE Trio, (2) used the BE Trio in a pending design,

(3) used the BE Trio in a finalized design, or (4) purchased a finalized design using the BE Trio.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Court agrees with Defendants that Mr. Persechini has no foundation to opine to the jury that it may calculate damages by simply multiplying $14 by the number of Zazzle consumers who had access to the BE Trio or used the Design Tool to create a pending design.

At the high end, Mr. Persechini proposes multiplying $14 by the total number of users who used the Design Tool (i.e., 11,341,123) to reach a damages figure above $150 million. *Id.* ¶ 74. At the low end, Mr. Persechini proposes multiplying $14 by the total number of users who received vector paths to render the BE Trio (i.e., 1,521,184) to reach a damages figure of about $20 million. *Id.* ¶ 82. As an intermediate estimate, Mr. Persechini proposes multiplying the total number of users who used the Design Tool (i.e., 11,341,123) by the percentage of respondents in the Parikh survey who reported using the BE Trio—54%—and then multiplying that figure by $14 to estimate the total number of users who accessed the Design Tool and may have used the BE Trio to reach a damages figure of roughly $85 million. *Id.* ¶ 85. As Plaintiff explained at oral argument, the underlying assumption of Mr. Persechini's damages calculation is that the total number of users who had access to the Design Tool may be used as a proxy for the total number of users who created but did not finish or purchase designs incorporating the BE Trio (what the Parties refer to as "pending designs").

The problem with Mr. Persechini's testimony is that he does not explain the basis for his apparent assumption that Defendants breached the BE License each time a Zazzle customer accessed the Design Tool or created a pending design. Rather, in his expert report, Mr. Persechini accepts without analysis or any independent consideration Mr. Sandler and Mr. Garrie's conclusions—some of which the Court has excluded—that access to the Design Tool is an appropriate metric to apply a "license fee to each time a customer has access to the Design Tool." Persechini Rep. ¶ 60. In opposition, Plaintiff submits that, "[b]y misappropriating the [BE Trio] after being told the [license] price offered by [Plaintiff], [Defendant] is deemed to have accepted the offer," creating an implied-in-fact contract under the California Supreme Court's decision in *Desny v. Wilder*, 46 Cal. 2d 715, 736 (1956). Pl.'s Opp. at 13.

The Court has serious concerns regarding Mr. Persechini's proposed testimony. As a preliminary matter, Plaintiff's "access" theory of damages has no foundation in fact or law:

United States District Court
Northern District of California

Mr. Persechini merely adopts Plaintiff's assumption that each time a Zazzle customer used the Design Tool—regardless of whether they even were *aware* of their ability to use the BE Trio— that this constituted an independent breach of the BE License. *See* Persechini Rep. ¶ 60 ("[T]he appropriate metric to calculate breach of contract damages in this matter is the number of users to whom Zazzle provided access to the [BE Trio] through its design tools during the relevant time period."). To the extent that he uses this "access" calculation as a proxy for "pending designs," Mr. Persechini does not contend that this assumption has any basis for calculating or even approximating the total number of pending designs. Consequently, his opinions are based on nothing more than speculation that customers accessing the Design Tool may have noticed the BE Trio and then used the font in a pending design.

Mr. Persechini's assumption regarding the number of users who accessed the Design Tool or created a pending design has no evidentiary basis and is not properly admissible as expert testimony. The fact that the data regarding the number of pending designs incorporating the BE Trio are not available does not open the door to the admissibility of the number of users who merely accessed the Design Tool. To the extent that Plaintiff argues that the California Supreme Court's decision in *Desny* supplies the foundation that Mr. Persechini's analysis otherwise lacks, she is mistaken. *Desny* does not supply a basis for calculating damages in this context as Plaintiff argues.

