UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| NICKY LAATZ, et al., | ) | |
| | ) | No.  5:22-CV-04844-BLF-VKD |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | October 30, 2025 |
| | ) | |
| ZAZZLE, INC., and MOHAMED ALKHATIB, | ) | |
| | ) | |
|      Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ZAZZLE, INC., | ) | |
| | ) | |
|      Counter-Claimant, | ) | |
| | ) | San Jose, California |
| v. | ) | |
| | ) | |
| NICKY LAATZ, | ) | |
| | ) | |
|      Counter-Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

(Daubert Motions)

BEFORE THE HONORABLE BETH LABSON FREEMAN, DISTRICT JUDGE

COURT REPORTER:          AMANDA M. LeGORE
                         RDR, CRR, CRC, FCRR, CACSR
                         U.S. District Court
                         333 West Broadway, Suite 420
                         San Diego, CA 92101
                         amanda_legore@casd.uscourts.gov

APPEARANCES:

FOR THE PLAINTIFF:        STEPHEN STEINBERG
                         CASEY MATHEWS
                         CHAD DeVEAUX
                         Bartko Pavia LLP
                         1100 Sansome Street
                         San Francisco, CA  94111
                         (415)291-4523
                         ssteinberg@bartkopavia.com
                         cmathews@bartkopavia.com
                         cdeveaux@bartkopavia.com


FOR THE DEFENDANTS:       DANIEL POSNER
                         THOMAS NOLAN III
                         Quinn Emanuel Trial Lawyers
                         865 S. Figueroa Street, 10th Floor
                         Los Angeles, CA  90017
                         (213)443-3220
                         danposner@quinnemanuel.com
                         thomasnolan@quinnemanuel.com

(Thursday, October 30, 2025; 11:30 a.m.)


P R O C E E D I N G S


THE COURT:  -- theory here or claim.  I have some concern about that, and we need to talk about it.

I also -- I'm interested in understanding what Mr. Persechini's foundation is for applying the $14 amount to every user who theoretically had access to Blooming Elegant. That's the ▮▮▮▮▮▮▮.  And it may be that that's just a -- he's just going to assume, if the jury finds liability for that, then this would be the -- the outcome of damages.  And if that's the answer, I'm ready to move on.

But I don't -- I want to just confirm:  He's not the witness who will give the testimony as to why the full amount of the license should be assessed for -- at that level, where it's just merely being able to access Blooming Elegant in the design tool but without regard to whether it was -- it was actually used.  So I need to know more about that.

I also have concerns about how Mr. Persechini used the results of the survey.  And, here, it's primarily the 54 percent number.  I -- there, I -- he's reading the -- he's reading the survey.  But applying it, in the way he does, I don't think has any foundation.  He just accepts it as the God's honest truth.  That 54 percent of these Zazzle users have

used Blooming Elegant at least once.  And he extrapolates that 54 percent of the ███████ have used it at least once.  And I just don't know where that comes from, 11 (inaudible).  Borne out at all.  So I want to know more about that.

So there's -- there's just a lot here, and I want to -- I want to stop at those comments.

I'm going to turn to Zazzle for your argument.  It's your motion here.

Who's presenting that?  Mr. Nolan?

THE COURT:  Can we turn this camera off here?  Can we turn this off?

Okay.  Are we ready?  Have we got it?  Thanks.

ATTORNEY NOLAN:  Thomas Nolan for the defense, your Honor.

I want to address further the disgorgement remedy.  Of course, we agree with that.  (Indiscernible) papers about that.

So let me start with your three comments first, in order. First, is that the (indiscernible) against *Wilder* case implied in fact contract theory.  As your Honor recognizes, implied in fact contract was not pled, not argued.

Plaintiff has maintained, from the very beginning, this is an express contract, the license that they led and breached. (Indiscernible) summary -- summary judgment on that.  We -- we briefed the other side of that.  So there's -- so their implied in fact contact idea is not part of the case.

Designating as well -- there also is a very inapplicable principal (indiscernible) case.  As your Honor knows, it's from the 1950s.  It's -- *Wilder*, is *Billy Wilder*.

THE COURT:  (Laughing.)  What was the movie?  Now that I didn't -- (laughing.)

ATTORNEY NOLAN:  I don't remember the name of the -- the -- the -- the facts were Mr. Disney called Paramount Studios and asked to speak to Mr. Wilder, and got his secretary on the phone.  And the secretary says to him, "Unfortunately, things are paramount."  And all parties agreed that there were -- there was no contract.  (Indiscernible.)  There was no contract.  There was no copyright.  What was submitted was an idea.  (Indiscernible) idea.  And Paramount went on to make a picture that was related to the idea.

