QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

WILLIAM F. PATRY (admitted pro hac vice)
*williampatry@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

ANDREW SCHAPIRO (admitted pro hac vice)
*andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443 3100

Attorneys for Defendants Zazzle Inc. and Mohamad Alkhatib

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants.<br><br>ZAZZLE INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>NICKY LAATZ,<br><br>Counter-Defendant. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO THE CREATIVE MARKET FREQUENTLY ASKED QUESTIONS PAGE**<br><br>Date:  January 22, 2026<br>Time:  1:30 p.m.<br>Courtroom:  1<br>Judge:  Hon. Beth Labson Freeman<br>Trial Date: February 17, 2026 |

Case No. 5:22-cv-04844-BLF-VKD

**INTRODUCTION**

Defendants Zazzle Inc. ("Zazzle") and Mohamed Alkhatib ("Defendants") respectfully move to exclude from trial evidence and argument concerning the Creative Market Frequently Asked Questions ("FAQ") page, including (a) the FAQ itself (Declaration of Thomas Nolan, filed concurrently, at Ex. 1, Trial Ex. 19[1]); (b) any deposition or trial testimony from Zazzle witnesses Plaintiff may call and question about whether and when they read the FAQ; and (c) evidence and argument from any witness regarding what the FAQ supposedly means or how it informed the meaning of the BE License. The sole remaining claim in the case is for breach of the BE License. After extensive litigation over what terms comprise the BE License, the Court held that the BE License consists of *only* the Creative Market Terms of Service ("TOS"), License Terms, and BE Offering Page, and does *not* include the terms of the FAQ. Dkt. 414 at 50-52. Plaintiff now seeks to circumvent the Court's ruling and introduce the FAQ at trial anyway. Evidence and argument about the FAQ would be irrelevant and likely to confuse and mislead the jury, and would waste time at trial by requiring the parties to relitigate an issue that the Court has already definitively resolved. The Court should exclude the FAQ and any testimony about it.

**ARGUMENT**

**I.    THE FAQ AND TESTIMONY REGARDING THE FAQ HAVE NO RELEVANCE BECAUSE THE COURT HAS ALREADY FOUND THAT THE FAQ IS NOT PART OF THE OPERATIVE LICENSE TERMS**

The Court has definitively resolved the FAQ's status. In its Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, the Court conducted an extensive analysis of whether Defendants assented to the FAQ, and concluded they did not. Dkt. 414 at 51. Specifically, the Court found that "Defendants have met their burden to prove that they did not

---

[1] Defendants submit the declaration of Thomas Nolan in support of Defendants' Motions in Limine Nos. 1 through 5, filed concurrently. Unless otherwise noted, all citations herein and in Defendants' Motions in Limine Nos. 2 through 5 to "Ex." refer to exhibits attached to the Nolan Declaration.

assent to the License FAQ" and that "[t]here is also no evidence indicating that Zazzle reviewed the License FAQ or was aware of its terms prior to purchasing the BE License." *Id*. at 50.

Evidence is admissible only if it is relevant to a material fact in dispute. Fed. R. Evid. 401, 402. The Court has ruled that the FAQ is not part of the BE License, and that Defendants did not assent to the FAQ or even view it before the license purchase. Dkt. 414 at 51-52. The FAQ thus binds no one, and has no bearing on whether Defendants breached the BE License. Testimony from Zazzle witnesses about whether they reviewed the FAQ is likewise wholly irrelevant—if the FAQ itself has no legal effect, whether Zazzle employees read it is immaterial. Similarly, Plaintiff's witnesses' interpretation of the FAQ is irrelevant, as the FAQ is not a binding contract term subject to interpretation or capable of being breached. The only relevant contract terms are the terms that are actually in the BE License, to which Defendants actually did assent. Dkt. 414 at 51-52. The Court has excluded the FAQ from the BE License, and should prevent this obvious end-run around its heavily litigated and carefully considered ruling by excluding references to the FAQ from trial as well.

## II.    THE FAQ IS INADMISSIBLE UNDER BOTH THE PAROL EVIDENCE RULE AND THE EXTRINSIC EVIDENCE DOCTRINE

The FAQ is inadmissible under both the parol evidence rule and the extrinsic evidence doctrine. The parol evidence rule bars prior or contemporaneous agreements that "add to, detract from, or vary the terms of a written contract." *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293 (9th Cir. 2001), as amended (June 29, 2001) (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*., 69 Cal. 2d 33, 40 (1968)). The Court has already determined that the BE License consists solely of the TOS, License Terms, and BE Offering Page—and that the FAQ is not part of that agreement. Dkt. 414 at 50-52. Admitting the FAQ to supplement the BE License's terms would violate this rule.

Even if the FAQ were not barred as parol evidence, it would be inadmissible as extrinsic evidence offered for contract interpretation. Under California law, extrinsic evidence may be used to interpret contract language only when two conditions are satisfied. *First*, after preliminary consideration of all relevant evidence, the court must determine as a threshold matter of law that the

language is "reasonably susceptible" to the proffered interpretation.  *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979).  *Second*, the extrinsic evidence must reflect "the circumstances surrounding the making of the agreement" so as to "place [the court] in the same situation in which the parties found themselves ***at the time of contracting***."  *Pac. Gas*, 69 Cal. 2d at 40 (emphasis added).

