QUINN EMANUEL URQUHART & SULLIVAN, LLP
RACHEL HERRICK KASSABIAN (Bar No. 191060)
*rachelkassabian@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

ANDREW SCHAPIRO (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*

MIRANDA M. HULKA (admitted *pro hac vice*)
*mirandahulka@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

DANIEL C. POSNER (Bar No. 232009)
*danposner@quinnemanuel.com*
THOMAS D. NOLAN (Bar No. 238213)
*thomasnolan@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

WILLIAM F. PATRY (admitted *pro hac vice*)
*williampatry@quinnemanuel.com*
KATY AKOPJAN (admitted *pro hac vice*)
*katyakopjan@quinnemanuel.com*
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Defendants Zazzle Inc. and Mohamad Alkhatib

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICKY LAATZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE INC. and MOHAMED ALKHATIB,<br><br>Defendants. | Case No. 5:22-cv-04844-BLF-VKD<br><br>**DEFENDANT ZAZZLE INC.'S OPPOSITION TO MOTION FOR RELIEF FROM THE SCHEDULING ORDER AND LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| ZAZZLE INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>NICKY LAATZ,<br><br>Counter-Defendant. | Date:  January 22, 2026<br>Time:  1:30 a.m.<br>Courtroom:  1<br>Judge:  Hon. Beth Labson Freeman<br><br>Trial Date: February 17, 2026 |

Case No. 5:22-cv-04844-BLF-VKD

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND...........................................................................................................................2

ARGUMENT ................................................................................................................................3

I.      NO GOOD CAUSE EXISTS FOR THIS LATE AMENDMENT TO THE
        SCHEDULING ORDER....................................................................................................3

        A.      Plaintiff's Delay In Seeking To Assert A Legal Theory Available Since The
                Inception Of The Case Demonstrates A Lack Of Diligence ....................................4

        B.      Plaintiff's Six-Week Delay From The Purported "Trigger" Also
                Demonstrates A Lack Of Diligence ........................................................................5

II.     PLAINTIFF HAS NOT JUSTIFIED AMENDMENT UNDER RULE 15 ..........................6

        A.      The Proposed Amendment Would Be Futile ...........................................................6

        B.      The Proposed Amendment Demonstrates Bad Faith ................................................8

        C.      Plaintiff Unduly Delayed In Seeking The Proposed Amendment ............................9

        D.      The Proposed Amendment Would Prejudice Zazzle ...............................................9

CONCLUSION ...........................................................................................................................10

Defendants Zazzle Inc. ("Zazzle") and Mohamed Alkhatib ("Defendants") submit this opposition to Plaintiff Nicky Laatz's ("Plaintiff") Motion For Relief From The Scheduling Order And Leave To File A Second Amended Complaint (Dkt. 510, "Motion").

**PRELIMINARY STATEMENT**

This Motion is Plaintiff's latest eleventh-hour attempt to revive a 100-million-dollar damages theory that the Court definitively foreclosed in its *Daubert* Order (Dkt. 486). From the beginning of the case, Plaintiff has asserted a claim for breach of an ***express, written contract***—the Blooming Elegant ("BE") License. Now, with discovery having closed months ago and trial just weeks away, Plaintiff moves to modify the scheduling order and amend her complaint to add a purported "***implied contract***" claim to the case, on the same subject matter as the BE License.

Plaintiff's tactics are equally extraordinary. Plaintiff has argued tirelessly that damages for breach of contract should be calculated by multiplying a supposedly per-user license cost of $14 by many millions of Zazzle users—including every user who merely accessed the Design Tool while the BE Trio was available on it, whether or not that user purchased a product or even viewed any text in the font. This calculation is unmoored from any evidence of "the value of that breach." *Daubert* Order at 21. Plaintiff's damages expert, Persechini, provided no economic analysis to support that value, and instead simply assumed that *Desny v. Wilder* provided that justification. *See* Oct. 30, 2025, 1:15 p.m. Tr. ("*Daubert* Transcript," Dkt. 507) at 7:11-18. But the Court confirmed, at length, that *Desny* does not "fill that analytical gap." *Daubert* Order at 20. Plaintiff still must provide admissible evidence to support that $14 valuation; *Desny* does not do that work for her.

