United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

NICKY LAATZ, et al.,

          Plaintiffs,

    v.

ZAZZLE, INC., et al.,

          Defendants.

Case No.  5:22-cv-04844-BLF

**ORDER RE MOTIONS *IN LIMINE***

[Re: ECF Nos. 517, 518, 519, 520, 521, 524, 525, 526, 527]

Before the Court are Plaintiff Nicky Laatz's four motions *in limine* ("MILs"), ECF Nos. 524–27, and Defendants Zazzle, Inc. ("Zazzle") and Mohamed Alkhatib's five MILs, ECF Nos. 517–21.  Defendants oppose Plaintiff's first, second, and third MILs, ECF Nos. 547–49, but do not oppose Plaintiff's fourth MIL, ECF No. 550.  Plaintiff opposes all of Defendants' MILs.  ECF Nos. 535–39.  The Court held the Final Pretrial Conference on January 22, 2025, and issued oral rulings on the Parties' MILs.  *See* ECF No. 552.  The Court subsequently issued orders approving and adopting the Parties' Joint Pretrial Statement, ECF No. 554, and setting trial schedule and procedures, ECF No. 556.  The Court also heard argument on Plaintiff's motion for leave to file a second amended complaint, which will be addressed in a separate order.

The Court's MIL rulings are summarized as follows:

**PLAINTIFF'S MOTIONS *IN LIMINE***

**(1) Plaintiff's MIL No. 1 to Exclude Evidence Regarding Plaintiff's Actual or Potential Licenses Other than the BE License [ECF No. 524]**

In her MIL No. 1, Plaintiff moves to exclude evidence of (1) licenses executed and offered by her to third parties and (2) licensing inquiries and negotiations that did not lead to actual

licenses pursuant to Federal Rules of Evidence("FRE") 401–03, Federal Rule of Civil Procedure ("FRCP") 26, and FRE 408.  In opposition, Defendants respond that evidence of prior actual or potential licenses is relevant to the issue of damages and does not violate any rule of evidence or civil procedure.

Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FRE 401.  FRE 402 provides that "relevant evidence is admissible unless another rule or federal law provides otherwise, and that irrelevant evidence is inadmissible." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *accord* FRE 402 (providing that relevant evidence is admissible unless precluded by the United States Constitution, a federal statute, the Federal Rules of Evidence, or a rule prescribed by the United States Supreme Court). FRE 401's "basic standard of relevance . . . is a liberal one."  *Crawford*, 944 F.3d at 1077 (alteration in original) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). FRE 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FRE 403; *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

In her argument for exclusion based on relevance, Plaintiff draws an analogy to patent infringement case law, arguing that the actual and potential licenses Defendants seek to introduce are not sufficiently comparable to the Blooming Elegant Trio License ("BE License") and pointing to factual differences between the licenses.  Plaintiff further argues that certain licenses must be excluded based on FRCP 26 due to failure to timely disclose evidence of comparability and based on FRE 408 as evidence of a "dispute and potential settlement."  ECF No. 524.  Defendants respond that the actual and potential licenses are admissible to aid the jury in assessing the economic reasonableness of Plaintiff's damages theory, arguing that they reveal her pricing expectations and policies.  Defendants argue that the licenses are sufficiently comparable for this purpose and that exclusion under FRE 408 is not warranted because there is no evidence that any

United States District Court
Northern District of California

2

of these negotiations were intended to settle a live controversy between Plaintiff and any other party.

As a threshold matter, the Court rejects Plaintiff's analogy to patent infringement case law, as the Court has already excluded Defendants' hypothetical negotiation theory of damages and limited Defendants' damages expert to rebutting what remains of Mr. Persechini's testimony. Rather, the Court evaluates relevance under the FRE more generally and agrees with Defendants that evidence of actual licenses is highly probative as to the economic reasonableness of damages. In any event, the Court finds that the factual distinctions that Plaintiff seeks to draw at most bear on the weight to be accorded to the evidence rather than admissibility. On the other hand, the Court agrees with Plaintiff that evidence of preliminary negotiations that did not ultimately lead to consummated license agreements is so far attenuated from the economic reasonableness of damages that any probative value will be substantially outweighed by the risk of jury confusion and the significant time wasted in having to explain the context in which those negotiations arose.

