**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

NICKY LAATZ, et al.,

            Plaintiffs,

    v.

ZAZZLE, INC., et al.,

            Defendants.

Case No.  5:22-cv-04844-BLF

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

[Re:  ECF No. 510]

Before the Court is Plaintiff Nicky Laatz's motion for leave to file a second amended complaint.  ECF No. 510 ("Mot."); ECF No. 530 ("Reply").  Defendants oppose the motion.  ECF No. 529 ("Opp.").  The Court held argument on the motion at the Parties' Final Pretrial Conference on January 22, 2026, at which point it indicated that it would be denying the motion.  ECF No. 552.

For the reasons stated on the record and herein, the motion is DENIED.

## I. BACKGROUND

The Parties are familiar with the facts of this case, which the Court briefly summarizes in relevant part.  *See* ECF No. 486.

Plaintiff is a font designer whose primary source of income is derived from creating and licensing type fonts.  Declaration of Nikki Latz ¶¶ 2–4, ECF No. 342-25.  In 2016, Plaintiff created a trio of fonts called the Blooming Elegant Trio ("BE Trio"), *id.* ¶¶ 5–7, and offered a single-seat license for $20 through Creative Market (the "BE License"), *id.* ¶ 24.  To obtain a BE License from Creative Market, a purchaser must set up a Creative Market account and agree to Creative Market's Terms of Service and License Terms.  *Id.* ¶ 27.  As relevant here, the BE License provides that the licensee "may not make the Item available on a digital asset management

system, shared drive, or the like for the purposes of sharing or transferring the Item, and you must not permit an end user of the end product to extract the Item and use it separately from the End Product.  BE License at 2, ECF No. 82-4.

Zazzle is an online marketplace for customizable consumer goods that offers hundreds of licensed fonts through a customization platform on its website called the Zazzle Design Tool "Design Tool").  On May 4, 2017, Zazzle employee Mr. Alkhatib purchased one BE License through Creative Market on behalf of Zazzle.  *See* Deposition Transcript of Michelle Reynaud at 90:7–9, 92:17–24, ECF No. 338-11.  In October 2017, Zazzle publicly announced the addition of the BE Trio to the Design Tool.  ECF No. 338-12 at 2.  In August 2020, Plaintiff's husband John Laatz, on Plaintiff's behalf, notified Defendants that Plaintiff "[did] not grant [the type of license Zazzle would need to use the BE Trio] . . . and ha[d] not done so now for many years," and requested proof of the license Defendants were using for the BE Trio.  ECF No. 338-63.

Plaintiff initiated this action on August 24, 2022. ECF No. 1.  In her first amended complaint filed on March 14, 2023, she asserted claims for (1) fraudulent misrepresentation, (2) fraudulent concealment, (3) promissory fraud, (4) federal copyright infringement, (5) federal trademark infringement, and (6) breach of contract.  ECF No. 82 ("FAC") ¶¶ 175–219.  As to breach of contract, Plaintiff alleged that Defendants breached the BE Trio in the following ways:

> a. Downloading, copying, and installing both the Blooming Elegant Trio and Blooming Elegant Software onto multiple Zazzle servers and thereby allowing the fonts and the font software to be used on more than the two computers permitted by the license;
> b. Allowing persons other than Alkhatib to access and use both the Blooming Elegant Trio and Blooming Elegant Software—including both agents and employees of Zazzle and millions of individuals who accessed and used the fonts and the font software on Zazzle's website;
> c. Sharing and redistributing the Blooming Elegant Trio and Blooming Elegant Software as part of Zazzle's design tool, not incorporated into an end product; and
> d. Failing to pay the price prescribed by the license for "each unique user" who was provided access to the Blooming Elegant Trio and Blooming Elegant Software by Defendants—again including both agents and employees of Zazzle and millions of individuals who accessed and used the fonts and the font software on Zazzle's website.

*Id.* ¶ 218.