In *Desny*, the plaintiff submitted a "[l]iterary and dramatic composition . . . based upon the life of Floyd Collins" for consideration by the defendant, who, without accepting the plaintiff's offer or otherwise communicating with him about his idea, "cop[ied] and use[d] [that composition] in connection with [a] motion picture photoplay." 46 Cal. 2d at 724–25. Because there was no express contract between the parties, the California Supreme Court held that the parties' course of conduct gave rise to an implied-in-fact contract incorporating the terms that the plaintiff proposed in his initial offer. *Id.* at 734. Since then, courts applying California law have recognized a so-called "*Desny* claim" as a "claim for breach of implied-in-fact contract involving the conveyance or submission of an idea[] . . . requir[ing] that the plaintiff show that he prepared the work, disclosed the work to the offeree for sale, and did so under the circumstances from

which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Design Data Corp. v. Unigate Enterp., Inc.*, No. 12-cv-04131-PJH, 2013 WL 360542, at *6 (N.D. Cal. Jan. 29, 2013).

The case law makes clear that a *Desny* claim is not, as Plaintiff now suggests, a freestanding theory of contract liability from which damages may be calculated or an alternative theory of damages for breach of contract.  It is instead a narrow, highly particularized theory of recovery in certain intellectual property cases where the "disclosure [of an idea] may be of substantial benefit to the person to whom it is disclosed . . . [and] may therefore be consideration for a promise to pay." *Norman v. Ross*, 101 Cal. App. 5th 617, 648 (2024) (quoting *Desny*, 46 Cal. 2d at 733).  Plaintiff nonetheless submits that "here, having been offered (and in this case having accepted) a license for one person to have access to the BE Trio at a specified rate, and having then provided access to the BE Trio to millions of users, Zazzle is deemed by its conduct to have accepted the terms and is thereby liable for the stated price for each such person." Pl.'s Opp. at 13.  Tellingly, Plaintiff fails to identify a single case in which a state or federal court has applied *Desny* to include her access theory of damages.

Rather, Plaintiff seeks to analogize these facts to Samuel Williston's hypothetical thief scenario, urging that "'[a] buyer who goes into a shop and asks and is given . . . the price of an article, cannot take it' and later 'say "I decline to pay the price you ask, but will take it at its fair value."  He will be liable, if the seller elects to hold him so liable, not simply as a converter for the fair value of the property, but as a buyer for the stated price.'" *Id.* at 13 (alterations in original) (quoting *Desny*, 46 Cal. 2d at 736 (quoting Samuel Williston, *Mutual Assent in the Formation of Contracts*, 14 ILL. L. REV. 85, 90 (1919))).  While it may be the case that the thief is liable for the price of the goods he steals, nothing in *Desny* or Williston's hypothetical contemplates that a would-be thief is on the hook for each piece of merchandise that he may have set his eyes upon (access) or *could* have stolen but elected not to (pending designs).

Plaintiff extends the logic of *Desny* a bridge too far.  There is no dispute that an express written contract existed between the Parties, and Plaintiff did not plead in her complaint a claim for breach of implied-in-fact contract.  Nor did she adduce any factual allegations in her complaint

19

giving rise to the inference that the BE Trio constituted an abstract idea that she offered to Defendants with an expectation that a contract for such idea could be inferred based on incorporation into the Design Tool. It is too late in the proceedings for Plaintiff to reverse course and retroactively seek to assert a *Desny* claim when it was not previously pled.

It is also not permissible for Mr. Persechini to base his damages opinions on Plaintiff's counsel's *Desny* theory and then merely perform a series of arithmetic calculations. The law articulated by the California Supreme Court in *Desny* is not a substitute for expert analysis or other admissible evidence establishing the value or measure of contract damages or the conduct that establishes breach and number of times Defendants allegedly breached the BE License. Multiplying $14 by a series of user populations does not involve the application of any economics expertise and is not a proper form of expert testimony—the jury is fully capable of simple arithmetic. Plaintiff is advised that at trial she will need to establish the value of each breach, and that Mr. Persechini is not that witness. If it is Plaintiff's theory that each time a consumer used the Design Tool constituted a breach, she will need evidence to support that theory, since *Desny* does not fill that analytical gap. And again, Mr. Persechini is not that witness because he performed no independent analysis of the value of any breach or the number of separate breaches and simply accepted without question Plaintiff's counsel's theory of valuation.