So.  The Supreme Court of California says that there's an implied in fact -- it was an implied contract in that situation.  (Indiscernible) not applicable here.  Plaintiff says there is a contract.  There is no (indiscernible) in the case.  Categorically, it's not an applicable theory of law.

The -- there's also no --

THE COURT:  I don't actually think it matters.  Because the -- the plaintiffs will be -- their job is to prove that your client breached the contract.  And they are alleging, I guess, at the outset -- at the outside, ▮▮▮▮▮▮ separate breaches.  And that each breach is worth $14.

Isn't that basically what you're saying?

UNIDENTIFIED SPEAKER:  Your Honor, would you like me to approach?

THE COURT:  No.  You can just say yes or no.  Isn't that basically what you're arguing?

UNIDENTIFIED SPEAKER:  Not quite.  It's not ▮▮▮▮▮ separate breaches.  The breaches are the variety of actions that ultimately led to this font trio being available to and used by all of these people.  And how do you measure that.  The price is set by the license itself.  There's a number of breaches that ultimately led to that result.  Right?  Including putting it up on servers; making it available -- in part, the tool; putting it on a shared drive, et cetera.  And, ultimately, that leads to this number of users.

THE COURT:  All right.  So -- thank you.

So, Mr. Nolan, I guess we have to focus on what is -- Mr. Persechini's job is to simply take the ▮▮▮▮▮ and apply it.  He didn't.  He's not vouching for it being correct as a theory of liability.

ATTORNEY NOLAN:  I think that's largely true, your Honor.  I think my understanding, though, of what Mr. Persechini is doing is saying -- he says -- he says in his report and he said in his deposition that the plaintiffs gave him a, quote, framework --

THE COURT:  Um-hmm.

ATTORNEY NOLAN:  -- to evaluate damages.  And this is the framework.  And then he just does arithmetic.  Or he takes that framework and says it's 14 times the number -- (indiscernible) number --

THE COURT:  And that's what he can do if he has a foundation for his numbers.  But I'm not really concerned about -- in his -- he comes up with -- he's the one who comes up with the $14.  And you don't actually argue that that's the -- on a license that Ms. Laatz sells for Blooming Elegant, that's what she takes home?

ATTORNEY NOLAN:  We don't have a basis to contest --

THE COURT:  Right.

ATTORNEY NOLAN:  -- to contest that.  The license is $20.  And she makes representations about what her take home is -- from that is.  But the 14 -- we're not arguing with the fourteen-dollar --

THE COURT:  Right.

ATTORNEY NOLAN:  -- figure.  It's the other number that is subject of debate.

And among the concerns of the ██████████ number are that Mr. Persechini -- counsel just verified this is the case -- isn't really being analytical about those are the kinds of breaches that we have to establish to establish the number.  Right?  They're really saying that to establish any kind of breach at all here -- whether it's for ████████ people or 100

people or observers, then we get to have that big number. That's really the concern of it. Right? Is that -- that there is no basis on the license to say that a -- $14 should have to be paid for every user of the website who went to the design tool any time they did or did not use the font. Right? There's no basis in the record for that. There's no basis for an express contract, and there's no basis for implied in fact contract to do that either.

So that's -- that's the real concern. Is that if you take (indiscernible).

THE COURT: So I have so many concerns with the -- what I'll call the access theory of breach. As I understand it, it would be like me going into Macy's and trying on a dress, but being -- but being -- but the owner of the -- the watches gets to collect a fee because I walk -- I was in the store.

ATTORNEY NOLAN: That's right. That's right. Or if you buy a ticket to the Met, you look at one painting, you have to pay a license to look at every single painting of the entire Met. Right? It just -- it doesn't follow -- one doesn't follow from the other. No one in the history of the font industry has ever entered into a license for that. No one would ever pay for a license for that situation. Right?

It's just -- it's just (indiscernible) --

THE COURT: Well, you could -- you wouldn't pay for a

per viewer license for that experience or lack of experience.

So -- I'll get to that with Mr. Steinberg.

I -- what I've wrestled with here is whether the answer to that question is a damages analysis or a liability analysis. That's what I'm struggling with.

ATTORNEY NOLAN:  I think it's both.  Right?  It shouldn't be both, is what our position would be.

It's -- you have to accept the -- the -- the -- for that ████████ figure to be relevant at all, then there would have to be liability for all of ████████ people.