The FAQ fails both requirements.  No party contends the BE License is ambiguous, nor has the Court found its terms fairly susceptible to competing interpretations.  And even if it were ambiguous, the FAQ could not illuminate the circumstances at contract formation because the Court has already determined "[t]here is also no evidence indicating that Zazzle reviewed the License FAQ or was aware of its terms prior to purchasing the BE License."  Dkt. 414 at 50.  Evidence unknown to one contracting party cannot illuminate "the circumstances surrounding the making of the agreement" or reveal that party's understanding at the time of contracting.  The FAQ is thus inadmissible for interpretive purposes as well.

## III.    THE FAQ AND RELATED EVIDENCE ARE UNDULY PREJUDICIAL, RISK CONFUSING THE JURY, AND WOULD WASTE TIME

Even if the FAQ had any probative value, multiple risks of prejudice to Defendants from admitting it and testimony relating to it at trial substantially outweigh that probative value and preclude admission of such evidence under Federal Rule of Evidence 403.

***First***, introducing the FAQ or testimony about the FAQ would confuse and mislead the jury about the operative contract terms and the meaning of those terms.  Plaintiff seeks to introduce deposition testimony from several Zazzle witnesses, including Mohamed Alkhatib and Monica McGhie, in which Plaintiff's counsel read aloud FAQ language and asked witnesses to interpret terms from a document they had never seen before contracting.  *See, e.g.*, Ex. 40, M. Alkhatib Tr. 231:14-232:16; 233:17-235:2; Ex. 41, M. McGhie Tr. 51:4-53:21.

Jurors who hear this type of testimony or review the FAQ may reasonably, but erroneously, believe that the FAQ provides additional license terms binding on Defendants, or that they should consider the FAQ in interpreting the BE License; indeed, those are the exact reasons Plaintiff wishes to introduce the FAQ.  Either outcome could lead the jury to base its breach or damages

determinations on extra-contractual terms that the Court has already held are not binding and of which Defendants had no knowledge at the time of contract formation. *See Chinacast Educ. Corp. v. Chen Zhou Guo*, No. 2:15-cv-05475-AB-E, 2018 WL 7448913, at *4 (C.D. Cal. Dec. 28, 2018) (recognizing that courts may not admit extrinsic evidence to "add to, detract from, or vary the terms of a written contract").

**Second**, admitting the FAQ and related deposition testimony—such as whether Zazzle witnesses read the FAQ before purchasing the BE License or whether they would have acted differently had they read it—invites the jury to find against Defendants based on a perception of wrongdoing having nothing to do with whether Defendants breached the actual terms of the BE License. *See Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-08102 MMM (EX), 2013 WL 12125747, at *10 (C.D. Cal. Aug. 7, 2013) (excluding evidence where jury might be "impermissibly influenced" to find for a party on issues no longer before the jury). The risk is not speculative: Plaintiff's designated deposition testimony demonstrates a deliberate strategy to portray Defendants' witnesses as insufficiently careful or diligent.

Plaintiff seeks to admit deposition testimony from at least five Zazzle witnesses, including Mr. Alkhatib, Ms. McGhie, Jeff Beaver, Liana Larson, and Katrina Liu, concerning whether these witnesses reviewed the FAQ, their reasons for not reviewing it, the extent of their diligence in reviewing such materials, and their understanding of the FAQ's terms. By way of example, Plaintiff asked Mr. Alkhatib whether he "wish[ed] Ms. McGhie had informed [him]" about the FAQ prior to Zazzle's purchase of BE (Ex. 40, M. Alkhatib Tr. 229:18-230:4) and whether he would have purchased BE if he had read it. *Id*. at 240:19-24. Plaintiff asked Mr. Beaver whether he thought "it would have been important for someone at Zazzle to click on [the] link and review [the FAQ] page before buying the license." *See* Ex. 42, J. Beaver Tr. 35:4-36:6. Most tellingly, Plaintiff subjected Ms. McGhie to extensive questioning designed to elicit admissions that she was not "careful and diligent" and that reviewing the FAQ would have been "the proper thing to do." Ex. 41, M. McGhie Tr. 56:25-58:19. Plaintiff pressed Ms. McGhie on her "pattern and practice" of clicking on links on web pages and familiarity with FAQs generally (*id*. at 29:21-30:5; 50:9-51:3), and whether she considered herself "a careful and diligent person." *Id*. at 56:25-58:19. This type of testimony is not

relevant to whether Defendants breached the BE License, but it is highly prejudicial and inadmissible under Rule 403.

*Third*, permitting this evidence and argument will waste time and require relitigating before a jury what this Court has already found: that no Zazzle employee reviewed or knew of the FAQ before purchasing the BE License. Dkt. 414 at 51-52. Rule 403 exists to prevent precisely this kind of redundant, "do-over" litigation. *See Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1432-33 (9th Cir. 1986) (affirming exclusion under Rule 403 where probative value was outweighed by time consumption and jury confusion over issues no longer in the case). Because the dangers of confusion, unfair prejudice, and time-wasting substantially outweigh any marginal probative value, the Court should exclude this evidence.

### CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court exclude at trial the FAQ itself, and all evidence, testimony, and argument concerning the FAQ, including its meaning, whether Defendants read it, and any suggestion that it defines or informs the meaning of the terms of the BE License.

DATED: January 8, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Andrew H. Schapiro*
    Andrew H. Schapiro

*Attorneys for Defendants*
*Zazzle Inc. and Mohamed Alkhatib*