Plaintiff has no such evidence. That is why she now seeks to twist the Court's clear rejection of a *Desny*-type damages theory into a supposed invitation to amend her complaint, so she can seek precisely the damages the Court ruled *Desny* does not support. In other words, because the BE License cannot support the inflated damages she seeks, Plaintiff wants to invent a new contract which provides, by supposed unwritten terms, that Zazzle must pay her a predetermined set fee per Zazzle user. This is, of course, not a different contract; it is an impermissible and twice-rejected measure of damages disguised as a new theory.

Nor is Plaintiff candid about the true goal of her requested amendment. Rather than

-1-

acknowledge that she seeks to reverse the *Daubert* Order, she employs a slew of misleading characterizations of the proposed amendment, including that it "simply formalizes" a theory that is in the case, Mot. at 2, and is merely a "clean-up" and "narrow clarification." *Id.* at 6, 8. Plaintiff also mischaracterizes both the Court's *Daubert* Order and its comments at the hearing. Far from inviting the present amendment, as Plaintiff falsely implies, the Court stated, as Plaintiff omits to mention, that ***"[i]t is too late in the proceedings for Plaintiff to reverse course and retroactively seek to assert a* Desny *claim when it was not previously pled*." *Daubert* Order at 20. And, remarkably, Plaintiff also uses her proposed amendment to attempt to reinsert into the case a disgorgement theory of damages that the Court explicitly dismissed, though she says nothing about this in her Motion. *See* Mot. Ex. B at ¶ 166. Plaintiff's proposed amendments are not in good faith.

Plaintiff's request to amend the scheduling order requires a showing of diligence. But the new theory she attempts to bring relies on no new facts and was fully available to her from the outset, defeating any claim of diligence. Her request to amend her pleading fails for multiple independent reasons. It was brought in bad faith; it was unduly delayed; and the required reopening of discovery and delay of trial will prejudice Zazzle. But perhaps most importantly, it is futile, as well-settled black-letter California law does not permit Plaintiff to bring express and implied contract claims related to the same subject matter. Plaintiff's attempt to argue that these contracts cover different subject matter is facially nonsensical. The Court should deny Plaintiff's motion.

## BACKGROUND

Plaintiff filed her First Amended Complaint ("FAC") on March 14, 2023, alleging, *inter alia*, that Zazzle breached an express, written license to use the BE Trio by permitting users to "access[] and use[] the fonts and the font software on Zazzle's website." Dkt. 82 at ¶ 218. At no point in the FAC did Plaintiff allege the existence of any alternative implied contract, or claim that Zazzle's alleged actions were anything other than a breach of the express license agreement.

After extensive discovery and summary judgment, Plaintiff's damages expert, Persechini, calculated damages "by multiplying a fixed $14 'license fee' . . . by various quantifications of Zazzle's customers." *Daubert* Order at 16. Defendants sought to exclude this opinion. At the October 30, 2025 hearing on the parties' *Daubert* motions, the Court questioned "why $14 per user

-2-

is the right valuation for the breach," to which Plaintiff's counsel responded, "that is the stated price." *Daubert* Transcript at 7:11-18. The Court expressed skepticism of this damages calculation, noting that "not all breaches have the same value" and that Persechini offered no explanation for "why the breach of providing access is worth $14." *Id.* at 12:3-8. Indeed, the Court characterized as "absurd" the notion that "the customer who uses Blooming Elegant and buys a product with it, causes the same damage to Nicky Laatz as the person who uses the design tool and never, never, never comes in contact with Blooming Elegant." *Id.* at 20:9-18. At no point during the *Daubert* hearing did the Court imply that this was a technical pleading defect; instead, it was a fundamental problem with Plaintiff's attempt to reach an inflated valuation of the harm she purportedly suffered.