Plaintiff's remaining procedural objections are meritless. As to Rule 26, Plaintiff herself produced many of the documents in discovery and cannot now object to their use as untimely. Moreover, Plaintiff also publicly posted much of the pricing information, so no expert disclosure was required for that evidence in the first place. As to FRE 408, Plaintiff fails to even identify any disputed claim that existed at the time of any of the negotiations or whether those negotiations were entered to compromise the claim.

Accordingly, Plaintiff's MIL No. 1 is DENIED as to actual licenses and the negotiations leading up to them and GRANTED as to negotiations that did not lead to license agreements.

**(2) Plaintiff's MIL No. 2 to Exclude Evidence Regarding Marketing Materials for Proving Notice [ECF No. 525]**

In her MIL No. 2, Plaintiff moves to preclude Defendants from introducing, for the purpose of proving notice for their statute-of-limitations defense, evidence including marketing emails, social media posts, and associated metadata dated after August 24, 2018, or that did not involve the Blooming Elegant Trio ("BE Trio") pursuant to FRE 401–03. In opposition, Defendants argue that this evidence is relevant and would not cause substantial prejudice.

United States District Court
Northern District of California

3

Plaintiff's breach-of-contract claim is subject to California's four-year limitations period. Cal. Code Civ. Proc. § 337(a).  Because she filed the complaint in this action on August 24, 2022, *see* ECF No. 1, Defendants intend to argue at trial that Plaintiff had actual or inquiry notice before August 24, 2018, as their sole remaining affirmative defense.  Plaintiff argues that Defendants improperly seek to invite the jury to infer from the volume of Zazzle's marketing materials that Plaintiff should have been on notice of the unlicensed use of the BE Trio, contending that the Court should exclude as irrelevant any marketing materials that fall outside of the limitations period or do not involve the BE Trio.  Defendants urge that such a bright-line exclusion is unwarranted and that a "holistic" review of Zazzle's marketing and advertising is relevant to Plaintiff's credibility and whether she could have discovered the unlicensed use of the BE Trio through reasonable diligence.

Evidence after August 24, 2018, is simply not relevant to Plaintiff's conduct during the limitations period.  Whether pre-August 24, 2018, evidence that did not involve BE Trio should have put Plaintiff on notice of her claim is an issue for the jury to resolve and not a basis for exclusion.

The Court accordingly GRANTS MIL No. 2 for all marketing materials after August 24, 2018, and DENIES MIL No. 2 for all marketing materials before August 24, 2018.

**(3) Plaintiff's MIL No. 3 to Exclude Evidence Regarding Comparable Preview Functions [ECF No. 526]**

In her MIL No. 3, Plaintiff moves to exclude evidence regarding the free "preview" function on websites including Font Spring, MyFonts, NickyLaatz.com, and Creative Market, specifically for the purpose of comparing those preview widgets to the Zazzle Design Tool. Defendants respond that this evidence is relevant to contested issues of liability and damages.

Plaintiff's theory of breach of the BE License is that Defendants violated the single-seat provision by incorporating the BE Trio into the Zazzle Design Tool and hence allowing Zazzle's customers to use the BE Trio without a license.  Defendants intend to offer evidence of other "preview" widgets on third-party font marketplaces for the purpose of comparing those widgets to Zazzle's Design Tool.  Plaintiff argues that evidence of these third-party preview functions is

United States District Court
Northern District of California

4

United States District Court
Northern District of California

irrelevant to the issue whether Defendants breached the BE License and should thus be excluded to avoid wasting time and risk confusing the jury.  In opposition, Defendants argue that the evidence is relevant to show that they did not breach the BE License and to rebut Plaintiff's theory of damages, which would assign a monetary value to allowing Zazzle's users to create mock-ups incorporating the BE Trio without finalizing them.

The Court agrees with Defendants that the comparable preview widgets are relevant to the issues of breach and damages.  Evidence of industry custom, as well as what is done elsewhere with respect to previewing fonts and testing them out, provides background context that may inform the jury's understanding of the nature and consequences of breach and consequential damages.  While Plaintiff conclusorily argues that admitting this evidence will result in wasteful "mini-trials," the evidence itself is not complicated.