The Court entered a scheduling order on February 1, 2023, setting the last day to amend the pleadings on April 1, 2023, and close of fact discovery on August 8, 2024.  *See* ECF Nos. 66,

United States District Court
Northern District of California

71.  Only minor modifications were made to the scheduling order.  *See* ECF Nos. 276, 290, 317, 334.  Trial and *Daubert* motions were extended to facilitate settlement efforts.

On May 9, 2025, the Court granted Defendants' motion for summary judgment as to Plaintiff's first, second, third, and fifth claims.  ECF No. 414.  On August 4, 2025, the Court granted Defendants' motion for reconsideration and entered judgment in Defendants' favor as to Plaintiff's fourth claim, leaving only Plaintiff's sixth claim for breach of contract in this action.  ECF No. 443.

Plaintiff's expert for breach-of-contract damages is Dominic Persechini, who in his report opines that damages should be calculated by multiplying a fixed $14 "license fee" (i.e., the amount Plaintiff typically retains from a standard $20 BE License) by various quantifications of Zazzle's customers.  ECF No. 398-16 ("Persechini Rep.") ¶¶ 76–77.  These alternative quantifications include the total number of Zazzle users who (1) had "access" to the BE Trio, (2) used the BE Trio in a pending design, (3) used the BE Trio in a finalized design, or (4) purchased a finalized design using the BE Trio.  In its *Daubert* order, the Court expressed serious concerns about Mr. Persechini's proposed testimony, noting that "he does not explain the basis for his apparent assumption that Defendants breached the BE License each time a Zazzle customer accessed the Design Tool or created a pending design."  ECF No. 486 at 17.  The Court accordingly precluded Mr. Persechini from testifying to the jury that it could calculate damages by multiplying $14 by a given number of Zazzle users.  *Id.* at 18.

Weeks before trial, Plaintiff filed this motion for leave to amend her complaint to add a claim for breach of implied-in-fact contract.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 16, a party seeking leave to amend after the deadline set by a district court's pretrial scheduling order must show "good cause."  Fed. R. Civ. P. 16(b)(4).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "Although the

United States District Court
Northern District of California

United States District Court
Northern District of California

existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." *Id.* (citations omitted).

If good cause is found, "the Court may then consider whether leave to amend should be granted pursuant to Rule 15(a)." *Thomas v. San Francisco Travel Ass'n*, No. 14-cv-03043-YGR, 2016 WL 861239, at *2 (N.D. Cal. March 7, 2016).  Under Rule 15(a), courts generally consider four factors when deciding to grant a motion for leave to amend: bad faith, undue delay, prejudice, and futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Because Rule 16(b)'s 'good cause' inquiry essentially incorporates the [first three] factors, 'if a court finds that good cause exists, it should then deny a motion for leave to amend only if such amendment would be futile.'" *M.H. v. Cnty. of Alameda*, No. 11-cv-2868-CW, 2012 WL 5835732, at *2 (N.D. Cal. Nov. 16, 2012) (citations omitted).

## III.    DISCUSSION

### A.  Rule 16(b)(4)

"Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal quotation marks and citation omitted).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

Here, Plaintiff seeks to add a new legal theory—breach of implied contract—relying on the same factual allegations that supply the basis for her claim for breach of contract, namely, that Defendants allegedly provided unauthorized access to the BE Trio to users of the Zazzle Design Tool.  Plaintiff has not demonstrated diligence with respect to her proposed amendment, since she waited more than three years from the time she filed the FAC before seeking leave to amend despite being fully apprised of the relevant facts and having already pleaded them in her original and first amended complaint.  Despite Plaintiff's characterization of her proposed amendment as primarily procedural in nature (and hence minimally disruptive), the Court finds that it is far too

4

United States District Court
Northern District of California

late to add this new theory of liability on the eve of trial, especially this long after the close of fact and expert discovery. The fact that Plaintiff realized that her theory of damages was more amenable to a claim for implied breach of contract does not constitute good cause to disrupt the settled expectations of the Parties and the Court, particularly given her significant delay in seeking leave to amend.