Defendants also object to Mr. Persechini's proposed testimony with respect to Dr. Parikh's survey results. Mr. Persechini intends to apply Dr. Parikh's finding that 54% of respondents had used the BE Trio at least once as a proxy for the percent of users who had access to the Design Tool and used that access to make designs incorporating the BE Trio. Persechini Rep. ¶¶ 83–85. He provides no reasoning or analysis as to why importing the answer to a single question in the Parikh survey can be used for the precise measure of damages. This extrapolation is facially implausible and unreliable. Moreover, Mr. Persechini provides no analysis as to how data collected from professional graphic designers to determine whether the BE Trio is aesthetically pleasing or useful are reliably used to measure damages. A plain reading of Dr. Parikh's report shows that she did not gather the underlying data for the purpose Mr. Persechini uses it for. His testimony in this respect is unreliable.

United States District Court
Northern District of California

Mr. Persechini cannot opine that Defendants breached the BE License 11 million times. If Plaintiff's theory of breach is that Defendants placed the BE Trio software in its servers, then Plaintiff must offer expert testimony or other admissible evidence on the value of that breach. Mr. Persechini does not offer that opinion. As expressed in the expert report, the opinions expressed in paragraphs 56–64, 75–78, and 83–86 lack sufficient foundation to constitute reliable expert testimony. Accordingly, the Court GRANTS Defendants' motion on this ground and limits Mr. Persechini's testimony. Mr. Persechini may not testify to the jury that a measure of damages may be calculated by multiplying $14 by 54% of Design Tool users or 100% of Design Tool uses. Mr. Persechini's testimony is limited to opining as to the number of users who had access to the BE Trio based on his regression analysis.

## IV.    PLAINTIFF'S MOTIONS

### A. Christopher Rucinski

Defendants' technical expert Mr. Rucinski is a consultant on technical matters involving the analysis of various data formats, including computer source code. ECF No. 399-2 ("Rucinski Rep.") ¶ 5. He has been admitted in various federal proceedings to testify as an expert on topics including computer source code analysis, data analysis, and digital evidence collection. *Id.* ¶ 3. Mr. Rucinski holds a bachelor's degree in computer science and a Global Information Assurance Certification as a Certified Forensic Examiner. *Id.* ¶ 4. Defendants have withdrawn most of Mr. Rucinski's testimony, but he is prepared to opine as to the differences between data and software, as well as to how the Design Tool interacts with underlying files to render text. *See* ECF No. 450 at 3.

Plaintiff argues that the remaining portions of Mr. Rucinski's testimony should be excluded on two grounds. First, Plaintiff argues that Mr. Rucinski lacks sufficient qualifications or experience to opine on "typography, font software, and copyright authorship." Pl.'s Mot. at 11–13. Second, Plaintiff argues that Mr. Rucinski's methods are unreliable and not sufficiently supported by accepted industry standards. *Id.* at 16–18.

#### 1. Qualification

Plaintiff argues that Mr. Rucinski is not qualified to testify on "specialized questions

involving typography[ and] font software" because "he lacks the specialized experience and knowledge these questions demand." Pl.'s Mot. at 11–12. But the standard for qualification under the Federal Rules of Evidence is not nearly as restrictive as Plaintiff suggests. Rule 702 requires only that an individual be qualified by "knowledge, skill, experience, training, or education" to provide expert testimony. Moreover, Rule 702 "contemplates a *broad* conception of expert qualifications," *Hangarter*, 373 F.3d at 1015, and there is a consensus in the Ninth Circuit that "[t]he threshold for qualification is low for purposes of admissibility," *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 551 (C.D. Cal. 2014).