THE COURT:  Right.

ATTORNEY NOLAN:  There would have to be.

THE COURT:  So that's -- that's -- so what I'm -- I don't have the answer.  I'm really struggling with this.

If all Mr. Persechini is doing is running the arithmetic -- which is fine.  And we need him.  And he does the extrapolations, and that's fine too.  You can cross-examine him on them.  But that's all fine.

The -- whether access to Blooming Elegant, regardless of whether it was actually viewed, I think, is a liability question.

ATTORNEY NOLAN:  It's certainly not a damages expert question.

THE COURT:  Right.

ATTORNEY NOLAN:  Mr. Persechini does not get to say

that is -- that there's liability for that.

THE COURT:  And I don't think he's the one who gets to say the amount -- I don't know who does.  Says, well, if there was a breach by means of putting it on the servers and making it available -- if the jury says, yes, that was a breach, then it seems that it's still a liability issue as to the nature of the breach.  Is it one breach per server?  Is it one breach per laptop?  Or is it one breach per user to the design tool?  It's -- but I don't -- I don't have a clear answer.

And the reason I'm struggling with this is that this is not a summary judgment motion here today.  And so I need to have a clear -- we all need to have it clear in our minds what is liability and what is simply rolling out the damages that would flow.

The jury is going to decide liability.  I'm looking at whether the expert has -- he is certainly qualified.  Whether he has a foundation for the numbers that he provides to the jury -- and I'm not -- I'll trying to figure out how much he's biting off that goes into what I think may belong in the liability bucket.

ATTORNEY NOLAN:  Yeah.  That's a -- a fair criticism, which we -- which we have -- which we have struggled with --

THE COURT:  Sure.

ATTORNEY NOLAN:  -- as well, your Honor.  Is where does this ███████████ number come from?  And how do

you -- how do you reason your way through that?

     To the extent that Mr. Persechini is just doing arithmetic, 14 times the number --

          THE COURT:  Right.

          ATTORNEY NOLAN:  -- he is an economist.  He's a qualified economist.  We're not challenging his qualifications as an economist.  You don't need an economist to do that math.  Just a calculator.

          THE COURT:  Okay.

          ATTORNEY NOLAN:  (Indiscernible) whether you're entitled to do it or not.

          THE COURT:  But we'll use an expert to do that because that's reasonable for the jury.

          ATTORNEY NOLAN:  Right.  And the -- the concern is that as -- (indiscernible) you obviously read (indiscernible) in great detail.  Right?

          THE COURT:  Yeah.

          ATTORNEY NOLAN:  And much of it reads as a brief.  Right?

          THE COURT:  It does.

          ATTORNEY NOLAN:  Here's case law that -- from which I will extrapolate a framework.  Right?  Which yields my arithmetic.

          THE COURT:  Yeah.

          ATTORNEY NOLAN:  Right?

So he doesn't get to do that.

THE COURT:  No.

ATTORNEY NOLAN:  He doesn't get to say that this is the framework that applies based on the California law.  And in -- in our view, egregious misallocation of (indiscernible) against *Wilder*.  And it's -- it's somewhat limited.  But -- but also distinguishable and inapplicable precedent -- or progeny.  So he doesn't get to do the lawyer's job.

THE COURT:  Right.

ATTORNEY NOLAN:  And the -- the concern with allowing him to just say this is the arithmetic -- right? -- is that he doesn't have a basis to say that that arithmetic applies to the facts of the case.  Which isn't a basis to say that ███████ people, who may or may not have accessed the design tool, (indiscernible) didn't look at a watch, didn't look at a dress, or the other way around -- right? -- that -- that there should be a $14 license fee to apply to each of those people.  There's no basis in the record, at all, for that conclusion.

THE COURT:  So I -- and that's -- I'm going to -- I'll get to Mr. Steinberg in a minute.

I don't understand how we get to the $14 per design tool user at all.

I -- I understand -- I -- and the jury will decide whether they agree with a sold products with Blooming Elegant.  That's -- that's fine.  I mean, that's -- that's -- that's in a

realm that is reasonable for the jury to grapple with.

I don't understand the pending designs that's my -- still my analogy.  I'm in Macy's.  I go upstairs and try on a pair of jeans.  I say, "Oh, those look ugly," and I put them back on the shelf.  That's what a pending design is.  And -- and then I go on and do something else.