On November 17, 2025, the Court issued the *Daubert* Order, ruling that Plaintiff "will need to establish the value of each breach" and may not simply have an expert "[m]ultiply[] $14 by a series of user populations." *Daubert* Order at 20. The Court also analyzed in detail Plaintiff's implied-in-fact contract theory, with a focus on *Desny v. Wilder*, 46 Cal. 2d 715, 736 (1956), which Plaintiff argued supported this damages calculation. The Court noted that "Plaintiff did not plead in her complaint a claim for breach of implied-in-fact contract," but far from inviting an amendment to correct any supposed pleading defect, the Court stated that "[i]t is too late in the proceedings for Plaintiff to reverse course and retroactively seek to assert a *Desny* claim when it was not previously pled." *Daubert* Order at 19-20. The *Daubert* Order makes clear that this is not a mere pleading deficiency; instead, a *Desny* claim is "a narrow, highly particularized theory of recovery" that does not apply here—where an express written contract existed—and would not justify liability for mere possible access to the BE Trio or the creation of pending designs. *Id.* at 19.

Plaintiff filed a motion styled as a "Motion for Clarification," Dkt. 491, in effect seeking reconsideration of this damages ruling. The Court denied it unequivocally on December 16, 2025. Dkt. 508. Plaintiff then filed this Motion to Amend.

## ARGUMENT

### I. NO GOOD CAUSE EXISTS FOR THIS LATE AMENDMENT TO THE SCHEDULING ORDER

Plaintiff fails to show "good cause" to modify the Scheduling Order on the eve of trial. A

pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This standard is designed to ensure that "at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, adv. comm. note (1983). This "good cause" inquiry "primarily considers the diligence of the party seeking the amendment" and requires a showing that the existing pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Plaintiff argues that her eleventh-hour amendment would not require any delay to the trial schedule or prejudice Zazzle. Those arguments are wrong, *infra* Section II.D, but they are beside the point. If the moving party was not diligent, "the inquiry should end." *Id.*; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Where a plaintiff is "aware of a possible theory but fail[s] to timely raise it or alternatively provide a good reason for not doing so, the court is unable to find that Plaintiff acted with diligence." *Gupta v. Int'l Bus. Machs. Corp.*, 2015 WL 9204348, at *2 (N.D. Cal. Dec. 17, 2015). This Court's inquiry need go no further than Plaintiff's demonstrated lack of diligence in pursuing a theory available to her since the inception of this case.

**A.      Plaintiff's Delay In Seeking To Assert A Legal Theory Available Since The Inception Of The Case Demonstrates A Lack Of Diligence**

Plaintiff argues her proposed amendment is proper because it is simply a new legal, rather than factual, theory. But the actual law cuts the other way: "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). The decision not to bring certain causes of action is a "tactical choice," and while later developments may change a plaintiff's tactical considerations as to which claims to bring, this does not constitute good cause or demonstrate diligence. *Id.*; *see also Gupta*, 2015 WL 9204348, at *2.

In her FAC in March 2023, Plaintiff did not allege—even in the alternative—that Zazzle entered into an implied-in-fact contract requiring payment for each user that Zazzle granted access to the BE Trio. Instead, she alleged only that Zazzle entered into an express contract for a limited use of the BE Trio, which she alleged Zazzle breached. Plaintiff concedes that her proposed

-4-                    Case No. 5:22-cv-04844-BLF-VKD

"implied-in-fact contract" theory reflects no new facts but rests only on facts alleged in the FAC. Mot. at 4. Nor does she argue that she discovered a previously unknown fact that might plausibly justify her failure to assert her implied contract theory in her original complaint or at least to amend her pleading within the Court-ordered deadline. Rather, Plaintiff simply made a tactical choice as to the claims she alleged, and now wishes to reverse that tactical choice to avoid the effect of unfavorable rulings by this Court. But because this newly pled theory was available to Plaintiff from the inception of the case, she cannot demonstrate that the Court's deadline to amend pleadings could not "reasonably [have been] met despite" her supposed diligence, *Johnson*, 975 F.2d at 609, and thus she cannot show she acted diligently in seeking to add her implied contract claim.

**B.      Plaintiff's Six-Week Delay From The Purported "Trigger" Also Demonstrates A Lack Of Diligence**

Even if this Court's *Daubert* Order had constituted a "trigger," making Plaintiff aware for the first time of the need to actually plead her key legal theory—and it did not—Plaintiff still failed to act diligently. With trial three months away and the Court's March 7, 2023 deadline to amend the pleadings long expired, time was of the essence. Instead of moving to amend as soon as the Court noted that she "did not plead in her complaint a claim for breach of implied-in-fact contract," *Daubert* Order at 19, Plaintiff delayed another six weeks—half the time remaining to trial.