Accordingly, MIL No. 4 is DENIED, except as to the demonstrative identified in Plaintiff's brief.  As the Court explained on the record, Defendants shall present that demonstrative to the Court at the February 5, 2026, conference, at which point the Court will rule on it.

(4) **Plaintiff's MIL No. 4 to Exclude Evidence Regarding Parties' Overall Financial Condition [ECF No. 527]**

In her unopposed MIL No. 4, Plaintiff moves to exclude evidence regarding her and Zazzle's overall financial condition, arguing that such evidence is irrelevant and would risk confusing the jury and wasting time.

MIL No. 4 is GRANTED, based on the Court's understanding that it is limited to the Parties' overall financial condition and not any profit that Plaintiff or Defendants made from the BE Trio with other customers.

United States District Court
Northern District of California

**DEFENDANTS' MOTIONS *IN LIMINE***

**(1) Defendants' MIL No. 1 to Exclude Evidence Relating to the Creative Market Frequently Asked Questions Page [ECF No. 517]**

In their MIL No. 1, Defendants move to exclude evidence relating to the Creative Market Frequently Asked Questions Page ("FAQ"), including (1) the FAQ itself, (2) testimony from Zazzle's witnesses about whether they read the FAQ, and (3) testimony about the meaning of the FAQ and how it informed the meaning of the BE License. In opposition, Plaintiff argues that, under California's contextual approach to contract interpretation, evidence regarding the FAQ is admissible as extrinsic evidence to assist the Court (and if needed, the jury) in interpreting terms of the BE License.

In its summary judgment order, the Court held that the BE License consists of the Creative Market Terms of Service ("TOS"), License Terms, and BE Offering Page, expressly finding that the FAQ is not part of the BE License. *See* ECF No. 414. Defendants accordingly argue that, because the Court previously determined that the BE License does not include the FAQ, the "FAQ itself has no legal effect" and accordingly should be excluded as irrelevant and/or prejudicial, wasteful, and confusing under FRE 401–03. Plaintiff responds that the FAQ is relevant because it is admissible as extrinsic evidence as to the meaning of the terms "One Seat" and "Item" and is not barred by the parol evidence rule. Plaintiff further argues that any prejudice caused by admitting the FAQ can be cured by a limiting instruction under FRE 105.

The thrust of Defendants' argument is that evidence relating to the FAQ is irrelevant because the Court has already found that the FAQ's terms do not legally bind the Parties. Although Defendants are correct, Plaintiff seeks to offer the FAQ to support her interpretation of key terms of the BE License. Thus, to determine whether the FAQ should be excluded under FRE 401–03, the Court considers whether the FAQ is admissible under California's extrinsic evidence doctrine and not precluded by the parol evidence rule. The decision to admit extrinsic evidence in the process of contract interpretation involves a two-step analysis. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 40 (1968). The Court first "provisionally receives" any credible evidence regarding whether "the language is 'reasonably

United States District Court
Northern District of California

susceptible' to the interpretation urged by a party." *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992) (citation omitted). "If, after considering the extrinsic evidence, the court decides that the language is susceptible to only one rational interpretation, it may interpret the language as a matter of law. If, on the other hand, the language is fairly susceptible to each party's interpretation, a question of fact exists as to the parties' intentions and the issue must be presented to the fact finder." *Integrated Glob. Concepts, Inc. v. J2 Glob., Inc.*, No. 12-cv-03434-RMW, 2013 WL 1320772, at *3 (N.D. Cal. Mar. 29, 2013) (citations omitted).

Although Defendants contend that the BE License is "unambiguous," the Parties identified the meaning of the terms "One Seat" and "Item" as disputed legal issues in their Joint Pretrial Statement. ECF No. 515. As to "One Seat," Plaintiff contends that the term "refers to a single end user (i.e., a single person)," while Defendants contend that the term "allows use by any employee of an entity licensee so long as they are acting in their capacity as a representative of that entity." As to "Item," Plaintiff contends that the term "encompasses both the Blooming Elegant Trio font software and the Blooming Elegant Trio fonts themselves, as well as the image files provided therewith," while Defendants contend that the term is limited to the BE open type font files (the "OTF files"). Having provisionally received the FAQ without determining its admissibility, the Court finds that both terms are reasonably susceptible to the interpretations proffered by the Parties. As described below, the Court will permit the jury to consider evidence relating to the FAQ for the purpose of interpreting the term "One Seat." As stated at the hearing, because it appears likely that the Parties can come to an agreement on the meaning of the term "Item," the Court will require the Parties to present the Court with a joint definition of the term "Item."