Plaintiff nonetheless argues that her extraordinary delay was justified and that good cause exists under Rule 16 because her delay is the Court's fault, not hers. Plaintiff argues that she has *always* alleged the existence and breach of an implied-in-fact contract, complaining that "[w]hat changed at the *Daubert* stage was not [Plaintiff's] factual allegations or the evidentiary record, but the Court's concern that the 'additional seats' aspect of Plaintiff's contract/damages theory must be expressly pleaded as an implied-in-fact contact claim." Mot. at 1. On the contrary, Plaintiff did not make any factual allegation in the FAC that the Parties had entered an implied-in-fact contract requiring payment for each user with access to the BE Trio, alleging only that the Parties entered an express contract that Zazzle later breached. It was only during the *Daubert* stage that Plaintiff changed gears and argued that that "[b]y misappropriating the [BE Trio] after being told the [license] price offered by [Plaintiff], [Defendant] is deemed to have accepted the offer," creating an implied-in-fact contract under the California Supreme Court's decision in *Desny v. Wilder*, 46 Cal. 2d 715, 736 (1956). ECF No. 453 at 13.

"[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see also Gupta v. Int'l Bus. Machs. Corp.*, 2015 WL 9204348, at *2 (N.D. Cal. Dec. 17, 2015) (finding a lack of diligence where plaintiff was "aware of a possible theory but failed to timely raise it or alternatively provide a good reason for not doing so"). Plaintiff does not dispute that she was aware of the underlying facts giving rise to her new implied-in-fact theory, conceding that "the factual predicate . . . has been part of the pleadings since inception." Mot. at 3. The decision not to bring a claim for breach of implied contract was a "tactical choice" she made at the pleading stage, and the fact that developments over the course of the litigation required her to

United States District Court
Northern District of California

change her strategy does not constitute good cause or show diligence. *See Acri*, 781 F.2d at 1398. Because this newly pled theory was available to Plaintiff from the inception of the case, she cannot demonstrate that the Court's deadline to amend pleadings could not "reasonably [have] been] met despite" her supposed diligence. *Johnson*, 975 F.2d at 609.

**B.  Rule 15(a)**

Even if it were to conclude that Plaintiff had met the good cause standard of Rule 16(b), the Court would conclude that she has not satisfied Rule 15(a).  As noted above, a court generally will grant leave to amend "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  Johnson, 975 F.2d at 607; see also *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  There is no suggestion in the record that Plaintiff's motion is brought in bad faith.  However, for the reasons discussed above, the Court concludes that Plaintiff delayed unduly before bringing this motion.

Moreover, the Court concludes that, even setting aside Plaintiff's lack of diligence, amendment would be futile.  Plaintiff's proposed claim overlaps completely with her claim for breach of contract.  California law makes clear that "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002).  Where, as here, an express contract defines the Parties' obligations, an implied-in-fact claim alleging a breach of the same obligations is subject to dismissal. *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017).  The Court is not persuaded by Plaintiff's contention that the proposed claim would "plead[] a separate implied-in-fact agreement arising from Zazzle's post-purchase conduct."  Mot. at 10.  Both claims are directed to the same subject matter and same underlying factual allegations—under similar circumstances, courts in this district have repeatedly found that claims for breach of implied contract would be duplicative. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014).

Finally, while the Court does not base its decision on prejudice to Defendants, the Court agrees with Defendants that allowing Plaintiff to inject a new theory of liability this late in the proceedings would be prejudicial.  Late motions to amend, made like this one, "after the close of

6

United States District Court
Northern District of California

discovery and near the time of trial," are "considered especially prejudicial." *Doe v. City & Cnty. of San Francisco*, No. 10-cv-04700-TEH, 2011 WL 6012934, at *2 (N.D. Cal. Dec. 1, 2011). While Plaintiff argues that her proposed claim would simply "track the dispute as it has been litigated," Mot. at 9, the Court disagrees. The parties did not litigate any implied-in-fact contract theory during fact discovery, expert discovery, or at the dispositive-motion stage, depriving Defendants of any opportunity to develop evidence or seek dismissal of that claim.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the motion is DENIED.

Dated:  January 29, 2026

_____

BETH LABSON FREEMAN
United States District Judge

7