To the extent that Plaintiff suggests that Mr. Rucinski is not qualified simply because his computer science expertise is more generalized than font software, the Court disagrees. In light of Mr. Rucinski's significant expertise in this area, he is eminently qualified to testify as to the general software principles for which his testimony is offered, and "[t]he 'lack of particularized 'expertise goes to the weight accorded [an expert's] testimony, not to the admissibility of her opinion as an expert.'" *Synology Inc. v. Via Licensing Corp.*, No. 22-cv-01405-TLT, 2023 WL 5276030, at *2 (N.D. Cal. Aug. 9, 2023) (citation omitted). Defendants offer Mr. Rucinski to testify only as to core computer-science opinions, such as the underlying differences between data and software and how the Design Tool interacts with underlying files to render text. These opinions are well within his expertise as a computer scientist with experience in reviewing and analyzing source code.

Plaintiff's citation to *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869 (N.D. Cal. 2022), is inapposite. There, the district court excluded a software engineer's expert testimony as to the technical details of a specific program because he did not have any specialized knowledge about the program and did not indicate whether he reviewed its technical specifications or performed a technical analysis on them. *Id.* at 901. Here, Defendants offer Mr. Rucinski's testimony only for the limited purpose of explaining general computer science principles, and his report describes in detail how he performed a technical analysis of the pertinent files. *See* Rucinski Rep. ¶ 33.

**2. Reliability**

Plaintiff argues that Mr. Rucinski's critique of Mr. Garrie's opinions regarding the Design

Tool is not methodologically sound because Mr. Rucinski "did not investigate how the design tool operated before 2021, did not speak with Zazzle's technical leads about changes during that period," and "did not attempt to test earlier versions of the system." Pl.'s Mot. at 20. This argument is circular, as it raises the same critique that Mr. Rucinski makes of Mr. Garrie's analysis.

Mr. Rucinski is amply qualified to testify about the Design Tool as it existed in 2021 and thereafter, and his opinions are adequately supported by his qualifications. Accordingly, the Court DENIES Defendants' motion to exclude Mr. Rucinski's remaining testimony.

**B. Ellen Shapiro**

Ms. Shapiro is one of Defendants' rebuttal experts to Dr. Parikh. ECF No. 399-10 ("Shapiro Rep."). Ms. Shapiro is the owner of a design firm and a design writer; she has assisted in trademark and copyright infringement cases involving typographic and graphic elements. *Id.* at 4–6. She holds a bachelor's degree in media arts and possesses two years of graduate education during which she studied various typesetting and type-tailoring techniques. *Id.* Ms. Shapiro opines that the BE Trio is not unique because it involves several motifs and characteristics that are widely shared by other fonts and sets of fonts, including those that are offered for use on Zazzle. *Id.* at 9–16.

Plaintiff challenges Ms. Shapiro's testimony on two grounds. Pl.'s Mot. at 21. First, Plaintiff argues that Ms. Shapiro is not qualified as a rebuttal expert to Dr. Parikh because she has no qualifications in survey design, methodology, and conduct. Second, Plaintiff argues that Ms. Shapiro's opinions are based solely on her personal, subjective views regarding font design and typefaces rather than objective facts, data, and reliable methods as required by Rule 702.

**1. Qualifications**

Plaintiff devotes several paragraphs to demonstrating that Ms. Shapiro does not have any relevant education or training in survey design, methodology, or analysis, Pl.'s Mot. at 21–22, which Defendants do not dispute. But the simple fact that Ms. Shapiro does not possess the same qualifications as Dr. Parikh does not mean that she is not qualified to offer rebuttal expert testimony. The Court is not aware of any authority—nor does Plaintiff cite any—for the

proposition that *only* a survey expert can rebut a survey expert.  Rule 702 requires only that an expert have "specialized knowledge" in the subject matter of his or her opinions that "will help the trier of fact to understand the evidence."  The relevant inquiry is not, as Plaintiff suggests, whether Ms. Shapiro's qualifications are sufficiently analogous to Dr. Parikh's but rather whether her opinions would be responsive to Dr. Parikh's.