I -- you know, this -- you know, in Macy's, it's a unique item for sale.  And once it's sold, it's gone.  In the font software, there's an infinite number.  There's no shortage of opportunities to copy it.  But I -- so even pending designs is -- is more understandable because someone's actually eyes on Blooming Elegant.

This other theory of I could have had eyes on it but I didn't, is just -- I -- I am struggling with whether I can exclude it from the trial.  And if I can't exclude it from the trial, whether I am going to bifurcate this.

Because I need a jury to say whether that's a breach, making access available.  And -- so, we'll need to talk about that.

But this is -- this is a -- this is a problem, I think.  And I -- you know, I said it in my summary judgment order.  I -- I denied the summary judgment on breach of contract because there was at least a dispute of evidence on the issue of placing the Blooming Elegant software onto the servers.  And I -- I indicated I had doubt about the other theories.  That's

as far as I went.  The claim survived.  And I haven't ruled on the others.  But my concern has not gone away.

Judge DeMarchi's concern was not a firm order that this was -- that it was not an issue for trial.  But she, too, had concerns about this and limited discovery based on it.

So, anyway, go ahead.  I -- we have to solve this -- this problem.

So I don't know how to -- I don't know what you're asking me to exclude from Mr. Persechini, though.

ATTORNEY NOLAN:  We're asking you to -- to exclude those formulas.  Right?  The 14 -- $14 times those -- the ▉▉▉▉▉▉▉ and the ▉▉▉▉▉▉ number.  Those numbers that, obviously, plaintiffs chose because they're really big.  Right?  But which have no relation to the contract or any breach of the contract that they pled or established.

THE COURT:  But if it's just the formula and I don't -- I either instruct the jury, "Only if you find liability for the access theory, do you consider this," I could do that.  But it's -- I don't want him to be the proponent of that being the measure of damages.  That's what I'm troubled by.

So show me, in the report, and I -- get through all of the copyright stuff that we're done with.  Let's see.  Here's a nice index.  You did a nice job.  So I guess this is starting at Section 7, on page 29.

We only have a couple of minutes until we take our break.

He seems to say, at -- I'm looking at -- at Section 7.1, starting with paragraph 59.  (Pause, referring.)

He says, "I understand that for breach of contract, an alternative remedy is that Zazzle is liable to pay for each user to whom Zazzle provided unlicensed access to Blooming Elegant."

So that's a pretty typical statement for a damages expert, to say, I'm told that if there's liability for this, that I should then do my work.

So then we go back to Section 5, this framework.  He again says, "I understand" -- paragraph 20 -- "that by purchasing a single seat license and then providing Zazzle's users access to those fonts in an unlicensed manner, Zazzle is liable to pay Nicky Laatz for each user to whom Zazzle provided unlicensed access."

So, again, he's not -- he's not putting forth that he's the proponent of it.  He's being told that that is what liability means.

I -- am I -- so that's where I think he's limited his own testimony, which is appropriate for a damages expert.  He's -- he's saying, this is -- these -- this is what I was told to presume.  And a jury will decide this.  And this is what -- why I believe this goes into the liability phase of a trial.

ATTORNEY NOLAN:  Your Honor, I think that's -- I think

I agree with that.

THE COURT:  Okay.

ATTORNEY NOLAN:  Right?  I think that if what Mr. Persechini is saying is if there is liability for this category of activity --

THE COURT:  For -- for -- liability for each --

ATTORNEY NOLAN:  One to one.

THE COURT:  -- each user who had access?  Yeah.

ATTORNEY NOLAN:  If what he's saying is on a retail, one by one (indiscernible) --

THE COURT:  Um-hmm.  Yep.

ATTORNEY NOLAN:  If -- if what I'm supposed to do, under the law, is multiply 14 times the number of people who did this thing for which (indiscernible) liability, then the result of that is X dollars.  In this case, ▮▮▮▮▮▮▮.  Right?  If that's all that he is saying, then I -- I -- I don't think we would object to the math.  Right?

THE COURT:  Okay.  So --

ATTORNEY NOLAN:  (Indiscernible.)  Right.

THE COURT:  Because --

ATTORNEY NOLAN:  The worry is that he's -- that he's trying to carry water for both things.  Right?

THE COURT:  And he won't.

So then -- you're right.  In paragraph 21 through 29, he gives me his legal brief -- which, of course, no one's going

to -- he's not going to present any of that.  And that's just noise to me.  It's -- I read it in the lawyer's briefs.  I just don't read it here.

But I'm focusing on paragraph 20.  And if I then go from that and then look again at his -- that's all he says about breach of contract damages in his framework.  And the rest of it is on other theories.