Plaintiff seeks to excuse this delay by pointing to her Motion For Clarification (Dkt. 491), filed nine days after the *Daubert* Order. But there is a key disconnect here. Plaintiff argues, implausibly, that she learned from the *Daubert* Order that she had failed to plead the implied-in-fact contract theory she believed was always present in her case. Mot. at 5. But in her Motion for Clarification, Plaintiff did not seek clarification as to whether her implied-in-fact contract theory was encompassed in the existing pleadings or whether she needed to amend to assert it. Instead, Plaintiff sought clarification as to whether "she is permitted to present evidence, opinion, and argument to support obtaining as damages for Zazzle's breach the license price for individuals who actually used the BE Trio in a finalized design." Dkt. 491 at 3. That is, Plaintiff sought clarification only as to permissible evidence and argument on damages for her existing claim for breach of express contract, while taking no diligent action to press her implied-in-fact contract theory.

ZAZZLE'S OPPOSITION TO MOTION FOR RELIEF FROM THE SCHEDULING ORDER
AND LEAVE TO FILE A SECOND AMENDED COMPLAINT

Nor do Plaintiff's cited cases demonstrate that a "trigger" event can provide good cause to amend her pleadings to assert a previously available theory. *See* Mot. at 5. *Farnan* involved the affirmative defense of qualified immunity, which would not be waived even if it was never asserted in the pleadings, as a court may raise it *sua sponte*. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). And *Conceptus* involved claims which were asserted "well before the . . . deadline to amend the pleadings"—the extension was needed only to relabel "counterclaims in reply" as ordinary counterclaims, not to introduce new theories. *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 1460162, at *2 (N.D. Cal. Apr. 12, 2010).

Because Plaintiff fails to show "good cause," the Court should deny the Motion.

## II.    PLAINTIFF HAS NOT JUSTIFIED AMENDMENT UNDER RULE 15

The standard for leave to amend is liberal, but leave "is not to be granted automatically" and is committed to the Court's discretion. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The Court may deny leave for a variety of reasons, including "undue delay," "bad faith," "undue prejudice to the opposing party," and "futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Each of these factors supports the denial of Plaintiff's Motion.

### A.    The Proposed Amendment Would Be Futile

A court may deny leave to amend where the proposed amendment would not survive a motion to dismiss under Rule 12(b)(6). *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009). Here, Plaintiff's proposed claim for breach of an implied-in-fact contract is futile as a matter of law because an express written agreement already covers the same subject matter.

California law is clear: "***There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time***." *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citing *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)) (emphasis added). Where an express contract defines the parties' obligations, an implied-in-fact claim is subject to dismissal. *See, e.g.*, *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017). An implied contract claim is particularly suspect where the plaintiff brings it "only after trying unsuccessfully . . . to enforce various express contracts." *California Med. Ass'n, Inc. v. Aetna*

*U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 173 (2001).  Here too, Plaintiff turns to an implied contract theory only after the Court rejected her attempts to recover the exorbitant damages she seeks under her express contract theory.

Plaintiff's only response is the incredible claim that the express contract and the purported implied-in-fact contract concern different subject matter.  Mot. at 10.  This is facially false.  Both "contracts" concern a license for the BE Trio—and thus cover precisely the same "subject matter."  And according to Plaintiff, the express contract required a $20 fee for a license "limited to one single user," which Zazzle breached by allowing individuals to "access and use" the BE Trio online.  Mot. Ex. B at ¶¶ 160, 163.  In supposed contrast, Plaintiff characterizes the newly invented implied-in-fact contract as an "agreement to pay the standard license fee of $20.00 . . . for each of those additional users/seats."  *Id.* at ¶ 174.  That price is derived from the "terms of the standard license"— that is, the supposed "implied" contract derives its key term ***from the express contract***.  *Id.* at ¶ 170. Similarly, the very conduct that allegedly breached the express contract—Zazzle's "act of making the Blooming Elegant Trio and Blooming Elegant Software available to other users"—purportedly constituted Zazzle's acceptance of the implied contract.  *Id.* at ¶ 169.  Plaintiff offers no authority for the absurd claim that a written contract may provide the terms for both an express contract and an implied contract on purportedly different subject matters, or that any breach of an express contract may simultaneously constitute an acceptance of an implied contract.