Defendants further argue that, because the lodestar of contractual interpretation in California is the parties' mutual intent, the FAQ is not admissible as extrinsic evidence because there is no evidence that Defendants actually read it. They cite no authority for their apparent contention that there must be evidence of both parties affirmatively reading extrinsic evidence to be admissible, and the Court declines the invitation to adopt this bright-line rule. In this case, there is no doubt that the FAQ was linked to the opening page, which Defendants indisputably did

United States District Court
Northern District of California

see, and thus, the Court agrees with Plaintiff that whether Defendants read the FAQ is an issue that goes to weight rather than admissibility. *See First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1067–68 (9th Cir. 2011) (explaining that the jury resolves conflicts where competing interpretations turn on conflicting extrinsic evidence). At the very least, the Court finds that the FAQ sheds light on a latent ambiguity, which "arises when a contract is seemingly unambiguous on its face, but where extrinsic evidence would expose that the terms are in fact susceptible to multiple interpretations." *Lehman v. MediaLab AI, Inc.*, No. 23-cv-09055-CAS-JPRX, 2024 WL 5317268, at *6 (C.D. Cal. Oct. 28, 2024); *see also Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1133 (2008).

The FAQ is not barred under the parol evidence rule. Plaintiff does not intend to introduce the FAQ as an additional term of the BE License but rather to explain the meaning of terms that the Parties dispute. Put differently, Plaintiff does not offer the FAQ as a "prior or contemporaneous agreement" that would "add to, detract from, or vary" the written contract. *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293 (9th Cir. 2001). It is offered instead for the limited interpretive purpose of explaining how Creative Market used and explained undefined terms in the same transaction context. Of course, if Plaintiff attempts to argue to the jury that Defendants were legally bound by the terms of the FAQ—i.e., that the jury could find breach of the BE License based on a "breach" of the FAQ terms—Defendants would be free to object to this improper use. In the same vein, the Court agrees with Plaintiff that any prejudice to Defendants would be minimal with a proper limiting instruction and reasonable controls.

Defendants' MIL No. 1 is accordingly DENIED as to the term "One Seat." As discussed on the record, the Court will require the Parties to propose a definition for "Item" prior to trial.

**(2) Defendants' MIL No. 2 to Exclude Evidence Relating to Dismissed Fraud Claims [ECF No. 518]**

In their MIL No. 2, Defendants move to exclude evidence relating to Plaintiff's dismissed fraud claims, namely, (1) testimony from Zazzle witnesses regarding what BE License terms Defendants viewed and how "diligently" they reviewed them and (2) evidence and testimony about Zazzle's purchase of other, unrelated font licenses. The motion is partially opposed, with

Plaintiff responding that evidence relating to the Morgana font license is relevant to the issue of damages.

The Court agrees with Defendants that evidence of Defendants' lack of diligence, other font licenses, and other such evidence that disparages Defendants has no probative value on the remaining claim for breach-of-contract and is unduly prejudicial within the meaning of FRE 403. As to liability, Defendants' state of mind is simply not relevant, and admission of this evidence would at the very least risk confusing the jury. On the issue of damages, however, the Court agrees with Plaintiff that the extent to which Defendants sought to replace economic value derived from the BE Trio with the Morgana font provides relevant context for economic reasonableness of damages and is admissible with a limiting instruction.

MIL No. 2 is accordingly GRANTED, except to the extent that Plaintiff seeks to introduce evidence of the Morgana font license on the issue of damages.

**(3) Defendants' MIL No. 3 to Exclude Evidence Relating to Dismissed Copyright Claims [ECF No. 519]**

In their MIL No. 3, Defendants move to exclude evidence that is solely relevant to Plaintiff's dismissed copyright claim, including (1) evidence that Defendants created "derivative works" of the BE OTF files, (2) evidence that the Zazzle Design Tool is a "derivative work" of the BE OTF files, and (3) testimony regarding the process by which Plaintiff designed and created the BE Trio. Plaintiff does not oppose exclusion as to evidence of copyright infringement but urges that the term "derivative works" as used in the BE License is not preempted by the Copyright Right Act and that evidence of how she developed the BE Trio remains relevant for disputed issues relevant to her breach-of-contract claim.