"[R]ebuttal expert opinion is proper where it explains, repels, counteracts or disproves evidence of the adverse party," even if the rebuttal expert's specific field of expertise is different from the original expert's.  *Freteluco v. Smith's Food & Drug Ctrs., Inc.*, 336 F.R.D. 198, 205 (D. Nev. 2020) (internal quotation marks and citation omitted) (permitting a neuropsychologist to rebut opinion by a psychiatrist).  Dr. Parikh's survey at bottom was directed to the aesthetic appeal of the BE Trio to graphic designers, and she relied upon her survey to opine that the BE Trio is "important and popular."  Parikh Rep. at 20.  Ms. Shapiro's testimony is squarely directed to Dr. Parikh's testimony, relying on visual evidence to contradict Dr. Parikh's ultimate opinion that the BE Trio is aesthetically unique and difficult to substitute.  Shapiro Rep. at 14.  As a graphic designer who has published books on graphic design and taught classes with a focus on typography, Ms. Shapiro is qualified to opine on this issue.  And Ms. Shapiro explained that her opinion was based on using online search engines to locate fonts, experimenting with the Design Tool to assess the difficulty of substituting the BE Trio, and her own professional experience as a graphic designer and typographer.  ECF 399-12 ("Shapiro Dep. Tr.") at 121:22–126:22, 352:4–18.

### 2.  Reliability

Turning to the substance of Ms. Shapiro's proffered testimony, Plaintiff argues that Ms. Shapiro's opinions are not reliable because they are based on her "mere subjective beliefs" and "unsupported speculation."  Pl.'s Mot. at 24 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).  Plaintiff thus argues that the entirety of Ms. Shapiro's expert testimony—i.e., her opinions "that the BE Trio is not unique, important, . . . [or] more appealing than other fonts, and that it would not have been difficult to substitute . . . with another font" and "that [Dr.] Parikh's survey was flawed because of the fonts selected for comparison in the survey"—should be excluded.  *Id.* at 23 (citing Shapiro Rep. at 3).

Ms. Shapiro's opinions as to the aesthetic qualities of the BE Trio, although based in her expertise and experience as a graphic designer, merely constitute subjective preferences that have already been represented in Dr. Parikh's survey. There was no metric in Dr. Parikh's survey for which the BE Trio had a 100% approval, so Ms. Shapiro's opinions that the BE Trio is not unique, difficult to substitute, important, or appealing are adequately reflected by the percentage of respondents who answered Dr. Parikh's questions in the negative. In a sense, Ms. Shapiro is simply the 137th respondent to the Parikh survey. While Defendants can surely have a rebuttal expert emphasize what is already reflected in the Parikh report, what Defendants are attempting to do here is to equate Ms. Shapiro's singular opinion with the dozens of opinions represented in Dr. Parikh's survey that disagree with her. Accordingly, her opinions that "[m]any handwriting-style typefaces are similar in look and feel to Blooming Elegant" because they also "have swashes and tails," as well as that the "[d]uos and trios created by the same designer are common," Shapiro Rep. at 8–27, are excluded.

On the other hand, Ms. Shapiro's opinion that Dr. Parikh's survey is flawed because it failed to ask respondents about sufficiently comparable fonts represents an application of her expertise and experience that may aid the jury in weighing Dr. Parikh's testimony. Ms. Shapiro's opinion that the survey "gave Blooming Elegant an unfair advantage" is based on her opinions that the comparator fonts are derived from different font families and have "no stylistic relationship to [the BE Trio]." Shapiro Rep. at 28–29. And, unlike her subjective opinions as to the aesthetic merits of the BE Trio, her opinion as to comparability may provide an objective metric to the jury for evaluating the credibility and weight of that data.

As presented in the expert report, the opinions expressed in portions of pages 8–27 amount to no more than unsupported speculation that is not the proper subject of expert testimony. Accordingly, the Court GRANTS Plaintiff's motion on this ground and limits Ms. Shapiro's testimony. Ms. Shapiro's testimony shall be limited to the opinions in her expert report that specifically discuss the comparability of the BE Trio to the other fonts included in Dr. Parikh's report.