So then we go to the calculations section for the -- and this is where we're looking at -- and, again, his extrapolations.  You may disagree with them, but he knows -- he's qualified to do it.  He gives me his foundation for those.

I have -- (pause, referring.)  And then he gives me his -- I don't know where else -- what else we've got here.  I think we -- we then go on to his fallback, based on Dr. Parikh's 54 percent number.  That's where I have some concerns.

ATTORNEY NOLAN:  Yes, yes, your Honor.  You foreshadow your concerns.  Of course, we share it.  Reflected in our brief.  Is that it's not (indiscernible) survey is subject to challenge for reasons that Mr. Posner went through in great detail.  Right?

And -- and the -- it is not extrapolatable -- as a matter of logic, as a matter of law, as a matter of expert reliability -- from that survey to general behavior on -- it just doesn't follow.  (Indiscernible.)

THE COURT:  So let's make sure we analyze this.

I've ruled that Dr. Parikh's survey will be in evidence, subject to cross-examination.

And so -- and I think you wrote your brief that way, as well.

ATTORNEY NOLAN:  Yeah.

THE COURT:  So the -- she did a survey for purposes of determining importance.  And I'm blanking on the other word that she used.  (Pause.)  Importance -- was it important and popular.

So she took 54 percent of surveyed designers who had used it at least once, and said, "That shows me -- that further supports that it's important and popular."  That's how she used it.

She didn't use it as a measure of damages.  I think that's clear.

ATTORNEY NOLAN:  Absolutely clear.

THE COURT:  Okay.  So Mr. Persechini does.  I -- and I guess Mr. Steinberg will have to answer this after our break.  I -- this is a big jump there.  That's my concern.  That's your concern.

ATTORNEY NOLAN:  Yeah.  That's our point.  Is that it's -- it's -- it's a bridge far too far.  The survey was of, essentially, professional designers.  Right?  And it was designed to elicit their responses about how popular and important the font was to a professional designer.

And what Mr. Persechini is doing, effectively, is extrapolating from that.  A survey of very limited number of people, but very specific category, very particular, specialized kind of knowledge and experience with fonts, and extrapolating that to every single user who walked into --

THE COURT:  So he thought -- I -- and, again, for Mr. Steinberg, he doesn't explain why he adopted that wholesale.

ATTORNEY NOLAN:  He just takes the number.  He takes the number as -- as -- as a percentage.

THE COURT:  I think it's -- I think it's in -- his use for it, in my view, is inconsistent with the -- the purpose and use of the question in the survey that Dr. Parikh conducted.

Because she took -- it is a specific number, but she applied it for these generalized terms of importance and popularity and not for any specific number.

He doesn't tell me why he took that number to the bank, from his perspective.  He's reading it.  That's -- that's where I'm missing the foundation.

ATTORNEY NOLAN:  Right.  And I think if you look at this -- at -- his -- his testimony in deposition, Mr. Persechini largely agreed with that.  He said --

THE COURT:  He just took it wholesale?

ATTORNEY NOLAN:  Yeah.  I took the number.  The number was given to me.  I took the number.  I applied it.  I ran my

arithmetic on the number.  I'm not making any value judgments about the survey, about what it shows, about what it reflects.

THE COURT:  No.

ATTORNEY NOLAN:  I'm not the person who does that.

THE COURT:  Okay.  So I apologize that we need to break.  We -- we have a court function that I need to attend.

So let's come back at 1:15.  And we are not going to have a court reporter.  Thank you, madam court reporter, for your assistance.  We will record it.

And you can get a transcript.  But that's the best I can do.

But I -- I think we have a long way to go, and we're going to finish today.  So it will give you over lunch.  It will give you the opportunity to -- to think about how the next half will go.  I think it's quicker.  But famous last words.  Right?

All right.  Thank you all.  I'll see you at 1:15.

UNIDENTIFIED SPEAKER:  Your Honor, may we leave items in the courtroom during the break?

THE COURT:  Yes.  We'll lock the courtroom.

UNIDENTIFIED SPEAKER:  Thank you.

THE CLERK:  Court is now in recess.

(Recess taken.)

--oOo--

I certify, by signing below, that the foregoing is a correct stenographic transcript, to the best of my ability, of the digital recording of the audio proceedings had in the above-entitled matter this 10th day of November, 2025.  A transcript without an original signature or conformed signature is not certified.  I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/S/ Amanda M. LeGore

_____

AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290