Courts in this Circuit apply the "same subject matter" test broadly, foreclosing Plaintiff's attempt to split hairs.  In *Letizia*, advertisers argued that Facebook's express advertising contracts did not define two particular metrics, and asserted an implied contract claim on the ground that those metrics were misleading.  *Letizia*, 267 F. Supp. 3d at 1240.  The court rejected this argument, noting that the contracts cover the subject matter of Facebook's advertising services.  *Id.* at 1253.

The court took an even broader view in *O'Connor v. Uber Techs., Inc.*, where passengers claimed that Uber's advertising created an implied contract requiring Uber to direct tips to drivers, and that no contract between Uber and the passengers covered driver tips.  58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014).  Uber responded that its Terms and Conditions for passengers stated it will not be liable for any passenger reliance on claims in Uber's advertising.  The court held that the relevant

-7-                    Case No. 5:22-cv-04844-BLF-VKD

subject matter was not tips, but Uber's advertising, and that the subject matter was governed by an express contract. *Id.* These cases confirm that plaintiffs may not evade an express contract through semantic gamesmanship; the actual scope of the written agreement controls.

Plaintiff also fails to show that a claim may be partly based on an express contract and partly on an implied contract. Mot. at 10. Her only authority for this is *Benson Elec. Co. v. Hale Bros. Assocs., Inc.*, 246 Cal. App. 2d 686, 697-98 (1966). That case involved an express request for "extras" forming separate agreements after the original contract, indicating a meeting of the minds on subsequent contracts after the initial express contract. *Id.* at 693. Plaintiff alleges no such subsequent meeting of the minds between the parties here, and there plainly was none.

Because Plaintiff's express contract with Zazzle covers the same subject matter as her alleged implied-in-fact contract, she may not assert both claims and the amendment is futile.

**B.      The Proposed Amendment Demonstrates Bad Faith**

The Court has discretion to deny leave to amend based on bad faith, which is evident where a party seeks to amend specifically to evade an existing or anticipated negative ruling. *See, e.g.*, *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (finding evidence of bad faith where Lockheed sought to amend while "[f]acing a summary judgment motion"); *Wave Loch, Inc. v. Am. Wave Machines, Inc.*, 2014 WL 7261552, at *3 (S.D. Cal. Oct. 1, 2014) (denying amendment sought "to avoid an adverse ruling" on summary judgment).

Plaintiff acknowledges that the *Daubert* Order, which foreclosed her preferred damages calculation, prompted her proposed amendment. The practical effect and evident purpose of her proposed amendment is to overturn—or at least circumvent—that *Daubert* Order. That is precisely the type of amendment courts deem to be brought in bad faith.

Plaintiff does not candidly acknowledge this purpose. Instead, she repeatedly minimizes the amendment's significance, characterizing it as a "narrow clarification." Mot. at 6. That characterization is inaccurate and itself evidences bad faith. The amendment would not merely clarify the pleadings—it would overturn the law of the case on contract damages. Plaintiff's distortions continue throughout the Motion, disguising this substantive reversal of the Court's order as a "simple" formality or "clean-up." *Id*. at 2, 7-8. These misleading attempts to minimize the

-8-                                    Case No. 5:22-cv-04844-BLF-VKD

significance of her proposed amendment represent a failure of Plaintiff's duty of candor to the Court.

Further demonstrating Plaintiff's bad faith, the proposed amendment attempts to overturn this Court's rulings in another way.  The *Daubert* Order clearly stated that, following dismissal of Plaintiff's copyright claim, "disgorgement is not a proper remedy" in this action.  *Daubert* Order at 16, 27.  Yet the proposed amendment quietly adds an allegation seeking disgorgement as a remedy for what Plaintiff calls "opportunistic" breach of contract rather than copyright infringement:

> 166. Additionally, as a result of Alkhatib and Zazzle's opportunistic breach of the Blooming Elegant License, Zazzle profited in an amount to be proved at trial, ***which amount should be disgorged from Zazzle*** as unjust enrichment flowing from its opportunistic breach.