The Parties do not dispute that evidence of copyright infringement is not relevant to Plaintiff's breach-of-contract claim. The Court agrees with Plaintiff that Defendants may not rewrite the BE License to remove the term "derivative works" through a MIL. Defendants cite no case law or other authority for their contention that the term "derivative works" is limited to the context of copyright infringement, and the Court declines to prohibit Plaintiff from arguing to the jury that Defendants breached the BE License by creating derivative works. As to evidence of

United States District Court
Northern District of California

how Plaintiff designed the BE Trio, the Court will permit Plaintiff to provide background information to aid the jury in understanding this relevant context, but agrees with Defendants that, if such testimony veers into unnecessary and irrelevant exposition of her creative process and the time she devoted to creating the BE Trio, it will be subject to exclusion.

Accordingly, Defendants' MIL No. 3 is GRANTED as to evidence of copyright infringement only and otherwise DENIED.

**(4) Defendants' MIL No. 4 to Exclude Undisclosed Expert Opinions from Daniel Garrie [ECF No. 520]**

In their MIL No. 4, Defendants move to exclude evidence and testimony from Plaintiff's expert Daniel Garrie concerning Zazzle's promotional emails, Plaintiff's email filtering, and his forensic examination of Plaintiff's computers pursuant to FRCP 26(a)(2)(B) and FRE 901. Plaintiff responds that Mr. Garrie's opinions comply with Rule 26 and that the challenged evidence does not require further authentication.

To rebut Defendants' statute-of-limitations affirmative defense, Plaintiff seeks to introduce forensic examination reports and expert testimony through Mr. Garrie to demonstrate that an email filter prevented her from actually viewing certain promotional emails that Zazzle sent her. Defendants apparently take the position that such evidence must be excluded because it was disclosed by Mr. Garrie in a 2023 declaration rather than his 2024 expert report, arguing that they have been prejudiced from this purported omission because they "had no reason to ask about those topics" during his deposition. Plaintiff argues that exclusion is not warranted because this evidence was timely disclosed and that, in any case, any error was harmless.

A testifying expert must provide a written report containing: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." FRCP 26(a)(2)(B). An expert's testimony is limited to

United States District Court
Northern District of California

10

the subject matter disclosed in their Rule 26 expert report.  *See, e.g.*, *Nortek Air Sols., LLC v. Energy Lab Corp.*, No. 14-cv-02919-BLF, 2016 WL 3856250, at \*7 (N.D. Cal. July 15, 2016). Testimony will otherwise be excluded unless the failure to timely disclose was harmless, which requires examination of (1) prejudice to the opposing party, (2) ability to cure the prejudice, (3) likelihood of trial disruption, and (4) bad faith or willfulness.  *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010).

Defendants cite no authority for the proposition that Mr. Garrie cannot testify to subject matter from his Rule 26-compliant 2023 declaration simply because he did not restate it in his 2024 expert report.  To the contrary, FRCP 26(a)(2)(B) "does not prohibit an expert from issuing multiple reports disclosing discrete opinions."  *Nat'l Credit Union Admin Bd. v. RBS Secs., Inc.*, No. 11-cv-2340-JWL, 2014 WL 1745448, at \*2 (D. Kan. Apr. 30, 2014).  In any event, Defendants clearly did not suffer any prejudice from any purported omissions, since counsel for Defendants acknowledged during Mr. Garrie's deposition that they were aware that Mr. Garrie would be testifying as to opinions in his "expert report or [his] declaration" and expressly questioned him about the opinions contained in the declarations.  Mathews Decl. Ex. C at 42:15–19.

Accordingly, Defendants' MIL No. 4 is DENIED.