**C. Scott Swain**

Dr. Swain is one of Defendants' rebuttal experts to Dr. Parikh.  ECF No. 399-9 ("Swain Rep.").  Plaintiff moves only to exclude paragraphs 72, and 75–76 of Dr. Swain's expert report on the ground that they "rely entirely on and repeat the inadmissible opinions" of Ms. Shapiro.  Pl.'s Mot. at 25.  While a court may properly exclude an expert's testimony "[w]here an expert bases [his] opinion on—or simply repeats—the unreliable opinion of another expert," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017), that is not the case here.  Dr. Swain permissibly relies on Ms. Shapiro's opinions based on her expertise in design, since when one expert relies on the separate expertise of another, "[t]here is no general requirement that the [underlying] expert testify as well."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (alterations in original).

Although portions of Ms. Shapiro's report are excluded, Dr. Swain's opinions in paragraphs 72 and 75–76 do not rely on the excluded portions of Ms. Shapiro's report.  Dr. Swain properly uses Ms. Shapiro's non-excluded opinions as part of the foundation for his opinions, and he is not a mere conduit for delivering Ms. Shapiro's opinions.  Accordingly, the Court DENIES Plaintiff's motion to exclude portions of Dr. Swain's testimony.

**D.  Jeff Kinrich**

Mr. Kinrich is one of Defendants' rebuttal experts to Mr. Persechini.  ECF No. 399-8 ("Kinrich Rep.").  Mr. Kinrich is a managing principal at an economic, financial, and strategy consulting firm and has more than forty years of experience in analyzing damages in commercial disputes.  *Id.* ¶¶ 1–3.  Mr. Kinrich holds a bachelor's degree in mathematics, a master's degree in statistics, and a Master of Business Administration.  *Id.* ¶ 2.  He is also a Certified Public Accountant.  *Id.*  Mr. Kinrich opines that Mr. Persechini's damages calculations fail to apportion profits from infringement and are economically unreasonable insofar as they fail to comport with previous license agreements.  *Id.* at 2–6.

Plaintiff challenges Mr. Kinrich's testimony on two grounds.  First, Plaintiff argues that Mr. Kinrich's testimony as to incremental costs and apportionment is unreliable.  Pl.'s Mot. at 5–7.  Second, Plaintiff argues that Mr. Kinrich's hypothetical negotiation testimony is not proper

United States District Court
Northern District of California

rebuttal testimony, urging that his testimony "goes well beyond rebutting and refuting"

Mr. Persechini's theories and is unreliable under *Daubert*.  *Id.* at 8–9.

### 1.  Disgorgement/Lost Profits

As the Court explained *supra*, disgorgement is not a proper remedy in this single-count, breach-of-contract action.  The Court need not decide whether Mr. Kinrich's testimony as to incremental costs and apportionment is reliable because it is irrelevant.  Mr. Kinrich's opinion on disgorgement, *see* Kinrich Rep. ¶¶ 29–57, is excluded.

### 2.  Affirmative Damages Theory

Plaintiff argues that Mr. Kinrich's opinion as to hypothetical license fees should be excluded because it is "an entirely new theory" that "goes well beyond rebutting and refuting" Mr. Persechini's testimony.  Pl.'s Mot. at 9.  Under Federal Rule of Civil Procedure 26, a party need not disclose an expert within the deadline for initial expert reports and can instead disclose an expert as a "rebuttal expert" when the expert's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness."  *R & O Constr. Co. v. Rox Pro Int'l Grp.*, No. 09-cv-01749-LRH, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011). "If the rebuttal expert's testimony is offered, however, to 'contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything close to one.'"  *Clear-View Techs., Inc. v Rasnick*, No. 13-cv-02744-BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (quoting *Amos v. Makita U.S.A., Inc.*, No. 09-cv-01304-GMN, 2011 WL 43092, at *1 (D. Nev. Jan. 6, 2011)).  "A party that, without substantial justification, fails to properly disclose information as required by Rule 26(a) may not 'unless such failure is harmless, . . . use as evidence at trial . . . any witness or information not so disclosed.'"  *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 37(c)(1)).  At oral argument, the Court explained to Plaintiff that resolution of her motion in limine would count against the five motions in limine permitted by the Court's standing order, and counsel for Plaintiff agreed.