Mot. Ex. B ¶ 166.  This notable attempted amendment, which Plaintiff never mentions in her Motion, attempts to silently reverse the *Daubert* Order on this basis as well, to revive another damages theory the Court already expressly and unequivocally rejected.  Plaintiff's attempt to secret this damages claim back into the case only further shows Plaintiff's bad faith and justifies the denial of her motion.

**C.    Plaintiff Unduly Delayed In Seeking The Proposed Amendment**

Even if a motion to amend is filed within the time set by the scheduling order—which this one was not—a court may still deny the motion for "undue delay," which involves evaluating "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  Plaintiff does not argue her proposed amendment relies on any new facts, and her attempts to excuse her lack of diligence are unpersuasive.  *See supra* Sections I.A-B. Plaintiff's delay defeats good cause under Rule 16 and independently constitutes undue delay under Rule 15.

**D.    The Proposed Amendment Would Prejudice Zazzle**

Finally, prejudice to the opposing party is the "touchstone of the inquiry" under Rule 15(a) and "carries the greatest weight" in determining whether to permit an amendment.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Late motions to amend, made like this one, "after the close of discovery and near the time of trial," are "considered especially prejudicial." *Doe v. City & Cnty. of San Francisco*, 2011 WL 6012934, at *2 (N.D. Cal. Dec. 1, 2011).

Plaintiff brushes off the significant prejudice to Zazzle, inaccurately arguing that it merely

-9-                                   Case No. 5:22-cv-04844-BLF-VKD

"track[s] the dispute as it has been litigated." Mot. at 9. This is not the case. The parties did not litigate any implied-in-fact contract theory during fact discovery, expert discovery, or at the dispositive-motion stage, depriving Zazzle of any opportunity to develop evidence or seek dismissal of that claim. Curing that prejudice now would require reopening discovery, revisiting dispositive motions, and delaying trial—burdening Zazzle and the Court with additional expense and delay.

Plaintiff is also wrong that Zazzle needs no discovery to defend against the new claim. An implied-in-fact contract must be definite, specific, and supported by evidence of its terms— requirements that are especially critical where Plaintiff seeks more than $100 million in damages based on a license that cost $20. Zazzle had no opportunity to ask Plaintiff or any other witness about the terms of such an "implied contract," and was thereby prejudiced. *See, e.g.*, *Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 84 (2024) (affirming summary judgment for implied contract claim where plaintiffs did not prove specific contract terms), *reh'g denied* (Mar. 15, 2024).

The amendment would further prejudice Zazzle by injecting surprise at trial. Plaintiff now contends that an implied contract exists which requires an additional license fee for each consumer's use of the Design Tool, a theory that requires evidentiary proof. *See* Daubert Order at 20. That evidence was not "already developed in discovery," Mot. at 9, because this theory did not enter the case until Plaintiff's present attempt to retool her claims in response to the *Daubert* Order. Permitting Plaintiff to present it for the first time at trial would be highly prejudicial.

In short, allowing the belated amendment would require *either* reopening discovery and delaying trial *or* would unfairly subject Zazzle to previously undisclosed evidence at trial. Either result constitutes substantial prejudice and independently warrants denial of leave to amend.[1]

**CONCLUSION**

Zazzle respectfully requests that the Court deny Plaintiff's motion for leave to amend.

---

[1] Plaintiff's cited cases again fail to demonstrate that a party may add an implied-in-fact theory on the eve of trial without additional discovery. Plaintiff argues that the court in *Bay Club Fairbanks Ranch* allowed an amendment when discovery was "nearing closure," Mot. at 9, but in fact, "when the motion was filed, fact discovery was not set to close for over four months," and while the motion was pending discovery was extended further due to COVID. *United States Equal Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1103 (S.D. Cal. 2020).

DATED:  January 9, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By  */s/ Andrew H. Schapiro*
     Andrew H. Schapiro

*Attorneys for Defendants*
*Zazzle Inc. and Mohamed Alkhatib*

ZAZZLE'S OPPOSITION TO MOTION FOR RELIEF FROM THE SCHEDULING ORDER
AND LEAVE TO FILE A SECOND AMENDED COMPLAINT