**(5) Defendants' MIL No. 5 to Preclude Evidence Regarding Dismissed Damages Theories [ECF No. 521]**

In their MIL No. 5, Defendants move to exclude evidence relating to damages theories that the Court has excluded, including (1) disgorgement of profits, (2) revenues and profits derived by Zazzle from selling products containing the BE Trio, (3) the number of Zazzle customers who accessed the BE Trio and saved a pending design, (4) testimony from Plaintiff and her husband about the purported $14 value per visitor to Zazzle's design tool, and (5) a survey created by Plaintiff's expert witness Sara Parikh.  In opposition, Plaintiff responds that evidence of Zazzle's revenues and profits, as well as Plaintiff's testimony as to her licensing of the BE Trio, are relevant to the economic reasonableness of damages.

In its *Daubert* order, the Court explained that Plaintiff's damages expert Dominic Persechini may not present a disgorgement theory of damages to the jury due to the Court having granted summary judgment for Defendants on Plaintiff's copyright claim. ECF No. 486. The Court further ruled that disgorgement is not a proper measure of contract damages in this case. The Court also explained that Mr. Persechini would not be permitted to testify that the jury should award damages by multiplying a $14 license fee by the number of users who could have hypothetically had access to the BE Trio through Zazzle's Design Tool, explaining that he would have no evidentiary basis or foundation in law to offer competent expert testimony on this point. In the Joint Pretrial Statement, Plaintiff indicates that she "seeks an award of damages equivalent to $14 times various user populations." ECF No. 515. Defendants now argue that evidence of Zazzle's profits and Plaintiff's subjective testimony about the value of the BE License are not relevant to the issue of damages and risk confusing the jury. Plaintiff responds that evidence of revenues is directly tied to the infringing use of the licensed BE Trio, as well as her valuation of the market value of using the BE Trio, is relevant damages evidence for the jury.

Both Parties agree that disgorgement is not an appropriate remedy in this breach-of-contract dispute. While Defendants are correct that Plaintiff cannot present Zazzle's profits to the jury as a measure of damages, she may present evidence "of profits made by [the] defendant in violation of the" BE License to "furnish a reasonable basis for estimating the amount" of her lost profits. *Steelduct Co. v. Henger-Seltzer Co.,* 26 Cal. 2d 634, 651 (1945). Plaintiff is accordingly permitted to introduce such evidence for the purpose of establishing the economic reasonableness about her theory of lost profits and consequential damages. This ruling is without prejudice to Defendants' Rule 37 motion to exclude this damages theory.

As to Plaintiff's testimony about the value of the BE License, Defendants appear to have misapprehended the scope of the Court's *Daubert* order, which was addressed to the narrow issue before the Court of Mr. Persechini's so-called "hypothetical license" damages theory based on the California Supreme Court's decision in *Desny v. Wilder*, 46 Cal. 2d 715 (1956). The Court explained that "[i]f it is Plaintiff's theory that each time a consumer used the Design Tool constituted a breach, she will need evidence to support that theory, since *Desny* does not fill that

analytical gap . . . . Mr. Persechini is not that witness because he performed no independent analysis of the value of any breach or the number of separate breaches and simply accepted without question Plaintiff's counsel's theory of valuation." ECF No. 486. The order explains that Mr. Persechini is not competent to testify as to the value of each breach and expressly contemplates that Plaintiff will need to present other evidence or testimony establishing that value—the Court therefore agrees with Plaintiff that she may testify as to how much money she derives from the sale of each BE License and that this figure may be presented to the jury in calculating damages. Plaintiff, as owner of the BE Trio, may also testify about the value of any breach. Whether the jury finds her credible will depend on her testimony and cross-examination.

Finally, as the Court explained in its *Daubert* order, Mr. Persechini's opinion that damages can be calculated by multiplying user populations by percentages identified in Dr. Parikh's survey is not proper expert testimony. ECF No. 486. The Court accordingly agrees with Defendants that the Parikh Survey is irrelevant to the issue of calculating damages and may not be introduced for this purpose. Whether the Parikh Survey is relevant to the popularity or desirability of the BE Trio is not addressed in this MIL.

Accordingly, MIL No. 5 is GRANTED as to disgorgement, pending designs, and the use of the Parikh Survey for damages, and DENIED as to evidence of Zazzle's profits from the sale of products using the BE Trio and Plaintiff's testimony about the value of the BE License.

**IT IS SO ORDERED.**

Dated: January 29, 2026

_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

13