In his expert report, Mr. Kinrich relies on comparable licenses for two separate purposes: (1) to opine that Mr. Persechini's damages theory is economically unreasonable, *see* Kinrich Rep. ¶¶ 58–77, and (2) to propose that damages should be based on a hypothetical negotiation, akin to

United States District Court
Northern District of California

the patent infringement context, *see id.* ¶¶ 78–98.  The Court agrees with Plaintiff that the latter opinion is not proper rebuttal testimony, since Mr. Persechini did not opine on the value of a hypothetical license that would have covered Defendants' use of the BE Trio and affirmatively disclaimed the analytical value of such a license, *see* Persechini Rep. ¶ 188.  *See, e.g.*, *Amos*, 2011 WL 43092, at *1 ("The Ninth Circuit has held that rebuttal experts are not rebuttal experts if the testimony they give does not address or rebut previously disclosed expert testimony."); *Int'l Bus. Machs. Corp. v. Fasco Indus. Inc.*, No. 93-cv-20326, 1995 WL 115421, at *3 (N.D. Cal. Mar. 16, 1995) (explaining that rebuttal experts "cannot put forth their own theories" and "must restrict their testimony to attacking the theories offered by the adversary's experts").

To the extent that Plaintiff argues that Mr. Kinrich's description of previous licenses for the purpose of establishing economic unreasonableness is "not based on sufficient facts or data," Pl.'s Mot. at 9–10, the Court disagrees.  Mr. Kinrich based his opinions on comparable licenses that Plaintiff actually negotiated and entered, with a citation to each such comparable license drawn from discovery produced by Plaintiff or Plaintiff's sworn testimony.  Kinrich Rep. at 51 fig. 8.  To the extent that Plaintiff urges that these licenses are not sufficiently comparable for the purpose of attacking Mr. Persechini's damages theory, that is an issue for cross-examination, not admissibility.

As expressed in the expert report, the opinions set forth in paragraphs 79–98 are not proper rebuttal testimony and are untimely.  Accordingly, the Court GRANTS Plaintiff's motion in limine, GRANTS-IN-PART and DENIES-IN-PART Plaintiff's *Daubert* motion on this ground, and limits Mr. Kinrich's testimony.  Mr. Kinrich may not opine on an affirmative theory of damages and shall be limited to rebutting Mr. Persechini's damages testimony by offering opinions regarding the economic unreasonableness of Mr. Persechini's damage opinions, to the extent that any of those opinions remain admissible.

## V.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendants' motion as to Mr. Sander is GRANTED-IN-PART and DENIED-IN-
     PART.

(2) Defendants' motion as to Mr. Garrie is GRANTED-IN-PART and DENIED-IN-PART.

(3) Defendants' motion as to Dr. Parikh is DENIED.

(4) Defendants' motion as to Mr. Persechini is GRANTED-IN-PART and DENIED-IN-PART.

(5) Plaintiff's motion as to Mr. Rucinski is DENIED.

(6) Plaintiff's motion as to Ms. Shapiro is GRANTED-IN-PART and DENIED-IN-PART.

(7) Plaintiff's motion as to Dr. Swain is DENIED.

(8) Plaintiff's *Daubert* motion and motion in limine as to Mr. Kinrich are GRANTED-IN-PART and DENIED-IN-PART.  Per the Court's standing order, each side is limited to five motions in limine.  *See* Standing Order re Civil Cases § IV.A.2.  This motion having been adjudicated, Plaintiff may file up to four additional motions in limine.

Dated:  November 17, 2025

BETH LABSON FREEMAN
United States District Judge